UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILD FISH CONSERVANCY,

               Plaintiff,

    v.

BARRY THOM, et al.,

               Defendants,

   and

ALASKA TROLLERS
ASSOCIATION,

               Defendant-Intervenor.

Case No. C20-417-RAJ-MLP

REPORT AND RECOMMENDATION

## I.      INTRODUCTION

This matter is before the Court on Wild Fish Conservancy's Motion for a Preliminary Injunction ("Plaintiff's Motion"). (Mot. (Dkt. # 14).) Plaintiff seeks a preliminary injunction staying the National Marine Fisheries Service's ("NMFS") authorization of commercial Chinook salmon fisheries in federal waters off the coast of Southeast Alaska, through its delegation of authority to the State of Alaska, currently set to commence on July 1, 2020. (*Id.* at 9.) Having

REPORT AND RECOMMENDATION - 1

1    considered Plaintiff's Motion, the parties' submissions, the parties' argument, the governing law,

2    and the balance of the record, the Court recommends Plaintiff's Motion be DENIED.

3                                    II.        BACKGROUND

4        **A.    Procedural History**

5            On March 2020, Plaintiff filed a Complaint in this action against NMFS, Regional

6    Administrator of NMFS Barry Thom, Assistant Administrator of NMFS Chris Oliver, Secretary

7    of the United States Department of Commerce Wilbur Ross, Jr., and the United States

8    Department of Commerce ("Defendants"). (Compl. (Dkt. # 1).) Plaintiff's Complaint alleges that

9    Defendants failed to ensure management and authorization of commercial salmon fisheries

10   within the Exclusive Economic Zone (herein referred to as "federal waters") off the coast of

11   Southeast Alaska was not likely to jeopardize the Southern Resident Killer Whale ("SRKW") or

12   result in adverse modification or destruction of the SRKW's habitat under Section 7(a)(2) of the

13   Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544. (*Id.* at ¶¶ 13, 114-15.)

14           Specifically, Plaintiff challenges Defendants' failure to comply with the ESA and the

15   National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370m-12, by means of the

16   Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, in NMFS's issuance of a

17   biological opinion concerning the effects of its management and ongoing delegation of certain

18   authority to the State of Alaska regarding the salmon fisheries within Southeast Alaska ("2019

19   BiOp"). (Compl. at ¶¶ 13, 116-120.) Plaintiff requests declaratory relief requiring Defendants to

20   comply with the ESA and NEPA and a ruling that the 2019 BiOp is arbitrary, capricious, and not

21   in accordance with the ESA and NEPA. (*Id.* at 28-29.) Plaintiff additionally seeks injunctive

22   relief enjoining Defendants from continuing to delegate authority to the State of Alaska, or

23   otherwise continuing to allow, the operation of salmon fisheries in federal waters of Southeast

1    Alaska and an enjoinment of Defendants' authorizing of any take associated with salmon

2    fisheries until Defendants comply with the ESA and NEPA. (*Id.*)

3         On April 14, 2020, Plaintiff filed its Motion. (Mot. at 9.) In its Motion, Plaintiff identifies

4    that it seeks preliminary injunction on NMFS's delegation of authority to the State of Alaska

5    authorizing the commercial Chinook salmon fisheries in federal waters off the coast of Southeast

6    Alaska, currently set to commence on July 1, 2020. (Mot. at 29 ("To remedy the specific harm at

7    issue, [WFC] requests an order staying NMFS's take authorization and delegation of authority to

8    Alaska for commercial salmon fisheries in the Exclusive Economic Zone of Southeast Alaska

9    and directing NMFS to take any additional steps needed to halt such fisheries before

10   commencement of the fishing season on July 1.").)

