HONORABLE RICHARD A. JONES

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| WILD FISH CONSERVANCY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BARRY THOM, *et al.*,<br><br>　　　　Defendants,<br><br>　　and<br><br>ALASKA TROLLERS ASSOCIATION,<br><br>　　　　Defendant-Intervenor. | Case No. 2:20-cv-417-RAJ-MLP<br><br>DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION |

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

TABLE OF ACRONYMS ..................................................................................................... iv

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 3

    I.    The Report and Recommendation Comports with the MSA and *Turtle Island*. .......... 3

    II.   Plaintiff Cannot Shoehorn its Relief into an Exception to *Turtle Island*. ..................... 6

    III.  The Report and Recommendation Properly Focused on the Relief Requested. ........... 7

    IV.  Plaintiff Failed to Avail Itself of a Consistency Review Under the FMP. ................... 9

    V.   Plaintiff Lacks Organizational and Representational Standing. ............................... 10

    VI.  Plaintiff Fails to Demonstrate Irreparable Harm. ...................................................... 12

CONCLUSION ..................................................................................................................... 12

*Defendants' Response to Plaintiff's Objections to*  
*Report and Recommendation*  
Case No. 2:20-CV-417-RAJ-MLP          i

U.S. Department of Justice  
P.O. Box 7611  
Washington, D.C. 20044  
(202) 305-0641

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page**

*Am. Bird Conservancy v. FCC,*
    545 F.3d 1190 (9th Cir. 2008) ................................................................................... 6, 10

*Am. Diabetes Ass'n v. Dep't of the Army*,
    938 F.3d 1147 (9th Cir. 2019) ....................................................................................... 11

*Blue Water Fishermen's Ass'n v. NMFS*,
    158 F. Supp. 2d 118 (D. Mass. 2001) ............................................................................. 3

*Cal. Save Our Streams Council, Inc. v. Yeutter*,
    887 F.2d 908 (9th Cir. 1989) ...................................................................................... 3, 7

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,
    789 F.3d 1075 (9th Cir. 2015) .......................................................................................... 6

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ......................................................................................................... 8

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ....................................................................................... 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*,
    528 U.S. 167 (2000) ....................................................................................................... 11

*Garcia v. Google*,
    786 F.3d 733 (9th Cir. 2015) ........................................................................................... 9

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
    681 F.3d 1006 (9th Cir. 2012) ....................................................................................... 10

*Klamath Siskiyou Wildlands Ctr. v. Boody*,
    468 F.3d 549 (9th Cir. 2006) ........................................................................................... 6

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) ......................................................................................................... 8

*Kramer v. Mosbacher*,
    878 F.3d 134 (4th Cir. 1989) ........................................................................................... 4

*Lewis v. Casey*,
    518 U.S. 343 (1996) ......................................................................................................... 9

*Lujan v. Defenders of Wildlife*,
      504 U.S. 555 (1992) ............................................................................................. 11, 12

*Miesen v. Henderson*,
      Case No. 1:10-cv-00404-CWD, 2017 WL 4270630 (D. Idaho Sept. 26, 2017) ................. 8

*Nat'l Food Processors Ass'n v. Klutznick*,
      507 F. Supp. 76 (D.D.C. 1981) ........................................................................................ 5

*Pac. Coast Fed'n of Fishermen's Ass'n v. Sec'y of Commerce*,
      494 F. Supp. 626 (N.D. Cal. 1980) ................................................................................ 10

*Pac. Rivers Council v. Thomas*,
      30 F.3d 1050 (9th Cir. 1994) ........................................................................................... 6

*Presidio Golf Club v. National Park Service*,
      155 F.3d 1153 (9th Cir. 1998) ....................................................................................... 12

*Sea Hawk Seafoods, Inc. v. Locke*,
      568 F.3d 757 (9th Cir. 2009) ....................................................................................... 3, 6

*Spokeo, Inc. v. Robins*,
      136 S. Ct. 1540 (2016) ................................................................................................... 12

*Turtle Island Restoration Network v. U.S. Department of Commerce*,
      438 F.3d 937 (9th Cir. 2006) ................................................................................. *passim*

*Washington v. Daley*,
      173 F.3d 1158 (9th Cir. 1999) ....................................................................................... 10

**Statutes**

16 U.S.C. § 1854 .......................................................................................................................... 2

