UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILD FISH CONSERVANCY, | CASE NO: 2:20-cv-00417-RAJ-MLP |
| Plaintiff | **MOTION TO INTERVENE** |
| vs. | NOTE ON MOTION CALENDAR: March 26, 2021 |
| BARRY THOM, et al., | |
| Defendant-Intervenor | |
| and | |
| ALASKA TROLLERS ASSOCIATION | |
| Defendant-Intervenor | |

## I.    Introduction

The State of Alaska ("State") moves for intervention as a matter of right as a defendant in this action, pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. The State seeks to participate fully in the briefing and other proceedings in this case in order to protect the State's interest in the management of the Southeast Alaska ("SEAK") chinook fishery, an interest that stands to be significantly impacted by relief Wild Fish Conservancy ("WFC" or "Plaintiff") seeks

MOTION TO INTERVENE - 1 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Telephone:  206-395-7630

in this case. The State has a right to intervene under Fed. R. Civ. Proc. 24(a)(2) because the State has a significant interest relating to the subject of the action; the disposition of the action may impair or impede the State's ability to protect its interest; this motion is timely; and the existing parties may not adequately represent the State's interest. Alternatively, permissive intervention should be granted under Fed. R. Civ. Proc. 24(b).

This Motion is supported by the points and authorities discussed below.

## II.      Factual and Procedural Background

At issue in this case is the validity of the biological opinion that considers the effects of fisheries management in Southeast Alaska, governed in accordance with the Pacific Salmon Treaty ("Treaty"), on the endangered Southern Resident Killer Whales.

The Treaty is a bilateral agreement between the United States and Canada for the purposes of commercial, recreational, subsistence, and tribal fishing arrangements on the border between Washington and Canada, and on the border between Alaska and Canada.[1] The Treaty sets harvest limits on salmon fisheries from Alaska down the coast to Oregon and states that each party shall conduct its fisheries to prevent overfishing, provide for optimum production, and provide for each Party to receive benefits equivalent to the production of salmon originating in its waters. In fulfilling their obligations pursuant to the Treaty, the Parties are tasked with cooperating in management, research, and enhancement. The Treaty is periodically renegotiated, and the current agreement is in place from 2019 through the 2028.

The National Marine Fisheries Service ("NMFS") is responsible for management, conservation, and protection of the nation's marine resources within the United States waters.

---

[1] Each country retains jurisdictional management authority of their fisheries but manages them in a manner that is consistent with the Treaty.

MOTION TO INTERVENE - 2 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Telephone:  206-395-7630

Primarily, NMFS manages fisheries within the Exclusive Economic Zone ("EEZ"), which includes waters from 3 to 200 miles off the U.S. coast. NMFS has delegated certain management authority in Southeast Alaska to the State of Alaska, as allowed for by the Magnuson-Stevens Act. To consider the impact of the new ten-year Treaty and the corresponding delegation of salmon management to Alaska, NMFS prepared the Endangered Species Act (ESA) Section 7(a)(2) Biological Opinion, WCR-2018-10660 ("BiOp").

The BiOp specifically examined the effects of delegation of management authority in the EEZ to the State of Alaska, funding to implement the new 2019 Treaty Agreement in Southeast Alaska, and funding to address limiting factors affecting Puget Sound Chinook salmon and Southern Resident killer whales. With respect to the delegation of authority and funding, the BiOp found that because the SEAK fisheries occur outside the Southern Residents' range, there is no potential for direct interaction between whales and fishing vessels or gear (i.e., there is no overlap in time and space). The section of the BiOp pertinent to this litigation determined that they were not able to quantify how reductions in prey would impact the Southern Residents. However, the BiOp found it likely that SEAK fisheries would only rarely have a measurable impact Southern Resident prey availability.[2] Furthermore, the BiOp stated that the largest salmon stocks contributing to the SEAK fisheries catch are currently not considered at the top of the priority prey list for Southern Residents. Moreover, the BiOp describes hatchery and habitat mitigation efforts that are anticipated to offset some of the loss from all fisheries managed under the Treaty, including the SEAK fisheries.

