HONORABLE MICHELLE L. PETERSON

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| WILD FISH CONSERVANCY, | Case No. 2:20-cv-417-RAJ-MLP |
| Plaintiff, | DEFENDANTS' SUPPLEMENTAL BRIEF |
| v. | |
| BARRY THOM, *et al.*,[1] | |
| Defendants, | |
| and | |
| ALASKA TROLLERS ASSOCIATION, | |
| Defendant-Intervenor, | |
| and | |
| STATE OF ALASKA, | |
| Defendant-Intervenor. | |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Janet Coit, in her official capacity as Assistant Administrator for Fisheries, is automatically substituted for Paul Doremus.

*Defendants' Supplemental Brief*

Case No. 2:20-CV-417-RAJ-MLP

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

Defendants hereby submit their response to the Court's July 28, 2021 Order. Dkt. # 104. The Court should decline Plaintiff's invitation to apply *Center for Biological Diversity v. Haaland*, 998 F.3d 1061 (9th Cir. 2021), to the National Environmental Policy Act (NEPA) claim in this case, and in particular to the National Marine Fisheries Service's (NMFS's) view of *Ramsey v. Kantor*, 96 F.3d 434, 439 (9th Cir. 1996). Plaintiff's reliance on *Haaland*—like its overall NEPA arguments—suffers from a host of factual and legal flaws. It ignores not only the nuances of NMFS's 2003 Programmatic Environmental Impact Statement (EIS), but also critical developments that occurred between the time of the 2003 EIS and the issuance of the 2019 Biological Opinion (BiOp) at issue in this case. In particular, it overlooks the Ninth Circuit's clarifying of *Ramsey*'s limits in *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581 (9th Cir. 2014), and the agency's NEPA analyses on its delegation of fishery management authority in federal waters to the State of Alaska. Further, to the extent any differences exist between NMFS's 2003 and 2019 views on *Ramsey*, the evolution is permissible because an agency's interpretation of a judicial opinion does not constitute an "agency action," and thus does not fall under the standards in the Administrative Procedure Act (APA), which the court applied in *Haaland* when it found the Fish and Wildlife Service's (FWS) change in its decision to be arbitrary. 998 F.3d at 1067-68.

**ARGUMENT**

NMFS complied with NEPA when it completed the federal actions subject to consultation and analyzed in the 2019 BiOp and the associated Incidental Take Statement (ITS). Dkt. # 93 at 27-32; Dkt. # 99 at 9-10. The ITS provides an exemption for incidental take of, *inter alia*, Chinook salmon and Southern Resident killer whales (SRKW) that was anticipated to occur as a result of the first and second proposed actions evaluated in the BiOp, which are the delegation of fishery management authority to Alaska and the funding of grants to Alaska. AR

| *Defendants' Supplemental Brief* | U.S. Department of Justice |
| | P.O. Box 7611 |
| | Washington, D.C. 20044 |
| Case No. 2:20-CV-417-RAJ-MLP  1 | (202) 305-0641 |

47517-27.[2] NMFS properly concluded that the issuance of an ITS for any incidental take tied to the first action did not trigger NEPA because the ITS itself did not authorize fishing, and thus was not a "major Federal action" within the meaning of the statute. 42 U.S.C. § 4332(2)(C). Yet this interpretation did *not* mean that NEPA analysis on the impacts of fishing in the federal waters of Southeast Alaska was missing. To the contrary, NMFS previously had examined the impacts of the delegation of authority pursuant to NEPA. AR 47632-901. NMFS also properly concluded that the second proposed action was subject to a categorical exclusion under NEPA. Dkt. # 93-2 (Ex. D) at 594-97; 40 C.F.R. § 1501.4. Plaintiff's attempt to undermine the agency's NEPA argument with the invocation of *Haaland* collapses under scrutiny.

I. **NMFS Implemented *Ramsey* in its 2003 EIS.**

Twenty-five years ago, the Ninth Circuit determined that NMFS was required to perform NEPA analysis on an ITS that it had issued in conjunction with a BiOp on the Columbia River Fish Management Plan. *Ramsey*, 96 F.3d at 446. But that was not the only aspect of the court's NEPA analysis. Plaintiffs alleged that NMFS failed to comply with NEPA as it pertained to "three separate geographic areas: those governed respectively by the Columbia River Fish Management Plan, the North Pacific Fishery Management Council, and the Pacific Fishery Council." *Id.* at 439. For the Columbia River, the court decided that the ITS "in this case is functionally equivalent to a permit because the activity in question would, for all practical purposes, be prohibited but for the [ITS]," and thus held that NEPA applied to the ITS. *Id.* at 444. For the North Pacific, the court concluded that NEPA was triggered because NMFS's "mandatory obligation" under the Magnuson-Stevens Fishery Conservation and Management Act (MSA) "to review the [fishery management] plans prepared by the council or its delegate,

