HONORABLE MICHELLE L. PETERSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILD FISH CONSERVANCY,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTT RUMSEY, *et al.*,<br><br>    Defendants.<br><br>And<br><br>ALASKA TROLLERS ASSOCIATION, and STATE OF ALASKA,<br><br>    Defendant-Intervenors. | Case No. 2:20-cv-00417-RAJ-MLP<br><br>DEFENDANT-INTERVENOR ALASKA TROLLERS ASSOCIATION'S OBJECTIONS TO REPORT AND RECOMMENDATION<br><br>Noting Date: January 27, 2023 |

## I.   INTRODUCTION

The trollers of Southeast Alaska, represented in this matter by the Alaska Trollers Association ("ATA"), are great stewards of the environment. They catch salmon one at a time, cherishing the benefits that the wild fish have provided to their families and communities for generations. The Wild Fish Conservancy ("WFC")—a Seattle-based organization determined to eliminate hatcheries and the sustainable harvest of salmon, with no ties to the communities of Southeast Alaska—has exploited flaws in environmental analyses performed by the federal government in a quest to decimate that generational way of life of thousands of Alaskans. To

DEFENDANT-INTERVENOR ALASKA TROLLERS ASSOCIATION'S OBJECTIONS TO REPORT AND RECOMMENDATION -- 1

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

WFC, the thousands of Alaskans that have sustainably fished for generations are nothing more than insignificant numbers that can be disregarded in exchange for hypothetical and attenuated benefits to the Southern Resident Killer Whale ("SRKW") population. The remedy proposed by the December 13, 2022 Report and Recommendation, Dkt. No. 144 ("Report and Recommendation"), will devastate many comminutes across Alaska. Pursuant to the ATA's following objections, the illogical and inequitable Report and Recommendation must not be adopted, and the Court should adopt a remedy that maintains the incidental take protections of the 2019 Southeast Alaska Biological Opinion ("2019 BiOp").

This dispute arises out of the National Marine Fisheries Service's ("NMFS") update of environmental analyses related to fishing in Southeast Alaska. The fishing regime is complex; over the decades, there has been a careful balance maintained that allows thousands of Alaskans to continue their generational way of life under the terms of the international Pacific Salmon Treaty between the United States and Canada. NFMS incorporated reduced harvest limits from the latest version of the Pacific Salmon Treaty in the 2019 BiOp. *See, e.g.*, AR47202-03. The 2019 BiOp concluded, in relevant part, that allowing the Southeast Alaska fisheries to continue to harvest Chinook salmon would not jeopardize the continued existence of the SRKW population or listed salmon species. AR47508. The 2019 BiOp examined historical data and recognized that some Chinook caught by trollers in Southeast Alaska could impact the prey availability of the SRKW population, creating a tenuous connection between the Southeast Alaska fisheries and the SRKW. However, with such great focus on the SRKW population in recent years, the 2019 BiOp also included programs that have been specifically designed to increase prey for the SRKW population at the times and places most crucial for the SRKWs. The 2019 BiOp concluded that allowing the trollers of Southeast Alaska to continue to fish at a decreased level would not jeopardize the SRKW population in light of NMFS's prey increase program. AR47508.

DEFENDANT-INTERVENOR ALASKA TROLLERS
ASSOCIATION'S OBJECTIONS TO REPORT AND
RECOMMENDATION -- 2

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

During the merits portion of this case, the Court agreed with WFC's arguments that NMFS violated the Endangered Species Act ("ESA") and the National Environmental Policy Act ("NEPA").[1] Namely, the Court found that NMFS failed to sufficiently explain its prey increase program to demonstrate that benefits from the program would occur with necessary certainty to inform whether the Southeast Alaska fisheries would jeopardize the SRKW population.

Now, at the remedy stage, the Report and Recommendation concludes that in the years following the issuance of the 2019 BiOp, the prey increase program has been implemented with such certainty that the program must continue. With that understanding, the Report and Recommendation illogically concludes that the appropriate remedy for NMFS's errors is to uphold the prey increase program yet revoke incidental take protection under the ESA afforded to the Southeast Alaska fisheries through the 2019 BiOp.

