1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Honorable Richard A. Jones
Honorable Michelle L. Peterson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILD FISH CONSERVANCY,

        Plaintiff,

v.

SCOTT RUMSEY, in his official capacity as
Acting Regional Administrator for the National
Marine Fisheries Service, *et al.*,

        Defendants,

and

ALASKA TROLLERS ASSOCIATION and
STATE OF ALASKA,

        Defendant-Intervenors.

CASE NO:  2:20-cv-00417-RAJ-MLP

**STATE OF ALASKA'S OBJECTIONS TO
THE COURT'S REPORT AND
RECOMMENDATION**

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

1

2                                **TABLE OF CONTENTS**

3                                                                                **Page**

4 I.      INTRODUCTION .................................................................................................1

5 II.     OBJECTIONS......................................................................................................3

6 III.    LEGAL STANDARD...........................................................................................4

7 IV.     ARGUMENT .......................................................................................................4

8        A.      Same Rule on Remand...........................................................................4

9        B.      Vacatur Will Have Catastrophic Economic Impacts ............................5

10
         C.      Impact of Vacatur on Prey Salmon.......................................................7
11
12 V.     CONCLUSION....................................................................................................8

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - i
Case No. 2:20-cv-00417-RAJ-MPL                    Nossaman LLP
                                          719 Second Avenue, Suite 1200
                                             Seattle, WA  98104
                                    Tel:  206.395.7630/Fax: 206.257.0780

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alaska Ctr. for the Env't v. Browner*,
    20 F.3d 981 (9th Cir. 1994) ..................................................................5

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
    988 F.2d 146 (D.C. Cir. 1993) ...........................................................3,5

*California Communities Against Toxics v. U.S. E.P.A. (Cal. Communities)*,
    688 F.3d 989 (9th Cir. 2012) ...............................................................5,6

*Cook Inletkeeper v. Raimondo*,
    541 F. Supp. 3d 987 (D. Alaska 2021) ....................................................6

*Idaho Farm Bureau Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) ..................................................................5

*Klamath-Siskiyou Wildlands Ctr. v. NMFS*,
    109 F. Supp. 3d 1238 (N.D. Cal. 2015) .................................................5

*Nat'l Fam. Farm. Coal. v. EPA*,
    960 F.3d 1120 (9th Cir. 2020) ................................................................4

*Seattle Audubon Soc. v. Evans*,
    771 F. Supp. 1081 (W.D. Wash.) ...........................................................3

**Statutes**

28 U.S.C. § 636(b)(1)(C) ..............................................................................4

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - ii
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

1    Defendant-Intervenor State of Alaska (State, or Alaska) hereby objects to the Magistrate

2    Judge's Report and Recommendation regarding remedy, Dkt. 144 (R&R), and respectfully

3    requests the Court reject the R&R and order instead the remedy sought by the Defendants and

4    Defendant-Intervenors, Dkts. 133, 128, 134.

5                                    **I.    INTRODUCTION**

6    The State cross moved for summary judgment, arguing that the Wild Fish Conservancy

7    (Plaintiff) may not challenge actions related to the delegation of management authority to the

8    State under the Magnuson-Stevens Act (MSA), nor can it seek any relief that results in the

9    suspension of that management authority. The State argued that this Court lacks jurisdiction over

10   Plaintiff's claims generally, because Plaintiff's claims are properly cast as challenges to the

11   regulations promulgated by the Secretary under the Magnuson Act. Dkt. 97. The State also

12   argued that the National Marine Fisheries Service (NMFS) was not required to conduct a new

13   National Environmental Policy Act (NEPA) analysis after the 2019 Pacific Salmon Treaty, and

14   thus no NEPA violation has occurred. Dkt. 94. Additionally, the State joined the Federal

15   Defendants' arguments that, in promulgating the 2019 Southeast Alaska Biological Opinion

16   (2019 SEAK BiOp), NMFS fully complied with the Endangered Species Act (ESA) and NEPA.

17   The State also joined in Defendant-Intervenor Alaska Trollers Association's argument that

18   Plaintiff lacks standing to pursue this matter.

19   The Court found that Plaintiff had standing to pursue its ESA claims and that the 2019

20   SEAK BiOp relied on uncertain mitigation to find no jeopardy to Southern Resident Killer

21   Whales (SRKW) and failed to evaluate whether the prey increase program would jeopardize the

22   Chinook salmon, and thus, was arbitrary, capricious, and not in accordance with law under the

23   Administrative Procedure Act (APA). Dkt. 111 at 16-25, 28-31. The Court also concluded

24   NMFS failed to conduct necessary NEPA analyses for the issuance of the Incidental Take

25   Statement (ITS) authorizing take associated with the Southeast Alaska salmon fisheries in the

26   2019 SEAK BiOp, and by adopting the prey increase program without preparing an

27   Environmental Impact Statement (EIS) or Environmental Assessment (EA). *Id*. at 36-38. In light

28

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - 1
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

of these findings and the parties' briefing on remedy, the Magistrate Judge recommends in the R&R that the Court: (1) remand the 2019 SEAK BiOp to NMFS to remedy the ESA and NEPA issues identified by the Court; (2) vacate the portions of the 2019 SEAK BiOp that authorize "take" of SRKW and Chinook salmon resulting from commercial harvests of Chinook salmon during the winter and summer seasons (excluding the spring season) of the troll fisheries; and (3) deny Plaintiff's request to vacate or enjoin the prey increase program.  The State respectfully disagrees with these illogical recommendations.

