1
2
3
4
5
6
7
8

Honorable Richard A. Jones
Honorable Michelle L. Peterson

9    UNITED STATES DISTRICT COURT
10   WESTERN DISTRICT OF WASHINGTON
     AT SEATTLE

11   WILD FISH CONSERVANCY,

12                      Plaintiff,

13   v.

14
15   SCOTT RUMSEY, in his official capacity as
     Acting Regional Administrator for the National
16   Marine Fisheries Service, *et al.*,

17                      Defendants,

18   and

19   ALASKA TROLLERS ASSOCIATION and
20   STATE OF ALASKA,

21                      Defendant-Intervenors.

22
23
24
25
26
27
28

CASE NO:  2:20-cv-00417-RAJ-MLP

**STATE OF ALASKA'S RESPONSE TO
OBJECTIONS TO THE COURT'S
REPORT AND RECOMMENDATION**

Noting Date: January 27, 2023

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................1

II. ARGUMENT ................................................................................................1

    A. Vacatur of the 2019 SEAK BiOp's ITS is Not Narrow...........................1

    B. The Prey Increase Program Mitigates Any Impacts from the SEAK Fisheries. ...................................................................................................2

    C. Plaintiff Overstates the Impact of the SEAK Fisheries. ........................2

    D. Vacatur of the ITS Will Result in Economic Calamity for Southeast Alaska. ..........................................................................................................3

    E. Vacating the Prey Increase Program Will Have Cascading Effects. ......4

III. CONCLUSION...............................................................................................5

STATE OF ALASKA'S RESPONSE TO OBJECTIONS TO
THE COURT'S REPORT AND RECOMMENDATION - i
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

The vacatur recommended in the Magistrate Judge's Report and Recommendation regarding remedy, Dkt. 144 ("R&R"), is not narrow, moderate, or reasonable.  It is a radical remedy that would have far-reaching impacts to the social and economic fabric of coastal communities in Southeast Alaska and would decimate the lives of thousands of Alaskans who rely on the related Chinook troll fisheries, all for no additional benefit to the Southern Resident Killer Whale ("SRKW") population.  Defendant-Intervenor State of Alaska ("State" or "Alaska") implores the Court to reject the R&R and instead remand the matter without vacatur, adopting a remedy that keeps in place the incidental take protections of the 2019 Southeast Alaska Biological Opinion ("2019 SEAK BiOp"), consistent with the requirements under the Pacific Salmon Treaty, while the National Marine Fisheries Service ("NMFS") finishes the revised analyses it has already begun under the Endangered Species Act ("ESA") and National Environmental Policy Act ("NEPA").

## II.    ARGUMENT

### A.    Vacatur of the 2019 SEAK BiOp's ITS is Not Narrow.

In its objections to the R&R, Plaintiff Wild Fish Conservancy ("Plaintiff") makes the facially absurd argument that "the R&R has carefully recommended a narrow partial vacatur of the 2019 SEAK BiOp's incidental take statement ("ITS")…"  Dkt. 151 at 6.  A proposed remedy that would destroy an industry and decimate coastal communities in Southeast Alaska is not narrow, it is radical.  The Magistrate Judge agreed with the State on this point at oral argument, where the following colloquy took place:

> MR. PETERSON: The Pacific Salmon Treaty is one of the three things that I want to talk about here, briefly. The first thing that I'll talk about is, the relief requested is not a narrow, moderate, or reasonable request. It's radical.

> THE COURT: Yeah, no, I agree with you.

> MR. PETERSON: Okay. We're talking about closing a fishery. I won't -- I mean, it's been talked about a little bit by the Trollers, by NMFS. It's critically important to the

1    communities in Southeast Alaska that rely on these fisheries.

2    Transcript of Motion Hearing at 54.

3        The Magistrate Judge who issued the R&R plainly agreed that the relief sought by the

4    Plaintiff is not "narrow, moderate, or reasonable," but rather is "radical."  To categorize the

5    vacatur recommended in the R&R as a "narrow partial vacatur" is simply against the weight of

6    the available facts.  It would also be cold comfort to the thousands of Alaskans whose

7    livelihoods would be destroyed that the shuttering of their fisheries is viewed as narrow or

8    surgical.

