UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILD FISH CONSERVANCY,<br><br>    Plaintiff,<br><br>v.<br><br>JENNIFER QUAN, in her official capacity as Regional Administrator for the National Marine Fisheries Service, *et al.*,<br><br>    Defendants,<br><br>and<br><br>ALASKA TROLLERS ASSOCIATION, and STATE OF ALASKA,<br><br>    Defendant-Intervenors. | Case No. 2:20-cv-00417-RAJ-MLP<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENOR ALASKA'S MOTION FOR STAY PENDING APPEAL |

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 1
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................3

GLOSSARY OF ACRONYMS ............................................................................................5

I.     INTRODUCTION ..........................................................................................................6

II.    STANDARD OF REVIEW .............................................................................................7

III.   ARGUMENT...................................................................................................................7

       A.    Alaska Has Not Made a Strong Showing that It Will Succeed on the Merits.....................................................................................7

            1.    The Court applied the correct legal standards for vacatur. ...............................................................................................8

            2.    The Court correctly found NMFS's violations to be serious. ..............................................................................................9

            3.    The Court correctly concluded that the disruptive consequences do not outweigh the seriousness of the violations. ..................................................9

       B.    Alaska Has Not Shown that It Will Be Irreparably Injured Absent a Stay.......................................................................................13

       C.    The Conservancy's Interests Would Be Substantially Injured by the Stay. ..............................................................................................14

       D.    The Equities and the Public Interests Do Not Favor the Stay Because It Would Harm Endangered SRKWs and Threatened Chinook Salmon. .........................................................16

IV.   CONCLUSION. ............................................................................................................16

LCR 7(e) Certification ...........................................................................................................17

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 2
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

# TABLE OF AUTHORITIES
**Cases**

*All. for the Wild Rockies v. U.S. Forest Serv.*,
    907 F.3d 1105 (9th Cir. 2018) ..................................................................................8

*Cal. Cmtys. Against Toxics v. U.S. Env't Prot. Agency*,
    688 F.3d 989 (9th Cir. 2012) ....................................................................................8

*Ctr. for Biological Diversity v. Bernhardt*,
    982 F.3d 723 (9th Cir. 2020) ..................................................................................12

*Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*,
    843 F. App'x 77 (9th Cir. 2021) ................................................................6, 7, 8, 12

*Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*,
    466 F. Supp. 3d 1217 (W.D. Wash. 2020),
    *aff'd* 843 F. App'x 77 (9th Cir. 2021) ......................................................................8

*Humane Soc'y of the U.S. v. Locke*,
    626 F.3d 1040 (9th Cir. 2010) ..................................................................................8

*Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*,
    109 F. Supp. 3d 1238 (N.D. Cal. 2015) ....................................................................9

*Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) ................................................................7, 13, 14, 16

*Lands Council v. McNair*,
    537 F.3d 981 (9th Cir. 2008) .........................................................................7, 8, 15

*Marbled Murrelet v. Babbitt*,
    83 F.3d 1068 (9th Cir. 1996) ..................................................................................16

*Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*,
    960 F.3d 1120 (9th Cir. 2020) ................................................................................13

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
    422 F.3d 782 (9th Cir. 2005) ..................................................................................16

*Neighbors of the Mogollon Rim, Inc. v. U.S. Forest Serv.*,
    No. 22-15259,
    2023 U.S. App. LEXIS 11031 (9th Cir. May 5, 2023) ....................................10, 13

*Nken v. Holder*,
    556 U.S. 418 (2009) ..........................................................................................7, 14

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 3
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs*,
   460 F. Supp. 3d 1030 (D. Mont. 2020) ................................................................. 10

*Pollinator Stewardship Council v. U.S. Env't Prot. Agency*,
   806 F.3d 520 (9th Cir. 2015) ................................................................................. 8

*Puget Soundkeeper All. v. Wheeler*,
   No. C15-1342-JCC,
   2018 U.S. Dist. LEXIS 199358 (W.D. Wash. Nov. 26, 2018) ............................... 8

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................................................... 14

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
   985 F.3d 1032 (D.C. Cir. 2021) ............................................................................. 7

*Tenn. Valley Auth. v. Hill*,
   437 U.S. 153 (1978) ....................................................................................... 13, 16

