HONORABLE MICHELLE L. PETERSON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILD FISH CONSERVANCY,<br><br>　Plaintiff,<br><br>v.<br><br>JENNIFER QUAN, in her official capacity as Acting Regional Administrator for the National Marine Fisheries Service, *et al.*,<br><br>　Defendants,<br><br>and<br><br>ALASKA TROLLERS ASSOCIATION, and STATE OF ALASKA,<br><br>　Defendant-Intervenors. | Case No. 2:20-cv-00417-RAJ-MLP<br><br>DECLARATION OF<br>EMMA HELVERSON |

　　I, Emma Helverson, declare the following on the basis of personal knowledge to which I am competent to testify:

　　1.　I am the Executive Director of Wild Fish Conservancy and have served in this role since May 2022. From July 2020 to May 2022, I served as the Director of Communications for Wild Fish Conservancy, and from September 2017 to July 2020, I served as the Outreach and Event Coordinator. As the Executive Director, I am familiar with the objectives, programs,

HELVERSON DECLARATION – 1
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

membership, and structure of Wild Fish Conservancy.

2. Wild Fish Conservancy is and has been throughout the entirety of this litigation, including the time of filing, a membership-based non-profit 501(c)(3) organization formed under the laws of Washington State. Wild Fish Conservancy is dedicated to the recovery and conservation of region's wild fish ecosystems. This includes recovery and conservation of the rivers and environment upon which wild fish depend, as well as other species that play a central role in defining the wild fish that exist today, such as their predators and prey. The predators and prey of wild salmon define the species as they exist today, shaping their migration, genetics and more for millions of years, and the Conservancy therefore considers protection of all parts of the wild fish ecosystems central to protecting wild fish. The Conservancy seeks to protect wild fish so they will continue to provide cultural, ecological, nutritional, aesthetic, and recreational benefits to our region, including subsistence fishing and serving as prey of Southern Resident Killer Whales and other species.

3. Through science, education, and advocacy, Wild Fish Conservancy promotes technically and socially responsible resource management to better sustain the region's wild fish heritage. Wild Fish Conservancy is continually engaged in research and monitoring projects aimed to guide its restoration, protection, advocacy, and public education efforts, and to improve basic understanding of the natural and anthropogenic processes influencing the health of wild fish populations. Wild Fish Conservancy develops and implements ecological process restoration initiatives intended to recover important ecosystem functions, to recreate dynamic and self-maintaining habitat systems, and to serve as models throughout the region. Wild Fish Conservancy is devoted to educating members of the community about wild fish, their habitats, and the ways that humans impact native fish stocks. Wild Fish Conservancy provides a variety of

HELVERSON DECLARATION – 2
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

educational resources and opportunities to increase awareness, stimulate thinking, and encourage informed decision-making. Wild Fish Conservancy advocates for socially responsible and scientifically credible conservation by reviewing and commenting on policy proposals and other proposed government actions, participating in technical forums, working with resource management officials, developing information/action campaigns, and legally challenging actions when necessary. Wild Fish Conservancy currently employs nineteen individuals who carry out the organization's science, education, and advocacy programs. At the time of filing and at all times throughout this lawsuit, Wild Fish Conservancy has employed fewer than 500 employees. At the time of filing and at all times throughout this lawsuit, Wild Fish Conservancy has had a net worth of less than $7,000,000.

4.   Wild Fish Conservancy seeks to recover and conserve wild fish ecosystems to, among other things, ensure wild fish continue to provide the important ecological and cultural benefits that they have historically provided. Such benefits include: sustainable harvest by First Nations, Tribal members, and fishermen, including members of the Conservancy; sufficient prey for predators that depend on wild salmonids and other fish, like Southern Resident Killer Whales and sea lions; and maintenance of the overall biodiversity of Puget Sound, including a stable predator-prey relationship throughout the ecosystem.

