HONORABLE MICHELLE L. PETERSON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILD FISH CONSERVANCY,

    Plaintiff,

        v.

JENNIFER QUAN, in her official capacity as
Acting Regional Administrator for the
National Marine Fisheries Service, *et al.*,

    Defendants,

        and

ALASKA TROLLERS ASSOCIATION, and
STATE OF ALASKA,

    Defendant-Intervenors.

Case No. 2:20-cv-00417-RAJ-MLP

DECLARATION OF CLAIRE TONRY

I, Claire Tonry, declare the following on the basis of personal knowledge to which I am competent to testify:

1.     I submit this Declaration in support of Plaintiff Wild Fish Conservancy's (the "Conservancy's") motion for an award of litigation expenses. I have been asked to provide my opinions about the reasonableness of Plaintiff's counsels' hourly rates in the above-captioned case. In addition to the materials mentioned below, in coming to my conclusions I have reached in this

TONRY DECLARATION – 1
Case No. 2:20-cv-00417-RAJ-MLP

Declaration, I have considered the following documents and information: (a) the final or near final versions of the declarations of Brian Knutsen, Emma Bruden, and Paul Kampmeier that will accompany the Conservancy's motion for an award of litigation expenses; and (b) conversations and correspondence with counsel for the Conservancy.

### BACKGROUND, QUALIFICATIONS, AND COMPENSATION

2.      I was first admitted to practice law in Oregon in 2009 and in Washington in 2011. I am also admitted to all Oregon and Washington federal district courts, the Ninth and Fourth Circuit courts of appeal, and the United States Supreme Court. Since late 2009, a significant portion of my practice has been federal environmental litigation.

3.      I have a bachelor's degree with honors in Environmental Studies and received my law degree and certificate in Environmental and Natural Resources Law from Lewis & Clark Law School in 2009. I am a member of Lewis & Clark Law School's Cornelius Honor Society. During law school, I worked extensively in federal environmental litigation, including under the Endangered Species Act and Clean Water Act as a clinical student at the Pacific Environmental Advocacy Center (now known as Earthrise Law Center), and as a volunteer with the Northwest Environmental Defense Center. I gained additional practical experience as a summer law clerk for the Sequoia Forestkeeper, an environmental non-profit organization in California, and at Meyer Glitzenstein & Crystal, a public interest law firm in Washington D.C., where I worked on a decade-long Endangered Species Act Section 9 "take" citizen suit.

4.      From 2009 to 2011, I maintained a legal practice in Oregon focused on Clean Water Act enforcement, advocacy related to Clean Water Act policies, regulations, and permits, and Clean Water Act permit challenges.

5.      I joined Smith & Lowney PLLC and began practicing in the Western District of

Washington in mid-2011. In 2017 I became an equity "partner" (managing member) of Smith & Lowney PLLC. Since joining Smith & Lowney, I have managed a heavy litigation docket primarily in this district. The majority of these cases are Clean Water Act and Endangered Species Act enforcement claims that provide for prevailing plaintiffs to recover fees from the defendant at market rates.

6.     Examples of my cases include:

a.  *Puget Soundkeeper Alliance v. Port of Tacoma*, 104 F.4th 95 (9th Cir. 2024) (holding that Washington State's Clean Water Act general permit for stormwater discharges from industrial facilities applies to the entirety of transportation facilities);

b.  *Center. for Biological Diversity v. U.S. EPA.*, No. CV-22-00138-TUC-JCH, 2023 U.S. Dist. LEXIS 145674, at *2 (D. Ariz. Aug. 18, 2023) (holding that EPA violated the Endangered Species Act by failing to consult over its nationwide water quality criteria);

c.  *Animal Legal Def. Fund v. Olympic Game Farm, Inc.*, No. 3:22-cv-05774-RSL, 2023 U.S. Dist. LEXIS 93775 (W.D. Wash. May 30, 2023) (denying motion to dismiss Endangered Species Act "take" claims);

d.  *Waste Action Project v. Fruhling Sand & Topsoil, Inc.*, 737 Fed. Appx. 344 (9th Cir. 2018) (reversing dismissal for lack of subject matter jurisdiction);

e.  *Puget Soundkeeper Alliance v. Rainier Petroleum Corp.*, No. C14-0829JLR, ECF No. 138 (W.D. Wash. Jan. 6, 2018) (finding that requested rate of $335 per hour for my 2017 work on a motion to enforce and modify a consent decree was reasonable);

TONRY DECLARATION – 3
Case No. 2:20-cv-00417-RAJ-MLP

f.  *Waste Action Project v. Astro Auto Wrecking, LLC*, 274 F. Supp. 3d 1133 (W.D. Wash. 2017) (post-trial findings, conclusions, and relief);

g.  *Puget Soundkeeper Alliance v. Rainier Petroleum Corp.*, 138 F. Supp. 3d 1170 (W.D. Wash. 2015) (summary judgment); and

h.  *Waste Action Project v. Draper Valley Holdings LLC*, 49 F. Supp. 3d 799 (W.D. Wash. 2014) (summary judgment establishing standing to sue and numerous Clean Water Act pretreatment violations).

7.    I have received numerous invitations to speak on environmental law issues at CLEs and law schools. I also routinely receive calls and emails from lawyer colleagues outside of my firm seeking my perspective on environmental litigation issues. Super Lawyers has recognized me as a "Rising Star" in environmental law in Washington State.

8.    In approximately 2012, I took on primary responsibility within my firm for researching and maintaining a standard hourly rate schedule based on public records, case law, and studies and surveys by bar associations. My goal has been to set rates in an objective manner that avoids race and gender bias that studies continue to find to be pervasive in attorney compensation, including hourly rates. Through my years of research and first-hand experience litigating under fee-shifting statutes, I have become very familiar with the market rates of attorneys in Washington and how those rates compare to market rates in Oregon and California.

9.    In addition to my experience and years of background research, I specifically relied on the following documents in reaching the opinions expressed below:

a.  Exhibit A: Professional Legal Services Agreement between the Port of Seattle and Stoel Rives LLP (May 30, 2018) with public records request correspondence appended;

b.  Exhibit B: Foster Garvey to City of Seattle, Engagement Letter – Waste Action Project Clean Water Act litigation (Mar. 23, 2023); and

c.  Exhibit C: King County to Stoel Rives LLP, Retention of Stoel Rives for legal services relating to the Department of Ecology's Draft Puget Sound Nutrient General Permit (Aug. 2, 2021).

True and accurate copies of these documents, which I obtained from Public Records Act requests, are attached hereto.

## OPINIONS

10.  I understand that the Conservancy is seeking the following rates for its current and former Kampemier & Knutsen, PLLC attorneys:

| Requested Attorney Hourly Rates | | | |
|---|---|---|---|
| Attorney (J.D. received) | Year | Years Experience | Rate |
| Brian Knutsen (2004) | 2019 | 15 | $500.00 |
| | 2020 | 16 | $535.00 |
| | 2021 | 17 | $580.00 |
| | 2022 | 18 | $610.00 |
| | 2023 | 19 | $650.00 |
| | 2024 | 20 | $700.00 |
| Emma Bruden (2016) | 2019 | 3 | $290.00 |
| | 2020 | 4 | $300.00 |
| | 2021 | 5 | $320.00 |
| | 2022 | 6 | $350.00 |
| | 2023 | 7 | $390.00 |
| | 2024 | 8 | $430.00 |

| Erica Proulx (2022) | 2024 | 2 | $310.00 |
|---|---|---|---|
| Jessica Durney (2018) | 2020 | 2 | $260.00 |
| | 2021 | 3 | $300.00 |
| | 2022 | 4 | $345.00 |
| | 2023 | 5 | $350.00 |
| Marriah Harrod (2022) | 2022 | 0 | $275.00 |
| | 2023 | 1 | $290.00 |
| | 2024 | 2 | $310.00 |
| Paul Kampmeier (2001) | 2019 | 18 | $545.00 |
| | 2020 | 19 | $560.00 |
| | 2021 | 20 | $595.00 |
| | 2022 | 21 | $650.00 |
| | 2023 | 22 | $700.00 |
| | 2024 | 23 | $750.00 |

11.    The rates identified above are consistent with rates that I supported with testimony in a different matter and that were approved by this Court. In *Wild Fish Conservancy v. Wash. Dep't of Fish & Wildlife*, W.D. Wash. No. 2:21-cv-00169-JNW, I submitted a declaration (Dkt. 89) attesting as to my opinions on, among other matters, reasonable hourly rates for the Western District of Washington. Specifically, I testified that the following were reasonable hourly rates for 2023: Brian Knutsen, $650; Emma Bruden, $390; Paul Kampmeier, $700; Mariah Harrod, $290; and Jessica Durney, $350. Those rates were not challenged by the defendant in that case and were adopted by the Court. *Wild Fish Conservancy v. Wash. Dep't of Fish & Wildlife*, No. 2:21-cv-00169-JNW, 2024 U.S. Dist. LEXIS 59027, at *13 (W.D. Wash. Mar. 30, 2024) ("Based on Wild Fish's supporting materials and the Court's own local knowledge, and the Defendants' failure to contest the proposed rates, the Court finds that the requested rates are reasonable.").