11        On May 11, 2020, Defendants filed a Response. (Resp. (Dkt. # 43).) Defendants argue

12   Plaintiff's requested relief is barred because it is aimed directly at NMFS's delegation of

13   fisheries management authority to the State of Alaska under the Magnuson-Stevens Fishery

14   Conservation and Management Act ("Magnuson-Stevens Act"), 16 U.S.C. §§ 1801 *et seq.* (*Id.* at

15   7-10.) Consequently, Defendants argue that Plaintiff failed to timely bring its challenge because

16   the Magnuson-Stevens Act provides a 30-day limitations period for judicial review and that

17   Plaintiff's Motion fails because the Magnuson-Stevens Act's jurisdictional provision

18   encompasses claims brought under other statutes, including the ESA and NEPA, and does not

19   "permit end-runs around the provision via artful pleading." (*Id.* at 9.) Defendants additionally

20   argue this Court lacks jurisdiction because Plaintiff failed to establish organizational or

21   representational standing as it pertains to the SRKW. (*Id.* at 10-12.)

22        On May 15, 2020, Plaintiff filed a Reply. (Reply (Dkt. # 44).) In its Reply, Plaintiff

23   argues that this matter is not an action subject to the Magnuson-Stevens Act because it is not

REPORT AND RECOMMENDATION - 3

challenging: (1) NMFS's promulgation of regulations under the Magnuson-Stevens Act; (2) an action, published in the Federal Register, taken by NMFS, under regulations that implement a FMP; or (3) NMFS's compliance with the ESA or NEPA on such an action. (*Id.* at 8.)

On May 22, 2020, Defendants filed an Answer to Plaintiff's Complaint. (Answer (Dkt. # 45).) On May 28, 2020, the Court held a hearing regarding the Court's jurisdiction to issue Plaintiff's requested relief and heard oral argument from the parties over video conference.[1] (Dkt. # 47.) This matter is now ripe for review.

**B.    Statutory Background**

*i.    Magnuson-Stevens Act*

Congress enacted the Magnuson-Stevens Act "to conserve and manage the fishery resources found off the coasts of the United States, and the anadromous species and Continental Shelf fishery resources of the United States." 16 U.S.C. § 1801(b)(1). The Magnuson-Stevens Act establishes exclusive federal management over fisheries within the federal waters of the United States, which extends from the seaward boundary of each coastal state to 200 nautical miles from the coastline. 16 U.S.C. §§ 1802(11), 1811(a). The Secretary of Commerce is charged with implementing the Magnuson-Stevens Act and has delegated this responsibility to NMFS. 16 U.S.C. §§ 1854, 1855(d).

---

[1] On April 23, 2020, Defendant-Intervenor Alaska Trollers Association ("Defendant-Intervenor") filed an Unopposed Motion to Intervene that this Court granted. (Dkt. ## 19, 25.) On May 11, 2020, Defendant-Intervenor filed its Response to Plaintiff's Motion, arguing that WFC could not likely succeed on the merits for its preliminary injunction request. (Resp. (Dkt. # 33) at 4.) Defendant-Intervenor's Response did not address any jurisdictional issues regarding Plaintiff's requested relief. (*See* Dkt. # 33.) On April 28, 2020, Defendant-Intervenor filed its Answer to Plaintiff's Complaint. (Answer (Dkt. # 29).) Defendant-Intervenor appeared and made brief oral argument concerning the jurisdictional issues to Plaintiff's requested relief during the hearing but has not otherwise submitted any materials for the Court's consideration on these issues.

The Magnuson-Stevens Act provides for eight Regional Fishery Management Councils ("Regional Councils"). 16 U.S.C. §§ 1852(a)(1). The Regional Councils prepare fishery management plans ("FMPs"), including the addition of any amendments to a FMP, for each fishery under their jurisdiction. 16 U.S.C. §§ 1852(h)(1), 1854(a)-(b). NMFS reviews submitted FMPs from the Regional Councils, including amendments, to determine whether they are consistent with the Magnuson-Stevens Act "and any other applicable law." 16 U.S.C. § 1854(a)(1)(A), (a)(3).