16 U.S.C. § 1855(d) ..................................................................................................................... 2

16 U.S.C. § 1855(f) ...................................................................................................................... 3

16 U.S.C. § 1861(d) ..................................................................................................................... 4

**Federal Register**

77 Fed. Reg. 75,570 (Dec. 21, 2012) ........................................................................................... 2

*Defendants' Response to Plaintiff's Objections to*  
*Report and Recommendation*  
Case No. 2:20-CV-417-RAJ-MLP                iii

U.S. Department of Justice  
P.O. Box 7611  
Washington, D.C. 20044  
(202) 305-0641

# TABLE OF ACRONYMS

| | |
|---|---|
| APA | Administrative Procedure Act |
| BiOp | Biological Opinion |
| EEZ | Exclusive Economic Zone |
| ESA | Endangered Species Act |
| FERC | Federal Energy Regulatory Commission |
| FMP | Fishery Management Plan |
| MSA | Magnuson-Stevens Fishery Conservation and Management Act |
| NEPA | National Environmental Policy Act |
| NMFS | National Marine Fisheries Service |
| SRKW | Southern Resident Killer Whales |

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP         iv

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

# INTRODUCTION

The Magistrate Judge's Report and Recommendation properly determined that "Plaintiff's request in its Motion—the closure of the commercial troll salmon fisheries in the federal waters off the coast of Southeast Alaska—places this matter squarely within the province of the Magnuson-Stevens Act [MSA]" and that the Court lacks jurisdiction to issue the relief because Plaintiff missed the MSA's 30-day deadline. Dkt. # 51 (R & R) at 15, 17-18. The Report and Recommendation finds support not only in the statutory text and purpose, but also the case law interpreting the MSA's statute of limitations, and thus warrants approval and adoption.

Plaintiff's unavailing objections cannot overcome the sound basis for recommending denial of the Motion for Preliminary Injunction. *See* Dkt. # 54 (Obj.). Plaintiff plainly seeks an injunction "staying the National Marine Fisheries Service's ('NMFS') *authorizations* of commercial Chinook salmon fisheries in federal waters off the coast of Southeast Alaska." Obj. at 6 (emphasis added). This authorization flows only from the fishery management plan established under the MSA, which governs fisheries conservation and management in the Exclusive Economic Zone (EEZ), or federal waters. Because the MSA governs the requested relief, and there is no basis for it under the ESA, Plaintiff was required to satisfy the statute's 30-day judicial review provision.

Plaintiff fails in its endeavor to distance itself from this result. Plaintiff insists that its request for preliminary injunctive relief falls under exceptions identified by the Ninth Circuit in *Turtle Island Restoration Network v. U.S. Department of Commerce*, 438 F.3d 937 (9th Cir. 2006), but Plaintiff misreads that case. Obj. at 7-13. Plaintiff also appears to argue against its own position when it repeatedly states that "[t]he Conservancy's claims accrued through subsequent events *unrelated* to promulgation of MSA regulations." *Id.* at 11 (emphasis added).

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP              1

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

If, as Plaintiff suggests, its claims are not related to the MSA regulations, then the closure of the fishery sought in the Motion for Preliminary Injunction is an improper remedy. The Court also lacks jurisdiction because Plaintiff has failed to show representational or organizational standing as it pertains to Southern Resident killer whales (SRKW), Dkt. # 43 at 10-12. In any event, Plaintiff has failed to demonstrate that a preliminary injunction is warranted. *Id.* at 12-24. Thus, the Court should approve and adopt the Report and Recommendation.

## BACKGROUND

Central to Plaintiff's Motion for Preliminary Injunction is the connection between commercial troll fishing for salmon in the federal waters of Southeast Alaska and the SRKW population in the coastal and inland waters of the Pacific Northwest. The MSA provides the Secretary of Commerce, by and through NMFS, with the authority to regulate fisheries in the EEZ. 16 U.S.C. §§ 1854, 1855(d). NMFS has the primary responsibility for carrying out Fishery Management Plans (FMPs), but states can regulate fishing in federal waters if the FMP delegates management of the fishery, and state laws and regulations are consistent with the FMP. *Id.* § 1856(a)(3)(B). Such a delegation has occurred for the salmon fisheries in the EEZ of Southeast Alaska, which are managed by the State of Alaska. 77 Fed. Reg. 75,570 (Dec. 21, 2012); *see* Dkt. # 43 at 2-6. On April 5, 2019, NMFS issued a biological opinion (BiOp) that considered the effects of the ongoing delegation of authority to Alaska, funding of grants to Alaska, and funding of a conservation program for Chinook salmon listed as threatened under the Endangered Species Act (ESA) and SRKW listed as endangered under the ESA. Dkt. # 43 at 4-6. However, in the present Motion, Plaintiff only seeks to enjoin the authorization of the fishery under the MSA, and does not contest the other proposed actions analyzed in the BiOp.