---

[2] 253, paragraph starting "In, summary".

Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206-395-7630

Wild Fish Conservancy filed a lawsuit, charging that NMFS violated both the ESA and the National Environmental Policy Act ("NEPA") by adopting and implementing the BiOp. The State has a vital interest in the continued prosecution of the SEAK EEZ fishery, which the plaintiffs seek to shut down in this litigation. The State also has an interest in the welfare of its citizens, including their economic welfare, which is, in part, directly related to its fisheries and those federal fisheries adjacent to its waters. As detailed herein, the State has a significant financial stake in the SEAK EEZ fishery and closing the fishery would have a measurable negative impact on the State's economic interests. The State's intervention is timely and would not cause prejudice or delay to any involved party. Furthermore, as explained below, despite having similar goals, the above-captioned Defendants do not adequately represent the State's interests. Therefore, the Court should allow the State to intervene as a matter of right under FRCP 24(a)(2). Alternatively, if this Court finds the State is not entitled to intervene as a matter of right, the State should be granted permissive intervention under FRCP 24(b).

## III. The State Has a Right to Intervene Under Rule 24(a)

The State has a right to intervene under Fed. R. Civ. Proc. 24(a) in order to defend the State's interests against the claims asserted by WFC. Rule 24(a)(2) provides that on timely motion, the court must permit intervention by anyone who:

> "[C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

When analyzing a motion to intervene as a matter of right under FRCP 24(a)(2), the Ninth Circuit applies a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical

MOTION TO INTERVENE - 4 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206-395-7630

matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011); (*citing Sierra Club v. US EPA*, 995 F.2d 1478, 1481 (9th Cir.1993)). Rule 24(a) is construed broadly, in favor of the applicants for intervention. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 894 F.3d 1030, 1037 (9th Cir. 2018); (*citing Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924, 926 (9th Cir. 1990)). Practical and equitable considerations guide courts in determining whether intervention is appropriate. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001); *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broad access to courts.").

### A.      The State's Motion is Timely

The test by which courts determine timeliness for intervention requires the consideration of three factors: (1) the stage of the proceedings at which intervention is sought; (2) the prejudice that would be suffered by other parties if intervention were granted; and (3) the reason for and length of the delay in seeking intervention. *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319–20 (9th Cir. 1997). The State's proposed intervention satisfies these timeliness requirements.

As to the first factor, this motion is being filed at the relative beginning of these proceedings. While the complaint was filed in March of 2020, as of the date of this pleading no substantive motions have been filed save the plaintiff's motion for a preliminary injunction that this Court recently denied. The State intends to fully comply with all schedules and deadlines

MOTION TO INTERVENE - 5 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Telephone:  206-395-7630

established by this Court. As such, this factor weighs in favor of finding that the State's Motion to Intervene is timely.

Second, the State's participation will not prejudice the other parties. The State has attached a proposed Answer to Plaintiffs' Complaint contemporaneously with this Motion to Intervene. The State will endeavor to avoid duplication of issues with other parties. Moreover, given that this litigation is in its early stages, the State's intervention will not cause undue delay or adversely impact any parties' rights in this action. This factor also weighs in favor of finding that the State's Motion to Intervene is timely.

The third factor also weighs in the State's favor, as granting the Motion to Intervene at this stage will not cause any delays. Other than the preliminary injunction, no substantive actions have taken place between the original filing of the Complaint and the State's instant Motion to Intervene. Thus, the State's Motion to Intervene is timely.

### B. The State Has a Significantly Protectable Interest in this Case

The second element for intervention as a matter of right requires that the proposed intervenor demonstrates a "significantly protectable interest" by showing that "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [its] legally protectable interest." *Sw. Ctr. for Biological* Diversity, 268 F.3d at 818. The Ninth Circuit applies this broad interest criterion to involve "as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citation omitted); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818. It is generally sufficient that the interest asserted is protectable under some law, and that there is a relationship between the protected interest and the claims at issue. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818. Here, the State has several specific and significantly protectable interests in the subject matter of the

MOTION TO INTERVENE - 6 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206-395-7630

instant dispute. As detailed below, these interests, whether viewed individually or collectively, satisfy the second element of the intervention analysis.