---

[2] The ITS does not apply to the third proposed action—the conservation program—because it is a framework programmatic action that does not require an ITS. 50 C.F.R. § 402.14(i)(6); AR 47518-19.

| *Defendants' Supplemental Brief* | U.S. Department of Justice |
| --- | --- |
| | P.O. Box 7611 |
| | Washington, D.C. 20044 |
| Case No. 2:20-CV-417-RAJ-MLP    2 | (202) 305-0641 |

here the State of Alaska, suffices to make [the] failure to disapprove major federal action."[3] *Id.* at 445. And for the Pacific, the court ruled that the NEPA challenge was moot. *Id.* at 446.

Responding to *Ramsey*, NMFS prepared a Programmatic EIS in 2003 that covered all Pacific Salmon Fisheries Management off the Coasts of Southeast Alaska, Washington, Oregon, and California, and in the Columbia River Basin. AR 47948; 47966. Even though *Ramsey* had discussed NEPA's application to an ITS only in the context of the Columbia River Fish Management Plan, the overarching link between *Ramsey* and the broad-scale EIS led NMFS to consider the implications of *Ramsey* for all three geographic areas, including Southeast Alaska. AR 49752-55.[4] Thus, the EIS's discussion of *Ramsey* in the section on Southeast Alaska fisheries was an outgrowth of the Ninth Circuit's discussion of the management regimes governing Pacific salmon fisheries and not, as Plaintiff suggests, an interpretation that any future issuance of an ITS, including an ITS relating to Southeast Alaska fisheries, would require NEPA. This reading of the 2003 EIS reference to the ITS finds support in NMFS's view in 2009 that the issuance of the ITS for the BiOp on the 2009 Pacific Salmon Treaty Agreement and deferral of management to Alaska did not require NEPA analysis and in NMFS's decision after 2003 to prepare NEPA analyses on discrete actions rather than at the programmatic level.

II.     **The Ninth Circuit's Decision in *Jewell* Clarified the Narrow Scope of *Ramsey*.**

Regardless of NMFS's views in the immediate aftermath of *Ramsey*, the limits of that decision were clarified in subsequent cases, mostly notably *Jewell*. After *Ramsey*, district courts in the Ninth Circuit repeatedly rejected arguments that the issuance of any ITS or BiOp by a consulting agency triggers NEPA. *E.g.*, *City of Santa Clarita v. U.S. Dep't of Interior*, No. CV02-00697 DT (FMOx), 2006 WL 4743970, at *19 (C.D. Cal. Jan. 30, 2006), *aff'd*, 249 F.

---

[3] Alaska had been delegated authority over fishing in federal waters six years earlier. *See Ramsey*, 96 F.3d at 445.
[4] The discussion of Southeast Alaska fisheries also analyzed the deferral of management to Alaska. AR 47953.

*Defendants' Supplemental Brief*

Case No. 2:20-CV-417-RAJ-MLP         3

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

App'x 502 (9th Cir. 2007); *Grand Canyon Tr. v. U.S. Bureau of Reclamation*, No. CV-07-8164-PHX-DGC, 2010 WL 2643537, at *26 (D. Ariz. June 29, 2010). A key factor in these decisions was whether an action would escape NEPA review by a federal agency because of unique circumstances, such as those in *Ramsey*.

The Ninth Circuit addressed the same issue in *Jewell*, which considered whether FWS was required to conduct a NEPA analysis on a BiOp and ITS that it had prepared for the Bureau of Reclamation's operation of a project. 747 F.3d at 592, 601. Building on the theme of whether the relevant action "would have evaded NEPA review altogether," the court noted that in *Ramsey* there had been "no downstream federal agency to complete" NEPA review because "the states of Washington and Oregon occupied the position typically inhabited by a federal action agency like Reclamation." *Id.* at 644. The court concluded that "there is no comparable need to require the FWS to prepare an EIS because Reclamation stands ready to do so." *Id.* The *Jewell* decision supports NMFS's position in this case, because it clarifies that the import of *Ramsey* is that NEPA applies to an ITS where an underlying action with environmental impacts could escape NEPA review, such as in the context of the Columbia River Basin. For Southeast Alaska, by contrast, NMFS has continued to perform NEPA analysis on the underlying action with environmental impacts—i.e., the delegation of management authority to Alaska. AR 47632-901. The fact that it was performed "upstream," rather than "downstream" as suggested in *Jewell*, is not distinguishing as the action does not evade NEPA review "altogether."