The Report and Recommendation is not fully informed on the impacts of its proposed decision because it erroneously refused to consider multiple declarations submitted by the ATA. Contrary to the Report and Recommendation's conclusions, if the prey increase program is maintained, allowing Southeast Alaska fisheries to continue to harvest with incidental take protection will have mitigated impacts that will be far outweighed by the effective closure of the troll fisheries and the resulting catastrophic economic impacts to the communities of Southeast Alaska. Missing the spring and summer seasons will preclude many trollers from maintaining their way of life.

The extraordinary nature of this remedy cannot be overstated. Fisheries along the coasts of Oregon, Washington, and Canada continue to harvest salmon that provide prey for SRKWs. Yet, the Report and Recommendation proposes reaching up to Alaska and removing the least consequential aspect of the 2019 BiOp to the SRKWs—the authorization for Southeast Alaska

---

[1] The Court adopted Magistrate Peterson's September 27, 2021 Report and Recommendation on the merits, Dkt. No. 111, in its entirety. Order Adopting Report and Recommendation, Dkt. No. 122. Accordingly, the ATA refers to Dkt. No. 111 for the Court's holding on the merits.

DEFENDANT-INTERVENOR ALASKA TROLLERS ASSOCIATION'S OBJECTIONS TO REPORT AND RECOMMENDATION -- 3

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

fisheries. Respectfully, the ATA fails to see the logic or the equity in the Report and Recommendation's decision to punish the trollers for the faults of the federal government. As the trollers' way of life hangs in the balance, the ATA humbly requests that the Court decline to adopt the Report and Recommendation and craft a remedy that maintains the incidental take protections of the 2019 BiOp.

## II. FACTUAL BACKGROUND

**A. The 2019 Biological Opinion.**

In the 2019 BiOp, NMFS evaluated the current states of listed species, the environmental baseline, the effects of the proposed actions, effects of related actions, and cumulative effects to determine whether the actions authorized by the 2019 BiOp would jeopardize any listed species. AR47508. The 2019 BiOp resulted in an Incidental Take Statement ("ITS") that authorized Southeast Alaska fisheries to harvest up to the limits of the 2019 Pacific Salmon Treaty limits while incidentally taking some listed species. AR47517-19. The 2019 BiOp also authorized a "conservation program for critical Puget Sound stocks and SRKW." AR47201. One of three elements of that program was a prey increase program designed "to provide an immediate and meaningful increase in prey availability for SRKWs." AR47202.

The BiOp explains that any reduction in prey available to the SRKWs in their coastal range from the Southeast Alaska fisheries "would likely occur rarely and during a time period when the whales are more often observed in inland waters" and "would be spread across a larger portion of the geographic range of Southern Residents." AR47445. In stark contrast, the prey increase program was designed to direct additional prey to "the times and areas most important to SRKWs." AR47203. That program helps offset Chinook harvests from Canada and all U.S. salmon fisheries, not just the Southeast Alaska fisheries. AR47508.

The 2019 BiOp provided that the actions covered by the 2019 BiOp—including reductions in Southeast Alaska fisheries' harvest levels and the prey increase program—are "intended to improve the overall conditions for the whales' Chinook salmon prey, increase prey

DEFENDANT-INTERVENOR ALASKA TROLLERS
ASSOCIATION'S OBJECTIONS TO REPORT AND
RECOMMENDATION -- 4

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

abundance available to the whales, and reduce impacts to the whales' survival and reproduction." AR47508. NMFS concluded that the proposed actions at issue "are not likely to appreciably reduce the likelihood of both survival and recovery of Southern Resident killer whales or destroy or adversely modify their designated critical habitat." AR47508.