The challenges facing SRKW are many, and Southeast Alaska's fisheries are not near the top of the list. Toxic chemicals, such as PCBs, DDTs, and PBDEs; disturbance from vessels, as the SRKW frequent some of the busiest commercial shipping waterways in the world, as well as recreational, fishing, ferries, and military vessels; fisheries that are much closer to the SRKW foraging grounds; and oil spills are all factors that are limiting SRKW recovery. *See e.g.*, Dkt. 94 at 15-18. And despite all of these impediments to SRKW's recovery, the framework programmatic action in the 2019 SEAK BiOp overcompensates for the impacts of the SEAK salmon fishery. *See* Dkt. 135 ¶ 18. As stated by NMFS in both the 2019 SEAK BiOp and the Pacific Fisheries Management Council BiOp, while this funding initiative was relevant to NMFS' consideration of the Southeast Alaska salmon fishery, it was also designed to mitigate for impacts of the West Coast salmon fisheries and Puget Sound salmon fisheries (AR 47202, AR 47204, NMFS 2020; NMFS 2021). That is, the 2019 SEAK BiOp provides greater mitigation than any possible impact Alaska's fisheries might have on SRKW.

The R&R makes a fatal error in that it recommends vacatur of the ITS for multiple Southeast Alaska fisheries, despite the fact that the impact of these fisheries on SRKW is mitigated for through NMFS's prey increase program. And, of course, the R&R does not recommend halting the prey increase program. Thus, Alaska is punished and small Southeast Alaska communities like Elfin Cove, Meyers Chuck, and Pelican will see their entire tax base evaporate, while the program that is designed to overcompensate for any potential impact the fisheries have on SRKW *remains in place*. This would be a truly preposterous outcome.

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - 2
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

1    Usually, when the Court weighs the disruptive consequences of vacatur of a particular

2  agency action, it faces a binary choice—either the conservation purpose can be achieved or the

3  economic disruption can be avoided, but not both.  *See, e.g., Seattle Audubon Soc. v. Evans*, 771

4  F. Supp. 1081, 1096 (W.D. Wash.) (either a loss of additional spotted owl habitat or an adverse

5  reduction in federal timber sales). But here, NMFS has developed mitigation measures through

6  the prey increase program that provide a way to achieve the conservation purpose without

7  shutting down the Southeast Alaska fisheries and decimating local economies. Consequently,

8  there is no additional conservation purpose to be achieved, vacating the ITS for commercial troll

9  Chinook fisheries would be an economic catastrophe for Southeast Alaska fishing towns *for no*

10  *reason*, because the mitigation measures of the prey increase program remain in place and the

11  conservation purpose is already achieved.

12    The Court should find that the balance of the equities and the *Allied-Signal* test weigh

13  against vacating any of the 2019 SEAK BiOp and ITS. The Court should order remand without

14  vacatur.

15  ## II.    OBJECTIONS

16    The State objects to the R&R for the following reasons:

17    1.    The R&R fails to appreciate that NMFS is required by the Pacific Salmon Treaty

18  to adopt the same rule on remand.

19    2.    The R&R improperly concludes that the seriousness of the ESA and NEPA

20  violations is not outweighed by the disruptive consequences of vacating the ITS contained in the

21  2019 SEAK BiOp, and would thereby effectively shut down the commercial winter and summer

22  troll fishery that is critically important to Southeast Alaska.

23    3.    The R&R fails to recognize that the prey increase program was designed to

24  mitigate for any potential impacts of the Southeast Alaska, West Coast, and Puget Sound salmon

25  fisheries.

26    4.    The R&R erroneously relies on Plaintiff's incorrect estimates of the potential

27  impacts to prey salmon that would result from shuttering the Southeast Alaska salmon fishery.

28

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - 3
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    LEGAL STANDARD

An Article III "judge of the court" must "make a de novo determination" of portions of the R&R to which parties object. 28 U.S.C. § 636(b)(1)(C). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

### IV.    ARGUMENT

**A.    Same Rule on Remand**

The R&R erroneously finds that whether NMFS may adopt the same rule on remand, "though admittedly uncertain, appears to favor vacatur of the ITS and the prey increase program because there is *no guarantee* the same rule on remand could reissue." R&R at 36.