9        **B.    The Prey Increase Program Mitigates Any Impacts from the SEAK**

10            **Fisheries.**

11       As both the State and Defendant-Intervenor Alaska Trollers Association have noted, the

12   R&R fails to address NMFS's analysis in the 2019 SEAK BiOp that the prey increase program

13   would mitigate the impacts of the Southeast Alaska fisheries.  *See* Dkt. 147 at 6; Dkt. 148 at 2-3.

14   NMFS developed the prey increase program as a mitigation measure specifically to account for

15   the SEAK fisheries.  Here again, the R&R is illogical.  If the Court leaves the prey increase

16   program intact, then any potential impact from the SEAK fisheries is mitigated, completely

17   negating any perceived need to shut down the fisheries.  But the R&R fails to reach this logical

18   conclusion from the information in the record.

19       **C.    Plaintiff Overstates the Impact of the SEAK Fisheries.**

20       Plaintiff also misses the mark when it argues that the suggested vacatur "would remove

21   take authorization for only those fisheries that are most harmful to endangered Southern Resident

22   Killer Whales ("SRKW") and threatened Chinook salmon…."  Dkt. 151 at 6.  This is simply not

23   true.  As Ms. Evenson explained in her earlier declaration, the newest and most accurate science

24   reflects that during the summer months SRKW feed on local stocks of Chinook where reductions

25   in prey due to the SEAK fishery are estimated at only 1.0%–2.5%.  Dkt. 135 ¶ 15.  Also, SRKW

26   are thought to be most limited in prey availability during the winter period, which they spend in

27   coastal waters, but during those months SEAK troll fisheries were estimated to reduce prey

28

STATE OF ALASKA'S RESPONSE TO OBJECTIONS TO
THE COURT'S REPORT AND RECOMMENDATION - 2
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

availability in these locales by only 0.2%–1.1%.  *Id.*  Accordingly, the prey reduction analysis performed in the 2019 SEAK BiOp vastly overestimates the potential real-world benefits to SRKW from restricting the SEAK troll fishery.  It is simply not true that the SEAK fisheries in question are the "most harmful to the" SRKW.

**D.    Vacatur of the ITS Will Result in Economic Calamity for Southeast Alaska.**

While the limited potential for prey reduction that might be achieved through the remedy proposed in the R&R is highly speculative, the absolute certainty of economic calamity for Southeast Alaska from that remedy is crystal clear.  As the State laid out in detail in its Response to Plaintiff's Motion for a Final Order on Remedy, Dkt. 134, the impacts of shuttering the SEAK troll fishery would severely hamper Southeast Alaska's economy.

The R&R superficially discusses economic impacts, noting Plaintiff's estimated "economic impact of around $9.5 million loss in generated annual income in the winter and summer seasons" and the federal defendant's "estimate that the annual economic output of the Chinook salmon commercial troll fleet for the winter and summer seasons fishery to be approximately $29 million."  Dkt. 144 at 30.  However, the R&R ignores the true extent of the potential impact, simply concluding that "[s]everal Southeast Alaska communities would also be impacted given their economic reliance on the commercial troll fishery seasons for income, the loss of tax revenue to these communities, and because of existing cost barriers to entry into other salmon fisheries."  *Id.*  As the State has consistently detailed, the impact of closing the fishery would economically devastate Southeast Alaska.  *See* Dkt. 134, Dkt. 148.

The effects of closure of the fishery would be felt across the region.  A substantial portion of the population of many of the smaller communities in Southeast Alaska, like Elfin Cove, Meyers Chuck, Pelican, and Point Baker, would lose the primary source of their income.  *See* Second Declaration of Vincent-Lang, Dkt. 136 ¶ 4.  The effects of closure would be felt as well in larger towns, like Sitka, where the troll fishery brings in over eight million "ex-vessel" dollars per year—a hugely significant number for a town with only 8,000 residents.  *Id.* ¶ 5.  Closure of the winter and summer Chinook troll fisheries could reduce the earning potential of a troll permit

STATE OF ALASKA'S RESPONSE TO OBJECTIONS TO
THE COURT'S REPORT AND RECOMMENDATION - 3
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

by anywhere from a third to a half, most likely rendering it no longer financially feasible for many fishers to participate. *Id.*

In addition to the direct impacts to troll permit holders, fishery closure would also impact overall economic activity in the State through a chilling effect on the handling, processing, wholesaling, and retailing of Chinook salmon. *Id.* ¶ 6. It would also lead to reduced fishery resource landing tax revenue—which provides for schools, utilities, and harbor maintenance—for the State and for municipalities. *Id.* ¶ 7. In some communities, the economic domino effect could reach a tipping point where there are no longer sufficient children of school age to allow the schools to keep state funding, which typically results in the closure of schools. *Id.* ¶ 4.