*W. Watersheds Project v. Zinke*,
   441 F. Supp. 3d 1042 (D. Idaho 2020) ................................................................... 9

*Wild Fish Conservancy v. Nat'l Park Serv.*,
   No. C12-5109-BHS,
   2014 U.S. Dist. LEXIS 105689 (W.D. Wash. July 31, 2014) ................................ 9

**Statutes**

16 U.S.C. § 1861a .............................................................................................. 14, 16

16 U.S.C. § 1864 ................................................................................................ 14, 16

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 4
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

# GLOSSARY OF ACRONYMS

| | |
|---|---|
| APA | Administrative Procedure Act |
| BiOp | Biological Opinion |
| ESA | Endangered Species Act |
| ITS | Incidental Take Statement |
| NEPA | National Environmental Policy Act |
| NMFS | National Marine Fisheries Service |
| PST | Pacific Salmon Treaty |
| SEAK | Southeast Alaska |
| SRKW | Southern Resident Killer Whale |

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 5
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

Plaintiff Wild Fish Conservancy ("Conservancy") hereby responds to Defendant-Intervenor State of Alaska's ("Alaska") Motion for Partial Stay Pending Appeal ("Motion"), Dkt. 172, and respectfully requests that the Court deny the relief requested therein.

I.  INTRODUCTION.

The Court should deny Alaska's Motion to stay the Court's order partially vacating the National Marine Fisheries Service's ("NMFS") incidental take statement ("ITS") in the 2019 biological opinion ("BiOp") for Southeast Alaska salmon fisheries ("2019 SEAK BiOp"), which authorizes "take" of endangered Southern Resident Killer Whales ("SRKW") and threatened Chinook salmon caused by salmon harvests in Southeast Alaska. Alaska has failed to make any of the showings necessary for such a stay and the Court's partial vacatur is needed to protect SRKWs and Chinook salmon from the significant risks and harms posed by the illegal ITS.

To prevail on its Motion, Alaska must make a "strong showing" that it is likely to succeed on its appeal. To succeed on appeal, Alaska would need to establish that the Court abused its discretion in fashioning relief. Under the Administrative Procedure Act ("APA"), there is a strong presumption that the Court should vacate the entire unlawful ITS for salmon fisheries in Southeast Alaska and such a remedy may be withheld only in limited or rare circumstances. The Court withheld that presumptive remedy here, issuing instead a partial vacatur that leaves the illegal ITS in place for the vast majority of fisheries covered thereby, while vacating authorization only for those harvests that are most harmful to endangered SRKWs and threatened Chinook salmon. That is not an abuse of discretion. *See Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 843 F. App'x 77, 80 (9th Cir. 2021) (holding that the Court did not abuse its discretion where, instead of issuing the "ordinary remedy" of "[f]ull vacatur," it "crafted a hybrid remedy [in the form of partial vacatur] that reasonably balanced the competing risks or environmental and economic harms"). The Motion should be denied because Alaska cannot make a strong showing that it is likely to prevail on appeal.

Further, while Alaska has failed to show that it will be irreparably injured absent the requested stay, the stay would harm endangered SRKWs and threatened Chinook salmon,

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 6
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

thereby significantly injuring the Conservancy's interests. Finally, the requested stay is not in the public interest. Each of these deficiencies is, by itself, a dispositive ground for denial of the Motion.

## II. STANDARD OF REVIEW.

A stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result," and the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (citations omitted); *see also Nken v. Holder*, 556 U.S. 418, 433–34 (2009). The Court considers four factors in evaluating these stays: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *See Lado*, 952 F.3d at 1006–07 (citation omitted). The first two factors "are the most critical." *Id.* at 1007 (citation omitted).

## III. ARGUMENT.

### A. **Alaska Has Not Made a Strong Showing that It Will Succeed on the Merits.**

"An applicant for a stay pending appeal must make 'a strong showing that he is likely to succeed on the merits.'" *Lado*, 952 F.3d at 1010 (quoting *Nken*, 556 U.S. at 434). Alaska falls far short of this standard. The Court applied the correct legal standard for vacatur under the APA and carefully exercised its equitable discretion in ordering only a partial vacatur of the ITS. The Court did not abuse its discretion in issuing this relief and Alaska has certainly not made a "strong showing" that it is likely to succeed in arguing otherwise on appeal. Accordingly, Alaska's Motion for a stay pending appeal should be denied.