5.   For over thirty years, Wild Fish Conservancy has worked to minimize harm on threatened and endangered salmonids and their ecosystems throughout the Pacific Northwest. Our efforts on this include working to sunset the most harmful hatcheries; ensuring industry, states, and the federal government consider all impacts from activities like hatchery operations, net pens, and harvests; working to bring industry, states, and the federal government into compliance with federal laws, like the Endangered Species Act ("ESA"); undertaking scientific

HELVERSON DECLARATION – 3
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

endeavors aimed at understanding the impacts from hatcheries and harvests on wild salmonids and their ecosystems, including corresponding with international experts to better inform decision makers; and educating the public on the science around threats faced by wild salmonids and their ecosystems. To provide just a few examples of Wild Fish Conservancy's efforts over the years on this:

    a.    Since 1989, Wild Fish Conservancy has conducted annual snorkel surveys on the Tolt River to monitor the status and trends of ESA-listed salmonid populations and document hatchery and wild interactions. Beginning in 2019, Wild Fish Conservancy has also conducted annual snorkel surveys on the Skykomish River.

    b.    Between 1993 and 1997, Wild Fish Conservancy played a leadership role in the development of the Wild Salmonid Policy developed to guide and describe agency activities and programs related to the protection, management, and production of wild salmonids in the State of Washington.

    c.    Since 2005, when Southern Resident Killer Whales were listed, Wild Fish Conservancy has investigated fisheries in the Pacific Northwest to understand their impacts on Southern Resident Killer Whales.

    d.    In 2007, Wild Fish Conservancy submitted comments on a draft recovery plan for Southern Resident Killer Whales.

    e.    In 2007, Wild Fish Conservancy published a journal article titled "A Future for Puget Sound's Killer Whales: The Link Between Killer Whales and Wild Salmon," which identified prey limitations as among the threats facing killer whales.

    f.    In July 2014, Wild Fish Conservancy participated on a panel presenting hatchery science to the Washington State Natural Resources and Parks committee. In 2017 and

HELVERSON DECLARATION – 4
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

2018, Wild Fish Conservancy participated as a member of the Puget Sound Steelhead Advisory Group to help develop recommendations for the management of Puget Sound steelhead populations, fisheries, and hatchery programs.

g. Since 2016, Wild Fish Conservancy has conducted research and published three studies in scientific journals evaluating alternative commercial harvest techniques capable of aiding escapement of wild fish while reducing straying of hatchery-origin fish to spawning grounds where they harm the genetic integrity of their wild counterparts. This research has led to the implementation of these alternative gear types in Washington, Oregon, and British Columbia. Wild Fish Conservancy presented this research to State of Washington legislators as part of the discussion of solutions to reduce hatchery impacts to aid wild salmon recovery.

h. In March 2018, Wild Fish Conservancy published an article in a journal presenting a scientific rationale for an alternative conceptual framework for salmon management that is not reliant on technological subsidies to harvest from large-scale hatchery production that imposes high ecological costs on wild salmon and undetermined economic costs on society. This research led to the development of sustainable sourcing criteria that have been adopted by some seafood retailers.

i. In August 2018, Wild Fish Conservancy submitted to the Southern Resident Killer Whale Task Force a proposal titled "Emergency Measures for Both Sides of the Border Required to Save Southern Resident Killer Whales."

j. Between 2018 and the present, Wild Fish Conservancy testified at numerous Fish and Wildlife Commission meetings, submitted public comments, and collaborated with policy makers to advise the development of the statewide Anadromous Salmon and Steelhead Hatchery Policy (C-3624), as well as the Hatchery Co-Manager Policy that

HELVERSON DECLARATION – 5
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

supersedes C-3624 in the geographic area applicable to the particular agreement.

k. In 2020, Wild Fish Conservancy explored the link between salmon abundance and survival of Southern Resident Killer Whales in an article titled "Understanding How Ocean Harvest Affects the Size, Abundance, and Resiliency of Chinook."

l. In 2021, Wild Fish Conservancy commented on the potential environmental damage and harm to wild salmon and Southern Resident Killer Whale survival from a proposal to significantly increase funding for large-scale hatchery production in an article titled "Congress on Track to Approve Catastrophic Investment in Northwest Hatcheries, Undermining Wild Salmon Recovery."

m. In 2024, an article submitted by Wild Fish Conservancy for peer-review in a scientific publication, "Productivity and resilience of Chinook salmon compromised by 'Mixed-Maturation' fisheries in marine waters," was published as a preprint in BioRxiv.

n. Wild Fish Conservancy frequently shares information on new hatchery and fisheries science and peer-reviewed publications with our members and invites their participation in opportunities to provide public comments related to hatchery and fishery policy development. Wild Fish Conservancy maintains a publicly accessible website that includes educational materials about impacts on wild salmonids, including a comprehensive database of the substantial scientific literature on hatchery science and hatchery reform.