12.    I am very familiar with Kampmeier & Knutsen PLLC, having known Paul Kampmeier and Brian Knutsen and their work since before they founded the firm. Kampmeier &

Knutsen PLLC is highly regarded in the environmental law community, particularly for its unique expertise in the science and law relevant to Pacific Northwest salmon hatchery litigation—a niche within the niche of environmental protection litigation. I am not aware of any plaintiffs' law firm that has more expertise in this subject than Kampmeier & Knutsen PLLC.

13.     I have worked closely with Brian Knutsen on and off for over a decade, including as co-counsel in *Waste Action Project v. Draper Valley Holdings LLC*, mentioned above, and *Resendez v. Precision Castparts Corp.*, No. 16cv16164, an environmental class action in Multnomah County, Oregon, which in 2022 produced the largest settlement of its kind in state history. Knutsen has earned his reputation as an excellent environmental litigator.

14.     The hourly rates requested for Knutsen are reasonable and in line with market rates in this district. The range of "$475 to $ 760 per hour" has long been held reasonable for Seattle attorneys by multiple senior judges of this Court. *E.g.*, *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1326-27 (W.D. Wash. 2009) (Judge Coughenour noting that Judge Lasnik approved the same rates in 2008). The lower end of that range, $475 per hour in 2009, is equivalent to around $710 per hour today.[1]

15.     I am familiar with Emma Bruden's high-quality work product from working with Bruden on *Resendez v. Precision Castparts Corp.*, and know her to be well regarded in the

---

[1] Throughout this declaration, I make inflation adjustments calculated using the national consumer price index inflation calculator published by the Bureau of Labor Statistics, CPI Inflation Calculator, https://data.bls.gov/cgi-bin/cpicalc.pl. Using the national consumer price index is conservative because inflation in this district is even higher than the national average used for this calculation. *See* Christine Clarridge, *Seattle has 3rd highest inflation in nation*, (Jan. 17, 2023) https://www.axios.com/local/seattle/2023/01/17/seattle-3rd-highest-inflation; Alison Saldanha, *You're not imagining it — costs in Seattle rose faster than San Francisco*, Seattle Times (June 20, 2023) https://www.seattletimes.com/business/youre-not-imagining-it-life-in-seattle-costs-the-same-as-san-francisco/ ("In the last three years, costs in the Seattle metro area climbed over 20%" or about 3 percentage points higher than the national average).

environmental law community.

16.     The hourly rates requested for Bruden are in line with market rates in this district. For example, after applying a 10% discount, Stoel Rives charged the Port of Seattle the equivalent of more than $400 per hour for an environmental-focused litigator who had between three and four years of experience. *See* Exhibit A.[2] Stoel Rives charged the equivalent of $550/hour to King County, which was a discounted rate, for that same attorney when she had seven years of experience. *See* Exhibit C.[3] As another example, Foster Garvey charged the City of Seattle $400 per hour in 2023 for an associate with less than eight years of experience in a Clean Water Act enforcement lawsuit. *See* Exhibit B.[4] In addition, the Honorable Judge Coughenour awarded the equivalent of $386/hour for my time in 2016, when I had seven years of experience.[5]

17.     Paul Kampmeier is a seasoned and well-respected environmental litigator. Kampmeier is an authoritative voice on environmental law in our community of practitioners. Kampmeier has over twenty years of experience with most of his work over that time involving federal environmental litigation, including Endangered Species Act litigation.

18.     The hourly rates requested for Kampmeier are in line with market rates in this district. For example, the standard (i.e., non-discounted) rate for one of Stoel Rives LLP's senior

---

[2] Veronica Keithly, who received her law degree in 2014, charged $315/hour in 2018, which is $400/hour in 2024 dollars, calculated using the national consumer price index inflation calculator. *Id.*; *see also* Stoel Rives, Veronica M. Keithly, https://www.stoel.com/people/veronica-m-keithley.

[3] Veronica Keithly's "public agency discount" rate in 2021 was $459 per hour, which is equivalent to $550 per hour today.

[4] *See* Foster Garvey, Devra Cohen, https://www.foster.com/people-devra-cohen#form-search-results.

[5] Judge Coughenour awarded $290/hour for my time in 2016, which is $385.95 in 2024 dollars, calculated using the national consumer price index inflation calculator. *Waste Action Project v. Astro Auto Wrecking, LLC*, No. C15-0796 JCC, 2016 U.S. Dist. LEXIS 197099, at *1-2 (W.D. Wash. June 30, 2016).

TONRY DECLARATION – 8
Case No. 2:20-cv-00417-RAJ-MLP

environmental litigators in Seattle was $730 per hour in mid-2021, which is the equivalent to $848.13 in current dollars. Exhibit C; *see also Amazon.Com, Inc. v. Wong*, No. C19-0990JLR, 2022 U.S. Dist. LEXIS 67757, at *5 (W.D. Wash. Apr. 12, 2022) (finding "$535 to $785 for attorneys and $215 for paralegals . . . comparable to those 'prevailing in the community'").

19.     While I am not personally familiar with Mariah Harrod's or Erica Proulx's work, the hourly rates requested are consistent with market rates in this district. For example, the inflation adjusted median rate for attorneys with zero to three years' experience in Portland, Oregon is over $300, and Portland is a lower rate market than Seattle. *See Roblin v. Newmar Corp.*, No. 6:17-cv-1902-MC, 2020 U.S. Dist. LEXIS 89693, at *11 (D. Or. May 21, 2020) (citing 2017 Oregon survey). Ms. Harrod went to Vermont Law School and spent her last semester there working at Shute, Mihaly & Weinberger LLP, a highly regarded Bay Area environmental law firm. Based on my own experience hiring a Vermont Law School student who participated in the same extern program, I believe that this full-time practical experience in the last semester really does improve a new attorney's efficiency. Further, Vermont Law School has a respected and robust environmental law program that is generally considered one of the top two environmental law programs in the country (the other is Lewis & Clark Law School). Ms. Proulx graduated from the University of Washington School of Law with high honors. While in law school, she worked with Earthjustice and the Crag Law Center, both of which are well-respected public interest non-profit environmental law firms. Following law school, Mr. Proulx spent a year and a half as a fellow at the University of Washington's Regulatory Environmental Law & Policy Clinic where she represented environmental public interest organizations on a variety of matters.

20.     Likewise, while I am not personally familiar with Jessica Durney's work, the hourly rates requested for an attorney with Ms. Durney's experience in environmental law and federal

litigation are in line with market rates in this district. As noted above, the inflation adjusted median rate for attorneys with zero to three years' experience in Portland, Oregon is over $300, and Portland is a lower rate market than Seattle. Also as explained above, Stoel Rives charged the Port of Seattle the equivalent of more than $400 per hour for an environmental-focused litigator who had between three and four years of experience.

21.     In addition, I understand that the Conservancy seeks $168 per hour for law clerk time in this matter. That rate is reasonable and consistent with (or below) prevailing rates in this district. For example, in *National Family Farm Coalition v. U.S. EPA,* No. 19-70115 (9th Cir. Mar. 1, 2023), when environmental petitioners requested $195 per hour for Portland, Oregon-based law clerks in a case that spanned 2019 to 2022, Ninth Circuit Appellate Commissioner Fitzgerald noted that the federal government did not oppose those rates or dispute that they are consistent with prevailing market rates. The rate the Conservancy requests for its law clerks' time is significantly less than the inflation adjusted rate in *National Family Farm Coalition v. U.S. EPA*, despite the more expensive market in this district.