The Regional Councils also submit proposed regulations to NMFS to implement FMPs that NMFS promulgates if the proposed regulations are consistent with the FMP and other applicable laws. 16 U.S.C. §§ 1853(c), 1854(b). The Magnuson-Stevens Act provides that a State may regulate fishing outside its boundaries if authorized by a FMP and if the State's fishing regulations are consistent with the applicable FMP. 16 U.S.C. § 1856(a)(3)(B).

ii.    *Endangered Species Act*

Congress enacted the ESA to conserve endangered species and protect the ecosystems they depend on. 16 U.S.C. § 1531(b). The statute assigns implementation responsibilities to the Secretary for the Department of Commerce and the Secretary of the Interior, who have delegated duties to NMFS and the United States Fish and Wildlife Service ("FWS"), respectively. *See* 50 C.F.R. § 402.01(b). NMFS retains ESA authority for marine and anadromous species, while FWS has jurisdiction over terrestrial and freshwater species. *See* §§ 50 C.F.R. 17.11, 223.102, 224.101.

Section 7(a)(2) of the ESA requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse

modification" of critical habitat. 16 U.S.C. § 1536(a)(2). An agency proposing an action must determine whether its action "may affect" a listed species or critical habitat. 50 C.F.R. § 402.14. If the agency determines the action may affect a listed species, it must consult with NMFS, FWS, or both (collectively, "Service"). 50 C.F.R. §§ 402.03, 402.13, 402.14. Formal consultation eventually results in the issuance of a biological opinion. 50 C.F.R. § 402.14(h)(3). A biological opinion includes the Service's opinion on whether a proposed action is likely to jeopardize the existence of an affected species or result in the destruction or adverse modification of its critical habitat. *See* 50 C.F.R. § 402.14.

Section 9 of the ESA prohibits "take" of a listed species, 16 U.S.C. § 1538. "Take" is defined to include harming, harassing, or killing listed species. 16 U.S.C. § 1532(19). If the consulting agency determines the proposed action is not likely to jeopardize the species, but will result in the incidental "take" of some individual members of a listed species, the agency provides an "incidental take statement" ("ITS") with the biological opinion for that specific action. *See* 16 U.S.C. § 1536(b)(4)(i)-(ii). Any "take" in compliance with an ITS does not violate Section 9 of the Act. 16 U.S.C. § 1536(o)(2).

### iii.    National Environmental Policy Act

NEPA requires federal agencies to prepare an Environmental Impact Statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The EIS ensures that a federal agency consider information on environmental impacts when reaching decisions and that the information will be made available to the larger audience who may also play a role in the decision-making process. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

NEPA regulations direct agencies to prepare an Environmental Assessment ("EA") to determine whether an EIS is necessary unless the proposal is one that "normally requires" an EIS or is one that "normally does not require" either an EIS or an EA. *Hale v. Norton*, 476 F.3d 694, 700 (9th Cir. 2007); *see* 40 C.F.R. § 1501.4(a)-(b). Even if an EA is not required, "[a]gencies may prepare an environmental assessment on any action at any time in order to assist agency planning and decisionmaking." 40 C.F.R. § 1501.3(b). If it is determined no significant impact will occur, the agency must issue a "finding of no significant impact." 40 C.F.R. §§ 1501.4(e), 1508.13.

## C.    Factual Background

Wild Fish Conservancy ("WFC") is a membership-based 501(c)(3) nonprofit organization incorporated in the State of Washington, with its principal place of business in Duvall, Washington. (Compl. at ¶ 14.) WFC's asserted mission is "dedicated to the preservation and recovery of Washington's native fish species and the ecosystems upon which those species depend." (*Id.*) WFC brings this action on behalf of its members who the organization asserts regularly spend time in areas in and around the waters occupied by the SRKW. (*Id.* at ¶ 15.)

### i.    The SRKW and Chinook Salmon

NMFS listed the SRKW as endangered under the ESA in 2005. 50 C.F.R. § 224.101(h); *see also* Endangered Status for Southern Resident Killer Whales, 70 Fed. Reg. 69,903 (Nov. 18, 2005). Critical habitat was designated for the SRKW in 2006. 50 C.F.R. § 226; *see also* Proposed Rulemaking to Revise Critical Habitat for the Southern Resident Killer Whale Distinct Population Segment, 71 Fed. Reg. 69,054 (Nov. 29, 2006). Per the 2019 BiOp, the SRKW faces many threats, including limits on the quantity and quality of its prey, toxic chemicals, oil spills,

and disturbance from vessels. (Resp., Ex. A (Dkt. # 43-1) at 115-23.) As of December 2018, the SRKW population consisted of 74 whales. (*Id.* at 109.)