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP         2

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

# ARGUMENT

## I.   The Report and Recommendation Comports with the MSA and *Turtle Island*.

The Report and Recommendation properly focused on "Plaintiff's request in its Motion" when it determined that "Plaintiff's challenge necessarily entails the Magnuson-Stevens Act because an injunction in this matter would require the closure of a federal fishery." R & R at 15 (citing *Turtle Island*, 438 F.3d at 945; *Blue Water Fishermen's Ass'n v. NMFS*, 158 F. Supp. 2d 118, 120-21 (D. Mass. 2001); *Sea Hawk Seafoods, Inc. v. Locke*, 568 F.3d 757, 765 (9th Cir. 2009)). This assessment captures the connection between Plaintiff's Motion and the MSA.

The MSA's 30-day statute of limitations and its prohibition against preliminary injunctive relief are parts of a statutory framework aimed at ensuring that those engaged in fisheries can have regulatory certainty. 16 U.S.C. § 1855(f); *see Turtle Island*, 438 F.3d at 948 ("ensur[ing] that regulations promulgated under the [MSA] are effectuated without interruption" fits the purpose of implementing FMPs that "will achieve and maintain, *on a continuing basis*, the optimum yield from each fishery"). Under this regime, challenges can be reviewed in advance of a fishing season and fishers can plan their crews, supplies, and destinations. With this statutory purpose in mind, the Ninth Circuit has determined that the strict jurisdictional limit imposed by Congress cannot be avoided "through careful pleading." *Turtle Island*, 438 F.3d at 945 (quoting *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989)). In *Turtle Island*, the court determined that an effort to "withdraw their authorization of swordfish longlining" represented a challenge to the MSA regulations, even though the MSA itself was not mentioned in the plaintiff's complaint or motion. 438 F.3d at 945; *see also Sea Hawk Seafoods*, 568 F.3d at 766 ("the essence of [the] complaint remains that the Secretary failed to conform to his responsibilities under the [American Fisheries Act] and/or the MSA").

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP          3

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

The Report and Recommendation properly concluded that the relief requested by Plaintiff—enjoining the authorization for the commercial troll fishery—is subject to the 30-day review period for the same reason that the *Turtle Island* challenges were governed by the MSA: the Motion "serves as a clear attack on the regulations under the Magnuson-Stevens Act authorizing the delegation of authority" for the fishery. R & R at 18; *see Turtle Island*, 438 F.3d at 945 ("the [MSA] regulations are being attacked"). Plaintiff fails to rebut this conclusion. As an initial matter, Plaintiff's attempt to reframe the scope of the question before the Court should be rejected. Plaintiff contends that its "claims" arose as a result of events after, or unrelated to, any MSA regulations. Obj. at 11. But the precise question raised by Defendants in opposition to the Motion for Preliminary Injunction was whether the MSA applies to the relief requested. Dkt. # 43 at 7 ("A. The MSA's Statute of Limitations Bars the Requested Relief."); *contra* Obj. at 15. And this was the precise question answered by the Magistrate Judge. R & R at 16. As explained in greater detail below, the fact that Plaintiff *may* be able to challenge aspects of the 2019 BiOp does not alter the conclusion that the remedy sought in the Motion is a direct attack on the authority to engage in fishing, which is governed by the MSA.

Plaintiff goes to great lengths to attempt to avoid the application of the MSA, but each approach is flawed. *First*, Plaintiff asserts that "Section 1855(f) does not govern every claim related to a MSA fishery." Obj. at 8. This statement is a red herring. NMFS has not engaged in an enforcement action here, and so Plaintiff simply presents an irrelevant exception to the rule. *See Kramer v. Mosbacher*, 878 F.3d 134, 137 (4th Cir. 1989) ("The Secretary has not taken any affirmative action against plaintiffs. . . . As such, this case is ultimately subject to review under the terms of § 1855(d), not § 1861(d).").