First, the State has a direct economic interest in the results of the instant dispute. The SEAK salmon fishery has averaged $806 million in output, $484 million in gross domestic product, $299 million in labor income or wages, and 6,600 full time equivalent jobs. (Declaration of Vincent-Lang, ¶ 14). The fishing industry is clearly a critical aspect of Alaska's economy. *Id*. Fishing is also a vitally important part of the social and economic fabric of SEAK coastal communities. *Id*. Many Alaskans rely on the industry's activities for employment, and the State and its municipalities collect landing tax revenues from that are subsequently used to provide services to their citizens. *Id.* at ¶ 15. While the revenue generated is important to Alaska's economy as a whole, it is particularly important to the Southeast communities in which the landings occur, as it provides for municipal school districts, school bond debt, utilities, and other municipal or borough services. *Id*. In addition to the fishery landing tax, municipalities may impose their own taxes, and commercial fishing operations contribute a share of the motor fuel and corporate income tax revenues collected by the State. *Id*.

Second, the State has an interest in the management and regulation of its fish and wildlife. Under Alaska law, responsibility for fisheries management in Alaska is constitutionally vested in the Alaska legislature under Alaska Const. Art. VIII, § 2, but regulatory authority has been statutorily delegated to the Alaska Board of Fisheries and administrative authority to the Commissioner of the Alaska Department of Fish and Game. *See, e.g.,* AS 16.05.010; AS 16.05.020; AS 16.05.050; AS 16.05.060; AS 16.05.221; AS 16.05.241; AS 16.05.251. Subject to a subsistence priority, the Alaska Board of Fisheries is authorized under state law to allocate fishery resources among various user groups including personal use, sport, and guided sport

MOTION TO INTERVENE - 7 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206-395-7630

fisheries, as well as commercial fisheries. AS 16.05.258; AS 16.05.251(e); 5 AAC 39.205.[3] Under

this authority, the Alaska Board of Fisheries has adopted comprehensive fishery regulations for

the SEAK commercial troll fisheries. *See e.g.* 5 AAC 29.001 et seq.

Additionally, the federal waters fishery is an important part of the SEAK fishery,

comprising approximately 87 percent of the fishable area. *Id*. at ¶ 12. WFC seeks an injunction

that will close salmon fisheries in the EEZ adjacent to Southeast Alaska. Any such closure will

have significant adverse impacts on the State's economy and its citizens' welfare.

Whether the party moving to intervene demonstrates sufficient interest to intervene is a

"practical, threshold inquiry" for which "[n]o specific legal or equitable interest need be

established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993); aff'd *Greene v. Babbitt*,

64 F.3d 1266 (9th Cir. 1995). The moving party must demonstrate a "significantly protectable

interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971), cited in *Southern Christian*

*Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984).

This standard clearly is met here. As discussed above, the State has vital interests in the

EEZ fishery off the coast of Southeast Alaska. WFC's requested relief, setting aside the BiOp,

enjoining the EEZ fishery, and enjoining the delegation of authority to manage the EEZ fishery

to Alaska unarguably confer upon the State a significantly protectable interest in this litigation.

---

[3] Personal use fishing is intended as a substitute for subsistence fishing and is often permitted in
state nonsubsistence or federal nonrural areas, or in other areas where an adequate demonstration
of customary and traditional use has not been made to support provision of a subsistence priority.
*See, e.g.*, 5 AAC 77.001. Findings that taking or use has been "customary and traditional" are
generally required in order to provide a subsistence preference under either state or federal law,
and only rural residents are eligible for the federal preference. *See* AS 16.05.258(a); 50 C.F.R. §
100.5(a)-(b); 50 C.F.R. § 100.16.