The most recent NEPA analysis on the delegation of fishery management authority occurred in 2012 when the Salmon Fishery Management Plan (FMP) was amended by the North Pacific Fishery Management Council. AR 14866-15051. NMFS prepared an extensive Environmental Assessment (EA) that considered the comprehensive revision to update the FMP

*Defendants' Supplemental Brief*

Case No. 2:20-CV-417-RAJ-MLP  4

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

and to comply with recent MSA requirements. NMFS considered the impacts of the ongoing delegation. AR 47632-901. The EA analyzed the impacts on salmon species listed under the Endangered Species Act (ESA), as well as ESA-listed marine mammals, including Cook Inlet beluga whales, humpback whales, Steller sea lions, SRKW, and sea otters. AR 47799-805; 47805-27. This analysis was performed by NMFS in its capacity as an action agency, rather than a consulting agency. Thus, it falls squarely within the type of NEPA analysis contemplated by *Jewell*. To insist, as Plaintiff does, that NMFS must again perform NEPA analysis tied to this action in connection with the 2019 BiOp and ITS would in essence duplicate the 2012 NEPA analysis. The Ninth Circuit rejected this scenario in *Jewell*: "it makes little sense to have two agencies prepare separate NEPA documents for the same agency action." 747 F.3d at 644-45 (citation omitted). Plaintiff's objection may be better characterized as contesting the sufficiency of the 2012 EA, rather than whether there exists a broad-sweeping legal doctrine where NEPA is triggered by the mere issuance of an ITS, but Plaintiff did not bring that claim here.

A retrospective analysis of *Ramsey* and the clarifying decision in *Jewell* shows that NMFS charted a reasonable path from the 2003 EIS, which responded to *Ramsey*, to the 2009 BiOp, to the 2012 EA, and ultimately to the 2019 BiOp. Even if there is some perceived inconsistency in how the agency treated the holding in *Ramsey* between 2003 and 2019 in light of changing case law, that is not grounds for finding that NMFS acted arbitrarily under the rationale in *Haaland*. NMFS's reading of *Ramsey* is not an "agency action" under the APA, which defines that term as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). As such, NMFS's view on *Ramsey* is not subject to review under the APA or its standards. *Id.* §§ 702, 704, 706.

In sum, Plaintiff's reliance on *Haaland* is misplaced.

*Defendants' Supplemental Brief*

Case No. 2:20-CV-417-RAJ-MLP    5

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641

| | | |
|---|---|---|
| 1 | Dated: August 6, 2021 | Respectfully submitted, |
| 2 | | TODD KIM |
| | | Assistant Attorney General |
| 3 | | SETH M. BARSKY |
| 4 | | Section Chief |
| | | S. JAY GOVINDAN |
| 5 | OF COUNSEL: | Assistant Section Chief |
| 6 | | */s/ Frederick H. Turner* |
| 7 | SHEILA LYNCH | FREDERICK H. TURNER |
| | ROSE STANLEY | Trial Attorney |
| 8 | Office of General Counsel | U.S. Department of Justice |
| | National Oceanic and Atmospheric | Environment and Natural Resources Division |
| 9 | Administration | Wildlife and Marine Resources Section |
| 10 | Seattle, WA | Ben Franklin Station, P.O. Box 7611 |
| | | Washington, D.C. 20044-7611 |
| 11 | MOLLY E. WATSON | Phone: (202) 305-0641 |
| | Office of General Counsel | Fax: (202) 305-0275 |
| 12 | National Oceanic and Atmospheric | Email: frederick.turner@usdoj.gov |
| 13 | Administration | |
| | Juneau, AK | COBY HOWELL |
| 14 | | Senior Trial Attorney |
| 15 | | U.S. Department of Justice |
| | | c/o U.S. Attorney's Office |
| 16 | | 1000 SW Third Avenue |
| | | Portland, Oregon 97204-2902 |
| 17 | | Tel: (503) 727-1023 | Fax: (503) 727-1117 |
| 18 | | Email: Coby.Howell@usdoj.gov |
| 19 | | *Attorneys for Defendants* |

# CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Washington by using the CM/ECF system, which will serve a copy of the same on the counsel of record.

    /s/ Frederick H. Turner
FREDERICK H. TURNER
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 305-0641
Fax: (202) 305-0275
Email: frederick.turner@usdoj.gov

*Attorney for Defendants*

*Defendants' Supplemental Brief*

Case No. 2:20-CV-417-RAJ-MLP    7

U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0641