B. **Merits Ruling.**

The Court made several findings in its ruling on the merits that are relevant to the ATA's objections. The Court highlighted that NMFS's finding of no jeopardy regarding SRKWs "relie[d] upon the benefits of the prey increase program." Dkt. No. 111 at 32. While acknowledging the entire conservation program, the Court explained that "the central point at issue is the third component of NMFS's conservation plan—the prey increase program—as it relates to the adverse impact on SRKW." *Id.* at 28. The Court held that the program was not sufficiently specific or binding to support the no jeopardy finding. *Id.* at 32-33. As a result, the Court ruled that NMFS violated its substantive obligation to ensure no jeopardy to the SRKW under Section 7 of the ESA. *Id.* at 33-34. The Court also held that NMFS failed to consider the prey increase program when reaching a no jeopardy conclusion for listed salmon species. *Id.* at 32-33.

C. **Remedy Report and Recommendation.**

The Report and Recommendation's description of and underlying reasoning for the proposed remedy form the bases for the ATA's objections.

First, during oral argument, Magistrate Peterson "agree[d]" that the relief requested by WFC was "not a narrow, moderate, or reasonable request" but was "radical." Dkt. No. 143 at 54:13-16. The Report and Recommendation, however, makes multiple references to the narrow or partial nature of the vacatur requested by WFC. *See, e.g.*, Dkt. No. 144 at 9 fn. 6, 13, 24, 30 fn. 17.

Second, in response to WFC's request to strike multiple declarations submitted by Federal Defendants and both Defendant-Intervenors, the Report and Recommendation concludes

DEFENDANT-INTERVENOR ALASKA TROLLERS
ASSOCIATION'S OBJECTIONS TO REPORT AND
RECOMMENDATION -- 5

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

that it is improper to consider the opinions of ATA members Paul Olson and Tad Fujioka because it is not evident that those individuals are sufficiently qualified in economics or data analysis, respectively. Dkt. No. 144 at 22-23. During oral argument, Magistrate Peterson expressed surprise that no sur-reply was filed in response to WFC's request to strike the declarations. Dkt. No. 143 at 4:14-18. The ATA was prepared to address the issue at oral argument and both Defendant-Intervenors requested an evidentiary hearing to resolve any remaining issues. *Id.* at 9:12, 51:22-23. Those requests were denied by a minute entry. *See* Dkt. No. 141.

Third, the Report and Recommendation makes multiple important findings related to the prey increase program. The Report and Recommendation explains that "[t]he prey increase program—though previously uncertain and indefinite in the 2019 SEAK BiOp—has also now been funded and begun providing prey the past three years." Dkt. No. 144 at 31. As such, the program is "on track to provide the benefits" anticipated in the 2019 BiOp. *Id.* at 12. Thus, the Report and Recommendation finds that vacating the program "would ultimately put the SRKW at further risk of extinction." *Id.* at 33. Although not considered in NMFS's jeopardy analysis for listed salmon species, the Report and Recommendation reasons that any impacts of the program on the wild Chinook population can be mitigated. *Id.* at 35. And, according to the Report and Recommendation, vacating the prey increase program is unwarranted because NMFS is now better suited to offer better reasoning for the program if it were to be remanded. *Id.* at 36-37.

Lastly, the Report and Recommendation concludes that the ITS should be vacated, reasoning that the economic consequences "do not overcome the seriousness of NMFS's violations" and "the harm posed to the SRKW by leaving the ITS in place." *Id.* at 30. The Report and Recommendation does not address the 2019 BiOp's analysis that the prey increase program would mitigate the impacts of the Southeast Alaska fisheries. The Report and Recommendation is also silent on whether NMFS would reach the same decision on the ITS, given that the prey increase program will continue.

DEFENDANT-INTERVENOR ALASKA TROLLERS
ASSOCIATION'S OBJECTIONS TO REPORT AND
RECOMMENDATION -- 6

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

### III.  OBJECTIONS[2]

1. The Report and Recommendation improperly concludes that the opinions of Paul Olson and Tad Fujioka could not be considered.

2. The Report and Recommendation illogically and inequitably concludes that the ITS should be vacated when the prey increase program will continue.