When determining whether vacatur is appropriate, one factor courts look to is "whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Nat'l Fam. Farm. Coal. v. EPA*, 960 F.3d 1120, 1144-45 (9th Cir. 2020) (quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015)). The key element at play here is whether NMFS will have to adopt the same rule on remand.

The R&R adopts Plaintiff's faulty argument in reaching its conclusion, stating that "NMFS will need to consult and consider alternatives not previously explored in the 2019 SEAK BiOp—such as reduced salmon harvests in the Southeast Alaska fisheries in lieu of increased hatchery production." R&R at 36. This is incorrect. The Southeast Alaska salmon harvests are set by the Pacific Salmon Treaty, through bilateral international negotiations every ten years, not by NMFS in its BiOp. *See e.g.* Dkt. 135 ¶ 7. NMFS cannot reduce salmon harvests in the Southeast Alaska salmon fishery any more than NMFS, or any other federal agency, is at liberty to ignore any international treaty to which the United States is a signatory. NMFS has no alternative but to produce a BiOp with the same harvest levels, and with the same ITS, on remand. Thus, the same rule is not simply "likely" or "possible" on remand. The same rule is *required* to comply with the Pacific Salmon Treaty. As such, this factor weighs fully against

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

1   vacatur and the R&R is flatly incorrect in finding otherwise.

2        This Court should find that as a matter of constitutional law agencies are required to

3   follow binding international treaties and therefore NMFS has little choice but to offer the same

4   rule on remand. As a result, this fact weighs entirely against vacatur and the matter should be

5   remanded without vacatur for NMFS to "offer better reasoning" to account for the flaws the

6   Court found in the BiOp.

7        **B.**    **Vacatur Will Have Catastrophic Economic Impacts**

8        Vacatur of the 2019 SEAK BiOp's ITS for the commercial winter and summer troll

9   fishery, as recommended in the R&R, will catastrophically damage the economic health of

10  Southeast Alaska communities. And it will do so for no discernable conservation gain and with

11  no discernable benefit to endangered SRKW. Vacatur is not required under the law. The Court

12  should reject the conclusions reached in the R&R and remand without vacatur.

13       As explained in the State's Response to Plaintiff's Motion for a Final Order on Relief,

14  vacatur is not the only or automatic remedy in the ESA or NEPA context: "when equity

15  demands, the regulation can be left in place while the agency follows the necessary procedures."

16  *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); *see also California*

17  *Communities Against Toxics v. U.S. E.P.A. (Cal. Communities)*, 688 F.3d 989, 993–94 (9th Cir.

18  2012). "Whether agency action should be vacated depends on [1] how serious the agency's

19  errors are 'and [2] the disruptive consequences of an interim change that may itself be changed.'"

20  *Cal. Communities*, 688 F.3d at 992 (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory*

21  *Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)). "Courts may decline to vacate agency

22  decisions when vacatur would cause serious and irremediable harms that significantly outweigh

23  the magnitude of the agency's error." *Klamath-Siskiyou Wildlands Ctr. v. NMFS*, 109 F. Supp.

24  3d 1238, 1242 (N.D. Cal. 2015).

25       In considering an appropriate remedy, district courts have "broad latitude in fashioning

26  equitable relief when necessary to remedy an established wrong." *Alaska Ctr. for the Env't v.*

27  *Browner*, 20 F.3d 981, 986 (9th Cir. 1994). Here, the balance of the equities clearly favors

28

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - 5
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

leaving the BiOp and ITS in place while on remand.

The R&R appropriately recognized that the economic consequences of vacatur should be considered:

> Nevertheless, when weighing the appropriateness of vacatur, it also remains common for courts to consider the economic consequences of vacatur. *See e.g., Cal. Cmties. Against Toxics*, 688 F.3d at 993-94; *Cook Inletkeeper v. Raimondo*, 541 F. Supp. 3d 987, 993 (D. Alaska 2021) ("While Plaintiffs contend that the primary consequences to be considered when assessing the disruptive impact of vacatur are environmental harms, the Ninth Circuit has explicitly considered the economic consequences of vacatur . . . .").

R&R at 29.

In addition, during oral argument on Plaintiff's remedy motion, the Magistrate Judge agreed with the State that the relief Plaintiff requests is not "a narrow, moderate, or reasonable request," but rather, is "radical." Transcript of Motion Hearing at 54. But the R&R goes on to substantially downplay the actual foreseeable disruptive economic consequences for the economy of Southeast Alaska and the communities that rely upon the economic activity generated by the fishery. The R&R details Plaintiff's estimated "economic impact of around $9.5 million loss in generated annual income in the winter and summer seasons" and the federal defendant's "estimate that the annual economic output of the Chinook salmon commercial troll fleet for the winter and summer seasons fishery to be approximately $29 million." *Id*. at 30. These dollar amounts might be insignificant in the Lower 48, but in Southeast Alaska they are substantial. The R&R makes the rather sterile observation that "[s]everal Southeast Alaska communities would also be impacted given their economic reliance on the commercial troll fishery seasons for income, the loss of tax revenue to these communities, and because of existing cost barriers to entry into other salmon fisheries." *Id*. This is a polite way of saying that several communities that are wholly reliant upon the impacted fisheries would see their entire tax base wiped out.