The importance of these fisheries to Southeast Alaska cannot be overstated—and vacating the ITS, thereby effectively closing the Chinook troll fishery, would decimate the region both socially and economically.

**E.     Vacating the Prey Increase Program Will Have Cascading Effects.**

Plaintiff objects to the R&R because that report does not recommend vacatur and injunction of the Prey Increase Program. *See* Dkt. 151. Beyond the fact that Plaintiff has not made the requisite showing for a permanent injunction, the Court should not enjoin the prey increase program because of the impact such an injunction would have outside of Southeast Alaska, most notably on Puget Sound and Pacific Fishery Management Council ("PFMC") salmon fishery BiOps and other Pacific Northwest fishery management plans.

Recall that NMFS required a mitigation program in the 2019 SEAK BiOp to support a no jeopardy finding for the SEAK salmon fisheries **and** for PFMC-managed fisheries and Puget Sound fisheries. Dkt. 135 ¶ 8. Enjoining the SRKW prey increase program until the Court enters its final order on relief as requested in the Plaintiff's motion would likely have cascading impacts to commercial and recreational fisheries off the coasts of Washington and Oregon, in Puget Sound, and in other areas. *Id.* ¶ 9. The BiOps and management plans for PFMC and Puget Sound commercial and recreational fisheries rely on the increased hatchery production from this mitigation action to stay above a Chinook abundance threshold to limit the effects that

STATE OF ALASKA'S RESPONSE TO OBJECTIONS TO
THE COURT'S REPORT AND RECOMMENDATION - 4
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

the fisheries have on SRKWs by way of reduced prey availability and accessibility in years when Chinook abundance is particularly low. *Id.* Enjoining the prey production program would increase the likelihood that Chinook abundances would fall below thresholds specified in the PFMC BiOp, resulting in additional limits to those commercial and recreational fisheries and in Puget Sound. *Id.* For these reasons, the Court should not enjoin NMFS's prey increase program.

## III.   CONCLUSION

For all of these reasons, the State respectfully requests that the Court reject the R&R and, instead, remand the matter back to NMFS without vacatur of the ITS, allowing NMFS to finish the updated ESA and NEPA analyses it has already begun and expects to finish by November 2024.

Dated: January 24, 2023

NOSSAMAN LLP
BRIAN FERRASCI-O'MALLEY
By:      */s/Brian Ferrasci-O'Malley*
         Brian Ferrasci-O'Malley, WSBA #46721
         719 Second Avenue, Suite 1200
         Seattle, WA 98104
         Tel: 206.395.7622
         bferrasciomalley@nossaman.com

TREG R. TAYLOR
ATTORNEY GENERAL
By:      */s/Aaron C. Peterson*
         Aaron C. Peterson, Alaska Bar No. 1011087
         Senior Assistant Attorney General
         Department of Law
         1031 West Fourth Avenue, Ste. 200
         Anchorage, AK 99501
         Tel:  907.269.5232
         aaron.peterson@alaska.gov
         Attorneys for State of Alaska

STATE OF ALASKA'S RESPONSE TO OBJECTIONS TO
THE COURT'S REPORT AND RECOMMENDATION - 5
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.

*/s/ Brian Ferrasci-O'Malley*
Brian Ferrasci-O'Malley

STATE OF ALASKA'S RESPONSE TO OBJECTIONS TO
THE COURT'S REPORT AND RECOMMENDATION - 6
Case No. 2:20-cv-00417-RAJ-MPL

Nossaman LLP
719 Second Avenue, Suite 1200
Seattle, WA  98104
Tel:  206.395.7630/Fax: 206.257.0780