Alaska's appeal focuses on the Court's partial vacatur of the ITS. *See* Dkt. 172 at 2. Such equitable remedies are reviewed for an abuse of discretion. *See Coal. to Protect Puget Sound*, 843 F. App'x at 80; *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1051 (D.C. Cir. 2021). A district court abuses its discretion if the decision is based on an incorrect legal standard or on clearly erroneous factual findings. *Lands Council v. McNair*, 537

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 7
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

F.3d 981, 986 (9th Cir. 2008). Conclusions of law are reviewed de novo and factual findings are reviewed for clear error. *Id.* at 986–87. "Under this standard, 'as long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case.'" *Id.* (citation omitted). Alaska cannot make a strong showing that the Court abused its discretion in fashioning partial vacatur.

### 1. The Court applied the correct legal standards for vacatur.

The Court provided a thorough description of the standards for vacatur of unlawful agency actions under the APA, and it applied these standards. *See* Dkt. 144 at 13–15, 25–37. Alaska does not appear to suggest that the Court applied an incorrect legal standard. *See* Dkt. 172.

The APA's "presumptive remedy" for NMFS's violations is "full vacatur" of the 2019 SEAK BiOp. *See Coal. to Protect Puget Sound*, 843 F. App'x at 80. It is Defendants' burden to overcome that presumption. *See All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121–22 (9th Cir. 2018); *Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 3d 1217, 1219, 1226 (W.D. Wash. 2020), *aff'd* 843 F. App'x 77. In considering their request, the Court weighs the seriousness of the errors against the disruptive consequences posed by vacatur. *Cal. Cmtys. Against Toxics v. U.S. Env't Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012).

However, there is a strong presumption that unlawful agency decisions should be vacated, and remand without vacatur is therefore rarely appropriate. *See Pollinator Stewardship Council v. U.S. Env't Prot. Agency*, 806 F.3d 520, 532 (9th Cir. 2015) ("only in 'limited circumstances'") (citation omitted); *Humane Soc'y of the U.S. v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) ("[i]n rare circumstances"). "The cases in which remand without vacatur was deemed appropriate 'highlight the **significant disparity** between the agencies' relatively minor errors, on the one hand, and the damage that vacatur could cause the very purpose of the underlying statutes, on the other.'" *Puget Soundkeeper All. v. Wheeler*, No. C15-1342-JCC, 2018 U.S. Dist. LEXIS 199358, at *16–17 (W.D. Wash. Nov. 26, 2018) (citation omitted, emphasis

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 8
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

added); *see also Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015). Moreover, courts tip the scale in favor of protecting imperiled species when considering vacatur because Congress intended such species to be prioritized over other objectives when it enacted the ESA. *E.g.*, *Klamath-Siskiyou*, 109 F. Supp. 3d at 1242.

### 2. The Court correctly found NMFS's violations to be serious.

The Court correctly found that NMFS's errors are "sufficiently serious . . . as they clearly undermine central congressional objectives of the ESA and [the National Environmental Policy Act]." Dkt. 144 at 26–28.

NMFS violated the ESA by issuing the ITS to authorize fisheries that harm imperiled SRKWs and Chinook salmon in reliance on poorly defined and uncertain mitigation. Dkt. 111 at 25–31. Further, one mitigation component—the prey increase program—was implemented in violation of the ESA and the National Environmental Policy Act ("NEPA") and may be altered or terminated when reviewed under those statutes. *See id.* at 31–33, 37–38. These deficiencies undermine NMFS's approval of the fisheries because, at best, it is uncertain whether harm to the species will be sufficiently offset by mitigation. NMFS also violated NEPA by issuing the ITS for the fisheries without first providing **any** of the required NEPA processes or reviews. *Id.* at 34–37. Courts have found far less NEPA errors to be serious. *E.g.*, *Wild Fish Conservancy v. Nat'l Park Serv.*, No. C12-5109-BHS, 2014 U.S. Dist. LEXIS 105689, at *7–8 (W.D. Wash. July 31, 2014) (failed to consider a reasonable alternative); *W. Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042, 1087 (D. Idaho 2020) (failed to provide for adequate public involvement).