6. Not only does Wild Fish Conservancy encourage its members to provide public comment, but Wild Fish Conservancy also regularly seeks to participate in decision-making processes related to salmonids and aquatic species in the Northwest. The Conservancy has provided detailed technical and scientific comments on numerous actions proposed by the National Marine Fisheries Service ("NMFS") and the states of Washington and Oregon,

HELVERSON DECLARATION – 6
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

including actions related to federal and state funding and approval of hatchery programs and salmon harvest, and on the environmental documents prepared under the National Environmental Policy Act ("NEPA") and state environmental law to accompany those proposed actions. This has included, among other things, participating in NMFS's NEPA efforts for Mitchell Act hatchery programs in the Columbia River and NMFS's NEPA efforts for its ESA approval of Puget Sound hatcheries. Indeed, litigation by Wild Fish Conservancy prompted NMFS's NEPA efforts on many of those hatchery programs, and Wild Fish Conservancy then participated in the subsequent NEPA processes, including the public comment processes.

7. Wild Fish Conservancy has been a plaintiff in several lawsuits seeking to compel compliance with laws designed to protect native fish species and the ecosystems upon which they rely. Wild Fish Conservancy prosecutes these public interest lawsuits under citizen suit provisions and other federal and state laws, in this case the ESA and the Administrative Procedure Act ("APA") for violations of the ESA and NEPA. Wild Fish Conservancy initiates litigation only after serious consideration. Wild Fish Conservancy takes its role as a citizen group enforcing public interest laws seriously and endeavors to treat all those involved with the utmost respect.

8. For example, over the years, Wild Fish Conservancy has brought several lawsuits against the State of Washington to compel compliance with their obligations under section 9 of the ESA and to prevent, minimize, or mitigate the effects of their hatchery operations on threatened and endangered species. *E.g.*, *Wild Puget Sound, et al. v. Koenings, et al.*, No. 2:02-cv-01852-L (W.D. Wash.); *Threatened Puget Sound Chinook, et al. v. Koenings, et al.*, No. 2:03-cv-0687-L (W.D. Wash.); *Wild Fish Conservancy v. Anderson*, No. 2:14-cv-00465-JLR (W.D. Wash.); *Wild Fish Conservancy v. Wash. Dep't of Fish & Wildlife, et al.*, No. 2:19-cv-00612-

HELVERSON DECLARATION – 7
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

JLR (W.D. Wash.); *Wild Fish Conservancy v. Wash. Dep't of Fish & Wildlife, et al.*, No. 2:21-cv-00169-JNW (W.D. Wash.).

9. As another example, Wild Fish Conservancy sued NMFS for violations of the Marine Mammal Protection Act and NEPA over its decision to allow intentional lethal "take" of sea lions that it claimed were having a negative impact on salmonids protected under the ESA. *Humane Soc'y of the U.S. v. Locke*, 626 F.3d 1040 (9th Cir. 2010). Wild Fish Conservancy sought to protect sea lions in that lawsuit and to ensure that sound science drives any recovery decisions for ESA-listed salmonids.

10. In 2019, Wild Fish Conservancy brought a lawsuit urging NMFS to reinitiate consultation under section 7 of the ESA, 16 U.S.C. § 1536, based on impacts from the Pacific Coast salmon fisheries under the Pacific Coast Salmon Fishery Management Plan on Southern Resident Killer Whales. *See Ctr. for Biological Diversity, et al. v. Nat'l Marine Fisheries Serv., et al.*, No. 2:19-cv-00487-MJP (W.D. Wash.). NMFS then reinitiated consultation on that plan and issued a new biological opinion. That ultimately led to an amendment to the plan that set new annual Chinook salmon abundance thresholds to protect Southern Resident Killer Whales. While Wild Fish Conservancy will continue efforts to minimize impacts from the Pacific Coast salmonid fisheries, Wild Fish Conservancy was thrilled that its lawsuit ultimately resulted in reduced impacts on Southern Resident Killer Whales.

11. In 2021, Wild Fish Conservancy brought a lawsuit against the Washington Department of Fish and Wildlife ("WFDW") in Washington state court for violations of the State Environmental Policy Act ("SEPA") when setting statewide hatchery policy and expanding production of hatchery salmon as part of a strategy to artificially increase prey for Southern Resident Killer Whales.

HELVERSON DECLARATION – 8
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

12. In short, Wild Fish Conservancy has brought dozens of lawsuits over the years aimed at protecting wild fish and their ecosystems, including their predators. This lawsuit is part of those efforts.