22.     I am very familiar with the community of lawyers and law firms that practice federal environmental litigation in this region. I am not aware of any competent environmental lawyers in this district who would have agreed to represent the Conservancy in this matter at EAJA rates—certainly none with the experience necessary to achieve the success that Kampmeier & Knutsen have. There are relatively few attorneys in this district with the requisite skill level and subject matter familiarity to begin with, and many of them are completely unavailable due to conflicts (including positional conflicts, such as firms that regularly represent industry in environmental matters) or inability to take on private clients (government attorneys or in-house lawyers at environmental non-profits). I believe I am at least generally familiar with all of the other

lawyers in the district who could successfully litigate a case like this one, and do not believe any would take on this case if they were paid or if they knew they would only recover unenhanced EAJA rates.

## CONCLUSION

23.     Having reviewed the materials referenced herein and based on my research and experience as a federal environmental litigator in the Western District of Washington, it is my opinion that the hourly rates requested by the Conservancy are reasonable and should be awarded by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of December 2024 in Waimea, Hawaiʻi.

*/s/ Claire Tonry*
Claire Tonry, WSBA No. 44497

Exhibit A

## PROFESSIONAL LEGAL SERVICES AGREEMENT

This Agreement is made and entered into effective _May 30_, 2018, by and between the Port of Seattle ("Port") and Stoel Rives LLP, ("Stoel").

**1.    Administration of Agreement.**  The designated representatives for administration of this Agreement are:

> Elizabeth Black for the Port's Legal Department ("Port Counsel")
> Beth S. Ginsberg for Stoel

**2.    Services.**  Stoel shall provide legal services in accordance with the Scope of Work attached to this Agreement as Attachment 1.

Where the Scope of Work relates to a litigation matter and Stoel's firm has extranet capabilities (a secure computer network that allows an outside organization direct access to files and documents), Stoel shall set up an extranet that allows Port Counsel and other Port Legal Department staff direct access to files and documents relating to the Scope of Work.

**3.    Communications and Interaction with Port Counsel.**

a.    Port Counsel will be actively involved in all matters related to the Scope of Work, directing strategy, evaluating and making decisions regarding settlement opportunities, monitoring litigation and providing support.

b.    Port Counsel must be given advance notice of any significant decisions related to the Scope of Work in order for Port Counsel to participate fully in making such decisions.

c.    Port Counsel must be provided with advance drafts of all significant documents (motions, stipulations, briefs and other pleadings, memoranda) in sufficient time to be able to participate fully in decisions regarding such documents.

d.    Port Counsel must receive copies of all final correspondence, memoranda, research, briefs and pleadings.

e.    All deliberations and decisions regarding possible settlement of a case must include the full participation of Port Counsel.

f.    Port Counsel should participate in the selection of all consultants or experts.

g.    Any extensive legal research proposed by Stoel should be discussed in advance with Port Counsel.

h.    The Port's General Counsel must be advised as soon as reasonably possible of any potential conflicts in representation.

**4.    Compensation.**  Payment to Stoel will be for the satisfactory performance of the Scope of Work under this Agreement, including reimbursable expenses.  Compensation shall be payyable as follows:

a.     Professional Fees.  Hours worked, which shall not include travel-only hours, shall be billed in increments of one-tenth of an hour at the applicable hourly rates of the person performing the work.

| Beth S. Ginsberg | $572 per hour  (10% discount) |
| Veronica Keithley | $315 per hour  (10% discount) |
| Angela Lewis | $280 per hour  (10% discount) |

No other fees for professional services will be paid unless approved in writing by Port Counsel before the fees are incurred.  Professional Fees may be adjusted annually but must have the prior written approval of the Port's General Counsel.

b.     Reimbursement of Expenses.  The Port shall reimburse Stoel for reasonable expenses that are properly documented in the following categories and subject to any limitations set forth within each category:

(i)     Stoel has been retained because of Stoel's expertise.  The Port will *not* reimburse Stoel for fees associated with the training of attorneys, including time spent by attorneys as a learning experience, doing legal research needed to educate less experienced lawyers in basic fields of expertise for which Stoel was chosen, or as a result of a transfer of attorneys during an engagement;

(ii)     Unless approved in advance, the Port will *not* reimburse for time spent by more than one attorney attending meetings, witness interviews, depositions, hearings and the like;

(iii)     Long distance telephone charges.  Charges for local facsimile, either incoming or outgoing are *not* reimbursable;

(iv)     Charges for copying documents not to exceed $.10 per page;

(v)     Courier service or other expedited mail delivery *only* where the urgency was caused by the Port or the Port requests the service;

(vi)     The Port will *not* reimburse for time spent by Stoel in preparing or reviewing firm billings to the Port or in internal firm quality control procedures;

(vii)     Preparation of a Plan and Budget for Litigation matters and a Budget for Non-Litigation matters, as required under section 4 of this Agreement *is* reimbursable.  As a guideline, it is anticipated that no more than 1-2 hours of Stoel's time will be spent preparing a Plan and Budget, Budget or modification, but this guideline may vary in extremely complex matters.

(viii)     As a public agency the Port is subject to comprehensive audit requirements.  Stoel may be asked to provide an audit letter reporting on the work done for the Port.  This is a necessary expense of doing business with a public agency and the Port will *not* pay for Stoel's costs associated with production of the audit letter and any necessary routine responses to Port audit inquiries.

(ix)     Parking fees, *except* for parking fees incurred for Stoel's visits to the Port's Pier 69 facilities where Stoel's offices are located in the City of Seattle;

(x)     Electronic research charges (such as Westlaw, Lexis-Nexis) will be reimbursed *only* where Stoel does not subscribe to the service (e.g., CourtTrax) and the charges are clearly documented in Stoel's invoice to the Port;

Professional Legal Services Agreement                    2                    Stoel Rives LLP

(xi)    Transportation, lodging and meals incurred by Stoel while traveling more than fifty (50) miles from Stoel's office in connection with the Scope of Work and approved in advance by the Port's General Counsel, subject to the following limits:

(a)    the IRS standard mileage rate for vehicles;

(b)    Reimbursement for meals inclusive of tips (alcohol is *not* a reimbursable expense) shall be estimated based on reasonable costs for the area of travel (refer to http://www.defensetravel.dod.mil/site/perdiemCalc.cfm);

(c)    Lodging is reimbursable at cost only for the standard single occupancy rate. The accommodation should be appropriate for carrying out the business purpose; and

(d)    Air travel shall be by coach class at the lowest price available.

(xii)    Reasonable fees for expert consultants retained by Stoel consistent with the Scope of Work, Reimbursement of Expenses (Section 4.b.) and approved in advance by Port Counsel; and

(xiii)    All other necessary and reasonable expenses incurred in litigation subject to prior approval by Port Counsel.

c.    Invoices. Stoel shall submit monthly invoices to the Port's Legal Department. Each invoice shall include all supporting documentation to substantiate the invoiced amount, including all documentation of reimbursable expenses, and be in a form acceptable to the Port's Legal Department. Each invoice should set forth the following information for each date services were performed:

(i)    A brief summary of the services provided;

(ii)    The number of hours or fractions of hours, spent by each provider;

(iii)    The hourly rates of each of the providers;

(iv)    Invoices for experts, consultants, and outside vendors, (e.g., copy services, investigators, messenger services, filing fees, etc., retained by Stoel in substantially similar format as noted in (i)-(iii) above, reviewed and approved by Stoel. All invoices in this category must be included in Stoel's invoice (with attached copies of the third party invoices). Within thirty (30) calendar days after receipt of a complete, satisfactory invoice, the Port will make payment to Stoel in the amount of the invoice approved by Port Counsel.

***Some or all of the content of attorney bills for the Port may be subject to disclosure under RCW 42.56.904.***

**5.    Plan, Budget and Status Reports for Legal Services.**

a.    Litigation Matters. Stoel, in consultation with Port Counsel, shall provide a Litigation Plan and Budget no later than thirty (30) days after executing this Agreement.