NMFS listed the Snake River fall-run Chinook salmon evolutionary significant unit ("ESU") as a threatened species in 1992. 50 C.F.R. § 223.102(e); *see also* Threatened Status for Snake River Spring/Summer Chinook Salmon Threatened Status for Snake River Fall Chinook Salmon, 57 Fed. Reg. 14,653 (Apr. 22, 1992). The Puget Sound, the Lower Columbia River, and the Upper Willamette River Chinook salmon ESUs were listed as threatened species in 1999. 50 C.F.R. § 223.102(e); *see also* Threatened Status for Three Chinook Salmon ESUs in Washington and Oregon, and Endangered Status for One Chinook Salmon ESU in Washington, 64 Fed. Reg. 14,308 (Mar. 24, 1999). The 2019 BiOp notes NMFS has consulted on the effects of the various Southeast Alaska fisheries on the SRKW and threatened Chinook Salmon under the ESA since 1992. (Resp., Ex. A at 28-31.)

*ii.     The Pacific Salmon Treaty*

Chinook salmon regularly migrate across the boundary between the United States and Canadian waters, and as a result, fish originating in one country are often caught or "intercepted" by those fishing in the other country. (Resp., Ex. A at 27.) To resolve this issue, the United States and Canada ratified the Pacific Salmon Treaty ("PST") in 1985, establishing a framework for the management of Pacific salmon fisheries in those waters off the coast of the United States and Canada that fall within the PST's geographical scope. (*Id.*). The United States and Canada subsequently entered into Agreements under the PST in 1999 and 2009. (*Id.* at 27-28.) In 2019, the countries negotiated the most recent PST, which establishes the current upper limits on intercepting fisheries. (*Id.*; *see* Resp., Ex. C (Dkt. # 43-1).) Chapter 3 of Annex IV to the 2019

1 PST defines the management regime for the Chinook salmon fisheries and is effective from 2019

2 through 2028. (Resp., Ex. C at 651-71.)

3      ii.  *The Salmon FMP*

4    NMFS delegated its authority over salmon fisheries in the federal waters in Southeast

5 Alaska to the State of Alaska. 50 C.F.R. § 679.3(f). Pursuant to the Magnuson-Stevens Act, the

6 North Pacific Fishery Management Council ("NPFMC") has "authority over the fisheries in the

7 Arctic Ocean, Bering Sea, and Pacific Ocean seaward of Alaska." 16 U.S.C. § 1852(a)(1)(G).

8 NPFMC first developed a FMP for salmon fisheries in Alaska in 1979 ("Salmon FMP") and has

9 since issued several amended plans, with the most recent completed in 2018. (Resp., Ex. B (Dkt.

10 # 43-1); Fisheries of the Exclusive Economic Zone Off Alaska; Essential Fish Habitat

11 Amendments, 83 Fed. Reg. 31,340 (July 5, 2018).) On December 21, 2012, NMFS reaffirmed its

12 delegation of authority over the salmon fisheries in Southeast Alaska to the State of Alaska in

13 FMP Amendment 12. (Resp., Ex. D (Dkt. # 43-1); 50 C.F.R. § 679.3(f); *see also* Fisheries of the

14 Exclusive Economic Zone Off Alaska; Pacific Salmon, 77 Fed. Reg. 75,570 (Dec. 21, 2012).)

15    The 2018 Salmon FMP provides for two salmon fisheries in Southeast Alaska: (1) a

16 commercial troll salmon fishery; and (2) a sport fishery. (Resp., Ex. B at 464-65.) Pertinent to

17 this action, the commercial troll salmon fishery provided for under the FMP opens on July 1 and

18 targets all remaining Chinook salmon available under the annual quota set pursuant to the PST.

19 (*Id.* at 489-90.) On February 11, 2020, Alaska announced this year's Chinook salmon harvest

20 limits would be consistent with the 2019 PST limits. (Mot., Ex. A (Dkt. # 14-1) at 530-31.)