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP    4

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

*Second*, Plaintiff's substantial reliance on dicta from *Turtle Island*, Obj. at 9-10, is misplaced. This dicta addressed an argument from the appellant that the application of the 30-day review period would exempt environmental laws from judicial oversight. *Turtle Island*, 438 F.3d at 948. Plaintiff emphasizes the court's statement that the MSA "regime would not, as Turtle Island suggests, affect every claim that may arise later." *Id.* Plaintiff suggests that this language established a temporal distinction, such that any ESA or National Environmental Policy Act (NEPA) claim that arises or "accrue[s]" after the promulgation of an MSA regulation would not be covered the 30-day review period. *See* Obj. at 7, 10. But Plaintiff's proposed exception would swallow the rule in *Turtle Island*—the key was not *when* the claim accrued, but rather the "true nature" of *what* was being challenged. 438 F.3d at 946. This is confirmed by the court's statement that Section 1855(f) applies to "those [claims] that clearly challenge regulations promulgated under the [MSA]," which is the one part of the quoted language not emphasized by Plaintiff. *Id.* at 948. If a plaintiff seeks to challenge the authorization for a fishery, then the MSA's 30-day review period applies, whenever the challenge occurs, and whatever the basis for the challenge. "To hold otherwise would undermine the time limits set by Congress." *Nat'l Food Processors Ass'n v. Klutznick*, 507 F. Supp. 76, 78 (D.D.C. 1981).

*Third*, Plaintiff presents a flawed interpretation of how the exceptions described in this dicta would apply in the two types of cases mentioned by the court. *See* Obj. at 10. Plaintiff argues that for a failure to reinitiate consultation claim under the ESA or a failure to supplement a prior NEPA document, "[t]he relief available would include an injunction against the fishery pending a new BiOp or NEPA document." Obj. at 10. Yet Plaintiff offers no legal support to directly contradict the holding in *Turtle Island*. To the extent that the cases cited in Plaintiff's previous paragraph are intended to provide support, a closer look at each reveals their

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP        5

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

inapplicability. In one of them, the court denied the injunctive relief. *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1092 (9th Cir. 2015). In the other two, the court enjoined forest projects and timber sales, respectively. *Pac. Rivers Council v. Thomas*, 30 F.3d 1050, 1056-57 (9th Cir. 1994); *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 562 (9th Cir. 2006). Neither enjoined a fishery that is authorized under the MSA, and neither involved an action that was subject to a distinct statute of limitations prohibiting preliminary relief.[1]

*Fourth*, Plaintiff charts a misguided course when it contends that Congress would not have precluded "unrelated" claims that did not accrue until they "would already be time-barred." Obj. at 11. The statute of limitations for a challenge seeking to enjoin a fishery in the EEZ must apply in some manner. And if a plaintiff tries to use ESA and NEPA claims as a backdoor to that relief, the statute of limitations will apply. Indeed, "for the MSA's limited judicial review period to have any meaning, it must apply to actions that—like the one here—necessarily challenge the Secretary's obligations under the MSA." *Sea Hawk Seafoods*, 568 F.3d at 765 n.14.

## II. Plaintiff Cannot Shoehorn its Relief into an Exception to *Turtle Island*.

Plaintiff draws a distorted comparison between the facts of *Turtle Island* and this case in an attempt to fall outside the Ninth Circuit's holding. Obj. at 11-12. According to Plaintiff, its claims came later and were "unrelated to . . . any MSA regulations" and therefore are not time-barred. Obj. at 12. But such a cabined reading misunderstands both the thrust of *Turtle Island* and the link between Plaintiff's requested relief and the MSA. Courts reject efforts to escape strict jurisdictional limits "through artful pleading." *Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008). In *California Save Our Streams Council*, for example, the court

---

[1] To be clear, the government acknowledges that even if the Motion for Preliminary Injunction is denied, there may be other remedies that are available to Plaintiff so long as they are not tied to the fishery authorization and Plaintiff ultimately prevails on those claims. R & R at 17 n.4.

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP   6

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

rejected plaintiffs' attempt to frame the case as something other than an attack on the Federal Energy Regulatory Commission's (FERC) action: "it is clear that the suit is an attempt to restrain the licensing procedures authorized by FERC." 887 F.2d at 912. Likewise, Plaintiff's Motion seeks to restrain the fishing authorized by NMFS.