MOTION TO INTERVENE - 8 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Telephone:  206-395-7630

Courts have consistently held that rights such as those asserted by the State are sufficient to meet the standards required to intervene as a matter of right. *See, e.g., Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924 (9th Cir.1990) (finding that a City's interests in taxing and regulating contested lands were significantly protectable interests warranting intervention as of right); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 997-98 (8th Cir.1993) (finding that county's and landowners' property values that could be affected by the outcome of the litigation were protectable interests warranting intervention); *Douglas County v. Babbitt*, 48 F.3d 1495, 1501 (9th Cir.1995) (holding that a county asserting proprietary environmental interests in lands adjacent to federal land had standing to challenge the Secretary of the Interior's failure to comply with NEPA); *Sierra Club v. Robertson*, 960 F.2d 83-84 (8th Cir.1992) (finding that a State's asserted interests in fish and wildlife, recreational opportunities, and water quality were sufficient to proceed as plaintiff-intervenor challenging the Forest Service's forest management plan). For the aforementioned reasons, the State has several significantly protectable interests in this dispute and must be able to fully defend the BiOp and the delegation of authority authorizing the State to manage salmon fisheries in the EEZ off the coast of Southeast Alaska.

### C. Disposition of the Action May Impair or Impede the State's Ability to Protect its Interest

A third criterion for intervention as of right is that the action's disposition may, as a practical matter, impair or impede the intervenor's ability to protect the asserted interest. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d at 1177. The question of impairment is not separate from the question of existence of an interest. *See, e.g., Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978). In reviewing this prong, courts look "to the 'practical consequences' of denying intervention, even where the possibility

MOTION TO INTERVENE - 9 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206-395-7630

of future challenge to the regulation [remains] available." *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977).

Disposition of this action in Plaintiffs' favor would set aside the BiOp, and the ITS therein, and lead to the closure of the salmon fishery in the EEZ off the coast of Southeast Alaska for an unknown amount of time. In addition to the direct impacts such a result would have on Alaska's management of its participation in transboundary fisheries, its natural resources and its economy, as discussed above, disposition of this lawsuit may have far-reaching future consequences to the State. Pursuant to the principles of res judicata, claim preclusion, stare decisis, and related doctrines, the effects of the legal and factual determinations made in this litigation may constrain the State's ability to defend similar challenges in parallel or subsequent judicial proceedings or administrative actions. *U.S. ex rel. McGough v. Covington Technologies Co.*, 967 F.2d 1391, 1396 (9th Cir. 1992); *Fund For Animals, Inc. v. Norton*, 322 728, 735 (D.C. Cir. 2003) (finding disposition of lawsuit impaired intervenor's ability to protect its interests regardless of whether intervenor could reverse an unfavorable ruling by bringing a separate lawsuit, noting that "[t]here is no question that the task of reestablishing the status quo if [plaintiffs succeed] in this case will be difficult and burdensome.").

In *Sierra Club v. United States,* 995 F.2d 1478 (9th Cir. 1993), the Ninth Circuit rejected the Sierra Club's assertion that the City of Phoenix could protect its interests in subsequent administrative proceedings. The court noted "the relief sought by the Sierra Club would constrain the EPA, which would not then be free to violate the terms of the declaratory and injunctive relief in later administrative proceedings." *Id.* at 1486. The Court also observed the City of Phoenix had no avenue to administratively appeal the constraints that might be placed on EPA's regulatory duties by virtue of an injunction.

MOTION TO INTERVENE - 10 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206-395-7630

As discussed above, the broad relief plaintiffs seek against the Secretary, if granted, will impact the State's varied interests in this lawsuit. There is no other venue, forum, or opportunity available for protection of the State's interests.

Without intervention, the State would be facing the same kind of situation here. If Plaintiff's claims are successful, NMFS would be under constraints imposed by judicial directives and interpretations in limiting the State's actions under the salmon fishery management plan in Alaska and the State will have had no say in those directives or interpretations. For these reasons, the State satisfies the impairment requirement.