### IV.  STANDARD OF REVIEW

If parties object to a magistrate judge's recommendations, the Article III judge "must review de novo the portions of the recommendations to which the parties object." *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009).

### V.  ARGUMENT

**A.  The Report and Recommendation's Conclusion that the Declarations of Paul Olson and Tad Fujioka Could Not Be Considered Is Inconsistent with the Standard of FRE 702.**

Federal Rule of Evidence 702 governs expert testimony. It "should be applied with a liberal thrust favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (internal quotation marks omitted). Outside of the jury trial context, "there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion in a bench trial." *F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) (internal quotation marks omitted). "Rule 702 generally is construed liberally," particularly because expert testimony can be "based on some 'other specialized knowledge.'" *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (quoting FRE 702(a)). FRE 702 "does not forbid admission of [an opinion] where the weight of the conclusions [is] subject to challenge." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014) (internal quotation marks omitted). The Report and Recommendation acknowledges that "only a minimal foundation of knowledge, skill, and experience is required" under FRE 702. Dkt. No. 144 at 17 (internal quotation marks and

---

[2] To preserve for appeal the arguments that WFC lacked standing at both the merits and remedy stage of this proceeding—Dkt. No. 128 at 5-7; Dkt. No. 98 at 1-7—the ATA objects to the Court's conclusion that WFC has standing for the requested remedy. *See* Dkt. No. 144 at 13 n. 7.

DEFENDANT-INTERVENOR ALASKA TROLLERS  
ASSOCIATION'S OBJECTIONS TO REPORT AND  
RECOMMENDATION -- 7  

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC  
71 Columbia Street, Suite 325  
Seattle, WA 98104  
206.971.1564

emphasis omitted).

Here, considering the lack of a jury and the specialized knowledge of Paul Olson and Tad Fujioka, the Report and Recommendation erred in granting WFC's request to strike both declarations. In the very least, the ATA's request for an evidentiary hearing should have been granted.

The Report and Recommendation incorrectly concludes that "minimal foundation" is lacking to support Paul Olson's statement that he has "extensive familiarity with natural resources economics, including economic impact analyses." Dkt. No. 144 at 22-23; Dkt. No. 131 at ¶ 11. Mr. Olson explained that his work involves "the valuation of ecosystem services in Southeast Alaska," including reviewing and collecting socio-economic data on an annual basis to help publish an annual report with the Alaska Sustainable Fisheries Trust. Dkt. No. 131 at ¶ 11. That experience, in part, was the basis for Mr. Olson's prior declarations in this matter, in which Mr. Olson opined on the annual economic output of Chinook salmon and the value of commercial fishing in general. *See* Dkt. No. 23 at ¶¶ 13, 18-19; Dkt. No. 39 at ¶¶ 13, 18-19. As the Report and Recommendation recognizes with respect to the declarants of the Federal Defendants, it is telling that WFC never previously sought to strike Mr. Olson's declarations based on his qualifications. *See* Dkt. No. 144 at 18 n. 9.

Similarly, the Report and Recommendation incorrectly concludes that Mr. Fujioka's declaration failed to establish sufficient foundation to consider his opinions on the impacts of closing fisheries or WFC's proffered opinions. *Id.* at 23. Mr. Fujioka has a degree in Engineering and Applied Sciences from the California Institute of Technology and, as a member and prior chairman of the Sitka Fish & Game Advisory Committee, has provided advice to the Alaska Board of Fisheries on management and allocation of fishery resources. Dkt. No. 129 at ¶¶ 2, 11. That experience has provided Mr. Fujioka with specialized knowledge of the workings of the Pacific Salmon Treaty—workings that he explained in detail in his declaration. *Id.* at ¶¶ 19-22. That specialized knowledge allowed Mr. Fujioka to use mathematics to identify crucial issues

DEFENDANT-INTERVENOR ALASKA TROLLERS
ASSOCIATION'S OBJECTIONS TO REPORT AND
RECOMMENDATION -- 8

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

with the simplistic approach of the opinions proffered by WFC. *See, e.g., id.* at ¶ 27. In the very least, Mr. Fujioka's opinions were informative on how the declarations submitted by WFC were misleading.