This definite impact of the vacatur recommended in the R&R should be given much more weight. The Court should reject the finding in the R&R that the certain economic catastrophe to Southeast Alaska communities does "not overcome the seriousness of NMFS's violations." *Id.*

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - 6
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.      **Impact of Vacatur on Prey Salmon**

And all of this to potentially achieve an increase in prey available to SRKW by a mere 0.2%–2.5%, depending upon the season. Dkt. 135 ¶ 15. The R&R uncritically cites Plaintiff's argument that "halting the winter and summer commercial troll season harvests would increase prey available to SRKWs by around 4.8 percent." *Id*. at 25. The Plaintiff's estimate of 4.8 percent is incorrect, and the R&R appears to rely upon it when making its findings recommending vacatur.

As the State previously explained in its remedy pleading, new data and analysis suggest that a 4.8% increase in SRKW prey availability given a troll closure is a gross overestimation. Plaintiff's use of 6% as the "approximate middle value" for reduction in prey availability caused by the SEAK fishery "as a whole" in its updated analysis is also not supported. Dkt. 135 ¶ 15. The Southeast Alaska troll fishery is a mixed stock fishery that harvests a variety of stocks from along the Pacific coast. *Id*. ¶ 12. New information collected after the analyses used in the SEAK BiOp has led to improved understanding of SRKW distribution in space and time and the priority Chinook stocks that constitute their prey base. *Id*. ¶¶ 13-14. This information has been used to develop an improved model to quantify Chinook salmon abundance by ocean area and time. *Id*. ¶ 13. The additional resolution and more accurate representation show that the estimated prey reduction that would result from restricting SEAK fisheries suggested by the prior models is biased high and the subsequent assumed benefits accrued to SRKW are not supported by the newer, more accurate best available science. *Id*. When the more current methodology is applied to the SEAK troll fishery, the result is a much lower harvest impact to SRKW than was previously estimated when the BiOp was written in 2018. *Id*. ¶ 13, 21. Forgone harvest in the SEAK troll fishery does not result in commensurate benefits to SRKW. *Id*. ¶ 21.

Further, as the State's scientist, Ms. Evenson, explained, during the July to September period SRKW are typically foraging in inside waters (not coastal waters) and feed on local stocks of Chinook where reductions in prey due to the SEAK fishery are estimated at only 1.0%–2.5%. *Id*. Also, SRKW are thought to be most limited in prey availability during the winter

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - 7
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

period, which they spend in coastal waters. *Id.* From October through April, SEAK troll fisheries were estimated to reduce prey availability in these locales by only 0.2%–1.1%. *Id.* Accordingly, the prey reduction analysis performed in the 2019 SEAK BiOp vastly overestimates the potential real-world benefits to SRKW from restricting the SEAK troll fishery.

The R&R ignores all of this when making its vacatur recommendation. The Magistrate Judge also declined to hold an evidentiary hearing, suggested by the State at oral argument, *see* Transcript of Motion Hearing at 9, where each side's declarants would be subject to cross examination. Given the fact that the R&R is based on a debunked 4.8% prey increase figure from shuttering the Southeast Alaska winter and summer troll fisheries, it should be disregarded by the Court.

## V.    CONCLUSION

For these reasons, the State respectfully requests that the Court reject the R&R and, instead, order the remedy sought by the Defendants and Defendant-Intervenors.

Dated: January 10, 2023

NOSSAMAN LLP
BRIAN FERRASCI-O'MALLEY

By:    */s/Brian Ferrasci-O'Malley*
Brian Ferrasci-O'Malley, WSBA #46721
719 Second Avenue, Suite 1200
Seattle, WA 98104
Tel: 206.395.7622
bferrasciomalley@nossaman.com

TREG R. TAYLOR
ATTORNEY GENERAL

By:    */s/Aaron C. Peterson*
Aaron C. Peterson, Alaska Bar No. 1011087
Senior Assistant Attorney General
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Tel:  907.269.5232
aaron.peterson@alaska.gov
Attorneys for State of Alaska

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - 8
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that on January 10, 2023, I electronically transmitted the attached

4   document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of

5   Electronic Filing to all ECF registrants.

6

7                                           */s/ Brian Ferrasci-O'Malley*
                                            Brian Ferrasci-O'Malley

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATE OF ALASKA'S OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION - 9
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780