### 3. The Court correctly concluded that the disruptive consequences do not outweigh the seriousness of the violations.

The Court found that there would be some economic consequences to the commercial fishing industry and to some communities in Southeast Alaska, which the Court indicated that it "does not take . . . lightly." Dkt. 144 at 30. However, the Court concluded that such economic impacts do not outweigh the seriousness of the violations, particularly given the environmental

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 9
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

consequences of leaving the ITS in place. *Id.* at 29–30, 33–34, 37. This was not an abuse of discretion.

When considering the consequences of vacatur, the primary focus is environmental impacts. *See* Dkt. 144 at 28; *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 460 F. Supp. 3d 1030, 1038 (D. Mont. 2020). Indeed, the Ninth Circuit recently held that, where "[t]he agency's errors . . . are significant and vacatur will not cause an environmental harm . . . [,] the presumption of vacatur is not overcome." *See Neighbors of the Mogollon Rim, Inc. v. U.S. Forest Serv.*, No. 22-15259, 2023 U.S. App. LEXIS 11031, at *10 (9th Cir. May 5, 2023).

In considering environmental consequences, the Court correctly noted that vacatur of the ITS would not result in any environmental damage and would instead benefit SRKWs. Dkt. 144 at 29, 33–34 ("The risk of environmental harm to the SRKW from leaving the ITS in place, and by otherwise not allowing for an increased amount of prey to benefit SRKW, therefore counsels in favor of vacatur of the ITS."). The fisheries authorized by the unlawful ITS harm endangered SRKW and threatened Chinook salmon—species that are in precarious and generally declining conditions. *See, e.g.*, AR 01741–42, 01747, 15905, 15911, 15988–89, 47276, 47319, 47439–40, 47502; Dkt. 127-2 ¶ 5. Alaska's data show that most Chinook salmon caught in the fishery are high priority prey for SRKWs, which includes ESA-listed Lower Columbia River and Puget Sound Chinook salmon. *See* Dkt. 135-1 at 5–6. The 2019 SEAK BiOp explained that, while some reductions in harvest levels were made in the 2019 Pacific Salmon Treaty, "more would be required" to conserve SRKWs and Puget Sound Chinook salmon. AR 47201–02.

An increase in SRKW prey is urgently needed. The current condition of the species is "unprecedented," with more than a fifth of the population likely in a vulnerable state due to emaciated body conditions. Dkt. 127-1 ¶¶ 11, 14. Thus, "an immediate increase in the abundance of Chinook [salmon] . . . [is needed] to avoid functional extinction." *Id.* ¶ 18. The Court's partial vacatur would alleviate some of the harm caused by the unlawful ITS while NMFS evaluates the fisheries under the ESA and NEPA to remedy its violations. Dr. Lacy's modeling shows that this relief may stop the decline of the SRKW. Dkt. 127-2 ¶¶ 8–9. As the Court concluded, "[t]hough

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 10
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

there is uncertainty as to how much prey would ultimately reach the SRKW, the record before the Court suggests that closure of the fisheries meaningfully improves prey available to SRKW, as well as SRKW population stability and growth, under any scenario." Dkt. 144 at 29.

The Court should reject Alaska's contention that concerns over harm to SRKWs from the fisheries have subsided because the prey increase program is supposedly operating. *See* Dkt. 172 at 3. A primary concern with this program is that NMFS failed to develop specific plans with deadlines that show how and when the increased hatchery production will be implemented in a manner that mitigates impacts to SRKWs from the fisheries. *See* Dkt. 111 at 28–30 ("NMFS failed to create a binding mitigation measure that described 'in detail the action agency's plan to offset the environmental damage caused by the project'"; "the 2019 SEAK BiOp does not include any specific deadlines for implementing the proposed mitigation, nor does it include specific requirements by which to confirm that the mitigation is being implemented in the manner and on a schedule needed to avoid extinction of the SRKW.") (citation omitted). That deficiency persists today, as NMFS has yet to produce a scientifically or legally defensible mitigation plan to show how the mitigation will be implemented to avoid extinction of SRKWs.