13. Indeed, Wild Fish Conservancy brought this litigation to ensure that NMFS complies with the ESA and NEPA with respect to SEAK fisheries and purported mitigation for those fisheries, which included the "prey increase program." Wild Fish Conservancy has been concerned for a long time over the harvesting from fisheries in Southeast Alaska, which catches more by-catch than many other mixed stock fisheries, and its impacts on endangered Southern Resident Killer Whales and ESA-listed salmonids. It also has long been concerned about increased hatchery production and associated impacts on ESA-listed salmonids and Southern Resident Killer Whales. After reviewing NMFS's 2019 biological opinion on the Southeast Alaska fisheries and the prey increase program ("2019 SEAK BiOp"), Wild Fish Conservancy was particularly concerned about NMFS's analysis of the mitigation, including the prey increase program, which assumed all the short term benefits of the program on Southern Resident Killer Whales but did not consider the harm, short or long term, on the ESA-listed salmonids that Southern Resident Killer Whales need. Another major concern was that NMFS made its decision in the 2019 SEAK BiOp without any NEPA analysis, meaning the public could not provide its valuable comments on NMFS's proposal. Wild Fish Conservancy has long sought to help the public understand the impacts from the Southeast Alaska fisheries, and by failing to conduct a NEPA process, NMFS prevented the public from understanding the issues at play for these fisheries.

14. Wild Fish Conservancy brought three claims in this lawsuit. First, Wild Fish Conservancy alleged that NMFS was violating its substantive duty under section 7(a)(2) of the

HELVERSON DECLARATION – 9
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

ESA by failing to insure that its actions do not jeopardize ESA-listed species by implementing the 2019 Pacific Salmon Treaty and by adopting and implementing the 2019 SEAK BiOp ("First Claim"). Second, Wild Fish Conservancy alleged that the 2019 SEAK BiOp was inconsistent with the ESA and arbitrary and capricious for several reasons under the APA ("Second Claim"). And third, Wild Fish Conservancy claimed that NMFS violated NEPA by adopting and implementing the 2019 SEAK BiOp without any NEPA procedures ("Third Claim").

15. Wild Fish Conservancy views this lawsuit as a major success. Wild Fish Conservancy was ecstatic when it prevailed on all three claims in the Court's order on summary judgment. Biological opinions are the fundamental tool to protect ESA-listed species because they analyze how much harm can occur for an action and set measures, if needed, to protect the listed species from that action. If NMFS's decision in a biological opinion is arbitrary, and then NMFS goes on to rely on that biological opinion in carrying out an agency action, the important protections provided by the ESA are not functioning properly. NMFS needs to prepare its biological opinion properly, based on sound science and reasoned conclusions. This is particularly true for the 2019 SEAK BiOp because that opinion was meant to last ten years. If the opinion is flawed, the scale of harm occurring throughout the life of the opinion could be very significant. Through the Court's order on summary judgement, the Conservancy felt heard about its concerns with the uncertain nature of the mitigation and the analysis of impacts from the prey increase program. For NEPA, the Court's order finding that NMFS violated NEPA for both the Southeast Alaska fisheries and the prey increase program meant that NMFS would now have to work with the public to consider not just environmental concerns related to the fisheries and prey increase program, but also economic, social, and other impacts. By evading an environmental review, NMFS permitted itself to move forward with a risky plan that probably would not have

HELVERSON DECLARATION – 10
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

survived the environmental review; i.e., the deficiencies in the 2019 SEAK BiOp may have been fixed if there was a public NEPA process. Further, if NMFS had conducted an environmental review, it would have broadly considered concerns from members of the public in Oregon and Washington, whose resources are drastically impacted by the bycatch that occurs at the Southeast Alaska fisheries. People from Oregon and Washington were likely less aware of NMFS's actions that occurred in Alaska without a NEPA process. We need NEPA to daylight agency decisions that impact public resources that the agency is charged with protecting.

16. Wild Fish Conservancy was pleased when the Court remanded the 2019 SEAK BiOp to the agency to prepare a new biological opinion and to conduct NEPA. From a legal perspective, the goals of this case were always to make NMFS prepare a new biological opinion for the fisheries and the prey increase program that did not suffer the same flaws as the 2019 SEAK BiOp and to make NMFS conduct a related NEPA process. In short, we wanted to stop NMFS's flaws from persisting for a decade, and potentially beyond that.