(i)    An outline of topics to be included in the Litigation Plan is attached. Stoel shall arrange to meet in person with Port Counsel to discuss the Litigation Plan in detail and, specifically, provide Port Counsel with a realistic evaluation of liability and damages. The Port expects the Litigation Plan to be updated as the facts and circumstances may require, but in any event at the close of discovery, prior to the scheduling of any mediation, and sixty (60) days prior to trial.

(ii)    A sample format for a Budget is attached. If you conclude at any time that your initial Budget is understated, please send a revised Budget immediately and consult with

Port Counsel to discuss the basis for such change. Regardless, an updated Budget should be submitted every six (6) months or more frequently if requested by Port Counsel.

      (iii)    The Litigation Plan and Budget will be used for Port planning purposes. It is understood the information contained in the Litigation Plan and Budget represents Stoel's best estimate as of the date of preparation and is not binding upon either Stoel or the Port. However, failure to give notice and provide a revised Budget in the event of a material increase in cost as required in section (iii) shall be considered a breach of Stoel's terms of engagement with the Port.

      (iv)    The Litigation Plan and Budget and any revisions shall be sent to Port Counsel's attention.

    b.    <u>Non-Litigation Matters</u>. Upon execution of this Agreement, Port Counsel and Stoel shall consult regarding the Budget for the Scope of Work. No later than twenty (20) days after such consultation, Port Counsel shall provide Stoel in writing with a not to exceed Budget. The Budget may be modified in writing by Port Counsel in consultation with Stoel.

    c.    <u>Status Reports</u>. You are expected to provide a written status report every 45 days for the duration of the Scope of Work, unless events dictate more frequent reports. Even if little or no activity has taken place, you are expected to confirm that fact with an email. Each status report should include a summary of developments since the last report and a discussion of the impacts such developments have on our current evaluation of liability and damages. It should also summarize any future strategy recommendations.

**6.    Termination.**

    a.    The Port may terminate this Agreement for its own convenience at any time by providing written notice to Stoel. If the Port terminates the Agreement for its convenience or for any other reason, the Port shall pay Stoel for services rendered before the Agreement was terminated.

    b.    Stoel may terminate this Agreement at any time provided that said termination shall not (i) increase the cost of or delay the completion of the performance of the Scope of Work set forth herein, or (ii) prejudice the Port's ability to obtain adequate representation, or (iii) violate the rules of professional conduct applicable to attorneys in Washington State.

    c.    Upon termination, Stoel shall provide to the Port all property and documents in its possession, whether in progress or completed, related to the services under this Agreement.

**7.    Ownership of Work and Documents**. All work performed byStoel under this Agreement shall be the property of the Port.

**8.    Access to Records.**

    a.    For a period of three (3) years following final payment by the Port to Stoel under this Agreement, Stoel shall maintain all files and documents ("Files") related to performance of the services under this Agreement.

    b.    The Port and its authorized representatives shall have access to the Files for the purpose of inspection, copying, cost review, and audit during Stoel's normal business hours.

     c.     Prior to destroying the Files, Stoel shall contact the Port's Legal Department and inquire whether the Legal Department opts to have the Files delivered to the Port.

**9.**    **Public Communications.**  Stoel shall not issue any news releases or make any statements to a member of the news media or the general public regarding this Agreement or the Scope of Services under this Agreement without the prior approval of the Port's General Counsel.

IN WITNESS WHEREOF, the duly authorized representatives of the parties hereto have executed this Agreement effective on the date first above written.

STOEL RIVES LLP                    PORT OF SEATTLE

By: _____        By: _____
    Beth S. Ginsberg                 Isabel Safora
    Title: Partner                   Title:  Acting General Counsel

Address:                         Address:
600 University Street             P. O. Box 1209
Suite 3600                      Seattle, WA  98111
Seattle, WA 98101

Telephone: (206) 386-7581        Telephone:  (206) 787-3216

**ATTACHMENT 1**

**SCOPE OF WORK**

**Stoel Rives, LLP**

**Terminal 46 Stormwater**

Stoel Rives LLP will provide legal services to the Port in response to litigation brought by Puget Soundkeeper Alliance against Port tenant Total Terminals International, Inc., in the interest of avoiding litigation against the Port. In the event the Port is sued, Stoel Rives LLP will defend the Port in litigation.

✔ You are now signed in      ✕

# Request #19-543

☑ CLOSED
As of November 14, 2019, 11:37am

## Details

This is a Public Records Act request for:
The service contract or other document(s) that discuss or set the hourly rate or other rate of compensation for the attorney(s) at Stoel Rives LLP for their representation of the Port of Seattle in the federal Clean Water Act lawsuit filed in 2018 *Puget Soundkeeper Alliance v. Total Terminals International, LLC and Port of Seattle,* Case No. 2:18-cv-00540.  (This lawsuit concerned the King County International Airport.) The Stoel Rives LLP attorneys may include Beth Ginsberg, Veronica Keithly, and Jason Morgan.
I am only seeking information about lawyers' rates.  I am not seeking any substantive communications between the client and lawyers about the merits of any case or legal matter.
**✛ Read more**

*Received*
November 13, 2019 via web

*Departments*
None Assigned

*Requester*
Claire Tonry
✉ claire@smithandlowney.com
📍 2317 E. John St., Seattle, WA 98112
📞 (206) 860-1394
💼 Smith & Lowney PLLC

## Documents

*Public*
(none)

*Requester*

Request 19-543 - NextRequest - Modern FOIA & Public Records Reques...    https://portofseattle.nextrequest.com/requests/19-543

Case 2:20-cv-00417-RAJ    Document 205    Filed 12/12/24    Page 20 of 40
Legal Services Agreement - T46 Stormwater-FULLY SIGNED.pdf

## Staff

*Point of Contact*
  Public Disclosure Pier 69


## Timeline

### External Message                                    Requester + Staff
Claire,

Additionally, Jason Morgan's rate was not listed in the original service agreement because he was added later. Jason Morgan's rate was $468.

*November 14, 2019, 10:50am by Eldina Jasarevic, Public Disclsoure Specialist (Staff)*

### Request Closed                                              Public
*November 14, 2019, 8:14am*

### Document(s) Released to Requester                           Public
Legal Services Agreement - T46 Stormwater-FULLY SIGNED.pdf
*November 14, 2019, 8:14am*

### External Message                                    Requester + Staff
The attached documents are responsive to your request. These documents and/or information are provided to you in accordance with the Public Records Act (Chapter 42.56 RCW). By making Port of Seattle documents available to you, the Port is not responsible for your use of the information nor for any claims or liabilities that may result from your use or further dissemination. The Port of Seattle has now completed its response to your request and your request will be closed. Please let us know if you we can assist you any further.

*November 14, 2019, 8:14am by Eldina Jasarevic, Public Disclsoure Specialist (Staff)*

### External Message                                    Requester + Staff
There was a mistake in my request: the case referenced does NOT concern King County.  I apologize for the confusion.

*November 13, 2019, 5:29pm by the requester*

### External Message

Requester + Staff

The Port of Seattle has received your request.  You will receive a further response within 5 business days.  Thank you.

*November 13, 2019, 5:26pm*

### Request Opened

Public

Request received via web

*November 13, 2019, 5:26pm*

Exhibit B



1111 Third Avenue
Suite 3000
Seattle, WA 98101

Main: 206.447.4400
Fax: 206.447.9700
foster.com

Direct Phone: 206.447.8902
Fax: 206.749.2002
lori.terry@foster.com

March 23, 2023

**VIA EMAIL**
Thomas Kuffel
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Thomas.Kuffel@seattle.gov

Re:    **Enagagement Letter – Waste Action Project Clean Water Act litigation**

Dear Tom:

We are pleased to have the opportunity to represent City of Seattle ("the City" or "you") in the matter described below. This letter and the enclosed attachments form our agreement regarding the terms under which the City engages Foster Garvey P.C.

## Our Engagement

Our engagement will be limited to representation of the City in responding to allegations in a Clean Water Act 60-Day Notice of Intent to Sue and as a defendant in expected litigation asserted by Waste Action Project under the Clean Water Act (collectively, "the CWA Matter"). This letter, Foster Garvey's terms of engagement enclosure (Attachment A), and a revised version of the City's usual outside counsel guidelines (Attachment B), will govern any matter or service we undertake for you, except as otherwise specified in writing.