21      iii.  *2019 BiOp*

22    Following the completion of the 2019 PST, NMFS reinitiated consultation under the ESA

23 on the Alaska salmon fisheries, and on April 5, 2019, NMFS issued the 2019 BiOp. (Resp., Ex.

A). The proposed federal actions addressed in the 2019 BiOp include NMFS's ongoing delegation of management authority to the State of Alaska over the salmon fisheries in the federal waters of Southeast Alaska and NMFS's funding to Alaska for its management and monitoring of the fisheries. (*Id.* at 29-33.)

In the 2019 BiOp, NMFS ultimately concluded the continued operation of the salmon fisheries, consistent with the PST established harvest limits, was not likely to jeopardize the SRKW or adversely modify its critical habitat. (*Id.* at 340-41.) Similarly, NMFS concluded the proposed actions would not jeopardize the four threatened Chinook salmon ESUs. (*Id.* at 350.) The 2019 BiOp includes an ITS allowing for the salmon fisheries to harvest up to the limits allowed under the 2019 PST. (*Id.* at 351-52.) The 2019 BiOp outlines that the salmon harvest that may occur under the proposed actions is likely to result "in some level of harm constituting take of SRKW by reducing prey availability" and causing the SRKW "to forage for longer periods, travel to alternate locations, or abandon foraging efforts." (*Id.* at 352.)

### III. DISCUSSION

#### A. Legal Standards for Preliminary Injunction

A plaintiff seeking a preliminary injunction must show: "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm if the preliminary injunction is not granted; (3) the balance of equities tips in its favor; and (4) an injunction is in the public's interest." *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). The moving party bears the burden of persuasion and must make a clear showing it is entitled to such relief. *Winter*, 555 U.S. at 22.

As an alternative to this test, a preliminary injunction may also be appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply" in the

moving party's favor, thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Nevertheless, the "serious questions" approach supports a court's entry of a preliminary injunction only if the moving party also shows there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135.

"When considering an injunction under the ESA, we presume . . . that the balance of interests weighs in favor of protecting endangered species, and that the public interest would not be disserved by an injunction." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 817 (9th Cir. 2018); *see also Wash. Toxics Coal. v. Envt'l. Prot. Agency*, 413 F.3d 1024, 1035 (9th Cir. 2005) ("Congress has decided that under the ESA, the balance of hardships always tips sharply in favor of the endangered or threatened species.").

**B.      Judicial Review under the Magnuson-Stevens Act**

The judicial review provision of the Magnuson-Stevens Act, 16 U.S.C. § 1855(f), provides in pertinent part:

> (1) Regulations promulgated by the Secretary under this chapter and actions described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date of the regulations are promulgated or the action is published in the Federal Register, as applicable; except that—
>
> (A) section 705 of such Title is not applicable, and
>
> (B) the appropriate court shall only set aside any such regulation or action on a ground specified in section 706(2)(A), (B), (C), or (D) of such Title.
>
> (2) The actions referred to in paragraph (1) are actions that are taken by the Secretary under regulations which implement a fishery management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing.

Section 1855(f)(1)(A) precludes preliminary injunctive relief. *See* 5 U.S.C. § 705 ("When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.") Under § 1855(f)(1)(B), a court may only set aside regulations if they are: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, limitations, or short of statutory right; or (d) without observance of procedure required by law. 5 U.S.C. § 706(2)(A)-(D).

Plaintiff argues that this matter is not an action subject to the Magnuson-Stevens Act because it is not asserting ESA or NEPA challenges to NMFS's promulgation of regulations that implement an FMP or to an action taken by NMFS under such regulations. (Reply at 8.) Defendants contend that Plaintiff's requested relief is aimed directly at NMFS's delegation of authority to the State of Alaska for the commercial troll salmon fishery under the Magnuson-Stevens Act, and consequently, that this action is time-barred under the Magnuson-Stevens Act's 30-day limitations period for judicial review. (Resp. at 7-10.)