Plaintiff's attempt to analogize this case with the exceptions identified in *Turtle Island* is unsound. *See* Obj. at 12. Contrary to Plaintiff's contention, Plaintiff's challenge to NMFS's BiOp issued after reinitiation cannot be equated to a challenge alleging a failure to reinitiate, because, through its attack on the completed consultation, Plaintiff seeks to close the fishery rather than to compel reinitiation. *See id*. With respect to the NEPA claim, Plaintiff misunderstands the implications of the dicta in *Turtle Island*. A plaintiff could pursue such a NEPA claim in the context of its challenge to the 2019 BiOp, and if successful the remedy would be a remand to comply with NEPA procedures. Indeed, that it is what Plaintiff *appeared* to seek in the Complaint. *See* Dkt. # 1 ¶ 118 (alleging NMFS violated NEPA by not preparing a new or supplemental analysis on the BiOp and incidental take statement). However, in objecting to the Report and Recommendation, Obj. at 12, Plaintiff argues (and clarifies) that its NEPA allegation actually goes to the "effects of the fishery under existing regulations." *Id.* This kind of end-run around the MSA is exactly what *Turtle Island* prevents.

Plaintiff's toggling between declaring that the fishery is the "underlying action" and that its claims are "unrelated" highlight the untenable nature of its argument. *See* Obj. at 10, 11.

**III.    The Report and Recommendation Properly Focused on the Relief Requested.**

There is no dispute that the focus of Plaintiff's Motion for Preliminary Injunction was a stay of the "authorizations of commercial Chinook salmon fisheries." Obj. at 6; Dkt. # 14 at 9. Because the authority for the fisheries flows from the MSA, the Report and Recommendation

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP         7

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

appropriately focused on whether it had "jurisdiction to issue relief." R & R at 17. Plaintiff misses the mark with its all-or-nothing approach to the application of the MSA's judicial review provision. Obj. at 15-16. The Ninth Circuit rejected the "stand alone challenge[s] to agency action[s]" but Plaintiff fails to acknowledge the reason, which is articulated in the very next sentence of the opinion: "Turtle Island is really trying to attack and undo the regulations implementing the Fishery Management Plan amendment, which reopens the swordfish fishery." *Turtle Island*, 438 F.3d at 945. In similar fashion, Plaintiff misreads the court's language about "effective enforcement of environmental laws in commercial fisheries." *Id.* at 948. Here, the Ninth Circuit created a shield to ensure that future ESA or NEPA claims, such as claims of failure to act or challenges to future BiOps, could go forward. Under this shield, Plaintiff can challenge the BiOp and seek a remand, but it cannot use that as a basis to obtain an injunction of the fishery. Plaintiff attempts to turn the shield into a sword by arguing that it can use future ESA and NEPA claims to "attack and undo" fishery regulations. The Court should reject this effort.

Plaintiff's all-or-nothing approach also ignores the overarching principle that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). In applying this principle, courts consider their jurisdiction over specific claims and forms of relief. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("a plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief sought") (citations omitted); *Miesen v. Henderson*, Case No. 1:10-cv-00404-CWD, 2017 WL 4270630, at *8 (D. Idaho Sept. 26, 2017) ("The statutes of limitation for declaratory relief follow those set forth above for each type of relief requested."). Further, "[i]f the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP        8

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

Here, there exists a "mismatch between [Plaintiff's] substantive [ESA and NEPA] claim[s] and the dangers [it] hopes to remedy through an injunction." *Garcia v. Google*, 786 F.3d 733, 744 (9th Cir. 2015). Plaintiff aims to protect 0.2% and 0.6% of the SRKW's prey base in the Salish Sea and along the coast, respectively, by closing the fishery, *see* Dkt. # 43 at 22, but "[t]his relief is not easily achieved under" the ESA and NEPA. *Garcia*, 786 F.3d at 745. The MSA provides the authority to fish and is thus the only avenue for halting the fishery. The Report and Recommendation properly determined that the Court's jurisdiction is limited.