**D.      The Federal Defendants May Not Adequately Represent the State's Interests**

If an applicant meets the conditions of timeliness and impairment of interest, intervention shall be permitted "unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). According to the United States Supreme Court, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10, (1972) (citation omitted). In assessing representation, courts consider (1) whether the present parties' interests are such that they will undoubtedly make all of the intervenor's arguments; (2) whether the present parties are capable and willing to make those arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822. The inquiry should focus on the subject of the action, not just the particular issues before the court at the time of the motion. *Id*. at 823. Where an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. *Id*.

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Telephone:  206-395-7630

In this case, the State's interest and the federal defendants' interests and legal positions may be somewhat different. Because the federal defendants do not share the same proprietary and sovereign interests as the State, they cannot be counted upon to adequately represent the State's multiple interests. While the federal defendants have an interest in the continued appropriate prosecution of the SEAK troll fishery in the EEZ, as required by the Fishery Management Plan ("FMP"), they do not have the same interests in preserving state management for sovereignty and independent management interests. Also, the federal defendants' concerns about fishery issues in other parts of the nation could possibly motivate federal interpretations and legal positions that are detrimental to the State's interests in salmon fisheries in the EEZ off Alaska. Upon intervention, the State would be able to argue for a narrower judicial focus.

## IV.    Alternatively, the State Should Be Allowed to Intervene Permissively

Alternatively, if this Court finds the State is not entitled to intervention as a matter of right, the State requests permissive intervention under FRCP 24(b). Upon timely filing of a motion, a court may permit a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." FRCP 24(b). In reviewing a permissive motion to intervene, a court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940).

First, the State's motion is timely for the reasons presented in Section A. Second, the State also satisfies FRCP 24(b)'s commonality requirement. Under governing Ninth Circuit precedent, applicants meet the requirement for a common question of law or fact when they assert defenses "directly responsive" to the plaintiffs' claims, as the State has done here. *See, e.g., Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110-11 (9th Cir. 2002) (intervenor environmental group

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Telephone:  206-395-7630

seeking to defend Forest Service "roadless" rule granted permissive intervention), *rev'd on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Because the State seeks to defend the challenged federal agency actions, the State's defenses have questions of law and fact in common with Plaintiff's claims and, presumably, Defendants' defenses to the same. As a result, in the event this Court finds the State is not entitled to intervention as a matter of right, the State nonetheless satisfies the elements for FRCP 24(b). As such, this Court should enter an Order granting the State leave to intervene in this lawsuit.

The State meets all the requirements for permissive intervention under this rule. The State does not anticipate raising any additional issues in the litigation; rather, it hopes to bring the perspective of the party whose stake in the outcome is perhaps greater than the federal defendants'. The State's defenses in this action will address questions of law and fact that are in common with those already raised. The State has significant interest in, and knowledge of, the fishery resources in the coastal areas of Alaska; it has much to protect and much to contribute to the equitable resolution of this case. As discussed above, this motion is timely and the State's intervention will not delay the resolution of the case. Also, because the action involves a federal question, and because the State's interests derive from the federal question presented, the court has an independent basis for jurisdiction in this matter.

Also, the delegation of authority and its attendant regulations were initiated by the North Pacific Fishery Management Council, upon which the Commissioner of the Alaska Department of Fish and Game sits by statutory directive. 16 U.S.C. § 1852(b)(1)(A). Thus, the commissioner has shared responsibility for administration of the FMP provisions of the Magnuson-Stevens Act. 16 U.S.C. § 1852(h)(1). This provides an alternative basis for permissive intervention under Rule 24(b)(2).

MOTION TO INTERVENE - 13 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206-395-7630

V.  **CONCLUSION**

For the reasons stated above, the State respectfully requests that the court grant this Motion to Intervene as of right under Rule 24(a), or alternatively, permit the State to intervene under Rule 24(b).

Dated: March 9, 2021                NOSSAMAN LLP
                                         LINDA R. LARSON


By: */s/ Linda R. Larson*
             Linda R. Larson

MOTION TO INTERVENE - 14 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Telephone:  206-395-7630

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2021, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.

/s/ Linda R. Larson
Linda R. Larson

MOTION TO INTERVENE - 15 -
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA 98104
Telephone: 206-395-7630