In light of the flexible standard and the specialized knowledge demonstrated by Mr. Olson and Mr. Fujioka, disqualifying both the Olson and Fujioka declarations without an evidentiary hearing was improper. At a minimum, the Report and Recommendation should have considered both declarations and adjusted the weight that each declaration was given based on an assessment of the credibility of Mr. Olson and Mr. Fujioka as experts.

**B. The Report and Recommendation's Decision to Vacate the ITS But Not the Prey Increase Program Is Contradicted by the Reasoning of the Merits Ruling and Inequitably Punishes the ATA for NMFS's Illegal Conduct.**

The Court's holdings on the merits undercut the reasoning of the Report and Recommendation. Although the "central point" or identified flaw with NMFS's ITS was the uncertainty of the prey increase program—Dkt. No. 111 at 28, 33—the Report and Recommendation concludes that the program should continue. Roughly four months after the Court issued its order adopting the Report and Recommendation on the merits, the Report and Recommendation no longer questions whether the prey increase program is "reasonably certain to occur." *Id.* at 33 (internal quotation marks omitted). Now, the Report and Recommendation acknowledges that the program "has been fully funded for the past three years" and that "a certain and definite increase in prey is available to the SRKW from the prey increase program." Dkt. No. 144 at 11, 31.

That change in position is not properly accounted for in the Report and Recommendation's proposal to vacate the ITS. Although the Report and Recommendation resolves the "central point at issue" by finding that the benefits of the prey increase program are certain to occur, it inexplicably reasons that the "risk of environmental harm to the SRKW from leaving the ITS in place… counsels in favor of vacatur of the ITS." *Id.* at 34.

That reasoning leaves the recommended remedy untethered to the analyses that have been

DEFENDANT-INTERVENOR ALASKA TROLLERS ASSOCIATION'S OBJECTIONS TO REPORT AND RECOMMENDATION -- 9

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

conducted. In the 2019 BiOp, NMFS conducted a jeopardy analysis that evaluated whether the ITS would "reduce appreciably the likelihood of both the survival and recovery of a listed species." 50 C.F.R. § 402.02; *see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 931 (9th Cir. 2008) (concluding that "the jeopardy regulation requires NMFS to consider both recovery and survival impacts" of a decision). Based on the reduced harvest levels for Southeast Alaska fisheries and the prey increase program, NMFS concluded that the ITS would not "appreciably reduce the likelihood of both survival and recovery of Southern Resident killer whales or destroy or adversely modify their designated critical habitat." AR47508. Beyond the uncertainty of the prey increase program, the Court did not find fault in that analysis in its ruling on the merits.

The Report and Recommendation ignores that jeopardy (and recovery) analysis, but handwaves the requirement to determine whether proceeding with the prey increase program would jeopardize listed salmon species, concluding that available mitigation would "limit any potential negative impacts" and NMFS could offer better reasoning in support of the program on remand. Dkt. No. 144 at 35-37. The Report and Recommendation makes no findings on why the prey increase program does not mitigate the impacts of the ITS or why NMFS would not reach the same conclusion on remand. Because the Report and Recommendation fails to explain why the mitigation provided by the prey increase program is insufficient, it effectively applies a more stringent no jeopardy standard to listed SRKWs than listed salmon species. Such a conclusion is unsupported by available analyses, unsupported by its decision on the merits, and inconsistent with the ESA.

**C. The Report and Recommendation Crafts an Inequitable Remedy.**

The remedy proposed by the Report and Recommendation is also drastically inequitable. Although Magistrate Peterson agreed that the remedy requested by WFC was not narrow but "radical" during oral argument, Dkt. No. 143 at 54:10-16, the Report and Recommendation adopts WFC's characterization of a less cumbersome "partial" vacatur. Dkt. No. 144 at 13. This

DEFENDANT-INTERVENOR ALASKA TROLLERS ASSOCIATION'S OBJECTIONS TO REPORT AND RECOMMENDATION -- 10

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

remedy will close the troll fishery for 10 months of the year, effectively closing the entire fishery because trolling may no longer be economically viable if limited to two months each year. Dkt. No. 128 at 11; Dkt. No. 131 at ¶ 44.