Further, NMFS is not fully implementing the prey increase program as Alaska suggests. *See* Dkt. 172 at 3–4. The 2019 SEAK BiOp contemplated that the program would release 20 million hatchery smolts annually. AR 47203, 47506. NMFS's own records show that the program released 597,242 smolts in 2020, approximately 6.3 million smolts in 2021, and approximately 8 million smolts in 2022. Dkt. 133-3 at 24 (this document uses "PST," for Pacific Salmon Treaty, to refer to hatchery releases under the prey increase program). This program is therefore releasing **less than half** the smolts contemplated. In an effort to mask this deficiency, NMFS includes smolt releases funded by Washington State under an entirely different program. *See id.* ¶ 3, p. 24. Washington's program does not compensate for NMFS's failure to implement the prey increase program; notably, NMFS has insisted that the prey increase program is needed as mitigation despite Washington's ongoing separate efforts. *See* Dkt. 43-5 ¶ 12; Dkt. 133-2 ¶ 23. Moreover, Washington's smolt releases occurred under annual budgets passed by the state

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 11
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

legislature—there is no legal obligation or binding plan for them to continue and there is no basis to assume they will. *See* Dkt. 133-3 at 11; Dkt. 43-5 ¶ 12. Washington's efforts therefore cannot be relied upon as mitigation to offset harm to ESA-listed species resulting from the salmon fisheries. *See Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 743 (9th Cir. 2020). Accordingly, there is no basis to assume that sufficient mitigation is being implemented to offset harm from the fisheries in a manner needed to avoid extinction of the SRKW.

Additionally, the Court's partial vacatur is needed to reduce harm to threatened Chinook salmon. The 2019 SEAK BiOp explained that mitigation was needed to address fishery impacts on Puget Sound Chinook salmon. *See* AR 47201–02. NMFS was therefore supposed to fund habitat restoration projects and conservation hatchery programs focused on four Puget Sound Chinook salmon populations. *See* AR 47202. As with the prey increase program for SRKWs, the Court found that this mitigation was too vague and uncertain to be relied upon under the ESA to offset harm to Chinook salmon. *See* Dkt. 111 at 30–31 ("NMFS . . . cannot confirm additional fish will be produced by the funding" for conservation hatchery programs). The deficiencies remain. Notably, NMFS was supposed to fund the development of a new conservation hatchery program in Hood Canal as part of this mitigation, but there is no indication that this was ever accomplished. *See* AR 47202, 47420.

There will be some economic consequences from vacatur of the ITS. However, the impacts are substantially mitigated by the Court's partial vacatur in lieu of "the ordinary remedy" of "[f]ull vacatur" of the unlawful ITS. *See Coal. to Protect Puget Sound*, 843 F. App'x at 80. The ITS applies broadly to authorize "take" of four ESA-listed species (i.e., SRKWs, Chinook salmon, Mexico humpback whales, and Western Steller sea lions) resulting from salmon harvests throughout Southeast Alaska; it covers all gear types (i.e., troll, set and drift gillnet, and purse seine fisheries); it applies to commercial, sport/recreational, and subsistence fisheries; and it applies irrespective of the salmon species targeted by the fisheries (i.e., Chinook, chum, coho, pink, and sockeye salmon). *See* AR 47457–79, 47518 (ITS covers "expected take in the SEAK salmon fishery"). The Court's vacatur affects only commercial harvests of Chinook salmon in

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 12
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

two seasons of the troll fishery—a small portion of the fisheries covered by the ITS. For example, the total harvest value of the commercial salmon fisheries in Southeast Alaska in 2020 was $55.2 million; Chinook salmon accounted for around 21 percent ($11.5 million) of that value. Dkt. 127-4 ¶¶ 15–16 tbl. 3. These figures do not account for the substantial sport and subsistence fisheries that are also unaffected by the Court's vacatur. *See* Dkt. 127-4 ¶ 11.a.

Contrary to Alaska's contentions, the Court did not fail to "giv[e] adequate consideration" to these economic impacts. *See* Dkt. 172 at 2. The Court acknowledged the economic impacts and explained that the Court "does not take . . . [them] lightly." Dkt. 144 at 30. However, the Court explained that the economic impacts "do not overcome the seriousness of NMFS's violations given the presumption of vacatur, the harm posed to the SRKW by leaving the ITS in place and the Court's mandate to protect endangered species." *Id.* This was a correct application of the law and was certainly not an abuse of discretion. *See, e.g.*, *Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*, 960 F.3d 1120, 1144–45 (9th Cir. 2020) (vacating despite significant economic impact on farmers across the country); *Neighbors of the Mogollon Rim, Inc.*, 2023 U.S. App. LEXIS 11031, at *10 (holding that, where "[t]he agency's errors . . . are significant and vacatur will not cause an environmental harm . . . [,] the presumption of vacatur is not overcome"); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 174, 194 (1978) (explaining that Congress intended for courts to prioritize the protection of ESA-listed species over other interests through a policy of "institutionalized caution").