17. Wild Fish Conservancy fully accomplished this goal through the remand, and through the litigation that followed related to the vacatur. After the Court ordered the remand with a partial vacatur, the parties continued to litigate the issue of vacatur before the Ninth Circuit. Through that process, Wild Fish Conservancy put pressure on the agency that got it to commit to an ambitious deadline for the new biological opinion(s) and NEPA analyses: December 1, 2024. In Wild Fish Conservancy's experience, when agencies face litigation and public accountability, they are much more likely to act diligently and follow through on internal deadlines. Wild Fish Conservancy has regularly witnessed lengthy agency delays that end quickly upon litigation or public comment. Wild Fish Conservancy is confident that the pressure of this lawsuit on appeal led to a timely issuance of the new ESA and NEPA documents for the

HELVERSON DECLARATION – 11
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

Southeast Alaska fisheries and prey increase program.

18.     While Wild Fish Conservancy was disappointed by the Ninth Circuit's order in August 2024 that declined to partially vacate the 2019 SEAK BiOp for the few months before NMFS issued the new ESA and NEPA documents, Wild Fish Conservancy viewed that as a minor interim setback to the ultimate goal of the lawsuit: obtaining new ESA and NEPA documents that remedy the prior deficiencies. Wild Fish Conservancy was pleased that, because of the appeal, NMFS repeatedly represented to the Court and the public that it would complete the new ESA and NEPA documents in 2024. The importance of that commitment came through in the Ninth Circuit's order, which explained that the Court expected NMFS to adhere to its December 1, 2024, deadline, and that the equitable considerations around vacatur may alter if courts could not rely on agencies to act promptly. In light of that, NMFS then released two new biological opinions (one for the Southeast Alaska fisheries and one for the prey increase program) and two new environmental impact statements ("EISs") under NEPA in fall of this year (2024)—securing Wild Fish Conservancy the ultimate relief intended by this lawsuit.

19.     Wild Fish Conservancy is thrilled that this lawsuit caused NMFS to take a step in the right direction for the public, ESA-listed salmonids, and Southern Resident Killer Whales. Through the NEPA process, Wild Fish Conservancy provided several comments for the agency to consider, including comments about a new study that came out last year identifying mixed-stock fisheries as a major factor causing decline of Southern Resident Killer Whales.

20.     Wild Fish Conservancy can see that this lawsuit was tremendously successful through the new EISs and biological opinions. Indeed, as a result of the new processes, the new biological opinions include new incidental take statements that provide greater protection for ESA-listed salmonids and Southern Resident Killer Whales. While Wild Fish Conservancy may

HELVERSON DECLARATION – 12
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

have concerns about the new EISs' and biological opinions' compliance with applicable laws, they are undoubtedly a step in the right direction. Both NMFS and the public have a better understanding of the issues with the fisheries and the prey increase program, resulting in restrictions in the incidental take statements that would have never occurred but for this lawsuit. NMFS has now come to a much different conclusion for the fisheries and prey increase program, highlighting the importance of the NEPA process.

21. Not only did Wild Fish Conservancy succeed from a legal perspective, but practically speaking, this lawsuit has accomplished a great deal. First, it created additional case law on the ESA and NEPA, which will help other organizations and members of the public ensure compliance with these laws in the future. It will be much more difficult for agencies to make the same mistakes that NMFS made here, because we have demonstrated that those insufficiencies violate the law. Second, through the new NEPA processes and this lawsuit more generally, Wild Fish Conservancy has drastically increased public awareness about the impacts from mixed stock fisheries and increased hatchery production on Southern Resident Killer Whales and ESA-listed salmon. Consequently, some of the public have changed their opinions of the Southeast Alaska fisheries. For example, one seafood certifier has dropped the certification for salmon caught in Southeast Alaska fisheries, at least in part, because of this lawsuit, stating that they can no longer recommend those salmon as sustainable. Wild Fish Conservancy's lawsuit has had positive rippling effects throughout the Pacific Northwest community.

22. In summary, Wild Fish Conservancy, a small nonprofit in Washington, had to go up against NMFS, the State of Alaska, and the fishing industry to show that what NMFS was doing was wrong, and, as a result, NMFS had to redo its ESA analysis and undertake a brand new NEPA process. The impacts from this lawsuit are enormous.