We understand that the CWA Matter may involve the Seattle Public Utilities (SPU) but that Foster Garvey lawyers will need to appear on behalf of the City itself, depending on how the complaint is drafted. Because Foster Garvey has many clients with matters adverse to or potentially adverse to different departments and agencies of the City, including the SPU, conflict issues will be governed by the "Conflicts of Interest" section below rather than the City's usual outside counsel guidelines.

## Our Fee Arrangement

Foster Garvey's fees are principally based on hourly rates. My hourly rate for this engagement is $550.00. I may also involve the following other lawyers as necessary to handle the work efficiently and

Thomas Kuffel
City of Seattle
March 23, 2023
Page 2

meet deadlines: Andrea Bradford - $425.00/hr.; Devra Cohen - $400.00/hr.; and Audrey Chambers - $350.00/hr. We review and adjust our billing rates from time to time, typically on January 1.

## Conflicts of Interest

This engagement requires special attention to conflicts of interest. Foster Garvey currently represents and, in the future, intends to represent many businesses, individuals, municipalities, and government agencies in connection with a wide variety of matters, including real estate, land use, environmental, licensing, housing, transportation, taxation, public finance, and litigation. Foster Garvey's client matters may involve, among other things, permitting and administrative proceedings where the City is the regulatory authority; quasi-judicial proceedings such as hearings examiner evidentiary hearings or Type IV Council land use decisions where City departments may be parties; and litigation before courts. These client matters may be adverse or potentially adverse to the City, including the SPU, either where the City is a regulatory authority or where it is a party.

In addition, Foster Garvey client matters often involve legal advice or guidance to clients relating to compliance with City code, regulations, or policies, which may involve (for example) assisting clients in applying for permits and communicating with City personnel about compliance issues. The City and Foster Garvey agree that merely providing clients with such advice or guidance is not adverse to the City for purposes of determining the existence of a conflict of interest. However, when a Foster Garvey client matter encompasses more than just legal advice or guidance but involves a dispute, claim, investigation, proceeding, or negotiation in which the City is opposed to a Foster Garvey client, including (for example) the negotiation of a client's contract with the City or administrative review of a City decision rendered against a client, then the procedure below for handling conflicts of interest applies:

### *Definitions of "Not substantially related to the CWA Matter;" "Litigation;" and "Land Use Litigation and Land Use Nonlitigation Matters"*

For purposes of this engagement, the phrase "substantially related" has the same meaning as contained in Washington Rules of Professional Conduct, and the phrase "not substantially related to the CWA Matter" means that a Foster Garvey client matter does not involve the Clean Water Act compliance issues that are raised in the CWA Matter.

However, the City and Foster Garvey recognize that the outcome of the CWA Matter could indirectly affect the environmental or land use or regulatory requirements for Foster Garvey clients. The potential for such indirect effects will not be considered when determining if a client matter is substantially unrelated to the CWA Matter.

"Litigation" means an action, suit, or proceeding before a trial or appellate court of law or equity that does not include (for example) administrative review or quasi-judicial appeals before a hearings examiner or quasi-judicial board such as the Shorelines Hearings Board or Growth Management Hearings Board. Except for land use nonlitigation matters, defined below, client matters that do not involve litigation are referred to below as "nonlitigation" matters.

Thomas Kuffel
City of Seattle
March 23, 2023
Page 3

"Land use litigation and land use nonlitigation matters" means litigation in which any of the alleged claims for relief, including injunctive relief or damages, arise from or relate to application of zoning or construction codes or other land use regulations or controls, and also client matters that do not involve litigation that arise from or relate to application of zoning or construction codes or other land use regulations or controls. Examples of "land use litigation" include, without limitation, litigation arising from or relating to City permitting or other decisions (i) through the Land Use Petition Act at Ch. 36.70C RCW; (ii) for decisions that do not meet the definition of "land use decision" in RCW 36.70C.020, through an extraordinary writ or declaratory judgment action; (iii) for permitting decisions issued under Ch. 90.58 RCW and Ch. 23.60A SMC, through an appeal in accordance with Ch. 34.05 RCW of the decision of the state Shoreline Hearings Board; (iv) for decisions appealable to the state Growth Management Hearings Board, through an appeal in accordance with Ch. 34.05 RCW of said decision; or (v) land use-related actions for damages under Ch. 64.40 RCW or 42 U.S.C. § 1983, or under common-law torts such as negligence, negligent misrepresentation, or intentional interference with business expectancy or common-law actions in contract or quasi-contract.

### *Categories of Client Matters Adverse to the City*

To address current or future conflicts, Foster Garvey will classify current or future client matters involving actual or potential conflicts of interest with the City in three categories, which will continue through the duration of this engagement. The City and Foster Garvey agree to handle these actual or potential conflicts within each category as follows:

**Category 1 (no duty to disclose) – Current client matters adverse to the City.** The City and Foster Garvey agree that Foster Garvey may proceed with *current* client matters, including litigation, that are adverse to the City, including the SPU, without disclosing or requesting additional conflict waivers, *provided however*, that the current client matters are not substantially related to the CWA Matter. Foster Garvey has undertaken a conflict search and concluded that all current client matters that are adverse or potentially adverse to the City are not substantially related to the CWA Matter, based on the information currently available. Foster Garvey will not use or disclose confidential information gained from representing the City in the CWA Matter in the representation of another client.

**Category 2 (no duty to disclose) – Future client land use litigation and land use nonlitigation matters adverse to the City.** The City and Foster Garvey agree that Foster Garvey may proceed with all *future* client land use nonlitigation matters that are adverse to the City *and* land use litigation matters that are adverse to the City without disclosing or requesting additional conflict waivers, *provided however*, that such future client matters are not substantially related to the CWA Matter. Foster Garvey will not use or disclose confidential information gained from representing the City in the CWA Matter in the representation of another client.

**Category 3 (duty to disclose and obtain consent) – *Future* client litigation matters and client nonlitigation matters adverse to the City.** The City and Foster Garvey agree that Foster Garvey will have a duty to disclose and seek the City's consent to proceed with all *future* client litigation matters and nonlitigation matters that are adverse to the City, except land use matters as described in Category 2 above. When such future litigation and nonlitigation matters requiring disclosure are not substantially

Thomas Kuffel
City of Seattle
March 23, 2023
Page 4

related to the CWA Matter, the City will exercise discretion in good faith when deciding whether to waive the conflict. Foster Garvey will not use or disclose confidential information gained from representing the City in the CWA Matter in the representation of another client and will put in place appropriate screens between counsel.

### *Informed Consent to Conflicts of Interest*

The City consents to allow Foster Garvey to proceed as provided above. The City understands that Foster Garvey may be obligated to obtain consent from its other clients to proceed with this engagement for the City.

Under Rule 1.7 of the Washington Rules of Professional Conduct, Foster Garvey may not oppose a current client, even on an unrelated matter, unless (1) we reasonably believe that we will be able to provide competent and diligent representation to each client and (2) each client gives informed consent. In other words, we must consult with both clients, and we cannot proceed with the engagement unless both clients consent.

In deciding whether to consent to the current and future conflicts described above, the City should consider whether Foster Garvey's representation of another client might adversely affect Foster Garvey's representation of the City in the CWA Matter. Generally, clients who are asked to waive or consent to conflicts typically should consider whether there is any material risk that their attorneys will be less vigorous advocates due to concern about offending another client. Similarly, clients should consider whether there is any material risk that their confidences will be used to their detriment.

Here, we do not believe there is a material risk of either type because Foster Garvey's representation in other adverse client matters will not be substantially related to the CWA Matter. However, the City, should carefully review this from its own perspective and, if desired, consult with independent counsel.

### Other Agreements

We understand that our primary contact at the City will be Assistant City Attorney Theresa Wagner. We will direct our invoices to her.

We agree that charges for our services are not to exceed $100,000 overall without prior written approval from this office. Our monthly bill will include a running total of charges to date to show remaining authorization.

The City agrees to pay Foster Garvey's invoices on a timely basis. The City also agrees to provide Foster Garvey with complete and accurate information relevant to our representation of the City, to cooperate fully, and to make any necessary decisions in a timely manner. In addition, the City agrees to notify us promptly of any change of circumstances affecting the representation.