Although Plaintiff has not expressly alleged a violation of the Magnuson-Stevens Act, and desires to pursue this action solely under its ESA and NEPA claims, it is clear Plaintiff's Motion seeks to enjoin NMFS's authorization and delegation of authority to the State of Alaska for the commercial troll salmon fishery in Southeast Alaska. (*See* Mot. at 9, 29.) The authority for the commercial troll salmon fishery is exclusively provided for by the Magnuson-Stevens Act regulations delegating authority to the State of Alaska for the implementation of the Salmon

1    FMP. 50 C.F.R. §§ 679.1, 679.3; *see also* Fisheries of the Exclusive Economic Zone Off Alaska;

2    Pacific Salmon, 77 Fed. Reg. at 75,570. As further explained below, because the source of

3    Plaintiff's requested relief places this action within the purview of the Magnuson-Stevens Act,

4    and Plaintiff has missed the deadline for challenging the relevant regulations, this Court lacks

5    jurisdiction to enjoin the commercial troll salmon fishery.[2]

6                              i.      *Applicability of the Magnuson-Stevens Act*

7           The Ninth Circuit has previously expressed that "the decisive question" in deciding

8    whether a plaintiff's environmental claims entail the Magnuson-Stevens Act "is whether the

9    regulations are being attacked, not whether the complaint specifically asserts a violation of the

10   Magnuson-Stevens Act." *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438

11   F.3d 937, 945 (9th Cir. 2006). In *Turtle Island*, NMFS issued regulations under the

12   Magnuson-Stevens Act reopening part of a Hawaii-based longline swordfish fishery. *Id.* at 940.

13   The Ninth Circuit examined the applicability of the Magnuson-Stevens Act regarding the

14   plaintiff's motion for a preliminary injunction, which sought "to requir[e] defendants to

15   withdraw their authorization of swordfish longlining in the Pelagic fisheries of the Western

16   Pacific, and enjoin[] . . . all longline swordfish fishing activities." *Id.* at 945 (internal quotations

17   and citations omitted). Similar to Plaintiff's Complaint in the instant matter, the plaintiff in

18   *Turtle Island* sought to proceed strictly under other environmental statutes, including ESA,

19   NEPA, and Migratory Bird Act challenges. *Id.* at 943-44.

20          Despite the plaintiff's characterization of its action, the Ninth Circuit determined the

21   essence of plaintiff's challenge in *Turtle Island* was the challenge to the reopening of the

22

23   ───────────────
     [2] On May 26, 2020, the Court heard oral argument on the Court's jurisdiction to issue Plaintiff's requested
     relief regarding § 1855(f), as well as the issue of WFC's standing to bring this challenge. (Dkt. # 47.)
     Having decided that Plaintiff's Motion is time-barred by § 1855(f), the Court reserves ruling on Defendants'
     standing challenge at this time.

REPORT AND RECOMMENDATION - 13

swordfish fishery. *Turtle Island Restoration Network*, 438 F.3d at 944. The Ninth Circuit specifically noted that "[t]o allow parties to avoid [the Magnuson-Stevens Act] through manipulation of form . . . while in substance challenging [Magnuson-Stevens Act] regulations, would permit parties 'through careful pleading . . . [to] avoid the strict jurisdictional limits imposed by Congress.'" *Id.* (quoting *California Save Our Streams Council, Inc. v. Yeutter,* 887 F.2d 908, 911 (9th Cir. 1989) (citations omitted)). Finding that the challenge to the reopening of the swordfish fishery was central to plaintiff's environmental claims, the Ninth Circuit held plaintiff's "challenge cannot credibly be viewed as anything other than an attack on the regulations" under the Magnuson-Stevens Act. *Id.* at 945; *see Am. Bird Conservancy v. F.C.C.*, 545 F.3d 1190, 1195 (9th Cir. 2008).