**IV.     Plaintiff Failed to Avail Itself of a Consistency Review Under the FMP.**

The Report and Recommendation correctly noted that Plaintiff could have pursued its concerns through the petition process provided in the Salmon FMP. R & R at 16 n.3 (citing Dkt. # 43, Ex. B at 510-14). Because the Salmon FMP delegates management of the salmon fisheries in the EEZ of Southeast Alaska to the State of Alaska, the State establishes management measures. Chapter 9 of the Salmon FMP establishes an avenue to petition NMFS to review those state management measures for consistency with federal laws. Dkt. # 43, Ex. B at 511-13. A person must first submit a proposal for a regulatory change to the Alaska Board of Fisheries. *Id.* at 512. If that person receives an adverse decision, it can then petition NMFS to review the measure for consistency with the FMP, the MSA, or "*other applicable federal law*," including the ESA. *Id.* at 511 (emphasis added). Once NMFS reaches a final decision, an aggrieved party could seek judicial review in federal district court.

Plaintiff protests that this option for a consistency review would not be feasible because the ESA and NEPA do not apply to Alaska's management measures, but that argument

*Defendants' Response to Plaintiff's Objections to*
*Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP             9

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

misunderstands the administrative process. *See* Obj. at 13 n.1. For example, if a person believes that a measure is inconsistent with the 2019 BiOp that resulted from consultation under ESA Section 7, it could seek a review under this FMP process. *See Am. Bird Conservancy*, 545 F.3d at 1195 ("Nothing prevents American Bird from continuing to pursue its claims through the FCC's administrative process, obtaining an adverse final order, and challenging *that* order in this court."). NMFS would have to review and decide any petition encompassing ESA or NEPA related challenges. That decision would then be subject to judicial review, provided there was a timely challenge pursuant to the MSA.[2]

The Report and Recommendation also correctly noted that "whether Plaintiff sought to challenge the regulations promulgated under the Magnuson-Stevens Act in 2012, or the issuance of the biological opinion in April 2019," the 30-day review period precludes the Court from issuing the requested relief. R & R at 17. And even if Plaintiff's request for preliminary injunctive relief is considered to be timely, the MSA bars preliminary injunctions. *See*, *e.g.*, *Pac. Coast Fed'n of Fishermen's Ass'n v. Sec'y of Commerce,* 494 F. Supp. 626, 627-29 (N.D. Cal. 1980) ("On its face, Section 305(d) [1855(d)] precludes the grant of a preliminary injunction.").

**V.    Plaintiff Lacks Organizational and Representational Standing.**

The Report and Recommendation did not reach the issue of standing, however, Plaintiff's lack of standing provides an additional jurisdictional bar to Plaintiff's requested relief. *See* R & R at 13 n.2; Dkt. # 43 at 10-12. In Plaintiff's Motion, the allegations of irreparable harm focused

---

[2] Plaintiff asserts that its notice of intent did not lead to any action, Obj. at 13 n1., but this does not answer the question of why it waited more than 30 days to challenge the fishery. To the extent that Plaintiff argues that the ESA's 60-day pre-suit notice requirement is in tension with the MSA's 30-day review period, there would be no need to bring suit challenging an MSA regulation pursuant to the ESA's citizen-suit provision because the MSA provides for review of claims of ESA violations. *See Washington v. Daley*, 173 F.3d 1158, 1170 n.16 (9th Cir. 1999). Plaintiff could have also filed an APA challenge to the BiOp without waiting the required 60 days. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012); Dkt. # 1 ¶ 116.

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP            10

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

on the impact to SRKW. Dkt. # 14 at 9. Yet Plaintiff fails to demonstrate organizational and representational standing as it pertains to SRKW. Dkt. # 43 at 10-12.

In its Objections, Plaintiff does not raise organizational standing, but disputes that it lacks representational standing. Obj. at 16-17. Organizational standing requires demonstration of "(1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question." *Am. Diabetes Ass'n v. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019). Plaintiff has not shown how its mission, which is focused on wild fish preservation, is tied to SRKW. Nor has it shown a diversion of resources.[3] Representational standing requires that one of the organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 181 (2000). Plaintiff fails to meet the second prong because it has not demonstrated how SRKW are pertinent to its overall mission, which is the preservation of wild fish and their habitat. Dkt. # 1 ¶ 14. Plaintiff's meager reference to two general terms in a declaration falls short. *See* Obj. at 17. Both "ecosystems" and "aquatic species" are far too broad to confer standing here.