The Report and Recommendation concludes that the economic consequences here "do not overcome the seriousness of NMFS's violations" or "the harm posed to the SRKW by leaving the ITS in place." Dkt. No. 144 at 30. Given that the error identified by the Court—the reliance on uncertain mitigation—has become a nonissue with the Report and Recommendation's recognition of the certainty of the prey increase program, the Report and Recommendation's conclusion of the balance between economic consequences and environmental harm is wrong. Under the factors that are considered when determining whether to remand without vacatur, the proposed remedy has resolved the environmental harm that could result from the ITS and, as a result, the agency is likely to reach the same conclusion on remand. Accordingly, the drastic economic consequences demonstrate that remand without vacatur of the ITS is demanded by equity.[3] *See* Dkt. No. 128 at 8-9 (discussing relevant factors, including economic harm); *Coal. to Protect Puget Sound Habitat v. United States Army Corps of Engineers*, 843 Fed. Appx. 77, 80 (9th Cir. 2021) (courts deviate from ordinary remedy of vacatur when "equity demands" (internal quotation marks omitted)).

The economic impacts cannot be overstated. Vacating the ITS will have catastrophic economic impacts that far outweigh any impacts to the SRKW that will be mitigated by the prey increase program. The economic impacts of this remedy cannot be reduced to mere numbers that may seem insignificant to an area like Seattle. They will be damning to an entire way of life in Alaska that has existed for generations. To fully understand the generational impacts of this

---

[3] The ATA recognizes that the Court also held that NMFS violated NEPA in issuing the ITS. Dkt. No. 111 at 34-35. As explained, with the prey increase program in place, the 2019 BiOp demonstrates that no jeopardy to the continued existence or recovery of SRKWs will occur. That also suggests that the ITS will be issued on remand after NEPA analysis. Thus, NMFS's NEPA violations alone do not demand vacatur when the environmental harms are mitigated and the economic harm—as explained in this section—is drastic.

DEFENDANT-INTERVENOR ALASKA TROLLERS ASSOCIATION'S OBJECTIONS TO REPORT AND RECOMMENDATION -- 11

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

decision, the ATA implores the Court to review the declaration of Eric Jordan in its entirety. Dkt. No. 130. As Mr. Jordan articulated, this remedy does nothing more than cause more suffering; it lacks the particularity that will serve the listed species and the trollers of Southeast Alaska. *See id.* at ¶¶ 8-12.

The impacts will be felt beyond the level of individual families and traditions. As explained by City of Pelican Mayor Patricia Phillips, her entire city will struggle mightily without the influx of economic activity that the troller fishing seasons bring to her community. Dkt. No. 132 at ¶ 4. The State of Alaska also demonstrated that the impacts will be "far-reaching" and impact the "social and economic fabric of coastal communities in Southeast Alaska." Dkt. No. 134 at 7.

Respectfully, although the Report and Recommendation claims that it "does not take such economic consequences lightly," Dkt. No. 144 at 30, the proposed remedy does exactly that. The suggested remedy will mitigate any impacts to the SRKW from the trollers in Southeast Alaska, yet the Report and Recommendation still *chooses* to devastate an entire region of Alaska and a way of life that has persisted for generations. There is nothing equitable about this *choice* that mitigates impacts to the SRKWs, gives the Federal Defendants a pass for its faulty analysis, and punishes the ATA and communities of Southeast Alaska.