For these reasons, Alaska has not a strong showing that it will succeed on appeal. The Motion to stay the Court's partial vacatur of the ITS pending appeal should therefore be denied. *See Lado*, 952 F.3d at 1010.

**B.     <u>Alaska Has Not Shown that It Will Be Irreparably Injured Absent a Stay</u>.**

While it is undisputed that vacatur will have some economic consequences on the commercial fishing industry in Southeast Alaska, Alaska has not demonstrated that such impacts constitute irreparable injury. This Court should therefore deny the Motion.

"An applicant for a stay pending appeal must show that a stay is necessary to avoid likely

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 13
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

irreparable injury to the applicant while the appeal is pending[;] . . . '[s]imply showing some possibility of irreparable injury' is insufficient." *Lado*, 952 F.3d at 1007 (quoting *Nken*, 556 U.S. at 434). "[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). "The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money . . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* (citation omitted).

As discussed above, the Court substantially mitigated the economic impact to the commercial salmon industry in Southeast Alaska by issuing a partial vacatur that does not have any impact on the vast majority of harvests covered by the unlawful ITS. Further, the Magnuson-Stevens Fishery Conservation and Management Act authorizes the use of federal relief funding for fishery disasters, including those resulting from "judicial action." *See* 16 U.S.C. §§ 1861a(a) (authorizing fisheries disaster relief), 1864(b)(1) (authorizing funds "[s]ubject to the availability of appropriations"), 1864(d) (defining catastrophic regional fishery disaster). Alaska fails to acknowledge the availability of this relief. There is at least a "possibility," and maybe a likelihood, that federal funding will be provided to mitigate economic impacts from the Court's vacatur order. This undermines Alaska's assertion of "irreparable harm." *See Sampson*, 415 U.S. at 90.

C. **The Conservancy's Interests Would Be Substantially Injured by the Stay.**

Alaska's Motion should also be denied because the requested stay of the Court's partial vacatur of the ITS would substantially injure the Conservancy's interests. *See Lado*, 952 F.3d at 1006–07. Specifically, the stay would harm endangered SRKWs and threatened Chinook salmon.

The Court's vacatur order is needed to provide immediate and meaningful benefits to SRKWs, despite Alaska's contentions to the contrary. Dr. Giles explains that the current condition of SRKWs is "unprecedented," with more than a fifth of the population likely vulnerable with emaciated body conditions, and "an immediate increase in the abundance of

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 14
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

Chinook [salmon] . . . [is therefore needed] to avoid functional extinction." Dkt. 127-1 ¶¶ 11, 14, 18. The 2019 SEAK BiOp found that the Southeast Alaska salmon fisheries reduce SRKW's prey availability by 0.1% to 12.9% and, critically, reduce the larger Chinook salmon preferred by SRKWs from the whale's critical habitat by up to 2.5%. AR 47283, 47439–40, 47507. These harvest levels are insufficient to conserve SRKWs and Puget Sound Chinook salmon. *See* AR 47201–02.

The speculative mitigation relied upon by NMFS to offset harm from the fisheries still lacks a definite plan demonstrating that impacts will be sufficiently mitigated to avoid jeopardizing SRKWs and Chinook salmon. While NMFS has disbursed funds for the prey increase program, it is releasing less than half of the hatchery smolts envisioned in the 2019 SEAK BiOp and NMFS has not demonstrated that those releases actually benefit SRKWs. *See* AR 47203, 47506; Dkt. 133-3 at 24.