HELVERSON DECLARATION – 13
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

23. With that in mind, Wild Fish Conservancy could not have asked for better counsel to guide us through this case. Wild Fish Conservancy has a long-standing relationship with Kampmeier & Knutsen's attorneys and has seen their success with complex federal environmental litigation about salmonid-related issues.

24. For example, for nearly two decades, Wild Fish Conservancy worked with Brian Knutsen (and now nearly a decade with Kampmeier & Knutsen) to protect imperiled salmonids and the marine environment from net pens in Puget Sound. Through our work with those attorneys, Wild Fish Conservancy received favorable decisions in three federal lawsuits related to the commercial farming of non-native Atlantic salmon in Puget Sound. *Wild Fish Conservancy v. U.S. Env't Prot. Agency*, No. C08-0156-JCC, 2010 U.S. Dist. LEXIS 41838 (W.D. Wash. Apr. 28, 2010) (setting aside EPA's decision to approve water quality standards for salmon farms and ordering federal government to reconsider whether formal consultation under the ESA is required); *Wild Fish Conservancy v. U.S. Env't Prot. Agency*, 331 F. Supp. 3d 1210 (W.D. Wash. 2018) (denying federal defendants' and intervenor defendant's motions to dismiss lawsuit challenging 2011 ESA consultation for water quality standards for net pens; leading to a new ESA consultation and biological opinion); *Wild Fish Conservancy v. Cooke Aquaculture Pac., LLC*, No. C17-1708-JCC, 2019 U.S. Dist. LEXIS 70974 (W.D. Wash. Apr. 26, 2019) (in CWA lawsuit, finding defendant violated conditions of CWA permits for net pen facilities); *Wild Fish Conservancy v. Cooke Aquaculture Pac., LLC*, No. C17-1708-JCC, 2019 U.S. Dist. LEXIS 204382 (W.D. Wash. Nov. 25, 2019) (same). And that work, combined with Wild Fish Conservancy's and other organization's advocacy and other efforts, ultimately led to Washington State ending commercial salmon farming in Puget Sound.

25. That is just one example of the success we have had with Kampmeier &

HELVERSON DECLARATION – 14
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

Knutsen's attorneys. That success has demonstrated to Wild Fish Conservancy that these attorneys have the requisite expertise for complex federal environmental litigation and exercise excellent litigation judgment to effect the Conservancy's litigation goals.

26. Wild Fish Conservancy believes that this case required attorneys with extensive experience and skill with the ESA, NEPA, and harvest and hatchery issues, and who were capable of mastering the intersection of those laws and issues with the Pacific Salmon Treaty. I strongly believe Kampmeier & Knutsen has that expertise, and I am not aware of any other attorneys who possess that expertise. Wild Fish Conservancy attributes our legal success to having attorneys that understand the law and the science and can communicate the science effectively to the Court. This was a massive case that required an incredibly large amount of work, and our attorneys prevailed. They have done an incredible job advocating for the organization and the threatened and endangered species underlying the case.

27. Wild Fish Conservancy has worked with several other law firms over the years, and it discusses the availability of attorneys to help on various issues with other nonprofits. Based on my knowledge of attorneys that have the skills necessary and the willingness to represent nonprofit clients in cases like this, I believe we would not be able to find other attorneys with the necessary expertise in the Puget Sound or Pacific Northwest area that would have been willing to bring and litigate this case on behalf of the Conservancy at a reduced rate, such as $205.00/hour or $245.00/hour. This is particularly true given Kampmeier & Knutsen's existing expertise on harvest and hatchery issues as they intersect with the ESA and NEPA, and their willingness to tackle complex issues like understanding how the Pacific Salmon Treaty played into the environmental laws. It has been our experience over 30 years that there are few people in the field that understand these issues and that are willing to represent environmental

HELVERSON DECLARATION – 15
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

nonprofits that take on government and industry interests.

28. Not only do I believe that Kampmeier & Knutsen had the extensive requisite expertise to litigate the complex issues in this case, but Kampmeier & Knutsen is also very familiar with Wild Fish Conservancy's litigation and policy objectives at a larger scale, with Brian Knutsen having represented Wild Fish Conservancy on most of Wild Fish Conservancy's federal litigation for nearly twenty years.