From time to time, either at the outset of our representation or as the matter proceeds, Foster Garvey lawyers may express opinions or beliefs concerning various courses of action and the results that

Thomas Kuffel
City of Seattle
March 23, 2023
Page 5

might be anticipated. The City acknowledges that any such statement is an expression of opinion only, based on information available to us at the time, and is not a guarantee.

In some engagements questions may arise regarding our duties under the rules of professional conduct that apply to lawyers. These questions might concern a potential conflict of interest or a dispute between the firm and a client over the handling of a matter. Generally, when such issues arise, Foster Garvey lawyers seek the advice of our firm counsel, who has expertise in such matters. We consider such consultations to be attorney-client privileged communications between firm personnel and counsel for the firm. We believe it is in our clients' interest, as well as the firm's interest that we obtain expert analysis of our obligations when legal ethics or related issues arise during a representation. Accordingly, the City agrees that, if we determine in our own discretion that it is necessary or appropriate to consult with our internal or outside counsel during the course of the representation, we have your consent to do so, at our expense, and that our representation of you shall not, thereby, waive any attorney-client privilege that we may have to protect the confidentiality of our communications with firm counsel.

### Beginning Our Representation

Thank you for entrusting this work to Foster Garvey. If this letter and the enclosed Terms of Engagement (Attachment A) and the modified City of Seattle Outside Counsel Guidelines (Attachment B) meet with your approval, please confirm our engagement by signing and dating below and returning a copy to me so that we may begin work promptly. We look forward to working with you.

Very truly yours,

FOSTER GARVEY PC
Lori Terry Gregory
Principal

Enclosures
cc:      Laura Wishik; Theresa Wagner; Angelica Peck
Attachments:  (A) Foster Garvey Terms of Engagement
                   (B) City of Seattle Outside Counsel Guidelines (modified)

**AGREED AND CONSENT GIVEN:**

CITY OF SEATTLE

By: _*Thomas Kuffel*_
      Thomas Kuffel (Mar 24, 2023 14:26 PDT)

Name: Thomas Kuffel

Title: Civil Division Chief

Date: Mar 24, 2023

# Attachment A

# Foster Garvey
**Terms of Engagement**

Thank you for choosing Foster Garvey P.C. This document explains terms that apply to the representation described in our engagement letter and any subsequent engagements undertaken by mutual agreement, unless we reach a different written understanding. Please ask any questions you may have about these terms before signing the engagement letter.

**Working Together**
Generally one lawyer will be responsible for, and will oversee, the firm's representation of you, although other lawyers or staff members may assist in providing appropriate, efficient, and timely legal services. Your responsible lawyer will be your principal contact for coordination of your representation. If you have any concerns regarding our relationship or our services, please notify your responsible lawyer or one of the Co-Chairs of the firm's Executive Committee.

**Electronic Communications**
As we work together, it is likely that both you and the firm will use electronic devices and Internet services (which may include unencrypted email, mobile phones, voice over Internet, electronic data/document websites, and other technology) to communicate and transfer documents. Although the use of this technology involves some degree of risk that third parties may access confidential communications, we believe and you agree that the benefits of using this technology outweigh the risk of accidental disclosure. We have adopted policies and systems to make our electronic communications with you reasonably secure, and it is equally important that you communicate with us in a manner that reasonably protects confidential information and privileged communications. You should not use any computers or other electronic devices, networks, or Internet addresses that are owned, controlled, or may be accessed by others to send or receive confidential information to or from us. If you anticipate that any matter will involve personally identifiable information protected by data security laws, please notify the responsible lawyer promptly so we can discuss the use of encrypted email and/or other precautions.

**Conflicts of Interest**
We have performed a search of our conflicts database to determine whether representing you might present a potential conflict of interest with another client. We performed the check using your name and any other names you provide to us. Please inform us immediately if you use any other names (such as trade names) that we should enter into our database.

**Client Identity**
Our client is the entity or person named as our client in the engagement letter and does not include any affiliate, equity holder, employee, member of your family or other person unless we are retained directly by them. You confirm that we may represent another client adverse to any of them, or to an entity in which you hold an ownership interest, in matters unrelated to our work for you.

Foster Garvey Terms of Engagement - 1
October 1, 2019
FG:100491803.1

**Basis for Fees**

We generally charge on an hourly basis for time expended on your behalf, including but not limited to telephone conversations, in-person meetings, strategy development and planning, document preparation and review, research, court appearances, and travel. In setting the hourly rates for a particular engagement, we will consider various factors, including: the novelty or difficulty of the questions involved; the experience, reputation, and ability of those performing the services, the time limitations imposed by the client or the circumstances; the amount at stake; and the likelihood that accepting the engagement would preclude the firm from accepting other client opportunities. We review and adjust our standard billing rates from time to time, typically on January 1. Alternative fee arrangements that are not based entirely on hourly rates will be specified in the engagement letter.

**Estimates vs. Fixed Fees**

Clients occasionally request advance estimates of fees and costs. An estimate, although based on the lawyer's professional judgment and the information provided by the client, will be affected by factors outside the control of the firm and the client. Unless we reach a clear, written understanding that the fee will be charged at a fixed amount or capped at a fixed amount, any estimate we provide may be revised based upon the facts and circumstances we encounter during your representation.

**Advance Fee Deposit**

New clients are requested to provide an advance fee deposit as specified in the engagement letter, as are existing clients retaining us for new litigation matters or other matters of significant scale. These funds will be deposited in our client trust account, and any balance will be returned to the client upon termination of representation. In the event payment is not timely made, we reserve the right: to use any part of the deposit to satisfy a delinquent payment; to discontinue representation until the full advance fee deposit is restored; and to increase the amount of the deposit required for continued representation.

**Trust Account**

The amounts you pay to us in trust will be deposited in our client trust account. As required by the rules of professional conduct governing lawyers, interest earned will be paid to a foundation to support law-related charitable activity. However, when a client's deposit is large enough to earn interest in excess of bank and administrative costs, the firm will place the funds in a segregated account. In that circumstance the interest earned will be added to your deposit and reported by our bank to the Internal Revenue Service as taxable income to you.

**Costs Advanced to Third Parties**

In the course of serving you, we may make payments to third parties on your behalf. For example, courts and agencies often charge filing or recording fees, and we are required by law to pay witness fees. We may also contract on your behalf with vendors, such as court reporters, messenger services, independent professionals (foreign agents, investigators, appraisers, and accountants, to name a few examples), and expert witnesses, and we may incur travel expenses. We may elect to advance these costs and include the charges, without mark-up, on our invoices, or we may require you to provide an advance deposit for costs or to pay non-routine expenses directly to the third party.

Foster Garvey Terms of Engagement - 2
October 1, 2019
FG:100491803.1

**Other Charges**

In addition, our invoices reflect charges for services provided by our firm, currently including but not limited to the following:  photocopying, document binding, database storage costs, and online legal research.

**Billing and Payment**

We generally invoice our clients on a monthly basis.  The invoice will typically reflect charges incurred during the prior month but some charges may not be processed and billed until sometime after the expense has been incurred.  Payment is due within 30 days following the date of the invoice.  Payment of an invoice confirms your agreement to the amount charged.  If you disagree with the amount charged on an invoice, you must notify us within 60 days of the date of the invoice by contacting the responsible lawyer or the firm's accounting department.

**Insurance Coverage**

If you believe you may have coverage for legal fees incurred in this matter, you should notify your broker or carrier immediately.  We have no obligation to notify your broker or carrier unless you expressly request us to do so, we agree to undertake that additional task, and you provide copies of all relevant policies and related documents.  Although you may have coverage, primary responsibility for payment remains with you.

**Late Payment and Past Due Accounts**

Amounts past due accrue service charges at the rate of twelve percent per year.  If an account becomes more than thirty days past due, the firm may decline to perform additional legal services until the account is brought current or may withdraw from the representation.  If the firm incurs costs to collect the amount due, it shall be entitled to its collection costs and a reasonable attorney's fee (for the services of outside counsel and/or internal counsel).  Unless otherwise agreed, we may apply payments first to our attorney's fees and costs of collection, second to service charges, and then to invoiced fees, costs advanced and other charges.  You agree that, to the fullest extent permitted by law, we have an attorney's lien in your files and/or against the results of our representation to secure payment of your financial obligations and that we may take steps to inform others of any lien rights we may have.