Other federal courts have previously rejected prior attempts by parties to avoid jurisdictional limitations imposed under the Magnuson-Stevens Act by seeking relief under other environmental statutes. In *Blue Water Fishermen's Ass'n v. Nat'l Marine Fisheries Serv.*, plaintiffs sought a preliminary injunction under the Magnuson-Stevens Act and ESA, challenging regulations closing portions of the Atlantic Ocean to pelagic longline fishing. 158 F.Supp.2d 118, 120-21 (D. Mass. 2001). The plaintiffs' challenge was brought in part because of a biological opinion that determined Atlantic pelagic longline fishing jeopardized the continued existence of loggerhead and leatherback sea turtles under the ESA, which inspired NMFS's promulgation of the regulations closing the fishery. *Id.* at 121-22. The district court noted that although the regulations at issue were premised on a jeopardy finding in a biological opinion, the regulations were issued pursuant to NMFS's authority under the Magnuson-Stevens Act, and not the ESA. *Id.* at 122. The district court determined that plaintiffs' attempt to bring its claim solely under the ESA was clearly an attempt to evade the jurisdictional limitations imposed by the

Magnuson-Stevens Act and held plaintiff's "couching the action in different statutory language" was "not a hook which [could] remove the prohibitions of the [Magnuson-Stevens Act]." *Id.* (citation omitted); *see Sea Hawk Seafoods v. Locke*, 568 F.3d 757, 765 (9th Cir. 2009) (finding Magnuson-Stevens Act, rather than the APA, was applicable to fish processors' action challenging Magnuson-Stevens Act regulations promulgated to implement amendments to FMPs and that Magnuson-Stevens Act's jurisdictional requirements could not be avoided through artful pleading).

In this case, the essence of Plaintiff's request in its Motion—the closure of the commercial troll salmon fisheries in the federal waters off the coast of Southeast Alaska—places this matter squarely within the province of the Magnuson-Stevens Act. The Southeast Alaska commercial troll salmon fishery's authorization is granted by the regulations promulgated under the Magnuson-Stevens Act. 50 C.F.R. §§ 679.1, 679.3; *see also* Fisheries of the Exclusive Economic Zone Off Alaska; Pacific Salmon, 77 Fed. Reg. at 75,570. Plaintiff attempts to render its injunction request as a challenge exclusively related to its ESA and NEPA claims. (Compl. at ¶¶ 13, 116-120; Mot. at 19, 28; Reply at 8.). However, an action seeking to enjoin the authorization of a federal fishery, the regulations promulgated under the Magnuson-Stevens Act, cannot be couched solely as an ESA or NEPA challenge to avoid the Magnuson-Stevens Act. Though Plaintiff endeavors to characterize its action differently, Plaintiff's challenge necessarily entails the Magnuson-Stevens Act because an injunction in this matter would require the closure of a federal fishery. *See Turtle Island Restoration Network*, 438 F.3d at 945; s*ee also Blue Water Fishermen's Ass'n*, 158 F.Supp.2d at 121-22; *Sea Hawk Seafoods*, 568 F.3d at 765. Consequently, Plaintiff's Motion clearly serves as an attack on the regulations authorizing the delegation of authority for the commercial troll salmon fishery to the State of Alaska under the

Magnuson-Stevens Act, and therefore, the Magnuson-Stevens Act is applicable to Plaintiff's requested relief in this action.[3]

          *ii.*       *Section 1855(f)'s 30-Day Limitations Period*

Next, the Court must look to whether Plaintiff has timely brought a challenge under § 1855(f). In *Turtle Island*, the Ninth Circuit articulated the congressional directive regarding § 1855(f)'s limitations period is "clear and uncomplicated": a party seeking judicial review of "'[r]egulations promulgated by the Secretary under the [Magnuson-Stevens Act]' must do so within thirty days of their promulgation." *Turtle Island*, 438 F.3d at 943-44 (*citing Northwest Env'tl. Def. Ctr. v. Brennen,* 958 F.2d 930, 934 (9th Cir. 1992) (holding that regulations are "promulgated" within the meaning of §1855(f) when published in the Federal Register)); *see Norbird Fisheries v. Nat'l Marine Fisheries Serv.*, 112 F.3d 414, 416 (9th Cir. 1997) (holding that 16 U.S.C. § 1855(f)(1) "deprives the district court of jurisdiction to hear an attack on the regulations if review is not sought within 30 days of their promulgation.").