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 (1992), the Supreme Court rejected an "ecosystem nexus" theory to standing whereby "any person who uses *any part* of a 'contiguous ecosystem' adversely affected by a funded activity has standing even if the activity is located a great distance away." The same holds true where an ecosystem nexus would sweep in *any species* within one ecosystem, regardless of whether a plaintiff had demonstrated a

---

[3] Plaintiff's argument that is has organizational standing for the NEPA claim is incorrect. *See* Dkt. # 44 at 12. Though informational injury is a type of injury in fact, the organization must still meet the second prong of organizational standing. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015).

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP                11

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

concrete *and* particularized injury in fact based on its interest in that species. *See id*. at 566 (noting that harm is perceptible where a person who "observes or works with a particular animal"); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Plaintiff invokes *Presidio Golf Club v. National Park Service*, 155 F.3d 1153 (9th Cir. 1998). Obj. at 17. But that case does not salvage its argument because unlike *Presidio*, there is no "corollary purpose" that covers SRKW. 155 F.3d at 1158. Plaintiff fails to meet the germaneness standard because it has not supplied evidence that SRKW are part of its mission.

## VI. Plaintiff Fails to Demonstrate Irreparable Harm.

Even if the Court finds it has jurisdiction to issue the requested relief and that Plaintiff has standing as it pertains to SRKW, a denial of the Motion for Preliminary Injunction is appropriate because the Plaintiff has failed to meet the standard for emergency relief. Dkt. # 43 at 12-24. Perhaps most importantly, Plaintiff has not shown that it will suffer irreparable harm before the challenge to the BiOp is adjudicated. *Id.* at 20-23. Specifically, there is no evidence that the 2020 summer fishery will decrease the number of SRKW to a point that irreparably harms Plaintiff.[4] *Id.* Moreover, the public interest weighs against injunctive relief because it will interfere with NMFS's actions—taken in concert with regional partners—that are aimed at mitigating adverse effects on SRKW. *Id.* at 23-24.

## CONCLUSION

For these reasons, this Court should affirm and approve the Magistrate Judge's Report and Recommendation and deny Plaintiff's Motion for Preliminary Injunction.

---

[4] Plaintiff erroneously states that "the winter harvest season [that] commences in October" could be enjoined. Obj. at 6. In fact, the only time that the EEZ is open is the summer season. Dkt. # 43, Ex. B. at 489 ("All outer coastal areas, including the EEZ, are closed during the winter troll fishery. . . . Because the winter troll fishery does not occur in the EEZ, the fishery is outside the scope of this FMP.").

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP   12

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

Dated:  June 29, 2020                    Respectfully submitted,

JEAN E. WILLIAMS
Deputy Assistant Attorney General
SETH M. BARSKY
Chief
S. JAY GOVINDAN
Assistant Section Chief

OF COUNSEL:

/s/ Frederick H. Turner

SHEILA LYNCH                             FREDERICK H. TURNER
Office of General Counsel                Trial Attorney
National Oceanic and Atmospheric         U.S. Department of Justice
   Administration                        Environment and Natural Resources Division
Seattle, WA                              Wildlife and Marine Resources Section
                                         Ben Franklin Station, P.O. Box 7611
DEMIAN SCHANE                            Washington, D.C. 20044-7611
Office of General Counsel                Phone: (202) 305-0641
National Oceanic and Atmospheric         Fax: (202) 305-0275
   Administration                        Email: frederick.turner@usdoj.gov
Juneau, AK

COBY HOWELL
Senior Trial Attorney
U.S. Department of Justice
c/o U.S. Attorney's Office
1000 SW Third Avenue
Portland, Oregon 97204-2902

Tel: (503) 727-1023 | Fax: (503) 727-1117
Email: Coby.Howell@usdoj.gov

*Attorneys for Defendants*

---

*Defendants' Response to Plaintiff's Objections to*      U.S. Department of Justice
*Report and Recommendation*                              P.O. Box 7611
Case No. 2:20-CV-417-RAJ-MLP          13                 Washington, D.C. 20044
                                                         (202) 305-0641

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Washington by using the CM/ECF system, which will serve a copy of the same on the counsel of record.

 */s/ Frederick H. Turner*
FREDERICK H. TURNER
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 305-0641
Fax: (202) 305-0275
Email: frederick.turner@usdoj.gov

*Attorney for Defendants*

*Defendants' Response to Plaintiff's Objections to Report and Recommendation*
Case No. 2:20-CV-417-RAJ-MLP           14

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641