## VI.   CONCLUSION

The Report and Recommendation proposes that the Court use its discretion to adopt the "equitable" remedy described therein. However, the proposed remedy punishes the trollers of Southeast Alaska for the mistakes made by NMFS. Any impacts of allowing the ITS to continue to authorize the trollers to fish will be mitigated by the prey increase program. The economic consequences of the proposed remedy, however, will be dire to Southeast Alaska. Given the Report and Recommendation's reasoning regarding the prey increase program, the Court should also elect to decline to vacate the ITS and continue to allow the trollers in Southeast Alaska to fish.

DEFENDANT-INTERVENOR ALASKA TROLLERS ASSOCIATION'S OBJECTIONS TO REPORT AND RECOMMENDATION -- 12

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

DATED this 10th day of January, 2023.

        NORTHWEST RESOURCE LAW PLLC

        */s/ Douglas J. Steding*
        Douglas J. Steding, WSBA #37020
        dsteding@nwresourcelaw.com
        206.971.1567
        Greg A. Hibbard, OSB #183602 (*pro hac vice*)
        ghibbard@ nwresourcelaw.com
        503.664.3583

        *Attorneys for Defendant-Intervenor Alaska Trollers Association*

DEFENDANT-INTERVENOR ALASKA TROLLERS ASSOCIATION'S OBJECTIONS TO REPORT AND RECOMMENDATION -- 13

Case No. 2:20-cv-00417-RAJ-MLP

**NORTHWEST RESOURCE LAW PLLC**
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Western District of Washington using the CM/ECF system. Participants who are registered with CM/ECF will be served by the CM/ECF system.

| *Attorneys for Plaintiff Wild Fish Conservancy* | |
|---|---|
| Brian A. Knutsen<br>Emma Bruden<br>KAMPMEIER & KNUTSEN<br>1300 SE Stark Street, Suite 202<br>Portland, OR 97214<br>503.841.6515 | brian@kampmeierknutsen.com<br>emma@kampmeierknutsen.com |
| Paul Kampmeier<br>KAMPMEIER & KNUTSEN<br>811 First Avenue, Suite 468<br>Seattle, WA 98104<br>206.858.6983 | paul@kampmeierknutsen.com |
| Eric A. Lindberg<br>Benjamin C. Byers<br>CORR CRONIN, LLP<br>1001 4th Avenue, Suite 3900<br>Seattle, WA 98154-1051<br>206.625.8600 | elindberg@corrcronin.com<br>bbyers@corrcronin.com |
| *Attorneys for Defendant Barry Thom, et al.* | |
| Carter Howell<br>U.S. DEPARTMENT OF JUSTICE<br>Environment & Natural Resources Division<br>Wildlife & Marine Resources Section<br>c/o U.S. Attorney's Office<br>1000 SW Third Avenue, Suite 600<br>Portland, OR 97204<br>503.727.1023 | coby.howell@usdoj.gov |
| Frederick Turner<br>U.S. DEPARTMENT OF JUSTICE<br>Environment & Natural Resources Division<br>P.O. Box 7611<br>Ben Franklin Station<br>Washington, DC 20044-7611<br>202.305.0641 | frederick.turner@usdoj.gov |

DEFENDANT-INTERVENOR ALASKA TROLLERS
ASSOCIATION'S OBJECTIONS TO REPORT AND
RECOMMENDATION -- 14

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564

| Attorneys for Proposed Defendant-Intervenor State of Alaska | |
|---|---|
| Aaron C. Peterson<br>STATE OF ALASKA DEPT OF LAW (ANCHOR)<br>1031 W. 4th Avenue, Suite 200<br>Anchorage, AK 99501<br>907.269.5100 | aaron.peterson@alaska.gov |

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge.

DATED this 10th day of January, 2023, in Seattle, Washington.

/s/ Eliza Hinkes
Eliza Hinkes, Paralegal

4829-5255-8303, v. 1

DEFENDANT-INTERVENOR ALASKA TROLLERS ASSOCIATION'S OBJECTIONS TO REPORT AND RECOMMENDATION -- 15

Case No. 2:20-cv-00417-RAJ-MLP

NORTHWEST RESOURCE LAW PLLC
71 Columbia Street, Suite 325
Seattle, WA 98104
206.971.1564