The Court's partial vacatur of the unlawful ITS will provide rapid increases in SRKW prey; notably, Alaska's own data show that nearly all Chinook salmon caught in Southeast Alaska are from stocks consumed by SRKWs and more than half are from stocks deemed a "high priority" for SRKWs. *See* Dkt. 135-1 p. 6. The Court therefore correctly found that, despite "uncertainty as to how much prey would ultimately reach the SRKW, the record before the Court suggests that closure of the fisheries meaningfully improves prey available to SRKWs, as well as SRKW population stability and growth, under any scenario." Dkt. 144 at 29; *see also* Dkt. 127-2 ¶¶ 8–11. Given Alaska's own data, it cannot show that the Court's findings in this regard were "clear error." *See Lands Council*, 537 F.3d at 986–87.

Alaska's request to stay the Court's partial vacatur would enable harvest levels that risk "functional extinction" of the SRKW, especially given the ongoing deficiencies on the mitigation. *See* Dkt. 127-1 ¶ 18. Accordingly, Alaska has failed to meet its burden in showing that the requested stay would not cause substantial injury to the Conservancy's interests.

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 15
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

### D. The Equities and the Public Interests Do Not Favor the Stay Because It Would Harm Endangered SRKWs and Threatened Chinook Salmon.

Contrary to Alaska's contentions, the equities and public interests strongly favor implementation of the Court's partial vacatur of the ITS and disfavor Alaska's requested stay.

In enacting the ESA, "Congress viewed the value of endangered species as 'incalculable'" and therefore sought to "halt and reverse the trend toward species extinction, **whatever the cost.**" *Hill*, 437 U.S. at 184, 187 (emphasis added). The ESA's mandate to "insure" that actions are likely to jeopardize species "admits of no exception." *Id.* at 173. "Congress [thereby] intended endangered species to be afforded the highest of priorities" under a policy of "institutionalized caution" and, as the Supreme Court explained, "courts . . . [should] enforce [such Congressional priorities] when enforcement is sought." *See id.* at 174, 194. "Accordingly, courts 'may not use equity's scales to strike a different balance,'" as "'the balance of hardships always tips sharply in favor of endangered and threatened species.'" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 794 (9th Cir. 2005) (quoting *Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1073 (9th Cir. 1996)). The Court should therefore reject Alaska's effort to prioritize economic considerations over imperiled species.

Instead, the equities and the public interest favor relief that ensures the continued survival of SRKWs and threatened Chinook salmon. *See Marbled Murrelet*, 83 F.3d at 1073. This is especially true here where the Court substantially mitigated economic impacts by issuing a partial vacatur in lieu of the presumptive vacatur of the entire ITS and where Alaska has not even addressed the availability of federal relief funds to compensate for the economic impacts. *See* 16 U.S.C. §§ 1861a(a), 1864(b)(1), 1864(d). The Court should deny the Motion because Alaska has failed to demonstrate that the requested stay is in the public interest. *See Lado*, 952 F.3d at 1006–07.

### IV. CONCLUSION.

For the foregoing reasons, the Conservancy respectfully requests that the Court's deny Alaska's Motion to stay the Court's partial vacatur pending the appeal.

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 16
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600

**LCR 7(e) Certification**: I certify that this memorandum contains 4,132 words, in compliance with the Local Civil Rules.

Respectfully submitted this 22nd day of May 2023.

| | |
|---|---|
| KAMPMEIER & KNUTSEN, PLLC | CORR CRONIN, LLP |
| By: s/ Brian A. Knutsen<br>Brian A. Knutsen, WSBA No. 38806<br>Emma A. O. Bruden, WSBA No. 56280<br>1300 S.E. Stark Street, Suite 202<br>Portland, Oregon 97214<br>Tel: (503) 841-6515 (Knutsen)<br>     (503) 719-5641 (Bruden)<br>Email: brian@kampmeierknutsen.com<br>       emma@kampmeierknutsen.com<br><br>Paul A. Kampmeier, WSBA No. 31560<br>705 Second Avenue, Suite 901<br>Seattle Washington 98104<br>Tel: (206) 858-6983<br>Email: paul@kampmeierknutsen.com | Eric A. Lindberg, WSBA No. 43596<br>1015 Second Avenue, Floor 10<br>Seattle, Washington 98104<br>Tel: (206) 625-8600<br>Email: elindberg@corrcronin.com |

*Attorneys for Plaintiff Wild Fish Conservancy*

PLAINTIFF'S RESPONSE TO DEFENDANT-INTERVENORS' MOTION FOR STAY PENDING APPEAL - 17
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

CORR CRONIN, LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600