29. Wild Fish Conservancy retained Kampmeier & Knutsen to represent it in this lawsuit on a contingency basis. Under this agreement, Wild Fish Conservancy is not required to pay attorneys' fees. Instead, Kampmeier & Knutsen will receive attorneys' fees only if they are paid by the defendants, either pursuant to an award by the Court or under a settlement agreement. Wild Fish Conservancy has not paid Kampmeier & Knutsen any attorneys' fees for their work on this matter. Wild Fish Conservancy could not afford to bring this case by paying attorneys at their full rates, or at lower rates, like those under the Equal Access to Justice Act ("EAJA"). Wild Fish Conservancy therefore would not be able to bring this case without statutes like EAJA and the ESA authorizing fee recovery from defendants. These statutes allow the public to bring these important lawsuits to hold the federal government accountable.

30. Wild Fish Conservancy and its attorneys have invested a significant amount of time and resources in this lawsuit. Wild Fish Conservancy assigned one of its scientist-employees to develop expert opinions in this matter: Dr. Nick Gayeski, Aquatic Ecologist. Wild Fish Conservancy seeks reimbursement for Dr. Gayeski at his 2023 rate of $128.00 per hour. Wild Fish Conservancy set this rate based on the organization's familiarity with market rates in the Seattle area for similarly experienced consultants performing comparable work. This is the rate that Wild Fish Conservancy charged when retained for consulting projects for Dr. Gayeski's

HELVERSON DECLARATION – 16
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

time in 2023. As part of his employment with Wild Fish Conservancy, Dr. Gayeski keeps track of his time spent on projects, and he reports that time to Wild Fish Conservancy. Wild Fish Conservancy's files show that Dr. Gayeski spent thirteen hours preparing his expert declaration and aiding Wild Fish Conservancy's attorneys in understanding the scientific issues in this case. Wild Fish Conservancy therefore requests recovery of expert fees for Dr. Gayeski in the amount of $1,664.00. Below is a chart of Dr. Gayeski's time for which Wild Fish Conservancy seeks to recover; this chart is based on Wild Fish Conservancy's employee timekeeping records:

| Nick Gayeski (Expert Declatation iso Motion for Injunction Pending Appeal) | | |
|---|---|---|
| Date(s) | Task | Hours |
| 5/1-5/2023 | Identify and acquire documents to review | 3 |
| 5/22-5/26/2023 | Review documents and calculate pHOS data from WDFW Score | 9 |
| 5/30/2023 | Review and approve final Draft of the Declaration | 1 |
| | Total Hours: | 13 |
| | Hourly Rate: | $128.00 |
| | Expert Fees: | $1,664.00 |

31.    Wild Fish Conservancy paid three expert costs directly for this case, in addition to those paid by Kampmeier & Knutsen for Dr. Gordon Luikart's expert work.

32.    Wild Fish Conservancy paid an invoice to Dr. Robert Lacy for $4,000.00 for time spent preparing his first expert declaration filed in this matter. *See* Dkt. 14-3. Dr. Lacy did not invoice Wild Fish Conservancy for his second and third expert declarations filed in this matter. Dkts. 91-4 & 127-2.

33.    Wild Fish Conservancy paid two invoices for Dr. Hans Radtke's first declaration in this matter. *See* Dkt. 127-4. One invoice was from the Research Group, LLC, for $9,000.00 (who assisted Dr. Radtke with his modeling and analyses) and a second invoice was from Dr. Radtke for $3,000.00. Dr. Radtke did not invoice Wild Fish Conservancy for his second expert

HELVERSON DECLARATION – 17
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

declaration filed in this matter. Dkt. 139.

34. Dr. Deborah Giles filed three expert declarations for Wild Fish Conservancy in this case, but did not invoice Wild Fish Conservancy for that work. *See* Dkts. 14-2, 91-3, & 127-1. Similarly, Claire Tonry prepared a declaration supporting Wild Fish Conservancy's motion for an award of fees and costs, but did not submit an invoice for her work.

35. Wild Fish Conservancy is grateful that it is able to secure some of the foremost experts in their relevant fields, and that these experts often do not bill Wild Fish Conservancy for all (or any) of the time they spend on their expert work. Securing experts at what is essentially a reduced (or low bono) rate helps Wild Fish Conservancy present opinions to the Court from premiere experts and sustain Wild Fish Conservancy's meaningful litigation. It also means that any recovery of expenses from defendants related to expert work is lower than it commonly would be in cases that do not involve the public interest and low bono billing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of December 2024 at Seattle, Washington.

*[signature]* 12/11/24

Emma Helverson, Executive Director
Wild Fish Conservancy

HELVERSON DECLARATION – 18
Case No. 2:20-cv-00417-RAJ-MLP

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515