**Conclusion of Matter; Retention and Disposition of Documents**

Our representation in a matter will be deemed concluded at the time we issue our final invoice for services rendered in that matter or, if an invoice is not characterized as a final invoice, upon the passage of twelve months from the date of the last invoice for the matter.  To the extent you have not previously received copies of correspondence or other documents during the course of representation, we will provide such material at your request and expense.  We will have no obligation to retain files following the conclusion of the engagement.

**Post-Engagement Matters**

You are engaging us to provide legal services in connection with a specific matter.  After completion of the matter, changes may occur in applicable laws or regulations that could affect your future rights or liabilities.  Unless you re-engage us to provide additional legal advice, the firm has no continuing obligation to advise you regarding such issues, other legal developments,

or renewal or other deadlines you may have with respect to the subject matter of the representation.  Any re-engagement will be subject to clearing conflicts and to these terms of engagement.

**Termination of Representation**
Prior to conclusion of our representation, you may terminate our relationship at any time and for any reason by providing written notice.  Similarly, we may, with written notice, withdraw from our representation of you if required or permitted by the applicable rules of professional conduct. If the permission of a court or other adjudicator is required for withdrawal, we will promptly request such permission, and you agree not to oppose our request.  Upon termination or withdrawal, you will remain obligated to pay promptly all charges for legal services already rendered and, in circumstances where the termination or withdrawal is caused by your conduct, charges resulting from the termination or withdrawal, including time spent working with successor counsel.  We will cooperate with successor counsel to assure a smooth transfer of the representation.

**Arbitration**
If you disagree with the amount of our fee, please contact the responsible lawyer or an alternate representative identified on our website.  Typically we can resolve such disagreements satisfactorily with little inconvenience or formality.  In the event a fee dispute is not readily resolved, some state bar associations offer programs for arbitration of fee disputes.

**Questions**
If you have any questions regarding the terms set forth in this document, please contact the lawyer who sent your engagement letter or your current responsible lawyer, if different.  Please note that the rules of professional conduct preclude us from acting as your counsel with respect to these terms, but you are free to consult with independent counsel if you wish.  These terms govern not only the representation described in our engagement letter, but also any subsequent engagements undertaken by mutual agreement, unless we reach a different written understanding.

GSB:10438997.5

**Seattle City Attorney**

Ann Davison

**Seattle City Attorney [Revised]**
**Outside Counsel General Terms and Billing Procedures**
**Attachment B**

As used in this Attachment A, "Outside Counsel" means any individual lawyer, other than an employee of the City of Seattle, or any law firm hired by the Seattle City Attorney to provide legal advice and represent the City of Seattle, and its officers or employees.

## I.      Interaction with City

A.  The City Attorney[1] must be given notice of any significant decisions to participate fully in making such decisions.

B.  Outside Counsel must obtain written approval for any changes to the scope of work authorized under this agreement.

C.  The City Attorney must be provided with advance drafts of all significant documents (policy statements, pleadings, memoranda) in sufficient time to participate fully in decisions regarding such documents.

D.  The City Attorney must routinely receive copies of all other documents, including correspondence and internal legal memoranda.

E.  The City Attorney must fully participate in all deliberations and decisions regarding possible settlement of a case.

F.  The City Attorney must participate in the selection of all consultants or experts. No subcontracting is permitted under this contract without the specific authorization of the City Attorney, and compliance with Chapter 20.42 Seattle Municipal Code.

G.  Provisions of this section may be modified to the extent necessary to comply with RPC 1.6 when there is a conflict between an individual employee represented by Outside Counsel and the City. In those circumstances, the City recognizes Outside Counsel's duties under RPC 1.8(f).

## II.      Potential Conflicts of Interest

Conflicts and potential conflicts of interest are addressed in the Foster Garvey engagement letter to which this document is attached.

---

[1] References in this document to obligations and rights of the City Attorney shall usually be made by an Assistant City Attorney or other member of the City Attorney's Office as identified by the City Attorney. Outside counsel may, however, contact the City Attorney directly whenever warranted.

FG:100509366.1

Name
Firm
Date
Page 2

## III.    Communications

A.  All communications relating to representing the City and its employees between Outside Counsel and the City, its officers, employees or agents, whether oral or written, and all documentation whether prepared by Outside Counsel or the City shall be considered confidential and shall not be disclosed except by the written consent of the City Attorney or an individual employee represented under SMC 4.64 as appropriate under RPC 1.6.

B.  Outside Counsel shall not contact the media, respond to requests for interview, or respond to any media inquiries about this matter or any related activities without express authorization from the City Attorney's Office. All media inquiries or requests for interview should be directed to the liaison attorney or Communications Director at the City Attorney's Office.

## IV.    City Code of Ethics and Professional Conduct

A.  The reputation of the City and its officers and employees is of high importance to the City. All counsel representing the City and its officers and employees are expected to maintain high standards of professional conduct, and must behave with integrity throughout representation.

B.  Outside Counsel shall comply with all provisions of the Seattle City Code of Ethics (Seattle Municipal Code Title 4 Chapter 16) applicable to Outside Counsel.

C.  Outside Counsel shall be mindful of the requirements of SMC 4.16.070(3) in providing any free legal services to individual City employees and shall notify the City Attorney before providing any free legal services to individual City employees.

## V.    Billing Procedures for Outside Counsel

A.  Billings by Outside Counsel must be submitted monthly and will be paid within 30 days of receipt, unless they contain disputed costs. Any disputed costs must be resolved, and a revised invoice must be resubmitted with a new date. The new invoice will replace all subsequent versions and be paid within 30 days of receipt.

B.  Unless otherwise agreed upon in advance in writing, the City will be charged for services rendered on an hourly basis and billings will be reflected in increments of one-quarter of an hour or less.

C.  Approved out-of-pocket expenses will be reimbursed at cost.

FG:100509366.1

Name
Firm
Date
Page 3

D.  Each billing statement must identify each date services were performed and:

   1.  A brief summary of the services provided specified by task; block billing is not acceptable;

   2.  The number and fractions of hours spent by each provider;

   3.  The hourly rate and State Bar Number of each provider;

   4.  Any costs or expenses submitted for reimbursement must be verifiable with an invoice or other back-up documentation. Expenses and disbursements must be described in detail and comply with:

       (a)  Air travel must be approved by the City in advance and is reimbursable at coach rates;

       (b)  Other travel expense reimbursement follows the requirements of SMC 4.72.010 governing travel expenses for City employees;[2]

       (c)  The City must not be charged for courier service or other expedited mail delivery unless the urgency was caused by the City or the City requests the service;

       (d)  The City will not pay for computer research provider costs; and

       (e)  The City will not pay costs that should be part of the firm's overhead costs. Time devoted to these tasks in non-billable regardless of the level of the timekeeper performing the task: (1) opening or closing files; (2) processing conflict searches and waivers; (3) fees incurred by interns, associates, or law school graduates who have not passed the bar; (4) organizing material for storage; (5) preparing, reviewing, approving, or collecting billing statements or invoices; repetitive file review by the same timekeeper, (6) fees incurred for "learning time" associated with training junior attorneys; (7) scheduling and arranging meetings, depositions, examination or other even scheduling; (8) maintaining office or attorney calendars; (9) taking telephone messages and placing calls for counsel; (10) telephone calls or communications to copying services, record providers, or court reporters, (11) arranging for or making pick-ups  and deliveries of documents and records; (12) filing or organizing

---

[2] Approved meal expenses are reimbursed at the Federal Per Diem daily meal rate (excluding the "Incidental" portion of the published CONUS Federal M&I Rate) for the city in which the work is performed. The current Federal Per Diem daily meal rate used by the City for reimbursement will be provided upon request. The invoice shall state "the meals are being billed at the Federal Per Diem daily meal rate," and shall detail how many of each meal is being billed (e.g. the number of breakfasts, lunches, and dinners). The City will not reimburse for alcohol at any time. Rates depend on the location and the date(s) of travel, and can be verified at gsa.gov/travel/plan-book/per-diem-rates.

Approved lodging expenses are reimbursed at actual cost incurred up to a maximum of the published Runzheimer Cost Index for the city in which the work is performed (the current maximum allowed reimbursement amount can be provided upon request). Receipts detailing each day / night lodging are required. The City will not reimburse for ancillary expenses charged to the room (e.g. movies, laundry, mini bar, refreshment center, fitness center, sundry items, etc.). The current cost index amounts used by the City for reimbursement will be provided upon request.