Additionally, other federal courts addressing the timeliness of challenges brought under the Magnuson-Stevens Act have determined that an action published in the Federal Register, or an action commenced under a regulation regarding the Magnuson-Stevens Act, is reviewable so long as it was done within 30-days of the action. *Oregon Trollers Ass'n v. Gutierrez,* 452 F.3d 1104, 1112 (9th Cir. 2006) (finding publication of management measures in Federal Register was "action" under Magnuson-Stevens Act and triggered 30-day limitations period); *Gulf*

---

[3] Given the applicability of the Magnuson-Stevens Act to Plaintiff's requested relief, Plaintiff could have sought a consistency review through the Salmon FMP. (Resp., Ex. B at 510-14.) Chapter 9 of the Salmon FMP allows for any member of the public to petition NMFS to review fishing management measures implemented by the State of Alaska. (*Id.* at 511 ("Any member of the public may petition NMFS to conduct a consistency review of any state management measure that applies to salmon fishing in the East Area if that person believes the management measure is inconsistent with the provisions of the FMP, the Magnuson-Stevens Act, or other applicable federal law.").)

1   *Fishermen's Ass'n v. Gutierrez*, 529 F.3d 1321, 1324 (11th Cir. 2008) (finding notice by

2   Secretary of Commerce delaying effective date for requirement that vessels with federal

3   commercial permits to harvest and sell reef fish in Gulf of Mexico be equipped with approved

4   monitoring system was an "action" within meaning of Magnuson-Stevens Act). Thus, the

5   Magnuson-Stevens Act provides a strict 30-day limitation on judicial review to NMFS's

6   promulgation of regulations or NMFS's actions taken under regulations that implement a FMP.

7   *See* 16 U.S.C. § 1855(f).

8          Given that Plaintiff's requested relief is circumscribed by the Magnuson-Stevens Act and

9   § 1855(f)'s 30-day limitations period to bring a challenge, Plaintiff's challenge is time-barred,

10  and the Court therefore lacks jurisdiction to issue relief. Here, the most recent regulations that

11  affirmed delegating management authority of the commercial troll salmon fishery to the State of

12  Alaska was published on December 21, 2012. 50 C.F.R. § 679.3(f); *see also* Fisheries of the

13  Exclusive Economic Zone Off Alaska; Pacific Salmon, 77 Fed. Reg. at 75,570. Even if the Court

14  were to construe the issuance of the 2019 BiOp as new action under the regulations, Plaintiff was

15  required to have brought its challenge within 30 days of the 2019 BiOp's issuance on April 5,

16  2019. (*See* Resp., Ex. A.) Regardless of whether Plaintiff sought to challenge the regulations

17  promulgated under the Magnuson-Stevens Act in 2012, or the issuance of the biological opinion

18  in April 2019, the Magnuson-Stevens Act's 30-day limitations period precludes this Court from

19  adjudicating Plaintiff's challenge.[4] *See Turtle Island Restoration Network*, 438 F.3d at 943-44.

20

21

22  _____

23  [4] Section 1855(f) applies "only to a very specific class of claims—those that clearly challenge regulations
    promulgated under the [Magnuson-Stevens Act]." *Turtle Island Restoration Network*, 438 F.3d at 948.
    Though the Court lacks jurisdiction to issue Plaintiff's requested relief under the Magnuson-Stevens Act,
    the Magnuson-Stevens Act does not itself bar Plaintiff from continuing to seek relief for its claims that the
    2019 BiOp violated the ESA and NEPA in this action. *See id.* at 949.

REPORT AND RECOMMENDATION - 17

Accordingly, because Plaintiff's Motion serves as a clear attack on the regulations under the Magnuson-Stevens Act authorizing the delegation of authority for the commercial troll salmon fishery in Southeast Alaska to the State of Alaska, the Magnuson-Stevens Act applies, and Plaintiff's Motion is barred pursuant to § 1855(f) because it was filed beyond the 30-day limitations period.

## IV.    CONCLUSION

The Court recommends Plaintiff's motion for a preliminary injunction (dkt. # 14) be DENIED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on June 26, 2020.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Richard A. Jones.

Dated this 9th day of June, 2020.

_MJPeterson_
_____
MICHELLE L. PETERSON
United States Magistrate Judge