FG:100509366.1

correspondence, pleadings, or other documents in internal firm files; (13) typing, transcribing, data entry, document scanning or other clerical or secretarial services; and (14) in-firm conferences that are administrative, instructional, or supervisory in nature.

5.  Billings for experts or consultants retained by Outside Counsel must be provided in substantially similar format as outlined above;

6.  Outside Counsel bills are subject to public disclosure. Outside Counsel should avoid including privileged information in billings that would have to be redacted if a public disclosure request is received.

7.  Billings must include:
    (a) Total fees and costs to date; and
    (b) The amount authorized in the engagement letter.

    As a reminder, charges are not to exceed the approved amount without prior approval.

E.  Any changes in Outside Counsel's fee schedule must be discussed with the City Attorney before implementation.

F.  Outside Counsel was retained because of its expertise. The City must not be billed for basic general legal or technical research necessary to educate staff or less experienced attorneys in the firm. Any extensive legal research proposed by Outside Counsel must be discussed in advance with the City Attorney and is subject to the City Attorney's approval.

G.  The City must not be billed for any time spent in preparing or reviewing the firm's billings to the City or in internal firm quality control procedures.

H.  Unless approved in advance, the City will not reimburse for time spent by more than one attorney attending meetings, witness interviews, depositions, hearings, and the like.

I.  Work executed under this agreement is owned by the City. Outside Counsel will maintain a reference table, or index, which clearly identifies the contents of the file associated with this matter. Outside Counsel will retain the file for ten years after final payment on this matter. The City may request a transfer or copy all or any parts of the file while the matter is pending and up to ten years after final payment is made under this agreement.

## VI. Conclusion of Representation and Final Payment

When Outside Counsel is notified by the City Attorney's Office this matter is concluded and no further work is requested, Outside Counsel shall provide the City Attorney's Office with a

final invoice and identify it as such. No further work is authorized once representation is terminated by the City Attorney.

## VII. Audit

Outside Counsel will keep accurate records and books for all work provided under this agreement with the City. At the City's request and expense, Outside Counsel will permit the City to inspect and audit all books and records of counsel related to the work performed for and charged to the City, at any times deemed necessary by the City, including up to six years after the final payment is made under this agreement.

## VIII. Equal Employment Opportunity and Outreach

A. Outside Counsel shall not discriminate against any employee or applicant for employment because of race, color, age, sex, marital status, sexual orientation, gender identity, political ideology, creed, religion, ancestry, national origin, or any sensory, mental or physical handicap, unless based upon a bona fide occupational qualification. Outside Counsel shall take affirmative efforts to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, age, sex, marital status, sexual orientation, gender identity, political ideology, creed, religion, ancestry, national origin, or any sensory, mental, or physical handicap. Such efforts shall include, but not be limited to employment, upgrading, demotion, or transfer; recruitment or recruitment advertising, layoff or termination, rates of pay, or other forms of compensation and selection for training, including apprenticeship.

B. If Outside Counsel will hire employees for any work under the agreement, or if counsel will subcontract any work under the agreement (with City approval), Outside Counsel shall make affirmative efforts to recruit minority and women candidates. Affirmative efforts may include the use of advertisements in publications directed to minority communities and other targeted recruitment efforts, and using the services of minority and public organizations to perform outreach.

C. By executing an agreement with the City, Outside Counsel affirms that it complies with all federal, state, and local non-discrimination laws, particularly the requirements of SMC Ch. 20.42. Any violation of the provisions in this Section 7 shall be a material breach of Agreement for which Outside Counsel may be subject to damages and sanctions provided for by the Agreement and by law, including but not limited to debarment from City contracting activities under SMC Ch. 20.70.

## IX. Nondiscrimination in Employee Benefits

A. Compliance with SMC Ch. 20.45: Outside Counsel shall comply with the requirements of SMC Ch. 20.45 and Equal Benefit Program Rules implementing such requirements, under which counsel must provide the same or equivalent benefits ("equal benefits") to its employees with domestic partners as Outside Counsel provides to its employees

with spouses. At the City's request, Outside Counsel shall provide complete information and verification of compliance with SMC Ch. 20.45. (For further information about SMC Ch. 20.45 and the Equal Benefits Program Rules call (206) 6844529 or review information at http://cityofseattle.net/contract/equalbenefits/.)

B. Remedies for Violations of SMC Ch. 20.45: Any violation of this Section 8 shall be a material breach of contract for which the City may:

1. Require Outside Counsel to pay actual damages for each day that the counsel violates SMC Ch. 20.45 during the term of the contract;

2. Terminate the contract;

3. Disqualify Outside Counsel from bidding on or being awarded a City contract for a period of up to five years; and

4. Impose other remedies as provided for in SMC Ch. 20.45.

## X. Other Terms

A. Outside Counsel shall use, whenever practicable, recycled content paper on all documents submitted to the City.

B. Outside Counsel shall comply with all provisions of the Americans with Disabilities Act of 1990 (ADA) in performing its obligations under this Agreement. Failure to comply with the ADA shall be a material breach of, and grounds for the immediate termination of, this contract.

C. Outside Counsel shall comply with the Fair Contracting Practices Ordinance of The City of Seattle (Chapter 14.10 SMC). Conduct made unlawful by that Chapter constitutes a breach of contract. Engaging in an unfair contracting practice may also result in imposing a civil fine or forfeiture under the Seattle Criminal Code and various other civil remedies.

# Exhibit C

DANIEL T. SATTERBERG
PROSECUTING ATTORNEY



**King County**

Office of the Prosecuting Attorney
CIVIL DIVISION, Department of Natural Resources
900 King County Administration Bldg.
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430
FAX (206) 205-0447

**CONFIDENTIAL
ATTORNEY-CLIENT COMMUNICATION
NOT SUBJECT TO PUBLIC DISCLOSURE OR DISCOVERY**

SENT VIA EMAIL

August 2, 2021

Beth S. Ginsberg
Stoel Rives
600 University Street
Seattle, WA 98101

Re:     Retention of Stoel Rives for legal services relating to the Department of Ecology's Draft
Puget Sound Nutrient General Permit

Dear Ms. Ginsberg:

This letter is to confirm the terms of our office's engagement of the services of Stoel Rives to
assist King County in responding to the Department of Ecology's issuance of the Draft Puget
Sound Nutrient General Permit. Redacted portion is exempt pursuant to Attorney-
Client Privilege, Attorney Work Product Doctrine and RCW 42.56.290

The specific scope of work for Stoel Rives will be as directed by the Prosecuting Attorney's
Office. I will be your primary contact at King County for this matter.

Your work will be conducted according to the King County Prosecuting Attorney Outside
Counsel Guidelines, a copy of which is attached as Attachment A with this letter. It is expected
that you will keep confidential any of the documents or information provided to you in the
course of this engagement that are not already matters of public record.

We have agreed that the billing rates will be at the discounted rate of 10% for Beth Ginsberg and
the other Stoel Rives lawyers would be billed at a public agency discount from their regular rates
as set forth in the table below.

| Name | Title | 2021 Discounted Rates by 10% |
|------|-------|------------------------------|
| Beth Ginsberg | Partner | $657.00 |
| Veronica Keithley | Associate | $459.00 |

Prosecuting Attorney
  King County

Ms. Beth S. Ginsberg
Stoel Rives
August 2, 2021
Page 2


Stoel Rives must receive advance authorization from the King County Prosecuting Attorney's Office before it may use any other individual in this engagement or bill King County for any other individual. Once your firm is engaged, invoices should be submitted to me via email, indicating the name of the matter as listed above, actual hours incurred, and a description of the specific tasks performed.

Please indicate below by your signature your agreement to the terms set forth in this letter and to the provisions in the King County Prosecuting Attorney Outside Counsel Guidelines.

We look forward to working with you on this matter. If you have any questions, please call me at (206) 477-1097. I can also be reached by e-mail at: verna.bromley@kingcounty.gov.


Sincerely,

 */s/ Verna P. Bromley*

Verna P. Bromley
Senior Deputy Prosecuting Attorney




Stoel Rives agrees to the terms set forth herein.



Beth S. Ginsberg                              Dated : August 2, 2021


Attachments:   A. KCPAO Outside Counsel Guidelines