HONORABLE MICHELLE L. PETERSON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILD FISH CONSERVANCY,

    Plaintiff,

v.

JENNIFER QUAN, in her official capacity as
Acting Regional Administrator for the National
Marine Fisheries Service, *et al.*,

    Defendants,

and

ALASKA TROLLERS ASSOCIATION, and
STATE OF ALASKA,

    Defendant-Intervenors.

Case No. 2:20-cv-00417-RAJ-MLP

FIFTH DECLARATION OF BRIAN A.
KNUTSEN

       I, Brian A. Knutsen, declare the following on the basis of personal knowledge to which I am competent to testify:

       1.     I am co-counsel for Plaintiff Wild Fish Conservancy (the "Conservancy") in the above-captioned matter. I am submitting this declaration in support of Plaintiff's Motion for an Award of Fees and Costs ("Motion").

       2.     I am a co-owner of the law firm Kampmeier & Knutsen, PLLC, one of the law

**FIFTH KNUTSEN DECLARATION - 1**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

firms that represents the Conservancy in this lawsuit.

3.    Counsel for the Conservancy and counsel for the Federal Defendants conferred on the Conservancy's Motion for an Award for Fees and Costs via telephone on December 9, 2024. During that conferral, Emma Bruden and I represented the Conservancy and Fredrick Turner represented Federal Defendants. The parties have not reached an agreement as of the filing of the Motion. However, it is my understanding that the parties will continue to explore settlement of the Conservancy's claim for an award of fees and costs during the next several weeks and I will promptly notify the Court if a settlement is reached.

## MY PROFESSIONAL EXPERIENCE

4.    I have been a licensed attorney since 2004. I am an active member of the bars of the States of Oregon and Washington (and an inactive member of the bar of the State of Colorado), the United States District Courts for the District of Oregon, the Western District of Washington, and the Eastern District of Washington, and the Ninth Circuit Court of Appeals.

5.    I received undergraduate degrees in geology and environmental sciences from St. Louis University in 2000. I graduated with honors from Lewis & Clark Law School in Portland, Oregon in 2004, receiving a law degree and a certificate in environmental and natural resources law. Following law school, I joined the firm of Moses, Wittemyer, Harrison & Woodruff, P.C., in Boulder, Colorado where my practice focused on water rights litigation in trial and appellate courts. I moved to Seattle, Washington and became an associate attorney at Smith & Lowney in March of 2007. Similar to my current firm, Smith & Lowney is a public interest law firm with a focus on environmental litigation. I became a managing attorney with Smith & Lowney in January 2011, at which time I moved to open and direct a branch office for the firm in Portland, Oregon. I left Smith & Lowney to start Kampmeier & Knutsen in June 2015, which I co-own

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

**FIFTH KNUTSEN DECLARATION - 2**
**Case No. 2:20-cv-00417-RAJ-MLP**

1  with Paul Kampmeier.

2      6.    The vast majority of my practice consists of public-interest environmental

3  litigation in federal courts. I have extensive experience representing non-profit environmental

4  organizations in federal district and appellate courts in cases involving environmental statutes,

5  including the Endangered Species Act ("ESA"),[1] the Clean Water Act,[2] the National

6  Environmental Policy Act ("NEPA"),[3] and the Administrative Procedure Act ("APA"). In

7  addition to federal environmental litigation, I also represent clients in challenges to state permits

8  before the Washington State Pollution Control Hearings Board and Washington State Courts and

9  I have advocated for clients in matters involving the public's access to government. I am

---

[1] *E.g.*, *Wild Fish Conservancy v. Salazar*, 628 F.3d 513 (9th Cir. 2010); *Wild Fish Conservancy v. Wash. Dep't of Fish & Wildlife*, No. C21-169-RSL, 2023 U.S. Dist. LEXIS 20568 (W.D. Wash. Feb. 7, 2023); *Wild Fish Conservancy v. U.S. Envtl. Prot. Agency*, 331 F. Supp. 3d 1210 (W.D. Wash. 2018); *Wild Fish Conservancy v. Pritzker*, Case No. C16-0223-JCC, 2016 U.S. Dist. LEXIS 191022 (W.D. Wash. June 30, 2016); *Wild Fish Conservancy v. Irving*, 221 F. Supp. 3d 1224 (E.D. Wash. 2016); *Wild Fish Conservancy v. U.S. Envtl. Prot. Agency*, No. C08-0156-JCC, 2010 U.S. Dist. LEXIS 41838 (W.D. Wash. April 28, 2010).

[2] *E.g.*, *Olympic Forest Coal. v. Coast Seafoods Co.*, 884 F.3d 901 (9th Cir. 2018); *Columbia Riverkeeper v. Port of Vancouver U.S.A.*, No. 3:21-cv-05486-BHS, 2023 U.S. Dist. LEXIS 205335 (W.D. Wash. Nov. 14, 2023); *Columbia Riverkeeper v. U.S. Army Corps of Eng'rs*, No. 4:21-cv-05152-SAB, 2023 U.S. Dist. LEXIS 49849 (E.D. Wash. Mar. 23, 2023); *Snake River Waterkeeper v. Idaho Power Co.*, Case No. 1:21-cv-00269-BLW, 2022 U.S. Dist. LEXIS 34537 (D. Idaho Feb. 26, 2022); *Okanogan Highlands All. v. Crown Res. Corp.*, 544 F. Supp. 3d 1092 (E.D. Wash. 2021); *Wild Fish Conservancy v. U.S. Envtl. Prot. Agency*, 331 F. Supp. 3d 1210 (W.D. Wash. 2018); *Ctr. for Envtl. Law & Policy v. U.S. Fish & Wildlife Serv.*, 228 F. Supp. 3d 1152 (E.D. Wash. 2017); *Puget Soundkeeper All. v. BNFS Ry. Co.*, No. C09-1087-JCC, 2011 U.S. Dist. LEXIS 92978 (W.D. Wash. Aug. 19, 2011); *Puget Soundkeeper All. v. Tacoma Metals, Inc.*, No. C07-5227-RJB, 2008 U.S. Dist. LEXIS 60741 (W.D. Wash. Aug. 5, 2008) and 2008 U.S. Dist. LEXIS 7744 (W.D. Wash. Jan. 23, 2008).

[3] *E.g.*, *Wild Fish Conservancy v. Nat'l Park Serv.*, 8 F. Supp. 3d 1289 (W.D. Wash. 2014); *Pub. Emps. for Envtl. Responsibility v. U.S. Dep't of the Navy*, No. C08-5552-BHS, 2010 U.S. Dist. LEXIS 24203 (W.D. Wash. Feb. 23, 2010).

---

**FIFTH KNUTSEN DECLARATION - 3**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

frequently invited to speak at continuing legal education programs[4] and other seminars on environmental and other legal topics.

7.     Much of my practice has centered on protecting Pacific Northwest salmonids and the ecosystem in which they evolved. This work has covered issues related to habitat and water quality, hydropower, salmon hatcheries, and salmon harvests. I have been lead counsel in numerous such cases that successfully pursued new legal theories, many of which had significant regional and national impacts.

8.     For example, I represented Columbia Riverkeeper in a series of Clean Water Act citizen suits seeking to bring hydroelectric projects into compliance, for the first time, with the Act's national pollutant discharge elimination system ("NPDES") permitting requirements. These efforts began with federal multi-district litigation against the U.S. Army Corps of Engineers in 2013 that was resolved the following year through a settlement agreement requiring the Corps to submit NPDES permit applications for eight hydroelectric dams on the Columbia and Lower Snake Rivers.[5] The U.S. Environmental Protection Agency eventually issued NPDES permits for the Corps' dams, which include requirements imposed by the State of Washington under its "401 certification" authority requiring the dams to meet temperature standards to protect salmonids. The 2014 agreement was reported as "groundbreaking"[6] given its potential

---

[4] *E.g.*, The 31st Annual Endangered Species Act Conference, The Seminar Group (Seattle, WA Jan. 25–26, 2024); Environmental & Natural Resources Section, Oregon Bar Association, 2018 Environmental Law: Year in Review (Troutdale, OR Oct. 11, 2018); The 22nd Annual Endangered Species Act Conference, the Seminar Group (Seattle, WA Jan. 22–23, 2015).

[5] *Columbia Riverkeeper v. U.S. Army Corps of Eng'rs*, No. 2:13-MD-2494-LRS, Dkt. 40 (E.D. Wash. Aug. 14, 2014).

[6] Nigel Duara, *APNews Break: Army Corps Agrees to Disclose Oil Pollution From Dams in Historic Settlement*, U.S. News & World Rep. (Aug. 4, 2014),

**FIFTH KNUTSEN DECLARATION - 4**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

1    nationwide implications. As one law professor explained, the "§401 certifications could mean

2    that the long-standing efforts to have dam operations comply with state water quality

3    temperature standards may finally bear fruit."[7] Following the 2014 agreement, I represented

4    Columbia Riverkeeper and Snake River Waterkeeper in successful efforts to bring other federal

5    and non-federal hydroelectric projects into compliance with the Clean Water Act.

6

7    9.    I have represented the Conservancy and other clients in numerous cases seeking

8    to bring hatchery programs into compliance with the ESA and other environmental statutes to

9    reduce the hatcheries' impacts to wild salmonids. Two such lawsuits alleged that the Washington

10   Department of Fish and Wildlife was violating the ESA by releasing out-of-basin hatchery

11   steelhead into Puget Sound. The National Marine Fisheries Service ("NMFS") had identified

12   these two hatchery stocks—the Chambers Creek winter steelhead hatchery stock and the

13   Skamania summer steelhead hatchery stock—as a concern when it listed Puget Sound steelhead

14   as a threatened species under the ESA. The lawsuits resulted in consent decrees entered in 2014

15   and 2019 requiring, among other things, Washington to phase out the unauthorized non-native

16   hatchery programs.[8]

17

18   10.    I have represented environmental organizations in matters seeking to protect

19

20

21   _____

22   https://www.usnews.com/news/us/articles/2014/08/04/apnewsbreak-corps-agrees-to-monitor-
     dam-pollution?preview=true&preview_id=12304&preview_nonce=4467851722.

23

24   [7] Michael C. Blumm & Michael Benjamin Smith, *Salmon and the Clean Water Act: An
     Unfinished Agenda*, 51 Env't Law Rep. 10109, 10113–14 (2021), available at:
     https://lawcommons.lclark.edu/faculty_articles/1/.

25

26   [8] *Wild Fish Conservancy v. Anderson*, W.D. Wash. No. 2:14-cv-00465-JLR, Dkt. No. 22 (Apr.
     28, 2014); *Wild Fish Conservancy v. Wash. State Dep't of Fish & Wildlife*, 2:19-cv-00612-JLR,
     Dkt. No. 7 (May 2, 2019); *see also* Daniel Jack Chasan, *Fish Hatcheries: A 19th Century Fix
     that Won't Die*, Crosscut (Mar. 29, 2015), https://crosscut.com/2015/03/hatcheries-a-19th-
     century-fix-that-wont-die (discussing the Conservancy's ESA litigation challenging hatchery
     production of non-native steelhead in Puget Sound).

27

28

29

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

**FIFTH KNUTSEN DECLARATION - 5**
**Case No. 2:20-cv-00417-RAJ-MLP**

aquatic ecosystems from the impacts of commercial aquaculture. For example, I represented the Conservancy in a Clean Water Act citizen suit against the operator of commercial salmon net pens in Puget Sound following the 2017 collapse of a pen that released thousands of non-native Atlantic salmon. The Court found numerous violations at all eight Puget Sound net pens.[9] A consent decree was subsequently negotiated that required, among other things, improvements at the facilities and payment of $1,150,000 for environmental restoration projects. This contentious litigation was highlighted in the book *Salmon Wars: The Dark Underbelly of Our Favorite Fish*, by Catherine Collins and Douglas Frantz (2022).

11.     I have represented clients in various matters seeking to enforce open government laws. In one such matter, I represented Columbia Riverkeeper, the Sierra Club, and the Northwest Environmental Defense Center in an action challenging the use of non-public executive sessions by the Board of Commissioners for the Port of Vancouver USA when developing a lease for a proposed crude oil terminal. The Washington Supreme Court unanimously rejected the Port's interpretation of Washington's Open Public Meetings Act that had been used to exclude the public from discussions on the lease.[10]

12.     This Court recognized in 2010 that I possessed "extensive experience litigating environmental issues" such that attorney fees should be awarded at market rates under the Equal Access to Justice Act ("EAJA") instead of at the lower statutorily prescribed rates.[11] In that case,

---

[9] *Wild Fish Conservancy v. Cooke Aquaculture Pac. LLC*, No. C17-1708-JCC, 2019 U.S. Dist. LEXIS 70974 (W.D. Wash. Apr. 26, 2019); *Wild Fish Conservancy v. Cooke Aquaculture Pac. LLC*, No. C17-1708-JCC, 2019 U.S. Dist. LEXIS 204382 (W.D. Wash. Nov. 25, 2019).

[10] *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 395 P.3d 1031 (2017).

[11] *Wild Fish Conservancy v. U.S. Env't Prot. Agency*, No. 2:08-cv-00156-JCC, Dkt. 75 (W.D. Wash. Sept. 20, 2010), a copy of which is attached hereto as Exhibit 3.

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

**FIFTH KNUTSEN DECLARATION - 6**
**Case No. 2:20-cv-00417-RAJ-MLP**

in which I was lead counsel, the Conservancy alleged, inter alia, that NMFS violated the ESA in its consultation on the impacts to protected salmonids and Southern Resident killer whales ("SRKW") caused by commercial salmon farms in Puget Sound.[12] In determining that market rates should be awarded under EAJA for my work on the case, the Court noted that I was "well-versed" in the applicable statutory requirements and the relevant technical and scientific issues.[13] More recently, the Ninth Circuit found that I should awarded market rates under EAJA instead of the lower statutory rates where the U.S. Environmental Protection Agency did not dispute that I "have distinctive knowledge or specialized skill in environmental law." *Nat'l Family Farm Coal. v. U.S. Env't Prot Agency*, No. 19-70115, 2023 U.S. App. LEXIS 28562, at *10–12 (9th Cir. Mar. 1, 2023).

## KAMPMEIER & KNUTSEN, PLLC

13.    Paul Kampmeier and I founded the law firm Kampmeier & Knutsen, PLLC in June 2015. Our firm specializes in public-interest environmental and open government litigation in the Pacific Northwest.

14.    Kampmeier and Knutsen currently has four attorneys—Paul Kampmeier, Emma Bruden, Erica Proulx, and myself—and two separate offices, one in Seattle, Washington and the other in Portland, Oregon. Mr. Kampmeier and Ms. Bruden are submitting separate declarations attesting to their qualifications. In addition to these four attorneys, two additional attorneys that have since left the firm, Mariah Harrod and Jessica Durney, worked on this case while employed by Kampmeier and Knutsen. Finally, two summer law clerks, Dara Illowsky and Dakota Rash,

---

[12] *Wild Fish Conservancy v. U.S. Envtl. Prot. Agency*, No. C08-0156-JCC, 2010 U.S. Dist. LEXIS 41838, at *2, 5–13 (W.D. Wash. Apr. 28, 2010).

[13] *Wild Fish Conservancy v. U.S. Env't Prot. Agency*, No. 2:08-cv-00156-JCC, Dkt. 75 (W.D. Wash. Sept. 20, 2010), a copy of which is attached hereto as Exhibit 3.

**FIFTH KNUTSEN DECLARATION - 7**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

1  worked on this matter while with Kampmeier & Knutsen.

2      15.    Erica Proulx began working as an associate attorney as Kampmeier & Knutsen in

3  July 2024. In 2012, she received a Bachelor of Arts degree *summa cum laude* from the

4  University of Toledo. In 2022, she received her Juris Doctor degree from the University of

5  Washington School of Law with High Honors. During law school, Ms. Proulx completed the

6  requirements for a Concentration in Environmental Law, served as the Vice President (2020–

7  2021) and a 3L representative (2021–2022) of the Environmental Law Society, and worked as a

8  legal extern, intern, and clerk with several environmental nonprofits, including Crag Law Center

9  (Fall 2020), Earthjustice (Summer 2021), and the University of Washington School of Law's

10  Regulatory Environmental Law & Policy Clinic (Fall 2021–Winter 2022). In these positions, she

11  focused on federal environmental litigation involving various environmental statutes, including

12  the Clean Air Act, the ESA, the Resource Conservation and Recovery Act, the APA, NEPA, and

13  others. During law school, Ms. Proulx completed numerous courses in environmental and

14  administrative law, including Natural Resources Law, Administrative Law, Environmental Law,

15  Wildlife Law, Climate Change Law, and U.S. Coastal & Ocean Law.

16      16.    Ms. Proulx has been licensed to practice law in the State of Washington since

17  October 2022 and is also a member in good standing of the U.S. District Courts for the Western

18  and Eastern Districts of Washington.

19      17.    Following law school, Ms. Proulx was awarded the Diehl Clinical Fellowship in

20  Environmental Law through which she worked as a legal fellow with the University of

21  Washington School of Law's Regulatory Environmental Law & Policy Clinic from October

22  2022 through July 2024. As the Diehl Fellow, she served nonprofit environmental plaintiffs in

23  federal environmental law matters, including the ESA, American Indian Law, the APA, and

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

**FIFTH KNUTSEN DECLARATION - 8**
**Case No. 2:20-cv-00417-RAJ-MLP**

federal pollution control statutes, through all stages of litigation. Ms. Proulx's has continued to represent nonprofit environmental organizations in matters involving state and federal environmental and administrative laws, including the Clean Water Act, the ESA, and the APA, since joining Kampmeier & Knutsen.

18.    Attached hereto as Exhibit 4 is a copy of Ms. Proulx's resume.

19.    Mariah Harrod was an associate attorney at Kampmeier & Knutsen from November 2022 through April 2024 and is admitted to practice in the State of Washington and the U.S. District Courts for the Western and Eastern Districts of Washington. Ms. Harrod graduated *summa cum laude* from Vermont Law School in 2022, where she was second in her class and served on the Vermont Law Review. During law school, Ms. Harrod gained environmental law and litigation experience. She served as a Policy Research Intern at Audubon Vermont from June 2020 to August 2020 where she researched state legislation on climate change and plastics. She then worked as a Student Clinician in Vermont Law School's Environmental Justice Clinic from January 2021 to May 2021 where she drafted case evaluations for the federal Civil Rights Act of 1964 and the Clean Water Act, and she helped draft an environmental justice bill and an environmental justice report. From June 2021 to August 2022, Ms. Harrod clerked at Our Children's Trust where she researched constitutional issues for federal litigation related to climate change. She then clerked at Shute, Mihaly, & Weinberg, a public interest law firm in San Franscisco, California, from January 2022 to April 2022 where she researched and wrote memoranda on a variety of federal and state environmental, land use, political reform, and public records laws. Ms. Harrod is now a staff attorney at the Environmental Integrity Project, a non-profit organization that advocates for effective enforcement of environmental laws.

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

20.     Jessica Durney was an associate attorney with Kampmeier & Knutsen from September 2020 to July 2022. She graduated from the University of California, Hastings College of the Law cum laude in 2018 with a focus on environmental law. During law school, she was Editor-in-Chief of the Hastings Environmental Law Journal from 2017 to 2018; externed with the environmental non-profit Earthjustice and the California Attorney General's Environment Division in 2017; and published several works on environmental issues, including analysis of the 2016 Paris Climate Accord and argument for including environment harm in international criminal law standards. *See* Jessica Durney, *Defining the Paris Agreement: a Study of Executive Power and Political Commitments*, 11 Carbon & Climate L. Rev. 234 (2017); Jessica Durney, *Crafting a Standard for Environmental Crime at the International Criminal Court*, 24 Hastings Env't L.J. 413 (2018). After law school, she worked as a Staff Attorney for the U.S. Court of Appeals for the Eleventh Circuit from 2020 to 2022, where she recommended dispositions of civil and criminal cases, including complex civil litigation, bankruptcy, immigration, criminal appeals, and writs of habeas corpus. She is licensed to practice law in California (2018) and Washington (2020) and admitted to the U.S. District Courts for the Western and Eastern Districts of Washington. During her time at Kampmeier & Knutsen she contributed to the firm's work on federal Clean Water Act, ESA, and NEPA cases and state Public Records Act suits. Since August 2022, she has worked as a Trial Attorney in the Environmental Enforcement Section for the U.S. Department of Justice.

21.     Dara Illowsky was employed by Kampmeier and Knutsen as a law clerk during the summer of 2020, which was the summer following her first year of law school. Ms. Illowsky graduated with a law degree from Lewis and Clark Law School in Portland, Oregon in 2022. Ms. Illowsky is currently a staff attorney at Save the Sound, an environmental nonprofit organization

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

1    in the State of New York.

2        22.    Dakota Rash was employed by Kampmeier and Knutsen as a law clerk during the

3    summer of 2019, which was the summer following his second year of law school. Mr. Rash

4    graduated with a law degree from the University of Washington School of Law in Seattle,

5    Washington in 2020.

6        23.    I agree with the opinions expressed in the Declaration of David H. Becker that the

7    successful prosecution of this case required attorneys with specialized knowledge and expertise

8    in environmental litigation such as those possessed by the attorneys at Kampmeier & Knutsen.

9    Lawsuits like these are challenging because they require distinctive knowledge of complex

10   litigation, pertinent statutes like the ESA and NEPA, complex regulatory schemes, case law,

11   scientific principles, and technical operations. The litigation in this case is part of my

12   longstanding work with the Conservancy to tackle complex issues regarding the decline of

13   salmonids and other species integral to their Pacific Northwest ecosystem, including Southern

14   Resident killer whales. There are very few law firms and attorneys in this region that have the

15   particularized knowledge and expertise to pursue and prevail in a case of this nature and that are

16   willing and able (i.e., not conflicted out) to represent environmental non-profit organizations like

17   the Conservancy.

**HOURLY RATES**

18       24.    My law firm represents the Conservancy on a contingency-fee basis. Accordingly,

19   the Conservancy has not paid my firm attorneys' fees out of pocket for work in this case. Instead,

20   Kampmeier & Knutsen will be compensated for its work on this case only if the Conservancy is

21   awarded costs and fees under an applicable fee-shifting provision, or if the Conservancy settles

22   its claim for costs and attorneys' fees. Kampmeier & Knutsen has therefore not yet received any

**FIFTH KNUTSEN DECLARATION - 11**
**Case No. 2:20-cv-00417-RAJ-MLP**

compensation for the thousands of attorney hours it has devoted to this public interest lawsuit, which has lasted nearly five years and has taken significant effort and resources to bring to a successful close.

25.    The hourly rates sought for attorneys and law clerks at Kampmeier & Knutsen for their work on this case are summarized in Exhibit 1 to this declaration.

26.    It is my opinion that the hourly rates sought by the Conservancy and identified in Exhibit 1 are reasonable market rates in the Western District of Washington for attorneys with comparable experience, knowledge, and skills. The majority of my practice since 2007 has been environmental litigation in this District. As part of my firm's work for our clients, we often settle our clients' claims for costs and attorneys' fees. Because of that work, Paul Kampmeier and I continually evaluate current market rates for attorneys by reviewing court opinions on fee motions and through discussions with colleagues in the environmental litigation community. Additionally, in the course of negotiating cost and fee settlements on behalf of my clients I learn what hourly rates opposing counsel consider reasonable and acceptable. My experience and knowledge of attorney hourly rates in this District inform my opinion that the hourly rates Kampmeier & Knutsen is seeking are reasonable for attorneys with our experience.

27.    Additionally, the rates sought for attorneys at Kampmeier & Knutsen in this case are consistent with those recently affirmed by this Court. A motion for an award of fees and costs filed with this Court sought the following 2023 hourly rates: $650 for Brian Knutsen; $390 for Emma Bruden; $350 for Jessica Durney; $290 for Mariah Harrod; and $700 for Paul Kampmeier.[14] "Based on [the Conservancy's] supporting materials and the Court's own local

---

[14] *Wild Fish Conservancy v. Susewind*, No. 2:21-cv-00169-JNW, Dkt. 83 at 15 (W.D. Wash. Aug. 17, 2023), excerpts of declaration supporting motion are attached hereto as Exhibit 5.

**FIFTH KNUTSEN DECLARATION - 12**
**Case No. 2:20-cv-00417-RAJ-MLP**

knowledge, and the Defendants' failure to contest the proposed rates, the Court [found] that the requested rates [were] reasonable." *Wild Fish Conservancy v. Wash. Dep't of Fish & Wildlife*, No. 2:21-cv-00169-JNW, 2024 U.S. Dist. LEXIS 59027, at *13 (W.D. Wash. Mar. 30, 2024). The Conservancy is seeking those same rates affirmed by this Court for Kampmeier & Knutsen attorney work performed in this matter in 2023, while seeking lower rates for earlier work and higher rates for subsequent work.

28.     It is my opinion that attorneys that possess the distinctive knowledge and specialized skills that were necessary for the successful prosecution of this case were not and are not available at EAJA's statutory rates. The federal environmental litigation bar in the Pacific Northwest is a relatively small circle. I have practiced such law in this region for the last seventeen years. As I noted above, few law firms and attorneys have the particularized knowledge and expertise to pursue and prevail in a case of this nature within this District and are willing and able (i.e., not conflicted out) to represent environmental non-profit organizations such as the Conservancy. Those that do are unable or unwilling to do so at EAJA's statutory attorney rates. Notably, those rates are substantially below the market rates for experienced and skilled law firms and attorneys in the Western District of Washington that specialize in this area of the law. Further, cases of this nature are complex and tend to require extensive attorney time. My firm's significant investment of time in this case prevented us from taking on, and from developing, other cases that would have paid sooner and presented much less financial risk to the firm. Taking on a case like this at EAJA rates instead of working on other matters at market rates would therefore represent a substantial and unacceptable loss to a law firm.

### KAMPMEIER & KNUTSEN'S TIME AND COSTS RECORDS

29.     Kampmeier & Knutsen has a firm practice of keeping track of all time and costs

**FIFTH KNUTSEN DECLARATION - 13**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

contemporaneously or as close to contemporaneously as possible, and we explain this practice to associate attorneys and law clerks when they begin their employment with us. To the best of my knowledge, all employees at Kampmeier & Knutsen, including myself, adhere to that practice, and have done so in this case.

30.     Attached hereto as Exhibit 11 is a detailed log that I prepared using Kampmeier & Knutsen's time and costs records that compiles the hours incurred in this matter by the attorneys and law clerks at Kampmeier & Knutsen and the costs paid by Kampmeier & Knutsen. This log shows all contemporaneously kept time and costs incurred, and it is generally unaltered from the records that Kampmeier & Knutsen has maintained over the past several years with two exceptions. First, because law clerks at Kampmeier & Knutsen do not have access to the firm's files and instead maintain separate logs of their time, I integrated the law clerks' time records verbatim into the log and edited the format of their dates to be consistent with the firm's primary time log. Second, I added the column labeled "Hours Invoiced" where I eliminated or reduced time entries that appeared to be clerical, administrative, block billing, travel, or otherwise not billable/recoverable. The time entries listed in the "Hours Invoiced" column are those requested by the Motion, summarized in Exhibit 1, and reflect the time that Kampmeier & Knutsen would bill to a client.

31.     I exercise billing discretion in entering my time into Kampmeier & Knutsen's time logs. In doing so, I regularly exclude or reduce time spent on certain tasks, such as answering questions from our associate attorneys and law clerks, conferring with client representatives, and discussing legal issues and litigation strategy with co-counsel and colleagues. I also exclude or reduce time spent on tasks before entering it into the time logs where I believe the efforts were duplicative or unproductive. My time entries in Exhibit 11 to

**FIFTH KNUTSEN DECLARATION - 14**
**Case No. 2:20-cv-00417-RAJ-MLP**

this declaration are a product of this billing discretion; specifically, these exclusions and reductions occur when the contemporaneous time entries are made and are therefore reflected in the "Hours Work" column of the log. Kampmeier & Knutsen generally requests that its associate attorneys enter all their time into the firm's time logs without exercising billing discretion, though we recognize that attorneys may occasionally omit time for tasks that only take a few minutes or where multiple separate tasks take a few minutes.

32.     I reviewed all of Kampmeier & Knutsen's attorneys' and law clerks' time entries to make sure the hours for which recovery is sought are reasonable and to identify and eliminate or reduce any time that would not have been fully billed to a paying client if the Conservancy were paying attorneys' fees throughout the case, such as time spent by attorneys doing clerical or paralegal work, travel time, or time spent on matters that are unnecessary, redundant, or otherwise not compensable. These modifications are reflected in the "Hours Invoiced" column of the log attached hereto as Exhibit 11. Based on my review, it is my opinion that the time entries listed in the "Hours Invoiced" column of Exhibit 11, which are summarized in Exhibit 1, are time entries appropriately billed in this matter.

## MOOT ATTORNEYS

33.     Prior to the Ninth Circuit oral argument in this matter, Ms. Bruden and I held a moot argument with two colleagues: Peter M. ("Mac") Lacy and George Kimbrell. They are two of the most experienced and knowledgeable attorneys in the country on issues related to vacatur under the APA in environmental litigation. For Mr. Kimbrell *see, e.g.*, *Ctr. for Food Safety v. Regan*, 56 F. 4th 648, 660–73 (9th Cir. 2022); *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 38 F. 4th 34, 51–52 (9th Cir. 2022); *Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*, 966 F.3d 893, 929–30 (9th Cir. 2020); *Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*, 960 F.3d

**FIFTH KNUTSEN DECLARATION - 15**
**Case No. 2:20-cv-00417-RAJ-MLP**

1120, 1144–45 (9th Cir. 2020); *Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 857 F.3d 1030, 1042 (9th Cir. 2017); *Pollinator Stewardship Council v. U.S. Env't Prot. Agency*, 806 F.3d 520, 532–33 (9th Cir. 2015); *Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, No. CV-20-00555-TUC-DCB, 2024 U.S. Dist. LEXIS 20307, at *46–86 (D. Ariz. Feb. 6, 2024); *Coal. to Protect Puget Sound Habitat v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 3d 1217 (W.D. Wash. 2020), *aff'd*, 843 F. App'x 77 (9th Cir. 2021); *Ctr. for Env't Health v. Vilsack*, No. 15-cv-01690-JSC, 2016 U.S. Dist. LEXIS 79984, at *31–42 (N.D. Cal. Jun. 20, 2016). For Mr. Lacy *see, e.g.*, *Or. Nat. Desert Ass'n v. Rose*, 921 F.3d 1185 (9th Cir. 2019); *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 531 F.3d 1114, 1145 (9th Cir. 2008); *Or. Nat. Desert Ass'n v. Zinke*, 250 F. Supp. 3d 773 (D. Or. 2017); *Or. Nat. Desert Ass'n v. McDaniel*, No. CV 09-369-PK, 2011 U.S. Dist. LEXIS 45938, at *75–81 (D. Or. Apr. 28, 2011); *Or. Nat. Desert Ass'n v. Shuford*, Civ. No. 06-242-AA, 2008 U.S. Dist. LEXIS 128994, at *7–12 (D. Or. Jul. 8, 2008).

34.     The descriptions of Mr. Kimbrell's and Mr. Lacy's qualifications and time spent on this matter below are based on information they provided to me at my request.

35.     George Kimbrell is the co-executive director and legal director of the Center for Food Safety, a 501(c)(3) nonprofit with a mission of addressing the adverse impacts of industrial agriculture on public health and the environment. He is a 2004 *magna cum laude* graduate of Lewis and Clark Law School, where he also earned the school's Certificate in Environmental and Natural Resource Law for his specific study of environmental law. After graduation Mr. Kimbrell completed a clerkship with the Honorable Ronald M. Gould, United States Court of Appeals for the Ninth Circuit. In the subsequent nearly twenty years he has focused on, and continuously worked on, complex environmental litigation on behalf of the public interest. Since 2010, George has also taught as an adjunct at Lewis and Clark Law School, teaching *Food,*

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

*Agriculture, and Environmental Law.*

36.     Mr. Kimbrell has litigated dozens of complex environmental law cases and has developed a particular expertise in, among other areas, the statutes and legal standards central in this case, including NEPA, the ESA, the APA, and the administrative law remedy issue of vacatur. Numerous federal courts have long recognized his expertise in environmental litigation as both counsel in his own cases and as consulting counsel on fee issues. *See, e.g.*, *Geertson Seed Farms v. Johanns*, No. C 06-01075 CRB, 2011 U.S. Dist. LEXIS 129381, at *26–30 (N.D. Cal. Nov. 8, 2011); *Ctr. for Food Safety v. Vilsack*, No. C 08-00484 JSW, 2011 U.S. Dist. LEXIS 144428, at *42–43 (N.D. Cal. Oct. 12, 2011); *League of Wilderness Defs. v. U.S. Forest Serv.*, No. 3:10-cv-01397-SI, 2014 U.S. Dist. LEXIS 96335, at *38 (D. Or. July 15, 2014). In fact, Mr. Kimbrell was lead counsel in one of the recent leading cases from the Ninth Circuit's Appellate Commissioner on numerous fee issues and for which it was uncontested that he was entitled to market rates for his environmental litigation expertise. *See Nat'l Family Farm Coal. v. EPA*, No. 19-70115, 2023 U.S. App. LEXIS 28562, at *5–8 (9th Cir. Mar. 1, 2023).

37.     Below is a table summarizing Mr. Kimbrell's time in this matter:

| Date | Task(s) | Hours |
|------|---------|-------|
| 7/12/2024 | reading all the appellate briefs/cross-appeal briefs and the lower court decision to prepare for moot with BK; notes and make questions for moot | 2.5 |
| 7/15/2024 | reading all the appellate briefs/cross-appeal briefs and the lower court decision to prepare for moot with BK; notes and make questions for moot | 2.2 |
| 7/16/2024 | moot with Mac and Brian; talk thru questions | 1.3 |
| 7/18/2024 | watch arg (.9) and debrief cc's with Mac and Brian (.1) | 1.0 |
| 8/16/2024 | read decision; cc's regarding (0) | 0.0 |
| | Total: | 7.0 |

38.     Peter M. ("Mac") Lacy (J.D. 2001) is Senior Attorney for Oregon Natural Desert

**FIFTH KNUTSEN DECLARATION - 17**
**Case No. 2:20-cv-00417-RAJ-MLP**

Association ("ONDA"), in Portland, Oregon, overseeing all of the organization's legal work. In 23 years of practice, Mr. Lacy has developed expertise in natural resource law and litigation, administrative law and process, trial and appellate court practice, fee recovery, and client counseling unique to his role as long-time in-house counsel for ONDA. He has represented ONDA and dozens of its partners in lawsuits in federal district and appellate courts and the Oregon Supreme Court, and administrative actions pending before government agencies and administrative bodies. His legal, legislative, and policy work for ONDA focuses on conservation of wildlands and imperiled species on federally-managed public lands in eastern Oregon's high desert.

39.    Mr. Lacy earned his J.D. and Environment and Natural Resources Law Certificate from Lewis & Clark Law School in 2001, his Master of Science degree in Geography from the University of Wisconsin-Madison in 1998, and his Bachelor of Arts degree from Washington & Lee University in 1996 with a dual major in Geology and Anthropology. He clerked for Senior District Judge Owen M. Panner in the U.S. District Court for the District of Oregon, from June 2000 to August 2000. Among other professional activities, he has been an invited speaker on environmental law and public interest litigation issues at many continuing legal education programs and seminars; published papers on unique topics germane to his work for ONDA; and mentored dozens of law clerks and new lawyers including through the Oregon State Bar's New Lawyer Mentoring Program.

40.    Below is a table summarizing Mr. Lacy's time in this matter:

| Date | Task(s) | Hours |
|------|---------|-------|
| 5/23/2024 | Emails w/ BK re: serving as moot panelist prep for CA9 argument | 0.1 |
| 5/24/2024 | Confirm moot date and receipt of briefs for review | 0.1 |
| 7/10/2024 | Discuss panel draw w/ GK | 0.1 |
| 7/10/2024 | Emails w/ BK/GK re: panel assignment and re-schedule moot | 0.1 |
| 7/15/2024 | Review briefs and prepare notes/potential questions for moot | 2.5 |

**FIFTH KNUTSEN DECLARATION - 18**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

| | | |
|---|---|---|
| 7/15/2024 | Continue to review briefs and prepare notes/questions for moot | 2.7 |
| 7/17/2024 | Review 28(j) letter describing relevance of S.Ct. Loper Bright opinion | 0.1 |
| 7/15/2024 | Review S.Ct. Loper Bright opinion APA remedy discussion | 0.5 |
| 7/16/2024 | Prep for moot session, reviewing briefs and questions | 0.2 |
| 7/16/2024 | Moot session w/ BK, GK, EB | 2.0 |
| 7/18/2024 | Observe oral argument | 0.9 |
| 7/18/2024 | Email BK w/ post-argument reactions | 0.1 |
| 11/1/2024 | Emails w/ BK re: providing qualifications and hours for fee petition | 0.1 |
| 11/1/2024 | Prepare declaration/qualifications text for fee petition for BK | 0.6 |
| 11/1/2024 | Review and prepare timesheet for BK (0.1) | 0.0 |
| 11/1/2024 | Email qualifications text and timesheet to BK for petition (0.1) | 0.0 |
| | Total: | 10.1 |

41.     Courts have found that Mr. Kimbrell and Mr. Lacy have specialized knowledge and expertise in environmental litigation such that they should be awarded market rates under EAJA instead of the lower statutory rates. *See, e.g.*, *Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*, No. 19-70115, 2023 U.S. App. LEXIS 28562, at *5–8, 10–12 (9th Cir. Mar. 1, 2023) (awarding market rates under EAJA for both Mr. Kimbrell and Mr. Lacy); *Or. Natural Desert Ass'n v. Bureau of Land Mgmt.*, 223 F. Supp. 3d 1147, 1154–55 (D. Or. 2016) (awarding Mr. Lacy market rates under EAJA); *Geertson Seed Farms v. Johanns*, No. C 06-01075 CRB, 2011 U.S. Dist. LEXIS 129381, at *26–31 (N.D. Cal. Nov. 8, 2011) (awarding Mr. Kimbrell market rates under EAJA); *Ore. Nat. Desert Ass'n v. Ryan*, No. , 2011 U.S. Dist. LEXIS 27389, at *17–19 (D. Or. Mar. 16, 2011) (awarding Mr. Lacy market rates under EAJA).

42.     Based on my knowledge of attorney rates in the Western District of Washington, it is my opinion that $700 is a reasonable 2024 hourly rate for Mr. Kimbrell. That is the same hourly rate requested by the Conservancy for my 2024 work on this case and Mr. Kimbrell and I have similar experience and expertise, having graduated from Lewis and Clark Law School together in 2004 and litigated environmental and natural resource cases since. It is also my opinion that $750 is a reasonable hourly rate for 2024 for Mr. Lacy. That is the same hourly rate

**FIFTH KNUTSEN DECLARATION - 19**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

1  that the Conservancy is requesting for Paul Kampmeier's 2024 work on this case. Mr. Lacy and

2  Mr. Kampmeier have similar experience and expertise, having both graduated law school in

3  2001 and practiced environmental litigation since.

**REASONABLENESS OF HOURS INCURRED**

43.    Exhibit 1, attached hereto, includes a table that summarizes all attorney and law

clerk hours for which an award of fees is sought.

44.    After reviewing my firm's timesheets in this matter, those of my co-counsel at

Corr Cronin, and those of Mr. Kimbrell and Mr. Lacy for the appellate moot, I am of the opinion

that all the hours that I and the Conservancy's other attorneys and law clerks expended on this

case were reasonable and necessary for the successful resolution. As explained in more detail

below, this was an important, difficult, and precedent-setting case without a blueprint that the

Conservancy's counsel could follow from case initiation to judgment. This was not a routine

enforcement action. Moreover, the case set our client—with limited resources—against the

United States of America and its U.S. Department of Justice and in-house agency attorneys, the

State of Alaska and its government attorneys, and the Alaska Trollers Association, each of which

enjoys exponentially greater resources than the Conservancy—resources that the defendants and

defendant-intervenors continuously brought to bear throughout the nearly five years of litigation.

45.    This lawsuit involved matters of substantial importance to the Conservancy and

its members and to the public as a whole. The continued decline of SRKWs and threatened

salmonids is a matter of paramount concern throughout the Pacific Northwest. The Conservancy

brought this case out of concern that NMFS, through the challenged 2019 biological opinion

("SEAK BiOp"), approved Southeast Alaska salmon fisheries and, as mitigation for the fisheries,

increased hatchery production in the Pacific Northwest without adequate reviews and restrictions

**FIFTH KNUTSEN DECLARATION - 20**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

1    under the ESA and without any public processes required by NEPA.

2        46.    The litigation, including the administrative record and the declarations filed with

3    the Court, was replete with scientific and technical studies and analysis. The issues addressed

4    therein included the effects of increased hatchery production on wild salmonid populations and

5    on SRKW's prey abundance, and the effects of the Southeast Alaska salmon fisheries on prey

6    abundance in the Pacific Northwest. The legal issues were equally complex, involving the

7    interplay between the ESA, NEPA, the APA, the Magnuson-Stevens Fishery Conservation and

8    Management Act, and the Pacific Salmon Treaty. NMFS and the defendant-intervenors added

9    additional legal complexities by repeatedly challenging the Conservancy's constitutional

10    standing to bring the claims, despite the thorough standing declarations submitted.

11        47.    I worked hard to manage this case efficiently and without unnecessary

12    redundancy of attorney work, regularly conferring to divide the work and assign it to attorneys

13    with the appropriate skills and experience for the particular task. While I endeavor to delegate to

14    associates or law clerks all tasks that do not require a senior attorney, Kampmeier and Knutsen is

15    a small firm with limited resources and there are times, albeit infrequent, when only a senior

16    attorney is available to timely complete a project that may have otherwise been delegated to a

17    more junior attorney. I worked to supervise all attorneys and check their progress, and to limit

18    redundancies as much as possible. Some redundancy is necessary for managing any case

19    properly: supervising attorneys need to review associate attorneys' work product; attorneys need

20    to confer to plan and execute projects; and even seasoned attorneys benefit from discussing

21    strategy with others and having others review written work product before filing it with the

22    Court.

23        48.    The Conservancy also sought to conserve resources by repeatedly conferring with

24

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

1    NMFS and the intervenor-defendants in an effort to avoid disputed motions. Similarly, the

2    Conservancy elected not to bring certain disputes to the Court to minimize litigation efforts. For

3    example, review of the Conservancy's ESA citizen suit claim is not limited to NMFS's

4    administrative record, but the Conservancy stipulated to such review to avoid unnecessary

5    motion practice. *See* Dkt. 31 at 3; *Wild Fish Conservancy v. Pritzker*, Case No. C16-0223-JCC,

6    2016 U.S. Dist. LEXIS 191022, at *3–4 n.1 (W.D. Wash. June 30, 2016).

7         49.    Additional factors contributed to the attorney hours incurred by the Conservancy.

8    For example, NMFS and the defendant-intervenors filed three separate sets of briefs at every

9    stage of the case, requiring the Conservancy's attorneys to review, evaluate, and respond to three

10   separate sets of arguments.

11        50.    It is also my opinion that the hours expended on this case by the Conservancy's

12   attorney were reasonable given the ultimate outcome. As explained in detail in the declarations

13   by Emma Helverson and David Becker filed in support of the Motion, the Conservancy prevailed

14   on all of its claims and obtained the primary relief it sought. Notably, the Court declared that that

15   NMFS violated the ESA and NEPA in approving Southeast Alaska salmon fisheries and that

16   NMFS violated both statutes in adopting the prey increase program, and the Court remanded the

17   matter to NMFS to remedy those violations. As a result, NMFS issued two new biological

18   opinions ("BiOps") and undertook two public NEPA processes culminating in two

19   environmental impact statements ("EIS"). Those two new BiOps include new terms and

20   conditions that are more protective of ESA-listed SRKWs and Chinook salmon than what was

21   included in the SEAK BiOp found unlawful by the Court.

22        51.    Attached hereto are true and accurate copies of the following ESA and NEPA

23   documents, prepared by NMFS in response to the Court's remand order in this matter, that I

**FIFTH KNUTSEN DECLARATION - 22**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

downloaded from websites maintained by NMFS:

      a.  Exhibit 6: NMFS, Record of Decision for the Environmental Impact Statement for the Issuance of an Incidental Take Statement under the Endangered Species Act for Salmon Fisheries in Southeast Alaska Subject to the Pacific Salmon Treaty and Funding to the State of Alaska to Implement the Pacific Salmon Treaty (Nov. 21, 2024);

      b.  Exhibit 7: NMFS, Endangered Species Act (ESA) Section 7(a)(2) Biological Opinion and Magnuson-Stevens Fishery Conservation and Management Act Essential Fish Habitat Response, Consultation on the Delegation of Management Authority for Specified Salmon Fisheries in the EEZ to the State of Alaska and Federal Funding to the State of Alaska to Implement the 2019 Pacific Salmon Treaty Agreement, Consultation No. WCRO-2024-02314 (Sept. 25, 2024) (excerpts);

      c.  Exhibit 8: NMFS, Record of Decision for the Programmatic Final Environmental Impact Statement on Expenditure of Funds to Increase Prey Availability for Southern Resident Killer Whales (Nov. 21, 2024); and

      d.  Exhibit 9: NMFS, Endangered Species Act (ESA) Section 7(a)(2) Biological Opinion and Magnuson-Stevens Fishery Conservation and Management Act Essential Fish Habitat Response, NOAA's National Marine Fisheries Service's Preferred Alternative for Expenditure of Pacific Salmon Treaty Funds to Increase Prey Availability for Southern Resident Killer Whales, Consultation Number: WCRO-2024-00664 (Sept.

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

25, 2024) (excerpts).

52.    The Conservancy ultimately did not prevail in obtaining interim relief of vacatur during the remand period. However, its zealous approach to the litigation, including the appeal, helped ensure prompt completion of the new BiOps and NEPA processes, limiting the remand period as much as possible. It is my experience that litigation pressure is often key to ensuring that agencies move forward in a timely manner with regulatory processes, such as those under the ESA and NEPA. For example, I have worked on matters where NMFS failed to make ESA-listing decisions by the statutory deadlines and, in those instances, issuance of a pre-suit notice letter prompted the agency to make the required findings during the notice period. As another example, I sued NMFS on behalf of the Conservancy in 2016 alleging that the agency was violating the ESA by relying on an outdated 1999 BiOp for the agency's funding of hatchery programs throughout the Columbia River under the Mitchell Act. The pleadings further alleged that NMFS was violating NEPA, noting that the agency had completed an EIS in 2014 but had failed to complete the NEPA process with its record of decision. After years of delay, NMFS promptly completed the NEPA and ESA processes in January 2017. As a final example, I represented the Conservancy in a case filed in 2012 alleging that NMFS and others were violating the ESA and NEPA by implementing hatchery programs described in a 2008 plan as part of the Elwha Dam removal project without consulting under section 7 of the ESA or undertaking NEPA processes for the hatchery plan. After failing to comply with the ESA or NEPA for several years, NMFS completed ESA and NEPA processes for the hatchery programs within around nine months of the Conservancy filing its complaint.

53.    In sum, given the factual and legal complexity of this case, the contentious nature of the claims and defenses, the vociferousness in which the defendants and defendant-intervenors

**FIFTH KNUTSEN DECLARATION - 24**
**Case No. 2:20-cv-00417-RAJ-MLP**

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

litigated this matter, and the ultimate outcome of the lawsuit, it is my opinion that the Conservancy's requested attorney and law clerk hours are entirely reasonable.

## REASONABLENESS OF COSTS AND EXPENSES

54.     Attached hereto as Exhibit 2 is a summary that I prepared of the costs and expert fees sought by the Conservancy in this matter.

55.     I agree with the opinions expressed by David Becker in his declaration submitted in support of the Motion that the costs and expenses incurred in this matter were appropriate and reasonable. The costs for items such as transcripts, filing fees, postage, and travel were necessary for the successful prosecution of this. Similarly, the expert costs were reasonable and even modest given the extent of technical issues and expert declarations involved.

56.     Attached hereto as Exhibit 10 are the invoices paid for the Conservancy's experts' work in this matter. The Conservancy was able to maintain modest costs, in part, because some of its experts were willing to work on this matter without charging for all or, in the case of Dr. Deborah Giles, any of their time.

57.     Attached hereto as Exhibit 12 are true and accurate excerpts of the First Cross-Appeal Brief filed by Federal Defendants in the appeal of this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of December 2024 at Portland, Oregon.

s/ Brian A. Knutsen
Brian A. Knutsen, WSBA No. 38806

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

**FIFTH KNUTSEN DECLARATION - 25**
**Case No. 2:20-cv-00417-RAJ-MLP**

# EXHIBIT 1

| SUMMARY OF ATTORNEY FEES | | | | | |
|---|---|---|---|---|---|
| **Kampmeier & Knutsen Attorney Fee Summary** | | | | | |
| **Attorney (J.D. received)** | **Year** | **Years Experience** | **Rate** | **Hours** | **Fees** |
| Brian Knutsen (2004) | 2019 | 15 | $500.00 | 54.9 | $27,450.00 |
| | 2020 | 16 | $535.00 | 520.1 | $278,253.50 |
| | 2021 | 17 | $580.00 | 449.2 | $260,536.00 |
| | 2022 | 18 | $610.00 | 319.7 | $195,017.00 |
| | 2023 | 19 | $650.00 | 634.4 | $412,360.00 |
| | 2024 | 20 | $700.00 | 352.6 | $246,820.00 |
| Emma Bruden (2016) | 2019 | 3 | $290.00 | 1.8 | $522.00 |
| | 2020 | 4 | $300.00 | 225 | $67,500.00 |
| | 2021 | 5 | $320.00 | 359.6 | $115,072.00 |
| | 2022 | 6 | $350.00 | 251.6 | $88,060.00 |
| | 2023 | 7 | $390.00 | 277 | $108,030.00 |
| | 2024 | 8 | $430.00 | 132.6 | $57,018.00 |
| Erica Proulx (2022) | 2024 | 2 | $310.00 | 88.6 | $27,466.00 |
| Jessica Durney (2018) | 2020 | 2 | $260.00 | 107.4 | $27,924.00 |
| | 2021 | 3 | $300.00 | 259.6 | $77,880.00 |
| | 2022 | 4 | $345.00 | 150.7 | $51,991.50 |
| | 2023 | 5 | $350.00 | 0 | $0.00 |
| Marriah Harrod (2022) | 2022 | 0 | $275.00 | 12.6 | $3,465.00 |
| | 2023 | 1 | $290.00 | 105.1 | $30,479.00 |
| | 2024 | 2 | $310.00 | 25 | $7,750.00 |
| Paul Kampmeier (2001) | 2019 | 18 | $545.00 | 0.4 | $218.00 |
| | 2020 | 19 | $560.00 | 5.7 | $3,192.00 |
| | 2021 | 20 | $595.00 | 10.2 | $6,069.00 |
| | 2022 | 21 | $650.00 | 7.8 | $5,070.00 |
| | 2023 | 22 | $700.00 | 12.6 | $8,820.00 |
| | 2024 | 23 | $750.00 | 13.9 | $10,425.00 |
| | | | | Total Attorney Fees: | $2,117,388.00 |
| Dakota Rash (2020) | 2019 | Law Clerk | $168.00 | 60.9 | $10,231.20 |
| Dara Illowsky (2022) | 2020 | Law Clerk | $168.00 | 196.2 | $32,961.60 |
| | | | | Total Law Clerk Fees: | $43,192.80 |
| **Total Kampmeier & Knutsen Attorney and Law Clerk Fees:** | | | | | **$2,160,580.80** |

**FIFTH KNUTSEN DECLARATION - 27**
**Case No. 2:20-cv-00417-RAJ-MLP**

| Corr Cronin LLP Attorney Fee Summary | | | | | |
|---|---|---|---|---|---|
| Attorney (J.D. received) | Year | Years Experience | Rate | Hours | Fees |
| Eric Lindberg (2010) | 2019 | 9 | $205.25 | 16.9 | $3,468.73 |
| | 2020 | 10 | $207.78 | 71.1 | $14,773.16 |
| | 2021 | 11 | $217.54 | 33.3 | $7,244.08 |
| | 2022 | 12 | $234.95 | 9.2 | $2,161.54 |
| | 2023 | 13 | $244.62 | 3 | $733.86 |
| | 2024 | 14 | $244.62 | 4.1 | $1,002.94 |
| Benjamin Byers (2017) | 2019 | 2 | $205.25 | 23.6 | $4,843.90 |
| | 2020 | 3 | $207.78 | 99.1 | $20,591.00 |
| | 2021 | 4 | $217.54 | 34.7 | $7,548.64 |
| | 2022 | 5 | $234.95 | 4.5 | $1,057.28 |
| Total Corr Cronin Attorney Fees: | | | | | $63,425.12 |
| Moot Attorney Fee Summary | | | | | |
| Attorney (J.D. received) | Year | Years Experience | Rate | Hours | Fees |
| George Kimbrell (2004) | 2024 | 20 | $700.00 | 7 | $4,900.00 |
| Peter M. Lacy (2001) | 2024 | 23 | $750.00 | 10.1 | $7,575.00 |
| Total Moot Attorney Fees: | | | | | $12,475.00 |
| Total Attorney and Law Clerk Fees: | | | | | $2,236,480.92 |

# EXHIBIT 2

| SUMMARY OF COSTS AND EXPERT FEES | | |
|---|---|---|
| **Costs Paid by Kampmeier & Knutsen, PLLC** | | |
| **Date** | **Item** | **Case Costs** |
| 1/9/2020 | postage for notice letter | $38.00 |
| 3/18/2020 | district court filing fee | $400.00 |
| 3/19/2020 | postage for service of summonses and complaint | $58.80 |
| 4/22/2020 | FedEx costs for copying and mail judge's copies of PI filings | $86.26 |
| 6/16/2020 | invoice for transcript from hearing before Magistrate on motion for preliminary injunction | $277.95 |
| 12/23/2020 | postage to send WFC flashdrive with materials from NMFS re: PST funds | $5.59 |
| 6/10/2021 | Invoice for Expert Work from Gordon Luikart | $3,080.00 |
| 8/19/2021 | invoice for transcript from summary judgment hearing | $331.50 |
| 8/31/2021 | second invoice for transcript from summary judgment hearing | $8.50 |
| 5/12/2022 | invoice from Dr. Luikart for 5/1/2022 invoice for work on third declaration | $990.00 |
| 11/7/2022 | invoice for transcript of hearing on remedy motion | $419.65 |
| 5/4/2023 | Ninth Circuit Cross Appeal filing fee | $505.00 |
| 12/6/2023 | invoice for copying and delivery of first appellate brief and supplemental excerpts of record | $760.83 |
| 3/1/2024 | invoice for copying and delivery of appellate reply brief and further excerpts of record | $162.09 |
| 5/16/2024 | flight to SF for 9th Circuit argument in July | $712.38 |
| 5/19/2024 | hotel reservations for 9th circuit argument in San Fransisco | $835.56 |
| 7/18/2024 | transportation costs for EB and BAK for 9th Circuit argument in San Francisco (Uber/BART/Taxis) | $208.87 |
| 7/18/2024 | meal costs for EB and BAK for 9th Circuit argument in San Francisco | $282.10 |
| 11/22/2024 | invoice from D. Becker for declaration iso fee petition | $14,925.00 |
| **Total Costs Paid by Kampmeier & Knutsen:** | | **$24,088.08** |
| **Costs Paid by Corr Cronin, LLP** | | |
| | Teleconference and Legal Research Services | **$658.00** |

**FIFTH KNUTSEN DECLARATION - 30**
**Case No. 2:20-cv-00417-RAJ-MLP**

| Costs Paid by Wild Fish Conservancy | | |
|---|---|---|
| **Invoice Date** | **Item** | **Payee** |
| 4/18/2020 | Invoice from Dr. Robert Lacy; PVA analysis for SRKWs | $4,000.00 |
| 6/7/2022 | Invoice from Dr. Hans Radtke; Economic analysis and declaration work | $3,000.00 |
| 6/7/2022 | Invoice from The Research Group (Shannon Davis) Economic modeling in collaboration with Dr. Radtke | $9,000.00 |
| **Total Costs Paid by Wild Fish Conservancy:** | | **$16,000.00** |
| **Wild Fish Conservancy In-House Expert Fees** | | |
| **Expert** | **Work Performed** | **Fees** |
| N. Gayeski, Ph.D. | prepared declaration in support of Ninth Circuit motion for injunction pending appeal | **$1,664.00** |
| **Total Costs and Expert Fees:** | | **$42,410.08** |

# EXHIBIT 3

Honorable John C. Coughenour

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
9                                   AT SEATTLE

10

11    WILD FISH CONSERVANCY,

12              Plaintiff,

13        v.                                              C08-0156-JCC

14    UNITED STATES ENVIRONMENTAL                          **ORDER**
      PROTECTION AGENCY, *et al.*,
15
                Defendants,
16
          and
17
      ICICLE ACQUISITION SUBSIDIARY, LLC,
18    *d.b.a.* AMERICAN GOLD SEAFOOD,

19              Intervenor.

20

21          This matter comes before the Court on Plaintiff's motion for an award of attorney fees and

22    expenses (Dkt. No. 71), and the parties' stipulated fee agreement. (Dkt. No. 74). Having thoroughly

23    considered Plaintiff's motion, the parties' stipulated agreement, and the relevant record, the Court

24    hereby GRANTS the application for the reasons explained below.

25

26    ORDER, C08-0156-JCC
      Page 1

**FIFTH KNUTSEN DECLARATION - 33**
**Case No. 2:20-cv-00417-RAJ-MLP**

1    **I.      BACKGROUND**

2          Plaintiff commenced this action on January 30, 2008, seeking declaratory and injunctive relief

3    against the United States Environmental Protection Agency (EPA) and the National Marine Fisheries

4    Service. (Complaint (Dkt. No. 1)). Plaintiff argued that the EPA had violated the Clean Water Act and

5    the Administrative Procedures Act by approving regulations that were inconsistent with the Act's

6    requirements, and that the EPA and the Fisheries Service had violated the Endangered Species Act by

7    ignoring the best available scientific and commercial data during an interagency consultation process.

8    (Second Amended Complaint 12-18 (Dkt. No. 27)).

9          Over the course of the next two years, Plaintiff submitted two amended complaints (Dkt. Nos. 14

10   & 27), filed a motion to complete and supplement the administrative record (Dkt. No. 44), and filed a

11   motion for summary judgment (Dkt. No. 52). Both the motion to complete and supplement the

12   administrative record and the motion for summary judgment relied on hundreds of pages of exhibits and

13   declarations. Plaintiff conducted the litigation without the support of a large team of attorneys and

14   without significant financial resources: As a non-profit organization dedicated to the conservation of

15   Puget Sound ecosystems that support wild-fish populations, Plaintiff employs only sixteen individuals,

16   and has a net worth of less than seven million dollars. (Hersh Decl. 3 (Dkt. No. 71-2)).

17         Throughout the litigation, Plaintiff nonetheless enjoyed the help of attorneys with extensive

18   experience litigating environmental issues: Mr. Brian Knutsen has devoted the majority of his career to

19   environmental litigation, having served as lead counsel in several cases involving environmental

20   statutes. (Knutsen Decl. 3 (Dkt. No. 71-1)). Mr. Richard Smith has similar experience, having advocated

21   for environmental organizations like the Seattle Audubon Society, Defenders of Wildlife, and the

22   Washington Environmental Council. (*Id.* 4). Finally, Ms. Bridget Baker-White has also devoted

23   substantial time to the environmental-law arena, including her work with the Appalachian Research and

24   Defense Fund, a legal-aid practice dedicated to environmental issues that arise from coal mining. (*Id.* 5).

25

26   ORDER, C08-0156-JCC
     Page 2

**FIFTH KNUTSEN DECLARATION - 34**
**Case No. 2:20-cv-00417-RAJ-MLP**

1    On April 28, 2010, this Court issued an order granting Plaintiff's motion for summary judgment

2    and denying Defendant's cross-motion for summary judgment. (Dkt. No. 66). The Court therefore

3    vacated the 2008 decision of the Environmental Protection Agency to approve Washington State's

4    water-quality standards dealing with salmon farms and ordered the Agency and the Fisheries Service to

5    reconsider whether formal consultation is required. (Order 12 (Dkt. No. 66)).

6    **II.    RELEVANT LAW**

7    Plaintiff moves for an award of attorney fees under both the Equal Access to Justice Act, and the

8    Endangered Species Act. The parties have agreed that Plaintiff is entitled to an award of $138,000 under

9    either theory. For the reasons explained below, the Court agrees.

10   **A.    Equal Access to Justice Act**

11   Under the Equal Access to Justice Act, any non-profit organization with a net worth of less than

12   sevenC million dollars and which employs fewer than five hundred individuals is presumptively entitled

13   to court costs and reasonable attorney fees whenever it prevails in an action against the United States. 28

14   U.S.C. § 2412(d)(1)(A). An award of fees to such a prevailing party is inappropriate only if the United

15   States establishes that its position was substantially justified or if other circumstances make an award

16   unjust. *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1230 (9th Cir. 1990).

17   Attorney fees under the Act are generally limited to one-hundred twenty-five dollars per hour

18   unless special factors merit higher fees. 28 U.S.C. § 2412(d)(2)(A)(ii). Such factors include the limited

19   availability of qualified attorneys. *Id.* Under Ninth Circuit precedent, a party moving for an award of

20   higher attorney fees must satisfy three requirements: "First, the attorney must possess distinctive

21   knowledge and skills developed through a practice specialty. Second, those distinctive skills must be

22   needed in the litigation. Last, those skills must not be available elsewhere at the statutory rate." *Love v.*

23   *Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991). Environmental litigation is a specialized area of law

24   requiring distinctive knowledge. *Id.*

25

26   ORDER, C08-0156-JCC
Page 3

1    **B.    The Endangered Species Act**

2           This Court has the discretion to award attorney fees and litigation costs to any party bringing suit

3    under the citizen-suit provision of the Endangered Species Act, whenever such award is "appropriate."

4    16 U.S.C. § 1540(g)(4). For an award to be appropriate, the party must have "some degree of success on

5    the merits." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983). The statute requires that attorney

6    fees be "reasonable." 16 U.S.C. § 1540(g)(4).

7    **III.    DISCUSSION**

8           Because this Court concluded that the Environmental Protection Agency and the Fisheries

9    Service violated the Administrative Procedures Act by failing to use the best available scientific data

10   (Order 12 (Dkt. No. 66)), and because Plaintiff is non-profit organization with a net worth of less than

11   seven million dollars that employs fewer than five hundred individuals, an award of attorney fees is

12   presumptively appropriate under the Equal Access to Justice Act. *See Bay Area Peace Navy*, 914 F.2d at

13   1230. Because the United States nowhere argues that its position in this litigation was "substantially

14   justified," Plaintiff is entitled to reasonable attorney fees. *See* 28 U.S.C. § 2412(d)(1)(A).

15          Because this Court also vacated the 2008 decision of the Environmental Protection Agency to

16   approve Washington State's water-quality standards dealing with salmon farms (Order 12 (Dkt. No.

17   66)), Plaintiff achieved "some degree of success on the merits" in a suit that arose under the citizen-suit

18   provision of the Endangered Species Act. *See Ruckelshaus*, 463 U.S. at 694. An award of attorney fees

19   is therefore also appropriate under the Endangered Species Act. *See* 16 U.S.C. § 1540(g).

20          **A.    Reasonable Attorney Fees**

21          This litigation involved a specialized area of law requiring distinctive knowledge. Plaintiff's

22   briefing demonstrates that its attorneys were well-versed in the provisions of the Clean Water Act, the

23   Endangered Species Act, and the Administrative Procedures Act, as well as the respective

24   responsibilities of the Environmental Protection Agency and the Fisheries Service under each of the

25

26   ORDER, C08-0156-JCC
     Page 4

**FIFTH KNUTSEN DECLARATION - 36**
**Case No. 2:20-cv-00417-RAJ-MLP**

several acts. The briefing also demonstrates that Plaintiff's attorneys were well-versed in the technical and scientific issues specific to this case, including the scientific literature which argues that salmon net pens create specific dangers for wild-salmon populations. (*See, e.g.,* Motion (Dkt. No. 52)).

Because Plaintiff's attorneys possessed distinctive knowledge and skills developed through a practice specialty, because such knowledge and skills were required to litigate this matter, and because such knowledge and skills are unavailable for one-hundred twenty-five dollars per hour, Plaintiff is entitled to an award of attorney fees higher than the presumptively reasonable fee provided under the terms of the Equal Access to Justice Act. *See Love*, 924 F.2d at 1496. An award of more than one-hundred twenty-five dollars per hour is also "appropriate" under the Endangered Species Act. *See* 16 U.S.C. § 1540(g)(4).

**IV.    CONCLUSION**

For the aforementioned reasons, the Court hereby GRANTS Plaintiff's motion for attorney fees and expenses. (Dkt. No. 71). Consistent with the terms of the parties' stipulated fee agreement (Dkt. No. 74), the Court therefore ORDERS Defendant to compensate Plaintiff for litigation costs and attorney fees in the amount of $138,000.

SO ORDERED this 20th day of September, 2010.

_____
JOHN C. COUGHENOUR
United States District Judge

ORDER, C08-0156-JCC
Page 5

**FIFTH KNUTSEN DECLARATION - 37**
**Case No. 2:20-cv-00417-RAJ-MLP**

# EXHIBIT 4

## PROFESSIONAL LICENSES

**Washington State Bar Association**, 2022, No. 60155

## EDUCATION

**University of Washington School of Law** | Seattle, Washington
*Juris Doctor*, High Honors, June 2022 | Environmental Law Concentration | Rank: 4/155 (Top 5%) |
GPA: 3.94/4.0
*Washington Law Review*, Managing Editor
Pro Bono Honors Society | Order of the Coif
CALI Awards (highest grade): Constitutional Law I (Spring 2020); Constitutional Law II (Winter 2022);
Family Law (Spring 2022)
Environmental Law Society, 3L Representative (2021–2022); Vice President (2020–2021)
Public Interest Law Association | Women's Law Caucus | Center for Human Rights and Justice

**University of Toledo** | Toledo, Ohio
*B.A., English "With Distinction" (American Literature)*, summa cum laude, May 2012 | GPA: 4.0/4.0
*Minors*: Arabic and Criminal Justice

## LEGAL EXPERIENCE

**Kampmeier & Knutsen, PLLC**                                                July 2024 – Present
*Associate Attorney*
Represent nonprofit environmental clients in federal environmental law matters, including matters
involving the Clean Water Act, the Endangered Species Act, and the Administrative Procedure Act. Advise
clients and engage in work relevant to all stages of litigation.

**University of Washington School of Law**                        October 2022 – July 2024
*Diehl Clinical Fellow in Environmental Law, Regulatory Environmental Law & Policy Clinic*
Served nonprofit environmental clients in federal environmental law matters. Represented and advised
plaintiffs in impact litigation related to federal pollution control statutes. Drafted, filed, and served 60-day
notice of intent to sue, complaint, and motion for summary judgment. Interviewed organization's members
and prepared affidavits. Documented clients' relief goals and recommended a relief strategy. Led efforts
related to scheduling and discovery, including development of parties' discovery plan. Researched legal
and factual issues and drafted petitions for listing under the Endangered Species Act. Researched and wrote
memoranda on federal law issues, including standing, American Indian Law, and the Administrative
Procedure Act.

**Regulatory Environmental Law & Policy Clinic**            September 2021 – March 2022
*Law Student Intern, University of Washington School of Law*
Researched and advised clinic clients on state and federal environmental issues, including the Endangered
Species Act, the National Environmental Policy Act, the State Environmental Policy Act, and other forest
management issues. Studied and practiced environmental law, policy, and research skills in a hands-on
learning environment.

**Earthjustice** | Chicago, Illinois                                        June 2021 – August 2021
*Law Clerk, Coal Program*
Researched and wrote memoranda on state and federal environmental issues, including the Clean Air Act,
the Resource Conservation and Recovery Act, the Administrative Procedure Act, and the Federal Rules of

Appellate Procedure. Contributed draft sections for an opening brief on appeal. Collaborated with several Earthjustice offices. Participated in the Summer Clerk White Caucus program.

**Crag Law Center** | Portland, Oregon                    September 2020 – December 2020
*Legal Extern*
Researched and wrote memoranda on state and federal environmental issues such as land use laws and procedures, Federal Rules of Civil Procedure, and the Endangered Species Act. Wrote motions, including for leave to supplement and in opposition to stay. Assisted with annual fundraising event.

**Seattle City Attorney's Office** | Seattle, Washington                    June 2020 – August 2020
*Legal Intern, Torts Section*
Researched and wrote memoranda on issues such as jury verdicts and settlements, witness demeanor during deposition, and expert testimony. Drafted motions for protective order and summary judgment. Reviewed and edited complaints and authority memoranda. Attended, prepared documents for, and tracked mediations, depositions, expert consults, and site visits.

## ADDITIONAL EXPERIENCE

**Hydro Flask** | Bend, Oregon                    August 2016 – August 2019
*eCommerce Communications Specialist*
Awarded the Helen of Troy Power of One CEO Award (2018) for eCommerce teamwork and the direct-to-consumer (DTC) channel's unprecedented growth with minimal resources. Managed DTC reporting, budget, website development, and email marketing. Briefed marketing campaigns, led integrated marketing efforts, and supervised calendars and creative. Initiated third-party partnerships and shepherded contracts.

**Brilliance Publishing** | Grand Haven, Michigan                    May 2012 – August 2016
*Associate Editor*
Acquired titles for publication, cultivated category expertise, wrote category strategies, and researched industry trends. Oversaw procurement of manuscripts and cover art, introduced practices to reduce costs, increased efficiencies, and fostered publisher and author relationships. Promoted after serving as Creative Materials Coordinator and Senior Creative Materials Coordinator for three years.

# EXHIBIT 5

HONORABLE JAMAL N. WHITEHEAD

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILD FISH CONSERVANCY, | Case No. 2:21-cv-00169-JNW |
| Plaintiff, | |
| v. | DECLARATION OF CLAIRE TONRY |
| SUSEWIND, *et al.*, | |
| Defendants. | |

I, Claire Tonry, declare the following on the basis of personal knowledge to which I am competent to testify:

1.      I submit this Declaration in support of Plaintiff Wild Fish Conservancy's ("WFC") motion for an award of litigation expenses. I have been asked to provide my opinions about the reasonableness of Plaintiff's counsels' hourly rates, the reasonableness of the hours expended, and the overall reasonableness of the compensation sought in the above-captioned case. In addition to the materials mentioned below, in coming to my conclusions I have reached in this Declaration, I have considered the following documents and information: (a) Docket sheet and specific docket entries relevant to understanding the overall case and its achievements, such as key motions, orders of the Court, and the final settlement; (b) the timesheets of all timekeepers for Kampmeier &

1

**OPINIONS**

2

**<u>Reasonableness of Hourly Rates</u>**

3

      11.    I am very familiar with Kampmeier & Knutsen PLLC, having known Paul

4

Kampmeier and Brian Knutsen and their work since before they founded the firm. Kampmeier &

5

Knutsen PLLC is highly regarded in the environmental law community, particularly for its unique

6

7

expertise in the science and law relevant to Pacific Northwest salmon hatchery and net pen

8

litigation—a niche within the niche of environmental protection litigation. I am not aware of any

9

plaintiffs' law firm that has more expertise in this subject than Kampmeier & Knutsen PLLC.

10

      12.    I have worked closely with Brian Knutsen on and off for over a decade, including

11

12

as co-counsel in *Waste Action Project v. Draper Valley Holdings LLC*, mentioned above, and

13

*Resendez v. Precision Castparts Corp.*, No. 16cv16164, an environmental class action in

14

Multnomah County, Oregon, which in 2022 produced the largest settlement of its kind in state

15

16

history. Knutsen has earned his reputation as an excellent environmental litigator.

17

      13.    $650 is a reasonable hourly rate for Knutsen that is in line with market rates in this

18

district. The range of "$475 to $ 760 per hour" has long been held reasonable for Seattle attorneys

19

by multiple senior judges of this Court. *E.g.*, *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322,

20

21

1326-27 (W.D. Wash. 2009) (Judge Coughenour noting that Judge Lasnik approved the same rates

22

in 2008). The lower end of that range, $475, is equivalent to more than $686 today.[1]

23

---

24

[1] Throughout this declaration, I make inflation adjustments calculated using the national consumer

25

price index inflation calculator published by the Bureau of Labor Statistics, CPI Inflation Calculator, https://data.bls.gov/cgi-bin/cpicalc.pl. Using the nation consumer price index is

26

conservative because inflation in this district is even higher than the national average used for this

27

calculation. *See* Christine Clarridge, *Seattle has 3rd highest inflation in nation*, (Jan. 17, 2023) https://www.axios.com/local/seattle/2023/01/17/seattle-3rd-highest-inflation; Alison Saldanha,

28

*You're not imagining it — costs in Seattle rose faster than San Francisco*, Seattle Times (June 20, 2023)    https://www.seattletimes.com/business/youre-not-imagining-it-life-in-seattle-costs-the-

29

same-as-san-francisco/ ("In the last three years, costs in the Seattle metro area climbed over 20%"

14.    I am familiar with Emma Bruden's high-quality work product from working with Bruden on *Resendez v. Precision Castparts Corp.*, and know her to be well regarded in the environmental law community.

15.    $390 is a reasonable hourly rate for Bruden that is in line with market rates in this district. For example, after applying a 10% discount, Stoel Rives charged the Port of Seattle the equivalent of more than $387.75 per hour for an environmental-focused litigator who had between three and four years of experience. *See* Exhibit A.[2] As another example, Foster Garvey is currently charging the City of Seattle $400 per hour for an associate with less than eight years of experience in a Clean Water Act enforcement lawsuit. Exhibit B.[3] In addition, the Honorable Judge Coughenour awarded the equivalent of over $373.74/hour for my time in 2016, when I had the same level of experience as Bruden.[4]

16.    Paul Kampmeier is a seasoned and well-respected environmental litigator. Kampmeier is an authoritative voice on environmental law in our community of practitioners. Kampmeier has over twenty years of experience with most of his work over that time involving federal environmental litigation, including Endangered Species Act litigation.

17.    $700 is a reasonable hourly rate for Kampmeier that is in line with market rates in this district. For example, the standard rate for one of Stoel Rives LLP's senior environmental

---

or about 3 percentage points higher than the national average).

[2] Veronica Keithly charged $315/hour in 2018, which is $387.75 in 2023 dollars, calculated using the national consumer price index inflation calculator. *Id.*; *see also* Stoel Rives, Veronica M. Keithly, https://www.stoel.com/people/veronica-m-keithley.

[3] *See* Foster Garvey, Devra Cohen, https://www.foster.com/people/devra-cohen#form-search-results.

[4] Judge Coughenour awarded $290/hour for my time in 2016, which is $373.74 in 2023 dollars, calculated using the national consumer price index inflation calculator. *Waste Action Project v. Astro Auto Wrecking, LLC*, No. C15-0796 JCC, 2016 U.S. Dist. LEXIS 197099, at *1-2 (W.D. Wash. June 30, 2016).

litigators in Seattle was $730 per hour in mid-2021, which is the equivalent to $814.17 in current dollars. Exhibit C; *see also Amazon.Com, Inc. v. Wong*, No. C19-0990JLR, 2022 U.S. Dist. LEXIS 67757, at *5 (W.D. Wash. Apr. 12, 2022) (finding "$535 to $785 for attorneys and $215 for paralegals . . . comparable to those 'prevailing in the community'").

18.    While I am not personally familiar with Mariah Harrod's work, $290 is a reasonable hourly rate for a first-year associate and is consistent with market rates in this district. For example, the inflation adjusted median rate for attorneys with zero to three years' experience in Portland, Oregon is over $295, and Portland is a lower rate market than Seattle. *See Roblin v. Newmar Corp.*, No. 6:17-cv-1902-MC, 2020 U.S. Dist. LEXIS 89693, at *11 (D. Or. May 21, 2020) (citing 2017 Oregon survey). I also note that Harrod spent her last semester of law school working at Shute, Mihaly & Weinberger LLP, a highly regarded Bay Area environmental law firm. Based on my own experience hiring a Vermont Law School student who participated in the same extern program, I believe that this full-time practical experience in the last semester really does improve a new attorney's efficiency. Further, Vermont Law School has a respected and robust environmental law program that is generally considered one of the top two environmental law programs in the country (the other is Lewis & Clark Law School).

19.    Likewise, while I am not personally familiar with Jessica Durney's work, $350 is a reasonable hourly rate for an attorney with Durney's five years' experience in environmental law and federal litigation that is in line with market rates in this district. For example, in a Clean Water Act enforcement lawsuit, Foster Garvey is currently charging the City of Seattle $350 per hour for an associate with less than five years of non-environmental experience. Exhibit B.[5]

---

[5] *See* Foster Garvey, Audrey Chambers, https://www.foster.com/people-audrey-chambers#form-search-results.

TONRY DECLARATION – 7
FIFTH KNUTSON DECLARATION - 45
Case No. 2:20-cv-00417-RAJ-MLP

20.     Amy van Saun is a very well-respected environmental litigator with a notable list of victories in complex, technical cases, including many at the appellate level where oral argument is far more common than in this district. Enlisting van Saun to participate in a moot oral argument in this case was a reasonable and wise decision.

21.     $495 is a reasonable hourly rate for van Saun that is in line with market rates in this district. For example, after applying a 10% discount, Stoel Rives charged the equivalent of over $575 per hour for an environmental litigator with less than twelve years of experience. Exhibit A (appended correspondence).[6]

**Reasonableness of Hours Expended and Overall Compensation Sought**

22.     Based on (a) my familiarity with the attorneys seeking fees in this case; (b) the uncertain, contingent nature of fee recovery in Endangered Species Act cases; and (c) my knowledge that plaintiff-side environmental attorneys in the Pacific Northwest are consistently stretched thin by the number of worthy cases and projects, I would not expect WFC's counsel to expend an unreasonable number of hours on this case. My review of the attorneys' timesheets meets my expectation: the number of hours they expended is reasonable and commensurate with the complexity of the case and the results they achieved and reflects appropriate billing discretion.

23.     This case involved several complex and difficult issues. First, Section 9 cases are generally fact and expert (and discovery) intensive cases, and salmon hatchery cases are especially so including because the defendants generally have their own in-house experts and management plans to provide defenses. To overcome these disadvantages, plaintiffs must make (and oftentimes dispute) public records requests, thoroughly research technical facts, and often work with experts

---

[6] Jason Morgan billed $468 per hour in 2018, which is equivalent to $576.08 in 2023 dollars, calculated using the national consumer price index inflation calculator. *Id.*; *see also* Stoel Rives, Jason T. Morgan, https://www.stoel.com/people/jason-t-morgan.

1    I declare under penalty of perjury under the laws of the United States of America that the
2  foregoing is true and correct.
3    Executed this 16th day of August 2023 in San Francisco, California.
4                          */s/ Claire Tonry*
5                          Claire Tonry, WSBA No. 44497

# EXHIBIT 6

# RECORD OF DECISION
### for the
### Environmental Impact Statement for the
### Issuance of an Incidental Take Statement
### under the Endangered Species Act
### for Salmon Fisheries in Southeast Alaska
### Subject to the Pacific Salmon Treaty and Funding to the State of Alaska to
### Implement the Pacific Salmon Treaty

**Date**:                          November 21, 2024

**Lead Agency**:              National Oceanic and Atmospheric Administration (NOAA)
                                      National Marine Fisheries Service (NMFS)

**Responsible Official**:     Jonathan M. Kurland
                                      Regional Administrator
                                      Alaska Region

                                      Jennifer Quan
                                      Regional Administrator
                                      West Coast Region

**Information contact**:      Gretchen Harrington
                                      NMFS Alaska Region
                                      P.O. Box 21668
                                      Juneau, AK 99802
                                      907-586-7228

**Table of Contents**

I.    Introduction                                                                              1

II.   Environmental Impact Statement and Biological Opinion                 1

III.  Alternatives Considered                                                              2

IV.   Comparison of Alternatives for Decision-making                           4

V.    Environmentally Preferable Alternative                                         8

VI.   Rationale for Selection of the Preferred Alternative                       8

VII.  Mitigation Measures and Monitoring                                            11

VIII. Conclusion                                                                              14

IX.   Literature Cited                                                                         16

## I.    Introduction

This document comprises the National Oceanic and Atmospheric Administration (NOAA) National Marine Fisheries Service's (NMFS) Record of Decision (ROD), as required by the National Environmental Policy Act (NEPA). This ROD documents the decision by NMFS to select Alternative 2, the preferred alternative in the Final Environmental Impact Statement (EIS) for the issuance of an incidental take statement (ITS) under the Endangered Species Act (ESA) for salmon fisheries in Southeast Alaska (SEAK) subject to the Pacific Salmon Treaty (PST) and funding to the State of Alaska to implement the PST (NMFS 2024a).

This ROD is designed to: (1) state NMFS's decision and present the rationale for that decision; (2) identify the alternatives considered in the Final EIS in reaching the decision; and (3) state whether all practicable means to avoid or minimize environmental harm from implementation of the selected alternative have been adopted, and if not, why they were not.

## II.    Environmental Impact Statement and Biological Opinion

NMFS published a Notice of Intent for this EIS in the **Federal Register** on October 4, 2023 (88 FR 68572). On October 30, 2023, NMFS conducted formal Tribal Consultation with the Central Council of Tlingit and Haida Indian Tribes of Alaska. NMFS released the Draft EIS and solicited public comment on the Draft EIS during a 45-day public comment period from January 26, 2024 to March 11, 2024 (89 FR 5210, January 26, 2024). NMFS received 519 letters of comment. Following review of public comments on the Draft EIS, the Final EIS was made available to the public through publication of a Notice of Availability in the **Federal Register** on October 4, 2024 (89 FR 80899). NMFS signed a Biological Opinion (BiOp), which included an ITS, on September 25, 2024 (NMFS 2024b). These documents are available on the NMFS Alaska Region webpage at https://www.fisheries.noaa.gov/resource/document/environmental-impact-statement-issuance-incidental-take-statement-under.

The EIS provides decision-makers and the public with an evaluation of the environmental, social, and economic effects of alternatives to the issuance of an ITS for the expected incidental take of species listed under the ESA by participants in SEAK salmon fisheries as well as alternatives to the disbursement of funds to the State of Alaska to implement the PST.

The EIS directly responds to a US District Court order in *Wild Fish Conservancy v. Quan*, a lawsuit that challenged a 2019 NMFS BiOp on the Federal actions related to the SEAK salmon fisheries. The court found that NMFS must comply with NEPA for the issuance of the ITS that accompanied the 2019 BiOp.

The court also determined that NMFS's 2019 BiOp was deficient. In response, NMFS issued a new 2024 BiOp and ITS for the same Federal actions related to the SEAK salmon fisheries: (1) NMFS's delegation of management authority over commercial troll and sport salmon fisheries in the exclusive economic zone (EEZ) in SEAK to the State of Alaska under the Fishery Management Plan for the Salmon Fisheries in the EEZ Off Alaska (Salmon FMP) and (2) Federal funding through grants to the State of Alaska for the State's management and monitoring of commercial and sport salmon fisheries and transboundary river enhancement necessary to implement the PST.

The 2024 BiOp analyzed the effects of the two Federal actions related to the SEAK salmon fisheries. NMFS expects that, with the issuance of the ITS to exempt take incidental to the SEAK salmon fisheries and the disbursement of Federal funds to the State of Alaska to manage and monitor the SEAK salmon fisheries, the SEAK salmon fisheries will continue to be prosecuted. The ITS issued with that BiOp exempts incidental take of threatened or endangered ESA-listed species by participants in Southeast Alaska salmon fisheries that are subject to the PST. The new 2024 ITS is based on the analysis in the 2024 BiOp, and concludes that the amount or extent of incidental take, coupled with other effects of the actions, is not likely to jeopardize the continued existence of listed species, specifically four ESA-listed salmon evolutionary significant units (ESUs) (lower Columbia river (LCR) Chinook, upper Willamette river (UWR) Chinook, Snake River Fall Run Chinook, and Puget Sound Chinook salmon); Southern resident killer whales (SRKW), Mexico distinct population segment (DPS) of humpback whales, and the Western DPS of Steller sea lions. The ITS specifies, among other requirements: the impact (the amount or extent) of incidental taking on the ESA-listed species; reasonable and prudent measures considered necessary or appropriate to minimize the impact of such take; and terms and conditions (including reporting requirements) that implement the specified measures. The ITS exempts incidental take that is reasonably certain to occur and provides fishery participants with protection from liability for such incidental takes, should they occur in compliance with the terms and conditions of the ITS.

The EIS therefore evaluated the effects of SEAK salmon fishing up to the catch limits negotiated under the 2019 PST Agreement on various resource components that include ESA-listed and non-listed marine mammals, ESA-listed and non-listed salmon, non-salmon fish, marine birds, habitat, and the ecosystem and climate change. The EIS also examines economic, community, and Tribal impacts. In the absence of the ITS and Federal funding to the State, NMFS assumes that the SEAK salmon fisheries would not be prosecuted, and so the EIS also evaluated the effects if the SEAK salmon fisheries subject to the 2019 PST Agreement were not prosecuted.

Finally, the EIS was developed with input from two cooperating agencies: the State of Alaska and the Central Council of Tlingit and Haida Indian Tribes of Alaska.

### III.    Alternatives Considered

The suite of alternatives considered include the following:

*Alternative 1: Status Quo, no action.*

Alternative 1 is the status quo; no change to the 2019 BiOp. This alternative would maintain the 2019 BiOp and Incidental Take Statement (ITS, NMFS 2019). Under the ITS, the SEAK salmon fisheries subject to the 2019 PST Agreement would continue to be prosecuted under the 2019 PST Agreement and existing fishery management measures. This alternative, however, would not respond to the court's orders, because the court identified flaws with the 2019 BiOp and remanded to NMFS to address those flaws.

Under this alternative, the Council's and NMFS's 1990 decision to delegate management of the authorized salmon fisheries in the SEAK EEZ to the State of Alaska would remain unchanged, and

NMFS would continue to fund grants to the State of Alaska to monitor and manage salmon fisheries in State and Federal waters to meet the obligations of the PST.

*Alternative 2: NMFS would issue a new ITS with a new 2024 Biological Opinion; NMFS would disburse funding to the State of Alaska to implement the 2019 PST Agreement **(Preferred Alternative and an Environmentally Preferred Alternative)**.*

Under Alternative 2, NMFS issues a new 2024 BiOp to respond to the court's finding that the 2019 BiOp did not comply with the ESA. This 2024 BiOp provides an ITS, consistent with the requirements of 16 U.S.C. § 1536, that specifies the level of take that NMFS determined is reasonably certain to occur for each ESA-listed species considered in the BiOp and that will not result in jeopardy to the species. Consistent with the analysis in the 2024 BiOp and the EIS, the SEAK salmon fisheries subject to the 2019 PST Agreement would continue to be prosecuted under the 2019 PST Agreement consistent with any reasonable and prudent measures and terms and conditions included in the 2024 BiOp /ITS.

Under this Alternative, the EIS also evaluates the Federal agency actions considered in the 2024 BiOp. NMFS analyzes in the EIS, as a second proposed action and component of this alternative, the effects from NMFS's proposed future funding to the State of Alaska Department of Fish and Game (ADF&G) for initiatives likely to remain in place for the duration of the PST. This is a proposed action in the EIS because NMFS retains discretion to disburse these funds in the future. NMFS also analyzed the effects from delegation of management of the authorized salmon fisheries in the EEZ to the State, primarily continued commercial troll and sport fishing in Federal waters consistent with the 2019 PST Agreement. This aspect of the effects analysis (i.e. delegation of management) is presented for analytical purposes only, as there is no proposed action to maintain, amend, or rescind delegation of management of the Federal fisheries to the State consistent with NMFS's authority under the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act) (16 U.S.C. § 1856(a)(3)(B)).

*Alternative 3: NMFS would not issue an ITS; NMFS would not disburse funding to the State of Alaska to implement the 2019 PST Agreement. **(An Environmentally Preferred Alternative)**.*

Under Alternative 3, NMFS would not develop a new BiOp and any incidental taking of ESA-listed species by the SEAK salmon fisheries would not be exempt from the ESA's prohibition of such take. The EIS therefore assumes that the SEAK salmon fisheries under the 2019 PST Agreement would not be prosecuted in the absence of an ITS. To be clear, the EIS assumes, due to the potential for all salmon fisheries in SEAK to take ESA-listed species, that all salmon fisheries in SEAK—troll, purse seine, drift gillnet, set gillnet, sport, and personal use—would not be prosecuted in the absence of an ITS. NMFS also would not fund grants to the State of Alaska to monitor and manage salmon fisheries in State and Federal waters, and therefore NMFS and the State could fail to meet the obligations of the PST. Because the grants facilitate management of the SEAK salmon fisheries in compliance with the 2019 PST Agreement, the EIS also assumes that the SEAK salmon fisheries subject to the 2019 PST Agreement would not be prosecuted if funding were discontinued.

*Note on the Federal Actions Related to the SEAK Salmon Fisheries Included in the EIS*

Because of the nexus between the court's orders on the ESA and NEPA deficiencies and in light of NMFS's discretionary disbursement of funds to the State, the EIS evaluates the effects of the Federal agency actions subject to ESA consultation that were originally evaluated in the 2019 BiOp and ITS and more recently, after remand, in the 2024 BiOp and ITS. NMFS included Federal funding to the State of Alaska as a proposed action in the EIS because NMFS retains discretion to disburse grants to the State of Alaska in the future to monitor and manage salmon fisheries in State and Federal waters related to meeting the obligations of the PST.

NMFS evaluates in the EIS the effects of NMFS's delegation of management authority over salmon fisheries in the SEAK EEZ to the State of Alaska under the Salmon FMP. Delegation, however, was not considered a proposed action in the EIS. The decision to delegate to the State management of the

authorized fisheries in the SEAK EEZ was made in 1990 and reaffirmed and evaluated under NEPA in several actions, mostly recently in 2012 (Amendment 12 to the Salmon FMP). The environmental assessment/regulatory impact review for Amendment 12 evaluated the impacts of the delegation and the operation of the commercial troll and sport fisheries in the SEAK EEZ on Alaska salmon stocks, ESA-listed salmon, marine mammals, seabirds, and essential fish habitat, as well as cumulative effects and economic effects (NMFS 2012). In light of the 2024 BiOp on the Federal actions related to the SEAK salmon fisheries (which includes delegation) and the proposed action evaluated in this EIS per the court's orders (issuance of the ITS tied to the 2024 BiOp), the EIS accounts for the effects of fishing in Federal waters, whether under delegated management to the State or sole Federal management. If NMFS discontinued delegation of management to the State, NMFS assumes that similar effects would result if NMFS solely managed the fisheries in Federal waters. The sport fishery harvests a very small amount of salmon in Federal waters, and Federal management of the EEZ likely would not affect catch or harvest in that fishery. NMFS expects the same for the troll fishery, particularly because the fisheries would remain subject to the harvest limits under the PST. If Federal management were too onerous or if Federal waters were closed, the commercial troll fleet has the ability to catch all of its PST allocation in state waters, and so could readily shift effort to state waters. More details are found in Sections 2.1 and 5.2 and Response to Comment 14 in the Final EIS.

## IV.    Comparison of Alternatives for Decision-making

| Alt. | ITS Coverage for SEAK Salmon Fisheries | Comparative Features | Impacts |
|---|---|---|---|
| **Alt 1** | Yes | • ESA takes exempted for all SEAK salmon fisheries subject to the 2019 PST Agreement up to the limit of the ITS in the 2019 BiOp.<br>• Fishery participants would not be subject to enforcement action for ESA incidental takes up to the ITS limit and in compliance with the terms and conditions of the ITS. ADF&G would be expected to open the salmon fisheries per agency standards and processes.<br>• NMFS would continue to fund grants to the State of Alaska to monitor and manage salmon fisheries to meet the obligations of the PST through 2028.<br>• As a component of this Alternative (but not a proposed action), the EIS accounts for effects of delegation of management of the authorized salmon fisheries in the EEZ to the State (delegation would remain in place). | • Incidental take of listed Chinook, southern resident killer whale (SRKW) (through prey reductions), humpback whales, and Steller sea lions could occur in SEAK salmon fisheries up to limit specified in 2019 ITS.<br>• Interactions with non-ESA listed species (i.e. marine mammals, marine birds, unlisted salmon, and other fish species) could occur, but not at levels that would have population-level impacts.<br>• The State's spawning escapement goals for SEAK-origin salmon are generally expected to be achieved (Munro 2023; Munro and Brenner 2022).<br>• Minimal climate and greenhouse gas impacts and negligible habitat impacts from SEAK salmon fisheries.<br>• Economic opportunities would be preserved for individuals and entities engaged in salmon fisheries (including, but not limited to, permit holders, vessel owners, charter operators, processors, and suppliers, as well as sport and personal use fishers).<br>• SEAK communities would continue to thrive in tandem with SEAK salmon fisheries, and 10,000 years of Alaska Native salmon stewardship, culture, and connection to salmon (including for subsistence and food security) would be maintained as would economic opportunities for Alaska Native Tribal citizens who participate in the salmon fisheries. |
| **Alt 2 (Preferred)** | Yes | • ESA takes exempted for all SEAK salmon fisheries subject to the 2019 PST Agreement up to the limit of the ITS in the 2024 BiOp. | • Incidental take of listed Chinook, SRKW (through prey reductions), humpback whales, and Steller sea lions could occur in SEAK salmon fisheries up to limit specified in the 2024 ITS, which concludes take |

| Alt. | ITS Coverage for SEAK Salmon Fisheries | Comparative Features | Impacts |
|---|---|---|---|
| | | • Fishery participants would not be subject to enforcement action for ESA incidental takes up to the ITS limit and in compliance with the terms and conditions of the ITS. ADF&G would be expected to open the salmon fisheries per agency standards and processes.<br>• NMFS would fund grants to the State of Alaska to monitor and manage salmon fisheries to meet the obligations of the PST through 2028.<br>• As a component of this Alternative (but not a proposed action), the EIS accounts for effects of delegation of management of the authorized salmon fisheries in the EEZ to the State (delegation would remain in place). | would not jeopardize the continued existence of these listed species.<br>• Interactions with non-ESA listed species (i.e. marine mammals, marine birds, unlisted salmon, and other fish species) could occur, but not at levels that would have population level impacts.<br>• The State's spawning escapement goals for SEAK-origin salmon are generally expected to be achieved.<br>• Minimal climate and greenhouse gas impacts and negligible habitat impacts from SEAK salmon fisheries.<br>• Economic opportunities would be preserved for individuals and entities engaged in salmon fisheries (including, but not limited to, permit holders, vessel owners, charter operators, processors, and suppliers, as well as sport and personal use fishers).<br>• SEAK communities would continue to thrive in tandem with SEAK salmon fisheries, and 10,000 years of Alaska Native salmon stewardship, culture, and connection to salmon (including for subsistence and food security) would be maintained as would economic opportunities for Alaska Native Tribal citizens who participate in the salmon fisheries. |
| Alt 3 | No | • No ESA takes exempted in SEAK salmon fisheries. Fishery participants in salmon fisheries would be liable for ESA takes.<br>• The Federal fisheries would be closed in the absence of an ITS and for this analysis we assume ADF&G would also not open any SEAK salmon fisheries in state waters due to that liability.<br>• NMFS would not fund grants to the State of Alaska to monitor and manage salmon fisheries.<br>• Because the EIS assumes no salmon fishing would occur in the absence of an ITS and Federal funding, the EIS analyzes effects if no fishing occurred in Federal or state waters, such as if NMFS superseded delegation of the troll and sport fisheries in the EEZ to the State and closed those EEZ fisheries under the Salmon FMP. | • No take of listed Chinook, SRKW, humpback whales, and Steller sea lions would occur from SEAK salmon fisheries.<br>• SRKWs would continue to be impacted by inbreeding depression, pollution and disturbances from vessels and sound in the SRKW range, and other limiting factors.<br>• Interactions with non-ESA listed species (i.e. marine mammals, marine birds, unlisted salmon, and other fish species) would not occur, but reduction in interactions are not likely to have any population effects.<br>• No climate, greenhouse gas, or habitat impacts from SEAK salmon fisheries, but reduction in impacts likely nominal.<br>• Severe deleterious impacts to SEAK salmon stocks due to crowding of salmon in streams and death due to low oxygen, resulting in significant impacts to the ecosystem.<br>• NMFS and the State would fail to meet the obligations of the PST through 2028.<br>• Catastrophic effects would be felt economically, culturally, and by communities and Tribes with a closure of SEAK salmon fisheries.<br>• Loss of $119 million in harvest revenue from all salmon fisheries.<br>• Loss of $602.8 million in processing revenue.<br>• Removal of economic pillar for many rural SEAK communities, where there are often no other economic opportunities to pivot to.<br>• Cessation of 10,000 years of Tribal fishing and cultural practices surrounding fishing, leading to loss of economic opportunities for Tribal members, |

| Alt. | ITS Coverage for SEAK Salmon Fisheries | Comparative Features | Impacts |
|---|---|---|---|
| | | | increased food insecurity, and severing of stewardship, culture, and connection to salmon. |

*Alternatives Considered and Eliminated from Further Study*

NMFS considered additional alternatives and eliminated them from further study. In the development of the alternatives, NMFS considered whether to analyze other permutations of Alternatives 1 and 2 as separate alternatives. These included:

1. NMFS would not issue a new BiOp and ITS, and NMFS would not continue to fund grants to the State (Alternative 3);

2. NMFS would not issue a new BiOp and ITS, and NMFS would continue to fund grants to the State;

3. NMFS would issue a new BiOp and ITS, and NMFS would not continue to fund grants to the State; and

4. NMFS would issue a new BiOp and ITS, and NMFS would continue to fund grants to the State (Alternative 2).

NMFS did not analyze these other permutations as separate alternatives. Under the second permutation where NMFS would not issue a new BiOp and ITS but would continue to fund grants to the State, NMFS assumes that ADF&G would not open the SEAK salmon fisheries in the absence of a new BiOp and ITS since fishery participants in the salmon fisheries would be liable for ESA incidental takes; the effects from this permutation are therefore encompassed and analyzed under Alternative 3. Under the third permutation NMFS would issue a new BiOp and ITS but would not continue to fund grants to the State of Alaska. While fishery participants would have an exemption for incidental take and therefore ADF&G may open the SEAK salmon fisheries, it is not certain that ADF&G can manage and monitor the fisheries consistent with the obligations under the 2019 PST Agreement in the absence of Federal funding. The SEAK salmon fisheries may remain closed; if ADF&G did not open the SEAK salmon fisheries, effects would be commensurate with those analyzed under Alternative 3. If ADF&G did open the SEAK salmon fisheries, NMFS assumes similar effects from the operation of the fisheries as analyzed under Alternatives 1 and 2, although likely reduced since the lack of funding would increase uncertainty in stock assessment and fishery management that would lead to more conservative management and reduced fishing opportunities for SEAK salmon fishing.

Additionally, scoping comments and comments on the Draft EIS also recommended five additional alternatives that NMFS considered but did not analyze further because they are outside the scope for this action and, in the case of the prey increase program, are analyzed elsewhere[1].

1. *Analyze the Prey Increase Program.*

2. *Analyze measures that restrict the SEAK salmon fisheries below the 2019 PST Agreement Chinook salmon catch limits and evaluate the ways to minimize or mitigate economic harms from fisheries closure, such as determining a fishery disaster.*

---

[1] https://www.fisheries.noaa.gov/action/prey-increase-program-southern-resident-killer-whales

3. *Engage with Canada's Department of Fisheries and Oceans and renegotiate the PST to significantly reduce harvest levels of Chinook in the SEAK PST AABM fisheries, PFMC's North of Falcon fisheries, British Columbia's AABM Chinook fisheries (North-Central, NBC; and West Coast Vancouver Island, WCVI), as well as near-terminal sport fisheries.*

4. *Transition all Alaska PST fisheries that encounter Chinook salmon to a limiting stock framework, consistent with how PFMC fisheries are managed, to bring consistency to, and better coordination with, fisheries occurring in marine waters off the coast of Washington, Oregon, and California.*

5. *Evaluate requiring highly selective fishing gears in terminal/near-terminal fisheries such as reef nets, pound nets, and weirs (fish traps) that are capable of releasing non-target Chinook and other taxa with negligible or no harm.*

NMFS explains in Section 2.4 of the Final EIS why these alternatives were not considered further and responds to the specific comments on the Draft EIS in Section 8 of the Final EIS. However, NMFS notes here that the alternatives analyzed in the EIS were developed to meet the purpose and need, and the purpose and need was developed directly in response to the district court's findings and orders (see Section 2.1 of the Final EIS). The court found that the 2019 BiOp was deficient under the ESA and that NMFS must complete a NEPA analysis for the issuance of an ITS for the operation of the SEAK fisheries subject to the PST Agreement. Because of the district court's orders finding deficiencies with the 2019 BiOp and remanding to the agency to address those deficiencies, NMFS knew it would have to engage in section 7 consultation and issue a new BiOp and ITS to respond to the court's orders. On remand, NMFS as the action agency for the Federal actions related to the SEAK salmon fisheries engaged in ESA section 7 consultation as required by the ESA, and NMFS as the consulting agency developed a new BiOp and ITS (the 2024 BiOp/ITS) consistent with the ESA and implementing regulations. NMFS also developed and issued the EIS to evaluate the proposed issuance of the new ITS as ordered by the court. More details can be found in Sections 2.1, 8.2.1, and 8.2.3 of the Final EIS.

NMFS has not included alternatives to restrict the SEAK salmon fisheries, analyze a range of take limits, reduce the percentage of allowable take, or otherwise institute "harvest reforms" or other changes like gear changes. Under the ESA, the issuance of the ITS follows an ESA section 7 consultation, and there are essentially two outcomes from an ESA section 7 consultation. First, if NMFS concludes the agency action is not likely to jeopardize the continued existence of listed species, NMFS issues a BiOp and ITS for take that is reasonably certain to occur incidental to the agency action (16 U.S.C. § 1536(b)(3), (4)). Second, however, if NMFS concludes the agency action is likely to jeopardize the continued existence of listed species, NMFS must offer Reasonable and Prudent Alternatives (RPAs) and specify the incidental take that will occur if NMFS concludes that the action as modified by the RPAs is not likely to jeopardize the continued existence of listed species (16 U.S.C. § 1536(b)(3), (4)). Under either outcome, NMFS evaluates the agency action before it (or the action as modified by RPAs) and issues an ITS for the take reasonably certain to occur incidental to that agency action (50 CFR 402.14(g)(7)), and NMFS as the consulting agency does not have discretion to withhold the ITS or otherwise change the take exempted from what is reasonably certain to occur. Here, NMFS concludes in the 2024 BiOp that the Federal actions related to the SEAK salmon fisheries are not likely to jeopardize the continued existence of any threatened or endangered species and NMFS includes an ITS exempting take of ESA-listed species that is reasonably certain to occur incidental to those fisheries. Based on the analysis in that BiOp/ITS that fishing at the catch limits under the 2019 PST Agreement is not likely to jeopardize the continued existence of listed species, the EIS analyzes the impacts of fishing in SEAK up to the catch limits negotiated under the 2019 PST Agreement, and the second outcome, development of an RPA or RPAs, was not required under the ESA. In addition, because the ESA directs that NMFS "shall provide" an ITS if NMFS concludes that the agency action, and the taking of ESA-listed species incidental to the agency action, will not violate the ESA, NMFS has not included alternatives to restrict the SEAK salmon fisheries, analyze a range of take limits, reduce the percentage of allowable take, or otherwise institute

"harvest reforms" or other changes like gear changes (16 U.S.C. § 1536(b)(4)).

## V.    Environmentally Preferable Alternative

The Council on Environmental Quality regulations require that the ROD specify the alternative or alternatives which are considered to be environmentally preferable (40 CFR 1505.2)[2]. Such an alternative has been interpreted to be the alternative that will promote the national environmental policy as expressed in section 101 of NEPA. Ordinarily, this means the alternative that causes the least damage to the physical and biological environment, or that protects, preserves, or enhances historic, cultural, Tribal, and natural resources, or that addresses disproportionate and adverse effects on communities with environmental justice concerns.

For this action, the NMFS Alaska Region considers two of the three alternatives as the environmentally preferable alternatives; Alternative 2, which protects, preserves, or enhances historic, cultural, and Tribal resources, and addresses disproportionate and adverse effects on communities with environmental justice concerns, and Alternative 3, which demonstrates the least damage to the physical and biological resource components listed and evaluated in Section 5 of the Final EIS.

The EIS analysis demonstrates that Alternative 2 is the environmentally preferable alternative when considering that which protects, preserves, or enhances historic, cultural, and Tribal resources, or that addresses disproportionate and adverse effects on communities with environmental justice concerns. Compared to the other alternatives, the environmental benefits of this alternative would occur because Tribal communities of SEAK would continue more than 10,000 years of salmon stewardship and cultural connections to salmon. Community resilience would be maintained as key economic opportunities for rural communities, as well as the cultural significance of, and access to salmon would be preserved. In addition, subsistence harvest, a crucial activity in reducing the high cost of living in Alaska and bolstering food security for SEAK residents, would be maintained. Intergenerational relationships and teaching would continue, and the health and well-being of Tribal youth in SEAK rural communities would continue to be bolstered by access to cultural salmon opportunities. Therefore, when considering potential damage to historic, cultural, and Tribal resources, or adverse effects on communities with environmental justice concerns, Alternative 2 is considered the least impactful.

In addition, the EIS analysis demonstrates that Alternative 3 is the environmentally preferable alternative when considering physical and biological resource components. Compared to the other alternatives, the environmental benefits of this alternative would occur because it would result in greatly reduced salmon fishing in SEAK since any salmon fishery that has the potential to take ESA-listed salmon likely would not be prosecuted in the absence of an ITS. This would mean reduced impacts to and interactions with ESA-listed salmon and West Coast origin non-ESA listed salmon, marine mammals, marine birds, fish other than salmon, habitat, and the ecosystem, although some of the reduced impacts are slight given the negligible to minimal impacts of salmon fishing on certain resource components. However, as explained in the EIS, the cessation of salmon fishing in SEAK would have immediate, deleterious, and severe impacts to SEAK origin non-ESA listed salmon stocks due to crowding of salmon in streams and death due to low oxygen, resulting in significant impacts to the ecosystem. On the whole, when considering potential damage to physical and biological resource components, Alternative 3 is the least impactful to many of the physical and biological resource components analyzed in the EIS.

## VI.    Rationale for Selection of the Preferred Alternative

NMFS's decision to select Alternative 2 was reached after a comprehensive review of the relevant

---

[2] All cites to CEQ regulations are from the regulations in effect as of July 1, 2023, https://www.govinfo.gov/content/pkg/CFR-2023-title40-vol37/pdf/CFR-2023-title40-vol37.pdf.

environmental, economic, and social consequences of the alternatives, and considering the public comments on the Draft EIS and NOI. NMFS has taken into account the ESA, the PST, other applicable statutory and policy considerations, and public comments in selecting Alternative 2 as the alternative that best enables NMFS to issue an ITS, while meeting statutory, regulatory, and national policy requirements, goals, and objectives, and the court orders. NMFS believes that issuing the ITS as described under Alternative 2 will: (1) specify the limit of incidental take of ESA-listed species in the SEAK salmon fisheries and prescribe the reasonable and prudent measures and terms and conditions to monitor and mitigate the amount and extent of that incidental take; (2) best ensure continued access to salmon resources by traditional user groups, including participants in commercial, sport, and subsistence fisheries; (3) avoid economic hardship for SEAK communities, including rural and Tribal communities; (4) provide continuity for the traditional cultural importance of salmon to SEAK communities and Alaska Natives; and (5) provide for continued subsistence practices and food security for Alaska Native citizens and Tribes. In addition, the disbursement of Federal funding to the State of Alaska to monitor and manage the SEAK salmon fisheries that are subject to the PST is critical for implementing and monitoring science-based salmon fishery management under the PST. Federal funding is used to, inter alia, prepare the fishery and stock assessments required to implement the international obligations of the PST and to gather and analyze the vast amount of data routinely needed to effectuate the fishing regimes under the PST.

NMFS considered the potential impacts of Alternative 2 on ESA-listed species, the SEAK salmon commercial and sport fisheries, communities that engage in salmon fishing, and salmon subsistence users. In particular, when compared to the other alternatives, Alternative 2 best balances the interests of the salmon user groups in SEAK with the needs of ESA-listed species, in particular listed Chinook ESUs and the SRKW, by issuing an ITS as required under the ESA when a "no jeopardy" determination is made in a BiOp. The Final EIS contains a detailed analysis of effects on ESA-listed species in Section 5. NMFS concludes that the issuance of the ITS under Alternative 2 is consistent with and best balances the ESA and PST provisions.

NMFS acknowledges that Alternative 2 would also impact non-ESA-listed salmon and marine mammals, other fish species, marine birds, habitat, greenhouse gas emissions, and climate change. NMFS considered impacts under Alternative 3, but NMFS selected Alternative 2 as a measure that would have less economic, community, and cultural impacts to the SEAK salmon commercial fisheries and participants, while balancing the need to limit take of listed species through the issuance of an ITS to meet the Purpose and Need statement of the Final EIS. NMFS concludes that the issuance of an ITS is necessary and consistent with the ESA, given the no jeopardy determination of the 2024 BiOp signed on September 25, 2024 and will not jeopardize the conservation and recovery of the ESA-listed Chinook ESUs, SRKW, humpback whale Mexico DPS, and the Steller sea lion Western DPS in both the short and long terms.

NMFS further recognizes that salmon is a highly valued fish species that supports SEAK directed commercial and sport fisheries, as well as subsistence use. Commercial fisheries include commercial troll, drift and set gillnet, and purse seine. Sport fisheries include charter operations and private sport fishing. Overall, salmon accounted for approximately 60% to 70% of SEAK's seafood production value. Using data from the most recent comprehensive economic study produced by ASMI in 2020, the SEAK salmon fisheries produced $303 million in output, $165 million in labor income for SEAK, and 7,910 in jobs for the region. Breaking it down, commercial fishing contributed to 4,410 jobs, followed by processing, which contributed to 2,730 jobs, and lastly, management contributed to 770 jobs for salmon-related fisheries.

Of the commercial salmon fisheries, the troll fishery receives a significant portion of the PST harvest limit of Chinook and catches approximately sixty-seven percent of the Chinook in SEAK (ten-year average). The fleet is composed of small, family-owned fishing boats that use hook-and-lines to individually catch every salmon, which results in a high-quality product that receives a premium price.

The troll fishery has landings in more SEAK communities than the other salmon fisheries, and the economic impacts are large for those small communities, providing earning potential in an area with otherwise limited opportunities. An estimated eighty-five percent of the SEAK troll fleet permits are local to SEAK. Since SEAK's troll fishery has the highest level of local ownership of any major Alaska fishery, its ongoing survival is critical to all of SEAK's communities.

Many Tribal citizens who reside throughout SEAK participate in SEAK salmon fisheries, especially in the smaller communities, contributing to the regions' annual multi-million-dollar salmon industry. Salmon are also harvested by Indigenous peoples in both personal use and subsistence fisheries that provide food security for families and are highly valued in traditional and customary activities for communities throughout SEAK, British Columbia, and the Pacific Northwest as a whole. The social and cultural importance of salmon and salmon fishing as a traditional activity for Alaska Native Tribes throughout Alaska is well-documented. Lingít and Xaadas peoples have called SEAK home since time immemorial, and salmon has been the foundation of culture the entirety of that time. Tribal citizens of the Central Council of Tlingit & Haida Indian Tribes of Alaska have fished the waters of SEAK for more than 10,000 years, and continue to do so, including as commercial fisherman. Nearly 120 permit holders are Alaska Native Tribal citizens of the Tlingit & Haida Indian Tribes of Alaska, and nine holders are Alaska Native Tribal citizens of the Metlakatla Indian Community Annette Islands Reserve. The participation of Tribal citizens throughout commercial, sport, personal use, and subsistence salmon fisheries are therefore vitally important for the social, cultural, and economic resiliency of Alaska Native Tribes and SEAK coastal communities.

The EIS notes that the cultural significance of salmon for fishermen and their associated communities can exceed the economic value of the fishery in some communities. And, the availability of salmon contributes significantly to the year-round food supply in rural SEAK communities. Sport fisheries, personal use fisheries, and subsistence fisheries provide a dependable food source for residents across Southeast Alaska's 33 communities. Protein sourced from salmon fisheries is central to many SEAK households, providing a nutritionally dense and local food at a low cost as compared to other sources of protein in small rural communities where grocery prices are often inflated due to remoteness.

Overall, positive social and environmental justice impacts on dependent salmon fishing communities would be expected as a result of Alternative 2. The economic, social, and cultural benefits to Alaska communities that may result from Alternative 2, the issuance of the ITS and funding to the State, is discussed in Section 6 of the Final EIS.

Alternative 1 is not NMFS's preferred alternative because this alternative would not respond to the court's orders, because the court identified flaws with the 2019 BiOp. As noted in Section II of this ROD, the district court determined the prey increase program lacked specificity and deadlines or otherwise enforceable obligations and was not subject to agency control or reasonably certain to occur. The court therefore found NMFS erred by relying on the program to mitigate the effects of the fisheries. The district court also concluded that NMFS failed to evaluate the effects of the prey increase program on ESA-listed Chinook salmon. Ultimately, the court found that NMFS's jeopardy determinations for SRKWs and ESA-listed Chinook salmon were flawed and the court remanded to NMFS to address the ESA deficiencies identified by the court.

Alternative 3 is not NMFS's preferred alternative because it does not fulfill NMFS's roles under the ESA, and it does not respond to the district court's order and remand that NMFS address the ESA and NEPA deficiencies identified by the court. Under the ESA, NMFS, as the action agency for the Federal actions related to the SEAK salmon fisheries, is required to fulfill its obligations under section 7 of the ESA to consult to ensure that those actions are not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of designated critical habitat (16 U.S.C. § 1536(a)(2)). And, under the ESA, NMFS as the consulting agency is obligated at the conclusion of formal consultation to (1) prepare a BiOp detailing how the agency action affects listed

species and their designated critical habitat (16 U.S.C. § 1536(b)(3)); and (2) issue an ITS for take that is reasonably certain to occur incidental to the action (16 U.S.C. § 1536(b)(4)) if NMFS concludes, among other things, that the agency action and any incidental take is not likely to jeopardize the continued existence of any listed species (16 U.S.C. § 1536(b)(4); 50 CFR 402.14(g)(7)). In addition, Alternative 3 is not NMFS's preferred alternative because, as explained in the EIS, U.S. obligations under the PST are fundamentally a Federal commitment, and Federal funding to the State is essential for the State to fulfill those commitments and to implement and monitor science-based salmon fishery management under the PST.

In the 2024 BiOp/ITS, NMFS concludes that the Federal actions related to the SEAK salmon fisheries, with fishing occurring under the 2019 PST Agreement and taking into account the funding program to increase prey availability for SRKW to mitigate the effects of the PST fisheries generally, are not likely to jeopardize the continued existence of ESA-listed species. NMFS analyzed the prey increase program in a separate programmatic environmental impact statement (PIP PEIS) (NMFS 2024c) that evaluates alternative uses of funding to address impacts, and increase prey availability for, SRKW. In the EIS for the proposed ITS and funding to the State of Alaska, NMFS notes that if NMFS does not implement the preferred alternative from the PIP PEIS and instead implements a different alternative to the prey increase program, NMFS would have to reevaluate its analysis in the SEAK EIS (and SEAK BiOp/ITS). As reflected in the Record of Decision for the PIP EIS, NMFS has adopted the preferred alternative to implement the prey increase program[3]. Therefore, in documenting the decision in this ROD by NMFS to select Alternative 2, we note that NMFS has selected the hatchery prey increase program in the ROD for that EIS and that it is not necessary for NMFS to reevaluate its analysis in the SEAK EIS and SEAK BiOp/ITS.

## VII.    Mitigation Measures and Monitoring

The basis of Alternative 2 is the issuance of the ITS through the 2024 BiOp. Overall, Alternative 2 does not impede the conservation and recovery of ESA-listed species, thus acting as a mitigation measure controlling for take of ESA-listed species. In issuing the ITS, NMFS determined the amount of take reasonably certain to occur incidental to the prosecution of the SEAK salmon fisheries. NMFS documented the amount/extent of that take in the ITS, which results in limits on the amount/extent of take exempted. The ITS also provides reasonable and prudent measures that are necessary or appropriate to minimize the impacts of that take and sets forth the terms and conditions that implement those reasonable and prudent measures (16 U.S.C. § 1536(b)(4)). Any take that is incidental to an otherwise lawful agency action is not considered to be prohibited taking under the ESA if that action is performed in compliance with the terms and conditions of the ITS and within the limits proscribed by the ITS (16 U.S.C. § 1536(o)(2)). Through the issuance of the ITS, NMFS has therefore included all the measures necessary or appropriate to avoid or minimize environmental harm from the alternative selected, and no further measures are needed to implement Alternative 2 consistent with the requirements of the ESA and NEPA.

Under Alternative 2, NMFS prepared a BiOp analyzing the effects of the Federal actions related to the SEAK salmon fisheries and issued an ITS for the take that is reasonably certain to occur incidental to the SEAK salmon fisheries. NMFS has determined that incidental take of ESA-listed Chinook salmon, SRKW, Mexico DPS of humpback whales, and Western DPS of Steller sea lions is reasonably certain to occur.

The incidental take of ESA-listed Chinook salmon from four ESA-listed ESUs (LCR Chinook, UWR Chinook, Snake River Fall Run Chinook, and Puget Sound Chinook salmon) in the SEAK fisheries would vary from year to year depending on the stock abundances, annual variation in migratory patterns, and fishery management measures used to set and implement fishing levels consistent with the 2019 PST

---

[3] https://www.fisheries.noaa.gov/action/prey-increase-program-southern-resident-killer-whales

Agreement. Take varies across the various life-history components and populations of affected ESA-listed Chinook salmon ESUs. NMFS assumes that total catch and mortality levels will either be within the level set annually through the PST process and consistent with the limits described in Chapter 3 of the 2019 PST Agreement, or, in the case of an exceedance, that responses will be implemented as described in Chapter 3 of the 2019 PST Agreement. The fisheries are managed for limits on Chinook catch and total mortality based on preseason and inseason abundances, and the catch is sampled to determine stock composition of hatchery fish. These sampling efforts provide postseason measures of total Chinook salmon catch, total mortality, and stock composition that can be used as surrogates for the incidental take of ESA-listed Chinook salmon because they can be monitored directly and readily assessed for compliance, and the information can be used by NMFS to determine the magnitude of take of the four ESA-listed Chinook ESUs affected. Based on this, NMFS will use two surrogates in the 2024 ITS for the extent of take of ESA-listed Chinook salmon ESUs. First, the incidental take of ESA-listed Chinook salmon in SEAK fisheries will be limited on an annual basis by the provisions of Chapter 3, Annex IV of the 2019 PST Agreement that define the limits of catch and total mortality or exploitation rate for each fishery (see Table 4-2, Table 4-3, and Table 4-4 in Section 4 of the Final EIS). Total catch and mortality levels are directly related to the amount of take of each of the listed Chinook ESUs because that take is generally proportional to the overall catch or mortality of Chinook in the SEAK fishery. If the Chinook salmon total catch or total mortality limits described in Chapter 3 are exceeded and responses are not implemented as described in Chapter 3 of the 2019 PST Agreement in a given year when necessary, this would exceed the extent of take analyzed in the BiOp for the four threatened ESUs affected by the SEAK salmon fisheries. Second, estimates of the stock composition of the catch will be assessed annually, using indicator stocks that represent management units in the four listed ESUs, and these estimates are informative as to the proportion of the catch and total mortality relevant to each listed ESU. This provides another way to monitor take relevant to each listed ESU since limits under the 2019 PST Agreement are not stock-specific (see Table 4-2, Table 4-3, and Table 4-4 in Section 4 of the Final EIS).

The harvest of salmon that may occur under the proposed action is likely to result in some level of harm constituting take to SRKW by reducing prey availability. NMFS will use two measures of the extent of incidental take of SRKW. The first surrogate is the expected level of Chinook salmon catch in SEAK fisheries compared with the catch ceiling, which we can quantify and monitor and is described by the provisions of Chapter 3, Annex IV of the 2019 PST Agreement that define annual catch or total mortality limits on Chinook salmon (including ESA-listed and non-ESA-listed Chinook salmon). If the Chinook salmon total catch or total mortality limits described in Chapter 3 are exceeded and responses are not implemented as described in Chapter 3 of the 2019 PST Agreement in a given year when necessary, this would exceed the extent of take analyzed in the BiOp. NMFS will monitor the percent reduction of Chinook salmon prey attributed to the SEAK salmon fisheries as a surrogate for incidental take of SRKW. This "prey reduction" value would include only the amount of Chinook salmon catch expected to overlap in time and space with SRKW (i.e., available prey after natural and fisheries mortality). NMFS can quantify and monitor this value, and it directly relates to the extent of effects on prey availability. NMFS expects the extent of take for SRKW in future years to vary, but be within the range of prey reductions analyzed that would have occurred during the most recent decade (2009 to 2018) had the 2019 PST Agreement been in effect. Therefore, NMFS will also use percent reductions in Chinook salmon abundance attributable to the SEAK salmon fisheries as another measure of expected take. Over the most recent decade of Chinook salmon abundances, percent reductions due to SEAK salmon fisheries are estimated to range from 0.01-6.7% in coastal areas (depending on spatial region), and 0.7-1.9% in inland waters. If the percent reduction in abundance in any one year exceeds the maximum of the range of percent reduction in abundance estimated for that region from 2009 to 2018, this will constitute an exceedance of take.

NMFS determined that the incidental take of Mexico DPS humpback whales and Western DPS of Steller sea lions is reasonably certain to occur as a result of interactions with SEAK salmon fisheries. NMFS calculated the expected number of humpback whale and Steller sea lion interactions with SEAK salmon

fishery gear and the portion of those takes expected to be from the ESA-listed DPS to determine the number of incidental take reasonably certain to occur for the Mexico DPS of humpback whales and the Western DPS of Steller sea lions. NMFS can describe an amount of take that is expected to occur, based on stranding data, self-reports, and observer data that contributes to the monitoring of ESA-listed humpback whale and Steller sea lion interactions in the SEAK salmon fisheries; however, NMFS acknowledges that these data are limited. Fishery observers are not required for most of these fisheries, and much of the existing data regarding interactions is opportunistic. Further, ESA-listed and non-listed humpbacks and Steller sea lions co-occur across SEAK and are not readily distinguishable. NMFS is generally not able to identify their DPS of origin. In the absence of precise DPS identification for each take, NMFS employs the best available science to allocate those takes relative to the proportion of occurrence of listed versus non-listed humpback whales and Steller sea lions in SEAK. Furthermore, NMFS notes that the recovery of these DPSs continues despite past rates of take that are essentially identical to what we expect to occur in the future.

***Reasonable and Prudent Measures***

"Reasonable and prudent measures" are measures that are necessary or appropriate to minimize the impact of the amount or extent of incidental take (50 CFR 402.02).

When issuing an ITS, NMFS includes a set of reasonable and prudent measures that would be necessary or appropriate to minimize the impacts to listed species from the SEAK salmon fisheries.

The 2024 BiOp includes the following reasonable and prudent measures:

1. NMFS will ensure management objectives established preseason for the SEAK salmon fisheries are consistent with the terms of the 2019 PST Agreement.

2. NMFS will ensure inseason management actions taken during the course of the State of Alaska's implementation of the fisheries will be consistent with the 2019 PST Agreement.

3. NMFS will ensure catch limits and other measures used to manage fisheries will be monitored adequately to ensure compliance with management objectives.

4. NMFS will ensure the fisheries will be sampled for stock composition and other biological information.

5. NMFS will work to improve monitoring of fishery interactions with ESA-listed marine mammals.

6. NMFS will monitor and review, annually, the estimated percent reductions of SRKW Chinook salmon prey by SEAK salmon fisheries using the best available measures.

***Terms and Conditions***

The terms and conditions implement the reasonable and prudent measures. Reasonable and prudent measures, along with the terms and conditions that implement them, cannot alter the basic design, location, scope, duration, or timing of the action, and may involve only minor changes (50 CFR 402.14(i)). Associated with the issuance of the terms and conditions, the action agency has a continuing duty to monitor the impacts of incidental take and must report the progress of the action and its impact on the species as specified in the ITS (50 CFR 402.14). If the entity to whom a term and condition is directed does not comply with the terms and conditions, protective coverage for the proposed action would likely lapse. The 2024 BiOp/ITS include terms and conditions to implement each of the six reasonable and prudent measures. A point of contact is also identified to ensure reports and notifications required by the BiOp/ITS are annually submitted and available for public dissemination upon request. Given the agency actions analyzed in the BiOp/ITS are being proposed by NMFS, under this scenario that would require NMFS to comply with them in order to implement the associated RPMs (50 CFR 402.14(i)).

*Conservation Recommendations*

Section 7(a)(1) of the ESA directs Federal agencies to use their authorities to further the purposes of the ESA by carrying out conservation programs for the benefit of the threatened and endangered species. These "conservation recommendations" are suggestions regarding discretionary measures to minimize or avoid adverse effects of a proposed action on listed species or critical habitat or regarding the development of information (50 CFR 402.02).

NMFS developed and included in the 2024 BiOp/ITS the following conservation recommendations:

1.  NMFS should work with researchers, states, and Tribal fishery managers on tools to evaluate the effectiveness of harvest management and other potential mitigation measures (habitat restoration and hatchery production and operations) to contribute to the prey base of SRKWs. To that end, NMFS should work on tools to better understand fisheries impacts on SRKWs, including an evaluation of the ability to predict post-season percent reductions due to SEAK salmon fisheries from pre-season model runs.

2.  NMFS should continue to develop a methodology or metrics to help assess the performance of Chinook salmon hatchery programs to increase prey availability for SRKW, and should also continue to evaluate the relationship between prey abundance, high-risk conditions, and SRKW population demographics and health.

3.  In cooperation with ADF&G and other knowledgeable entities, NMFS should develop more specific estimates of eastern and western DPS Steller sea lion mixing rates in specific areas of SEAK salmon fisheries, with priority on high effort and interaction areas.

4.  For humpback whales and Steller sea lions entangled in gear in SEAK and the adjacent portion of the EEZ, NMFS should establish enhanced protocols for data collection (photography and/or biological sampling with genetic analysis) to improve the chances of determining whether the animal is from an ESA-listed DPS.

5.  NMFS should continue to work with the state, Tribes, and other partners to collect additional information and evaluate management options for pinniped predation on salmonids.

## VIII.  Conclusion

Through the EIS and the documentation in this ROD, NMFS considered the purpose and need for the proposed actions, the reasonable range of alternatives set forth in the EIS, and the extent to which the impacts of the actions could be mitigated. NMFS's decision to select Alternative 2 was reached after a comprehensive review of the relevant environmental, economic, and social consequences of the alternatives and considering the comments received during the EIS scoping and review periods. NMFS has taken into account the ESA, the PST, other applicable statutory and policy considerations, and public comments. NMFS selected Alternative 2 as the alternative that best enables NMFS to balance the effects of Alternative 2 and the public interest, while also meeting statutory, regulatory, and national policy requirements, goals, and objectives, and the court orders, through (1) the issuance of an ITS that specifies the limit of incidental take of ESA-listed species in the SEAK salmon fisheries and prescribes the reasonable and prudent measures and terms and conditions to monitor and mitigate the amount and extent of that incidental take and (2) the disbursement of Federal funding to the State of Alaska to monitor and manage the SEAK salmon fisheries that is critical for implementing science-based salmon fishery management under the PST. Alternative 2 also addresses economic, social, cultural, community, Tribal, and environmental justice impacts through continued salmon fishing across SEAK communities.

Considering the information in the EIS for the Issuance of an Incidental Take Statement under the Endangered Species Act for Salmon Fisheries in Southeast Alaska Subject to the Pacific Salmon Treaty and Funding to the State of Alaska to Implement the Pacific Salmon Treaty, and other relevant material

**FIFTH KNUTSEN DECLARATION - 63**
**Case No. 2:20-cv-00417-RAJ-MLP**

available in the record, we certify that NMFS has considered all the alternatives, information, analyses, and objections submitted by the States, Tribal, and local governments and other public commenters for NMFS's consideration in the development of the EIS.


Jennifer Quan
Regional Administrator
West Coast Region

Date: November 21, 2024

Jonathan M. Kurland
Regional Administrator
Alaska Region

## IX.    Literature Cited

NMFS. 2012. Final Environmental Assessment/Regulatory Impact Review For Amendment 12: Revisions to the Fishery Management Plan for the Salmon Fisheries in the EEZ Off the Coast of Alaska. June 2012. NMFS Alaska Region, P.O. Box 21668, Juneau, AK 99802-1668.

NMFS. 2019. Endangered Species Act (ESA) Section 7(a)(2) Biological Opinion and Magnuson-Stevens Fishery Conservation and Management Act Essential Fish Habitat Response Consultation on the Delegation of Management Authority for Specified Salmon Fisheries to the State of Alaska. NMFS Consultation No.: WCR-2018-10660. April 5, 2019. 443p

NMFS. 2024a. Programmatic Environmental Impact Statement (PEIS) Issuance of an Incidental Take Statement under the Endangered Species Act for Salmon Fisheries in Southeast Alaska Subject to the Pacific Salmon Treaty and Funding to the State of Alaska to Implement the Pacific Salmon Treaty. National Marine Fisheries Service West Coast Region. Available at: https://www.fisheries.noaa.gov/resource/document/environmental-impact-statement-issuance-incidental-take-statement-under

NMFS. 2024b. Endangered Species Act (ESA) Section 7(a)(2) Biological Opinion and Magnuson-Stevens Fishery Conservation and Management Act Essential Fish Habitat Response Consultation on the Delegation of Management Authority for Specified Salmon Fisheries in the EEZ to the State of Alaska and Federal Funding to the State of Alaska to Implement the 2019 Pacific Salmon Treaty Agreement. National Marine Fisheries Service West Coast Region. Available at: https://www.fisheries.noaa.gov/resource/document/consultation-delegation-management-authority-specified-salmon-fisheries-and

NMFS. 2024c. Programmatic Environmental Impact Statement (PEIS) Expenditure of Funds to Increase Prey Availability for Southern Resident Killer Whale (SRKW). National Marine Fisheries Service West Coast Region. Available at: https://www.fisheries.noaa.gov/action/prey-increase-program-southern-resident-killer-whales

# EXHIBIT 7

**Endangered Species Act (ESA) Section 7(a)(2) Biological Opinion and Magnuson-Stevens Fishery Conservation and Management Act Essential Fish Habitat Response**

Consultation on the Delegation of Management Authority for Specified Salmon Fisheries in the EEZ to the State of Alaska and Federal Funding to the State of Alaska to Implement the 2019 Pacific Salmon Treaty Agreement

NMFS Consultation Number: WCRO-2024-02314

Action Agencies:    The National Marine Fisheries Service (NMFS) of the National Oceanic and Atmospheric Administration (NOAA)

Affected Species and NMFS' Determinations:

| ESA-Listed Species* | Status | Is Action Likely to Adversely Affect Species? | Is Action Likely To Jeopardize the Species? | Is Action Likely to Adversely Affect Critical Habitat? | Is Action Likely To Destroy or Adversely Modify Critical Habitat? |
|---|---|---|---|---|---|
| Lower Columbia River Chinook Salmon (*Oncorhynchus tshawytscha*) | Threatened | Yes | No | No | No |
| Snake River Fall-run Chinook Salmon (*O. tshawytscha*) | Threatened | Yes | No | No | No |
| Upper Willamette River Chinook Salmon (*O. tshawytscha*) | Threatened | Yes | No | No | No |
| Puget Sound Chinook Salmon (*O. tshawytscha*) | Threatened | Yes | No | No | No |
| Upper Columbia River spring-run Chinook Salmon (*O. tshawytscha*) | Endangered | No | No | No | No |
| Snake River spring/summer-run Chinook Salmon (*O. tshawytscha*) | Threatened | No | No | No | No |

| | | | | | |
|---|---|---|---|---|---|
| California Coastal Chinook Salmon (*O. tshawytscha*) | Threatened | No | No | No | No |
| Central Valley spring-run Chinook Salmon (*O. tshawytscha*) | Threatened | No | No | No | No |
| Sacramento River winter-run Chinook Salmon (*O. tshawytscha*) | Endangered | No | No | No | No |
| Central California Coast Coho Salmon (*Oncorhynchus kisutch*) | Endangered | No | No | No | No |
| Southern Oregon/Northern California Coast Coho Salmon (*O. kisutch*) | Threatened | No | No | No | No |
| Oregon Coast Coho Salmon (*O. kisutch*) | Threatened | No | No | No | No |
| Lower Columbia River Coho Salmon (*O. kisutch*) | Threatened | No | No | No | No |
| Columbia River Chum Salmon (*Oncorhynchus keta*) | Threatened | No | No | No | No |
| Hood Canal summer-run Chum salmon (*O. keta*) | Threatened | No | No | No | No |
| Snake River Sockeye Salmon (*Oncorhynchus nerka*) | Endangered | No | No | No | No |
| Lake Ozette Sockeye Salmon (*O. nerka*) | Threatened | No | No | No | No |
| Puget Sound steelhead (*Oncorhynchus mykiss*) | Threatened | No | No | No | No |
| Upper Columbia River steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| Snake River Basin steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| Middle Columbia River steelhead (*O. mykiss*) | Threatened | No | No | No | No |

| | | | | | |
|---|---|---|---|---|---|
| Upper Willamette River steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| Lower Columbia River steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| Northern California Coast steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| California Central Valley steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| Central California Coast steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| South Central California Coast steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| Southern California Coast steelhead (*O. mykiss*) | Endangered | No | No | No | No |
| Southern Resident killer whales (*Orcinus orca*) | Endangered | Yes | No | Yes | No |
| Humpback whale (*Megaptera novaeangliae*) Mexico DPS | Threatened | Yes | No | No | No |
| Western Steller Sea Lion (*Eumetopias jubatus*) | Endangered | Yes | No | No | No |
| Blue Whale (*Balaenoptera musculus*) | Endangered | No | No | No | No |
| Fin Whale (*B. physalus*) | Endangered | No | No | No | No |
| Sei Whale (*B. borealis*) | Endangered | No | No | No | No |
| North Pacific Right Whale (*Eubalaena japonica*) | Endangered | No | No | No | No |
| Sperm Whale (*Physeter microcephalus*) | Endangered | No | No | No | No |
| Western North Pacific Gray Whale (*Eschrichtius robustus*) | Endangered | No | No | No | No |

*Please refer to section 2.11 for the analysis of species or critical habitat that are not likely to be adversely affected.

| Fishery Management Plan That Identifies EFH in the Project Area | Does Action Have an Adverse Effect on EFH? | Are EFH Conservation Recommendations Provided? |
|---|---|---|
| Salmon Fisheries in the EEZ Off Alaska | No | No |
| Scallop Fishery Off Alaska | No | No |
| Groundfish of the Gulf of Alaska | No | No |
| Pacific Coast Salmon | No | No |
| Coastal Pelagic Species | No | No |
| Pacific Coast Groundfish | No | No |
| U.S. West Coast Fisheries for Highly Migratory Species | No | No |

**Consultation Conducted By:** National Marine Fisheries Service, West Coast and Alaska Regions

**Issued By**:

Jennifer Quan
Regional Administrator
NOAA's National Marine Fisheries Service
West Coast Regional Office

Jonathan M. Kurland
Regional Administrator
NOAA's National Marine Fisheries Service
Alaska Regional Office

**Date**:   September 25, 2024

**FIFTH KNUTSEN DECLARATION - 70**
**Case No. 2:20-cv-00417-RAJ-MLP**

## TABLE OF CONTENTS

**Table of Contents** ................................................................................................................. i

**Table of Tables** ................................................................................................................... iv

**Table of Figures** ................................................................................................................. xi

**Acronyms and Abbreviations** ......................................................................................... xix

**1. Introduction** ..................................................................................................................... 1

  1.1  Background ....................................................................................................................... 1

  1.2  Consultation History ....................................................................................................... 4

  1.3  Proposed Federal Action ................................................................................................. 8

**2. Endangered Species Act: Biological Opinion And Incidental Take Statement** ....... 29

  2.1  Analytical Approach ...................................................................................................... 30

  2.2  Rangewide Status of the Species and Critical Habitat ................................................. 32

        2.2.1    Status of Listed Species ................................................................................. 33

        2.2.2    Status of the Chinook Salmon ESUs ............................................................ 37

        2.2.3    Status of the Marine Mammal DPSs ........................................................... 103

        2.2.4    Climate Change; Effects on Fish ................................................................. 159

  2.3  Action Area ................................................................................................................. 166

  2.4  Environmental Baseline .............................................................................................. 167

        2.4.1    Fisheries ....................................................................................................... 168

        2.4.2    Hatchery production ..................................................................................... 194

        2.4.3    Habitat ......................................................................................................... 207

        2.4.4    Southern Resident Killer Whales ................................................................ 211

        2.4.5    Mexico DPS Humpback Whales .................................................................. 238

        2.4.6    Western DPS Steller Sea Lion ..................................................................... 243

  2.5  Effects of the Action ................................................................................................... 246

        2.5.1    Retrospective Analysis ................................................................................ 246

        2.5.2    Chinook Salmon ........................................................................................... 254

        2.5.3    Southern Resident Killer Whales ................................................................ 305

        2.5.4    Humpback Whales and Steller Sea Lions .................................................... 325

  2.6  Cumulative Effects ..................................................................................................... 342

  2.7  Integration and Synthesis ............................................................................................ 347

        2.7.1    Lower Columbia River Chinook Salmon .................................................... 348

| | | | |
|---|---|---|---|
| | 2.7.2 | Upper Willamette Chinook Salmon | 354 |
| | 2.7.3 | Snake River Fall-Run Chinook Salmon | 358 |
| | 2.7.4 | Puget Sound Chinook Salmon | 362 |
| | 2.7.5 | Southern Resident Killer Whales | 366 |
| | 2.7.6 | Mexico DPS Humpback Whale | 379 |
| | 2.7.7 | Western DPS Steller Sea Lion | 380 |
| 2.8 | Conclusion | | 381 |
| 2.9 | Incidental Take Statement | | 381 |
| | 2.9.1 | Amount or Extent of Take | 382 |
| | 2.9.2 | Effect of the Take | 388 |
| | 2.9.3 | Reasonable and Prudent Measures | 388 |
| | 2.9.4 | Terms and Conditions | 389 |
| 2.10 | Conservation Recommendations | | 391 |
| 2.11 | Reinitiation of Consultation | | 392 |
| 2.12 | "Not Likely to Adversely Affect" Determinations | | 392 |
| | 2.12.1 | Chinook Salmon | 393 |
| | 2.12.2 | Coho Salmon | 395 |
| | 2.12.3 | Chum Salmon | 395 |
| | 2.12.4 | Sockeye Salmon | 395 |
| | 2.12.5 | Steelhead | 396 |
| | 2.12.6 | Marine Mammals | 397 |

**3. Magnuson–Stevens Fishery Conservation and Management Act Essential Fish Habitat Response** ................................................................................................ **399**

| | | |
|---|---|---|
| 3.1 | Essential Fish Habitat Affected by the Project | 400 |
| 3.2 | Adverse Effects on Essential Fish Habitat | 400 |
| 3.3 | Essential Fish Habitat Conservation Recommendations | 402 |
| 3.4 | Supplemental Consultation | 402 |

**4. Data Quality Act Documentation and Pre-Dissemination Review** ......................... **402**

| | | |
|---|---|---|
| 4.1 | Utility | 402 |
| 4.2 | Integrity | 403 |
| 4.3 | Objectivity | 403 |

**5. References** ................................................................................................ **404**

**6. Appendices** ............................................................................................... **6-1**

**Appendix A. Modeling Inputs and Results for Retrospective Analysis Scenarios .............. 6-1**

    Section 1: Summary of Model Scenario Inputs ................................................. 6-2

    Section 2: Summary of Stock Specific Exploitation Rates ............................... 6-4

    Section 3: Summary of Puget Sound Chinook Escapements ........................... 6-24

**Appendix B. Modeling Results for SRKW Environmental Baseline ................................. 6-35**

**Appendix C. Hatchery Program ESA Section 7 Consultations ........................................... 6-45**

**Appendix D. Methods for SRKW Analyses ......................................................................... 6-65**

**Appendix E. Modeling Results for SRKW Effects ............................................................. 6-70**

**Appendix F. Habitat restoration projects funded by Fiscal Year with PST appropriated funds ............................................................................................................. 6-74**

**Appendix G. Implementation of 2019 PST Agreement, Chinook salmon Annex through 2023 ............................................................................................................... 6-75**

M/SI related to entanglement and hook ingestion may reduce fitness, growth, reproductive success, and may cause death of the affected individual. Entanglements may restrict an animal's ability to swim, avoid predators, or foraging efficiently; cause physical injuries; or otherwise increase energy expenditures that reduce overall fitness. NMFS has proposed guidelines (85 FR 53763, August 31, 2020) and is testing methods (e.g., targeted acoustic startle technology, Götz and Janik (2016)) for safely deterring marine mammals away from troll fishing gear and other in-water gear that may reduce Steller sea lion interaction rates.

Although entanglements and hook ingestions may affect individual Steller sea lions, we do not expect these interactions to have population-level effects on the western DPS of this species. The current population trend for Steller sea lions in SEAK indicates that this type and level of interaction with salmon fisheries is not hindering population growth. Factors such as climate-induced changes in prey distribution and reduced winter prey abundance appear to have a greater influence on population dynamics of western DPS Steller sea lions than entanglements in SEAK fisheries (NMFS 2020a; Maniscalco 2023). Overall, non-pups and pups in the western DPS increased 1.05% and 0.50% per year, respectively, between 2007 and 2022; however, there is high variability in population trends among subregions (Sweeney et al. 2023). Western DPS population abundance indices in Alaska show increasing trends in all subregions except the two westernmost subregions (western and central Aleutian Islands). Because the commercial salmon troll fishery does not occur west of 144 degrees W. Longitude (an area where the population is increasing), it is extremely unlikely that the fishery is contributing to the observed declines in those two subregions. Western DPS Steller sea lions that occur east of 144 degrees W. Longitude and in the SEAK salmon fishing area are increasing.

After reviewing and analyzing the current status of the listed species and critical habitat, the environmental baseline within the action area, the effects of the proposed actions, and cumulative effects, it is NMFS's biological opinion that the proposed action is not likely to appreciably reduce the likelihood of both survival and recovery of the western DPS Steller sea lion.

## 2.8    Conclusion

After reviewing and analyzing the current status of the listed species and critical habitat, the environmental baseline within the action area, the effects of the proposed action, the effects of other activities caused by the proposed action, and the cumulative effects, it is NMFS' biological opinion that the proposed action is not likely to jeopardize the continued existence of the LCR Chinook Salmon, UWR Chinook Salmon, SRFC Salmon, and Puget Sound Chinook Salmon ESUs, and the SRKW DPS, the Mexico Humpback whale DPS, and the western Steller sea lion DPS or destroy or adversely modify designated critical habitat for SRKW.

## 2.9    Incidental Take Statement

Section 9 of the ESA and federal regulations pursuant to section 4(d) of the ESA prohibit the take of endangered and threatened species, respectively, without a special exemption. "Take" is defined as to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture or collect, or to attempt to engage in any such conduct. "Harm" is further defined by regulation to include an act that actually kills or injures fish or wildlife, such as a significant habitat modification or degradation that actually kills or injures fish or wildlife by significantly impairing essential behavioral

patterns, including breeding, spawning, rearing, migrating, feeding, or sheltering (50 CFR 222.102). "Harass" is further defined by guidance as to "create the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." "Incidental take" is defined by regulation as takings that result from, but are not the purpose of, carrying out an otherwise lawful activity conducted by the federal agency or applicant (50 CFR 402.02). Section 7(b)(4) and section 7(o)(2) provide that taking that is incidental to an otherwise lawful agency action is not considered to be prohibited taking under the ESA if that action is performed in compliance with the terms and conditions of this ITS.

The ESA does not prohibit the take of threatened species unless special regulations have been promulgated, pursuant to ESA section 4(d), to promote the conservation of the species. Federal regulations promulgated pursuant to section 4(d) of the ESA extend the section 9 prohibitions to the take of Mexico DPS humpback whales (50 C.F.R. § 223.213), and LCR Chinook, UWR Chinook, SRFC, and Puget Sound Chinook salmon (50 C.F.R. § 223.203).

This incidental take statement specifies the impact of any incidental taking of endangered or threatened species. It also provides reasonable and prudent measures that are necessary or appropriate to minimize impacts and sets forth terms and conditions in order to implement the reasonable and prudent measures.

### 2.9.1    Amount or Extent of Take

In the Biological Opinion, NMFS determined that incidental take is reasonably certain to occur as follows:

For purposes of this consultation NMFS assumed that fisheries in SEAK will be managed up to the limits of allowable catch specified in Chapter 3 of the PST Agreement. As indicated in the description of the proposed actions, the PST Agreement establishes upper limits on allowable catch that may be authorized by U.S. domestic management authorities, but does not itself authorize the conduct of any fishery. Fisheries in the EEZ in SEAK occur subject to NMFS' delegation of management to the State of Alaska and regulations issued by the ADF&G conforming with the MSA, Salmon FMP, and the PST Agreement. The State of Alaska manages and monitors the salmon fisheries in SEAK with assistance through federal grants to implement the PST. The expected take in the SEAK salmon fisheries in both federal and state waters is therefore described in the following incidental take statement for the ESA-listed species adversely affected by the proposed actions: four Chinook salmon ESUs and three marine mammal DPSs.

### 2.9.1.1 Chinook Salmon

The incidental take of listed Chinook salmon from the four ESA-listed ESUs (LCR Chinook, UWR Chinook, SRFC, and Puget Sound Chinook salmon) in the SEAK fisheries will vary from year to year depending on the stock abundances, annual variation in migratory patterns, and fishery management measures used to set and implement fishing levels consistent with the 2019 PST Agreement. It is not possible to count actual numbers of fish from each ESA-listed Chinook ESU directly taken in the fishery, as natural-origin fish from these ESUs are not distinguishable from fish from non-ESA-listed Chinook ESUs or from unmarked hatchery

Chinook salmon simultaneously encountered in the fishery. Therefore, we have identified two surrogates for the extent of take for the four listed ESUs.

First, the incidental take of ESA-listed Chinook salmon in SEAK fisheries will be limited on an annual basis by the provisions of Chapter 3, Annex IV of the PST Agreement that define the limits of Chinook catch and total mortality for each fishery (see Section 1.3, Proposed Federal Action). Second, estimates of the stock composition of the catch are developed annually, using indicator stocks that represent the four listed ESUs and their stratas and life histories. These estimates are informative as to the proportion of the catch and total mortality relevant to each listed ESU. As explained in Section 1.3, Proposed Federal Action, fisheries are managed for limits on Chinook catch and total mortality based on preseason and inseason abundance estimates, and the catch is sampled to determine stock composition of hatchery fish. These sampling efforts provide postseason estimates of total Chinook salmon catch, total mortality, and stock composition which can be used as surrogates for the incidental take of ESA-listed Chinook salmon because they can be monitored directly and readily assessed for compliance, and the information can be used by NMFS to determine the magnitude of take of the four ESA-listed Chinook ESU affected, as explained further below.

*Total catch and mortality levels*

Chapter 3 of the PST Agreement requires management responses when Chinook salmon total catch and/or total mortality in SEAK AABM fisheries exceeds their limits (2019 PST Agreement, Chapter 3, paragraphs 4, 6, 7(b)). The responses are specific to the circumstances but share a common goal, i.e., to result in fisheries that do not exceed the PST catch limits or to reduce the difference between preseason fishery planning and performance as evaluated postseason. For example, if the actual Chinook catch in the SEAK AABM fishery exceeds the preseason catch limit (overage) then the overage shall be paid back in the fishing year after the overage occurs (paragraph 6(h)(i)) creating a substantial disincentive to exceed the catch limit. The provisions of Chapter 3 reasonably guard against our surrogate take indicator exceeding the level we have analyzed in our biological opinion by incorporating overage responses.

In our Effects analysis, we assume that total catch and mortality levels will either be within the level set annually through the PST process and consistent with the limits described in Chapter 3, or, in the case of an exceedance, that responses will be implemented as described in Chapter 3. Total catch and mortality levels are directly related to the amount of take NMFS has analyzed and expects in our Opinion of each of the listed Chinook ESUs, because that take is generally proportional to the overall catch or mortality of Chinook in the SEAK AABM fishery as evaluated in the Retrospective Analysis. Therefore, as one of our take surrogates, if the Chinook salmon total catch or total mortality limits described in Chapter 3 are exceeded and responses are not implemented as described in Chapter 3 of the 2019 PST Agreement in a given year when necessary, this would exceed the extent of take analyzed in the Opinion for the four threatened ESUs affected by the fishery.

*Indicator stock exploitation rates*

However, since the AABM framework is not stock-specific, there is potential for any one of the ESA-listed Chinook salmon ESUs to unintentionally experience ERs outside the range of our analysis, even if the total catch or total mortality limits described in Chapter 3 are not exceeded. This could occur if a particular listed ESU or stock was caught in proportions that exceeded the historical contributions of that ESU or stock to SEAK salmon fisheries observed in our analysis. The data necessary to determine if take exceeds our expectations for a listed ESU independently will be available annually through the CTC ERA. Recall from Section 2.5.1., the PSC CTC conducts an annual ERA using CWT recoveries in each year to assess impacts on CWT groups representing individual stocks or stock aggregates. NMFS will use this analysis for evaluating performance in the 2019 PST Agreement. A strength of the ERA is that it produces annual post-season estimates of stock-specific ERs using empirical CWT recoveries that occurred during the year being estimated. Similar to our first surrogate, the amount of take associated with each ESU independently, and each stock within an ESU, is still directly related to total catch and fishery mortality in that specific year for that stock specifically.

We are using stock-specific results from the CTC ERA analysis rather than the FRAM to establish take surrogates for the four ESUs considered in this opinion for several reasons: (1) CTC ERA-derived post-season estimates of ER are based on empirical CWT recoveries that occurred during the year for which the ER is being estimated; (2) the CTC ERA-derived post-season estimates ER are available in a more timely manner than those derived using the FRAM, often more than one year sooner; (3) use of the CTC ERA provides continuity and consistency with the information used to assess compliance with the 2019 PST Agreement including provisions for management of the SEAK AABM Chinook fishery, as results of the ERA are required as inputs to the annual calibration of the PSC Chinook Model; (4) the CTC ERA estimates ERs for the same time period as the retrospective FRAM analysis for indicator stocks that are representative of the four Chinook ESUs; (5) the FRAM and CTC ERA generally show similar patterns in exploitation rates over the 1999-2018 period used in the analysis. Therefore, we use the stock-specific results from the CTC ERA analysis, rather than the FRAM, to establish the independent take surrogates for the four Chinook salmon ESUs considered in this opinion.

Chapter 3 of the PST Agreement includes the specific indicator stocks for which the CTC assesses fishing related mortality by fishery and year and that information can be used to assess the performance of the fisheries relative to the catch and mortality limits in Chapter 3. Populations or life-history components in the four listed ESUs that are significantly affected by the proposed actions are represented by corresponding PSC indicator stocks. Our definition of populations or ESU life-history components that are significantly affected by the Proposed Action are those that currently experience greater than 10% of their total marine area fishery ER in the SEAK AABM fishery. The ERs provided in the annual CTC ERA analysis for those indicator stocks that are significantly affected by the proposed actions provides the information NMFS can use to assess fishing mortality relative to the ESU-specific ERs during the time frame of the Retrospective Analysis to determine if the extent of take resulting from the proposed actions is consistent with our analysis in this opinion.

Our analysis indicates take varies across the various life-history components and populations of the affected Chinook salmon ESUs. Therefore, individual Chinook salmon ESU take surrogates are based on the CTC ERA postseason ER in the SEAK AABM fishery during the retrospective analysis period (1999-2018) for representative PSC indicator stocks for each of the ESUs. The indicator stocks listed below represent the significantly affected populations or ESU life-history components in the SEAK AABM fishery based on the results of the retrospective analysis, as defined above. The Upper Willamette and Snake River fall Chinook ESUs each contain only one life history and the Snake River fall Chinook ESU is comprised of a single population. The LCR and Puget Sound populations comprise multiple life histories and ESUs. The following take surrogates account for those factors.

The ESU-specific take surrogates for the Upper Willamette, Snake River Fall Chinook and Puget Sound Chinook ESU are the highest observed single year postseason ERs in the SEAK AABM fishery during the analysis period (1999-2018), calculated using the CTC ERA, for each of the following PSC indicator stocks:

- Willamette spring (WSH) in the Upper Willamette Chinook ESU;
- Lyons Ferry in the Snake River fall Chinook ESU;
- Nooksack spring fingerling (NSF) and Skagit summer fingerling (SSF) indicator stocks in the Puget Sound Chinook ESU.

Because the post-season estimates in both the CTC ERA and FRAM validation are updated periodically, we do not provide numeric take surrogates here but focus on the data source and method, e.g., CTC ERA derived estimates. As the CTC ERA is run on an annual basis, there can occasionally be changes to the historical ERs, for example if there have been corrections or updates to historical CWT recovery data. Therefore, as future CTC ERA runs are completed, values could change slightly, but the criteria NMFS would use in determining if the extent of take resulting from the proposed actions is consistent with our analysis and would remain the same (i.e., the highest observed single year postseason ERs in the SEAK AABM fishery during the analysis period (1999-2018)).

For the LCR Chinook ESU, we use dual take surrogates - specifically the escapement goals for the bright and spring components of the LCR Chinook ESU:

- The Lewis River wild stock (LRW) is the PSC indicator stock for the Lower Columbia River bright component of the ESU.  The escapement goal used for management purposes for the North Fork Lewis River population is 5,700 salmon. Annual escapements averaged 13,100 salmon between 2012 and 2023 and, with few exceptions, have met or exceeded the goal since at least 1980.  Take would be exceeded should the ER for the LWR stock exceed the CTC ERA-calculated highest single year observed postseason ER value during the analysis period (1999-2018) and the escapement goal was not met in that year.
- The spring component of the LCR Chinook ESU does not currently have a PSC indicator stock. Therefore, the best available information for this component of the ESU for impacts in the SEAK AABM Chinook fishery is the results of the FRAM validation data series in the retrospective analysis. The historic spawning habitat for the spring-run Chinook salmon populations in Washington is now largely inaccessible to salmon due to impassable dams. The principle management objective for these

**FIFTH KNUTSEN DECLARATION - 78**
**Case No. 2:20-cv-00417-RAJ-MLP**

populations is to meet hatchery escapement goals for Cowlitz and Lewis river spring Chinook salmon. The Cowlitz Salmon Hatchery has met its escapement objective of 1,337 salmon in 10 out of the last 12 years, with the last five years experiencing two shortfalls. The Lewis River Salmon Hatchery has met its escapement objective of 1,380 salmon in 7 out of the last 12 years, with only one shortfall over the last five years. Take would be exceeded should the FRAM-based ER in SEAK fisheries for the LCR spring component exceed the FRAM calculated highest single year observed postseason ER value during the analysis period (1999-2018) in the FRAM validation scenario in the retrospective analysis and the hatchery escapement goals were not met in that year.

### 2.9.1.2 Southern Resident Killer Whales

The harvest of salmon that may occur under the proposed action is likely to result in some level of harm constituting take to SRKW by reducing prey availability, which may cause animals to forage for longer periods, travel to alternate locations, or abandon foraging efforts. All individuals of the SRKW DPS have the potential to be adversely affected across their range. We cannot directly monitor the extent of take because the available data currently do not quantify the impacts to foraging behavior or any changes to health of individual killer whales in the population from a specific amount of removal of potential prey resulting from the SEAK salmon fisheries as quantitative regression analyses have limitations (see Section 2.5.3.1). Therefore, we identify here two surrogates for the extent of take for SRKW. Both surrogates measure the amount of fish removed by the SEAK salmon fisheries because the amount of fish removed by the fisheries relates to the effects on SRKWs, that is, the harm that results from the reduction in prey availability. Both surrogates can be monitored directly and readily assessed for compliance.

First, NMFS is using the expected level of Chinook salmon catch in SEAK fisheries, which we can quantify and monitor, as a surrogate for incidental take of SRKW. This extent of take for SRKW is therefore the same as the extent of expected catch of Chinook salmon that is described by the provisions of Chapter 3, Annex IV of the PST Agreement that define annual catch or total mortality limits on Chinook salmon (including ESA-listed and non ESA-listed Chinook salmon), as described above in Section 2.9.1.1. If the Chinook salmon total catch or total mortality limits described in Chapter 3 are exceeded and responses are not implemented as described in Chapter 3 of the 2019 PST Agreement in a given year when necessary, this would exceed the extent of take analyzed in the Opinion.

Second, NMFS will also monitor the percent reduction of Chinook salmon prey attributed to the SEAK salmon fisheries as a surrogate for incidental take of SRKWs. This "prey reduction" value, as analyzed in the Effects section, includes only the amount of Chinook salmon catch expected to overlap in time and space with SRKW (i.e., available prey after natural and fisheries mortality). We can quantify and monitor this value, and it directly relates to the extent of effects on prey availability. The extent of take NMFS expects for SRKWs in future years is expected to vary but be within the range of prey reductions analyzed that would have occurred during the most recent decade (2009 to 2018) had the 2019 PST Agreement been in effect. Therefore, NMFS will use percent reductions in Chinook salmon abundance attributable to the SEAK salmon fisheries as another measure of expected take in addition to the surrogate described

above. Over the most recent decade of Chinook salmon abundances, percent reductions due to SEAK salmon fisheries are estimated to range from 0.01-6.7% in coastal areas (depending on spatial region), and 0.7-1.9% in inland waters. If the percent reduction in abundance in any one year exceeds the maximum of the range of percent reduction in abundance estimated for that region from 2009 to 2018, this will constitute an exceedance of take.

### 2.9.1.3  Mexico DPS Humpback Whales and Western DPS Steller Sea Lions

In the Biological Opinion, NMFS determined that the incidental take of Mexico DPS humpback whales and Western DPS Steller sea lions is reasonably certain to occur as a result of interaction with SEAK salmon fisheries under the proposed actions. ESA-listed species interactions with SEAK salmon fisheries considered as take in the biological opinion include entanglement and blow-throughs[72] in a net or other component of gear such as buoy extender lines or other types of salmon fishing lines that could result in or contribute to an entanglement. Interactions that include hooking injuries from troll gear, with or without entanglement of the fishing line, also occur and are considered interactions. These hooking and entanglement interactions are all considered take, however they may not lead to M/SI in all cases. We conclude that the amount of take that is reasonably certain to occur in the SEAK fisheries and exempted in this ITS is up to 4 Mexico DPS humpback whale interactions on average each year, where 0.26 interactions per year are expected to cause M/SI (1 M/SI every 3 years). We also expect 1 Western DPS Steller sea lion M/SI interaction on average each year that is expected to result in 1 M/SI on average each year[73].

While we are able to describe an amount of take that we expect to occur, based on stranding data, self-reports, and observer data that contributes to monitoring of ESA listed humpback and Steller sea lion interactions in the SEAK salmon fisheries, we acknowledge that these data are limited. Fishery observers are not required for most of these fisheries, and much of the existing data regarding interactions is opportunistic. Further, ESA listed and non-listed humpbacks and Steller sea lions co-occur in the action area and are not readily distinguishable, and we are generally not able to identify their DPS of origin. In the absence of precise DPS identification for each take, we employ the best available science to allocate those takes relative to the proportion of occurrence of listed versus non-listed humpback whales and Steller sea lions in SEAK. Furthermore, we note that the recovery of these DPSs continues despite past rates of take that are essentially identical to what we expect to occur in the future.

Based on the historical record of the opportunistic reports described in the Effect Analysis above, Table 103 summarizes the expected number of interactions with SEAK salmon fishery gear of each species and the portion expected to be ESA-listed. The portion of takes expected to be ESA-listed is based on the best available information on the percent of listed species found in SEAK (detailed in Section 2.5.4). We would consider the extent of take to be exceeded if the

---

[72] See a description of a blow-through in Section 2.5.4.1 Marine Mammals Interactions in SEAK Salmon Fisheries.

[73] The anticipated take of ESA-listed humpback whales and Steller sea lions described in the Effects Analysis have been rounded up to the nearest whole number, except for the M/SI takes of ESA-listed humpback whales, which are expected to be less than 1 each year. For these M/SI takes of ESA-listed humpback whales, we estimate one take every three years is reasonably certain to occur.

number of interactions summarized in the annual Human-caused mortality and injury of NMFS-managed marine mammal stocks or summarized in SARs for the stocks exceed the take numbers from Table 103. Take is calculated based on interactions and not allocated differently based on severity or if the interaction leads to M/SI; however, the portion of take that is expected to lead to M/SI is provided for context.

Table 103. The amount of annual take of humpback whales and Steller sea lions that is reasonably likely to occur from incidental interactions with SEAK salmon fishing (values are rounded up).

| Species | Take | # of Takes by Species | # of Takes From ESA-Listed Portion of Species |
|---|---|---|---|
| Humpback whale | Interaction | 157 | 4 |
| | M/SI | 14 | 0.26 (1 every 3 years) |
| Steller sea lion | Interaction | 34 | 1 |
| | M/SI | 33 | 1 |

## 2.9.2   Effect of the Take

In the Biological Opinion, NMFS determined that the amount or extent of anticipated take, coupled with other effects of the proposed action, is not likely to result in jeopardy to the species or destruction or adverse modification of critical habitat.

### 2.9.3   Reasonable and Prudent Measures

"Reasonable and prudent measures" refer to those actions NMFS considers necessary or appropriate to minimize the impact of the incidental take on the species (50 CFR 402.02).

NMFS concludes that the following reasonable and prudent measures are necessary and appropriate to minimize the impacts to listed species from the SEAK salmon fisheries considered in this Biological Opinion:

1. NMFS will ensure management objectives established preseason for the SEAK salmon fisheries is consistent with the terms of the 2019 PST Agreement.
2. NMFS will ensure inseason management actions taken during the course of the State of Alaska's (interchangeable with "ADF&G") implementation of the fisheries will be consistent with the 2019 PST Agreement.
3. NMFS will ensure catch limits and other measures used to manage fisheries will be monitored adequately to ensure compliance with management objectives.
4. NMFS will ensure the fisheries will be sampled for stock composition and other

biological information.

5. NMFS will work to improve monitoring of fishery interactions with ESA-listed marine mammals.

6. NMFS will monitor and review, annually, the estimated percent reductions of SRKW Chinook salmon prey by SEAK salmon fisheries using the best available measures.

### 2.9.4 Terms and Conditions

In order to be exempt from the prohibitions of section 9 of the ESA, the federal action agency must comply (or must ensure that any applicant complies) with the following terms and conditions. The NMFS or any applicant has a continuing duty to monitor the impacts of incidental take and must report the progress of the actions and impacts on the species as specified in this ITS (50 CFR 402.14). If the entity to whom a term and condition is directed does not comply with the following terms and conditions, protective coverage for the proposed actions would likely lapse.

These terms and conditions constitute no more than a minor change to the proposed actions because they are consistent with the basic design of the proposed actions.

1. The following terms and conditions implement reasonable and prudent measure 1:

    1a. NMFS, specifically the West Coast Region, in cooperation with ADF&G shall ensure that management objectives established by ADF&G preseason for the SEAK fisheries are consistent with all applicable provisions of Annex IV of the PST.

    1b. NMFS, specifically the West Coast Region, in cooperation with ADF&G shall annually provide the point of contact (listed in number 7 below) with a final ERA estimate, to evaluate whether the extent of incidental take expected to occur is exceeded as described in Section 2.9.1.1 of the ITS prior to the next season.

2. The following terms and conditions implement reasonable and prudent measure 2:

    2a. NMFS, specifically the West Coast Region, in cooperation with ADF&G shall ensure that all in-season management actions taken by ADF&G during the course of the SEAK fisheries are consistent with all applicable provisions of Annex IV of the PST.

3. The following terms and conditions implement reasonable and prudent measures 3:

    3a. NMFS, specifically the West Coast Region, in cooperation with ADF&G shall ensure that all limits described in the proposed action considered in this Opinion were adhered to in all SEAK salmon fisheries through postseason monitoring reports, including any necessary responses required per the 2019 PST Agreement, by the date specified below in Term and Condition 7.

    3b. NMFS, specifically the West Coast Region, in cooperation with ADF&G shall ensure that all limits on incidental mortality specified in paragraph and

subsections 4(a) and 4(f) of the Chapter 3 of the 2019 PST Agreement were adhered to by ADF&G while conducting all SEAK fisheries through postseason monitoring reports by the date specified below in Term and Condition 7.

3c. NMFS, specifically West Coast Region, in cooperation with ADF&G shall assess annually individual Chinook salmon ESU take surrogates, which are based on the CTC ERA postseason ER in the SEAK AABM fishery during the retrospective analysis period (1999-2018), for representative PSC indicator stocks for each of the ESUs, to determine whether the extent of take exempted for listed salmon was exceeded.

4. The following terms and conditions implement reasonable and prudent measure 4:

4a. NMFS, specifically the West Coast Region, in cooperation with ADF&G shall monitor the catch for stock composition and other biological information at levels of monitoring and sampling effort that are comparable to those used in recent years and needed to manage and evaluate the fisheries consistent with the 2019 PST Agreement, Chapter 3.

5. The following terms and conditions implement reasonable and prudent measure 5:

5a. NMFS, specifically the Alaska Region, will collaborate with ADF&G to encourage fishermen to fulfill their reporting obligations under section 118 of the MMPA by self-reporting incidental mortality and injury of marine mammals during the course of fishing.

5b. NMFS, specifically the Alaska Fisheries Science Center, will continue to work with ADF&G to evaluate the feasibility of observing State fisheries through the Alaska Marine Mammal Observer Program to generate more reliable estimates of fishery interactions with marine mammals. NMFS will use the MMPA List of Fisheries categorization and known data gaps to identify which fisheries to prioritize.

5c. NMFS, specifically the Alaska Region, will encourage ADF&G to continue Steller sea lion haul out surveys in SEAK in order to document a minimum number of Steller sea lions interactions with fishing gear.

6. The following terms and conditions implement reasonable and prudent measure 6:

6a. NMFS, specifically the West Coast Region, will estimate, using the best available science, annual fishery abundance reductions of age 3+ Chinook salmon by SEAK salmon fisheries. Post-season estimates will be calculated when post-season data and new model runs become available. The annual estimated reduction in Chinook salmon attributable to the SEAK salmon fisheries represents the difference between end of year abundances absent fishing and end of year abundances after SEAK fisheries occur (e.g., total mortalities resulting from fisheries across the entire management year). This shall be done using the methodology developed by the PFMC's Ad Hoc Workgroup for the stratifications defined by the PFMC SRKW Ad Hoc Workgroup: NOF, Oregon coast, California

coast, Salish Sea, and SWWCVI. Percent reductions for each region will be calculated from the annual estimated reduction attributable to fishing mortality relative to the starting (pre-fishing) abundance at the beginning of the model run (Oct 1).

6b. NMFS, specifically the West Coast Region, will compare the annual estimated percent Chinook salmon age 3+ reductions (based on validated post-season runs) in the five spatial regions due to SEAK salmon fisheries (as in 6a) to the range of percent reductions during the most recent decade (2009 to 2018), described in Appendix E Table E1b, which represent the reductions that would have been expected in those years had the 2019 PST Agreement been in effect. NMFS WCR will consider the percent reductions to be within the range of effects analyzed and consistent with the ITS if percent reductions do not exceed the high end of the ranges per region. These values will be reported to the NMFS point of contact, specified in Term and Condition 7, as soon as possible following the completion of each new post-season model run.

7. NMFS, in cooperation with ADF&G, will ensure reports and notifications required by the Biological Opinion and this incidental take statement are annually electronically available for review by August 1 with the NMFS point of contact on this consultation:

Jeromy Jording (360-753-9576, jeromy.jording@noaa.gov)

If the Parties prefer, then written materials may also be submitted to:

NMFS – West Coast Region
Sustainable Fisheries Division
1009 College St., SE, Suite 210, Lacey, WA 98503

## 2.10    Conservation Recommendations

Section 7(a)(1) of the ESA directs federal agencies to use their authorities to further the purposes of the ESA by carrying out conservation programs for the benefit of the threatened and endangered species. Specifically, "conservation recommendations" are suggestions regarding discretionary measures to minimize or avoid adverse effects of a proposed action on listed species or critical habitat or regarding the development of information (50 CFR 402.02).

NMFS believes the following conservation recommendations are consistent with these obligations, and therefore should be implemented by NMFS.

1. NMFS should work with researchers, states and tribal fishery managers on tools to evaluate effectiveness of harvest management and other potential mitigation measures (habitat restoration and hatchery production and operations) to contribute to the prey base of SRKWs. To that end, NMFS should work on tools to better understand fisheries impacts SRKWs, including an evaluation of the ability to predict post-season percent reductions due to SEAK salmon fisheries from pre-season model runs.

2. NMFS should continue to develop a methodology or metrics to help assess performance of Chinook salmon hatchery programs to increase prey availability for SRKW, and should also continue to evaluate the relationship between prey abundance, high risk conditions, and SRKW population demographics and health.

3. In cooperation with ADF&G and other knowledgeable entities, NMFS should develop more specific estimates of eastern and western DPS Steller sea lion mixing rates in specific areas of SEAK salmon fisheries, with priority on high effort and interaction areas.

4. For humpback whales and Steller sea lions entangled in gear in SEAK and the adjacent portion of the EEZ, NMFS should establish enhanced protocols for data collection (photography and/or biological sampling with genetic analysis) to improve the chances of determining whether the animal is from an ESA-listed DPS.

5. NMFS should continue to work with the state, tribes and other partners to collect additional information and evaluate management options for pinniped predation on salmonids.

## 2.11    Reinitiation of Consultation

This concludes formal consultation for the delegation of management authority over the salmon troll fishery and the sport salmon fishery in the SEAK EEZ to the State of Alaska and federal funding to the State of Alaska to monitor and manage salmon fisheries in state and federal waters to meet the obligations of the PST as currently described by the provisions of each Chapter and Annex of the PST Agreement, which define the specific limits of catch and total mortality limits for SEAK salmon fisheries..

Under 50 CFR 402.16(a): "Reinitiation of consultation is required and shall be requested by the federal agency, where discretionary federal involvement or control over the action has been retained or is authorized by law and: (1) If the amount or extent of taking specified in the incidental take statement is exceeded; (2) If new information reveals effects of the agency action that may affect listed species or critical habitat in a manner or to an extent not previously considered; (3) If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the Biological Opinion or written concurrence; or (4) If a new species is listed or critical habitat designated that may be affected by the identified action."

## 2.12    "Not Likely to Adversely Affect" Determinations

NMFS concludes that the proposed actions are not likely to adversely affect species or critical habitat of the species listed in Table 5. The applicable standard to find that a proposed action is "not likely to adversely affect" ESA listed species or critical habitat is that all of the effects of the action are expected to be discountable, insignificant, or completely beneficial. Beneficial effects are contemporaneous positive effects without any adverse effects on the species. Insignificant effects relate to the size of the impact and should never reach the scale where take occurs. Discountable effects are extremely unlikely to occur. The information NMFS considered in making these determinations is summarized below.

# EXHIBIT 8

**Record of Decision for the Programmatic Final Environmental Impact Statement on Expenditure of Funds to Increase Prey Availability for Southern Resident Killer Whales**

## I.        Introduction and Background

This Record of Decision (ROD) was developed by the National Marine Fisheries Service (NMFS) in compliance with decision-making requirements, pursuant to the National Environmental Policy Act (NEPA) of 1969, as amended. The purpose of this ROD is to document NMFS' decision regarding the proposed action.

This ROD is designed to: (1) state NMFS' decision and present the rationale for that decision; (2) identify the alternatives considered in the Final Environmental Impact Statement (EIS) in reaching the decision; and (3) state whether all practicable means to avoid or minimize environmental harm from implementation of the selected alternative have been adopted, and if not, why they were not.

The proposed action is NMFS' use of funds for the production of juvenile hatchery Chinook salmon for release into the wild to increase the availability of prey (food) for Southern Resident Killer Whales (SRKWs). SRKWs are listed as endangered under the Endangered Species Act (ESA) and the availability of prey is currently one of several limiting factors impeding the recovery of this species. The production of Chinook salmon as additional prey for SRKWs will mitigate for removals of Chinook salmon by fisheries managed under the Pacific Salmon Treaty (PST).

## II.       Alternatives Considered

The EIS evaluates four alternatives: 1) No Action – use of funding to increase prey availability for SRKW would be discontinued, 2) Hatchery Prey Increase Program alternative (proposed action/preferred alternative) – funding would be used to produce additional hatchery Chinook salmon for release into the wild to provide increased prey availability for SRKWs, 3) Habitat-based Prey Increase Program alternative – funding would be used for habitat restoration projects that could increase Chinook salmon abundance by improving productivity in the wild and thus increase prey availability for SRKW, and 4) Reduced Fishing to Increase Prey alternative - funding would be used to reduce harvest of Chinook salmon in marine fisheries to increase prey availability for SRKWs.

For the action alternatives 2 and 4, we analyzed the effects on the specified resources of 1) the level of funding NMFS has received in recent years for the prey increase program for SRKWs (approximately $6.2 million per year), and 2) a level of funding for each alternative that would likely attain the prey increase program goal for SRKWs (a 4-5% increase in prey in marine waters in the times and areas most beneficial for SRKWs). For alternative 3, it was not possible to estimate the levels of funding that would meet program goals, given the nature of habitat restoration and the uncertainty in predicting the increase in natural salmon abundances.

For alternative 2 (Hatchery Prey Increase Program), we analyzed the effects of funding hatchery Chinook production at recent funding levels (approximately $6.2 million), as well as a higher level of program funding that would produce approximately 20 million hatchery Chinook salmon annually for release that is estimated to result in a 4-5% increase in Chinook abundance in the times and areas important to SRKWs – or approximately $12 million per year. Alternative 2 includes a set of six criteria NMFS would use to make funding decisions for increased hatchery production:

• Criteria 1: Increased hatchery production should be for Chinook stocks that are a high priority for SRKW (NMFS and WDFW 2018; Ad-hoc SRKW Workgroup 2020).

• Criteria 2: Increased production should be focused on stocks that are a high priority for SRKW (NOAA and WDFW 2018), but funding should be distributed so that hatchery production is increased across an array of Chinook stocks from different geographic areas and run timings (i.e., a portfolio).

• Criteria 3: Increased production cannot jeopardize the survival and recovery of any Endangered Species Act (ESA)-listed species, including salmon and steelhead.

• Criteria 4: Because of funding and timing constraints, increased production proposals should not require major capital upgrades to hatchery facilities.

• Criteria 5: All proposals should have co-manager agreement (agreement among relevant Tribal, state, and Federal hatchery managers), as applicable.

• Criteria 6: All increased production must have been reviewed under the ESA and NEPA, as applicable, before NMFS funding can be used.

Alternative 3 (Habitat-based Prey Increase Program alternative) assesses using funding to implement habitat restoration actions to increase the natural production of Chinook salmon in the wild. Additional natural production of salmon from habitat restoration would be expected to increase prey availability for SRKWs once the restoration work is completed and has had time to re-establish increased habitat productivity, allowing the resulting adult salmon to migrate into marine waters. Increases in prey availability were low in the short-term (<5 years) under all funding assumptions (we considered the benefits that could be attained with current funding levels of approximately $6.2 million, and with the approximately $12 million assessed under Alternative 2), with greater increases over the long-term (>5 years) from habitat restoration. However, even the long-term increases from habitat restoration were significantly lower than those from Alternative 2.

Alternative 4 (the Reduced Fishing alternative) considered what would be required in terms of fishery harvest reductions that would result in an increase in Chinook salmon abundances in the times and areas important to SRKW and the funding levels needed to mitigate for these fishery reductions. We also estimated what increase in prey availability could be accomplished with current funding levels. The increases in prey availability estimated from current funding levels ($6.2 million annually) were 39%-86% of the level provided by Alternative 2. We also estimated that, in order to increase Chinook salmon prey to a level of 4-5%, the funds needed for such an

increase would be at least $25 million per year, which as explained later is an underestimate of the economic costs associated with attaining the modeled harvest reductions and does not account for costs that cannot be readily quantified (such as the cultural and social effects to Tribal fisheries and subsistence fishing).

## III.    Public Involvement

NMFS formally initiated environmental review of the prey increase program through a Notice of Intent (NOI) to prepare an EIS in the Federal Register on August 10, 2023 (88 FR 54301). This NOI announced a 45-day public scoping period, during which other agencies, Tribes, stakeholders, and the public were invited to provide comments and suggestions regarding issues and alternatives to be included in the EIS. Public scoping meetings via online webinars were held on August 30 and 31, 2023. These public meetings involved a mix of informal and formal presentations, and a variety of informational material related to the proposed action was made available to attendees. NMFS also held a Tribal engagement webinar on October 30, 2023, to explain the proposed action, other possible alternatives, and the EIS process for affected Tribes.

A Draft EIS was subsequently produced and made available for public review and comment for 45 days, as announced in the Federal Register on January 26, 2024 (89 FR 5227). During this public comment period, 875 comment letters were received from a wide range of constituents including fishing groups, Federal and state agencies, private landowners, environmental organizations, and individuals interested in the prey increase program, as well as Tribes. Primary issues raised in the comments were related to the commenters' suggestions or positions on continuing to produce hatchery salmon for SRKWs while minimizing socioeconomic impacts, reducing fishery harvest in marine waters to immediately provide a boost in prey for SRKWs, reducing hatchery production to reduce risks to wild salmon recovery, and not furthering any socioeconomic and/or environmental justice effects from any alternative on affected communities. A summary of public comments can be found in section 1.5.3 of the FEIS. Appendix H of the EIS includes all public comments received during the public review of the Draft EIS and NMFS' responses. The executive summary of the EIS describes the changes that were made to the Draft EIS.

The Final EIS was released on October 4, 2024, and the public could review changes made since the Draft EIS and NMFS' responses to submitted comments (89 FR 80899). During this public review opportunity, NMFS received one comment letter which is included in Appendix A of this ROD. This comment letter supported the adoption of the preferred alternative of spending the funds slated to increase prey availability for SRKW for the production of hatchery Chinook but also described the importance of an ecosystem approach to salmon recovery.  It further recognized that the 2019 PST Agreement included reductions to fisheries from the prior Agreement, and that habitat restoration work was funded in connection with the Agreement.

## IV.    Environmentally Preferable Alternative(s)

The environmentally preferable alternative is required by 40 CFR 1505.2(a)(2)[1] to be identified in a record of decision (ROD).

In this ROD, Alternative 2 (the Hatchery Prey Increase Program) is identified as the environmentally preferable alternative for several reasons. Additional hatchery salmon can be produced in existing hatchery facilities with mostly-low increases in environmental effects to salmon and steelhead and other adversely affected resources while meeting the prey increase program's goal to provide a meaningful increase in prey availability for SRKWs in the times and areas most beneficial for the whales in the short term (<5 years) which meets the purpose and need of increasing prey availability for SRKWs immediately. While hatchery production may have long-term (>5 years) environmental effects to salmon, Alternative 2 was analyzed for effects on ESA-listed species and NMFS concluded the alternative would not jeopardize the continued existence of, nor adversely modify critical habitat of affected salmon or steelhead (NMFS 2024). Alternative 2 provides the greatest benefit to SRKWs relative to the funding needed with the least amount of environmental harm to other affected resources such as socioeconomics and environmental justice communities.

Our analysis of Alternative 4 shows that higher levels of funding far above the level analyzed for Alternative 2 would be required to achieve similar benefits to SRKWs in the short term as Alternative 2, but it does so with much larger impacts on socioeconomic and environmental justice resources. Alternative 4, depending on the amount of funding available, could reduce Chinook salmon fishery harvest substantially to provide benefits to SRKW similar to Alternative 2, but at approximately twice the required cost ($12 million for Alternative 2 versus at least $25 million for Alternative 4, along with incalculable cultural losses). The environmentally preferable alternative for Tribal fishing and Tribal communities would be Alternative 2, because in contrast to Alternative 4, this would not use funds to reduce fishing, and in contrast to Alternatives 1 and 3, it would result in a greater abundance of hatchery fish in the areas where Tribal fisheries take place. Alternative 2 would not result in adverse effects on the communities across the Pacific Northwest and Southeast Alaska affected by reduced salmon harvest in Alternative 4. Alternative 3 provides some long-term benefits to SRKWs through habitat restoration that could support salmon recovery, but not to the same extent as Alternatives 2 and 4, and does not provide definite short-term benefits to SRKWs. Alternative 1, by contrast, offers no increase in prey (compared to the affected environment); making it the least beneficial for SRKWs. For Chinook salmon, Alternative 2 is the most environmentally impactful because of increased genetic and ecological effects from producing additional hatchery salmon, however, as explained in the EIS, these effects are limited and include changes in the proportion of hatchery-origin fish on the spawning grounds (pHOS), competition and predation upon co-occurring natural-origin fish, and pathogen elevation and transmission. The analysis in the EIS concludes that these effects are generally low. Alternatives 3 and 4 cause the least impact to natural-origin

---

[1] All cites to CEQ regulations are from the regulations in effect as of July 1, 2023, https://www.govinfo.gov/content/pkg/CFR-2023-title40-vol37/pdf/CFR-2023-title40-vol37.pdf.

**FIFTH KNUTSEN DECLARATION - 90**
**Case No. 2:20-cv-00417-RAJ-MLP**

Chinook salmon, but these alternatives are not as beneficial for SRKWs in the short-term as Alternative 2 applying past funding levels for the prey increase program.

In conclusion, when considering all aspects of the affected resources analyzed in the EIS, Alternative 2 results in the least environmentally damaging alternative by providing the greatest increases in prey availability for SRKWs in the short-term (<5 years), with very limited additional impacts to Chinook salmon, with the least impacts on socioeconomic and Tribal justice resources.

## V.    Results of Consultations

A section 7 consultation evaluating the effects of the prey increase program on ESA-listed species under NMFS' jurisdiction has been completed (NMFS 2024; WCRO-2024-00664). The Biological Opinion concluded that the proposed action would not jeopardize the continued existence of, nor adversely modify critical habitat of ESA-listed species adversely affected by the proposed action.

A section 7 consultation has also been completed on ESA-listed species under the jurisdiction of the U.S. Fish and Wildlife Service (USFWS 2024; 2024-0068226). The Biological Opinion concluded that the proposed action would not jeopardize the continued existence of, nor adversely modify critical habitat of ESA-listed species adversely affected by the proposed action.

## VI.    Decision and Rationale for Decision

At this time, NMFS has decided to select and implement Alternative 2 (the Hatchery Prey Increase Program). In making this decision to implement Alternative 2, NMFS considered the following factors:

- Effects of the action on species listed under the ESA, including both Chinook salmon and SRKWs.
- Effects of the action on marine fisheries.
- Effects of the action on cultural and economic resources.
- Potential for disproportionate adverse environmental or health impacts on Tribal, minority, and low-income communities (environmental justice concerns).
- Effects of the action on NMFS' ability to fulfill statutory mission and responsibilities.
- Public, Tribal, and agency comments received during the EIS scoping and review periods.
- Extent to which impacts in attaining the prey increase program goals could be adequately mitigated (provide for prey increase for SRKWs, while minimizing additional adverse effects to Chinook salmon).

After considering these factors, NMFS concludes Alternative 2 best supports NMFS' statutory missions to conserve ESA-listed salmon and SRKWs, and avoids significant adverse impacts to socioeconomic and environmental justice resources. Alternative 2 provides the greatest short-term (<5 years) benefit to SRKW at the current level of funding and potential increased level of

funding, while resulting in very limited negative impacts to Chinook salmon and no negative impacts to Tribal and coastal communities. NMFS has reviewed new studies and information provided during public review and comment periods, and determined that there are no significant new circumstances or information relevant to environmental concerns that would change the conclusions of the EIS.[2] In addition, NMFS has completed a biological opinion on the implementation of the hatchery prey increase program for SRKWs (NMFS 2024) and found that the action will not jeopardize the continued existence of any affected evolutionarily significant unit (ESU) and/or distinct population segment (DPS). The U.S. Fish and Wildlife Service also concluded the same for their affected species (USFWS 2024).

Alternative 2 provides the highest level of benefit to SRKW with the level of funds likely to be available of the suite of alternatives evaluated and provides benefits to other resources analyzed (socioeconomics, environmental justice, other fish and wildlife species) by providing more salmon in the environment as SRKW prey, while minimizing risks to Chinook salmon and their habitats. No other alternative analyzed in the EIS provides the same level of benefits per cost, as Alternative 2. Given the complexity of managing different ESA-listed species, with one species preying upon another, Alternative 2 provides benefits for SRKWs in the near term, using existing hatchery facilities to produce additional hatchery Chinook salmon for SRKWs. Little to no additional impacts on salmon and their freshwater habitats are expected because the hatchery facilities already exist and produce hatchery salmon for release annually, and any programs receiving funding must comply with the ESA and NEPA (criteria 6 above for Federal funding).

Alternative 1 (the No Action alternative) does not provide any additional prey for SRKWs, and thus does not meet the purpose and need for the prey increase program.

Alternative 3 (the Habitat-based Prey Increase Program) does not provide the same level of benefits to increase prey for SRKWs as Alternative 2 under any of the funding scenarios analyzed in the EIS. There is some benefit from this alternative over the long-term (>5 years), but increased productivity from habitat restoration takes high levels of funding and a great deal of time to materialize. This alternative would not provide prey benefits for SRKWs in the short-term, and NMFS has identified increasing prey availability for endangered SRKWs as a critical need in the short-term (< 5 years). The level of abundance that could result from habitat improvement is also more uncertain, especially with the effects of climate change. Therefore, this alternative was not selected.

---

[2] NMFS is aware of several new studies concerning SRKWs and assessment of risk factors to their recovery. Tennessen et al. (2024) found significant impacts to successful foraging, including auditory masking, due to vessel noise. This finding supports the need for adequate prey in the environment to overcome these long-recognized foraging challenges. Saygili and Trites (2024) assert that summer Chinook salmon prevalence is higher in SRKW foraging hot spots than those in NRKW habitat. However, this study only sampled during two weeks in 2020 and only in specific locations in the Salish Sea, despite known seasonal, annual, and spatial variation in salmon abundance. The limited scope of this study prevents us from drawing any conclusions regarding the importance of the prey threat to SRKWs in the Salish Sea, and further study is needed. Finally, a new study assessing diet in SRKW fecal samples (Van Cise et al. 2024) confirms previous findings regarding the importance of Chinook salmon in the SRKW diet year-round.

Alternative 4 (the Reduced Fishing alternative) does not provide a similar benefit to increase prey availability for SRKWs as Alternative 2, when applying the same funding level assumptions (current funding or funding necessary to implement a 4-5% increase in prey for SRKWs). In order for Alternative 4 to provide similar benefits as Alternative 2 in increasing prey availability for SRKWs, the estimated funding level would have to be at least $25 million annually to mitigate fishery losses. Even at this funding level, this sum would not fully compensate for all of the economic effects associated with Alternative 4. For example, the Tribal treaty right to fish, as well as subsistence fishing in SEAK, is not quantifiable in economic value, and additionally, our analysis only utilizes ex-vessel values and does not account for the full range of economic losses to affected coastal communities and Tribes. Ex-vessel value is the value of the first sale of raw fish (calculated by multiplying the price per pound at the first purchase by the total pounds landed), and so the estimate does not include any additional economic impacts necessary to attain the harvest reduction, including but not limited to processor revenue, captain and crew salaries, support industries, and other economic multipliers. Additionally, Alternative 4 would have significant adverse cultural and social effects, to Tribes, Tribal communities, and other fishing-dependent communities across the Pacific Northwest and Southeast Alaska and would undermine access to Tribal fisheries and subsistence fishing.

The analysis in the EIS provided a programmatic evaluation of NMFS' funding of the prey increase program contemplated in Alternative 2 (the Hatchery Prey Increase Program) and considered a reasonable range of alternative actions for the use of this funding. Given the above considerations from the analysis of affected resources in the EIS, we conclude that Alternative 2 meets the goals of the prey program for SRKWs, while also minimizing the other adverse effects to other specified resources (including ESA-listed Chinook salmon, other fish and wildlife species, socioeconomics, and environmental justice).

## VII.    Mitigation and Monitoring

The purpose of the proposed action is to spend funds appropriated in connection with the implementation of the Pacific Salmon Treaty Agreement to increase prey (food) availability for SRKWs to help mitigate the effects of PST fisheries. The action is needed because prey availability is currently a factor limiting the recovery of SRKWs, and PST fisheries, while reduced from prior agreements, continue to remove Chinook salmon (harvest) that would otherwise potentially be available as prey (food) in times and areas important to SRKWs. The primary adverse effects of hatchery production occur to wild, particularly ESA-listed, salmon. Therefore, we focus on monitoring and evaluating the effects of the proposed action on ESA-listed salmon. We also focus on monitoring and evaluation to determine if the expected benefits to SRKWs are being achieved.

Mitigation for the adverse effects of hatchery programs on salmon is addressed primarily at the site-specific level because the adverse effects on ESA-listed salmon occur primarily at the site-specific level. As described above, Alternative 2 includes a requirement that proposals for increased hatchery production meet the six funding decision criteria to receive funding from the prey increase program (section 2.2.1 of the EIS). Any proposed hatchery production must have been reviewed under the ESA and NEPA, and must be determined to not be likely to jeopardize

any ESA-listed species and, as applicable, to destroy or adversely modify critical habitat, before NMFS funding can be used. In many cases, modifications to hatchery programs, such as changing the timing or location of releases, discontinuing the use of non-local broodstock, or intercepting hatchery fish more effectively before they reach the spawning grounds, have been built into existing programs to ensure these determinations can be made.  NMFS' ESA and NEPA evaluations include a thorough analysis of the impacts of the hatchery production at the site-specific level, and for any resulting take of ESA-listed salmon to be exempted, these programs must comply with reasonable and prudent measures and terms and conditions in site-specific biological opinions. Measures to reduce the adverse effects of these programs to listed salmon have been implemented where needed to meet ESA standards, and where possible given funding and other practical constraints. In addition, all hatchery production associated with the prey increase program has been evaluated under the ESA programmatically in the final biological opinion (NMFS 2024) and all production at the site-specific level would include annual monitoring and reporting requirements to ensure the hatchery production is being implemented as expected and consistent with reasonable and prudent measures and terms and conditions. All effects of Alternative 2 on the human environment are evaluated in the Final EIS.

The hatchery programs receiving funding are required to implement regular monitoring and evaluation in connection with the exemption of ESA take. Hatchery operators monitor and evaluate actions as required in hatchery genetic management plans, ESA Biological Opinions, and ESA 4(d) approval requirements. This includes monitoring and evaluating water use, water quality, operation of facilities, collection of salmon, release of juvenile fish, natural spawning of hatchery fish, and many other aspects of hatchery operations. Key information reported annually to NMFS includes hatchery collections, impacts to wild salmon, and number of fish released.

Given these requirements and the regular evaluations by hatchery operators and reports to NMFS, we believe adequate practical measures have been applied to minimize the environmental harm from the proposed action/preferred alternative. The required measures are within the current funding capabilities of Federal, state, and Tribal organizations producing the hatchery salmon, as most of them are currently and routinely being implemented. If more hatchery funding in general became available, further measures could be taken to improve data collection, and monitoring and evaluation of the effects of hatchery salmon releases on the human environment.

The incidental take statement in the BiOp for the prey increase program (NMFS 2024) describes monitoring requirements intended to determine if the expected benefits to SRKW in the form of increased prey availability are being achieved. The analysis in the EIS uses the best available information to project the benefits to SRKWs from the implementation of the alternatives, but there is some uncertainty concerning the migration of hatchery salmon in space and time throughout their marine residence and overlap with SRKWs to provide additional prey availability. Monitoring and evaluation by NMFS and the hatchery operators will continue to ensure the number of hatchery salmon released is within the appropriate ESA limits, that overall program limits are not exceeded, that the program is benefiting SRKW as anticipated, and that the funding criteria are being met – including documentation to ensure that funded programs meet criteria #6. Should monitoring suggest that funded programs are not operating as anticipated, or that any exempted level of take has been exceeded, NMFS will consider whether

**FIFTH KNUTSEN DECLARATION - 94**
**Case No. 2:20-cv-00417-RAJ-MLP**

the reinitiation of consultation at the program and/or site-specific level is necessary. Modeling and management will incorporate new information as it becomes available to further enhance the benefits of the prey increase program for SRKWs.

## VIII.  Conclusion

Through the EIS and the documentation in this ROD, NMFS considered the purpose and need for the proposed action and analyzed a reasonable range of alternatives, and the extent to which the impacts of the action could be mitigated. NMFS also considered public and agency comments received during the EIS scoping and review periods. In balancing the projected effects of the various alternatives presented in the EIS and the public interest with economic, technical, NOAA statutory mandates, and matters of national policy, NMFS has decided to implement Alternative 2, the Hatchery Prey Increase Program alternative. Alternative 2 provides the greatest benefits in increasing prey availability for SRKWs in the short-term given the funds likely to be available while minimizing and mitigating the associated adverse effects to the other specified resources. In particular, Alternative 2 achieves an immediate and meaningful benefit for SRKW while limiting adverse impacts to wild salmon, particularly ESA-listed fish, and avoiding the significant adverse impacts to Tribal culture and communities, and non-Tribal fishery-dependent communities that would likely result from Alternative 4.  Considering the information in the EIS and other relevant material available in the record, I certify that NMFS has considered all the alternatives, information, analyses, and objections submitted by the States, Tribal, and local governments and other public commenters for NMFS's consideration in the development of the EIS.

Jennifer Quan
Regional Administrator
West Coast Region

Jonathan M. Kurland
Regional Administrator
Alaska Region

Date: November 21, 2024

**Literature Cited**

NMFS 2024. Endangered Species Act (ESA) Section 7(a)(2) Biological Opinion and Magnuson-Stevens Fishery Conservation and Management Act Essential Fish Habitat Response NOAA's National Marine Fisheries Service's Preferred Alternative for Expenditure of Pacific Salmon Treaty Funds to Increase Prey Availability for Southern Resident Killer Whales NMFS Consultation Number: WCRO-2024-00664.

Saygili, B., Trites, A.W. 2024 Prevalence of Chinook salmon is higher for southern than for northern resident killer whales in summer hot-spot feeding areas. PLoS ONE 19(10): e0311388. https://doi.org/10.1371/journal.pone.0311388.

Tennessen, J.B., Holt, M.M., Wright, B.M., Hanson, M.B., Emmons, C.K., Giles, D.A., Hogan, J.T., Thornton, S.J., and Deecke, V.B. 2024. Males miss and females forgo: Auditory masking from vessel noise impairs foraging efficiency and success in killer whales. *Global Change Biology*, 30, e17490. https://doi.org/10.1111/gcb.17490.

United States Fish and Wildlife Service. 2024. Endangered Species Act - Section 7 Consultation FRAMEWORK PROGRAMMATIC BIOLOGICAL OPINION U.S. Fish and Wildlife Service Reference: 2024-0068226 Federal Southern Resident Killer Whale Prey Program Washington, Oregon, and Idaho. Lacey, Washington.

Van Cise, A.M., Hanson, M.B., Emmons, C., Olsen, D., Matkin, C.O., Wells, A.H. and Parsons, K.M. 2024. Spatial and seasonal foraging patterns drive diet differences among north Pacific resident killer whale populations. *Royal Society Open Science*, *11*(9), p.rsos240445.

**Appendix A: Public Comment Received on the FEIS**



# Northwest Indian Fisheries Commission

6730 Martin Way E., Olympia, Washington 98516-5540

Phone (360) 438-1180          www.nwifc.org          FAX # 753-8659

November 1, 2024

Mr. Lance Kruzic
NOAA Fisheries
2900 NW Stewart Parkway
Roseburg, OR 97471

Re:   Comments on the Programmatic Final Environmental Impact Statement for the Expenditure of
      Funds to Increase Prey Availability for Southern Resident Killer Whales

Dear Mr. Kruzic:

We appreciate the opportunity to submit comments on the **Programmatic Final Environmental Impact Statement (PFEIS) for the Expenditure of Funds to Increase Prey Availability for Southern Resident Killer Whales (SRKW).** All our member tribes fully support ecosystem-based management approaches and are actively engaged in salmon rebuilding efforts within their watersheds. For these reasons, and the supporting rational clearly presented in the PFEIS, the tribes support the preferred alternative (Alternative 2 - Hatchery Prey Increase Program) as the best approach to immediately increase prey for SRKW.

The NWIFC is comprised of 20 treaty Indian tribes in western Washington, each of which retain constitutionally protected, treaty-reserved rights to harvest, consume, and otherwise manage fish, shellfish, and other treaty reserved resources within their usual and accustomed areas.[1] As natural resource co-managers with the state of Washington, the tribes have a vested interest in all policies that affect their treaty-reserved resources and the protection and restoration of habitat critical to their recovery and long-term sustainability.

Tribes have long advocated for an ecosystem-based approach to salmon recovery based on the tribal belief that all things are connected. Puget Sound Chinook recovery plans incorporate integrated actions to address habitat, harvest and hatcheries issues. It is important that the PFEIS recognized that the U.S. Section of the Pacific Salmon Commission took three actions to address prey availability: a) negotiated harvest reductions; b) funding of a Puget Sound salmon habitat restoration project; and c) funding for increased hatchery production of Chinook salmon. We wish to highlight that these actions provide benefits for both the salmon resource and the 137 species that depend on salmon for prey such as SRKW. It's a reflection of the wider ecological benefit provided by hatchery production.

---

[1] The NWIFC member tribes are the Hoh, Jamestown S'Klallam, Lower Elwha Klallam, Lummi, Makah, Muckleshoot, Nisqually, Nooksack, Port Gamble S'Klallam, Puyallup, Quileute, Quinault, Sauk-Suiattle, Skokomish, Squaxin Island, Stillaguamish, Suquamish, Swinomish, Tulalip, and Upper Skagit.

Comments of the Programmatic Final Environmental Impact Statement for the Expenditure of Funds
to Increase Prey Availability for Southern Resident Killer Whales
November 1, 2024
Page 2

The U.S. Section's Pacific Salmon Treaty (PST) implementation request included funds for Puget Sound habitat restoration and increased hatchery production to both facilitate compliance with the Endangered Species Act (ESA) and promote Chinook salmon recovery. This request was consistent with previous PST implementation funding requests and reflects a continuance of the Chinook salmon rebuilding effort initiated with the signing of the PST in 1985. The 2019 request included an increase to the hatchery production funds for increasing prey availability for SRKW. This action bolstered state and tribal efforts associated with funds secured from the Washington State Legislature for increasing SRKW prey availability in response to state task force recommendations for SRKW recovery and sustainability.[2]

Our support for Alternative 2 - Hatchery Prey Increase Program is based on the recognition of the sense of immediate need to increase prey abundance for SRKW. This is the key difference between the three proposed alternatives within the PFEIS, which will provide certainty in timing and spatial/temporal delivery of benefits for SRKW. The funding action taken from the U.S. Section of the Pacific Salmon Commission was to address this need and address the sudden downturn in overall SRKW abundance as outlined by NOAA's 2018 Hatchery Initiative Memorandum.[3] Action that increases prey abundance is the logical choice as the predominance of salmon harvest within Puget Sound occurs after Chinook salmon have passed through SRKW feeding areas.

Finally, Alternative 2 reflects an essential component as it is coordinated with ongoing tribal and state efforts to benefit the health and wellbeing of SRKWs and represents the best short-term risk reduction measure for SRKW that tribal and state fishery managers in Washington can provide.

Thank you in advance for your consideration for our comments. If you have questions, please contact Craig Bowhay, Director of Fisheries at cbowhay@nwifc.org.

Sincerely,

Justin R. Parker
Executive Director

cc: NWIFC Commissioners

---

[2] Southern Resident Orca Task Force. Final Report and Recommendations. November 16, 2018. Olympia Washington.
[3] Dygert, P., A. Purcell, and L. Barre. 2018. Memorandum to Bob Turner (NMFS). *Hatchery Production Initiative for Increasing Prey Abundance of Southern Resident Killer Whales.* August 1, 2018. NMFS, Seattle, Washington. 3p

# EXHIBIT 9

**Endangered Species Act (ESA) Section 7(a)(2) Biological Opinion and Magnuson-Stevens Fishery Conservation and Management Act Essential Fish Habitat Response**

NOAA's National Marine Fisheries Service's Preferred Alternative for Expenditure of Pacific Salmon Treaty Funds to Increase Prey Availability for Southern Resident Killer Whales

NMFS Consultation Number: WCRO-2024-00664

Action Agencies:    The National Marine Fisheries Service (NMFS) of the National Oceanic and Atmospheric Administration (NOAA)

Affected Species and NMFS' Determinations:

| ESA-Listed Species* | Status | Is Action Likely to Adversely Affect Species? | Is Action Likely To Jeopardize the Species? | Is Action Likely to Adversely Affect Critical Habitat? | Is Action Likely To Destroy or Adversely Modify Critical Habitat? |
|---|---|---|---|---|---|
| Lower Columbia River Chinook Salmon (*Oncorhynchus tshawytscha*) | Threatened | Yes | No | Yes | No |
| Snake River Fall-run Chinook Salmon (*O. tshawytscha*) | Threatened | Yes | No | Yes | No |
| Upper Willamette River Chinook Salmon (*O. tshawytscha*) | Threatened | Yes | No | Yes | No |
| Puget Sound Chinook Salmon (*O. tshawytscha*) | Threatened | Yes | No | Yes | No |
| Upper Columbia River spring-run Chinook Salmon (*O. tshawytscha*) | Endangered | Yes | No | Yes | No |
| Snake River spring/summer-run Chinook Salmon (*O. tshawytscha*) | Threatened | Yes | No | Yes | No |

| ESA-Listed Species* | Status | Is Action Likely to Adversely Affect Species? | Is Action Likely To Jeopardize the Species? | Is Action Likely to Adversely Affect Critical Habitat? | Is Action Likely To Destroy or Adversely Modify Critical Habitat? |
|---|---|---|---|---|---|
| California Coastal Chinook Salmon (*O. tshawytscha*) | Threatened | Yes | No | No | No |
| Central Valley spring-run Chinook Salmon (*O. tshawytscha*) | Threatened | Yes | No | No | No |
| Central California Coast Coho Salmon (*Oncorhynchus kisutch*) | Endangered | No | No | No | No |
| Southern Oregon/Northern California Coast Coho Salmon (*O. kisutch*) | Threatened | No | No | No | No |
| Oregon Coast Coho Salmon (*O. kisutch*) | Threatened | No | No | No | No |
| Lower Columbia River Coho Salmon (*O. kisutch*) | Threatened | Yes | No | Yes | No |
| Columbia River Chum Salmon (*Oncorhynchus keta*) | Threatened | Yes | No | Yes | No |
| Hood Canal summer-run Chum salmon (*O. keta*) | Threatened | Yes | No | Yes | No |
| Snake River Sockeye Salmon (*Oncorhynchus nerka*) | Endangered | Yes | No | Yes | No |
| Lake Ozette Sockeye Salmon (*O. nerka*) | Threatened | No | No | No | No |
| Puget Sound steelhead (*Oncorhynchus mykiss*) | Threatened | Yes | No | Yes | No |
| Upper Columbia River steelhead (*O. mykiss*) | Threatened | Yes | No | Yes | No |
| Snake River Basin steelhead (*O. mykiss*) | Threatened | Yes | No | Yes | No |

| ESA-Listed Species* | Status | Is Action Likely to Adversely Affect Species? | Is Action Likely To Jeopardize the Species? | Is Action Likely to Adversely Affect Critical Habitat? | Is Action Likely To Destroy or Adversely Modify Critical Habitat? |
|---|---|---|---|---|---|
| Middle Columbia River steelhead (*O. mykiss*) | Threatened | Yes | No | Yes | No |
| Upper Willamette River steelhead (*O. mykiss*) | Threatened | Yes | No | Yes | No |
| Lower Columbia River steelhead (*O. mykiss*) | Threatened | Yes | No | Yes | No |
| Northern California Coast steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| California Central Valley steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| Central California Coast steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| South Central California Coast steelhead (*O. mykiss*) | Threatened | No | No | No | No |
| Southern California Coast steelhead (*O. mykiss*) | Endangered | No | No | No | No |
| Southern Resident killer whales (*Orcinus orca*) | Endangered | No | No | No | No |
| Sturgeon, green – Southern Distinct Population Segment (*Acipenser medirostris*) | Threatened | No | No | No | No |
| Eulachon – Southern Distinct Population Segment (*Thaleichthys pacificus*) | Threatened | Yes | No | No | No |
| Puget Sound/Georgia Basin bocaccio (*Sebastes paucispinis*) | Endangered | Yes | No | No | No |

| ESA-Listed Species* | Status | Is Action Likely to Adversely Affect Species? | Is Action Likely To Jeopardize the Species? | Is Action Likely to Adversely Affect Critical Habitat? | Is Action Likely To Destroy or Adversely Modify Critical Habitat? |
|---|---|---|---|---|---|
| Puget Sound/Georgia Basin yelloweye rockfish (*Sebastes ruberrimus*) | Threatened | Yes | No | No | No |

*Please refer to section 2.12 for the analysis of species or critical habitat that are not likely to be adversely affected.

| Fishery Management Plan That Identifies EFH in the Project Area | Does Action Have an Adverse Effect on EFH? | Are EFH Conservation Recommendations Provided? |
|---|---|---|
| Coastal Pelagic Species | No | No |
| Highly Migratory Species | No | No |
| Pacific Coast Salmon | Yes | Yes |
| Pacific Coast Groundfish | No | No |

**Consultation Conducted By:** National Marine Fisheries Service, West Coast and Alaska Regions

**Issued By**:

Jennifer Quan
Regional Administrator
NOAA's National Marine Fisheries Service
West Coast Regional Office

Jonathan M. Kurland
Regional Administrator
NOAA's National Marine Fisheries Service
Alaska Regional Office

**Date**:   September 25, 2024

TABLE OF CONTENTS

**Table of Contents** ................................................................................................. i

**Table of Tables** ................................................................................................. iv

**Table of Figures** ................................................................................................ xii

**Acronyms and Abbreviations** ......................................................................... xxii

**1   Introduction** ................................................................................................ 1

   1.1  Background ............................................................................................. 1

   1.2  Consultation History ............................................................................. 3

   1.3  Proposed Federal Action ...................................................................... 5

**2   Endangered Species Act: Biological Opinion And Incidental Take Statement** ............. 11

   2.1  Analytical Approach ............................................................................. 11

   2.2  Rangewide Status of the Species and Critical Habitat ......................... 13

      2.2.1   Status of Listed Species ............................................................... 14

      2.2.2   Status of the Chinook Salmon ESUs .......................................... 20

      2.2.3   Status of the Coho Salmon ESUs ............................................... 128

      2.2.4   Status of the Chum Salmon ESUs ............................................... 142

      2.2.5   Status of the Sockeye Salmon ESU ............................................. 160

      2.2.6   Status of the Steelhead DPSs ..................................................... 168

      2.2.7   Status of Salmon and Steelhead Critical Habitat......................... 236

      2.2.8   Status of Eulachon (Southern DPS)............................................ 246

      2.2.9   Status of Puget Sound/Georgia Basin Rockfish ......................... 254

      2.2.10  Climate Change Effects on Salmon and Steelhead ..................... 268

   2.3  Action Area ......................................................................................... 275

      2.3.1   ESA-listed salmon and steelhead ................................................ 276

      2.3.2   Eulachon (southern DPS) ............................................................. 279

      2.3.3   Yelloweye rockfish and bocaccio (Puget Sound/Georgia Basin DPSs).........280

   2.4  Environmental Baseline ....................................................................... 280

      2.4.1   Salmon and steelhead .................................................................. 280

      2.4.2   Eulachon ..................................................................................... 335

      2.4.3   Puget Sound/Georgia Basin Yelloweye Rockfish and Bocaccio ................. 335

      2.4.4   Scientific Research Effects in the Environmental Baseline ......................... 339

   2.5  Effects of the Action ........................................................................... 341

      2.5.1   Salmon and steelhead .................................................................. 344

      2.5.2   Salmon and steelhead Critical Habitat......................................... 416

2.5.3    Eulachon ...................................................................................418

2.5.4    Puget Sound/Georgia Basin Rockfish ........................................422

2.6    Cumulative Effects ............................................................................ 430

2.6.1    Salmon and Steelhead .............................................................430

2.6.2    Eulachon ...................................................................................433

2.6.3    Puget Sound/Georgia Basin Rockfish ......................................435

2.7    Integration and Synthesis .................................................................. 437

2.7.1    Salmon and Steelhead .............................................................437

2.7.2    Salmon and Steelhead Designated Critical Habitat ..................446

2.7.3    Eulachon ...................................................................................447

2.7.1    Puget Sound/Georgia Basin Rockfish ......................................448

2.8    Conclusion ......................................................................................... 450

2.8.1    Salmon and steelhead and their designated critical habitat ...........450

2.8.2    Eulachon ...................................................................................450

2.8.3    Puget Sound/Georgia Basin Rockfish ......................................450

2.9    Incidental Take Statement ................................................................. 451

2.9.1    Amount or Extent of Take ........................................................452

2.9.2    Effect of the Take .....................................................................454

2.10 Conservation Recommendations ....................................................... 457

2.10.1    Salmon and Steelhead ...........................................................457

2.10.2    Listed Rockfish ......................................................................457

2.11 Reinitiation of Consultation .............................................................. 457

2.12 "Not Likely to Adversely Affect" Determinations............................. 458

2.12.1    Salmon and Steelhead ...........................................................458

2.12.2    Marine Mammals ...................................................................463

2.12.3    Other Species ........................................................................474

3    **Magnuson–Stevens Fishery Conservation and Management Act Essential Fish Habitat Response**........................................................................................................... **481**

3.1    Essential Fish Habitat Affected by the Project ................................. 481

3.2    Adverse Effects on Essential Fish Habitat ........................................ 483

3.3    Essential Fish Habitat Conservation Recommendations .................. 485

3.4    Supplemental Consultation ............................................................... 486

4    **Data Quality Act Documentation and Pre-Dissemination Review**................... **486**

4.1  Utility..................................................................................................486

4.2  Integrity...............................................................................................486

4.3  Objectivity............................................................................................486

**5  References**..............................................................................................**488**

**6  Appendices**.............................................................................................**565**

**Appendix A**...............................................................................................**566**

**Appendix B**................................................................................................**577**

**Appendix C**...............................................................................................**586**

**Appendix D**...............................................................................................**622**

**Appendix E**................................................................................................**624**

because the mortality resulting from the proposed action, when combined with the mortality from other fishing and research within the environmental baseline, is unlikely to exceed levels that would hinder population viability.

## 2.9    Incidental Take Statement

Section 9 of the ESA and Federal Regulations pursuant to section 4(d) of the ESA prohibit the take of endangered and threatened species, respectively, without a special exemption. "Take" is defined as to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture or collect, or to attempt to engage in any such conduct. "Harm" is further defined by regulation to include significant habitat modification or degradation that actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including breeding, spawning, rearing, migrating, feeding, or sheltering (50 CFR 222.102). "Harass" is further defined by guidance as to "create the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering." "Incidental take" is defined by regulation as takings that result from, but are not the purpose of, carrying out an otherwise lawful activity conducted by the federal agency or applicant (50 CFR 402.02). Section 7(b)(4) and section 7(o)(2) provide that taking that is incidental to an otherwise lawful agency action is not considered to be prohibited taking under the ESA if that action is performed in compliance with the terms and conditions of this ITS.

The NMFS has not yet promulgated an ESA section 4(d) rule prohibiting take of threatened eulachon. Anticipating that such a rule may be issued in the future, we have included a prospective incidental take exemption for eulachon. The elements of this ITS for eulachon would become effective on the date on which any future 4(d) rule prohibiting take of eulachon becomes effective. Nevertheless, the amount and extent of eulachon incidental take, as specified in this statement, will serve as one of the criteria for reinitiation of consultation pursuant to 50 C.F.R. §402.16(a), if exceeded.

This incidental take statement addresses program actions that are reasonably certain to cause take and are not subject to further section 7 consultation (50 CFR 402.14(i)(7)). The actions in this latter category are related solely to the federal funding of en masse region-wide hatchery releases of Chinook salmon smolts for the specific purpose of increasing the preferred forage base of the ESA-endangered SRKW, thereby mitigating for the effects of prey removal in fisheries subject to the 2019–2028 PST Agreement. These federal funding actions are reasonably certain to cause take via combined effects (see beginning of Section 2.5 for description of combined effects) and will occur without further consultation. Conversely, the particular hatchery programs that are funded and their watershed-scale effects are subject to further section 7 consultation.

### 2.9.1   Amount or Extent of Take

In this Opinion, NMFS determined that incidental take is reasonably certain to occur as follows:

#### 2.9.1.1   Salmon and Steelhead

Hatchery operations are likely to cause take, and those forms of take have been or will be analyzed and addressed in site-specific ITSs. Individual hatchery operators are held to the terms and conditions of their site-specific ITSs. On an annual basis, NMFS will review the annual reports associated with the site-specific consultations, and document they are still in effect during the funding decision process, to ensure compliance with the site-specific ITSs prior to issuing funds from the federal prey program.

Combined effects from competition, predation, and pathogen transmission, collectively referred to as ecological interactions, by federal prey program hatchery Chinook salmon are expected to result in take of listed salmon and steelhead. This type of take is difficult, if not impossible, to quantify because it cannot be observed, and, therefore, cannot be directly or reliably measured. However, as described in Section 2.5.1.2.3, ecological interactions are the direct result of hatchery releases, and the magnitude of interactions will increase as more fish are released from hatcheries. Therefore, NMFS will rely on the following two surrogates as take indicators for take associated with combined effects from ecological interactions caused by federal prey program hatchery Chinook salmon: 1) the annual abundance of federal prey program hatchery Chinook salmon smolts released; and, 2) the projected increase in ocean Chinook salmon abundance from federal prey program hatchery production, as estimated by the most current FRAM-Shelton model version available at the time model runs are expected to be produced. These are described in more detail below. These are reliable surrogate take indicators because we expect that the extent of ecological interactions is largely a function of hatchery Chinook salmon abundance, such that greater numbers of hatchery Chinook salmon would yield greater magnitude of ecological interactions.

For take surrogate 1 (annual abundance of federal prey program hatchery Chinook salmon smolts released), NMFS expects some annual variability in release numbers due to the level of unpredictability inherent in hatchery operations. Therefore, we expect that release abundances will not exceed the following values, as described in the proposed action:

- Total federal prey program release abundance from Puget Sound, Columbia River, and Washington coast not to exceed 22 million smolts in any given year, and running 5-year average not to exceed 21 million smolts.
- Total federal prey program release abundance from Puget Sound not to exceed 15.9 million smolts in any given year, and running 5-year average not to exceed 15.2 million smolts.
- Total federal prey program release abundance from Columbia River not to exceed 10.8 million smolts in any given year, and running 5-year average not to exceed 10.3 million smolts.

For take surrogate 2 (projected increase in ocean Chinook salmon abundance from the federal prey program hatchery production), NMFS expects annual variability due to the expected

variability in release abundances described above arising from unpredictability inherent in hatchery operations. Therefore, we expect that increases in marine abundance will not exceed the following values, as described in the proposed action:

- Increase in modeled age 3–5-year-old Chinook salmon abundance in any continental shelf area (outside of the Salish Sea) not to exceed: 1) for a full calendar year, 6.6% for any given year, and running 5-year average not to exceed 6.3%; and, 2) for summer months (July–September), 6.4% for any given year, and running 5-year average not to exceed 6.1%.
- Increase in modeled age 3–5-year-old Chinook salmon abundance in the Salish Sea not to exceed: 1) for a full calendar year, 7.5% for any given year, and running 5-year average not to exceed 7.2%; and, 2) for summer months (July–September), 1.8% for any given year, and running 5-year average not to exceed 1.7%.

### 2.9.1.2    Eulachon

Under the proposed action, hatchery-produced and released Chinook salmon will take place within habitats that are occupied by eulachon. Therefore, the proposed is likely to cause incidental take (killing, via predation) of adult, juvenile, sub-adult, and larval eulachon by hatchery-produced and released Chinook salmon throughout their life cycle.

Take caused by the production and release of hatchery-produced Chinook salmon cannot be directly quantified because the distribution and abundance of eulachon that occur within the action area are affected by habitat quality, competition, predation, and the interaction of processes that influence genetic, population, and environmental characteristics. These biotic and environmental processes interact in ways that may be random or directional, and may operate across far broader temporal and spatial scales than are affected by the proposed action. Thus, the distribution and abundance of eulachon within the action area cannot be attributed entirely to predation caused by the production and release of hatchery-produced Chinook salmon under the proposed action. In such circumstances, NMFS uses a surrogate to describe the extent of take. Here, the best available indicator for the extent of take is the annual production and release of up to 22 million hatchery-produced Chinook salmon smolts.

### 2.9.1.3    Puget Sound/Georgia Basin Rockfish

We anticipate that take of yelloweye rockfish and bocaccio of the Puget Sound/Georgia Basin DPSs will occur as a result of the proposed operation of Chinook salmon hatcheries to increase prey resources for SRKW. Incidental take of each species is expected to occur in the form of fatal injury through consumption of larvae of either species. Incidental take of each species under the proposed operations is not expected to exceed an adult equivalent of 1 yelloweye rockfish and 2 bocaccio annually. Take cannot be comprehensively monitored because it requires lethal gut content sampling of juvenile salmonids, but hatchery release data will inform bioenergetic models as a surrogate for direct observation. Here, the best available indicator for the extent of take is annual production and release of up to 22 million hatchery-produced Chinook salmon smolts.

### 2.9.2    Effect of the Take

In this Opinion, NMFS determined that the amount or extent of anticipated take, coupled with other effects of the proposed actions, is not likely to result in jeopardy to the species or destruction or adverse modification of critical habitat.

#### 2.9.2.1    Reasonable and Prudent Measures

"Reasonable and prudent measures" refer to those actions the Director considers necessary or appropriate to minimize the impact of the incidental take on the species(50 CFR 402.02).

##### 2.9.2.1.1    Salmon and Steelhead

1. NMFS shall monitor and report annually information pertaining to the take surrogates identified in Section 2.9.1.1 above.

##### 2.9.2.1.2    Eulachon

1. NMFS shall monitor and report annually information pertaining to the take surrogates identified in Section 2.9.1.2 above.

##### 2.9.2.1.3    Puget Sound/Georgia Basin Rockfish

1. NMFS shall monitor and report annually information pertaining to the take surrogates identified in Section 2.9.1.3 above.

#### 2.9.2.2    Terms and Conditions

In order to be exempt from the prohibitions of section 9 of the ESA, the Federal action agency must comply (or must ensure that any applicant complies) with the following terms and conditions. NMFS or any applicant has a continuing duty to monitor the impacts of incidental take and must report the progress of the action and its impact on the species as specified in this ITS (50 CFR 402.14). If the entity to whom a term and condition is directed does not comply with the following terms and conditions, protective coverage for the proposed action would likely lapse.

These terms and conditions constitute no more than a minor change to the proposed action because they are consistent with the basic design of the proposed action.

##### 2.9.2.2.1    Salmon and Steelhead

The following terms and conditions implement reasonable and prudent measure 1:

1. NMFS shall produce two annual reports for all activities and monitoring occurring that calendar year. Reports shall include the following information:

    a. For each fiscal year of proposed prey program funding, and prior to final funding distribution, a report complete with the following:

    i.    The number of federal prey program funded Chinook salmon smolts planned to be released with that fiscal year of funding, by calendar year of proposed smolt release and by region (Puget Sound, Columbia River, Washington coast).

    ii.    The running 5-year average—including the proposed releases for the fiscal year under consideration—of federal prey program Chinook salmon smolts released and proposed to be released in total (all regions combined), and for each region separately (Puget Sound, Columbia River, Washington coast).

    iii.    The anticipated percent increase in ocean abundance of age 3–5-year-old Chinook salmon in the Salish Sea and continental shelf areas resulting from the following calendar years federal prey program hatchery Chinook releases, based on FRAM-Shelton modelling.

    iv.    The running 5-year average—including the planned releases for the calendar year following the one the report is completed within—modeled percent increase in ocean abundance of age 3–5-year-old Chinook salmon in the Salish Sea and continental shelf areas resulting from federal prey program hatchery Chinook releases (actual and planned), based on FRAM-Shelton modelling.

    v.    Documentation that each hatchery program expected to receive funds meets criterion 6 and is in compliance with their site-specific Biological Opinion and associated ITS.

b.    For each calendar year that smolts are released, a report submitted within 4 months after the last federal prey program-funded hatchery smolt release of the calendar year complete with the following:

    i.    The number of federal prey program funded Chinook salmon smolts actually released in that calendar year, in total (all regions combined) and by region (Puget Sound, Columbia River, Washington coast).

    ii.    The running 5-year average—including the calendar year of the report's completion—of federal prey program Chinook salmon smolts released in total (all regions combined) and for each region separately (Puget Sound, Columbia River, Washington coast).

    iii.    The anticipated percent increase in marine abundance of age 3–5-year-old Chinook salmon in the Salish Sea and continental shelf areas resulting from the current year's federal prey program hatchery Chinook salmon smolt releases, based on FRAM-Shelton modelling.

    iv.    The running 5-year average—including the calendar year of the report's completion—modeled percent increase in ocean abundance of age 3–5-year-old Chinook salmon in the Salish Sea and continental shelf areas resulting from federal prey program hatchery Chinook releases, based on FRAM-Shelton modelling.

2. NMFS shall annually monitor emerging science regarding ecological interactions as they relate to hatchery science, including but not limited to density-dependent competitive interactions, relevant to parts of the action area affected by combined effects of the proposed action (i.e., marine and estuarine areas, and Columbia and Snake River mainstems). This annual review will evaluate emerging science to ensure that the scientific understanding of the nature, scope, and magnitude with which hatchery-origin Chinook salmon ecologically interact with listed natural salmonids does not meaningfully change from that which underpins this Opinion's analysis and conclusions. This review shall include, but not be limited to, relevant peer-reviewed journal publications and agency reports that document results of scientific investigations specific to density-dependent competitive interactions between hatchery- and natural-origin salmonids. Reports of monitoring activities that document routine data collections would not constitute emerging science unless accompanied by a scientific analysis.

3. NMFS shall evaluate the feasibility of directing a portion of the annual funding towards monitoring indicators of forage resource limitation and competition in marine areas affected by the funding decision. Indicators to be considered shall include, but not be limited to, the following: a) hatchery- and natural-origin juvenile Chinook salmon growth during the summer; b) forage resource availability; and, c) forage resource demand by hatchery- and natural-origin juvenile Chinook salmon and other species that prey on similar taxa. NMFS shall document the conclusions of this feasibility assessment within one year of this Opinion's signature.

NMFS shall implement any monitoring deemed feasible, to begin as soon as practicable once the feasibility assessment is completed. Reports documenting monitoring results shall be produced by May 1 for the previous calendar year's monitoring.

### 2.9.2.2.2 Eulachon

NMFS shall submit an annual report on the total production and release of hatchery-produced Chinook salmon throughout the action area under the proposed action.

### 2.9.2.2.3 Puget Sound/Georgia Basin Rockfish

Terms and conditions specific to the above identified reasonable and prudent measures for rockfish are identified below.

1. NMFS shall coordinate with the relevant entities to implement consistent methods to monitor, document, and report release of hatchery Chinook salmon into Puget Sound and adjacent waters.

## 2.10 Conservation Recommendations

Section 7(a)(1) of the ESA directs Federal agencies to use their authorities to further the purposes of the ESA by carrying out conservation programs for the benefit of the threatened and endangered species. Specifically, "conservation recommendations" are suggestions regarding discretionary measures to minimize or avoid adverse effects of a proposed action on listed species or critical habitat or regarding the development of information (50 CFR 402.02).

NMFS believes the following conservation recommendations are consistent with these obligations, and therefore should be implemented by NMFS.

### 2.10.1 Salmon and Steelhead

1. Ecological interactions involving hatchery Chinook salmon in the mainstem Columbia and Snake Rivers (outmigrating juveniles) and in marine waters of the Salish Sea and the continental shelf (juveniles, subadults, and adults) are not well understood. NMFS should endeavor to continue to assess beneficial and detrimental interactions involving hatchery Chinook salmon in these habitats to better understand how hatchery programs can be managed to aid in the recovery of listed salmonids across the region. NMFS should support, financially or otherwise, studies to address critical research needs in these areas.

### 2.10.2 Listed Rockfish

The following conservation recommendation is provided to better understand the incidental take of listed rockfish in the proposed fishery and its effects.

1. NMFS should work with the appropriate entities to collect additional information on the spatiotemporal overlap of larval rockfish and juvenile salmon, including conducting dedicated diet studies that employ genetic interrogation tools to determine the proportional representation of ESA-listed rockfish in gut contents.

## 2.11 Reinitiation of Consultation

This concludes formal consultation for the NMFS Preferred Alternative for Expenditure of Pacific Salmon Treaty Funds to Increase Prey Availability for Southern Resident Killer Whales.

Under 50 CFR 402.16(a): "Reinitiation of consultation is required and shall be requested by the federal agency, where discretionary federal involvement or control over the action has been retained or is authorized by law and: (1) If the amount or extent of taking specified in the incidental take statement is exceeded; (2) If new information reveals effects of the agency action that may affect listed species or critical habitat in a manner or to an extent not previously considered; (3) If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion or written concurrence; or (4) If a new species is listed or critical habitat designated that may be affected by the identified action."

# EXHIBIT 10

## INVOICE

TO:        Kurt Beardslee, Executive Director
           Wild Fish Conservancy

FROM:      Robert Lacy
           192 Ocean View Road
           Jonesboro, ME 04648 USA

DATE:      18 April 2020

Updated Population Viability Analyses of Southern Resident Killer Whales, for the purpose of projecting the adequacy for ensuring persistence and recovery of the SRKW population of salmon harvest rates and mitigation measures in the NMFS 2019 SEAK Biological Opinion.

Reimbursement for 40 hours of effort by Dr Robert Lacy on analyses of threats to the Southern Resident Killer Whale population:            US$4,000

Check can be mailed to:

Robert Lacy
192 Ocean View Road
Jonesboro, ME 04648

Alternatively, direct wire transfer of funds can be made to:

Name of bank: Machias Savings Bank
Bank address:
      4 Center St
      Machias, ME 04654
Account name: Robert C Lacy
Account number: 8012637900
ABA: 211274531

**FIFTH KNUTSEN DECLARATION - 115**
**Case No. 2:20-cv-00417-RAJ-MLP**



**Wildlife Conservation Genetics Specialists**
**DUNS TPIN (Tax Payer Identification Number): 60-275-4637**
**Polson, Montana, 59860, USA**
**Phone: +1- 406-544-2959**

### INVOICE

**Date:** 10 June 2021

**Order #:** 21/1/**3**

**To:** Kampmeier & Knutsen PLLC

**Project/service:** Declarations: hatchery effects on Chinook salmon populations in the Columbia River

**Description:**

Research (literature search, reading papers/declarations, meetings with experts)

  9 hours @ $220 per hour        = $1,980

Discussions/communications (planning, correspondence, phone, zoom)

  2 hours @ $220 per hour        =  $440

Writing (emails, declarations)

  4 hours @ 220 per hour        =  $880

**Total = 15 hours**             **Total  = $3,080**

Payment mode:   Check Please to Gordon Luikart
Address to:
Gordon Luikart
41229 Haystack Mountain Lane
Polson, MT  59860



**Wildlife Conservation Genetics Specialists**
**DUNS TPIN (Tax Payer Identification Number): 60-275-4637**
**Polson, Montana, 59860, USA**
**Phone: +1- 406-544-2959**

**INVOICE**

**Date:** 1 May 2022

**Order #:** 22/1/**1**

**To:** Kampmeier & Knutsen PLLC

**Project/service:** Third Declaration: hatchery effects on Chinook salmon populations in the Columbia River

**Description:**

Research (literature search, reading papers/declarations, meetings with experts)

    1.5 hours @ $220 per hour          =   $330

Discussions/communications (planning, correspondence, phone, zoom)

    1 hours @ $220 per hour          =   $220

Writing/editing (emails, declaration)

    2 hours @ 220 per hour          =   $440

**Total = 4.5 hours**                  **Total = $990**

Payment mode:  Check Please to Gordon Luikart
Address to:
Gordon Luikart
41229 Haystack Mountain Lane
Polson, MT  59860

# Hans D. Radtke, Ph.D.

**Natural Resource Economist**
**P.O. Box 244**
**Yachats, Oregon 97498**
**Voice and Fax:  (541) 547-3087**
**Email:  hansradtke@peak.org**

June 7, 2022

Kurt Beardslee, Executive Director
Wild Fish Conservancy
PO Box 402
Duvall, WA 98019

Re:   Characterize the Southeast Alaska Commercial Salmon Fishery

Dear Kurt:

This letter transmits the first invoice for the referenced project. Authorization for undertaking the work and project budget was from an email to Shannon Davis, The Research Group, Corvallis Oregon dated April 14, 2022 7:54 AM.

Thank you for the opportunity to work with WFC on this project.

Sincerely,

Hans Radtke, Ph.D.

Encl.

# Hans D. Radtke, Ph.D.
### *Natural Resource Economist*
**P.O. Box 244**
**Yachats, Oregon 97498**
**Voice and Fax:  (541) 547-3087**
**Email:  hansradtke@peak.org**

## REQUEST FOR PAYMENT

TO:    Kurt Beardslee, Executive Director
Wild Fish Conservancy
PO Box 402
Duvall, WA 98019
PROJECT:    Characterize the Southeast Alaska Commercial Salmon Fishery
DATE:  June 7, 2022
INVOICE NO.:  1
PAGE:  1 of 1

Activities

- Provide a written legal declaration that contains the characterization of the Southeast Alaska commercial salmon fishery.

Costs

| | |
|---|---:|
| Retainer Labor, Expenses, and Fees | $3,000.00 |
| | ------------- |
| Current Due | $3,000.00 |
| Past Due | $0.00 |
| | ------------- |
| Total Due | $3,000.00 |
| Previously Invoiced | $0.00 |
| Total Obligated | $3,000.00 |
| Purchase Order/Contract | $3,000.00 |
| Percent Completed | 100% |

**FIFTH KNUTSEN DECLARATION - 119**
**Case No. 2:20-cv-00417-RAJ-MLP**

### The Research Group, LLC
#### 810 NW Carpathian Dr.
#### Corvallis, OR  97330
*Voice and Facsimile (541) 758-1432 / Email shannond@trgsystems.net*

June 7, 2022

Kurt Beardslee, Executive Director
Wild Fish Conservancy
PO Box 402
Duvall, WA 98019

Re:      Characterization of the Southeast Alaska Commercial Salmon Fishery

Dear Kurt:

This letter transmits the first and only invoice for the referenced project. Authorization for undertaking the work and project budget was from your email to me dated April 14, 2022 7:54 AM.

Thank you for the opportunity to work with WFC on this project.

Sincerely,

Shannon Davis

SWD:kco
Encl.

*The Research Group, LLC*
*810 NW Carpathian Dr.*
*Corvallis, OR 97330*
*Voice and Facsimile (541)758-1432 / Email shannond@trgsystems.net*

TO:     Kurt Beardslee, Executive Director
        Wild Fish Conservancy
        PO Box 402
        Duvall, WA 98019
PROJECT:    Characterization of the Southeast Alaska Commercial Salmon Fishery
DATE:  June 7, 2022
INVOICE NO.:  1
PAGE:  1 of 1

Activities

- Provide research services and written material (displays and narrative) that contains the characterization of the Southeast Alaska commercial salmon fishery.

Costs

| | |
|---|---|
| Retainer Labor, Expenses, and Fees | $9,000.00 |
| | ------------- |
| Current Due | $9,000.00 |
| Past Due | $0.00 |
| | ------------- |
| Total Due | $9,000.00 |
| Previously Invoiced | $0.00 |
| Total Obligated | $9,000.00 |
| Purchase Order/Contract | $9,000.00 |
| Percent Completed | 100% |

Employer Federal Identification Number:  46-1282786
Employer State Identification Number:  15459255

**FIFTH KNUTSEN DECLARATION - 121**
**Case No. 2:20-cv-00417-RAJ-MLP**

# EXHIBIT 11

| Kampmeier & Knutsen Attorneys and Law Clerks | | |
|---|---|---|
| **Initials** | **Attorney** | **Position** |
| BAK or BK | Brian Knutsen | Owner/Partner |
| DI | Dara Illowsky | Law Clerk |
| DR | Dakota Rash | Law Clerk |
| EB | Emma Bruden | Associate |
| EP | Erica Proulx | Associate |
| JD | Jessica Durney | Associate |
| MH | Mariah Harrod | Associate |
| PK | Paul Kampmeier | Owner/Partner |

| Other Common Abbreviations | | |
|---|---|---|
| **Abbv.** | **Person/Meaning** | **Notes** |
| AK | State of Alaska | |
| ATA | Alaska Trollers Association | |
| BB | Benjamin Byers | Co-counsel |
| BiOp | Biological Opinion | |
| BM | Bill McMillan | WFC Standing Declarant |
| c/c or cc | Co-Counsel | |
| EAJA | Equal Access to Justice Act | |
| EH | Emma Helverson | WFC Ex. Director |
| EL | Eric Lindberg | Co-Counsel |
| ESA | Endangered Species Act | |
| GL | Dr. Gordon Luikart | Retained Genetics Expert |
| HR | Dr. Hans Radtke | Retained Economist Expert |
| iso | In Support Of | |
| ITS | Incidental Take Statement | |
| KB | Kurt Beardslee | Former WFC Ex. Director |
| LR | Legal Research | |
| m- | Motion | |
| MSA | Magnuson-Stevens Act | |
| MSJ | Motion for Summary Judgment | |
| NEPA | National Environmental Policy Act | |
| NG | Nick Gayeski | WFC Fish Biologist |
| NMFS | National Marine Fisheries Service | |
| oc or o/c | Opposing Counsel | |
| pHOS | Proportion Of Hatchery-Origin Fish Spawning Naturally | |
| PI | Preliminary Injunction | |
| PS | Pete Soverel | WFC Standing Declarant |
| PST | Pacific Salmon Treaty | |
| R&R | Report and Recommendation | |
| SD | Shannon Davis | Retained Expert |
| SEAK | Southeast Alaska | |
| SJ | Summary Judgment | |
| SRKW | Southern Resident Killer Whale | |
| WDFW | Wash. Dep't of Fish & Wildlife | |
| WFC | Wild Fish Conservancy | |

**Case Name**
***Wild Fish Conservancy v. NMFS*, W.D. Wash. No. 2:20-cv-00417-RAJ-MLP**

| Date | Attorney | Work Done | Hours Worked | Hours Invoiced | Case Costs |
|------|----------|-----------|--------------|----------------|------------|
| 10/9/2019 | BAK | telephone call w/ WFC (KB and NG) and potential co-counsel for case | 0.7 | 0.7 | |
| 10/25/2019 | BAK | telephone call w/ WFC (KB and NG) and potential co-counsel for case | 0.4 | 0.4 | |
| 10/29/2019 | BAK | telephone call w/ KB re: litigation strategy | 0.2 | 0.2 | |
| 12/6/2019 | BAK | reviewed materials to evaluate claims (BiOp, treaty, Fisheries Management Plan) | 4.5 | 4.5 | |
| 12/9/2019 | BAK | telephone call w/ PK re: litigation strategy | 0.2 | 0.2 | |
| 12/9/2019 | BAK | case evaluation work (reviewed agency documents to understand various actions and authorities and evauated possible claims) | 3.6 | 3.6 | |
| 12/10/2019 | BAK | reviewed materials to evaluate claims (BiOp) | 7.3 | 7.3 | |
| 12/11/2019 | BAK | reviewed materials to evaluate claims (BiOp) | 6.5 | 6.5 | |
| 12/13/2019 | BAK | reviewed materials and evauated claims (BiOp, management plans) | 3.2 | 3.2 | |
| 12/16/2019 | BAK | reviewed materials and evauated claims (BiOp, management plans) | 3.1 | 3.1 | |
| 12/18/2019 | BAK | reviewed documents and evauated claims (BiOp, Fishery Management Plans, NEPA documents) | 3.2 | 3.2 | |
| 12/19/2019 | BAK | reviewed documents and evauated claims (Magnuson-Stevens Act, Fishery Management Plans, NEPA documents) | 4.3 | 4.3 | |
| 12/20/2019 | BAK | began drafting presuit notice letter | 3.8 | 3.8 | |
| 12/27/2019 | BAK | worked on notice letter (drafting, reviewing materials, and research) | 3.7 | 3.7 | |
| 12/30/2019 | BAK | worked on notice letter (drafting, reviewing materials, and research) | 4.4 | 4.4 | |
| 12/31/2019 | BAK | worked on notice letter (drafting, reviewing materials, and research) | 5.8 | 5.8 | |
| | | **BAK 2019 Hours:** | 54.9 | 54.9 | |
| 1/2/2020 | BAK | worked on notice letter (drafting, reviewing materials, and research) | 2.2 | 2.2 | |
| 1/3/2020 | BAK | worked on notice letter (drafting, reviewing materials, and research) | 3.4 | 3.4 | |
| 1/6/2020 | BAK | call w/ KB and NG re: notice letter and litigation strategy issues | 1.4 | 1.4 | |
| 1/6/2020 | BAK | worked on notice letter (revising) | 0.8 | 0.8 | |
| 1/7/2020 | BAK | worked on notice letter (research, drafting, and editing) | 2.9 | 2.9 | |
| 1/8/2020 | BAK | worked on notice letter (revising) | 1.9 | 1.9 | |
| 1/8/2020 | BAK | telephone call w/ WFC (KB and NG), EL, BB, and EB re: notice letter issues | 0.5 | 0.5 | |
| 1/9/2020 | BAK | final revising and editing notice letter | 1.2 | 1.2 | |
| 1/9/2020 | BAK | postage for notice letter | | | $38.00 |

| | | | | |
|---|---|---|---|---|
| 1/15/2020 | BAK | legal research and evaluation of claims in preparation of complaint drafting | 2.1 | 2.1 |
| 1/22/2020 | BAK | telephone call w/ EB, EL, BB, and WFC re: litigation strategy and next steps | 0.4 | 0.4 |
| 1/24/2020 | BAK | evaluate and schedule complaint filing and PI filing | 0.3 | 0 |
| 2/6/2020 | BAK | began drafting motion for preliminary injunction (evaluated arguments/issues and outlined motion) | 1.2 | 1.2 |
| 2/10/2020 | BAK | legal research re: standard of review for preliminary injunction | 1.4 | 1.4 |
| 2/13/2020 | BAK | worked on motion for preliminary injunction (drafting statutory background sections) | 2.1 | 2.1 |
| 2/18/2020 | BAK | worked on motion for preliminary injunction (legal research and drafting argument sections) | 2 | 2 |
| 2/19/2020 | BAK | worked on motion for preliminary injunction (NEPA framework section - legal research and drafting) | 3.2 | 3.2 |
| 2/20/2020 | BAK | worked on motion for preliminary injunction (legal research and drafting argument sections) | 3.7 | 3.7 |
| 2/21/2020 | BAK | worked on motion for preliminary injunction (legal research and drafting argument sections) | 4.2 | 4.2 |
| 2/24/2020 | BAK | reviewed and revised draft complaint prepared by co-counsel | 6.5 | 6.5 |
| 2/25/2020 | BAK | worked on complaint (legal research, revising, drafting) | 6.3 | 6.3 |
| 2/26/2020 | BAK | worked on complaint (legal research, revising, drafting) | 5.7 | 5.7 |
| 2/26/2020 | BAK | telephone call w/ WFC and co-counsel re: status of complaint and litigation strategy | 0.7 | 0.7 |
| 2/27/2020 | BAK | telephone call w/ PK re: litigation strategy | 0.3 | 0.3 |
| 2/27/2020 | BAK | worked on complaint (legal research and revising) | 4.9 | 4.9 |
| 2/28/2020 | BAK | worked on motion for preliminary injunction (reviewing documents and drafting fact sections) | 3.6 | 3.6 |
| 3/2/2020 | BAK | worked on motion for preliminary injunction (legal research and drafting argument sections) | 2.1 | 2.1 |
| 3/3/2020 | BAK | worked on motion for preliminary injunction (legal research and drafting argument sections) | 4.2 | 4.2 |
| 3/3/2020 | BAK | woked on motion for preliminary injunction (revising legal backgroud sections) | 2.1 | 2.1 |
| 3/4/2020 | BAK | worked on motion for preliminary injunction (legal research and drafting argument sections - reliance on mitigation) | 5.6 | 5.6 |
| 3/5/2020 | BAK | worked on motion for preliminary injunction (reviewing documents and drafting fact sections) | 2.5 | 2.5 |
| 3/5/2020 | BAK | worked on motion for preliminary injunction (legal research and drafting - reliance on mitigation) | 4.8 | 4.8 |

| Date | Timekeeper | Description | | | |
|---|---|---|---|---|---|
| 3/5/2020 | BAK | telephone call w/ KB and NG re: possible meeting w/ NMFS/Thom re: notice letter | 0.4 | 0.4 | |
| 3/6/2020 | BAK | reviewed revised draft complaint from co-counsel (EL and BB) | 0.4 | 0.4 | |
| 3/6/2020 | BAK | worked on PI motion - legal research and drafting argument section on mitigation measures | 7.4 | 7.4 | |
| 3/9/2020 | BAK | worked on PI motion - legal research and drafting argument section on mitigation measures | 7.1 | 7.1 | |
| 3/9/2020 | BAK | telephone call w/ EL and EB re: litigation strategy (complaint filing and PI Motion) | 0.3 | 0.3 | |
| 3/9/2020 | BAK | telephone call w/ KB re: upcoming meeting with Thom | 0.4 | 0.4 | |
| 3/10/2020 | BAK | worked on motion for preliminary injunction (legal research and drafting argument re: mitigation measures) | 5.2 | 5.2 | |
| 3/11/2020 | BAK | edited various sections of motion for preliminary injunction | 0.6 | 0.6 | |
| 3/12/2020 | BAK | worked on PI motion - legal research and drafting argument section on mitigation measures | 5.3 | 5.3 | |
| 3/13/2020 | BAK | worked on PI motion - legal research and drafting argument section on mitigation measures | 0.5 | 0.5 | |
| 3/13/2020 | BAK | worked on PI motion - legal research and drafting argument section on substantive ESA section 7 violations | 1.1 | 1.1 | |
| 3/13/2020 | BAK | worked on PI Motion - NEPA violation section | 4.9 | 4.9 | |
| 3/17/2020 | BAK | reviewed and revised draft complaint | 6.3 | 6.3 | |
| 3/18/2020 | BAK | final revisions and filing of complaint | 2.5 | 2.5 | |
| 3/18/2020 | BAK | worked on motion for preliminary injunction - legal research and drafting argument section re: mitigation measures | 2.7 | 2.7 | |
| 3/18/2020 | BAK | district court filing fee | | | $400.00 |
| 3/19/2020 | BAK | draft letter to federal defendants and AG re: service of summonses and complaint | 0.2 | 0.2 | |
| 3/19/2020 | BAK | worked on PI Motion - legal research and drafting re: NEPA violations | 5.8 | 5.8 | |
| 3/19/2020 | BAK | worked on PI motion - revising mitigation measures arguments | 2.1 | 2.1 | |
| 3/19/2020 | BAK | postage for service of summonses and complaint | | | $58.80 |
| 3/20/2020 | BAK | worked on PI motion - irreparable injury | 4.2 | 4.2 | |
| 3/20/2020 | BAK | worked on PI Motion - NEPA arguments | 3.2 | 3.2 | |
| 3/23/2020 | BAK | worked on PI motion - revising various sections | 2.1 | 2.1 | |
| 3/24/2020 | BAK | telephone call w/ EL, BB, and EB re: PI motion issues | 0.4 | 0.4 | |
| 3/25/2020 | BAK | worked on PI motion - reviewing and revising multiple sections | 4.4 | 4.4 | |

| 3/26/2020 | BAK | worked on PI motion - reviewing and revising multiple sections | 3.8 | 3.8 |
| 3/26/2020 | BAK | reviewed and commented on draft Soverel Declaration for PI motion | 0.9 | 0.9 |
| 3/26/2020 | BAK | reviewed, revised, commented on argument on ITS/surrogate for PI from EB | 0.7 | 0.7 |
| 3/27/2020 | BAK | telephone call w/ NG, KB, EL, BB, and Dr. Lacy re: expert work/declaration | 0.4 | 0.4 |
| 3/27/2020 | BAK | worked on PI Motion - revising several sections | 4.3 | 4.3 |
| 3/27/2020 | BAK | telephone call w/ EB re: PI argument section on ITS | 0.3 | 0.3 |
| 3/31/2020 | BAK | worked on PI Motion - argument section on NEPA | 4.6 | 4.6 |
| 3/31/2020 | BAK | worked on PI motion - revised multiple sections | 2.5 | 2.5 |
| 4/1/2020 | BAK | worked on PI motion - irreparable injury | 3.4 | 3.4 |
| 4/1/2020 | BAK | edited multiple sections | 3.1 | 3.1 |
| 4/2/2020 | BAK | prepared and filed declaration of service of notice letter | 1.2 | 0 |
| 4/2/2020 | BAK | prepared and filed affidavits of service of summonses and complaint | 1.5 | 0 |
| 4/6/2020 | BAK | reviewed and commented on draft Beardslee Declaration iso PI motion | 2.1 | 2.1 |
| 4/6/2020 | BAK | reviewed and commented on draft Giles declaration iso PI Motion | 1.8 | 1.8 |
| 4/7/2020 | BAK | telephone call w/ PK re: PI motion strategy | | |
| 4/7/2020 | BAK | reviewed and evaulated WD Wash new order re: consent to magistarte | 0.6 | 0.6 |
| 4/7/2020 | BAK | reviewed and commented on draft Lacy declaration iso motion for PI | 2.1 | 2.1 |
| 4/8/2020 | BAK | revised and edited motion for preliminary injunction | 4.3 | 4.3 |
| 4/9/2020 | BAK | reviewed and commented on revised Lacy declaration iso motion for PI | 1.2 | 1.2 |
| 4/9/2020 | BAK | telephone call w/ co-counsel, Lacy, and NG re: Lacy declaration | 0.9 | 0.9 |
| 4/9/2020 | BAK | reviewed and revised draft PI motion | 0.5 | 0.5 |
| 4/10/2020 | BAK | worked on PI Motion - review, revising/editing/shortening | 5.5 | 5.5 |
| 4/13/2020 | BAK | telephone call w/ counsel for defendants and co-counsel to confer on motion for preliminary injunction | 0.2 | 0.2 |
| 4/13/2020 | BAK | telephone call w/ PK and EB re: motion/litigation strategy | 0.2 | 0.2 |
| 4/13/2020 | BAK | prepared Knutsen declaration authenticating exhibits for PI motion | 4.6 | 4.6 |
| 4/13/2020 | BAK | worked on motion for preliminary injunction - revising motion and editing down to page limits | 1.7 | 1.7 |
| 4/14/2020 | BAK | telephone w/ co-counsel re: outstanding tasks for PI motion | 0.2 | 0.2 |
| 4/14/2020 | BAK | reviewed and revised Lacy declaration | 2.5 | 2.5 |

| 4/14/2020 | BAK | reviewed and revised Giles declaration | 1.2 | 1.2 | |
| 4/14/2020 | BAK | worked on PI Motion - revising brief and evaulating citations to exhibits | 3.5 | 3.5 | |
| 4/14/2020 | BAK | drafted introduction to PI motion | 1.3 | 1.3 | |
| 4/15/2020 | BAK | communication w/ Lacy re: draft declaration | 0.4 | 0.4 | |
| 4/15/2020 | BAK | telephone call w/ NG re: Lacy declaration | 0.3 | 0.3 | |
| 4/15/2020 | BAK | worked on PI motion - revising/editing entire motion | 5.2 | 5.2 | |
| 4/15/2020 | BAK | revised argument section on irreparable injunry to incorporate expert declarations | 3.6 | 3.6 | |
| 4/16/2020 | BAK | reviewed and revised draft proposed order | 1.3 | 1.3 | |
| 4/16/2020 | BAK | communications w/ co-counsel re: expert declarations | 0.7 | 0.7 | |
| 4/16/2020 | BAK | reviewed revisions to PI motion for co-counsel and incorporated into brief | 3.6 | 3.6 | |
| 4/16/2020 | BAK | review, revised, finalize, and file PI motion and assofictaed couments | 3.1 | 3.1 | |
| 4/20/2020 | BAK | telephone call w/ PK re: magistrate process and timing of PI motion | 0.4 | 0.4 | |
| 4/20/2020 | BAK | telephone call w/ co-counsel re: magistrate process and timing of PI motion | 0.3 | 0.3 | |
| 4/20/2020 | BAK | telephone to court re: magistrate process for PI motions | 0.2 | 0.2 | |
| 4/20/2020 | BAK | telephone call w/ PK and EB re: magistrate process and PI motion | 0.2 | 0.2 | |
| 4/20/2020 | BAK | telephone call w/ PK re: litigation strategy | 0.4 | 0.4 | |
| 4/20/2020 | BAK | confer w/ counsel for defendant re: request to extend defendants' response deadline and possible alternatives | 0.2 | 0.2 | |
| 4/20/2020 | BAK | confer w/ client re: defendants' request to extend response deadline | 0.3 | 0.3 | |
| 4/20/2020 | BAK | email to co-counsel re: defendants' request to extend response deadline | 0.3 | 0.3 | |
| 4/21/2020 | BAK | communications w/ co-counsel re: defendants rejection of alternatives and intent to seek 2 week extension of response deadline` | 0.5 | 0.5 | |
| 4/21/2020 | BAK | conferrals w/ counsel for industry intervenor on proposed intervention | 0.7 | 0.7 | |
| 4/21/2020 | BAK | communications w/ counsel for defendants re: proposed extension of page limits when responding to mutlipe briefs | 0.5 | 0.5 | |
| 4/21/2020 | BAK | telephone call w/ PK re: litigation strategy | 0.8 | 0.8 | |
| 4/22/2020 | BAK | FedEx costs for copying and mail judge's copies of PI filings | | | $86.26 |
| 4/22/2020 | BAK | communications w/ counsel for proposed intervenor and counsel for defendants re: intervention and request for additional pages when responding to multiple briefs | 0.4 | 0.4 | |

| 4/23/2020 | BAK | reviewed and revised draft response to fed defs' motion to extend deadline for response to PI motion | 2.7 | 2.7 |
|---|---|---|---|---|
| 4/23/2020 | BAK | incorporated co-counsel's revisions into response to motion to extend deadline, finalized and filed brief | 0.8 | 0.8 |
| 4/23/2020 | BAK | communications w/ co-counsel and court re: status conference scheduled for 4/27/2020 | 0.2 | 0.2 |
| 4/23/2020 | BAK | reviewed motion to intervene by Alasaka Trollers Association and supporting materials and order granting intervention | 1.2 | 1.2 |
| 4/23/2020 | BAK | reviewed initial scheduling order, evalauted, and calendared | 0.3 | 0.3 |
| 4/25/2020 | BAK | legal research re: impact of delay on request for PI | 1.1 | 1.1 |
| 4/27/2020 | BAK | reviewed materials to prepare for hearing on defendants' request for extension of brief deadline | 0.3 | 0.3 |
| 4/27/2020 | BAK | telephonic argument on defendants' motion for extension | 0.4 | 0.4 |
| 4/27/2020 | BAK | telephone call w/ WFC (KB and NG) and counsel for WFC in challenge to Pacific Fishery Management Plan re: coordination in litigation strategy | 1.3 | 1.3 |
| 4/27/2020 | BAK | telephone call w/ PK and EB re: litigation strategy | 0.3 | 0.3 |
| 4/27/2020 | BAK | reviewed cases and began drafting arguement re: delay impact on request for injunctive relief | 1.2 | 1.2 |
| 4/28/2020 | BAK | legal research and drafting argument re: delay in seeking PI for reply brief | 4.1 | 4.1 |
| 4/29/2020 | BAK | legal research and drafting argument re: delay in seeking PI for reply brief | 5.3 | 5.3 |
| 4/30/2020 | BAK | legal research re: delay in seeking PI (reviewed briefs from WW v. Marten) | 1.8 | 1.8 |
| 5/1/2020 | BAK | reviewed 2020 BiOp on fisheries under the PFMC and evaluated impact on PI motion | 2.1 | 2.1 |
| 5/4/2020 | BAK | telephone call w/ KB re: WDFW hatchery production increases | 0.4 | 0.4 |
| 5/4/2020 | BAK | online research into WDFW increases in Chinook hatchery production | 2.5 | 2.5 |
| 5/4/2020 | BAK | legal research and drafting argument re: review limited to record at time of BiOp for reply brief | 2.1 | 2.1 |
| 5/5/2020 | BAK | legal research and drafting re: prohibition on post hoc argument to support agency decisions for reply to PI and/or summary judgment motion | 2.1 | 2.1 |
| 5/5/2020 | BAK | research re: recent Chinook hatchery releases and potential additional releases as supposed mitigation | 1.8 | 1.8 |

| 5/5/2020 | BAK | legal research and drafting re: failure to provide in BiOp jeopardy opinion and/or ITS for hatchery mitigation actions for use in summary judgment | 3.5 | 3.5 |
|---|---|---|---|---|
| 5/6/2020 | BAK | legal research and drafting re: failure to provide in BiOp jeopardy opinion and/or ITS for hatchery mitigation actions for use in summary judgment | 5.4 | 5.4 |
| 5/6/2020 | BAK | drafted joint status report re: scope of review in response to Court's minute order | 1.9 | 1.9 |
| 5/7/2020 | BAK | telephone conference w/ counsel for defendants re: joint status report re: scope of review | 0.2 | 0.2 |
| 5/7/2020 | BAK | revised joint status report re: scope of review and emailed counsel for defendants re: same | 0.3 | 0.3 |
| 5/7/2020 | BAK | telephone call w/ KB re: litigaition strategy and WDFW hatchery production increases | 0.5 | 0.5 |
| 5/7/2020 | BAK | legal research and drafting re: no jeopardy analysis and ITS in BiOp for summary judgment | 1.2 | 1.2 |
| 5/8/2020 | BAK | researched salmon fisheries in Alaska state waters and evaluated for use in reply iso PI | 2.3 | 2.3 |
| 5/8/2020 | BAK | revised, finalized, and filed statement on scope of review | 0.3 | 0.3 |
| 5/11/2020 | BAK | reviewed intervenor response to PI motion and supporting materials | 2.5 | 2.5 |
| 5/11/2020 | BAK | reviewed federal defendants' response to PI motion and supporting materials | 3.1 | 3.1 |
| 5/12/2020 | BAK | legal research and drafting reply iso PI - argument re: fed defs statute of limitations argument | 10.9 | 10.9 |
| 5/12/2020 | BAK | telephone call w/ co-counsel re: response briefs and work to be done on reply iso PI | 0.8 | 0.8 |
| 5/13/2020 | BAK | legal research and drafting for reply iso PI motion - argument re: limitations period | 7.1 | 7.1 |
| 5/13/2020 | BAK | legal research and drafting for reply iso PI motion - reliance on mitigation | 5.4 | 5.4 |
| 5/14/2020 | BAK | telephone call w/ EB re: issues for reply iso PI | 0.2 | 0.2 |
| 5/14/2020 | BAK | revising reply iso PI - section re: statute of limitations issue | 1.5 | 1.5 |
| 5/14/2020 | BAK | review, revise, and incorporate argument on bond into reply iso PI | 1.1 | 1.1 |
| 5/14/2020 | BAK | review, revise, and incorporate argument on standing into reply iso PI | 2.3 | 2.3 |
| 5/14/2020 | BAK | review, revise, and incorporate argument on surroagte/ITS into reply iso PI | 1.6 | 1.6 |
| 5/14/2020 | BAK | review, revise, and incorporate argument on NEPA into reply iso PI | 2.7 | 2.7 |
| 5/14/2020 | BAK | review, revise, and incorporate argument on irreparable injury into reply iso PI | 3.6 | 3.6 |
| 5/14/2020 | BAK | review, revise, and incorporate argument on balancing equities into reply iso PI | 0.9 | 0.9 |

| 5/15/2020 | BAK | legal research and drafting/revising NEPA argument section in reply iso PI Motion | 2.6 | 2.6 |
|---|---|---|---|---|
| 5/15/2020 | BAK | drafting/revising irreparable injury argument section in reply iso PI Motion | 2.2 | 2.2 |
| 5/15/2020 | BAK | legal research and drating for argument on surrogate/ITS in reply iso PI Motion | 1.6 | 1.6 |
| 5/15/2020 | BAK | legal research and drafting for standing argument in reply iso PI Motion | 1.8 | 1.8 |
| 5/15/2020 | BAK | reviewing, revising, shortening, editing entire reply iso PI motion | 4.1 | 4.1 |
| 5/19/2020 | BAK | telephone calls w/ PK re: jurisdictional issues and upcoming argument re: same | 0.7 | 0.7 |
| 5/19/2020 | BAK | legal research re: jurisdicational issues under MSA's judical review provision in preparation for argument on PI motion | 5.1 | 5.1 |
| 5/20/2020 | BAK | legal research and drafting re: jurisdication under MSA's judical review provision in preparation of oral argument on PI | 4 | 4 |
| 5/21/2020 | BAK | review and evaulated new predictions on salmon abundance and consider whether need to file supplemental data re: Barre's predictions | 1.1 | 1.1 |
| 5/21/2020 | BAK | evaluated possible efforts by NMFS's to fund hatchery production under BiOp and impact on claims for relief | 1.4 | 1.4 |
| 5/21/2020 | BAK | drafted request for documents to be submitted to NMFS to evaulate efforts to fund mitigation | 2.5 | 2.5 |
| 5/22/2020 | BAK | telephone call w/ KB and NG re: NMFS's efforts to fund hatcheries as mitigation and impact on claims | 0.8 | 0.8 |
| 5/22/2020 | BAK | revised request for documents from NMFS | 1.2 | 1.2 |
| 5/22/2020 | BAK | reviewed and evaluated defendants' answer | 0.9 | 0.9 |
| 5/22/2020 | BAK | reviewed and evaulated court's order re: oral argument on PI motion | 0.3 | 0.3 |
| 5/25/2020 | BAK | prepared for oral argument on PI motion (reviewed cases, worked on outline) | 5.5 | 5.5 |
| 5/26/2020 | BAK | prepared for oral argument on PI motion (reviewed cases, worked on outline) | 6.2 | 6.2 |
| 5/27/2020 | BAK | prepared for oral argument on PI motion (practice argument; revised outline) | 5.7 | 5.7 |
| 5/28/2020 | BAK | prepared for oral argument (practiced outline; revised outline) | 2.5 | 2.5 |
| 5/28/2020 | BAK | oral argument on PI motion | 1.4 | 1.4 |
| 5/28/2020 | BAK | telehone call w/ co-counsel and client re: hearing on PI motion | 0.5 | 0.5 |
| 6/1/2020 | BAK | communications w/ counsel for defendant re: administrative record deadline and briefing schedule | 0.2 | 0.2 |
| 6/2/2020 | BAK | communications w/ counsel for defendant re: motion to extend deadline for administrative record and to set briefing schedule | 0.4 | 0.4 |

| Date | Initials | Description | | |
|---|---|---|---|---|
| 6/3/2020 | BAK | telephone call w/ PK re: litigation strategy | 0.2 | 0.2 |
| 6/3/2020 | BAK | drafted response to federal defendants' motion re: administrative record | 1.6 | 1.6 |
| 6/3/2020 | BAK | revised and filed response to federal defendants' motion re: administrative record | 0.3 | 0.3 |
| 6/3/2020 | BAK | legal research and evaluation of possible arguments re: deficiency of BiOp | 3.8 | 3.8 |
| 6/4/2020 | BAK | telephone call w/ summer law clerk (DI) re: legal research project - vacatur standards | 0.2 | 0.2 |
| 6/4/2020 | BAK | legal research and evaluation of possible arguments re: deficiency of BiOp | 2.9 | 2.9 |
| 6/4/2020 | BAK | evaluate and outline summary judgment motion | 1.2 | 1.2 |
| 6/4/2020 | BAK | reviewed rules for objections/responses to magistate report and recommendations | 0.2 | 0.2 |
| 6/10/2020 | BAK | reviewed and evaluated magistarte's R&R on PI Motion | 1.5 | 1.5 |
| 6/10/2020 | BAK | legal research and drafting objections to magistrate's R&R - statute of limitations | 8.7 | 8.7 |
| 6/10/2020 | BAK | telephone call w/ co-counsel re: Magistrate's R&R and strategy for objections | 0.6 | 0.6 |
| 6/11/2020 | BAK | worked on objections to Magistrate's R&R on PI motion; introduction, standard of review | 2.5 | 2.5 |
| 6/11/2020 | BAK | legal research and drafting objections to magistrate's R&R - statute of limitations | 8.7 | 8.7 |
| 6/12/2020 | BAK | legal reseach and drafting objections to magistrate's R&R on PI Motion - statute of limitations | 8.1 | 8.1 |
| 6/12/2020 | BAK | telephone call w/ PK re: litigation strategy | 0.2 | 0.2 |
| 6/13/2020 | BAK | worked on objections to Magistrate's R&R on PI motion; standing | 1.5 | 1.5 |
| 6/13/2020 | BAK | worked on objections to Magistrate's R&R on PI motion - revised mutliple sections | 1.4 | 1.4 |
| 6/15/2020 | BAK | revised/edited objections to Magistrate's R&R - entire filing | 8.7 | 8.7 |
| 6/16/2020 | BAK | invoice for transcript from hearing before Magistrate on motion for preliminary injunction | | $277.95 |
| 6/23/2020 | BAK | telephone call w/ PK, EB, and DI re: litigation strategy | 0.2 | 0.2 |
| 6/23/2020 | BAK | reviewed materials in administrative record | 7.5 | 7.5 |
| 6/23/2020 | BAK | communications w/ co-counsel re: administrative record issues and dispositive briefing scheduling | 0.4 | 0.4 |
| 6/23/2020 | BAK | drafted statement on scheduling dispostive motions | 1.3 | 1.3 |
| 6/23/2020 | BAK | emailed counsel for defendants re: administrative record issues | 0.2 | 0.2 |
| 6/24/2020 | BAK | legal research re: administrative record issues and privilige log requirements | 2.8 | 2.8 |
| 6/24/2020 | BAK | revised statement on briefing schedules to be filed with the Court | 0.9 | 0.9 |

| | | | | |
|---|---|---|---|---|
| 6/24/2020 | BAK | communications w/ co-counsel re: dispositve briefing schedule and record issues | 0.7 | 0.7 |
| 6/24/2020 | BAK | communications w/ counsel for defendants re: dispositive briefing schedule and reord issues | 0.3 | 0.3 |
| 6/25/2020 | BAK | conferral w/ counsel for all parties re: scheduling matters, administrative record issues, and motion to expedite | 0.6 | 0.6 |
| 6/25/2020 | BAK | telephone call w/ co-counsel re: schedule issues and litigation strategy | 0.5 | 0.5 |
| 6/25/2020 | BAK | worked on statement re: administrative record to be filed with proposed briefing schedules (legal research and drafting) | 2.9 | 2.9 |
| 6/26/2020 | BAK | legal research and drafting re: administrative record issues for proposed briefing schedule | 1.7 | 1.7 |
| 6/26/2020 | BAK | incorporated statements from defendants into proposed briefing schedule and filed | 0.5 | 0.5 |
| 6/29/2020 | BAK | telephone call w/ PK and EB re: litigation strategy | 0.3 | 0.3 |
| 6/29/2020 | BAK | reviewed federal defendants' response to objections to MJ's R&R on PI | 0.9 | 0.9 |
| 7/7/2020 | BAK | reviewed DI (summer law clerk) memo on vacatur of agency actions; telephone call w/ DI re: same | 1.1 | 1.1 |
| 7/16/2020 | BAK | telephone call w/ PK re: litigation strategy | 0.3 | 0.3 |
| 7/20/2020 | BAK | telephone conferral w/ counsel for defendants re: administrative record issues | 0.3 | 0.3 |
| 7/20/2020 | BAK | reviewed supplemental administrative record | 2.7 | 2.7 |
| 7/30/2020 | BAK | reviewed revised memo on vacatur under the APA from DI | 1.3 | 1.3 |
| 7/30/2020 | BAK | meeting w/ DI re: vacatur memo and drafting vacatur argument from summary judgment | 0.4 | 0.4 |
| 8/3/2020 | BAK | telephone call w/ co-counsel and WFC re: expert needs for summary judgment briefing | 1.1 | 1.1 |
| 8/12/2020 | BAK | telephone call w/ Gordon Luikart re: expert declaration on hatchery impacts | 0.6 | 0.6 |
| 8/14/2020 | BAK | reviewed vacatur argument for summary judgment briefing from DI (summer law clerk) | 1.2 | 1.2 |
| 8/19/2020 | BAK | reviewed NMFS documents re: efforts to implement hatchery funding and evaulated use for remedy issues | 2.6 | 2.6 |
| 8/19/2020 | BAK | reviewed and prepared materials for Luikart declaration on remedy issues (genetic harm from hatchery programs) | 2.7 | 2.7 |
| 8/20/2020 | BAK | continued preparing materials for Luikart declaration | 2.5 | 2.5 |
| 8/21/2020 | BAK | telephone call w/ NG re: remedy issues | 0.5 | 0.5 |
| 8/21/2020 | BAK | began reviewing and preparing materials for NG declaration on remedy issues | 1.8 | 1.8 |
| 8/25/2020 | BAK | reviewed outline of potential issues to address in NG decl and evaulated same | 1.2 | 1.2 |

| | | | | |
|---|---|---|---|---|
| 8/25/2020 | BAK | telephone call w/ NG re: declaration issues | 0.8 | 0.8 |
| 9/2/2020 | BAK | telephone call w/ JD re: initial projects on case | 0.8 | 0.8 |
| 9/10/2020 | BAK | reviewed, evaluated, and commented on draft Luikart declaration | 5.2 | 5.2 |
| 9/10/2020 | BAK | telephone call w/ JD re: NEPA research for summary judgment motion | 0.4 | 0.4 |
| 9/11/2020 | BAK | telephone call w/ NG re: expert declaration issues | 1 | 1 |
| 9/16/2020 | BAK | reviewed revised memo on NEPA conntects/cumulative actions | 0.8 | 0.8 |
| 9/16/2020 | BAK | telephone call w/ JD re: updated NEPA memo | 0.3 | 0.3 |
| 9/29/2020 | BAK | review, evaluate, and comment on NEPA timing memo | 0.9 | 0.9 |
| 10/6/2020 | BAK | telephone call w/ EB re: standing issues | 0.5 | 0.5 |
| 10/8/2020 | BAK | reviewed draft expert declaration (GL) and related materials | 2.1 | 2.1 |
| 10/12/2020 | BAK | reviewed and commented on draft expert declaration (GL) | 2.4 | 2.4 |
| 10/13/2020 | BAK | reviewed and commented on draft expert declaration (GL) | 3.6 | 3.6 |
| 10/13/2020 | BAK | telephone call w/ JD re: memo on NEPA timing issues | 0.4 | 0.4 |
| 10/13/2020 | BAK | reviewed NMFS documents (record and FOIA docs) | 2.4 | 2.4 |
| 10/21/2020 | BAK | review and evaluate revised NEPA timing memo | 1.9 | 1.9 |
| 10/21/2020 | BAK | telephone call w/ JD re: NEPA memo and next steps | 0.3 | 0.3 |
| 10/22/2020 | BAK | telephone call w/ GL and NG re: GL expert declaration | 0.5 | 0.5 |
| 10/22/2020 | BAK | reviewed various key documents in administrative record | 2.9 | 2.9 |
| 10/23/2020 | BAK | reviewed various key documents in administrative record | 2.1 | 2.1 |
| 10/30/2020 | BAK | worked on summary judgment motion - standards of review | 1.3 | 1.3 |
| 10/30/2020 | BAK | worked on summary judgment motion - review materals and drafting for statement of facts (threatened salmonids and hatcheries) | 3.2 | 3.2 |
| 11/2/2020 | BAK | worked on summary judgment motion - reviewed materials re: pHOS levels in Columbia River and evaluated ability to increase production per SEAK BiOp | 2.8 | 2.8 |
| 11/3/2020 | BAK | telephone call w/ NG re: hatchery/pHOS issues | 0.6 | 0.6 |
| 11/3/2020 | BAK | worked on summary judgment motion - reviewed and evaulated materials re: status of ESA-listed SRKW and salmonids and drafted facts related thereto | 4.1 | 4.1 |
| 11/4/2020 | BAK | worked on summary judgment - statement of facts section | 1.2 | 1.2 |

| | | | | | |
|---|---|---|---|---|---|
| 11/9/2020 | BAK | review and evaluate JD's outline for NEPA argument | 0.8 | 0.8 | |
| 11/10/2020 | BAK | worked on summary judgment motion - review documents and draft statement of facts section | 2.6 | 2.6 | |
| 11/10/2020 | BAK | review and compile documents requested by expert GL | 0.5 | 0.5 | |
| 12/7/2020 | BAK | reviewed new 9th Cir opinion re: BiOp's reliance on mitigation measures, evaluated same, drafted notice of supplemental authority | 1.8 | 1.8 | |
| 12/8/2020 | BAK | finalized and filed notice of supplemental authority | 0.4 | 0.4 | |
| 12/23/2020 | BAK | postage to send WFC flashdrive with materials from NMFS re: PST funds | | | $5.59 |
| | | **BAK 2020 Hours:** | **523.1** | **520.1** | |
| 1/8/2021 | BAK | reviewed and revised Beardslee Declaration | 2.1 | 2.1 | |
| 1/11/2021 | BAK | worked on second Beardslee Declaration | 0.5 | 0.5 | |
| 1/12/2021 | BAK | reviewed and revised draft Beardslee declaration and potential exhibits thereto | 1.3 | 1.3 | |
| 1/12/2021 | BAK | reviewed and revised draft Soverel declaration | 2.3 | 2.3 | |
| 1/12/2021 | BAK | revised and revised draft McMillan declaration | 1.8 | 1.8 | |
| 1/13/2021 | BAK | reviewed and evaluated Fed Defs' response to notice of supplemental authority | 0.2 | 0.2 | |
| 1/13/2021 | BAK | call w/ PK re: Fed Defs response to notice of supplemental authority; emailed co-counsel re: same | 0.3 | 0.3 | |
| 1/13/2021 | BAK | email communicaiton to counsel for Fed Defs re: response to notice of supplemental authority | 0.3 | 0.3 | |
| 1/13/2021 | BAK | email communications w/ co-counsel re: defendants' response to notice of supplemental authority and next steps re: summary judgment | 0.3 | 0.3 | |
| 1/13/2021 | BAK | drafted document requests seeking NMFS and FWS materials related to hatchery mitigation programs | 1.8 | 1.8 | |
| 1/13/2021 | BAK | drafted reply to defendants' response to supplemental authority | 1 | 1 | |
| 1/13/2021 | BAK | worked on summary judgment motion - statement of facts section | 1.9 | 1.9 | |
| 1/14/2021 | BAK | evaluated scheduling issues and emailed co-counsel re: same | 0.6 | 0.6 | |
| 1/14/2021 | BAK | prepared request for WDFW for docs related to mitigation | 0.8 | 0.8 | |
| 1/14/2021 | BAK | telephone call w/ co-counsel re: summary judgment issues | 0.4 | 0.4 | |
| 1/14/2021 | BAK | worked on motion for summary judgment - statement of facts sections | 5.9 | 5.9 | |
| 1/15/2021 | BAK | worked on summary judgment motion - statement of facts sections | 4.7 | 4.7 | |
| 1/15/2021 | BAK | telephone call w/ EB re: summary judgment issues | 0.1 | 0.1 | |

| 1/15/2021 | BAK | call w/ EB re: summary judgment - standing and bifurcation of BiOp | 0.1 | 0.1 |
|---|---|---|---|---|
| 1/18/2021 | BAK | worked on summary judgment motion - legal research and drafting re: mitigation measures | 2.2 | 2.2 |
| 1/19/2021 | BAK | worked on summary judgment motion - legal research and drafting re: mitigation measures | 5.8 | 5.8 |
| 1/20/2021 | BAK | worked on summary judgment motion - legal research and drafting re: mitigation measures | 2.1 | 2.1 |
| 1/21/2021 | BAK | review and comment on draft GL declaration iso summary judgment | 2.5 | 2.5 |
| 1/21/2021 | BAK | worked on summary judgment motion - legal research and drafting re: mitigation measures | 2.7 | 2.7 |
| 1/22/2021 | BAK | telephone call w/ WFC re: summary judgment issues | 0.2 | 0.2 |
| 1/22/2021 | BAK | reviewed NMFS's declarations submitted on PI and emailed NG re: issues therewith | 0.2 | 0.2 |
| 1/22/2021 | BAK | worked on summary judgment motion - mitigation measures section | 1.7 | 1.7 |
| 1/25/2021 | BAK | worked on summary judgment motion - section on mitigation measures (legal research and drafting) | 3 | 3 |
| 1/26/2021 | BAK | worked on summary judgment - mitigation measures | 2.3 | 2.3 |
| 1/26/2021 | BAK | worked on summary judgment - legal research and drafting section on lack of no jeopardy opinion and ITS for hatchery programs | 3.4 | 3.4 |
| 1/26/2021 | BAK | reviewed NG comments to GL declaration | 1 | 1 |
| 1/27/2021 | BAK | telephone call w/ NG and EL re: summary judgment issues | 0.7 | 0.7 |
| 1/27/2021 | BAK | worked on summary judgment motion - research and drafting re: inclusion of prey increase in BiOp w/ analysis of J opinion | 3.9 | 3.9 |
| 1/28/2021 | BAK | reviewed new opinion re: vacatur and injunction standards (DC Cir., Standing Rock) and evaluated impact on case | 1 | 1 |
| 1/28/2021 | BAK | worked on summary judgment motion - legal research and drafting re: failure to include analysis/jeopary opinion for hatchery | 3.3 | 3.3 |
| 1/28/2021 | BAK | telephone call w/ NMFS re: request for documents related to hatchery mitigation | 0.2 | 0.2 |
| 1/28/2021 | BAK | worked on summary judgment - NEPA issues | 1.5 | 1.5 |
| 1/29/2021 | BAK | worked on summary judgment motion - NEPA argument | 3.6 | 3.6 |
| 1/29/2021 | BAK | telpehone call w/ EB re: sumamry judgment issues | 0.1 | 0.1 |
| 1/29/2021 | BAK | telephone call w/ PK re: summary judgment strategy issues | 0.4 | 0.4 |
| 2/1/2021 | BAK | reviewed Dr. Lacy declaration and evaluated need to update/amend for summary judgment motion | 1.8 | 1.8 |

| 2/1/2021 | BAK | telephone call w/ NG and GL re: GL's expert declaration | 0.5 | 0.5 |
|----------|-----|--------------------------------------------------------|-----|-----|
| 2/1/2021 | BAK | reviewed and commented on GL's declaration and emailed GL re: same | 0.4 | 0.4 |
| 2/1/2021 | BAK | worked on summary judgment motion - NEPA argument section | 2 | 2 |
| 2/2/2021 | BAK | legal research and drafting NEPA arguments for summary judgment motion | 6.4 | 6.4 |
| 2/3/2021 | BAK | telephone call2 w/ EB re: summary judgment issues | 0.2 | 0.2 |
| 2/3/2021 | BAK | legal research and drafting NEPA argument for summary judgment motion - failure to do NEPA on prey increase program | 6.5 | 6.5 |
| 2/4/2021 | BAK | worked on summary judgment motion - legal research and drafting re: inadequate consultation on prey increase program | 3 | 3 |
| 2/4/2021 | BAK | telephone call w/ NG re: GL declaration issues; emailed GL re: same | 0.5 | 0.5 |
| 2/5/2021 | BAK | worked on summary judgment motion - legal research and drafting NEPA argument section | 3.1 | 3.1 |
| 2/5/2021 | BAK | worked on summary judgment motion - revising section on no jeopardy analysis for hatchery mitigation | 1.8 | 1.8 |
| 2/5/2021 | BAK | legal research and drafting for summary judgment motion - vacatur section | 3.7 | 3.7 |
| 2/8/2021 | BAK | worked on summary judgment motion - legal research and drafting on remedy section | 4.6 | 4.6 |
| 2/8/2021 | BAK | telephone call w/ KB re: summary judgment issues | 0.6 | 0.6 |
| 2/8/2021 | BAK | legal search and evaluating issue for summary judgment - no rational connection b/w facts and no j opinion and failed to account for increased harvest from prey increase | 2.8 | 2.8 |
| 2/9/2021 | BAK | telephone call w/ NG re: summary judgemnt issues | 0.4 | 0.4 |
| 2/9/2021 | BAK | telephone call w/ EB re: scheduling isuses | 0.1 | 0.1 |
| 2/9/2021 | BAK | communications w/ counsel for federal defendants re: summary judgment schedule | 0.5 | 0.5 |
| 2/10/2021 | BAK | call w/ EB re: summary judgment tasks re: vacatur | 0.1 | 0.1 |
| 2/11/2021 | BAK | telephone call w/ BB re: summary judgment/Giles decl and possible amicus brief | 0.2 | 0.2 |
| 2/12/2021 | BAK | telephone call w/ counsel for amicus re: summary judgment strategy | 0.6 | 0.6 |
| 2/12/2021 | BAK | debrief call w/ EB following call w/ amicus counsel | 0.1 | 0.1 |
| 2/16/2021 | BAK | communication w/ counsel for Intervenor re: schedule for retaining new counsel | 0.3 | 0.3 |

**FIFTH KNUTSEN DECLARATION - 137**
**Case No. 2:20-cv-00417-RAJ-MLP**

| Date | Initials | Description | | |
|------|----------|-------------|---|---|
| 2/17/2021 | BAK | reviewed recent PI briefing from collegue on reliance on mitigation measures and NMFS's reliance on new ESA regulations for that issue | 0.9 | 0.9 |
| 2/17/2021 | BAK | legal research re: 2015 ESA regulations on programmatic consultations | 2.1 | 2.1 |
| 2/18/2021 | BAK | worked on summary judgment motion - legal research and drafting on no jeopardy opinion for hatcheries | 4.2 | 4.2 |
| 2/18/2021 | BAK | revised Beardslee declaration | 2.8 | 2.8 |
| 2/18/2021 | BAK | telephone call w/ EB re: summary judgment issues | 0.2 | 0.2 |
| 2/19/2021 | BAK | worked on summary judgment motion - legal research and drafting re: no jeopardy analysis for hatcheries | 3 | 3 |
| 2/22/2021 | BAK | worked on summary judgment motion - legal research and drafting re: no jeopardy analysis for hatcheries | 3.9 | 3.9 |
| 2/23/2021 | BAK | worked on summary judgment motion - argument re: no jeopardy for hatcheries | 2.7 | 2.7 |
| 2/23/2021 | BAK | worked on summary judgment - argument re: failure to draw rational connection between facts and no jeopardy opinion | 1.4 | 1.4 |
| 2/23/2021 | BAK | reviewed and provided comments on draft declaration of Gordon Luikart | 2.8 | 2.8 |
| 2/24/2021 | BAK | worked on summary judgment motion - no jeopardy for hatchery argument | 0.9 | 0.9 |
| 2/24/2021 | BAK | reviewed and commented on declaration of GL | 1.8 | 1.8 |
| 2/24/2021 | BAK | worked on summary judgment argument - mitigation measure agrument | 1.6 | 1.6 |
| 3/2/2021 | BAK | telephone call w/ PK, EB, and JD re: order on PI and next steps | 0.2 | 0.2 |
| 3/2/2021 | BAK | communications w/ counsel for intervenor re: new counsel | 0.2 | 0.2 |
| 3/2/2021 | BAK | communications w/ co-counsel and WFC re: next steps | 0.2 | 0.2 |
| 3/2/2021 | BAK | telephone call w/ KB re: order on PI | 0.3 | 0.3 |
| 3/3/2021 | BAK | email communications w/ co-counsel and w/ counsel for defendants re: briefing scheduling | 0.3 | 0.3 |
| 3/4/2021 | BAK | communications w/ NMFS re: documents requested re: hatcheries | | |
| 3/5/2021 | BAK | communication w/ counsel for defendants re: scheduling | 0.3 | 0.3 |
| 3/9/2021 | BAK | reviewed and revised scheduling motion from counsel for Alaska Trollers Ass'n | 0.3 | 0.3 |
| 3/9/2021 | BAK | communications w/ co-counsel and client re: litigation updates and stratgey | 0.7 | 0.7 |
| 3/10/2021 | BAK | communications w/ co-counsel and counsel for defendants re: scheduling and motion to expedite | 0.2 | 0.2 |
| 3/10/2021 | BAK | communication w/ NG re: Dr. Lacy work | 0.2 | 0.2 |

| 3/11/2021 | BAK | communication w. NG re: issues w/ Lacy declaration | 0.3 | 0.3 |
|---|---|---|---|---|
| 3/11/2021 | BAK | communication w/ co-counsel re: scheduling issues | 0.2 | 0.2 |
| 3/16/2021 | BAK | telephone call w/ EB re: motion to expedite and summary judgment issues | 0.4 | 0.4 |
| 3/16/2021 | BAK | reviewed and revised motion to expedite | 0.4 | 0.4 |
| 3/17/2021 | BAK | reviewing and revising motion for summary judgment / shortening | 4.1 | 4.1 |
| 3/22/2021 | BAK | reviewed and revised response to AK motion to intervevene and proposed order | 0.3 | 0.3 |
| 3/22/2021 | BAK | reviewed NG evaluation of Barre declaration's critisim of Lacy declaration | 0.7 | 0.7 |
| 3/22/2021 | BAK | reviewed and revised statement of facts section of summary judgment motion | 0.8 | 0.8 |
| 3/23/2021 | BAK | telephone call w/ NG re: expert declaration issues | 0.2 | 0.2 |
| 3/23/2021 | BAK | revised/shortened statement of facsts sections in summary judgment motion | 2.2 | 2.2 |
| 3/23/2021 | BAK | revised/shortened argument section of summary judgment motion - mitigation measures | 2 | 2 |
| 3/24/2021 | BAK | reviewed NMFS document re: hatchery releases and evaulated claimed increases | 1.5 | 1.5 |
| 3/24/2021 | BAK | worked on summary judgment motion - rational connection to no jeopardy section | 4.4 | 4.4 |
| 3/25/2021 | BAK | continued evaluating NMFS's documents re: claimed hatchery increases; emailed NG re: same | 1.4 | 1.4 |
| 3/25/2021 | BAK | telephone call w/ JD re: project on NMFS's claimed hatchery increases | 0.4 | 0.4 |
| 3/25/2021 | BAK | telephone call w/ EB re: reply iso motion to expedite | 0.2 | 0.2 |
| 3/25/2021 | BAK | worked on summary judgment motion - rational connection to no jeopardy section | 3.4 | 3.4 |
| 3/26/2021 | BAK | reviewed and commented on draft reply iso m-expedite | 0.3 | 0.3 |
| 3/26/2021 | BAK | telephone call w/ Dr. Lacy and NG re: draft declaration | 0.5 | 0.5 |
| 3/26/2021 | BAK | call w/ JD re: research into hatchery production claimed in BiOp | 0.7 | 0.7 |
| 3/30/2021 | BAK | worked on summary judgment motion - legal research and drafting/editing on ITS trigger issues | 2.3 | 2.3 |
| 3/30/2021 | BAK | worked on summary judgment motion - revising NEPA argument section | 0.6 | 0.6 |
| 3/31/2021 | BAK | worked on summary judgment motion - revising and drafting NEPA argument | 3.5 | 3.5 |
| 3/31/2021 | BAK | worked on summary judgment motion - revising and drafting vacatur section | 1.7 | 1.7 |

| Date | Initials | Description | | |
|---|---|---|---|---|
| 3/31/2021 | BAK | worked on summary judgment motion - revising and drafting injunction section | 0.8 | 0.8 |
| 4/1/2021 | BAK | worked on opening brief - introduction | 0.4 | 0.4 |
| 4/1/2021 | BAK | worked on opening summary judgment brief - injunction section | 1.5 | 1.5 |
| 4/1/2021 | BAK | worked on opening brief - standing section | 0.4 | 0.4 |
| 4/1/2021 | BAK | research notice pleading standard and evaulated whether issues are adequately addressed in the complaint | 0.8 | 0.8 |
| 4/1/2021 | BAK | telephone call w/ PK re: notice pleading issues | 0.2 | 0.2 |
| 4/14/2021 | BAK | reviewed revised second Lacy declaration and evaluated | 3.5 | 3.5 |
| 4/14/2021 | BAK | telephone call w/ NG re: Lacy declaration | 0.2 | 0.2 |
| 4/15/2021 | BAK | reviewed first Lace declaration and evaluated need to incorporate additional opinions into second Lacy declaration | 0.6 | 0.6 |
| 4/16/2021 | BAK | reviewed materials to prepare for call w/ Lacy | 0.3 | 0.3 |
| 4/16/2021 | BAK | Call w/ Lacy re: revised second declaration | 0.5 | 0.5 |
| 4/16/2021 | BAK | worked on summary judgment motion - editing entire brief and shortening to get within limit | 4.5 | 4.5 |
| 4/19/2021 | BAK | reviewed and commented on revised Second Lacy Declaration; emailed Lacy re: same | 1.4 | 1.4 |
| 4/19/2021 | BAK | reviewed and revised entire summary judgment motion, cleaning up and shortening | 1.8 | 1.8 |
| 4/19/2021 | BAK | telpehone call w/ EB re: summary judgment motion outstanding tasks | 0.2 | 0.2 |
| 4/19/2021 | BAK | telephone call w/ EL and EB re: summary judgment tasks to complete | 0.4 | 0.4 |
| 4/21/2021 | BAK | telephone call w/ WFC re: litigaiton strategy | 1 | 1 |
| 4/22/2021 | BAK | email counsel for defendants re: conferral on summary judgment | 0.2 | 0.2 |
| 4/23/2021 | BAK | call w/ EB re: summary judgment issues | 0.5 | 0.5 |
| 4/28/2021 | BAK | reviewed materials to prepare for conferral on summary judgment motion | 0.3 | 0.3 |
| 4/28/2021 | BAK | conferral w/ counsel for defendants re: summary judgment motion | 0.3 | 0.3 |
| 4/28/2021 | BAK | call w/ EB re: conferral and outstanding issues w/ summary judgment motion | 0.2 | 0.2 |
| 4/29/2021 | BAK | worked on knutsen declaration for summary judgment motion | 1.2 | 1.2 |
| 5/5/2021 | BAK | reviewed, revised/edited, finalized motion for summary judgment | 6.5 | 6.5 |
| 5/5/2021 | BAK | reviewed and edited draft proposed order on summary judgment | 1.2 | 1.2 |
| 5/5/2021 | BAK | edited and finalized knutsen declaration iso motion for summary judgment | 0.8 | 0.8 |
| 5/20/2021 | BAK | conferral w/ counsel for defendants re: cross-motions for summary judgment | 0.5 | 0.5 |

| Date | Atty | Description | | |
|------|------|-------------|---|---|
| 5/21/2021 | BAK | revised and finalize email to counsel for defendants re: conferral on cross-motions for summary judgment | 0.3 | 0.3 |
| 5/24/2021 | BAK | call w/ PK, EB, and JD re: cross-motion issues and tasks | 0.2 | 0.2 |
| 5/24/2021 | BAK | call w/ PK re: conferral w/ counsel for defendants and possible cross-motion issues | 0.2 | 0.2 |
| 5/25/2021 | BAK | call w/ EB, conferral w/ counsel for federal defendants and EB re: newly identified standing argument | 0.4 | 0.4 |
| 5/25/2021 | BAK | emailed counsel for defendants re: conferral on cross-motions for summary judgment | | |
| 5/25/2021 | BAK | legal research re: motion to amend during summary judgment proceedings | 2.1 | 2.1 |
| 5/26/2021 | BAK | legal research and drafting for response to cross-motion addressing notice issues and request to amend pleadings to conform to arguments | 6.2 | 6.2 |
| 5/26/2021 | BAK | call w/ EB re: briefing issues | 0.3 | 0.3 |
| 5/26/2021 | BAK | legal research and drafting MSA issue for response to cross-motion | 1.8 | 1.8 |
| 5/27/2021 | BAK | call w/ JD re: work on response/reply brief | 0.2 | 0.2 |
| 5/27/2021 | BAK | reviewed ATA's cross-motion for summary judgment | 0.6 | 0.6 |
| 5/27/2021 | BAK | reviewed Alaska's cross-motion for summary judgment | 1.1 | 1.1 |
| 5/27/2021 | BAK | legal research and drafting MSA issue for response to cross-motion | 4.5 | 4.5 |
| 5/28/2021 | BAK | reviewed and evaluated federal defendants' cross-motion | 2.7 | 2.7 |
| 5/28/2021 | BAK | worked on summary judgment response/reply - motion to strike | 2.4 | 2.4 |
| 5/30/2021 | BAK | worked on summary judgment response/reply - failure to consult on effects to threatened salmonids from prey increase program | 3.9 | 3.9 |
| 5/31/2021 | BAK | worked on response to cross-motion - failure to consult on prey increase program | 3.6 | 3.6 |
| 6/1/2021 | BAK | worked on response to cross-motion - failure to consult on prey increase program | 2.8 | 2.8 |
| 6/1/2021 | BAK | worked on response to cross-motion - failure to do NEPA on ITS | 4.9 | 4.9 |
| 6/2/2021 | BAK | worked on response to summary judgment - NEPA requirements for ITS | 2.2 | 2.2 |
| 6/2/2021 | BAK | worked on response to summary judgment - NEPA requirements for prey increase program | 4.9 | 4.9 |
| 6/2/2021 | BAK | call w/ BB and EB re: tasks for response to summary judgment | 0.3 | 0.3 |
| 6/2/2021 | BAK | worked on response to summary judgment - reliance on mitigation | 2.6 | 2.6 |
| 6/3/2021 | BAK | reviewed and evaluated Barre and Purcell declarations | 2 | 2 |

| | | | | | |
|---|---|---|---|---|---|
| 6/3/2021 | BAK | call w/ BB, NG, and EB re: Barre and Purcell declarations | 0.5 | 0.5 | |
| 6/3/2021 | BAK | prepared template for second Luikart declaration | 0.4 | 0.4 | |
| 6/3/2021 | BAK | worked on response to summary judgment motion - mitigation measures | 6.2 | 6.2 | |
| 6/4/2021 | BAK | worked on response to cross-motion for summary judgment - mitigation measures section | 8.1 | 8.1 | |
| 6/6/2021 | BAK | worked on response to summary judgment motions - rational connection section | 2.1 | 2.1 | |
| 6/6/2021 | BAK | worked on response to summary judgment motions - injunction sections | 1.5 | 1.5 | |
| 6/7/2021 | BAK | worked on summary juidgment response - injunction | 7.4 | 7.4 | |
| 6/7/2021 | BAK | worked on response to summary judgment motions - review and revise mutliple sections | 2 | 2 | |
| 6/8/2021 | BAK | calls w/ EB re: response to summary judgment | 2.1 | 2.1 | |
| 6/8/2021 | BAK | worked on response to summary judgment motions - review, revise, shorten entire brief | 7.1 | 7.1 | |
| 6/9/2021 | BAK | revised, edited, and shortened entire response to summary judgment motions | 5.2 | 5.2 | |
| 6/9/2021 | BAK | calls w/ EB re: response to summary judgment | 1.3 | 1.3 | |
| 6/9/2021 | BAK | finalized and filed response to summary judgment and associated filings | 0.5 | 0.5 | |
| 6/9/2021 | BAK | revised and finalized thrird knutsen declaration iso response to summary judgment | 0.8 | 0.8 | |
| 6/10/2021 | BAK | Invoice for Expert Work from Gordon Luikart | | | $3,080.00 |
| 6/16/2021 | BAK | reviewed Alaska summary judgment reply brief | 0.4 | 0.4 | |
| 6/16/2021 | BAK | reviewed Trollers summary judgment reply brief | 0.5 | 0.5 | |
| 6/17/2021 | BAK | reviewed and evaluated federal defendants' reply iso summary judgment | 1.2 | 1.2 | |
| 6/30/2021 | BAK | reviewed information on Canada reducing commerial salmon harvests to help killer whales | 0.4 | 0.4 | |
| 6/30/2021 | BAK | call w/ KB re: Canada announcement and possible implications for our case | 0.2 | 0.2 | |
| 6/30/2021 | BAK | call w/ PK re: Canada announcement and possible implications on this case | 0.3 | 0.3 | |
| 7/6/2021 | BAK | discussion w/ EB re: oral argument issues | 0.7 | 0.7 | |
| 7/8/2021 | BAK | prepare for oral argument on summary judgment motions (began reviewing/evaluating briefs) | 3.6 | 3.6 | |
| 7/9/2021 | BAK | prepare for oral argument - review briefs and cited materials | 3.9 | 3.9 | |
| 7/19/2021 | BAK | firm call re: oral argument strategy | 0.2 | 0.2 | |
| 7/19/2021 | BAK | worked on oral argument preperation - reviewed briefs and cited materials | 3.4 | 3.4 | |

| Date | | Description | | | |
|------|------|-------------|------|------|------|
| 7/20/2021 | BAK | prepared for oral argument on cross-motions for summary judgment; reviewed briefs and cited materials | 4.8 | 4.8 | |
| 7/21/2021 | BAK | prepared for oral argument on cross-motions for summary judgment; reviewed materials and worked on outline | 5.9 | 5.9 | |
| 7/22/2021 | BAK | prepared for oral argument on cross-motions for summary judgment; reviewed materials and worked on outline | 7.5 | 7.5 | |
| 7/23/2021 | BAK | prepared for oral argument on cross-motions for summary judgment; reviewed materials and worked on outline | 6.8 | 6.8 | |
| 7/24/2021 | BAK | prepared for oral argument on cross-motions for summary judgment; reviewed materials and worked on outline | 1.7 | 1.7 | |
| 7/25/2021 | BAK | prepared for oral argument on cross-motions for summary judgment; reviewed materials and worked on outline | 3 | 3 | |
| 7/26/2021 | BAK | prepare for summary judgment oral argument - reviewed materials and worked on outline | 6.9 | 6.9 | |
| 7/26/2021 | BAK | summary judgment moot argument for EB | 0.8 | 0.8 | |
| 7/26/2021 | BAK | meetings w/ EB to discuss oral argument strategy | 0.9 | 0.9 | |
| 7/27/2021 | BAK | oral argument preparation - review and revise outline | 4 | 4 | |
| 7/27/2021 | BAK | oral argument on cross-motions for summary judgment | 2.3 | 2.3 | |
| 7/27/2021 | BAK | meeting w/ client to debrief on summary judgment oral argument | 0.5 | 0.5 | |
| 7/27/2021 | BAK | meeting w/ PK, JD, and EB to discuss oral argument and litigation strategy going forward | 0.5 | 0.5 | |
| 8/3/2021 | BAK | legal research and drafting supplemental brief re: change in position re: NEPA | 6.8 | 6.8 | |
| 8/4/2021 | BAK | legal research and drafting supplemental brief re: change in position re: NEPA | 5.9 | 5.9 | |
| 8/4/2021 | BAK | telephone call w/ PK re: litigation strategy and supplemental brief | 0.2 | 0.2 | |
| 8/5/2021 | BAK | legal research and drafting supplemental brief re: change in position re: NEPA | 5.4 | 5.4 | |
| 8/6/2021 | BAK | reviewed, revised, and finalized supplement brief iso motion for summary judgment | 1.9 | 1.9 | |
| 8/6/2021 | BAK | reviewed and evaluated federal defendants' supplemental brief iso summary judgment | 0.7 | 0.7 | |
| 8/19/2021 | BAK | invoice for transcript from summary judgment hearing | | | $331.50 |
| 8/31/2021 | BAK | second invoice for transcript from summary judgment hearing | | | $8.50 |
| 9/27/2021 | BAK | reviewed report and recommendation on cross-motions on summary judgment | 0.7 | 0.7 | |

**FIFTH KNUTSEN DECLARATION - 143**
**Case No. 2:20-cv-00417-RAJ-MLP**

| | | | | |
|---|---|---|---|---|
| 9/28/2021 | BAK | re-read report and recommendation on cross-motions for summary judgment | 0.8 | 0.8 |
| 9/28/2021 | BAK | call w/ EL, EB, and WFC re: report and recommendation | 0.4 | 0.4 |
| 9/28/2021 | BAK | call w/ PK, JD, and EB re: report and recommendation and next steps | 0.4 | 0.4 |
| 9/30/2021 | BAK | calls w/ KB re: litigation strategy and next steps | 1.2 | 1.2 |
| 10/4/2021 | BAK | call w/ PK, EB, and JD re: litigation strategy and next steps | 0.2 | 0.2 |
| 10/4/2021 | BAK | call w/ JD re: NEPA relief research | 0.2 | 0.2 |
| 10/5/2021 | BAK | worked on objections to R&R on liability issues - intro and background | 2.8 | 2.8 |
| 10/5/2021 | BAK | worked on objection to R&R on liability issues - no rational connection argument | 1.1 | 1.1 |
| 10/6/2021 | BAK | call w/ PK re: objections to R&R on liability issues | 0.2 | 0.2 |
| 10/6/2021 | BAK | worked on objections to R&R on liability issues - no rational connection argument | 1.3 | 1.3 |
| 10/6/2021 | BAK | worked on objections to R&R on liability - inadequate ITS | 2.3 | 2.3 |
| 10/7/2021 | BAK | reviewed and incorporated revisions from co-counsel into objections to R&R on liability | 2.1 | 2.1 |
| 10/12/2021 | BAK | reviewed, revised, finalized, and filed objections to R&R on summary judgment | 0.8 | 0.8 |
| 10/12/2021 | BAK | quick skim of federal defendant and Alaska objetions to R&R on summary judgment to evaluate next steps | 0.7 | 0.7 |
| 10/13/2021 | BAK | review objections to prepare for call w/ co-counsel | 0.5 | 0.5 |
| 10/13/2021 | BAK | call w/ c-counsel BB re: objections to R&R on summary judgment and assignments for responses to objections | 0.6 | 0.6 |
| 10/13/2021 | BAK | call w/ PK re: litigation strategy | 0.2 | 0.2 |
| 10/14/2021 | BAK | meeting w/ EB re: standing issues for response to objections to R&R on summary judgment | 0.2 | 0.2 |
| 10/18/2021 | BAK | reviewed and evaluated NMFS's objections to R&R on summary judgment | 2.2 | 2.2 |
| 10/18/2021 | BAK | worked on response to NMFS's objections to R&R on summary judgment - legal research and drafting BiOp deficiencies (reliance on mitigation) | 1 | 1 |
| 10/19/2021 | BAK | worked on response to NMFS's objections to R&R on summary judgment - legal research and drafting BiOp deficiencies (reliance on mitigation) | 6.9 | 6.9 |
| 10/19/2021 | BAK | call w/ PK re: litigation strategy | 0.1 | 0.1 |
| 10/20/2021 | BAK | worked on response to NMFS's objections to R&R - reliance of mitigation | 2.7 | 2.7 |

| Date | Initials | Description | | |
|------|----------|-------------|---|---|
| 10/20/2021 | BAK | legal research, reviewing material and drafting re: failure to conduct jeopardy analysis for prey increase program (response to NMFS's objections) | 4.2 | 4.2 |
| 10/21/2021 | BAK | worked on response to NMFS's objections to R&R - no jeopardy analysis | 1.2 | 1.2 |
| 10/21/2021 | BAK | worked on response to NMFS's objections to R&R - NEPA violations | 7.1 | 7.1 |
| 10/22/2021 | BAK | worked on response to NMFS's objections to R&R - legal research and drafting re: NEPA | 1.8 | 1.8 |
| 10/22/2021 | BAK | worked on response to objections - MSA issues | 6.1 | 6.1 |
| 10/24/2021 | BAK | worked on response to objections - MSA issues | 1.2 | 1.2 |
| 10/24/2021 | BAK | worked on response to objections - standing issues | 1.7 | 1.7 |
| 10/25/2021 | BAK | meeting w/ EB re: work on responses to objections to R&R | 0.4 | 0.4 |
| 10/25/2021 | BAK | revised response to objections to R&R - standing sections | 0.7 | 0.7 |
| 10/25/2021 | BAK | worked on response to NMFS's objections to R&R - reviewing and revising entire brief | 7.9 | 7.9 |
| 10/26/2021 | BAK | reviewed and filed final response to NMFS's objections to R&R | 0.3 | 0.3 |
| 10/28/2021 | BAK | reviewed NMFS's Response to WFC's Objections to R&R | 0.8 | 0.8 |
| 10/28/2021 | BAK | emailed client re: litigation update and next steps | 0.1 | 0.1 |
| 11/1/2021 | BAK | meeting w/ WFC and EB re: litigation strategy, including remedy briefing issues | 0.2 | 0.2 |
| 11/2/2021 | BAK | emailed KB re: questions about litigation | 0.2 | 0.2 |
| 11/17/2021 | BAK | reviewed Lacy declarations and associated briefing by all parties and evaulated need for supplemental Lacy declaration on remedy briefing | 2.7 | 2.7 |
| 11/17/2021 | BAK | reviewed Alaska's briefing on economic impacts from relief and cited materials and evaulated need for economic expert on remedy briefing | 1.9 | 1.9 |
| 11/18/2021 | BAK | communications w/ NG re: Lacy evaulations and need for supplemental declaration | 0.4 | 0.4 |
| 11/18/2021 | BAK | reviewed and evaluated NG's proposal for Lacy declaration and partial vacatur of ITS for fishery; email communications w/ NG re: same | 1.4 | 1.4 |
| 12/9/2021 | BAK | call w/ KB re: litigation strategy | 0.3 | 0.3 |
| | | **BAK 2021 Hours:** | **449.2** | **449.2** |
| 1/4/2022 | BAK | call w/ PK, EB, and JD re: litigation strategy and next steps | 0.1 | 0.1 |
| 1/11/2022 | BAK | call w/ WFC (KB and Colleen) re: relief issues (e.g., potential use of expert materials on economic impact of relief) | 0.7 | 0.7 |

| 1/11/2022 | BAK | reviewed recent documents/data available on hatchery production and evaulated need for new declarations on relief to address same | 2.1 | 2.1 |
|---|---|---|---|---|
| 1/11/2022 | BAK | reviewed new 5-year status review on SRKW, reviewed expert declarations on SRKW issues, evaulated need for new declarations on SRKW impacts on relief issues | 1.7 | 1.7 |
| 1/13/2022 | BAK | meeting w/ WFC and EB re: expert issues for remedy briefing | 0.2 | 0.2 |
| 1/13/2022 | BAK | discussion w/ EB re: NMFS's BiOp annual reports | 0.2 | 0.2 |
| 1/25/2022 | BAK | meeting w/ WFC and economic experts re: possible declarations iso motion for relief | 1.1 | 1.1 |
| 1/26/2022 | BAK | call w/ KB re: remedy rexpert issues | 0.2 | 0.2 |
| 1/26/2022 | BAK | emailed economic experts re: potential work on remedy | 0.3 | 0.3 |
| 1/31/2022 | BAK | call w/ PK re: litigation strategy | 0.2 | 0.2 |
| 1/31/2022 | BAK | email correspodnence w/ Dr. Lacy re: expert work on remedy | 0.3 | 0.3 |
| 1/31/2022 | BAK | reviewed proposal from economic experts for work iso remedy brief | 0.5 | 0.5 |
| 2/22/2022 | BAK | meeting w/ EB re: relief issues | 0.2 | 0.2 |
| 2/2/2022 | BAK | call w/ KB re: economic expert issues | 0.5 | 0.5 |
| 2/2/2022 | BAK | reviewed work proposed from economic experts and emailed them re: scope of work questions | 0.7 | 0.7 |
| 2/2/2022 | BAK | communications w/ attorney colleagues re: relief strategy questions | 0.6 | 0.6 |
| 2/3/2022 | BAK | call w/ PK re: litigation strategy | 0.4 | 0.4 |
| 2/3/2022 | BAK | communication w/ colleagues re: remedy issues | 0.1 | 0.1 |
| 2/3/2022 | BAK | emailed economic experts re: their declarations | 0.2 | 0.2 |
| 2/4/2022 | BAK | reviewed and commented on Third Luikart Declaration | 3.8 | 3.8 |
| 2/7/2022 | BAK | reviewed and commented on revised Third Luikart Declaration | 3.5 | 3.5 |
| 2/15/2022 | BAK | reviewed revised Luikart declaration and provided comments thereon | 2.1 | 2.1 |
| 2/16/2022 | BAK | call w/ NG re: Luikart declaration issues | 0.3 | 0.3 |
| 2/17/2022 | BAK | reviewed and commented on revised Third Luikart Declaration | 1.9 | 1.9 |
| 2/25/2022 | BAK | communications w/ NG and Dr. Lacy re: third Lacy declaration | 0.5 | 0.5 |
| 3/1/2022 | BAK | call w/ PK re: litigation strategy | 0.1 | 0.1 |
| 3/1/2022 | BAK | communication to KB and NG re: data needs for Third Lacy Declaration modeling efforts | 0.7 | 0.7 |
| 3/2/2022 | BAK | call w/ NG amd Dr. Lacy re: Third Lacy Declaration | 0.5 | 0.5 |
| 3/4/2022 | BAK | reviewed revisions to draft declaration; call w/ GL and NG re: third Luikart Declaration | 1.2 | 1.2 |

| Date | Initials | Description | | |
|---|---|---|---|---|
| 3/4/2022 | BAK | reviewed and evalauted correspondence from economic expert | 0.9 | 0.9 |
| 3/8/2022 | BAK | call w/ PK and EB re: litigation strategy and next steps | 0.1 | 0.1 |
| 3/17/2022 | BAK | communications w/ Dr. Lacy re: new modeling for Third Lacy Declaration | 0.5 | 0.5 |
| 3/18/2022 | BAK | reviewed Lacy Decl template | 0.2 | 0.2 |
| 3/18/2022 | BAK | communications w/ Dr. Lacy Re: Third Lacy Declaration | 0.4 | 0.4 |
| 3/22/2022 | BAK | reviewed and commented on revised Third Luikart Declaration, emailed GL re: same | 1.4 | 1.4 |
| 3/23/2022 | BAK | reviewed and commented on Third Lacy Declaration | 2.1 | 2.1 |
| 3/28/2022 | BAK | email correspondence w/ Dr. Lacy re: third declaration | 0.3 | 0.3 |
| 3/28/2022 | BAK | emailed Luikart re: third declaration | 0.2 | 0.2 |
| 3/28/2022 | BAK | emailed economic expert HR and SD re: declaration | 0.1 | 0.1 |
| 3/30/2022 | BAK | reviewed final Third Luikart Declaration; emailed GL re: same | 1.3 | 1.3 |
| 3/30/2022 | BAK | communications w/ EB and w/ co-counsel re: remedy briefing timing and strategy | 0.4 | 0.4 |
| 4/1/2022 | BAK | reviewed various Judge Jones' rulings and evaluating potential timing on disposition of objections to Magistrate's R&R | 0.3 | 0.3 |
| 4/1/2022 | BAK | emailed KB and NG re: expert issues | 0.4 | 0.4 |
| 4/1/2022 | BAK | call w/ PK re: litigation strategy | 0.2 | 0.2 |
| 4/4/2022 | BAK | reviewing and commenting on HR draft declaration | 1.7 | 1.7 |
| 4/5/2022 | BAK | reviewing and commenting on HR draft declaration | 4.8 | 4.8 |
| 4/6/2022 | BAK | discussion w/ EB re: remedy strategy | 0.2 | 0.2 |
| 4/6/2022 | BAK | call w/ EL, BB, EB, and JD re: strategy on remedy briefing | 0.8 | 0.8 |
| 4/6/2022 | BAK | reviewed and commented on HR economic declarations | 4.1 | 4.1 |
| 4/11/2022 | BAK | reviewed and commented on HR economic declaration; emailed HR re: same | 1.2 | 1.2 |
| 4/12/2022 | BAK | evaluate motion on relief strategy | 0.5 | 0.5 |
| 4/12/2022 | BAK | discussion w/ EB re: remedy strategy | 0.2 | 0.2 |
| 4/12/2022 | BAK | review and evaluate JD's memo re: NEPA remedies | 4.2 | 4.2 |
| 4/12/2022 | BAK | disussion w/ JD re: NEPA arguments for remedy brief | 0.2 | 0.2 |
| 4/13/2022 | BAK | reviewed material to prepare for meeting w/ HR and NG | 0.4 | 0.4 |
| 4/13/2022 | BAK | meeting w/ HR and NG re: economic declaration | 0.8 | 0.8 |
| 4/20/2022 | BAK | reviewed and commented on revised HR declaration | 3.9 | 3.9 |

| Date | | Description | | | |
|------|------|-------------|------|------|------|
| 5/4/2022 | BAK | call w/ KB re: litigation strategy | 0.3 | 0.3 | |
| 5/4/2022 | BAK | emailed HR re: status of declaration | 0.2 | 0.2 | |
| 5/12/2022 | BAK | invoice from Dr. Luikart for 5/1/2022 invoice for work on third declaration | | | $990.00 |
| 5/12/2022 | BAK | call w/ KB and EH re: litigation strategy/update | 0.6 | 0.6 | |
| 5/16/2022 | BAK | began reviewing and comments on latest draft of HR's economic declaration | 1.2 | 1.2 | |
| 5/17/2022 | BAK | communication w/ HR re: draft report | 0.2 | 0.2 | |
| 5/17/2022 | BAK | reviewing and commenting on HR draft declaration | 2.1 | 2.1 | |
| 5/18/2022 | BAK | reviewing and commenting on HR draft declaration | 1.9 | 1.9 | |
| 5/18/2022 | BAK | Call w/ NG, SD, and HR re: HR declaration | 0.9 | 0.9 | |
| 5/20/2022 | BAK | reviewed documents produced by NMFS re: ESA/NEPA review of hatchery increases | 3.1 | 3.1 | |
| 5/26/2022 | BAK | reviewing and revising Table 1 in HR declaration; email HR and SD re: same | 1.2 | 1.2 | |
| 5/27/2022 | BAK | call w/ HR re: expert declaration issues | 0.4 | 0.4 | |
| 5/27/2022 | BAK | revised table 1 for HR expert declaratin and emailed HR | 0.2 | 0.2 | |
| 6/1/2022 | BAK | meeting w/ WFC and counsel for Center for Biological Diversity re: relief issues (potential interactions between SEAK fisheries and west coast fisheries) | 1.1 | 1.1 | |
| 6/1/2022 | BAK | reviewed new draft of HR declaration and emailed HR re: same | 1.4 | 1.4 | |
| 6/2/2022 | BAK | reviewed and revised draft HR declaration | 4 | 4 | |
| 6/2/2022 | BAK | communications w/ HR re: draft declaration | 0.7 | 0.7 | |
| 6/3/2022 | BAK | reviewed new 9th Cir. Opinion re: NEPA and ESA violations and remedies and evaluated impact on case and whether to file notice of supplemental authority | 1.8 | 1.8 | |
| 6/6/2022 | BAK | reviewed and revised/commented on HR declaration | 1.7 | 1.7 | |
| 6/8/2022 | BAK | reviewed final HR declaration; emailed HR re: same | 1.1 | 1.1 | |
| 6/10/2022 | BAK | call w/ WFC and EB re: litigation status | 0.1 | 0.1 | |
| 6/22/2022 | BAK | call w/ JD re: remedy brief issues | 0.3 | 0.3 | |
| 6/22/2022 | BAK | research re: cumulative impact requirements for EA | 0.4 | 0.4 | |
| 6/28/2022 | BAK | reviewed and evaluated documents from FWS re: ESA reviews of hatchery increases for SRKW | 1.9 | 1.9 | |
| 6/30/2022 | BAK | reviewed and commenting on draft NEPA arguments for remedy brief | 1.2 | 1.2 | |
| 7/19/2022 | BAK | call w/ WFC re: litigation strategy and next steps | 0.2 | 0.2 | |
| 8/2/2022 | BAK | worked on remedy brief (reviewed prior brieing and record materials to refresh issues) | 2.1 | 2.1 | |

| 8/3/2022 | BAK | worked on remedy brief (reviewed prior brieing and record materials to refresh issues) | 3.1 | 3.1 |
| 8/4/2022 | BAK | call w/ WFC and EB re: litigaiton in relation to other west coast fisheries and hatcheries | 0.3 | 0.3 |
| 8/8/2022 | BAK | call w/ PK re: order approving Magistrate Report | 0.1 | 0.1 |
| 8/8/2022 | BAK | call w/ KB re: order approving Magistrate Report | 0.3 | 0.3 |
| 8/9/2022 | BAK | call w/ WFC, EB, and EL re: order approving Magistrate Report and next steps plus time preparing for call | 0.8 | 0.8 |
| 8/9/2022 | BAK | email communications w/ WFC re: questions about the Court ruling and next steps | 1.2 | 1.2 |
| 8/9/2022 | BAK | Call w/ PK re: Court order and next steps | 0.1 | 0.1 |
| 8/9/2022 | BAK | reviewing draft sections for remedy brief, evaluating approach, revising outline of arguments | 2.9 | 2.9 |
| 8/10/2022 | BAK | worked on remedy brief (legal research and drafting sections on ESA and NEPA) | 2.8 | 2.8 |
| 8/10/2022 | BAK | worked on remedy brief (drafting facts sections) | 3.9 | 3.9 |
| 8/10/2022 | BAK | call w/ co-counsel re: remedy brief and next steps | 0.6 | 0.6 |
| 8/10/2022 | BAK | communications w/ counsel for defendants re: conferral on remedy briefing | 0.4 | 0.4 |
| 8/11/2022 | BAK | discussions w/ EB re: remedy briefing issues | 0.4 | 0.4 |
| 8/11/2022 | BAK | worked on remedy brief (reviewed record materials and expert declarations and drafting facts sections) | 3.1 | 3.1 |
| 8/18/2022 | BAK | worked on motion for remedy - facts and statutory background sections | 4.2 | 4.2 |
| 8/19/2022 | BAK | call w/ PK re: litigation strategy | 0.3 | 0.3 |
| 8/19/2022 | BAK | call w/ PK and EB re: litigation strategy and next steps | 0.2 | 0.2 |
| 8/19/2022 | BAK | call w/ BB and EB re: status conference w/ court | 0.2 | 0.2 |
| 8/19/2022 | BAK | status conference w/ court, debrief w/ EB, communication to client re: status conference | 1.2 | 1.2 |
| 8/19/2022 | BAK | worked on remedy brief - facts sections | 2.1 | 2.1 |
| 8/22/2022 | BAK | worked on remedy brief - revised stanards sections | 2.7 | 2.7 |
| 8/22/2022 | BAK | meeting w/ EB re: remedy brief | 0.3 | 0.3 |
| 8/22/2022 | BAK | worked on remedy brief - vacatur section | 2.9 | 2.9 |
| 8/23/2022 | BAK | worked on remedy brief - vacatur standards and arguments (legal research and drafting) | 5.3 | 5.3 |
| 8/23/2022 | BAK | conferral on remedy brief w/ opposing counsel; debrief w/ co-counsel | 0.4 | 0.4 |
| 8/23/2022 | BAK | call w/ WFC re: remedy briefing issues | 0.8 | 0.8 |
| 8/29/2022 | BAK | worked on remedy brief (legal research and drafting vacatur arguments | 6.3 | 6.3 |

| Date | Atty | Description | Hours | Hours |
|---|---|---|---|---|
| 8/30/2022 | BAK | worked on remedy brief (legal research, drafting, and residing vacatur arguments) | 7.9 | 7.9 |
| 8/30/2022 | BAK | meeing w/ EB re: third Giles declaration | 0.1 | 0.1 |
| 8/31/2022 | BAK | worked on remedy brief (legal research, drafting, and residing vacatur arguments) | 7.2 | 7.2 |
| 8/31/2022 | BAK | reviewed and revised Third Giles Decl | 0.6 | 0.6 |
| 8/31/2022 | BAK | meeting w/ EB re: scope of relief to seek | 0.7 | 0.7 |
| 9/1/2022 | BAK | communicaiton w/ counsel for defendants/intervenors re: conferral on motion for remedies | 0.5 | 0.5 |
| 9/1/2022 | BAK | call w/ PK re: litigation strategy | 0.6 | 0.6 |
| 9/1/2022 | BAK | worked on remedy brief (legal research, editing/drafting vacatur arguments) | 7.2 | 7.2 |
| 9/2/2022 | BAK | worked on remedy brief - legal research, drafting, and revising vacatur arguments | 5.2 | 5.2 |
| 9/2/2022 | BAK | worked on remedy brief - legal research and drafting injunction arguments | 1.5 | 1.5 |
| 9/2/2022 | BAK | discussion w/ EB re: remedy brief issues | 0.5 | 0.5 |
| 9/3/2022 | BAK | worked on remedy brief - injunction arguments | 3.8 | 3.8 |
| 9/4/2022 | BAK | worked on fourth Knutsen Declaration - reviewed documents and evaualted what to submit | 2.8 | 2.8 |
| 9/5/2022 | BAK | worked on remedy brief - legal research and drafting injunction arguments | 4.9 | 4.9 |
| 9/6/2022 | BAK | worked on remedy brief - legal research and drafting injunction arguments | 3.5 | 3.5 |
| 9/6/2022 | BAK | revising/editing remedy motion | 5.9 | 5.9 |
| 9/6/2022 | BAK | call w/ WFC re: remedy briefing issues | 0.3 | 0.3 |
| 9/7/2022 | BAK | worked on remedy brief - revising/editing/shortening | 5.8 | 5.8 |
| 9/7/2022 | BAK | legal research re: NEPA issues | 2.6 | 2.6 |
| 9/7/2022 | BAK | communicaiton w/ WFC re: remedy brief | 0.3 | 0.3 |
| 9/7/2022 | BAK | reviewed and revised proposed order on relief | 0.8 | 0.8 |
| 9/7/2022 | BAK | finalized and filed motion for remedy | 0.8 | 0.8 |
| 9/29/2022 | BAK | call w/ PK and EB re: upcoming tasks | 0.1 | 0.1 |
| 10/3/2022 | BAK | communications w/ WFC re: responses to motion on remedy | 0.2 | 0.2 |
| 10/3/2022 | BAK | began reviewing responses to motion on remedy - Trollers Ass'n | 0.7 | 0.7 |
| 10/4/2022 | BAK | reviewed response to remedy brief - trollers | 1.1 | 1.1 |
| 10/4/2022 | BAK | reviewed response to remedy brief - Alaska | 1.2 | 1.2 |
| 10/4/2022 | BAK | reviewed and evaluated response to remedy brief - NMFS | 5.2 | 5.2 |
| 10/4/2022 | BAK | call w/ WFC re: responses to remedy motion and reply issues | 1.4 | 1.4 |
| 10/5/2022 | BAK | meeting w/ EB re: motion to strike work for reply iso motion on remedy | 0.2 | 0.2 |
| 10/5/2022 | BAK | communications w/ WFC re: questions on economic opinions in defendants' response on remedy | 0.3 | 0.3 |

| 10/5/2022 | BAK | communications w/ Dr. Lacy and NG re: issued rasied in responses on remedy | 0.2 | 0.2 |
|---|---|---|---|---|
| 10/5/2022 | BAK | worked on reply iso motion for remedy - evaluated issues and prepared outline | 2.1 | 2.1 |
| 10/5/2022 | BAK | worked on reply iso motion for remedy - introduction | 5.2 | 5.2 |
| 10/6/2022 | BAK | worked on reply iso motion for remedy - issues re: Lacy decl | 7.2 | 7.2 |
| 10/7/2022 | BAK | call w/ NG re: remedy briefing issues | 0.3 | 0.3 |
| 10/7/2022 | BAK | worked on remedy reply brief - Luikart and prey increase issues | 5.8 | 5.8 |
| 10/9/2022 | BAK | worked on remedy reply brief - factual issues | 1.3 | 1.3 |
| 10/10/2022 | BAK | worked on reply iso remedy motion - seriousness of violations | 7.4 | 7.4 |
| 10/11/2022 | BAK | worked on reply iso remedy motion - seriousness of violations | 4.6 | 4.6 |
| 10/11/2022 | BAK | worked on reply iso remedy motion - disruptive consequences | 2.5 | 2.5 |
| 10/11/2022 | BAK | reviewed and evaluated defendants' econ decl | 0.7 | 0.7 |
| 10/11/2022 | BAK | call w/ Dr. Radke and others re: second Radke Decl; debrief w/ EB | 0.9 | 0.9 |
| 10/12/2022 | BAK | worked on reply iso remedy motion - disruptive consequences | 6.2 | 6.2 |
| 10/12/2022 | BAK | meeting w/ EB re: issues in ATA and Alaska remedy briefs and drafting replies thereto | 1.2 | 1.2 |
| 10/12/2022 | BAK | discussions w/ EB re: second Radtke declaration | 0.2 | 0.2 |
| 10/12/2022 | BAK | worked on reply iso remedy brief - economic issues | 1.2 | 1.2 |
| 10/13/2022 | BAK | discussions w/ EB re: reply iso relief | 0.5 | 0.5 |
| 10/13/2022 | BAK | worked on reply iso motion on relief - injunction arguments | 6.3 | 6.3 |
| 10/13/2022 | BAK | worked on reply iso motion on relief - vacatur arguments (disruptive consequences) | 1.6 | 1.6 |
| 10/13/2022 | BAK | worked on reply iso motion on relief - editing multiple sections | 1.8 | 1.8 |
| 10/14/2022 | BAK | worked on reply iso motion on relief - revising and shortening entire brief | 5.1 | 5.1 |
| 10/14/2022 | BAK | call w/ PK re: litigation strategy | 0.2 | 0.2 |
| 10/14/2022 | BAK | reviewed final reply iso motion for remedy | 0.4 | 0.4 |
| 10/17/2022 | BAK | call w/ PK and EB re: litigation strategy and next steps | 0.1 | 0.1 |
| 10/25/2022 | BAK | prepare preparing for argument on remedy - reviewing filings | 4.9 | 4.9 |
| 10/26/2022 | BAK | prepared for argument on remedy - reviewing and evaluating briefs and declarations | 6.7 | 6.7 |
| 10/27/2022 | BAK | prepared for argument on remedy - reviewing opinions | 6.3 | 6.3 |
| 10/27/2022 | BAK | prepared for argument on remedy - working on outline | 1.2 | 1.2 |

| Date | | Description | | | |
|---|---|---|---|---|---|
| 10/28/2022 | BAK | prepare for argument on remedy - reviewed materials and worked on outline | 4.2 | 4.2 | |
| 10/28/2022 | BAK | discussion s w/ EB re: argument on remedy | 0.2 | 0.2 | |
| 10/29/2022 | BAK | prepared for argument on remedy - reviewed materials and worked on outline | 3.2 | 3.2 | |
| 10/30/2022 | BAK | call w/ PK re: remedy argument | 0.2 | 0.2 | |
| 10/30/2022 | BAK | prepared for argument on remedy - reviewed materials and worked on outline | 3.5 | 3.5 | |
| 10/31/2022 | BAK | prepared for argument on remedy - reviewed materials and worked on outline | 5.4 | 5.4 | |
| 10/31/2022 | BAK | call w/ PK and EB re: remedy argument issues | 0.1 | 0.1 | |
| 11/1/2022 | BAK | prepared for remedy argument - reviewed materials, revised outline | 3 | 3 | |
| 11/1/2022 | BAK | oral argument on remedy issues | 2 | 2 | |
| 11/1/2022 | BAK | calls following argument on remedy with co-counsel and WFC re: argument and next steps | 1.8 | 1.8 | |
| 11/2/2022 | BAK | reviewed BiOp and declarations re: issues raised during oral argument on remedy | 2.4 | 2.4 | |
| 11/3/2022 | BAK | reviewing material re: issue raised during remedy argument (re: state funded hatchery increases for prey purposes) | 1.3 | 1.3 | |
| 11/7/2022 | BAK | invoice for transcript of hearing on remedy motion | | | $419.65 |
| 12/13/2022 | BAK | communications w/ client re: magistarte report on relief and next steps | 0.5 | 0.5 | |
| 12/14/2022 | BAK | meeting w/ client re: magistarte report on relief and next steps | 0.8 | 0.8 | |
| 12/14/2022 | BAK | reviewed and evaluated Magistrate Report and Recommendation on Relief | 1.2 | 1.2 | |
| | | **BAK 2022 Hours:** | **319.7** | **319.7** | |
| 1/3/2023 | BAK | worked on objections to R&R - factual background | 3.1 | 3.1 | |
| 1/3/2023 | BAK | worked on objections to R&R - injunction issues | 2.3 | 2.3 | |
| 1/4/2023 | BAK | worked on objections to R&R - factual background | 2 | 2 | |
| 1/4/2023 | BAK | worked on objections to - R&R - injunction issues | 4.1 | 4.1 | |
| 1/5/2023 | BAK | worked on objections to R&R - legal research and drafting arguments | 5.9 | 5.9 | |
| 1/5/2023 | BAK | worked on objections to R&R - introduction | 1.2 | 1.2 | |
| 1/5/2023 | BAK | meeting w/ WFC re: objections to R&R | 0.4 | 0.4 | |
| 1/6/2023 | BAK | worked on objections to R&R - legal research and drafting arguments | 7.1 | 7.1 | |
| 1/7/2023 | BAK | worked on objections to R&R on remedy - revising | 2.5 | 2.5 | |
| 1/8/2023 | BAK | worked on objections to R&R on remedy - revising | 1.9 | 1.9 | |

| 1/9/2023 | BAK | worked on objections to R&R on remedy - legal research and drafting argument sections | 2.6 | 2.6 |
|---|---|---|---|---|
| 1/9/2023 | BAK | worked on objections to R&R on remedy - revising | 1.9 | 1.9 |
| 1/10/2023 | BAK | calls w/ EB re: objections to R&R on remedy | 0.5 | 0.5 |
| 1/10/2023 | BAK | reviewed and filed final objections to R&R on remedy | 0.7 | 0.7 |
| 1/11/2023 | BAK | reviewed and evaluated federal defendants' objections to R&R on remedy | 1.2 | 1.2 |
| 1/11/2023 | BAK | reviewed and evalauted Alaska's objections to R&R on remedy | 0.5 | 0.5 |
| 1/11/2023 | BAK | reviewed and evaluatred Trollers' objections to R&R on remedy | 0.4 | 0.4 |
| 1/11/2023 | BAK | evaluate approach for response to objections | 0.4 | 0.4 |
| 1/11/2023 | BAK | call w/ EB re: response to objections | 0.2 | 0.2 |
| 1/16/2023 | BAK | worked on response to defendants' objections - reviewed materials and drafting factual background | 3.7 | 3.7 |
| 1/17/2023 | BAK | worked on response to defendants' objections - reviewed materials and drafting factual background | 5.2 | 5.2 |
| 1/17/2023 | BAK | worked on response to defendants' objections - drafting legal standards | 1.8 | 1.8 |
| 1/18/2023 | BAK | worked on response to objections on remedy - legal research and drafting arguments | 7.2 | 7.2 |
| 1/19/2023 | BAK | worked on response to objecitons on remedy - legal research and drafting arguments | 3.7 | 3.7 |
| 1/20/2023 | BAK | worked on response to objections to R&R on remedy - legal research and drafting arguments | 3.6 | 3.6 |
| 1/20/2023 | BAK | worked on response to objections to R&R on remedy - facts / effect of vacatur sections | 2.8 | 2.8 |
| 1/21/2023 | BAK | worked on response to objections to R&R on remedy - legal research and drafting arguments | 1.7 | 1.7 |
| 1/22/2023 | BAK | worked on response to objections to R&R on remedy - legal research and drafting arguments | 3.2 | 3.2 |
| 1/23/2023 | BAK | worked on response to objections to R&R on remedy - legal research and drafting arguments | 2.8 | 2.8 |
| 1/23/2023 | BAK | worked on response to objections to R&R on remedy - editing and shortening | 4.4 | 4.4 |
| 1/24/2023 | BAK | review and revise response to objections to R&R on remedy | 0.6 | 0.6 |
| 1/24/2023 | BAK | email correspondence w/ client re: responses to objections to R&R on remedy and next steps | 0.4 | 0.4 |
| 1/25/2023 | BAK | call w/ PK re: litigation strategy and next steps | 0.1 | 0.1 |
| 1/25/2023 | BAK | reviewed and evaluatedfed defs' response to objection on R&R on remedy | 1 | 1 |
| 1/25/2023 | BAK | review trollers' response to objection on R&R on remedy | 0.7 | 0.7 |
| 1/25/2023 | BAK | review Alaska's response to objection on R&R on remedy | 0.5 | 0.5 |

| 2/8/2023 | BAK | email communications w/ EL re: litigation strategy re: relief timing issues | 0.3 | 0.3 |
|---|---|---|---|---|
| 2/8/2023 | BAK | calls w/ PK re: relief timing issues | 0.2 | 0.2 |
| 2/9/2023 | BAK | legal research re: appeal issues - ability to appeal remand when fed. Def. do not appeal | 2.8 | 2.8 |
| 2/17/2023 | BAK | call w/ KB re: litigation strategy | 0.3 | 0.3 |
| 2/28/2023 | BAK | call w/ WFC re: litigation strategy and next steps | 0.1 | 0.1 |
| 3/1/2023 | BAK | call w/ KB re: litigation strategy | 0.6 | 0.6 |
| 3/6/2023 | BAK | firm call re: litigation strategy and next steps | 0.1 | 0.1 |
| 3/6/2023 | BAK | call w/ PK re: litgation strategy | 0.3 | 0.3 |
| 3/6/2023 | BAK | reviewed and evaluated amicus brief | 1.1 | 1.1 |
| 3/7/2023 | BAK | email to WFC re: amicus brief | 0.2 | 0.2 |
| 3/8/2023 | BAK | worked on response to amicus brief - legal research and drafting section on amicus standards/timing | 4.5 | 4.5 |
| 3/8/2023 | BAK | worked on response to amicus brief - legal research and drafting argument sections | 4.9 | 4.9 |
| 3/9/2023 | BAK | worked on response to amicus brief - legal research and drafting | 5.8 | 5.8 |
| 3/10/2023 | BAK | worked on response to amicus brief - legal research and drafting | 5.7 | 5.7 |
| 3/12/2023 | BAK | worked on response to amicus brief - drafting introduction | 1.3 | 1.3 |
| 3/13/2023 | BAK | worked on response to amicus brief - revising, editing, shortening | 4.8 | 4.8 |
| 3/13/2023 | BAK | reviewed, finalized, and filed response to amicus | 1.1 | 1.1 |
| 3/14/2023 | BAK | reviewed appellate briefs in case re: Puget Sound salmon fisheries to be argued in 9th Circuit in June and evaluated potential impacts on this case | 1.6 | 1.6 |
| 3/14/2023 | BAK | firm meeting re: litigation strategy | 0.3 | 0.3 |
| 3/15/2023 | BAK | reviewed statements from Alaska congressional delegation and evaluated potential actions that could affect case; email to WFC re: same | 0.7 | 0.7 |
| 3/15/2023 | BAK | reviewed white paper on litigation and associated materials, evaluated issues potential impact on litigation, discussion w/ EB re: same | 0.7 | 0.7 |
| 3/15/2023 | BAK | evaluate possible appeal issues and timing concerns | 0.6 | 0.6 |
| 3/16/2023 | BAK | call w/ PK re: litigation strategy | 0.3 | 0.3 |
| 3/21/2023 | BAK | meeting w/ EH, KB, and EB re: litigation strategy | 0.5 | 0.5 |
| 3/30/2023 | BAK | telephone call w/ EL and EB re: next steps | 0.4 | 0.4 |
| 4/28/2023 | BAK | M/w PK re upcoming fishing season and timing of ruling on MJ's findings and recommendations | 0.1 | 0.1 |
| 5/2/2023 | BAK | meeting w/ EB re: timing of fishing season and implications for timing of litigation | 0.2 | 0.2 |

| Date | Atty | Description | | | |
|---|---|---|---|---|---|
| 5/2/2023 | BAK | reviewed and evaluate order adopting Magistrate Recommendation on Remedy; email WFC re: same | 0.7 | 0.7 | |
| 5/2/2023 | BAK | meetings w/ EB re: Order adopting Magistrate Recommendation on remedy and next steps | 0.8 | 0.8 | |
| 5/2/2023 | BAK | call w/ WFC (EH and KB) and EB re: Order adopting Magistrate Recommendation on remedy and next steps | 0.6 | 0.6 | |
| 5/3/2023 | BAK | revised/drafted motion to extend Rule 54(d) deadline | 3.8 | 3.8 | |
| 5/3/2023 | BAK | prepared proposed order re: motion to extend Rule 54(d) deadline | 0.8 | 0.8 | |
| 5/3/2023 | BAK | communications w/ counsel for defendants re: motion to extend Rule 54(d) deadline | 0.6 | 0.6 | |
| 5/3/2023 | BAK | revised, finalized, and filed motion to extend Rule 54(d) deadline | 0.9 | 0.9 | |
| 5/3/2023 | BAK | calls w/ PK re: appeal issues, fee motion timing, and litgation strategy | 0.8 | 0.8 | |
| 5/3/2023 | BAK | call w/ WFC re: appeal issues/strategy | 0.7 | 0.7 | |
| 5/3/2023 | BAK | reviewed rules for notice of appeal (timing and content), began work on notice of appeal | 1.4 | 1.4 | |
| 5/4/2023 | BAK | call w/ PK and EB re: appeal issues | 0.5 | 0.5 | |
| 5/4/2023 | BAK | call w/ PK re: appeal strategy issues | 0.2 | 0.2 | |
| 5/4/2023 | BAK | call w/ WFC, EB, and MH re: appeal strategy | 0.5 | 0.5 | |
| 5/4/2023 | BAK | Ninth Circuit Cross Appeal filing fee | | | $505.00 |
| 5/4/2023 | BAK | worked on notice of appeal, finalized, and filed notice | 1.7 | 1.7 | |
| 5/4/2023 | BAK | evaluate appeal issues and next steps | 1.9 | 1.9 | |
| 5/4/2023 | BAK | began work on motion for injunction pending appeal - reseach applicable rules and standards | 1.7 | 1.7 | |
| 5/5/2023 | BAK | calls w/ PK re: appeal issues and next steps | 1 | 1 | |
| 5/5/2023 | BAK | call w/ MH re: motion for injunction pending appeal | 0.2 | 0.2 | |
| 5/5/2023 | BAK | worked on motion for injunction pending appeal - evaluated issues/approach for motion | 1.6 | 1.6 | |
| 5/8/2023 | BAK | firm call re: appeal issues | 0.3 | 0.3 | |
| 5/8/2023 | BAK | conferral with counsel for defendants and intervenors motions for stay/injunction pending appeal | 0.8 | 0.8 | |
| 5/8/2023 | BAK | call w/ PK and EB re: motions for stay/injunction pending appeal | 0.8 | 0.8 | |
| 5/8/2023 | BAK | email communications w/ counsel for defendants and intervenors re: motions for stay/injunction pending appeal | 0.7 | 0.7 | |
| 5/8/2023 | BAK | call w/ MH re: response to motion for stay pending appeal | 0.1 | 0.1 | |
| 5/8/2023 | BAK | discussions w/ EB re: motions for stay/injunction pending appeal | 0.5 | 0.5 | |
| 5/8/2023 | BAK | worked on motion for injunction pending appeal - legal research and drafting re: standards | 2.7 | 2.7 | |

| | | | | |
|---|---|---|---|---|
| 5/9/2023 | BAK | call w/ EH re: appeal, settlement, and next steps | 0.5 | 0.5 |
| 5/9/2023 | BAK | worked on motion for injunction pending appeal for district court - legal research and drafting likelihood of success arguments | 6.9 | 6.9 |
| 5/9/2023 | BAK | worked on motion for injunction pending appeal for district court - legal research and drafting irreparable injury arguments | 0.8 | 0.8 |
| 5/9/2023 | BAK | call w/ PK re: appeal and settlement strategy | 0.2 | 0.2 |
| 5/10/2023 | BAK | worked on motion for injunction pending appeal in district court - legal research and drafting/revising on likelihood of success | 2.2 | 2.2 |
| 5/10/2023 | BAK | worked on motion for injunction pending appeal - legal research and drafting irreparable injury | 3.1 | 3.1 |
| 5/10/2023 | BAK | worked on motion for junjunction pending appeal in district court - legal research and drafting section re: public interests and equitites | 1.9 | 1.9 |
| 5/10/2023 | BAK | worked on motion for injunction pending appal for district court - introduction | 0.9 | 0.9 |
| 5/11/2023 | BAK | emails w/ counsel for defendants and intervenors re: settlement issues | 0.9 | 0.9 |
| 5/11/2023 | BAK | worked on motion for injunction pending appeal in district court - legal research and revising standard of revision | 1.5 | 1.5 |
| 5/11/2023 | BAK | worked on motion for injunction pending appeal in district court - revising, editing, finalizing, and filing | 1.8 | 1.8 |
| 5/11/2023 | BAK | worked on response to AK's motion for stay pending appeal - legal research and drafting re: likelihood of success on appeal | 4.3 | 4.3 |
| 5/12/2023 | BAK | call w/ PK re: appeal issues | 0.4 | 0.4 |
| 5/12/2023 | BAK | worked on response to district court motion to stay vacatur order - drafting intro | 1.2 | 1.2 |
| 5/12/2023 | BAK | worked on response to district court motion to stay vacatur order - legal research and drafting argument re: likelihood of success on appeal | 2.9 | 2.9 |
| 5/13/2023 | BAK | worked on response to district court motion to stay vacatur order - argument re: likelihhod of success on appeal | 2.9 | 2.9 |
| 5/13/2023 | BAK | worked on response to district court motion to stay vacatur order - irreparable injury to Alaska | 1 | 1 |
| 5/15/2023 | BAK | firm meeting to discuss appeal strategy and next steps | 0.2 | 0.2 |
| 5/15/2023 | BAK | worked on response to motion for stay pending appeal in district court - irreparable injury to Alaska issues | 1.3 | 1.3 |
| 5/15/2023 | BAK | worked on response to motion for stay pending appeal in district court - injury to WFC arguments | 4.1 | 4.1 |

| Date | | Description | | |
|---|---|---|---|---|
| 5/15/2023 | BAK | worked on response to motion for stay pending appeal in district court - public interest arguments | 2.1 | 2.1 |
| 5/16/2023 | BAK | reviewed and revised Ninth Circuit Mediation Questionnaire | 0.5 | 0.5 |
| 5/16/2023 | BAK | call w/ PK re: appeal issues | 0.6 | 0.6 |
| 5/16/2023 | BAK | worked on response to motion to stay vacatur in district court - injury to WFC | 1.3 | 1.3 |
| 5/16/2023 | BAK | worked on response to motion to stay vacatur in district court - public interest issues | 1.4 | 1.4 |
| 5/16/2023 | BAK | worked on response to motion to stay vacatur in district court - introduction | 0.9 | 0.9 |
| 5/17/2023 | BAK | call w/ WFC re: litigation/appeal strategy and next steps | 0.5 | 0.5 |
| 5/17/2023 | BAK | call w/ PK re: appeal issues | 0.2 | 0.2 |
| 5/17/2023 | BAK | worked on response to motion to stay vacatur order filed in district court - reviewed and revised entire response | 3 | 3 |
| 5/17/2023 | BAK | reviewed and evaluated Appellate and Ninth Circuit Rules re: motions | 1 | 1 |
| 5/17/2023 | BAK | worked on motion for injunction pending appeal for Ninth Circuit - introduction | 1.3 | 1.3 |
| 5/17/2023 | BAK | worked on motion for injunction pending appeal for Ninth Circuit - statutory framework | 1.8 | 1.8 |
| 5/18/2023 | BAK | worked on 9th Circuit motion for injunction pending appeal - statutory framework | 2.7 | 2.7 |
| 5/18/2023 | BAK | worked on 9th Circuit motion for injunction pending appeal - history of proceedings | 1.7 | 1.7 |
| 5/19/2023 | BAK | worked on 9th Circuit motion for injuction pending appeal - standard of review | 1.3 | 1.3 |
| 5/19/2023 | BAK | worked on 9th Circuit motion for injunction pending appeal - likelihood of success | 2.1 | 2.1 |
| 5/22/2023 | BAK | worked on 9th Circuit motion for injunction pending appeal - likelihood of success | 3.2 | 3.2 |
| 5/22/2023 | BAK | call w/ WFC and EB re: appeal issues | 0.2 | 0.2 |
| 5/22/2023 | BAK | call w/ PK and EB re: appeal issues | 0.2 | 0.2 |
| 5/23/2023 | BAK | review responses to motion for injunction pending appeal filed in district court | 1 | 1 |
| 5/23/2023 | BAK | review and evaluated federal defendants' response in support of motion to stay and supporting declarations | 1 | 1 |
| 5/23/2023 | BAK | prepare and file notice of intent to file surreply and surreply requesting to strike federal defendants' response in support of motion to stay | 2.5 | 2.5 |
| 5/23/2023 | BAK | worked on motion for injunction pending appeal in district court - likelihood of success arguments | 4.2 | 4.2 |
| 5/23/2023 | BAK | call w/ PK re: appeal strategy issues | 0.2 | 0.2 |

| 5/24/2023 | BAK | call w/ NG re: issues w/ prey increase program and exceedances of pHOS limits | 0.3 | 0.3 |
|---|---|---|---|---|
| 5/24/2023 | BAK | call w/ EH re: appeal issues | 0.2 | 0.2 |
| 5/24/2023 | BAK | worked on 9th Circuit motion for injunction pending appeal - likelihood of success | 3.6 | 3.6 |
| 5/24/2023 | BAK | worked on 9th Circuit motion for injunction pending appeal - irreparable injury | 2.9 | 2.9 |
| 5/24/2023 | BAK | worked on 9th Circuit motion for injunction pending appeal - equities and public interests | 1.2 | 1.2 |
| 5/25/2023 | BAK | worked on motion for injunction pending appeal in Ninth Circuit - equities and public interests | 1.8 | 1.8 |
| 5/25/2023 | BAK | worked on motion for injunction pending appeal in Ninth Circuit - bond requirement | 0.6 | 0.6 |
| 5/25/2023 | BAK | worked on motion for injunction pending appeal in Ninth Circuit - likelihood of success | 1.2 | 1.2 |
| 5/25/2023 | BAK | worked on motion for injunction pending appeal in Ninth Circuit - revised multiple sections | 3.4 | 3.4 |
| 5/25/2023 | BAK | worked on motion for injunction pending appeal in Ninth Circuit - reviewed and evaulated requirements for exhibits/motions | 0.7 | 0.7 |
| 5/25/2023 | BAK | worked on motion for injunction pending appeal in Ninth Circuit - evaluated exhibits needed | 1.5 | 1.5 |
| 5/26/2023 | BAK | review and comment on draft declaration of NG in support of motion for injunction pending appeal to be filed with 9th Circuit | 3.9 | 3.9 |
| 5/26/2023 | BAK | reviewed and evaluated materials to be included in excerpts of record in support of motion for injunction pending appeal to be filed with 9th Circuit | 3.3 | 3.3 |
| 5/26/2023 | BAK | editing mutliple sections of motion for injunction pending appeal to be filed with Ninth Circuit | 0.6 | 0.6 |
| 5/29/2023 | BAK | worked on motion for injunction pending appeal in Ninth Circuit - revised multiple sections and shortened | 4.2 | 4.2 |
| 5/29/2023 | BAK | reviewed and commented on Gayeski declaration in support of motion for injunction pending appeal in Ninth Circuit | 1.5 | 1.5 |
| 5/29/2023 | BAK | worked on ER in support of motion for injunciton pending appeal in Ninth Circuit (reviewed and complied materials | 3.1 | 3.1 |
| 5/30/2023 | BAK | reviewed and commented on NG declaration iso motion for injunction pending appeal w/ Ninth Circuit; call w/ NG re: same | 1.8 | 1.8 |
| 5/30/2023 | BAK | reviewed, revised, and shortened motion for injunction pending appeal in Ninth Circuit | 0.8 | 0.8 |
| 5/30/2023 | BAK | worked on response to Alaska's Ninth Circuitmotion for stay pending appeal - statutory framework | 1.5 | 1.5 |

| Date | | Description | | |
|---|---|---|---|---|
| 5/30/2023 | BAK | worked on response to Alaska's Ninth Circuit motion for stay pending appeal - factual background | 2.6 | 2.6 |
| 5/30/2023 | BAK | worked on response to Alaska's Ninth Circuit motion for stay pending appeal - standard of review | 0.9 | 0.9 |
| 5/30/2023 | BAK | worked on response to Alaska's Ninth Circuit motion for stay pending appeal - likelihood of success | 1.5 | 1.5 |
| 5/31/2023 | BAK | worked on Ninth Circuit response to motion to stay - likelihood of success | 9.1 | 9.1 |
| 6/1/2023 | BAK | worked on Ninth Circuit response to motion to stay - likelihood of success | 2.4 | 2.4 |
| 6/1/2023 | BAK | worked on Ninth Circuit response to motion to stay - introduction | 1.5 | 1.5 |
| 6/1/2023 | BAK | worked on Ninth Circuit response to motion to stay - irreparable injury | 2.5 | 2.5 |
| 6/1/2023 | BAK | worked on Ninth Circuit response to motion to stay - public interests/equitites | 1.8 | 1.8 |
| 6/2/2023 | BAK | calls w/ EB re: issues with response to AK's 9th Circuit motion to stay pending appeal | 0.4 | 0.4 |
| 6/2/2023 | BAK | worked on response to AK's Ninth Circuit motion to stay pendind appeal - revised and edited all sections | 5.5 | 5.5 |
| 6/2/2023 | BAK | worked on response to AK's Ninth Circuit motion to stay pendind appeal - revised ER and SER and including citations | 2.5 | 2.5 |
| 6/5/2023 | BAK | prepare and file response to Alaska delegation motion for leave to file amici brief | 1 | 1 |
| 6/5/2023 | BAK | revised, edited, shortened, and filed response to Alaska motion for stay pending appeal in 9th Circuit | 6.3 | 6.3 |
| 6/5/2023 | BAK | review Rules of Appeallate Procedure re: record on appeal/transcripts and evaluate need for transcripts | 1.1 | 1.1 |
| 6/6/2023 | BAK | review Alaska's response to WFC's response to motion for leave to file amici and prepared and filed reply to Alaska's response | 1.2 | 1.2 |
| 6/6/2023 | BAK | reviewed and evaluated NMFS's Ninth Circuit response to Alaska's motion to stay pending appeal | 2.1 | 2.1 |
| 6/6/2023 | BAK | worked on reply to NMFS's Ninth Circuit Response in Support of Alaska's motion to stay pending appeal - vacatur standards | 2.7 | 2.7 |
| 6/6/2023 | BAK | worked on reply to NMFS's Ninth Circuit Response in Support of Alaska's motion to stay pending appeal - likelihood of success | 2.1 | 2.1 |
| 6/6/2023 | BAK | call w/ PK re: appeal issues | 0.2 | 0.2 |
| 6/6/2023 | BAK | prepared and filed trasncript designations for appeal | 1 | 1 |

| | | | | |
|---|---|---|---|---|
| 6/7/2023 | BAK | worked on response to NMFS's Ninth Circuit response in support of motion for stay pending appeal - legal research and drafting re: likelihood of success on appeal | 8.2 | 8.2 |
| 6/7/2023 | BAK | worked on response to NMFS's Ninth Circuit response in support of motion for stay pending appeal - irreparable injury | 0.5 | 0.5 |
| 6/8/2023 | BAK | worked on Ninth Circuit response to NMFS's joinder in motion to stay - intro | 0.9 | 0.9 |
| 6/8/2023 | BAK | worked on Ninth Circuit response to NMFS's joinder in motion to to stay - public interests and equities | 2.1 | 2.1 |
| 6/8/2023 | BAK | worked on Ninth Circuit response to NMFS's joinder in motion to stay - edited/revised/shortened entire brief | 5.1 | 5.1 |
| 6/9/2023 | BAK | worked on Ninth Circuit response to Amici Brief - research and drafting | 4.9 | 4.9 |
| 6/11/2023 | BAK | worked on response to Ninth Circuit Amici Brief - drafting/revising | 1 | 1 |
| 6/11/2023 | BAK | reviewed and evaluated NMFS's Ninth Circuit response to Motion for Injunction Pending Appeal | 1.5 | 1.5 |
| 6/11/2023 | BAK | worked on reply in support of Ninth Circuit Motion for injunction pending appeal - drafting intro | 0.9 | 0.9 |
| 6/12/2023 | BAK | worked on reply iso motion for injunction pending appeal in the 9th Circuit - Intro | 1.3 | 1.3 |
| 6/12/2023 | BAK | worked on reply iso motion for injunction pending appeal in the 9th Circuit - Vacatur standards | 1.6 | 1.6 |
| 6/12/2023 | BAK | worked on reply iso motion for injunction pending appeal in 9th Circuit - likelihood of success | 3.8 | 3.8 |
| 6/12/2023 | BAK | reviewed revised Ninth Circuit response to Amici Brief re: motion to stay pending appeal, discussion w/ EB re: same | 0.5 | 0.5 |
| 6/13/2023 | BAK | worked on Ninth Circuit reply iso motion for injunction pending appeal - likelihood of success on the merits | 8.1 | 8.1 |
| 6/14/2023 | BAK | worked on Ninth Circuit reply iso motion for injunction pending appeal - likelihood of success on the merits | 5.2 | 5.2 |
| 6/14/2023 | BAK | worked on Ninth Circuit reply iso motion for injunction pending appeal - irreparable injury | 1.2 | 1.2 |
| 6/14/2023 | BAK | worked on Ninth Circuit reply iso motion for injunction pending appeal - public interests and equities | 1.8 | 1.8 |
| 6/15/2023 | BAK | worked on Ninth Circuit reply iso motion for injunction pending appeal - likelihood of success on the merits | 3.2 | 3.2 |

| Date | Initials | Description | | |
|------|----------|-------------|---|---|
| 6/15/2023 | BAK | worked on Ninth Circuit reply iso motion for injunction pending appeal - review, revise, edit, and shorten entire brief | 4.1 | 4.1 |
| 6/15/2023 | BAK | discuss issues re: Ninth Circuit reply iso motion for injunction pending appeal w/ EB | 0.5 | 0.5 |
| 6/16/2023 | BAK | Call with PK re litigation strategy and next steps | 0.2 | 0.2 |
| 6/19/2023 | BAK | reviewed and evaluated Tribal Coalition Amicus brief and motion for leave | 1.1 | 1.1 |
| 6/19/2023 | BAK | worked on response to Tribal Coalition Amicus Brief - research and drafting | 0.7 | 0.7 |
| 6/20/2023 | BAK | worked on response to Tribal Coalition Amicus Brief - research and drafting | 5.2 | 5.2 |
| 6/21/2023 | BAK | worked on response to Tribal Coalition Amicus Brief - research and drafting | 3.2 | 3.2 |
| 6/21/2023 | BAK | review and evaluate order on motion to stay pennding appeal | 0.4 | 0.4 |
| 6/21/2023 | BAK | calls w/ PK and EB re: order staying pending appeal | 0.8 | 0.8 |
| 6/21/2023 | BAK | legal research re: possible next steps | 2.8 | 2.8 |
| 6/22/2023 | BAK | communications w/ colleagues re: possible next steps and outcomes re: order on motion to stay pending appeal | 1.5 | 1.5 |
| 6/22/2023 | BAK | legal research re: possible next steps w/ appeal | 2 | 2 |
| 6/22/2023 | BAK | call w/ PK re: litigation strategy | 0.3 | 0.3 |
| 6/23/2023 | BAK | call w/ WFC re: appeal/litgation strategy | 0.8 | 0.8 |
| 8/17/2023 | BAK | call w/ PK re: appeal strategy issues | 0.2 | 0.2 |
| 8/17/2023 | BAK | call w/ EH re: appeal issues | 0.4 | 0.4 |
| 8/18/2023 | BAK | discussion w/ EB re: NMFS's request for another extension in their briefing schedule | 0.2 | 0.2 |
| 8/18/2023 | BAK | evaulated NMFS's request for another extension in their briefing schedule; emailed counsel for NMFS re: same | 0.6 | 0.6 |
| 8/23/2023 | BAK | call w/ WFC, EB, and MH re: NEPA process on prey increase program, including possible impacts on appeal | 0.8 | 0.8 |
| 8/28/2023 | BAK | reviewed order re: new briefing schedule and calendared deadlines | 0.2 | 0.2 |
| 9/18/2023 | BAK | began to evaluate topics and outline for opening appellate brief | 0.9 | 0.9 |
| 9/19/2023 | BAK | reviewed pleadings re: Ch. 11 bankruptcy that cite WFC v. Quan, evaluated potential impact on case; called counsel for plaintiffs/debots in case | 1.2 | 0 |
| 9/20/2023 | BAK | calls w/ plaintiffs' attorney in bankruptcy case re: motion to stay WFC v. Quan and need to dismiss WFC case | 0.8 | 0 |
| 9/20/2023 | BAK | call w/ WFC and c/c re: bankruptcy issue | 0.1 | 0 |
| 9/21/2023 | BAK | reviewed and evaluated FRAP and 9th Cir. Rules re: contents of briefs and ER | 0.9 | 0.9 |

| 9/21/2023 | BAK | worked on combined opening/answering appeal brief - jurisdiction statement | 1.5 | 1.5 |
|---|---|---|---|---|
| 9/21/2023 | BAK | worked on combined opening/answering appeal brief - outline of brief | 0.7 | 0.7 |
| 9/26/2023 | BAK | worked on combined opening/answering appeal brief - statutory framework | 2.1 | 2.1 |
| 9/27/2023 | BAK | worked on combined opening/answering appeal brief - statutory framework | 1.7 | 1.7 |
| 9/27/2023 | BAK | worked on combined opening/anwering appeal brief - statement of facts | 5.2 | 5.2 |
| 9/28/2023 | BAK | worked on first appeal brief - statement of facts and regulatory background sections | 5.7 | 5.7 |
| 9/29/2023 | BAK | worked on first appeal brief - procedural background | 2.6 | 2.6 |
| 9/29/2023 | BAK | worked on first appeal brief - statutory background | 1.2 | 1.2 |
| 10/2/2023 | BAK | call w/ PK and MH re: appeal status and WFC's first appellate brief | 0.2 | 0.2 |
| 10/2/2023 | BAK | reviewed and evaluated NMFS's first appellate brief | 3.2 | 3.2 |
| 10/3/2023 | BAK | call w/ WFC and MH re: defendants' appellate brief and approach for WFC's first appellate brief | 1 | 1 |
| 10/3/2023 | BAK | reviewed and evaluated Alaska and ATA's first appellate briefs | 2.5 | 2.5 |
| 10/3/2023 | BAK | worked on first appellate brief - statement of case sections | 3.1 | 3.1 |
| 10/4/2023 | BAK | worked on first appellate brief - history of proceedings section | 3.1 | 3.1 |
| 10/4/2023 | BAK | worked on first appellate brief - standards of review | 1.4 | 1.4 |
| 10/4/2023 | BAK | worked on first appellate brief - additional BiOp error | 2.1 | 2.1 |
| 10/5/2023 | BAK | legal research re: different applications of "same rule on remand" aspect of vacatur test | 0.8 | 0.8 |
| 10/5/2023 | BAK | worked on first appellate brief - no rational connection from facts to no jeopardy conclusion | 6.7 | 6.7 |
| 10/6/2023 | BAK | worked on first appellate brief - no rational connection from facts to no jeopardy conclusion | 4.2 | 4.2 |
| 10/6/2023 | BAK | worked on first appellate brief - APA vacatur/presumption of vacatur | 2.1 | 2.1 |
| 10/10/2023 | BAK | meeting w PK and MH re: tasks for first appellate brief | 0.2 | 0.2 |
| 10/10/2023 | BAK | worked on first appellate brief - vacatur standards | 3.7 | 3.7 |
| 10/11/2023 | BAK | worked on first appellate brief (legal research and drafting)- vacatur standards | 3.2 | 3.2 |
| 10/11/2023 | BAK | worked on first appellate brief (legal research, drafting, reviewing record) - seriousness of violations for ITS vacatur | 4.1 | 4.1 |

| | | | | |
|---|---|---|---|---|
| 10/12/2023 | BAK | call w/ WFC and EB re: appeal issues | 0.8 | 0.8 |
| 10/12/2023 | BAK | worked on first appellate brief (legal research and drafting)- vacatur standards (seriousness of violations) | 5.1 | 5.1 |
| 10/12/2023 | BAK | call w/ PK re: appeal issues | 0.1 | 0.1 |
| 10/13/2023 | BAK | legal research and drafting re: vacatur standards for first appellate brief | 7.3 | 7.3 |
| 10/16/2023 | BAK | firm call re: appeal strategy | 0.2 | 0.2 |
| 10/16/2023 | BAK | legal research and drafting re: vacatur standards for first appellate brief | 4.2 | 4.2 |
| 10/16/2023 | BAK | legal research and drafting re: seriousness of errors for first appellate brief | 3.7 | 3.7 |
| 10/17/2023 | BAK | worked on first appellate brief - legal research and drafting seriousness of violations arguments | 7.1 | 7.1 |
| 10/18/2023 | BAK | worked on first appeallet brief - legal research and drafting seriousness of violations arguments | 7.9 | 7.9 |
| 10/19/2023 | BAK | worked on first appellate brief - legal research and drafting seriousness of violations arguments | 2.5 | 2.5 |
| 10/19/2023 | BAK | call w/ EH re: appeal strategy | 0.5 | 0.5 |
| 10/19/2023 | BAK | reviewed materials re: AK's receipt of financial compensation for haverst reductions in the 2019 Treaty and evaulated motion for judicial notice | 1.2 | 1.2 |
| 10/19/2023 | BAK | call w/ MH and compiled materials for MH re: motion for judicial notice | 1 | 1 |
| 10/19/2023 | BAK | call w/ PK re: appeal strategy issues | 0.2 | 0.2 |
| 10/20/2023 | BAK | worked on first appellate brief - legal research and drafting seriousness of violations arguments | 3.5 | 3.5 |
| 10/20/2023 | BAK | worked on first appellate brief - legal research and drafting seriousness of violations arguments | 2.9 | 2.9 |
| 10/24/2023 | BAK | filed streamlined request for extension of appellate brief deadline | 0.3 | 0.3 |
| 10/24/2023 | BAK | worked on first appellatte brief - legal research and drafting re: seriousness of violations (prey inc not fully implemented and lacks specific ESA/NEPA reviews) | 6.5 | 6.5 |
| 10/25/2023 | BAK | worked on first appellate brief - seriousness of violations issues | 3.1 | 3.1 |
| 10/26/2023 | BAK | worked on first appellate brief - environmental consequences of vacating ITS | 7.2 | 7.2 |
| 10/26/2023 | BAK | communications w/ colleague (GK) re: appeal issues/strategy | 0.8 | 0.8 |
| 10/27/2023 | BAK | worked on first appellate brief - consequences of vacatur of ITS | 4 | 4 |
| 10/30/2023 | BAK | worked on first appellate brief - legal research and drafting consequences of vacatur of ITS | 1.8 | 1.8 |
| 10/31/2023 | BAK | worked on first appellate brief - legal research and drafting re: consequences of vacating the ITS | 5.1 | 5.1 |
| 11/1/2023 | BAK | worked on first appellate brief - legal research and drafting re: arguments on vacatur of ITS | 3.2 | 3.2 |

| Date | | Description | | |
|---|---|---|---|---|
| 11/2/2023 | BAK | worked on first appellate brief - revising arguments re: seriousness of violations | 2.6 | 2.6 |
| 11/2/2023 | BAK | legal research and drafting first appellate brief - consequences of vacatur of ITS | 4.8 | 4.8 |
| 11/3/2023 | BAK | call w/ CG, EB, and attorneys for orca groups re: appellate briefing and amicus issues | 0.7 | 0.7 |
| 11/3/2023 | BAK | reviewed and evaluated communications from NG re: percenatge of SEAK harvest that constitutes priority prey from SRKWs | 0.5 | 0.5 |
| 11/3/2023 | BAK | worked on first appellate brief - consequences of vacatur of ITS | 2.1 | 2.1 |
| 11/7/2023 | BAK | worked on first appellate brief - legal research and drafting re: consequences of vacating the ITS | 2.5 | 2.5 |
| 11/7/2023 | BAK | worked on first appellate brief - legal research and drafting re: not an abuse of discretion to vacate ITS | 0.9 | 0.9 |
| 11/8/2023 | BAK | worked on first appellate brief - legal research and drafting re: not an abuse of discretion to vacate ITS | 6.1 | 6.1 |
| 11/8/2023 | BAK | worked on first appellate brief - legal research and drafting re: failure to vacate prey increase program | 1.2 | 1.2 |
| 11/9/2023 | BAK | worked on opening appellate brief - vacatur of prey increase program argument section | 2.1 | 2.1 |
| 11/14/2023 | BAK | worked on first appellate brief - legal research and drafting re: erroneous factual findings on vacatur of ITS | 4.1 | 4.1 |
| 11/15/2023 | BAK | worked on first appellate brief - legal research and drafting re: vacatur of prey increase program (seriousness) | 4.8 | 4.8 |
| 11/16/2023 | BAK | worked on first appellate brief - legal research and drafting re: vacatur of prey increase program (seriousness) | 4.2 | 4.2 |
| 11/16/2023 | BAK | worked on first appellate brief - legal research and drafting re: consequences of vacating the prey increase program | 0.7 | 0.7 |
| 11/17/2023 | BAK | worked on first appellate brief - legal research and drafting re: consequences of vacating the prey increase program | 5.9 | 5.9 |
| 11/18/2023 | BAK | worked on first appellate brief - legal research and drafting re: abuse of discretion for failing to vacate prey increase program | 2.5 | 2.5 |
| 11/20/2023 | BAK | worked on first appellate brief - revising/editing/shortening entire brief | 8.1 | 8.1 |
| 11/20/2023 | BAK | call w/ Rob Kirshner re: amicus process/timing | 0.5 | 0.5 |
| 11/21/2023 | BAK | reviewed, revised, and shortened first appellate brief | 7.9 | 7.9 |
| 11/22/2023 | BAK | worked on first appellate brief - revising/editing/shortening entire brief | 3.7 | 3.7 |

| | | | | | |
|---|---|---|---|---|---|
| 11/26/2023 | BAK | worked on first appellate brief - revising/editing/shortening entire brief | 4.1 | 4.1 | |
| 11/26/2023 | BAK | worked on excerpts of record - reviewing and evaluating materials to include | 3.8 | 3.8 | |
| 11/27/2023 | BAK | worked on opening appellate brief - reviewing, revising, and shortening entire brief | 9.1 | 9.1 | |
| 11/28/2023 | BAK | worked on first appellate brief - reviewing, revising, and shortening entire brief | 8.9 | 8.9 | |
| 11/29/2023 | BAK | worked on first appellate brief - review, revising, and shortening | 7.5 | 7.5 | |
| 11/29/2023 | BAK | reviewed and revised motion for judicial notice filed with opening appellate brief | 1.2 | 1.2 | |
| 12/4/2023 | BAK | call w/ Claire Tonry re: amicus brief issues | 0.3 | 0.3 | |
| 12/5/2023 | BAK | emails to George Kimbrell re: amicus brief issues | 0.4 | 0.4 | |
| 12/6/2023 | BAK | invoice for copying and delivery of first appellate brief and supplemental excerpts of record | | | $760.83 |
| 12/6/2023 | BAK | reviewed amici brief by orca conservation groups | 0.7 | 0.7 | |
| 12/6/2023 | BAK | reviewed amici brief by Canadian conservation groups | 0.5 | 0.5 | |
| 12/6/2023 | BAK | reviewed amici brief by law professors | 0.9 | 0.9 | |
| 12/7/2023 | BAK | reviewed amici brief by salmon conservation groups | 0.5 | 0.5 | |
| | | **BAK 2023 Hours:** | **636.5** | **634.4** | |
| 1/29/2024 | BAK | reviewing and evaluating federal defendants' third cross appeal brief | 3.5 | 3.5 | |
| 1/29/2024 | BAK | legal research for appellate reply brief - appellate review of issues not decided below | 0.9 | 0.9 | |
| 1/29/2024 | BAK | reviewed opinions cited in federal defendants' third appeal brief re: vacatur standards | 1.2 | 1.2 | |
| 1/29/2024 | BAK | reviewed record re: NMFS's contention that WA is funding prey increase program | 1 | 1 | |
| 1/30/2024 | BAK | reviewing and evaluating federal defendants' third cross appeal brief | 1.9 | 1.9 | |
| 1/30/2024 | BAK | reviewed record and other materials re: NMFS's contention that WA is funding prey increase program | 2.4 | 2.4 | |
| 1/30/2024 | BAK | reviewed record re: NMFS's contention on site specific reviews | 2.2 | 2.2 | |
| 1/30/2024 | BAK | began reviewing Alaska's third cross-appeal brief | 0.5 | 0.5 | |
| 1/31/2024 | BAK | reviewed materials re: federal and state prey increase programs; communication w/ MH re: same | 0.6 | 0.6 | |
| 1/31/2024 | BAK | finished reviewing and evaluating Alaska's third cross-appeal brief | 2.4 | 2.4 | |

| 1/31/2024 | BAK | legal research for appellate reply brief - vacatur arguments | 3.1 | 3.1 |
|-----------|-----|------|-----|-----|
| 2/1/2024 | BAK | reviewed materials re: prey increase programs; call w/ MH re: Same | 0.4 | 0.4 |
| 2/1/2024 | BAK | reviewed Trollers third cross-appeal brief | 2.6 | 2.6 |
| 2/1/2024 | BAK | legal research for final appeal reply brief - vacatur arguments | 2.5 | 2.5 |
| 2/2/2024 | BAK | evaluating and outlining arguments for final appellate reply brief | 1.8 | 1.8 |
| 2/5/2024 | BAK | worked on appellate reply brief - legal research and drafting re: failure to draw a rational connection | 5.7 | 5.7 |
| 2/5/2024 | BAK | call w/ WFC and EB re: NMFS's draft EIS on prey increase program and fisheries, including scope of DEIS, approach to comments, and potential impact on litigation | 1 | 1 |
| 2/6/2024 | BAK | worked on appellate reply brief - legal research and drafting re: failure to draw a rational connection | 7.9 | 7.9 |
| 2/7/2024 | BAK | reviewed materials and call w/ MH re: project for appellate reply brief (re: NMFS's implementation of mitigation) | 0.5 | 0.5 |
| 2/7/2024 | BAK | legal research and drafting for appellate reply brief - rational connection from facts to conclusion | 4.9 | 4.9 |
| 2/7/2024 | BAK | legal research and drafting for appellate reply brief - vacatur standards | 2.2 | 2.2 |
| 2/8/2024 | BAK | worked on appellate reply brief - legal research and drafting re: vacatur | 1.4 | 1.4 |
| 2/8/2024 | BAK | worked on appellate brief - legal researcha and drafting re: prey increase program | 2.8 | 2.8 |
| 2/9/2024 | BAK | call w/ PK re: litigation/appeal issues | 0.1 | 0.1 |
| 2/9/2024 | BAK | Worked on appellate reply brief - legal research and drafting re: vacatur of prey increase program | 4.2 | 4.2 |
| 2/12/2024 | BAK | worked on appellate reply brief - legal research and drafting vacatur of prey increase program | 2.7 | 2.7 |
| 2/13/2024 | BAK | worked on appellate brief - legal research and drafting agrements re: vacatur of prey increase program | 6.4 | 6.4 |
| 2/13/2024 | BAK | worked on appellate brief - vacate of prey increase program arguments | 5.1 | 5.1 |
| 2/15/2024 | BAK | worked on appellate reply brief - legal research and drafting vacatur of prey increase program | 7.1 | 7.1 |
| 2/15/2024 | BAK | meeting w/ EB re: reply brief issues | 0.3 | 0.3 |
| 2/16/2024 | BAK | worked on appellate reply brief - legal research and drafting vacatur of prey increase program | 4.3 | 4.3 |
| 2/19/2024 | BAK | worked on appellate reply brief - vacatur of prey increase arguments | 2.1 | 2.1 |

| Date | Atty | Description | | | |
|------|------|-------------|---|---|---|
| 2/19/2024 | BAK | legal research and drafting appellate reply brief - vacatur of prey increase program | 7.3 | 7.3 | |
| 2/21/2024 | BAK | communications w/ MH re: appendix for appellate reply brief; reviewed draft appendix | 0.3 | 0.3 | |
| 2/21/2024 | BAK | worked on appellate reply brief - vacatur of prey increase arguments | 2 | 2 | |
| 2/21/2024 | BAK | worked on appellate reply brief - into | 2.5 | 2.5 | |
| 2/21/2024 | BAK | reviewed, revised, shortened appellate reply brief - multiple sections | 2.8 | 2.8 | |
| 2/22/2024 | BAK | worked on appellate reply brief - revising/editing multiple sections | 3.9 | 3.9 | |
| 2/22/2024 | BAK | call w/ MH re: appendix | 0.2 | 0.2 | |
| 2/22/2024 | BAK | dissussions w/ EB re: issues for final appellate reply brief | ?? | ?? | |
| 2/23/2024 | BAK | revised, edited, and shortened appellate reply brief | 4.8 | 4.8 | |
| 2/26/2024 | BAK | reviewed order re: sending paper copies of appellate brief; prepared cover letter; communicaiton w/ copy company re: paper copies | 0.8 | 0.8 | |
| 3/1/2024 | BAK | invoice for copying and delivery of appellate reply brief and further excerpts of record | | | $162.09 |
| 3/7/2024 | BAK | reviewed 9th Circuit order re: argument scheduling; call w/ EB re: same | 0.3 | 0.3 | |
| 3/8/2024 | BAK | discussions w/ EB re: NMFS's current NEPA processes on prey increase program and ITS | 0.3 | 0.3 | |
| 3/8/2024 | BAK | review, evaluate, and comment on draft comments to NMFS's current NEPA process for prey increase program and ITS | 2.5 | 2.5 | |
| 3/12/2024 | BAK | communications w/ counsel for defendant re: 9th Circuit oral argument scheduling; reviewed notice filed by Trollers re: argument scheduling | 0.7 | 0.7 | |
| 3/14/2024 | BAK | call w/ PK re: oral argument issues | 0.1 | 0.1 | |
| 4/12/2024 | BAK | reviewed NMFS's letter re: notice of intent to sue for Mitchell Act hatcheries and evaluated filing FRAP 28J letter related thereto | 0.9 | 0.9 | |
| 5/16/2024 | BAK | flight to SF for 9th Circuit argument in July | | | $712.38 |
| 5/16/2024 | BAK | evaluated oral argument preparation schedule | 0.2 | 0.2 | |
| 5/19/2024 | BAK | hotel reservations for 9th circuit argument in San Fransisco | | | $835.56 |
| 5/23/2024 | BAK | communications w/ GK and ML re: scheduling appellate argument moot | 0.3 | 0.3 | |
| 6/7/2024 | BAK | call w/ PK re: appeal issues | 0.2 | 0.2 | |
| 6/19/2024 | BAK | 9th Circuit oral argument prep - reviewing briefs | 2.1 | 2.1 | |
| 6/20/2024 | BAK | 9th Circuit oral argument prep - reviewing briefs | 4.5 | 4.5 | |
| 6/24/2024 | BAK | 9th Circuit oral argument prep - reviewing briefs and record materials | 4.2 | 4.2 | |
| 6/25/2024 | BAK | 9th Circuit oral argument preparaiton - reviewing briefs and record materials | 2.4 | 2.4 | |

| 6/26/2024 | BAK | 9th Circuit oral argument preparaiton - reviewing briefs and record materials | 2.7 | 2.7 | |
| 6/27/2024 | BAK | 9th Circiut Oral Argument Preparation - reviewing briefs and record materials | 6.5 | 6.5 | |
| 6/28/2024 | BAK | review new SCOTUS opinion (Loper) and evaluate impact on case | 1.9 | 1.9 | |
| 6/28/2024 | BAK | calls w/ PK and EB re: Loper opinion | 0.8 | 0.8 | |
| 6/28/2024 | BAK | drafted and filed FRAP 28(j) letter | 3.1 | 3.1 | |
| 7/1/2024 | BAK | 9th Circuit Oral Argument Prep - reviewed district court and administrative record and worked on outline | 5.1 | 5.1 | |
| 7/9/2024 | BAK | 9th Circuit oral argument preparation - reviewing materials and working on outline | 7.1 | 7.1 | |
| 7/10/2024 | BAK | 9th Circuit oral argument preparation - reviewing materials and working on outline | 7.5 | 7.5 | |
| 7/11/2024 | BAK | preparing for oral argument - reviewing materials/case law, working on outlines | 6.2 | 6.2 | |
| 7/12/2024 | BAK | preparing for oral argument - reviewing materials/case law, working on outlines | 6.4 | 6.4 | |
| 7/13/2024 | BAK | prepared for oral argument - going over and revising outlines | 3.5 | 3.5 | |
| 7/14/2024 | BAK | prepared for oral argument - going over and revising outlines | 3.7 | 3.7 | |
| 7/15/2024 | BAK | preparing for oral argument - reviewing cases and record, reviewing and revising outline | 6.5 | 6.5 | |
| 7/16/2024 | BAK | preparing for oral argument - reviewing cases and record, reviewing and revising outline | 4.2 | 4.2 | |
| 7/16/2024 | BAK | moot argument w/ EB, GK, and ML | 2 | 2 | |
| 7/17/2024 | BAK | preparing for oral argument - reviewing/revising outline; reviewing records and cases | 4.2 | 4.2 | |
| 7/17/2024 | BAK | travel to SF for appellate argument (ride to airport; flight from PDX to SFO; BART to downtown; walk to hotel) | 6 | 3 | |
| 7/18/2024 | BAK | reviewing outline to prepare for appellate argument | 1.4 | 1.4 | |
| 7/18/2024 | BAK | meeting w/ client before appellate argument | 1.3 | 1.3 | |
| 7/18/2024 | BAK | 9th Circuit appellate argument | 1.7 | 1.7 | |
| 7/18/2024 | BAK | travel to and from 9th Circuit court house for argument | 1.5 | 0.7 | |
| 7/18/2024 | BAK | meeting w/ client following appellate arguument | 1.7 | 1.7 | |
| 7/18/2024 | BAK | travel from SFO to PDX (BART to SFO; time at airport; flight to PDX; car ride home) | 11.9 | 6 | |
| 7/18/2024 | BAK | transportation costs for EB and BAK for 9th Circuit argument in San Francisco (Uber/BART/Taxis) | | | $208.87 |
| 7/18/2024 | BAK | meal costs for EB and BAK for 9th Circuit argument in San Francisco | | | $282.10 |
| 7/25/2024 | BAK | call w/ EH re: next steps | 0.2 | 0.2 | |
| 8/20/2024 | BAK | reviewed memorandum disposition from 9th Circuit | 0.4 | 0.4 | |

| 8/20/2024 | BAK | meeting w/ client and EB re: next steps; e.g., fee petition | 0.4 | 0.4 |
|---|---|---|---|---|
| 8/26/2024 | BAK | dicussion w/ PK and EP re: next steps | 0.2 | 0.2 |
| 8/26/2024 | BAK | legal research re: EAJA procedures and deadlines | 1.2 | 1.2 |
| 9/3/2024 | BAK | legal research re: juisdiction of district court and of appellate court to hear fee motion following appeal | 1 | 1 |
| 9/9/2024 | BAK | legal research re: fee award issues | 2.4 | 2.4 |
| 9/10/2024 | BAK | emailed client re: deadlines for seeking review | 0.2 | 0.2 |
| 9/13/2024 | BAK | legal research re: fee petition issues (jurisdiction of appellate courts and district courts under different statutes to award fees) | 1.5 | 1.5 |
| 9/16/2024 | BAK | worked on fee petition - motion/intro sections | 1.2 | 1.2 |
| 9/17/2024 | BAK | calls w/ EB re: fee petition issues (rates and experts) | 1.1 | 1.1 |
| 9/17/2024 | BAK | reviewed/evaluated prior Tonry fee declaration | 0.8 | 0.8 |
| 9/17/2024 | BAK | communications w/ Tonry re: new fee declaration | 0.3 | 0.3 |
| 9/17/2024 | BAK | worked on fee petition - legal research and drafting argument sections | 3.1 | 3.1 |
| 9/19/2024 | BAK | worked on fee petition - legal research and evaluating approach for motion | 1.9 | 1.9 |
| 9/20/2024 | BAK | call w/ EL re: fee petition issues | 0.4 | 0.4 |
| 10/3/2024 | BAK | call w/ PK re: fee petition issues - declarant needs | 0.4 | 0.4 |
| 10/17/2024 | BAK | call w/ EH re: next steps/fee petition | 0.3 | 0.3 |
| 10/24/2024 | BAK | began reviewing new EISs and evaulating impact of fee petition | 3.8 | 3.8 |
| 10/29/2024 | BAK | calls w/ PK re: fee petition (experts and rate issues) | 0.7 | 0.7 |
| 10/29/2024 | BAK | call w/ EP re: fee petition | 0.2 | 0.2 |
| 10/29/2024 | BAK | reviewed and commented/revised draft CT declaration iso fee petition | 4.2 | 4.2 |
| 10/29/2024 | BAK | legal research re: fee petition issues (applicable standards) | 0.9 | 0.9 |
| 10/31/2024 | BAK | evaluated declarations needed for fee petition, prepared outline of declrations needed and topics to be covered | 2.1 | 2.1 |
| 10/31/2024 | BAK | call w/ DB re: providing declaration on reasonableness of hours | 0.8 | 0.8 |
| 10/31/2024 | BAK | worked on fee petition - legal research and drafting sections on EAJA standards | 3.2 | 3.2 |
| 11/1/2024 | BAK | worked on fee petition - reviewed timesheets for redactions/reductions | 3.8 | 3.8 |
| 11/4/2024 | BAK | worked on fee petition - reviewed timesheets for redactions/reductions | 1.8 | 1.8 |
| 11/5/2024 | BAK | worked on fee petition - preparing litigation summary for fee declarants | 2 | 2 |
| 11/6/2024 | BAK | finished litigaiton summary for fee declarants | 1.8 | 1.8 |

| 11/6/2024 | BAK | reviewed and compiled materials for fee declarants to review (e.g., docket report, primary briefs, timesheets/costs summary) | 1.5 | 1.5 |
|---|---|---|---|---|
| 11/7/2024 | BAK | prepared additional materials for fee declarants consideration (i.e., cost invoices, admin record indices) | 0.7 | 0.7 |
| 11/7/1014 | BAK | worked on fee declaration - legal research and drafting re: applicable standards | 2.4 | 2.4 |
| 11/12/2024 | BAK | communications w/ D. Becker re: declaration iso fee motion; prepared materials to send D. Becker | 0.6 | 0.6 |
| 11/13/2024 | BAK | firm meeting re: fee petition tasks/assignments | 0.3 | 0.3 |
| 11/14/2024 | BAK | communications w/ D. Becker re: declaration iso fee motion; send D. Becker expert invoices | 0.6 | 0.6 |
| 11/15/2024 | BAK | reviewed and provide comments on EP's draft argument for fee petition | 1.5 | 1.5 |
| 11/15/2024 | BAK | meeting w/ EP re: her draft argument section for fee motion | 0.2 | 0.2 |
| 11/15/2024 | BAK | worked on fee petition - intro/background sections | 1.4 | 1.4 |
| 11/18/2024 | BAK | reviewed, evaluated, and commented on D. Becker's declaration iso fee petition | 3.4 | 3.4 |
| 11/19/2024 | BAK | communications w/ EL re: his firm's timesheets and next steps for fee petition | 0.2 | 0.2 |
| 11/19/2024 | BAK | reviewing materials and drafting Knutsen declaration iso fee petition | 6.3 | 6.3 |
| 11/20/2024 | BAK | call w/ D. Becker re: his declaration iso fee petition | 0.6 | 0.6 |
| 11/20/2024 | BAK | worked on Knutsen declaration iso fee petition - K&K time records | 1.4 | 1.4 |
| 11/20/2024 | BAK | worked on Knutsen declaration iso fee petition - reasonableness of hours | 3.2 | 3.2 |
| 11/21/2024 | BAK | reviewed and commented on D. Becker's revised declaration iso fee petition | 1.1 | 1.1 |
| 11/21/2024 | BAK | worked on Knutsen declaration iso fee petition - reasonableness of hours | 2.8 | 2.8 |
| 11/21/2024 | BAK | legal research for fee petition - recent W.D. Wash. Fee decisions | 1.3 | 1.3 |
| 11/22/2024 | BAK | prepared template of EL's declaration iso fee petition | 0.3 | 0.3 |
| 11/22/2024 | BAK | call w/ EL re: his declaration iso fee petition | 0.2 | 0.2 |
| 11/22/2024 | BAK | invoice from D. Becker for declaration iso fee petition | | |
| 11/22/2024 | BAK | worked on BAK declaration iso fee petition - reasonableness of hours | 2.8 | 2.8 |
| 11/25/2024 | BAK | worked on Knutsen Decl iso fee petition - moot attorney section | 1.5 | 1.5 |
| 11/26/2024 | BAK | worked on Knutsen Decl iso fee petition - moot attorney section | 0.5 | 0.5 |

**FIFTH KNUTSEN DECLARATION - 170**
**Case No. 2:20-cv-00417-RAJ-MLP**

| | | | | |
|---|---|---|---|---|
| 11/26/2024 | BAK | worked on Knutsen Decl iso fee petition - reasonableness of hours and costs | 3.2 | 3.2 |
| 11/26/2024 | BAK | worked on Knutsen decl iso fee motion - need to specialized attorneys and their availability at EAJA rates | 1.3 | 1.3 |
| 11/26/2024 | BAK | call w/ PK re: fee petition issues | 0.2 | 0.2 |
| 11/26/2024 | BAK | worked on fee petition - reviewed and revised draft argument on substantial justification under EAJA | 0.9 | 0.9 |
| 11/27/2024 | BAK | worked on fee petition - substantial justification under EAJA | 0.4 | 0.4 |
| 12/2/2024 | BAK | reviewed and commented on draft declaration for Emma H. iso fee petition | 1.9 | 1.9 |
| 12/2/2024 | BAK | communications w/ Claire Tonry re: her declaration iso fee petition | 0.3 | 0.3 |
| 12/2/2024 | BAK | worked on fee petition - revising and drafting section re: substantial justification | 2 | 2 |
| 12/2/2024 | BAK | prepared summary of current fees and costs for use in conferral on fee petition | 1.1 | 1.1 |
| 12/3/2024 | BAK | preparing fee and costs tables and summaries for motion and for settlement/conferral | 1 | 1 |
| 12/3/2024 | BAK | worked on fee motion - review, revise, and legal research for excellence of results argument | 4.1 | 4.1 |
| 12/3/2024 | BAK | reviewed and commented on PK's draft declaration iso fee petition | 0.4 | 0.4 |
| 12/3/2024 | BAK | worked on fee motion - intro and background sections | 1.5 | 1.5 |
| 12/3/2024 | BAK | call w/ Claire Tonry re: declaration iso fee petition | 0.4 | 0.4 |
| 12/4/2024 | BAK | reviewed and comments on Claire T.'s dec iso fee petition | 0.9 | 0.9 |
| 12/4/2024 | BAK | call w/ PK re: fee petition strategy | 0.2 | 0.2 |
| 12/4/2024 | BAK | call w/ PK and EB re: fee petition strategy | 0.3 | 0.3 |
| 12/4/2024 | BAK | worked on fee petition - background sections (reviewed materials/docket and drafting) | 3.2 | 3.2 |
| 12/4/2024 | BAK | worked on fee petition - legal research and drafting prevailing party argument | 2 | 2 |
| 12/5/2024 | BAK | worked on fee petition - legal research, drafting and editing argument section on eligibility - prevailing party | 3.5 | 3.5 |
| 12/5/2024 | BAK | worked on fee petition - legal research, drafting and editing argument section on eligibility - substantial justification and EAJA size/net worth criteria | 3.2 | 3.2 |
| 12/5/2024 | BAK | worked on fee petition - revising section on reasonable rates | 1 | 1 |
| 12/5/2024 | BAK | worked on fee petition - revising sectio on costs | 0.5 | 0.5 |
| 12/6/2024 | BAK | call w/ PK and EB re: fee petition strategy | 0.2 | 0.2 |
| 12/6/2024 | BAK | calls w/ EP re: her review and comments for Claire Tonry's declaration iso fee petition | 0.3 | 0.3 |

| Date | Atty | Description | | |
|---|---|---|---|---|
| 12/6/2024 | BAK | reviewed Claire Tonry's final declaration iso fee petition | 0.4 | 0.4 |
| 12/6/2024 | BAK | worked on tables/calculations summarizing attorney fees and costs for fee petition and Knutsen Declaration | 1 | 1 |
| 12/6/2024 | BAK | reviewed draft declaration of Eric L. | 0.3 | 0.3 |
| 12/6/2024 | BAK | call w/ Eric L. re: his draft declaration iso fee petition | 0.2 | 0.2 |
| 12/6/2024 | BAK | reviewed revised EH draft declaration iso fee petition, proposed revisions thereto | 0.5 | 0.5 |
| 12/6/2024 | BAK | discussions w/ EB re: draft EH declaration iso fee petition and unavailability of attorneys at EAJA rates | 0.5 | 0.5 |
| 12/6/2024 | BAK | worked on fee petition - revising/editing multiple sections | 3.1 | 3.1 |
| 12/7/2024 | BAK | worked on fee petition - revising and shortening entire draft | 1.9 | 1.9 |
| 12/9/2024 | BAK | conferral w/ DOJ (Fred T.) re: motion for fees/costs | 0.2 | 0.2 |
| 12/9/2024 | BAK | discussions w/ EB re: motion for fee award | 0.4 | 0.4 |
| 12/9/2024 | BAK | worked on Knutsen Declaration iso fee motion - drafting and editing | 3.4 | 3.4 |
| 12/9/2024 | BAK | reviewed and prepared exhibits to Knutsen Declaration iso fee motion | 0.7 | 0.7 |
| 12/9/2024 | BAK | calls w/ PK re: Kampmeier declaration iso fee motion | 0.3 | 0.3 |
| 12/9/2024 | BAK | reviewed revised draft of Kampmeier declaraiton iso fee motion | 0.5 | 0.5 |
| 12/10/2024 | BAK | review, revise, edit, shorten entire fee petition | 2 | 2 |
| 12/10/2024 | BAK | reviewed and commented on Emma H.'s declaration iso fee petition (reviewed for content, not typos, etc) | | |
| 12/10/2024 | BAK | finalizing Knutsen declaration iso fee petition | 0.9 | 0.9 |
| 12/10/2024 | BAK | filling cites to Knutsen declaration into fee motion | 1.2 | 1.2 |
| 12/11/2024 | BAK | reviewed and provided comments on Draft Emma Bruden declaration iso fee petition | 0.4 | 0.4 |
| 12/11/2024 | BAK | reviewed, revised, shortened entire fee petition | 1.4 | 1.4 |
| 12/11/2024 | BAK | prepared proposed order iso fee petition | 1.2 | 1.2 |
| 12/11/2024 | BAK | worked on exhibits to Knutsen Decl iso fee petition - detailed timesheet and key | 1.7 | 1.7 |
| 12/12/2024 | BAK | revised fee motion and Knutsen Decl to address issue re: substantial justification | 1.3 | 1.3 |
| 12/12/2024 | BAK | call w/ counsel for NMFS re: fee petition issues | 0.1 | 0.1 |
| 12/12/2024 | BAK | reviewed and incorporated EB's revisions to fee motion, revised and shortened motion to comply with Local Rules | 1.7 | 1.7 |
| | | **BAK 2024 Hours:** | **362.3** | **352.6** |
| | | | | |
| 5/11/2020 | DI | Reviewed Mot. For PI | 0.5 | 0.5 |

| Date | | Description | | |
|------|------|-------------|------|------|
| 5/11/2020 | DI | Searched Alaska Admin. Code for geographic and seasonal restrictions on salmon fisheries | 2.5 | 2.5 |
| 5/11/2020 | DI | Phone call with Emma to discuss Alaska Admin. Code | 0.4 | 0.4 |
| 5/12/2020 | DI | Reviewed Mot. For PI | 0.5 | 0.5 |
| 5/12/2020 | DI | Phone call with EB, BK, BB, EL on response briefs and upcoming reply brief | 0.9 | 0.9 |
| 5/12/2020 | DI | Reviewed documents for bond section of reply brief | 0.5 | 0.5 |
| 5/12/2020 | DI | Searched Alaska Admin. Code for geographic and seasonal restrictions on salmon fisheries | 0.2 | 0.2 |
| 5/12/2020 | DI | Call with EB to discuss bond section of reply brief | 0.2 | 0.2 |
| 5/12/2020 | DI | Legal research for cases where court considered/declined to consider economic harm to intervenor when deciding whether or not to require bond from public interest plaintiff | 4.5 | 4.5 |
| 5/13/2020 | DI | Legal research for cases where court considered/declined to consider economic harm to intervenor when deciding whether or not to require bond from public interest plaintiff | 2.2 | 2.2 |
| 5/13/2020 | DI | Research and writing on bond issue | 5 | 5 |
| 5/13/2020 | DI | Call with EB to discuss bond section of reply brief | 0.1 | 0.1 |
| 5/13/2020 | DI | Call with EB to discuss bond section of reply brief | 0.2 | 0.2 |
| 5/14/2020 | DI | Searched for public notice for BiOp in Federal Register | 0.2 | 0.2 |
| 5/14/2020 | DI | Searched Alaska Admin. Code for geographic and seasonal restrictions on salmon fisheries | 1 | 1 |
| 5/15/2020 | DI | Re-checked Federal Register for public notice mentioning the BiOp | 0.1 | 0.1 |
| 6/4/2020 | DI | Call w/ BK re: vacatur memo | 0.3 | 0.3 |
| 6/10/2020 | DI | Research re: BiOp/ITS cases re: take but no ITS; mitigation too uncertain | 1 | 1 |
| 6/10/2020 | DI | Research re: 9th circuit standard for vacatur | 3.3 | 3.3 |
| 6/11/2020 | DI | Review of vacatur cases | 1.3 | 1.3 |
| 6/11/2020 | DI | Research re: statute of limitations can't be applied to cutoff claims before they accrue | 2.9 | 2.9 |
| 6/15/2020 | DI | Case review re: vacatur | 0.8 | 0.8 |
| 6/17/2020 | DI | Research re: 9th circuit standard for vacatur | 1.4 | 1.4 |
| 6/18/2020 | DI | Call w/ BK re: vacatur memo | 0.1 | 0.1 |
| 6/18/2020 | DI | Email to BK re: vacatur | 0.1 | 0.1 |
| 6/18/2020 | DI | Research re: 9th circuit standard for vacatur | 2.6 | 2.6 |
| 6/23/2020 | DI | Firm meeting | 0.2 | 0.2 |
| 6/24/2020 | DI | 9th circuit standard for vacatur case review | 4.5 | 4.5 |
| 6/25/2020 | DI | Vacatur research and analysis | 7.3 | 7.3 |
| 6/26/2020 | DI | Vacatur research, analysis, and memo writing | 6.3 | 6.3 |
| 6/29/2020 | DI | Drafting vacatur memo | 6.2 | 6.2 |
| 6/29/2020 | DI | Discussion of SEAK case during firm meeting | 0.3 | 0.3 |

| Date | | Description | | |
|------|------|-------------|------|------|
| 6/30/2020 | DI | Drafting vacatur memo | 8.9 | 8.9 |
| 7/2/2020 | DI | Compiling cases from vacatur memo and reviewing cases not included | 0.7 | 0.7 |
| 7/2/2020 | DI | Research on uncertain mitigation and not including an ITS with a BiOp when take is found | 2.8 | 2.8 |
| 7/6/2020 | DI | Research on uncertain mitigation and not including an ITS with a BiOp when take is found | 4.3 | 4.3 |
| 7/7/2020 | DI | Research on uncertain mitigation and not including an ITS with a BiOp when take is found | 7.9 | 7.9 |
| 7/8/2020 | DI | Research on uncertain mitigation and not including an ITS with a BiOp when take is found | 6.4 | 6.4 |
| 7/9/2020 | DI | Research on uncertain mitigation and not including an ITS with a BiOp when take is found | 4.6 | 4.6 |
| 7/10/2020 | DI | Research on uncertain mitigation and not including an ITS with a BiOp when take is found | 5.4 | 5.4 |
| 7/13/2020 | DI | Research on uncertain mitigation and not including an ITS with a BiOp when take is found | 3.3 | 3.3 |
| 7/14/2020 | DI | Research on uncertain mitigation and not including an ITS with a BiOp when take is found | 4.4 | 4.4 |
| 7/15/2020 | DI | Research on uncertain mitigation and not including an ITS with a BiOp when take is found | 4.3 | 4.3 |
| 7/15/2020 | DI | Drafting BiOp memo on need for an ITS when take is found | 3.2 | 3.2 |
| 7/16/2020 | DI | Drafting BiOp memo on need for an ITS when take is found | 7.5 | 7.5 |
| 7/17/2020 | DI | Drafting BiOp memo on need for an ITS when take is found | 5.4 | 5.4 |
| 7/18/2020 | DI | Drafting BiOp memo on need for an ITS when take is found | 0.6 | 0.6 |
| 7/19/2020 | DI | Drafting BiOp memo on need for an ITS when take is found | 1.3 | 1.3 |
| 7/19/2020 | DI | Drafting BiOp memo on uncertain mitigation | 0.8 | 0.8 |
| 7/20/2020 | DI | Drafting BiOp memo on uncertain mitigation | 7.6 | 7.6 |
| 7/21/2020 | DI | Drafting BiOp memo on uncertain mitigation | 7.5 | 7.5 |
| 7/22/2020 | DI | Editing vacatur memo and reviewing Enlist Duo decision | 7.1 | 7.1 |
| 7/23/2020 | DI | Editing vacatur memo | 6.7 | 6.7 |
| 7/24/2020 | DI | Vacatur memo: researching cases on court's equitable power | 0.3 | 0.3 |
| 7/24/2020 | DI | Editing vacatur memo | 2 | 2 |
| 7/27/2020 | DI | Editing vacatur memo | 0.3 | 0.3 |

| Date | Initials | Description | | |
|------|------|------|------|------|
| 7/27/2020 | DI | Editing vacatur memo | 6.3 | 6.3 |
| 7/27/2020 | DI | Compiling cases from vacatur memo | 0.5 | 0.5 |
| 7/28/2020 | DI | Editing vacatur memo | 4.5 | 4.5 |
| 7/30/2020 | DI | Call w/ BK re: vacatur section of brief | 0.4 | 0.4 |
| 8/3/2020 | DI | Review of mot. For preliminary injunction | 1 | 1 |
| 8/5/2020 | DI | Review of mot for preliminary injunction | 0.9 | 0.9 |
| 8/6/2020 | DI | Review of mot for preliminary injunction | 1.6 | 1.6 |
| 8/6/2020 | DI | Outlining vacatur section of brief | 2 | 2 |
| 8/10/2020 | DI | Drafting vacatur section of brief | 1.7 | 1.7 |
| 8/11/2020 | DI | Drafting vacatur section of brief | 1 | 1 |
| 8/12/2020 | DI | Drafting vacatur section of brief | 9 | 9 |
| 8/13/2020 | DI | Researching legislative history of 16 USC 1855(f) | 4.8 | 4.8 |
| 8/14/2020 | DI | Researching legislative history of 16 USC 1855(f) | 1.6 | 1.6 |
| | | **DI 2020 Hours:** | **196.2** | **196.2** |
| | | | | |
| 6/6/2019 | DR | Call w/Brian+Emma Re SEAK (.2); Researched ESA §§10, 7, 9 (1.2); Researched SEAK BiOp (2.2); Researched BiOp certainty case-law (2.4).Case filling w/Paul (1.5). | 7.5 | 7.5 |
| 6/7/2019 | DR | Call w/Brian+Emma Re SEAK (.2); Research BiOp Caselaw (6.6) | 6.8 | 6.8 |
| 6/10/2019 | DR | Drafted/edited SEAK BiOp memo (6.8); Firm call (.5); Email/timesheet/paperwork (.2) | 7.5 | 7.5 |
| 6/11/2019 | DR | SEAK research | 0.6 | 0.6 |
| 6/17/2019 | DR | SEAK | 1.3 | 0 |
| 6/18/2019 | DR | SEAK | 2.7 | 0 |
| 6/19/2019 | DR | SEAK (7.5) | 7.3 | 0 |
| 6/24/2019 | DR | SEAK | 2.3 | 0 |
| 6/25/2019 | DR | SEA: Reading-Orientation to the BiOp (4.7), Research- Background on ESA/BiOps (2.6) | 7.3 | 7.3 |
| 6/26/2019 | DR | SEAK Reading: Mitigatin measures proposed in BiOp (3.7), Write up same (1.6), Research - Certainty of Mitigation measures (1.2) | 7.5 | 7.5 |
| 6/27/2019 | DR | SEAK Write up - revising 26th draft (1.5), Research- Certainty standard for mit in BiOps (2.2), Write up - Certainty standard for mit in BiOp (3.8) | 7.5 | 7.5 |
| 6/28/2019 | DR | SEAK | 2 | 0 |
| 7/30/2019 | DR | SEAK re-read (.5); SEAK memo - revise summary of BiOp (2.7); SEAK research/re-read - Cases: NMF v. NMFS II/Kempthorne/Veneman (2.2) | 5.4 | 5.4 |
| 7/31/2019 | DR | SEAK review/research - Case: Grant Canyon Trust, Rumsfeld, Salazar. (3.1); SEAK memo - write up sum of cases (2); Seak memo, revise sum of cases (2.5) | 7.6 | 7.6 |
| 8/1/2019 | DR | SEAK memo - final revision/cite check/table of contents (6.5); Update time-sheet (.4) | 7.4 | 3.2 |

|            |    |                                                                                  | DR 2019 Hours: | 80.7 | 60.9 |
|------------|----|----------------------------------------------------------------------------------|----------------|------|------|
| 6/6/2019   | EB | call w/ Dakota re: next project; and discuss w/ project BAK                       |                | 0.6  | 0.6  |
| 6/6/2019   | EB | email corr. w/ Dakota re: research project                                        |                | 0.2  | 0.2  |
| 6/7/2019   | EB | call w/ Dakota re: research and check in                                          |                | 0.2  | 0.2  |
| 6/11/2019  | EB | call w/ Dakota re: LR project                                                     |                | 0.2  | 0.2  |
| 12/17/2019 | EB | review press re: shrinking Chinook pop effects on n/s resident killer whales      |                | 0.3  | 0.3  |
| 12/20/2019 | EB | call w/ c/c re: notice letter and complaint next steps                           |                | 0.3  | 0.3  |
|            |    |                                                                                  | EB 2019 Hours: | 1.8  | 1.8  |
| 1/8/2020   | EB | read notice letter and discuss w/ BAK                                             |                | 0.9  | 0.9  |
| 1/8/2020   | EB | call w/ c/c and client re: notice letter edits and strategy                       |                | 0.5  | 0.5  |
| 1/22/2020  | EB | review claims outline                                                             |                | 0.5  | 0.5  |
| 1/22/2020  | EB | call w/ c/c and client re: claims outline and strategy and task assignment for lawsuit |           | 0.5  | 0.5  |
| 2/20/2020  | EB | skim complaint draft; discuss w/ BAK                                              |                | 0.3  | 0.3  |
| 2/26/2020  | EB | prep for call - review draft complaint and consider edits                        |                | 0.9  | 0.9  |
| 2/26/2020  | EB | call w/ c/c and client re: complaint and PI next steps                           |                | 0.7  | 0.7  |
| 2/26/2020  | EB | discuss call w/ c/c and client w/ BAK                                             |                | 0.1  | 0.1  |
| 2/27/2020  | EB | discuss Ramsey v. Kanter issue w/ BAK (.3) and follow up research re: same(1.1)   |                | 1.6  | 1.6  |
| 2/28/2020  | EB | discuss issue for m-PI re: ITS and ecological surrogates                          |                | 0.2  | 0.2  |
| 3/5/2020   | EB | begin LR re: ESA ITS surrogate issue                                              |                | 3.4  | 3.4  |
| 3/5/2020   | EB | factual research re: surrogate issue and familiarizing myself w/ BiOp/ITS         |                | 2.8  | 2.8  |
| 3/6/2020   | EB | email corr. w/ client and c/c re: understanding mitigation                        |                | 0.1  | 0.1  |
| 3/6/2020   | EB | begin drafting surrogate argument                                                 |                | 4.4  | 4.4  |
| 3/9/2020   | EB | call w/ c/c re: status of m-PI and next steps                                     |                | 0.4  | 0.4  |
| 3/10/2020  | EB | begin drafting Beardslee declaration                                              |                | 1    | 1    |
| 3/13/2020  | EB | review rutter guide re: converting PI to SJ and email to BAK re: same             |                | 0.4  | 0.4  |
| 3/16/2020  | EB | prepare summonses                                                                 |                | 1    | 0    |
| 3/16/2020  | EB | prepare corporate disclosure statement                                            |                | 0.4  | 0    |
| 3/16/2020  | EB | prepare civil cover sheet                                                         |                | 0.3  | 0    |
| 3/16/2020  | EB | prepare envelopes and green cards for mailing                                     |                | 1.4  | 0    |
| 3/16/2020  | EB | LR re: procedural injury standing                                                 |                | 1.4  | 1.4  |
| 3/17/2020  | EB | LR re: bonds for m-PI                                                             |                | 0.4  | 0.4  |
| 3/17/2020  | EB | call w/ BAK re: next steps for finalizing complaint                              |                | 0.1  | 0.1  |
| 3/17/2020  | EB | read BiOp and take notes to get up to speed                                       |                | 0.8  | 0.8  |
| 3/17/2020  | EB | close read and edit of complaint                                                 |                | 3.5  | 3.5  |
| 3/18/2020  | EB | help BAK combine exhibit for filing                                              |                | 0.5  | 0    |

| 3/18/2020 | EB | finish drafting standing argument (and related LR) for PI motion | 1.6 | 1.6 |
|---|---|---|---|---|
| 3/18/2020 | EB | draft bond argument (and related LR) for PI motion | 0.9 | 0.9 |
| 3/19/2020 | EB | prep for standing interview w/ Pete - review complaint and BiOp and make list of issues for standing interview, update standing outline | 3.1 | 3.1 |
| 3/19/2020 | EB | standing interview w/ Pete Soverel | 0.8 | 0.8 |
| 3/20/2020 | EB | prep for standing interview w/ Bill | 0.8 | 0.8 |
| 3/20/2020 | EB | standing interview w/ Bill McMillan | 0.5 | 0.5 |
| 3/20/2020 | EB | call w/ BAK re: timeline for m-PI arguments to c/c | 0.1 | 0.1 |
| 3/20/2020 | EB | make a condensed form of standing argument (LR re: same) and send to BAK | 0.7 | 0.7 |
| 3/20/2020 | EB | continue drafting ITS argument | 0.6 | 0.6 |
| 3/20/2020 | EB | call w/ BAK re: next steps for m-PI and standing declarations | 0.3 | 0.3 |
| 3/23/2020 | EB | call w/ BAK re: ITS argument and next steps for motion | 0.3 | 0.3 |
| 3/23/2020 | EB | finish draft ITS argument | 5.7 | 5.7 |
| 3/24/2020 | EB | finish transcribing soverel declaration and send draft to BAK | 2.4 | 2.4 |
| 3/24/2020 | EB | call w/ c/c re: next steps for motion | 0.5 | 0.5 |
| 3/24/2020 | EB | call w/ BAK re: declaration timing and next steps | 0.2 | 0.2 |
| 3/24/2020 | EB | call w/ BAK re: question about ESA fishing in WA | 0.2 | 0.2 |
| 3/25/2020 | EB | transcribe McMillan declaration | 1.2 | 1.2 |
| 3/25/2020 | EB | incorporate BAK edits to Soverel declaration | 0.8 | 0.8 |
| 3/26/2020 | EB | finish incorporating BAK edits to Soverel declaration and circulate draft to Pete | 0.4 | 0.4 |
| 3/27/2020 | EB | finish transcribing McMillan standing | 1.5 | 1.5 |
| 3/27/2020 | EB | review McMillan edits and incorporate into updated draft of standing declaration | 0.8 | 0.8 |
| 3/27/2020 | EB | final proofread of Soverel declaration and send final PDF for signature | 0.4 | 0.4 |
| 3/30/2020 | EB | email corr. w/ standing declarants re: finalizing declaration issues | 0.2 | 0.2 |
| 3/30/2020 | EB | review BAK edits to ITS argument and make additional edits/second draft of ITS argument | 4.1 | 4.1 |
| 3/31/2020 | EB | proofread ITS argument and beardslee decl. and send to BAK for review | 1.1 | 1.1 |
| 4/2/2020 | EB | coordination w/ standing declarant re: final signed copy of declaration | 0.2 | 0.2 |
| 4/7/2020 | EB | finalize soverl declaration for records; email corr. Re: same | 0.3 | 0.3 |
| 4/7/2020 | EB | call w/ BAK re: final soverel declaration and timing for m-PI | 0.3 | 0.3 |
| 4/7/2020 | EB | review BAK edits to Beardslee declaration and circulate to Kurt | 0.5 | 0.5 |

| Date | | Description | | |
|---|---|---|---|---|
| 4/7/2020 | EB | LR re: mitigation case law | 2 | 2 |
| 4/8/2020 | EB | review KB edits to declaration and finalize and circulate beardslee declaration | 0.6 | 0.6 |
| 4/8/2020 | EB | LR re: mitigation case law & write up notes and share w/ BAK | 4.2 | 4.2 |
| 4/8/2020 | EB | email corr. w/ c/c re: stipulating to magistrate | 0.2 | 0.2 |
| 4/9/2020 | EB | call w/ BAK re: next steps for case mgmt. | 0.2 | 0.2 |
| 4/10/2020 | EB | several calls w/ BAK re: next steps for m-PI | 0.2 | 0.2 |
| 4/13/2020 | EB | firm meeting re: next steps and strategy | 0.2 | 0.2 |
| 4/13/2020 | EB | read and edit draft of m-PI | 4.1 | 4.1 |
| 4/14/2020 | EB | finalize and format beardslee declaration | 0.9 | 0.9 |
| 4/14/2020 | EB | call w/ BAK re: next steps for brief | 0.1 | 0.1 |
| 4/14/2020 | EB | call w/ c/c re: next steps for brief | 0.5 | 0.5 |
| 4/15/2020 | EB | begin drafting proposed order | 0.8 | 0.8 |
| 4/15/2020 | EB | several calls w/ BAK re: status of brief and next steps | 0.3 | 0.3 |
| 4/15/2020 | EB | cite check brief | 6.9 | 6.9 |
| 4/15/2020 | EB | continue drafting proposed order | 1.1 | 1.1 |
| 4/16/2020 | EB | cite check irreparable injury section | 1.5 | 1.5 |
| 4/16/2020 | EB | phone calls w/ BAK re: last minute issiues w/ brief | 0.5 | 0.5 |
| 4/16/2020 | EB | last minute LR for brief re: environmental harm and email corr. Re: same | 0.4 | 0.4 |
| 4/16/2020 | EB | review c/c edits to brief | 0.3 | 0.3 |
| 4/16/2020 | EB | incorporate additional edits into brief | 0.3 | 0.3 |
| 4/16/2020 | EB | review BB rules and emails to BAK re: same | 0.3 | 0.3 |
| 4/16/2020 | EB | read through brief and call w/ BAK re: last minute edits and questions | 0.3 | 0.3 |
| 4/16/2020 | EB | incorporate c/c edits into proposed order, circulate to BAK w/ additional edits/questions | 0.3 | 0.3 |
| 4/17/2020 | EB | email corr. w/ c/c re: defs' request for extension | 0.2 | 0.2 |
| 4/20/2020 | EB | call w/ c/c re: intervention and PI strategy; consenting to magistrate; etc. | 0.4 | 0.4 |
| 4/20/2020 | EB | firm meeting re: next steps for case mgmt. | 0.2 | 0.2 |
| 4/20/2020 | EB | LR re: TROs/PIs and delays | 3.4 | 3.4 |
| 4/20/2020 | EB | review MJRs | 0.3 | 0.3 |
| 4/21/2020 | EB | call w/ BAK re: strategy and plan for m-extend | 0.3 | 0.3 |
| 4/21/2020 | EB | skim new ESA take case and consider whether it has any impact on our case | 0.4 | 0.4 |
| 4/22/2020 | EB | call w/ c/c re: response to m-extent and intervention issues and strategy | 0.5 | 0.5 |
| 4/22/2020 | EB | read m-extend | 0.2 | 0.2 |
| 4/23/2020 | EB | review and edit response to m-extend briefing schedule and 2 quick phone calls w/ BAK re: same | 0.6 | 0.6 |
| 5/6/2020 | EB | review draft statement on scope of review | 0.2 | 0.2 |
| 5/7/2020 | EB | find CLE presentation notes re: scope of record; review notes; and email to BAK re: same | 0.3 | 0.3 |

| Date | Initials | Description | | |
|------|----------|-------------|---|---|
| 5/11/2020 | EB | review Alaska fishing season/location project for Dara | 0.2 | 0.2 |
| 5/11/2020 | EB | call w/ Dara re: Alaska fishing season/location project issues | 0.5 | 0.5 |
| 5/11/2020 | EB | begin reviewing intervenor's response papers | 0.5 | 0.5 |
| 5/11/2020 | EB | follow up research and emails w/ Dara re: Alaska fishing season/location issue re: Copper River | 0.5 | 0.5 |
| 5/12/2020 | EB | read defendant and intervenors' response papers | 2.7 | 2.7 |
| 5/12/2020 | EB | call w/ c/c re: next steps for reply | 0.8 | 0.8 |
| 5/12/2020 | EB | review and outline issues for bond argument and send relevant documents to Dara | 0.6 | 0.6 |
| 5/12/2020 | EB | call w/ Dara re: bond argument | 0.3 | 0.3 |
| 5/12/2020 | EB | call w/ Brian re: brief strategy and next steps | 0.4 | 0.4 |
| 5/12/2020 | EB | begin drafting response to standing argument | 4.2 | 4.2 |
| 5/13/2020 | EB | continue drafting standing argument | 0.8 | 0.8 |
| 5/13/2020 | EB | begin drafting ITS argument | 4.9 | 4.9 |
| 5/13/2020 | EB | call w/ Dara re: status/research check in/update | 0.2 | 0.2 |
| 5/13/2020 | EB | call w/ BAK re: brief arguments and strategy | 0.7 | 0.7 |
| 5/13/2020 | EB | call w/ Dara re: bond argument check in | 0.2 | 0.2 |
| 5/13/2020 | EB | quick call w/ BAK re: timing and next steps | 0.1 | 0.1 |
| 5/13/2020 | EB | call w/ Kurt re: WFC mission | 0.2 | 0.2 |
| 5/13/2020 | EB | incorporate BAK suggestions to standing argument; and add in WFC mission discussion | 2.8 | 2.8 |
| 5/14/2020 | EB | call w/ BAK re: status of argument drafts for brief | 0.4 | 0.4 |
| 5/14/2020 | EB | finish up standing argument and send to BAK | 0.9 | 0.9 |
| 5/14/2020 | EB | call w/ BAK re: next steps for brief | 0.3 | 0.3 |
| 5/14/2020 | EB | finish up ITS argument and send to BAK | 1.1 | 1.1 |
| 5/14/2020 | EB | thorough review of fed. Reg. re: possible notice of anything related to BiOp | 1.3 | 1.3 |
| 5/14/2020 | EB | follow up LR re: standing and emails w/ BAK re: same | 0.8 | 0.8 |
| 5/14/2020 | EB | LR re: wrongfully enjoined/bond requirement for PI | 1.7 | 1.7 |
| 5/14/2020 | EB | legal research and email corr. Re: deference to NMFS position | 0.5 | 0.5 |
| 5/14/2020 | EB | call w/ c/c re: finalizing brief and next steps | 0.4 | 0.4 |
| 5/14/2020 | EB | begin cite checking/editing brief | 2.9 | 2.9 |
| 5/15/2020 | EB | find last minute support/case law for various legal assertions | 1.4 | 1.4 |
| 5/15/2020 | EB | call w/ c/c re: next steps for finishing reply brief | 0.5 | 0.5 |
| 5/15/2020 | EB | find last minute support in BiOp for various factual assertions | 1 | 1 |
| 5/15/2020 | EB | continue cite checking/editing | 4.3 | 4.3 |
| 5/15/2020 | EB | phone calls w/ Brian re: finishing reply brief | 0.9 | 0.9 |
| 5/15/2020 | EB | input edits to current draft of brief | 0.5 | 0.5 |
| 5/15/2020 | EB | review final brief and discuss w/ BAK | 0.2 | 0.2 |

| | | | | |
|---|---|---|---|---|
| 5/18/2020 | EB | emails w/ BAK re: new NEPA and ESA case and possible relevance to case | 0.2 | 0.2 |
| 5/18/2020 | EB | email corr. w/ c/c re: oral argument | 0.2 | 0.2 |
| 5/19/2020 | EB | email corr. w/ c/c re: oral argument | 0.1 | 0.1 |
| 5/20/2020 | EB | discussions w/ BAK and research re: converting PI to SJ | 0.5 | 0.5 |
| 5/22/2020 | EB | call w/ BAK and follow up emails re: answer deadline | 0.3 | 0.3 |
| 5/22/2020 | EB | read new info re: salmon returns and predictions this year | 0.2 | 0.2 |
| 5/22/2020 | EB | email corr. w/ c/c re: answer from feds (.2); read/compare answer (.5) | 0.7 | 0.7 |
| 5/22/2020 | EB | read and edit draft FOIA request and review and incorporate NMFS regs | 0.7 | 0.7 |
| 5/26/2020 | EB | email corr. w/ client re: standing/ purpose link to SRKW | 0.3 | 0.3 |
| 5/27/2020 | EB | review submitted FOIA request | 0.2 | 0.2 |
| 5/27/2020 | EB | call w/ BAK re: check in on oral argument and help with last minute prep | 0.5 | 0.5 |
| 5/28/2020 | EB | attend oral argument | 1.4 | 1.4 |
| 5/28/2020 | EB | debrief w/ client and c/c | 0.3 | 0.3 |
| 5/28/2020 | EB | debrief w/ firm | 0.2 | 0.2 |
| 5/29/2020 | EB | call w/ BAK to further debrief on argument | 0.2 | 0.2 |
| 5/29/2020 | EB | look up press on hearing and judge research | 0.5 | 0.5 |
| 6/1/2020 | EB | read email corr. And news article re: m-PI and argument | 0.5 | 0.5 |
| 6/1/2020 | EB | read/familiarize w/ local rules and draft NOA | 0.8 | 0.8 |
| 6/2/2020 | EB | review and finalize NOA; file NOA | 0.4 | 0.4 |
| 6/3/2020 | EB | read article re: genetic risks to SRKWs | 0.2 | 0.2 |
| 6/3/2020 | EB | several video calls w/ BAKre: response to defs' m-extend deadline | 0.7 | 0.7 |
| 6/3/2020 | EB | read and edit response | 0.5 | 0.5 |
| 6/3/2020 | EB | call w/ BAK re: follow up question on filed response to defs' m-extend AR deadline | 0.2 | 0.2 |
| 6/3/2020 | EB | email corr. w/ client and c/c re: FOIA fee waiver and next steps | 0.2 | 0.2 |
| 6/3/2020 | EB | research o/c | 0.3 | 0.3 |
| 6/9/2020 | EB | quick skim of order | 0.2 | 0.2 |
| 6/9/2020 | EB | call w/ BAK re: order | 0.3 | 0.3 |
| 6/9/2020 | EB | review statute (MSA) and begin processing order | 0.5 | 0.5 |
| 6/10/2020 | EB | several calls w/ BAK re: strategy for objections | 0.3 | 0.3 |
| 6/10/2020 | EB | several calls w/ BAK re: filing m-expedite | 0.3 | 0.3 |
| 6/10/2020 | EB | outline m-expedite | 0.3 | 0.3 |
| 6/10/2020 | EB | call w/ c/c re: processing report and recommendation on PI; and discuss next steps | 1.1 | 1.1 |
| 6/10/2020 | EB | LR re: MSA judicial review provision | 3.4 | 3.4 |
| 6/10/2020 | EB | draft and m-expedite | 1.7 | 1.7 |
| 6/10/2020 | EB | draft proposed order | 0.3 | 0.3 |
| 6/11/2020 | EB | call w/ BAK re: next steps for objections | 0.2 | 0.2 |

| | | | | |
|---|---|---|---|---|
| 6/12/2020 | EB | LR re: remedies for renitiation claims | 2.7 | 2.7 |
| 6/12/2020 | EB | begin reviewing draft objections | 0.9 | 0.9 |
| 6/12/2020 | EB | calls w/ BAK re: next steps for objections | 0.5 | 0.5 |
| 6/15/2020 | EB | calls w/ BAK re: next steps for objections | 0.4 | 0.4 |
| 6/15/2020 | EB | LR re: supplemental NEPA remedies | 1.4 | 1.4 |
| 6/15/2020 | EB | read and edit objections | 1.3 | 1.3 |
| 6/15/2020 | EB | create tables | 1 | 0 |
| 6/15/2020 | EB | cite check, edit and finalize brief | 2.1 | 2.1 |
| 6/18/2020 | EB | calls w/ BAK re: next steps for case mgmt. and strategy | 0.4 | 0.4 |
| 6/23/2020 | EB | emails w/ c/c re: privilege issue | 0.2 | 0.2 |
| 6/23/2020 | EB | email corr. w/ c/c re: next steps and record issues | 0.2 | 0.2 |
| 6/23/2020 | EB | firm call re: litigation strategy and next steps | 0.2 | 0.2 |
| 6/24/2020 | EB | emails w/ c/c re: privilege issue and next steps | 0.1 | 0.1 |
| 6/24/2020 | EB | call w/ BAK re: record and scheduling issues | 0.3 | 0.3 |
| 6/24/2020 | EB | email corr. w/ o/c and c/c re: scope of record and case mgmt. | 0.2 | 0.2 |
| 6/25/2020 | EB | LR re: scope of record | 1.4 | 1.4 |
| 6/25/2020 | EB | several emails re: scheduling call | 0.1 | 0.1 |
| 6/25/2020 | EB | email corr. w/ BAK re: m-expedite and skim edits re: same | 0.3 | 0.3 |
| 6/25/2020 | EB | read draft statement on briefing schedule/privilege log | 0.4 | 0.4 |
| 6/25/2020 | EB | calls w/ BAK re: draft statement | 0.2 | 0.2 |
| 6/25/2020 | EB | call w/ o/c re: conferral on joint statement and m-expedite | 0.5 | 0.5 |
| 6/25/2020 | EB | call w/ BAK re: conferral debrief | 0.4 | 0.4 |
| 6/25/2020 | EB | call w/ c/c re: conferral debrief and next steps | 0.5 | 0.5 |
| 6/26/2020 | EB | call w/ BAK re: m-expedite | 0.1 | 0.1 |
| 6/26/2020 | EB | read and edit m-expedite | 0.5 | 0.5 |
| 6/26/2020 | EB | read o/c statement on briefing/priv. log | 0.2 | 0.2 |
| 6/26/2020 | EB | several calls w/ BAK re: finalizing m-expedite and local rule requirements | 0.3 | 0.3 |
| 6/26/2020 | EB | finalize and file m-expedite | 0.4 | 0.4 |
| 6/26/2020 | EB | review LR requirements for filing and p-order | 0.3 | 0.3 |
| 6/26/2020 | EB | email p-order to court | 0.1 | 0.1 |
| 6/29/2020 | EB | firm call re: strategy and next steps | 0.3 | 0.3 |
| 7/7/2020 | EB | call w/ BAK re: order from court | 0.2 | 0.2 |
| 7/7/2020 | EB | read court order re: scheduling and AR | 0.2 | 0.2 |
| 7/9/2020 | EB | email corr. w/ c/c re: ruling on record and next steps | 0.3 | 0.3 |
| 7/13/2020 | EB | read and consider response on m-expedite | 0.3 | 0.3 |
| 7/16/2020 | EB | emails w/ c/c re: AR conferral | 0.1 | 0.1 |
| 7/16/2020 | EB | draft and edit m-expedite reply | 2 | 2 |
| 7/16/2020 | EB | incorporate BAK edits and email to c/c for feedback | 0.3 | 0.3 |
| 7/16/2020 | EB | call w/ BAK re: m-expedite | 0.2 | 0.2 |
| 7/17/2020 | EB | call w/ BAK re: record issues and strategy | 0.5 | 0.5 |

| 7/17/2020 | EB | close read of reply for typos; finalize and file reply | 0.5 | 0.5 |
|---|---|---|---|---|
| 7/20/2020 | EB | call w/ o/c re: record disputes | 0.3 | 0.3 |
| 7/22/2020 | EB | email corr. w/ c/c Re: new ESA case; quick skim of case | 0.4 | 0.4 |
| 7/27/2020 | EB | call w/ c/c re: record issues | 0.4 | 0.4 |
| 7/27/2020 | EB | email corr. w/ c/c re: record issues | 0.1 | 0.1 |
| 7/28/2020 | EB | review judge jones's docket and LRs re: timing of court orders | 0.3 | 0.3 |
| 8/10/2020 | EB | begin editing Beardslee declaration and LR re: same (organizational interests) | 1 | 1 |
| 8/10/2020 | EB | check LRs and Judge Jones's docket | 0.2 | 0.2 |
| 8/14/2020 | EB | call w/ BAK re: Kurt's declaration and SRKW | 0.2 | 0.2 |
| 8/14/2020 | EB | email corr. w/ BAK re: same | 0.1 | 0.1 |
| 8/21/2020 | EB | read email from court re: m-PI timing; and email corr. w/ c/c re: same | 0.1 | 0.1 |
| 9/3/2020 | EB | sort emails/organize file | 0.2 | 0 |
| 9/3/2020 | EB | update timesheet | 0.1 | 0 |
| 9/8/2020 | EB | call w/ BAK re: research for MSJ | 0.4 | 0.4 |
| 9/8/2020 | EB | read notes re: LR issue for MSJ | 0.2 | 0.2 |
| 9/9/2020 | EB | draft n-change address | 0.3 | 0.3 |
| 9/9/2020 | EB | re-read standing cases, and begin editing KB's second declaration | 2.9 | 2.9 |
| 9/28/2020 | EB | organize files and sort emails | 0.1 | 0.1 |
| 9/30/2020 | EB | call w/ JD re: NEPA research project, how to find all relevant information for it, next steps, etc. | 1.1 | 1.1 |
| 10/1/2020 | EB | continue editing Beardslee declaration; collect WFC information about sea lion and SRKW efforts and incorporate into declaration | 2.8 | 2.8 |
| 10/1/2020 | EB | review Soverel declaration and begin identifying edits/updates for next declaration | 0.6 | 0.6 |
| 10/1/2020 | EB | review McMillan declaration and begin identifying edits/updates for next declaration | 0.7 | 0.7 |
| 10/1/2020 | EB | re-read presidio case and confirm that Kurt includes relevant information for germaneness/standing | 0.7 | 0.7 |
| 10/5/2020 | EB | call w/ JD re: connected action issue and NWF v. NMFS case | 0.6 | 0.6 |
| 10/6/2020 | EB | call w/ BAK re: standing issues and next steps | 0.5 | 0.5 |
| 10/6/2020 | EB | schedule standing declaration calls w/ Pete and Bill | 0.2 | 0.2 |
| 10/6/2020 | EB | LR re: organizational standing and begin drafting memo re: same | 3.8 | 3.8 |
| 10/7/2020 | EB | work on memo re: organizational standing | 2.6 | 2.6 |
| 10/7/2020 | EB | call w/ BAK re: organizational standing | 0.2 | 0.2 |
| 10/8/2020 | EB | call w/ BAK re: standing question | 0.2 | 0.2 |
| 10/8/2020 | EB | prep for call w/ Bill; review declaration and consider where he might need to update | 0.5 | 0.5 |
| 10/8/2020 | EB | call w/ BM re: follow up standing interview | 0.3 | 0.3 |

| 10/8/2020 | EB | call w/ BAK re: recap of convo w/ BM | 0.1 | 0.1 |
|---|---|---|---|---|
| 10/8/2020 | EB | prep for call w/ Pete; review declaration and consider where he might need to update | 0.5 | 0.5 |
| 10/8/2020 | EB | call w/ Pete Soverel re: follow up standing interview | 0.2 | 0.2 |
| 10/13/2020 | EB | make list of things to do for case | 0.1 | 0.1 |
| 10/13/2020 | EB | email corr. Re: organizational standing | 0.1 | 0.1 |
| 10/13/2020 | EB | call w/ JD re: ESA and ITSs | 0.8 | 0.8 |
| 10/14/2020 | EB | read new 9th cir. Organizational standing case | 0.5 | 0.5 |
| 10/14/2020 | EB | watch 9th circuit oral argument re: organizational standing | 0.6 | 0.6 |
| 10/14/2020 | EB | review biop | 0.2 | 0.2 |
| 10/20/2020 | EB | LR re: adequacy of complaint | 0.5 | 0.5 |
| 10/20/2020 | EB | finish memo re: organizational standing and write notes for interview w/ WFC | 3.8 | 3.8 |
| 10/20/2020 | EB | call w/ BAK re: strategy and next steps | 0.2 | 0.2 |
| 10/22/2020 | EB | research J.Jones orders/docket | 0.2 | 0.2 |
| 10/23/2020 | EB | begin working on MSJ re: mitigation and ITS | 1.3 | 1.3 |
| 10/23/2020 | EB | prep for call w/ WFC folks -review complt, make outline for call and organize explanation of standing requirements | 1.3 | 1.3 |
| 10/23/2020 | EB | call w/ WFC folks re: standing discussion | 1.1 | 1.1 |
| 10/26/2020 | EB | email corr. Re: scheduling calls w/ standing decls. | 0.1 | 0.1 |
| 10/26/2020 | EB | review and update to-do list | 0.1 | 0.1 |
| 10/26/2020 | EB | call w/ JD re: NEPA argument - structure and organization of outline | 0.7 | 0.7 |
| 10/26/2020 | EB | review files for ex. Outline for JD | 0.2 | 0.2 |
| 10/26/2020 | EB | review outline for SJ and consider strategy | 0.4 | 0.4 |
| 10/27/2020 | EB | prep for call w/ Bill McMillan - review complt., review BiOp, make list of questions | 0.7 | 0.7 |
| 10/27/2020 | EB | follow up standing interview w/ Bill McMillan | 0.5 | 0.5 |
| 10/27/2020 | EB | debrief call w/ JD | 0.1 | 0.1 |
| 10/28/2020 | EB | prep for call w/ PS - make list of questions and explanation of lawsuit | 0.3 | 0.3 |
| 10/28/2020 | EB | call w/ Pete Soverel re: supplemental standing interview | 0.8 | 0.8 |
| 10/28/2020 | EB | begin incorporating interview into standing declaration - mcmillan | 0.7 | 0.7 |
| 10/28/2020 | EB | begin reviewing biop for mitigation portion | 1 | 1 |
| 10/28/2020 | EB | organize files | 0.1 | 0.1 |
| 10/29/2020 | EB | update timesheets and organize files | 0.1 | 0.1 |
| 11/2/2020 | EB | sort emails/organize files | 0.1 | 0.1 |
| 11/2/2020 | EB | continue working on Soverel declaration | 3.2 | 3.2 |
| 11/2/2020 | EB | email corr. To KB and WFC re: organizational standing discussions | 0.2 | 0.2 |
| 11/3/2020 | EB | email corr. w/ client re: standing discussions w/ staff and next steps | 0.2 | 0.2 |
| 11/3/2020 | EB | finish additions to Soverel declaration from recent interview | 0.4 | 0.4 |

| 11/3/2020 | EB | incorporate second McMillan interview into declaration | 3.8 | 3.8 |
|---|---|---|---|---|
| 11/3/2020 | EB | review corr. From BM and add info to declaration | 0.3 | 0.3 |
| 11/4/2020 | EB | begin LR re: mitigation and BiOp/ITS argument | 2 | 2 |
| 11/5/2020 | EB | call w/ BAK re: bifurcation argument and LR from Dara | 0.4 | 0.4 |
| 11/5/2020 | EB | read LR memo from Dara and read some of cases cited | 3.8 | 3.8 |
| 11/5/2020 | EB | begin editing draft argument re: mitigation ITS/biop | 0.5 | 0.5 |
| 11/9/2020 | EB | read/sort emails and organize files | 0.1 | 0.1 |
| 11/10/2020 | EB | read order from court re: m-expedite; review LRs re same | 0.3 | 0.3 |
| 11/16/2020 | EB | update list of things to do, sort emails, and organize files | 0.1 | 0.1 |
| 11/24/2020 | EB | email corr. w/ KB re: declaration | 0.1 | 0.1 |
| 11/24/2020 | EB | review and finalize drafts of declarations (KB, BM, PS) | 0.6 | 0.6 |
| 12/11/2020 | EB | continue working on motion for sj - bifurcation issue | 0.6 | 0.6 |
| 12/14/2020 | EB | read notice of supplemental authority and case; consider application to case | 0.5 | 0.5 |
| | | **EB 2020 Hours:** | **229.9** | **225** |
| 1/6/2021 | EB | SJ brief - draft standing argument | 2.8 | 2.8 |
| 1/12/2021 | EB | review new draft of beardslee declaration and read/sort email corr. w/ c/c and client re: same | 0.2 | 0.2 |
| 1/12/2021 | EB | review new draft of McMillan declaration and send to Bill for review | 0.3 | 0.3 |
| 1/12/2021 | EB | review new draft of Soverel declaration and send to Pete for review | 0.3 | 0.3 |
| 1/13/2021 | EB | read n-supplemental authority response and review rules re: same | 0.3 | 0.3 |
| 1/13/2021 | EB | email corr. w/ c/c re: next steps for SJ brief; review and file recent email corr. w/ c/c | 0.2 | 0.2 |
| 1/13/2021 | EB | edit n-supplemental authority surreply; call w/ BAK re: same and email corr. w/c/c re: same | 0.4 | 0.4 |
| 1/13/2021 | EB | review filed reply | 0.1 | 0.1 |
| 1/14/2021 | EB | begin reviewing, accepting edits, and making additional edits to declaration from Bill McMillan | 0.8 | 0.8 |
| 1/14/2021 | EB | prep for call w/ c/c (review emails and outline of timing and next steps) (.2); call w/ c/c re: next steps for moving case forward (.4) | 0.6 | 0.6 |
| 1/14/2021 | EB | email corr. w/ PS re: next steps and timing for reviewing and finalizing declaration | 0.1 | 0.1 |
| 1/14/2021 | EB | final read through and edit of BM declaration and send final version to BM for signature | 0.7 | 0.7 |

| Date | | | | |
|---|---|---|---|---|
| 1/14/2021 | EB | calendar internal SJ deadlines | 0.1 | 0.1 |
| 1/15/2021 | EB | call w/ BAK re: next steps and strategy for SJ | 0.1 | 0.1 |
| 1/15/2021 | EB | call w/ BAK re: SJ motion | 0.1 | 0.1 |
| 1/25/2021 | EB | email corr. w/ standing declarant re: retaining original for records | 0.1 | 0.1 |
| 1/27/2021 | EB | call w/ c/c and client re: next steps for m-sj | 0.7 | 0.7 |
| 1/28/2021 | EB | call w/ BAK Re: ITS argument | 0.2 | 0.2 |
| 1/28/2021 | EB | call w/ BAK re: brief question | 0.1 | 0.1 |
| 1/28/2021 | EB | email corr. And quick LR re: ITS argument | 0.3 | 0.3 |
| 1/29/2021 | EB | begin reading new ITS case and considering impact on argument | 0.7 | 0.7 |
| 1/29/2021 | EB | call w/ BAK re: ITS argument | 0.1 | 0.1 |
| 1/29/2021 | EB | call w/ BAK re: PI and SJ timing, strategy, etc. | 0.1 | 0.1 |
| 2/1/2021 | EB | review and file email corr. w/ c/c re: SJ motion strategy and possible remedy | 0.2 | 0.2 |
| 2/1/2021 | EB | email corr. w/ c/c re: lacy declaration | 0.1 | 0.1 |
| 2/3/2021 | EB | call w/ BAK re: status of SJ motion | 0.1 | 0.1 |
| 2/3/2021 | EB | call w/ BAK re: status of brief and arguments | 0.1 | 0.1 |
| 2/3/2021 | EB | call w/ JD re: record limitations research | 0.1 | 0.1 |
| 2/9/2021 | EB | email corr. w/ PS re: declaration | 0.2 | 0.2 |
| 2/9/2021 | EB | emails w/ c/c and w/ o/c re: SJ motion and scheduling | 0.1 | 0.1 |
| 2/9/2021 | EB | call w/ BAK re: SJ schedule and corr. w/ o/c | 0.1 | 0.1 |
| 2/10/2021 | EB | call w/ BAK re: helping with remedy section of brief | 0.2 | 0.2 |
| 2/10/2021 | EB | email corr. w/ c/c re: SJ motion and possible amicus | 0.1 | 0.1 |
| 2/11/2021 | EB | read memo re: vacatur and begin editing remedy section of motion | 3.1 | 3.1 |
| 2/12/2021 | EB | call w/ c/c and possible amicus re: summary judgment strategy and timing | 0.6 | 0.6 |
| 2/12/2021 | EB | call w/ BAK re: recap of call w/ amicus | 0.1 | 0.1 |
| 2/16/2021 | EB | continue working on vacatur section | 0.5 | 0.5 |
| 2/17/2021 | EB | LR re: mitigation and need to explain jeopardy conclusion | 2.4 | 2.4 |
| 2/18/2021 | EB | email corr. And review of updated beardslee decl. | 0.1 | 0.1 |
| 2/18/2021 | EB | call w/ BAK re: SJ arguments and strategy | 0.5 | 0.5 |
| 2/19/2021 | EB | read new unpublished 9th circuit vacatur case | 0.1 | 0.1 |
| 2/19/2021 | EB | call w/ BAK re: SJ brief strategy and next steps | 0.1 | 0.1 |
| 2/19/2021 | EB | email corr. w/ Pete Soverel re: standing declaration | 0.1 | 0.1 |
| 2/19/2021 | EB | LR re: mitigation and need to explain jeopardy conclusion | 3.5 | 3.5 |
| 2/22/2021 | EB | continue LR and begin making vacatur case chart | 5.5 | 5.5 |
| 2/23/2021 | EB | calls w/ BAK re: vacatur issues | 0.3 | 0.3 |
| 2/23/2021 | EB | finish vacatur case chart | 2 | 2 |
| 2/23/2021 | EB | additional LR re: vacatur | 0.6 | 0.6 |
| 2/23/2021 | EB | edit vacatur argument | 2.9 | 2.9 |

| Date | | Description | | |
|------|------|-------------|-----|-----|
| 2/24/2021 | EB | email corr. w/ c/c re: status of decls. | 0.1 | 0.1 |
| 2/25/2021 | EB | continue researching need to explain jeopardy conclusion | 2.8 | 2.8 |
| 2/25/2021 | EB | begin drafting and editing need to explain jeopardy argument | 2.6 | 2.6 |
| 2/26/2021 | EB | call w/ BAK re: motion SJ next steps | 0.1 | 0.1 |
| 2/26/2021 | EB | continue drafting need to explain jeopardy argument | 2.1 | 2.1 |
| 2/26/2021 | EB | supp. Factual LR - read biop re: explanation of jeopardy and factual findings | 2.4 | 2.4 |
| 2/26/2021 | EB | supp. LR re: need to explain and incorporate into draft | 1 | 1 |
| 3/1/2021 | EB | read new ESA mitigation case for applicability | 0.1 | 0.1 |
| 3/1/2021 | EB | edit jeopardy argument | 0.6 | 0.6 |
| 3/1/2021 | EB | review order from court on PI; corr. w/ c/c re: same | 0.2 | 0.2 |
| 3/2/2021 | EB | discuss order on PI and next steps w/ JD | 0.2 | 0.2 |
| 3/2/2021 | EB | call w/ BAK re: factual questions on explanation of jeopardy argument | 0.2 | 0.2 |
| 3/2/2021 | EB | firm call re: strategy and next steps | 0.2 | 0.2 |
| 3/2/2021 | EB | email corr. w/ client re: judge's order on PI | 0.1 | 0.1 |
| 3/2/2021 | EB | email corr. Re: ATA counsel | 0.1 | 0.1 |
| 3/3/2021 | EB | read lacy declaration for better understanding of biop numbers, and edit/resolve issues in explanation of jeopardy section | 2.4 | 2.4 |
| 3/3/2021 | EB | review and edit brief | 0.5 | 0.5 |
| 3/5/2021 | EB | call w/ BAK re: briefing schedule and case strategy | 0.4 | 0.4 |
| 3/9/2021 | EB | review filings from today, primarily alaska intervention | 0.6 | 0.6 |
| 3/10/2021 | EB | calls w/ BAK re: intervention and next steps | 0.2 | 0.2 |
| 3/10/2021 | EB | email corr. w/ o/c re: conferral on m-expedite | 0.4 | 0.4 |
| 3/10/2021 | EB | draft and edit renewed m-expedite | 1.9 | 1.9 |
| 3/10/2021 | EB | email corr. w/ c/c re: intervention | 0.1 | 0.1 |
| 3/11/2021 | EB | email corr. w/ c/c re: intervention | 0.1 | 0.1 |
| 3/11/2021 | EB | email corr. w/ c/c re: alaska decl. and whether lacy decl needs additional work | 0.1 | 0.1 |
| 3/12/2021 | EB | read new ESA ITS/mitigation/jeopardy case and consider applicability | 0.2 | 0.2 |
| 3/12/2021 | EB | email to o/c re: conferral on m-expedite | 0.1 | 0.1 |
| 3/12/2021 | EB | edit m-expedite conferral section | 0.3 | 0.3 |
| 3/12/2021 | EB | call w/ BAK re: m-expedite | 0.1 | 0.1 |
| 3/12/2021 | EB | begin drafting response to intervention | 0.5 | 0.5 |
| 3/15/2021 | EB | continue draft response to intervention -- outline arguments and read motion more closely and collect examples of conditions | 3.2 | 3.2 |
| 3/16/2021 | EB | email to o/c re: recap of conferral timeline and next steps for conferral | 0.2 | 0.2 |
| 3/16/2021 | EB | review email from o/c re: conferral and update and finish draft of m-expedite | 0.4 | 0.4 |

| | | | | |
|---|---|---|---|---|
| 3/16/2021 | EB | discuss m-expedite w/ BAK | 0.1 | 0.1 |
| 3/16/2021 | EB | review and accept BAK edits on m-expedite and circulate to c/c | 0.2 | 0.2 |
| 3/16/2021 | EB | continue working on draft of m-intervene response -- outline terms, LR re: intervention terms, and begin filling in outline of motion | 2.7 | 2.7 |
| 3/16/2021 | EB | discuss m-intervene response and SJ w/ BAK | 0.3 | 0.3 |
| 3/17/2021 | EB | review edits from c/c re: m-expedite | 0.1 | 0.1 |
| 3/18/2021 | EB | continue working on m-intervene LR | 0.3 | 0.3 |
| 3/18/2021 | EB | review c/c edits, make last minute edits, and finalize m-expedite and p-order | 1 | 1 |
| 3/18/2021 | EB | file m-expedite, review LRs re: noting (prompted by filing screen) | 0.2 | 0.2 |
| 3/18/2021 | EB | review LRs re: p-order, discuss w/ BAK, and email word copy to court | 0.3 | 0.3 |
| 3/19/2021 | EB | edit response to intervention | 1.3 | 1.3 |
| 3/22/2021 | EB | finish draft of response to intervention w/ track change edits re: schedule and page limits; circulate to BAK | 1.2 | 1.2 |
| 3/22/2021 | EB | calls w/ BAK to discuss response to intervention | 0.3 | 0.3 |
| 3/22/2021 | EB | incorporate BAK edits to brief and make a few more edits | 0.2 | 0.2 |
| 3/22/2021 | EB | calls w/ JD re: helping me cite check and finalize brief | 0.6 | 0.6 |
| 3/22/2021 | EB | prepare proposed order | 0.3 | 0.3 |
| 3/22/2021 | EB | review and incorporate BAK edits to p-order | 0.2 | 0.2 |
| 3/22/2021 | EB | circulate draft to c/c for edits | 0.1 | 0.1 |
| 3/22/2021 | EB | review JD edits and incorporate to finalize brief | 0.2 | 0.2 |
| 3/22/2021 | EB | review finalized brief and proposed order, prepare for filing, and file | 0.3 | 0.3 |
| 3/22/2021 | EB | circulate proposed order to clerk | 0.1 | 0.1 |
| 3/24/2021 | EB | quick review of responses on m-expedite | 0.1 | 0.1 |
| 3/24/2021 | EB | discuss responses to m-expedite w/ BAK | 0.1 | 0.1 |
| 3/25/2021 | EB | draft reply iso m-expedite | 2.3 | 2.3 |
| 3/25/2021 | EB | call w/ BAK re: reply iso m-expedite, strategy, and possible edits to draft | 0.2 | 0.2 |
| 3/25/2021 | EB | edit reply draft (significantly shorten) and circulate to BAK for review | 0.3 | 0.3 |
| 3/26/2021 | EB | call w/ BAK to discuss reply iso m-expedite | 0.1 | 0.1 |
| 3/26/2021 | EB | review and accept edits on reply; proofread and finalize for filing | 0.5 | 0.5 |
| 3/26/2021 | EB | file reply | 0.2 | 0.2 |
| 3/31/2021 | EB | review order from court on m-expedite and consider MSA issues | 0.2 | 0.2 |
| 3/31/2021 | EB | quick skim of AK answer | 0.3 | 0.3 |
| 3/31/2021 | EB | corr. w/ c/c re: SJ brief strategy and space limits | 0.1 | 0.1 |
| 3/31/2021 | EB | discuss SJ brief strategy w/ BAK | 0.1 | 0.1 |

| 3/31/2021 | EB | email corr. And discussions w/ BAK re: new organizational standing case and impacts on our arguments | 0.2 | 0.2 |
|---|---|---|---|---|
| 4/2/2021 | EB | call w/ BAK re: strategy for motion for summary judgment | 0.2 | 0.2 |
| 4/2/2021 | EB | review intro to SJ draft and discuss that and SJ strategy w/ BAK | 0.2 | 0.2 |
| 4/13/2021 | EB | call w/ BAK re: SJ brief and next steps | 0.1 | 0.1 |
| 4/19/2021 | EB | call w/ c/c re: strategy and timing for finishing all SJ work | 0.4 | 0.4 |
| 4/19/2021 | EB | call w/ BAK re: next steps for finalizing brief | 0.2 | 0.2 |
| 4/22/2021 | EB | begin close edit of motion for SJ | 2.9 | 2.9 |
| 4/23/2021 | EB | discuss brief and arguments w/ BAK | 0.5 | 0.5 |
| 4/23/2021 | EB | continue editing brief | 0.9 | 0.9 |
| 4/23/2021 | EB | LR re: NEPA regs old and new | 0.7 | 0.7 |
| 4/26/2021 | EB | finish close edit of MSJ and send to BAK for review | 2.8 | 2.8 |
| 4/26/2021 | EB | call w/ BAK re: declarations issues | 0.2 | 0.2 |
| 4/27/2021 | EB | begin cite checking brief | 2.4 | 2.4 |
| 4/28/2021 | EB | conferral w/ o/c re: m-sj | 0.3 | 0.3 |
| 4/28/2021 | EB | call w/ BAK re: m-sj | 0.2 | 0.2 |
| 4/28/2021 | EB | continue cite checking brief | 1.8 | 1.8 |
| 5/3/2021 | EB | call w/ BAK re: m-SJ next steps | 0.1 | 0.1 |
| 5/3/2021 | EB | continue cite checking and making additional edits/comments on brief | 3.3 | 3.3 |
| 5/4/2021 | EB | call w/ BAK re: next steps for SJ brief and strategy/outstanding issues | 0.4 | 0.4 |
| 5/4/2021 | EB | continue cite checking and editing/commenting on brief | 5.4 | 5.4 |
| 5/4/2021 | EB | begin preparing tables | 0.8 | 0 |
| 5/4/2021 | EB | corr. w/ o/c re: position on motion | 0.1 | 0.1 |
| 5/5/2021 | EB | many calls w/ BAK re: next steps to finalize brief | 1.4 | 1.4 |
| 5/5/2021 | EB | continue preparing tables and editing brief | 1.9 | 1 |
| 5/5/2021 | EB | finalize tables | 1.4 | 0 |
| 5/5/2021 | EB | draft proposed order | 1 | 1 |
| 5/5/2021 | EB | review, edit, and finalize proposed order | 0.3 | 0.3 |
| 5/5/2021 | EB | call court and leave message re: courtesy copies | 0.1 | 0.1 |
| 5/5/2021 | EB | review filed docs and email corr. w/ client and c/c and possible amicus | 0.2 | 0.2 |
| 5/19/2021 | EB | corr. w/ o/c and c/c re: conferrals | 0.1 | 0.1 |
| 5/20/2021 | EB | conferral call w/ o/c | 0.5 | 0.5 |
| 5/20/2021 | EB | calls w/ BAK re: reply timeframe and arguments | 0.2 | 0.2 |
| 5/20/2021 | EB | call w/ JD re: adequacy of complaint and conferral discussion | 0.8 | 0.8 |
| 5/20/2021 | EB | call w/ BAK re: conferral email | 0.3 | 0.3 |
| 5/20/2021 | EB | call w/ JD re: adequacy of complaint arguments | 0.5 | 0.5 |
| 5/20/2021 | EB | draft outline for reply brief | 0.6 | 0.6 |
| 5/20/2021 | EB | begin researching standing arguments | 1.9 | 1.9 |
| 5/20/2021 | EB | draft email to o/c on conferral | 0.7 | 0.7 |

| | | | | |
|---|---|---|---|---|
| 5/21/2021 | EB | research possible standing arguments, focusing on causation and scientific certainty | 2.8 | 2.8 |
| 5/21/2021 | EB | research reasonable concerns sufficiency for injury and how that relates to causation and redressability | 2.1 | 2.1 |
| 5/24/2021 | EB | firm call re: expected work allocations and case strategy | 0.2 | 0.2 |
| 5/24/2021 | EB | call w/ PAK re: standing arguments and previous briefing on causation | 0.4 | 0.4 |
| 5/24/2021 | EB | call w/ BAK re: next steps for briefing | 0.3 | 0.3 |
| 5/24/2021 | EB | continue standing research--locate previous briefing on scientific certainty issue and review court order re: same | 2.2 | 2.2 |
| 5/24/2021 | EB | standing research -- begin looking at link in chain/no need to redress everything case law | 1.3 | 1.3 |
| 5/25/2021 | EB | calls w/ BAK re: conferrals and briefing limitations | 0.4 | 0.4 |
| 5/25/2021 | EB | call w/ o/c re: continued conferral on standing | 0.1 | 0.1 |
| 5/25/2021 | EB | call w/ JD to discussing pleading standards | 0.2 | 0.2 |
| 5/25/2021 | EB | call w/ BAK re: strategy for reply brief | 0.2 | 0.2 |
| 5/25/2021 | EB | continue LR on standing, particularly procedural injury | 1.5 | 1.5 |
| 5/26/2021 | EB | call w/ BAK re: strategy discussion of reply brief | 0.3 | 0.3 |
| 5/26/2021 | EB | continue standing research re: procedural injury | 2.6 | 2.6 |
| 5/26/2021 | EB | edit draft knutsen decl. | 0.5 | 0.5 |
| 5/26/2021 | EB | skim ATA brief (.3) and discuss same w/ BAK (.3) | 0.6 | 0.6 |
| 5/26/2021 | EB | skim AK brief and fed brief (.4); download and print briefs (.4) | 0.8 | 0.8 |
| 5/27/2021 | EB | closer reading of ATA brief (.7); read fed brief re: standing and look for any related issues (.4) | 1.1 | 1.1 |
| 5/30/2021 | EB | reread standing arguments from ATA and feds and begin to outline arguments | 1.3 | 1.3 |
| 5/30/2021 | EB | LR re: WEC v. Bellon and related cases | 2.3 | 2.3 |
| 5/30/2021 | EB | LR re: procedural injury standing | 1.9 | 1.9 |
| 5/30/2021 | EB | begin writing standing argument re: our claims and procedural injuries | 1 | 1 |
| 5/31/2021 | EB | continue LR on causation issues | 2.5 | 2.5 |
| 5/31/2021 | EB | continue LR on redressability issues | 1.4 | 1.4 |
| 5/31/2021 | EB | further outline arguments and continue drafting procedural injury arguments | 3.6 | 3.6 |
| 6/1/2021 | EB | call w/ BAK re: reply brief strategy and arguments | 0.4 | 0.4 |
| 6/1/2021 | EB | call w/ JD re: standing research project for reply | 0.4 | 0.4 |
| 6/1/2021 | EB | continue working on standing argument | 1 | 1 |
| 6/1/2021 | EB | begin working on vacatur argument and read related points of defs. Briefing | 2.5 | 2.5 |
| 6/2/2021 | EB | call w/ BAK re: briefing next steps | 0.1 | 0.1 |

| 6/2/2021 | EB | call w/ c/c re: briefing strategy and assignment of work | 0.4 | 0.4 |
|---|---|---|---|---|
| 6/2/2021 | EB | finish draft of procedural standing argument | 0.9 | 0.9 |
| 6/2/2021 | EB | draft traditional standing argument | 2.9 | 2.9 |
| 6/2/2021 | EB | draft rebuttal to ATA argument | 3.4 | 3.4 |
| 6/2/2021 | EB | draft rebuttal to NMFS argument | 0.9 | 0.9 |
| 6/2/2021 | EB | edit standing argument for flow and clarity | 1 | 1 |
| 6/3/2021 | EB | call w/ BAK re: vacatur strategy and arguments | 0.2 | 0.2 |
| 6/3/2021 | EB | call w/ Nick, and c/c re: Purcell and Barre declaration and whether we need additional declarations or to move to strike | 0.5 | 0.5 |
| 6/3/2021 | EB | call w/ BAK re: timing, strategy, and next steps for brief | 0.5 | 0.5 |
| 6/3/2021 | EB | begin outlining and drafting vacatur arguments | 2.5 | 2.5 |
| 6/3/2021 | EB | LR re: vacatur cases and burden | 1.4 | 1.4 |
| 6/4/2021 | EB | strategy call w/ BAK re: brief | 0.5 | 0.5 |
| 6/4/2021 | EB | call w/ BAK re: economic impacts strategy discussion | 1 | 1 |
| 6/4/2021 | EB | call w/ BAK re: scope of ITS | 0.4 | 0.4 |
| 6/4/2021 | EB | draft vacatur section re: harm from fisheries | 1.7 | 1.7 |
| 6/4/2021 | EB | draft vacatur section re: harm from hatcheries | 1.5 | 1.5 |
| 6/4/2021 | EB | draft vacatur section re: economic impacts | 3.9 | 3.9 |
| 6/4/2021 | EB | call w/ JD re: standing research | 0.2 | 0.2 |
| 6/5/2021 | EB | continue drafting vacatur section - research and respond to cases they cited | 1.3 | 1.3 |
| 6/6/2021 | EB | edit and finish draft of vacatur section | 3.9 | 3.9 |
| 6/6/2021 | EB | review JD standing research on predator/prey and related LR | 0.9 | 0.9 |
| 6/6/2021 | EB | edit and finish draft of standing section | 2.3 | 2.3 |
| 6/6/2021 | EB | call w/ BAK re: next steps and strategy for reply brief | 0.2 | 0.2 |
| 6/7/2021 | EB | review briefing on ITS coextensive argument and draft reply argument | 0.8 | 0.8 |
| 6/7/2021 | EB | skim NEPA standing case from JD and consider whether to cite | 0.2 | 0.2 |
| 6/7/2021 | EB | calls w/ BAK re: next steps for reply | 0.4 | 0.4 |
| 6/7/2021 | EB | prepare knutsen decl. | 0.7 | 0.7 |
| 6/7/2021 | EB | prepare knutsen decl. exhibits | 1.3 | 1.3 |
| 6/7/2021 | EB | email corr. w/ c/c re: expert decl. and rebuttal text for brief | 0.2 | 0.2 |
| 6/7/2021 | EB | additional standing LR re: redressability for each form of relief requested | 1.3 | 1.3 |
| 6/7/2021 | EB | review new ESA, NEPA standing cases to see if relevant | 0.3 | 0.3 |
| 6/8/2021 | EB | calls w/ BAK re: finding support for terminal fisheries in BiOp project | 0.5 | 0.5 |
| 6/8/2021 | EB | call w/ BAK re: cutting from brief | 0.1 | 0.1 |
| 6/8/2021 | EB | calls w/ BAK re: various brief issues | 0.5 | 0.5 |

| 6/8/2021 | EB | record and factual research re: fishery descriptions and PST limits for different fishery types | 2.5 | 2.5 |
|---|---|---|---|---|
| 6/8/2021 | EB | create excerpts of McMillan decl | 0.3 | 0.3 |
| 6/8/2021 | EB | create brief exhibits | 0.3 | 0.3 |
| 6/8/2021 | EB | review and annotate nmfs brief exhibit | 0.5 | 0.5 |
| 6/8/2021 | EB | discuss vacatur argument w/ BAK | 0.3 | 0.3 |
| 6/8/2021 | EB | calls w/ BAK re: cutting brief | 0.4 | 0.4 |
| 6/8/2021 | EB | draft daubert argument and LR re: same | 1.9 | 1.9 |
| 6/8/2021 | EB | call w/ BAK re: brief strategy, timing, and next steps | 0.3 | 0.3 |
| 6/8/2021 | EB | begin cite checking brief | 2.6 | 2.6 |
| 6/9/2021 | EB | continue cite checking and editing brief | 6.1 | 6.1 |
| 6/9/2021 | EB | many calls w/ BAK re: next steps and strategy for finalizing brief | 1.3 | 1.3 |
| 6/9/2021 | EB | call w/ JD re: helping w/ brief edits | 0.1 | 0.1 |
| 6/9/2021 | EB | prepare tables for brief | 1.6 | 0 |
| 6/9/2021 | EB | final read through and last minute edits to brief, including LR and adding in standing case | 1.4 | 1.4 |
| 6/9/2021 | EB | finalize brief and email to BAK for filing | 0.2 | 0.2 |
| 6/10/2021 | EB | call w/ JD re: filing and recap of arguments | 0.1 | 0.1 |
| 6/10/2021 | EB | call w/ BAK re: reply brief and argument | 0.2 | 0.2 |
| 6/10/2021 | EB | skim filed brief and consider oral argument | 0.7 | 0.7 |
| 6/16/2021 | EB | quick skim of NMFS' brief for new evidence | 0.2 | 0.2 |
| 6/16/2021 | EB | read Alaska's reply (.6), and discuss w/ BAK (.2), and look up various evidence they cited (.1) | 0.9 | 0.9 |
| 6/16/2021 | EB | quick read of ATA's reply (.5) and discuss w/ BAK (.1) | 0.6 | 0.6 |
| 6/17/2021 | EB | read all briefs, consider need for surreply, and discuss strategy, arguments, etc. w/ BAK | 1.7 | 1.7 |
| 6/21/2021 | EB | quick skim of standing injury line of cases discussed at firm meeting and consider for oral argument | 0.4 | 0.4 |
| 6/24/2021 | EB | read new procedural injury standing case and do related LR re: same | 0.8 | 0.8 |
| 6/24/2021 | EB | watch standing oral argument in preparation for oral argument | 0.6 | 0.6 |
| 6/28/2021 | EB | LR re: third party standing versus additional influences standing and preparation for oral argument | 2.1 | 2.1 |
| 6/28/2021 | EB | LR re: vacatur and preparation for oral argument | 0.9 | 0.9 |
| 6/28/2021 | EB | lengthy discussion w/ BAK re: oral argument strategy | 0.9 | 0.9 |
| 7/2/2021 | EB | call w/ JD re: oral argument | 0.2 | 0.2 |
| 7/2/2021 | EB | LR re: standing per claim versus violation | 2.4 | 2.4 |
| 7/6/2021 | EB | strategy discussion w/ BAK re: oral argument | 0.7 | 0.7 |
| 7/6/2021 | EB | call w/ PAK re: standing strategy and discussions | 0.7 | 0.7 |

| 7/7/2021 | EB | LR re: standing - claim for relief/species interests | 1.7 | 1.7 |
|---|---|---|---|---|
| 7/8/2021 | EB | email corr. and discussions w/ BAK re: oral argument (.1); email corr. w/ o/c and court re: same (.1) | 0.2 | 0.2 |
| 7/8/2021 | EB | discussions w/ BAK re: oral argument strategy | 0.6 | 0.6 |
| 7/8/2021 | EB | continue oral argument prep on standing | 2.1 | 2.1 |
| 7/9/2021 | EB | continue preparing for oral argument - LR and begin outlining argument | 1.5 | 1.5 |
| 7/9/2021 | EB | read new standing case | 0.6 | 0.6 |
| 7/12/2021 | EB | prep for oral argument-listen to oral arguments on standing and related LR | 1.5 | 1.5 |
| 7/13/2021 | EB | finish listening to oral argument on standing and related LR | 0.5 | 0.5 |
| 7/13/2021 | EB | continue prep for oral argument - LR re: new supreme court standing case | 1.9 | 1.9 |
| 7/14/2021 | EB | begin re-reading reply briefs and taking notes on points to respond to | 0.8 | 0.8 |
| 7/15/2021 | EB | quick review of docket filings from today | 0.1 | 0.1 |
| 7/15/2021 | EB | continue review of reply briefs and taking notes on points to respond to | 1 | 1 |
| 7/15/2021 | EB | watch 9th circuit standing case as example | 0.7 | 0.7 |
| 7/15/2021 | EB | LR based on reply standing arguments - review cases cited and consider multiple sources response | 1.2 | 1.2 |
| 7/15/2021 | EB | LR re: claims versus relief and relation to standing | 2.6 | 2.6 |
| 7/19/2021 | EB | discuss oral argument strategy w/ c/c | 0.2 | 0.2 |
| 7/19/2021 | EB | LR re: new 9th circuit nepa standing case | 0.6 | 0.6 |
| 7/19/2021 | EB | begin creating outline for oral argument | 1.4 | 1.4 |
| 7/19/2021 | EB | finish claims research | 1.6 | 1.6 |
| 7/20/2021 | EB | discuss argument strategy w/ BAK | 0.3 | 0.3 |
| 7/20/2021 | EB | prepare outline for organizational standing argument and related LR | 2.3 | 2.3 |
| 7/20/2021 | EB | begin reviewing cases and preparing outline for cases | 3.5 | 3.5 |
| 7/21/2021 | EB | continue oral argument prep - work on response to feds' reply | 3.5 | 3.5 |
| 7/22/2021 | EB | discuss vacatur argument w/ BAK | 0.2 | 0.2 |
| 7/22/2021 | EB | oral argument prep - review dr. lacy's reports and discuss w/ BAK | 0.8 | 0.8 |
| 7/22/2021 | EB | discuss argument strategy w/ BAK | 0.3 | 0.3 |
| 7/22/2021 | EB | discuss salmon spawning and standing w/ BAK | 0.4 | 0.4 |
| 7/22/2021 | EB | oral argumetn prep - procedural injury standing argument | 3.1 | 3.1 |
| 7/22/2021 | EB | oral argumetn prep - continue reviewing docket and biop and taking notes for argument | 3.6 | 3.6 |
| 7/23/2021 | EB | oral argument prep - causation - continue reviewing evidence and creating summaries of points and outline | 5.2 | 5.2 |

| Date | Initials | Description | Hours | Hours |
|---|---|---|---|---|
| 7/23/2021 | EB | oral argument prep - redressability | 1.3 | 1.3 |
| 7/24/2021 | EB | oral argument prep - redressability | 2.2 | 2.2 |
| 7/24/2021 | EB | oral argument prep - work on answers to possible questions | 1 | 1 |
| 7/24/2021 | EB | oral argument prep - begin rehearsing argument | 0.8 | 0.8 |
| 7/24/2021 | EB | oral argument prep - case summaries | 1.5 | 1.5 |
| 7/25/2021 | EB | continue oral argument prep - case summaries | 1.5 | 1.5 |
| 7/25/2021 | EB | continue practicing oral argument | 1 | 1 |
| 7/26/2021 | EB | oral argument prep - continue practicing oral argument | 3.5 | 3.5 |
| 7/26/2021 | EB | moot w/ BAK | 0.8 | 0.8 |
| 7/26/2021 | EB | discuss oral argument strategy w/ BAK | 0.9 | 0.9 |
| 7/26/2021 | EB | revise outline | 1 | 1 |
| 7/26/2021 | EB | prepare materials for oral argument | 0.6 | 0.6 |
| 7/26/2021 | EB | continue practicing oral argument | 2.2 | 2.2 |
| 7/26/2021 | EB | last minute standing research | 0.7 | 0.7 |
| 7/27/2021 | EB | final oral argument prep | 2.8 | 2.8 |
| 7/27/2021 | EB | attend oral argument | 2.3 | 2.3 |
| 7/27/2021 | EB | debrief calls w/ client and c/c | 0.5 | 0.5 |
| 7/27/2021 | EB | discuss argument w/ BAK | 0.3 | 0.3 |
| 7/27/2021 | EB | debrief and take notes in file | 0.5 | 0.5 |
| 7/28/2021 | EB | discuss argument and PEIS issue w/ BAK | 0.3 | 0.3 |
| 7/28/2021 | EB | calls w/ BAK re: supplemental NEPA brief | 0.1 | 0.1 |
| 7/28/2021 | EB | call w/ JD re: supplemental NEPA research | 0.4 | 0.4 |
| 7/29/2021 | EB | call w/ JD re: status of research | 0.2 | 0.2 |
| 7/29/2021 | EB | begin drafting supplemental NEPA brief | 2.3 | 2.3 |
| 7/30/2021 | EB | continue drafting supplemental NEPA brief | 2.5 | 2.5 |
| 7/30/2021 | EB | call w/ WFC emma h. re: thoughts on oral argument | 0.2 | 0.2 |
| 8/2/2021 | EB | calls w/ JD re: her LR on agency change in position | 1.2 | 1.2 |
| 8/2/2021 | EB | continue working on draft of supplemental brief | 3.3 | 3.3 |
| 8/4/2021 | EB | call w/ JD re: discussing LR and arguments in brief | 0.5 | 0.5 |
| 8/4/2021 | EB | LR re: NEPA and APA standards for changing position and email to BAK re: same | 1.8 | 1.8 |
| 8/5/2021 | EB | LR re: NEPA and APA standards for changing position | 1.2 | 1.2 |
| 8/5/2021 | EB | read through and edit brief | 1.1 | 1.1 |
| 8/6/2021 | EB | cite check and close edit of brief | 1.8 | 1.8 |
| 8/6/2021 | EB | read feds brief and discuss w/ BAK | 0.4 | 0.4 |
| 8/6/2021 | EB | read AK and trollers' briefs | 0.1 | 0.1 |
| 8/6/2021 | EB | finalize and file our brief | 0.2 | 0.2 |
| 8/6/2021 | EB | email to client re: filed briefs | 0.2 | 0.2 |
| 8/9/2021 | EB | discuss supplemental briefs w/ BAK | 0.3 | 0.3 |
| 8/26/2021 | EB | discussions w/ BAK re: new standing and change in position case; read new case and consider need for n-supp. authority | 0.6 | 0.6 |
| 9/27/2021 | EB | quick skim of r&rs; call w/ jd re: same | 0.4 | 0.4 |
| 9/28/2021 | EB | discuss r&rs w/ c/c | 0.4 | 0.4 |

| 9/28/2021 | EB | discuss r&rs w/ client and c/c | 0.4 | 0.4 |
| 9/28/2021 | EB | discuss need for objections w/ BAK (.3) and look up magistrate/objections process (.3) | 0.6 | 0.6 |
| 9/29/2021 | EB | discuss objections strategy w/ BAK | 0.3 | 0.3 |
| 9/30/2021 | EB | begin closer read of r&rs | 0.5 | 0.5 |
| 10/4/2021 | EB | discuss objections w/ BAK | 0.1 | 0.1 |
| 10/4/2021 | EB | call w/ c/c re: objections and strategy | 0.2 | 0.2 |
| 10/5/2021 | EB | quick research into vacatur issue for objections and discussions w/ BAK re: same and re: objections generally | 0.4 | 0.4 |
| 10/6/2021 | EB | email corr. w/ c/c re: objections | 0.2 | 0.2 |
| 10/7/2021 | EB | call w/ BAK re: objections strategy and edits | 0.2 | 0.2 |
| 10/7/2021 | EB | continue reading and editing objections | 0.8 | 0.8 |
| 10/8/2021 | EB | cite check and edit objections F&R | 2.6 | 2.6 |
| 10/14/2021 | EB | call w/ PAK re: standing argument strategy | 0.4 | 0.4 |
| 10/14/2021 | EB | discuss standing argument w/ BAK | 0.3 | 0.3 |
| 10/14/2021 | EB | close read of all objections | 2.3 | 2.3 |
| 10/14/2021 | EB | begin to outline standing argument and LR re: same | 2.4 | 2.4 |
| 10/15/2021 | EB | read new w.d. wash. standing case law and discuss w/ BAK | 0.4 | 0.4 |
| 10/15/2021 | EB | call w/ client re: objections process | 0.1 | 0.1 |
| 10/15/2021 | EB | begin drafting procedural injury standing argument | 3.2 | 3.2 |
| 10/15/2021 | EB | re-read magistrate R&Rs re: standing | 0.6 | 0.6 |
| 10/15/2021 | EB | organize thoughts and outline for standing argument and review reply brief | 1.3 | 1.3 |
| 10/18/2021 | EB | continue drafting standing argument - substantive ESA claim | 3.5 | 3.5 |
| 10/19/2021 | EB | continue drafting standing argument - identifying and responding to ATA arguments | 2.6 | 2.6 |
| 10/19/2021 | EB | continue responding to ATA and AK arguments on standing | 2.4 | 2.4 |
| 10/20/2021 | EB | continue working on standing argument -- finish draft of substantive standing argument | 3.5 | 3.5 |
| 10/20/2021 | EB | discuss strategy and tone for objection responses w/ BAK | 0.2 | 0.2 |
| 10/20/2021 | EB | begin drafting intro and cleaning up brief | 2.3 | 2.3 |
| 10/21/2021 | EB | review and incorporate MSA argument into brief; clean up to conform w/ brief | 2.3 | 2.3 |
| 10/21/2021 | EB | finish drafting intro to brief | 0.8 | 0.8 |
| 10/21/2021 | EB | edit standing arguments to address all issues and cite all relevant evidence | 3.5 | 3.5 |
| 10/22/2021 | EB | cite check and edit NMFS objection response brief | 6.2 | 6.2 |
| 10/22/2021 | EB | create tables for NMFS objection response brief | 1.3 | 0 |
| 10/22/2021 | EB | discuss standing arguments w/ BAK | 0.4 | 0.4 |
| 10/22/2021 | EB | discuss objection review standard w/ BAK | 0.2 | 0.2 |

| 10/22/2021 | EB | edits standing section to incorporate comments from BAK | 0.4 | 0.4 |
|---|---|---|---|---|
| 10/24/2021 | EB | review and consider BAK edits to standing section | 0.4 | 0.4 |
| 10/24/2021 | EB | create tables for ATA/Alaska objection response | 1.1 | 0 |
| 10/25/2021 | EB | discuss standing arguments and objection response strategy w/ BAK | 0.4 | 0.4 |
| 10/25/2021 | EB | address outstanding issues in standing argument | 0.7 | 0.7 |
| 10/25/2021 | EB | cite check and edit intervenor brief | 4.9 | 4.9 |
| 10/25/2021 | EB | finalize tables for intervenor brief | 0.4 | 0 |
| 10/25/2021 | EB | finalize and file brief | 0.3 | 0.3 |
| 10/26/2021 | EB | close read and final edit of NMFS objection response | 3.6 | 3.6 |
| 10/26/2021 | EB | finalize tables for NMFS objection response | 0.5 | 0 |
| 10/26/2021 | EB | read NMFS's response to objections | 0.5 | 0.5 |
| 11/1/2021 | EB | call w/ client re: case status and remedy strategy | 0.2 | 0.2 |
| 11/3/2021 | EB | discuss w/ BAK possible information needs for remedy briefing | 0.2 | 0.2 |
| 11/3/2021 | EB | factual research re: NOAA reporting and obligations on prey increase program to aid in remedy briefing | 0.9 | 0.9 |
| 11/3/2021 | EB | draft request for copies of reporting on prey increase program from NOAA | 1 | 1 |
| | | **EB 2021 Hours:** | **367.6** | **359.6** |
| 1/4/2022 | EB | call w/ c/c re: remedy and expert work and possible TRO | 0.1 | 0.1 |
| 1/13/2022 | EB | call w/ client re: experts for remedy | 0.2 | 0.2 |
| 1/13/2022 | EB | discussions w/ BAK and email corr. w/ NMFS re: annual reports prepared under the BiOp | 0.3 | 0.3 |
| 2/2/2022 | EB | discuss remedy strategies w/ BAK | 0.2 | 0.2 |
| 2/4/2022 | EB | discuss remedy strategy w/ BAK | 0.2 | 0.2 |
| 2/9/2022 | EB | review new record from nmfs and discuss w/ BAK (.3); email corr. w/ nmfs re: same (.1) | 0.4 | 0.4 |
| 2/17/2022 | EB | call w/ JD re: injunctive relief research | 0.3 | 0.3 |
| 3/8/2022 | EB | call w/ PAK and BAK re: next steps for remedy brief | 0.1 | 0.1 |
| 3/9/2022 | EB | discuss remedy briefing w/ BAK | 0.2 | 0.2 |
| 3/9/2022 | EB | begin preparing outline for remedy brief and collecting examples re: same | 3.6 | 3.6 |
| 3/18/2022 | EB | prepare template for lacy declaration | 0.5 | 0.5 |
| 3/24/2022 | EB | send Dr. Lacy edits to declaration, and corr. w/ c/c and client re: Lacy declaration | 0.2 | 0.2 |
| 3/30/2022 | EB | research re: magistrate process w/ TROs/PIs | 0.3 | 0.3 |
| 3/30/2022 | EB | discussions w/ BAK re: strategy and next steps for remedy briefing | 0.2 | 0.2 |
| 3/30/2022 | EB | corr. w/ c/c re: remedy briefing | 0.3 | 0.3 |
| 4/1/2022 | EB | read new case law re: TROs and consider application to case (.3); discuss w/ BAK (.1) | 0.4 | 0.4 |

| 4/1/2022 | EB | skim new cases re: judge's approach to R&Rs (.2); discuss w/ BAK (.2) | 0.4 | 0.4 |
|---|---|---|---|---|
| 4/1/2022 | EB | corr. w/ c/c re: next steps for case mgmt. | 0.1 | 0.1 |
| 4/5/2022 | EB | help BAK w/ issues w/ economic expert report | 0.1 | 0.1 |
| 4/6/2022 | EB | call w/ c/c re: strategy and next steps for remedy briefing | 0.8 | 0.8 |
| 4/6/2022 | EB | discuss possible remedy approaches w/ JD and BAK | 0.2 | 0.2 |
| 4/6/2022 | EB | discuss economics expert report w/ BAK | 0.2 | 0.2 |
| 4/7/2022 | EB | corr. w/ o/c and c/c re: contacting court | 0.1 | 0.1 |
| 4/12/2022 | EB | discuss remedy brief strategy w/ BAK | 0.2 | 0.2 |
| 4/15/2022 | EB | review emails and organize file | 0.1 | 0.1 |
| 4/15/2022 | EB | Call w/ JD re remedy brief | 0.2 | 0.2 |
| 5/16/2022 | EB | call w/ BAK re: next steps for remedy brief | 0.1 | 0.1 |
| 5/16/2022 | EB | call w/ JD re: remedy brief strategy and work distribution | 0.1 | 0.1 |
| 5/16/2022 | EB | LR re: vacatur case law, particularly new case law | 4.2 | 4.2 |
| 5/16/2022 | EB | begin drafting vacatur section | 1.7 | 1.7 |
| 5/17/2022 | EB | continue researching vacatur and edit vacatur section standards | 2.8 | 2.8 |
| 5/17/2022 | EB | begin researching ESA vacatur case law | 2.9 | 2.9 |
| 5/18/2022 | EB | discuss financial expert report w/ BAK | 0.2 | 0.2 |
| 5/18/2022 | EB | continue LR re: ESA vacatur case law | 3.8 | 3.8 |
| 5/18/2022 | EB | begin writing vacatur ESA argument | 2.6 | 2.6 |
| 5/19/2022 | EB | continue LR re: ESA vacatur case law | 4.5 | 4.5 |
| 5/20/2022 | EB | discuss hatchery production records and possible injunctive relief w/ BAK | 0.3 | 0.3 |
| 5/20/2022 | EB | continue vacatur/ESA research | 5.3 | 5.3 |
| 5/24/2022 | EB | update list of things to do for case management | 0.1 | 0.1 |
| 5/24/2022 | EB | continue reviewing docket, expert opinions, and evidence re: vacatur and ESA impacts | 3.8 | 3.8 |
| 5/25/2022 | EB | continue working on vacatur argument -- additional legal research and add in more to the vacatur standards section | 5.7 | 5.7 |
| 5/26/2022 | EB | discuss expert report and making economic chart clearer w/ BAK | 0.4 | 0.4 |
| 5/26/2022 | EB | continue working on vacatur argument -- additional ESA legal research | 4.3 | 4.3 |
| 5/27/2022 | EB | LR re: new ESA relief cases from this week | 0.6 | 0.6 |
| 5/27/2022 | EB | LR re: recent briefing from practictioners on vacatur | 2.3 | 2.3 |
| 5/27/2022 | EB | LR re: recent ESA vacatur case law | 1.9 | 1.9 |
| 5/31/2022 | EB | begin inventoring legal research and creating ESA vacatur case chart | 5.5 | 5.5 |
| 5/31/2022 | EB | continue reviewing recent briefing from practitioners | 1 | 1 |
| 6/1/2022 | EB | continue creating ESA vacatur case chart | 5.2 | 5.2 |
| 6/1/2022 | EB | additional LR for ESA vacatur case chart | 1.5 | 1.5 |
| 6/2/2022 | EB | continue working on ESA vacatur case chart | 5.5 | 5.5 |

| 6/3/2022 | EB | continue working on case chart | 2.4 | 2.4 |
|---|---|---|---|---|
| 6/6/2022 | EB | finish ESA case chart on vacatur | 5.8 | 5.8 |
| 6/7/2022 | EB | read new 9th circuit ESA case and consider relevance to vacatur argument | 1.1 | 1.1 |
| 6/7/2022 | EB | cross check ESA vacatur case chart with notes to evaluate need for additional cases to include | 0.6 | 0.6 |
| 6/7/2022 | EB | continue drafting ESA vacatur argument re: ESA purpose | 1.6 | 1.6 |
| 6/7/2022 | EB | continue drafting ESA vacatur argument re: seriousness | 3.1 | 3.1 |
| 6/8/2022 | EB | continue drafting ESA vacatur section re: disruptive consequences | 4.7 | 4.7 |
| 6/8/2022 | EB | begin editing ESA vacatur section | 1.1 | 1.1 |
| 6/10/2022 | EB | call w/ client re: status of lawsuit and expert reports | 0.1 | 0.1 |
| 6/15/2022 | EB | edit vacatur argument of brief | 3.7 | 3.7 |
| 6/16/2022 | EB | continue editing vacatur argument draft | 1.3 | 1.3 |
| 6/17/2022 | EB | corr. w/ client re: alaska hatchery issues and relation to case | 0.2 | 0.2 |
| 6/21/2022 | EB | LR re: new vacatur cases, particularly new 9th cir. case, and need to incorporate into brief | 3.3 | 3.3 |
| 6/22/2022 | EB | continue evaluating new vacatur case and discuss w/ BAK | 0.5 | 0.5 |
| 6/22/2022 | EB | review new expert reports | 1.6 | 1.6 |
| 6/22/2022 | EB | incorporate expert cites into brief | 0.3 | 0.3 |
| 6/22/2022 | EB | edit draft vacatur ESA argument | 1.5 | 1.5 |
| 6/22/2022 | EB | edit draft vacatur standards section | 0.6 | 0.6 |
| 6/24/2022 | EB | read new ESA injunction case and consider relevance | 0.3 | 0.3 |
| 6/24/2022 | EB | continue editing vacatur argument of remedy brief | 0.9 | 0.9 |
| 6/27/2022 | EB | incorporate edits into brief | 1 | 1 |
| 6/28/2022 | EB | read new ESA injunction case and consider relevance | 0.2 | 0.2 |
| 7/1/2022 | EB | read new NEPA vacatur case and flag for NEPA remedy argument | 0.5 | 0.5 |
| 7/6/2022 | EB | download and review filing | 0.1 | 0.1 |
| 7/6/2022 | EB | begin combining drafts into SEAK brief and identifying outstanding parts of brief to work on | 1.1 | 1.1 |
| 7/6/2022 | EB | LR re: TROs, preliminary and permanent injunction stds. | 0.4 | 0.4 |
| 7/7/2022 | EB | continue LR on injunctive relief stds. | 3.9 | 3.9 |
| 7/8/2022 | EB | continue LR on injunctive relief stds. (1.6) and write up section of brief re: same (3.3) | 4.9 | 4.9 |
| 7/11/2022 | EB | finish drafting injunctive relief stds section of brief; resolve outstanding LR issues | 2.5 | 2.5 |
| 7/13/2022 | EB | corr. w/ client re: status of fishing season | 0.2 | 0.2 |
| 7/15/2022 | EB | read new ESA vacatur case and consider relevance to remedy brief (.4); discuss w/ BAK (.1) | 0.5 | 0.5 |

**FIFTH KNUTSEN DECLARATION - 197**
**Case No. 2:20-cv-00417-RAJ-MLP**

| Date | Initials | Description | | |
|------|------|------|------|------|
| 7/19/2022 | EB | call w/ WFC re: case update and next steps | 0.2 | 0.2 |
| 7/22/2022 | EB | quick read of new esa case for relevance | 0.3 | 0.3 |
| 7/29/2022 | EB | review opinion in other ESA salmon BiOp case in WA for relevance | 0.5 | 0.5 |
| 7/29/2022 | EB | research FRCP 25(d), and edit motion for injunctive relief re: same | 0.7 | 0.7 |
| 8/3/2022 | EB | discuss relief strategy w/ BAK | 0.1 | 0.1 |
| 8/4/2022 | EB | calls w/ WFC re: discussing litigation in relation to other west coast fisheries and hatcheries | 0.6 | 0.6 |
| 8/8/2022 | EB | call w/ PAK re: order from judge jones on magistrate's r&rs | 0.1 | 0.1 |
| 8/9/2022 | EB | corr. w/ client re: next steps | 0.1 | 0.1 |
| 8/9/2022 | EB | call w/ WFC and c/c re: next steps for remedy | 0.8 | 0.8 |
| 8/9/2022 | EB | discuss remedy strategy w/ BAK | 0.2 | 0.2 |
| 8/10/2022 | EB | call w/ c/c re: strategy and next steps | 0.6 | 0.6 |
| 8/10/2022 | EB | discuss scheduling and conferral obligations w/ BAK (.2); corr. w/ o/c and c/c re: same (.2) | 0.4 | 0.4 |
| 8/11/2022 | EB | discuss remedy and press on liability w/ BAK | 0.6 | 0.6 |
| 8/11/2022 | EB | strategy discussions w/ BAK re: relief to seek | 0.4 | 0.4 |
| 8/12/2022 | EB | read new preliminary injunction ESA case for relevance | 0.2 | 0.2 |
| 8/18/2022 | EB | prepare list of things to do | 0.2 | 0.2 |
| 8/19/2022 | EB | corr. w/ client re: timing and next steps | 0.2 | 0.2 |
| 8/19/2022 | EB | discuss page limit recommendations w/ BAK | 0.1 | 0.1 |
| 8/19/2022 | EB | discuss status conference and strategy and timing for remedy briefing w/ BAK | 0.9 | 0.9 |
| 8/19/2022 | EB | recap status conference and discuss strategy w/ BAK | 0.5 | 0.5 |
| 8/19/2022 | EB | call w/ c/c re: status conference and next steps | 0.2 | 0.2 |
| 8/19/2022 | EB | firm call to discuss status conference and next steps | 0.2 | 0.2 |
| 8/19/2022 | EB | review and file minute order | 0.1 | 0.1 |
| 8/22/2022 | EB | draft beardslee declaration | 1 | 1 |
| 8/22/2022 | EB | discuss strategy for opening brief structure and arguments w/ BAK | 0.3 | 0.3 |
| 8/23/2022 | EB | corr. w/ c/c re: today's conferral | 0.1 | 0.1 |
| 8/23/2022 | EB | prep for conferral (.1); attend conferral (.4); recap conferral w/ c/c (.1) | 0.6 | 0.6 |
| 8/23/2022 | EB | send email to o/c re: conferral recap | 0.2 | 0.2 |
| 8/23/2022 | EB | recap conferral w/ BAK and PAK | 0.1 | 0.1 |
| 8/23/2022 | EB | call w/ WFC re: strategy and next steps for remedy brief | 0.8 | 0.8 |
| 8/23/2022 | EB | draft template for giles declaration | 1.1 | 1.1 |
| 8/23/2022 | EB | discuss case law on vacatur w/ BAK (.7), and related LR (1.1) | 1.8 | 1.8 |
| 8/23/2022 | EB | LR re: remand standards to include in brief | 1.5 | 1.5 |
| 8/26/2022 | EB | review new ESA injunction case for relevance | 0.2 | 0.2 |
| 8/26/2022 | EB | call w/ EH re: giles declaration | 0.2 | 0.2 |
| 8/26/2022 | EB | corr. w/ expert re: scheduling call | 0.1 | 0.1 |
| 8/29/2022 | EB | discuss remedy brief strategy w/ BAK | 0.4 | 0.4 |

| 8/29/2022 | EB | begin editing giles declaration | 0.5 | 0.5 |
| 8/30/2022 | EB | discuss briefing schedule and strategy w/ BAK | 0.2 | 0.2 |
| 8/30/2022 | EB | discuss conferral w/ feds w/ BAK | 0.2 | 0.2 |
| 8/30/2022 | EB | continue editing giles declaration | 2.7 | 2.7 |
| 8/30/2022 | EB | discuss remedy brief strategy and case law w/ BAK | 0.5 | 0.5 |
| 8/31/2022 | EB | prep for call w/ giles and ali re: next steps for declaration | 0.6 | 0.6 |
| 8/31/2022 | EB | call w/ giles and ali re: outstanding questions in declaration | 0.5 | 0.5 |
| 8/31/2022 | EB | corr. w/ client re: remedy strategy (.1); call w/ c/c and client re: same (.7) | 0.8 | 0.8 |
| 8/31/2022 | EB | discuss remedy brief strategy and case law w/ BAK | 0.7 | 0.7 |
| 8/31/2022 | EB | edit giles declaration and send to BAK | 2.6 | 2.6 |
| 8/31/2022 | EB | review and accept BAK edits to Giles declaration and send to Giles | 0.4 | 0.4 |
| 8/31/2022 | EB | corr. w/ o/c re: conferral and briefing stipulations; discuss same w/ BAK | 0.2 | 0.2 |
| 9/1/2022 | EB | draft scheduling motion on remedy briefing | 1.8 | 1.8 |
| 9/1/2022 | EB | corr. w/ expert giles re: timing and next steps | 0.2 | 0.2 |
| 9/1/2022 | EB | LR re: deference issue | 0.7 | 0.7 |
| 9/1/2022 | EB | review edits from expert giles and close read of declaration for final clarifying edits | 1.7 | 1.7 |
| 9/2/2022 | EB | revise remedy stipulated motion on briefing and send around for signature | 0.4 | 0.4 |
| 9/2/2022 | EB | additional revisions and corr. w/ o/c on stipulated motion | 0.2 | 0.2 |
| 9/2/2022 | EB | corr. w/ client re: decl. from a troller on harvesting techniques and availability (.2); discuss same w/ BAK | 0.3 | 0.3 |
| 9/2/2022 | EB | discuss vacatur case law w/ BAK | 0.4 | 0.4 |
| 9/2/2022 | EB | finalize and file stipulated motion (.3); email same to court (.2) | 0.5 | 0.5 |
| 9/2/2022 | EB | LR re: vacatur case law and corr. w/ BAK re: same | 0.4 | 0.4 |
| 9/2/2022 | EB | calendar deadlines and review court order | 0.2 | 0.2 |
| 9/4/2022 | EB | edit giles declaration and re-circulate for signature | 0.5 | 0.5 |
| 9/4/2022 | EB | corr. w/ giles and BAK re: question on SRKW population | 0.8 | 0.8 |
| 9/6/2022 | EB | finalize giles declaration for filing | 0.4 | 0.4 |
| 9/6/2022 | EB | draft standing footnote | 0.3 | 0.3 |
| 9/6/2022 | EB | prepare proposed order | 1.2 | 1.2 |
| 9/6/2022 | EB | create tables | 2.1 | 0 |
| 9/6/2022 | EB | help BAK edit and shorten brief | 1 | 1 |
| 9/6/2022 | EB | discuss brief strategy w/ BAK | 0.6 | 0.6 |
| 9/6/2022 | EB | begin cite checking brief | 2 | 2 |
| 9/7/2022 | EB | continue cite checking brief | 6.9 | 6.9 |
| 9/7/2022 | EB | close read of brief | 1.3 | 1.3 |

| 9/7/2022 | EB | help BAK fix exhibit and get brief filed | 0.7 | 0.7 |
|---|---|---|---|---|
| 9/7/2022 | EB | review filed brief and corr. w/ court and w/ client re: same | 0.2 | 0.2 |
| 9/22/2022 | EB | discuss strategy and reply brief w/ BAK | 0.2 | 0.2 |
| 9/26/2022 | EB | corr. w/ client re: news article on this year's implementation, including current numbers of chinook versus chum harvested | 0.2 | 0.2 |
| 9/29/2022 | EB | call w/ PAK and BAK re: case mgmt. and workload over next couple weeks for remedy briefing | 0.1 | 0.1 |
| 9/29/2022 | EB | corr. w/ client and discussion w/ BAK re: current SRKW population | 0.1 | 0.1 |
| 10/3/2022 | EB | discuss reply brief w/ BAK | 0.1 | 0.1 |
| 10/3/2022 | EB | corr. w/ client re: discussing response remedy briefs - timing and next steps | 0.1 | 0.1 |
| 10/3/2022 | EB | begin reading ATA's remedy brief | 0.5 | 0.5 |
| 10/4/2022 | EB | read and consider fed's brief and evidence | 2.6 | 2.6 |
| 10/4/2022 | EB | read and consider state's brief and evidence | 2.1 | 2.1 |
| 10/4/2022 | EB | finish reading and considering ATA's brief and evidence | 1.3 | 1.3 |
| 10/4/2022 | EB | begin researching motions to strike | 0.7 | 0.7 |
| 10/4/2022 | EB | call w/ WFC re: strategy and next steps for remedy brief | 1.4 | 1.4 |
| 10/5/2022 | EB | discuss m-strike w/ BAK | 0.3 | 0.3 |
| 10/5/2022 | EB | LR re: m-strike | 5.3 | 5.3 |
| 10/5/2022 | EB | begin drafting m-strike | 0.8 | 0.8 |
| 10/6/2022 | EB | continue drafting motion to strike | 4.8 | 4.8 |
| 10/6/2022 | EB | begin annotating portions to strike of barre declaration and drafting related argument | 1.8 | 1.8 |
| 10/7/2022 | EB | discuss argument structure and m-strike strategy w/ BAK | 0.2 | 0.2 |
| 10/7/2022 | EB | finish annotating barre declaration | 0.6 | 0.6 |
| 10/7/2022 | EB | finish annotating purcell declaration | 1.5 | 1.5 |
| 10/7/2022 | EB | finish drafting m-strike argument re: barre and purcell declarations | 2.4 | 2.4 |
| 10/7/2022 | EB | review other nmfs's declarations for need to strike anything (.8); discuss same w/ BAK (.2) | 1 | 1 |
| 10/7/2022 | EB | review trollers' declarations and consider need to strike | 1.3 | 1.3 |
| 10/7/2022 | EB | begin reviewing Alaska's declarations and consider need to strike | 0.7 | 0.7 |
| 10/7/2022 | EB | discuss m-strike w/ BAK | 0.3 | 0.3 |
| 10/8/2022 | EB | begin drafting standing argument | 3.4 | 3.4 |
| 10/10/2022 | EB | continue drafting standing argument | 0.5 | 0.5 |
| 10/10/2022 | EB | LR re: m-strike | 0.7 | 0.7 |
| 10/11/2022 | EB | call w/ economic expert re: responding to critiques of his declaration | 0.7 | 0.7 |
| 10/11/2022 | EB | follow up call w/ BAK re: economic issues in reply | 0.2 | 0.2 |
| 10/11/2022 | EB | prepare m-strike on economic opinions | 0.7 | 0.7 |

| 10/11/2022 | EB | LR re: m-strike factually similar cases | 2.1 | 2.1 |
|---|---|---|---|---|
| 10/11/2022 | EB | call w/ BAK re: rebuttal economic report | 0.1 | 0.1 |
| 10/11/2022 | EB | read article from economic expert (radtke) and consider need for rebuttal report | 0.6 | 0.6 |
| 10/11/2022 | EB | prepare template for economic rebuttal report | 1.8 | 1.8 |
| 10/12/2022 | EB | discussion w/ BAK re: brief strategy and issues | 0.2 | 0.2 |
| 10/12/2022 | EB | review AK and ATA's briefs and make list of points we need to weave in to reply | 3.2 | 3.2 |
| 10/12/2022 | EB | discussion w/ BAK re: outstanding issues and arguments to make in reply | 1.2 | 1.2 |
| 10/12/2022 | EB | read and edit Dr. Radtke's draft declaration | 0.9 | 0.9 |
| 10/12/2022 | EB | LR re: economic impacts cases cited in response briefs | 1.5 | 1.5 |
| 10/12/2022 | EB | draft paragraphs in support of Dr. Radtke's opinion for reply brief | 0.6 | 0.6 |
| 10/12/2022 | EB | discuss response to economic arguments in response briefs w/ BAK | 0.2 | 0.2 |
| 10/13/2022 | EB | review and finalize radtke declaration | 0.3 | 0.3 |
| 10/13/2022 | EB | edit economic argument to reflect final radtke decl | 0.2 | 0.2 |
| 10/13/2022 | EB | edit standing argument to address sport fisheries and corr. w/ NG re: same (.6); edit standing argument to add in additional cites (.8) | 1.4 | 1.4 |
| 10/13/2022 | EB | edit m-strike | 1.4 | 1.4 |
| 10/13/2022 | EB | draft argument iso preliminary injunction | 1 | 1 |
| 10/13/2022 | EB | corr. w/ Hans re: final decl to file | 0.1 | 0.1 |
| 10/13/2022 | EB | draft footnote about new evidence on reply | 0.3 | 0.3 |
| 10/13/2022 | EB | call w/ EH re: status of brief (.1); and send her same (.1) | 0.2 | 0.2 |
| 10/13/2022 | EB | corr. w/ c/c re: status of brief | 0.1 | 0.1 |
| 10/13/2022 | EB | corr. w/ client re: issue on discussion of Dr. Lacy's response to Barre, and factual research re: same | 0.5 | 0.5 |
| 10/13/2022 | EB | help edit brief for redundancy | 1.5 | 1.5 |
| 10/13/2022 | EB | several discussions of brief strategy and next steps w/ BAK | 0.5 | 0.5 |
| 10/14/2022 | EB | prepare draft of table of authorities | 1 | 0 |
| 10/14/2022 | EB | help cut from brief and get it in page limits | 1.5 | 1.5 |
| 10/14/2022 | EB | cite check brief | 5.1 | 5.1 |
| 10/14/2022 | EB | finish tables | 0.8 | 0 |
| 10/14/2022 | EB | finalize brief | 1 | 1 |
| 10/14/2022 | EB | file brief | 0.2 | 0.2 |
| 10/14/2022 | EB | email brief to client and c/c | 0.3 | 0.3 |
| 10/17/2022 | EB | review corr. from last week and ensure everything was completed | 0.5 | 0.5 |
| 10/17/2022 | EB | firm meeting to discuss strategy and next steps | 0.1 | 0.1 |
| 10/21/2022 | EB | discuss oral argument strategy w/ BAK | 0.2 | 0.2 |
| 10/25/2022 | EB | discuss oral argument strategy w/ BAK | 0.3 | 0.3 |
| 10/26/2022 | EB | discuss oral argument strategy w/ BAK | 0.2 | 0.2 |
| 10/27/2022 | EB | call w/ BAK re: oral argument strategy | 0.1 | 0.1 |

| | | | | |
|---|---|---|---|---|
| 10/28/2022 | EB | discuss oral argument strategy w/ BAK | 0.2 | 0.2 |
| 10/31/2022 | EB | firm call to discuss oral argument | 0.1 | 0.1 |
| 10/31/2022 | EB | several discussions w/ BAK re: oral argument strategy | 0.7 | 0.7 |
| 11/1/2022 | EB | help BAK prepare for argument (.3); attend argument (2) and debrief w/ BAK and w/ client (1.8) | 4.1 | 4.1 |
| 11/1/2022 | EB | corr. w/ BAK and PAK re: evidentiary hearing | 0.2 | 0.2 |
| 11/2/2022 | EB | discuss oral argument w/ BAK | 0.2 | 0.2 |
| 12/9/2022 | EB | read orders in new ESA cases re: standing and remedy | 0.3 | 0.3 |
| 12/13/2022 | EB | quick skim of R&R and discussion w/ c/c re: same (.5); corr. w/ o/c re: timing of objections (.2) | 0.7 | 0.7 |
| 12/14/2022 | EB | call w/ client re: recaping R&R and next steps | 0.8 | 0.8 |
| 12/14/2022 | EB | read R&R and discuss w/ BAK | 1.2 | 1.2 |
| 12/14/2022 | EB | draft MOET for objections (.7); corr. w/ o/c re: same (.3) | 1 | 1 |
| 12/14/2022 | EB | finalize and file m-extend objection deadline | 0.3 | 0.3 |
| 12/15/2022 | EB | review scheduling order and calendar objection timeline | 0.1 | 0.1 |
| 12/15/2022 | EB | call w/ Mariah re: next steps for objections | 0.1 | 0.1 |
| 12/19/2022 | EB | corr. w/ client re: next steps for objections | 0.1 | 0.1 |
| 12/20/2022 | EB | call w/ MH re: next steps for objections | 0.1 | 0.1 |
| | | **EB 2022 Hours:** | **255.5** | **251.6** |
| | | | | |
| 1/3/2023 | EB | call w/ BAK re: next steps for objections | 0.2 | 0.2 |
| 1/3/2023 | EB | begin reviewing R&Rs and working on objections | 0.8 | 0.8 |
| 1/4/2023 | EB | Continue drafting R&R vacatur objection argument | 5.2 | 5.2 |
| 1/5/2023 | EB | call w/ BAK re: next steps for objections | 0.1 | 0.1 |
| 1/5/2023 | EB | call w/ client re: next steps for objection | 0.5 | 0.5 |
| 1/5/2023 | EB | Continue drafting R&R vacatur objection argument | 1.5 | 1.5 |
| 1/5/2023 | EB | LR re: objections and preserving issues for appeal | 2.9 | 2.9 |
| 1/5/2023 | EB | draft m-strike argument for objections | 1.4 | 1.4 |
| 1/6/2023 | EB | email to BAK re: m-strike and preservation of objection issues | 1 | 1 |
| 1/6/2023 | EB | call w/ BAK re: next steps for objections | 0.1 | 0.1 |
| 1/6/2023 | EB | draft sentence on m-strike issue | 0.2 | 0.2 |
| 1/6/2023 | EB | read new vacatur case | 1 | 1 |
| 1/6/2023 | EB | review draft of objections | 0.6 | 0.6 |
| 1/9/2023 | EB | edit and comment on draft R&Rs | 1.5 | 1.5 |
| 1/9/2023 | EB | call w/ BAK re: objections strategy and next steps | 0.3 | 0.3 |
| 1/9/2023 | EB | review R&R and consider additional issues to include in objections (.9); LR re: TRO/PI issue (.4) | 1.3 | 1.3 |

| 1/9/2023 | EB | call w/ BAK re: objections strategy and reviewing and finalizing | 0.2 | 0.2 |
|---|---|---|---|---|
| 1/9/2023 | EB | begin cite checking and editing final draft of objections | 1.7 | 1.7 |
| 1/10/2023 | EB | call w/ BAK re: finalizing objections | 0.1 | 0.1 |
| 1/10/2023 | EB | cite check, edit, and finalize objections | 5.3 | 5.3 |
| 1/10/2023 | EB | prepare tables for objections | 1.1 | 0 |
| 1/10/2023 | EB | call w/ BAK re: outstanding issues in objections | 0.2 | 0.2 |
| 1/10/2023 | EB | additional edits to objections and send updated draft to BAK | 0.3 | 0.3 |
| 1/10/2023 | EB | call w/ BAK re: thoughts on ATA and AK objections | 0.1 | 0.1 |
| 1/10/2023 | EB | quick skim of ATA and AK objections | 0.4 | 0.4 |
| 1/10/2023 | EB | call w/ BAK re: initial thoughts on Fed's objections | 0.2 | 0.2 |
| 1/11/2023 | EB | read and consider objections filed yesterday | 2.8 | 2.8 |
| 1/11/2023 | EB | call w/ BAK re: responding to objections | 0.2 | 0.2 |
| 1/11/2023 | EB | begin working on responding to ATA objections | 0.7 | 0.7 |
| 1/12/2023 | EB | LR re: evidentiary hearing | 1.2 | 1.2 |
| 1/12/2023 | EB | outline issues for m-strike objection | 0.5 | 0.5 |
| 1/13/2023 | EB | LR re: evidentiary hearing and magistrate objections standard for evidence | 2.9 | 2.9 |
| 1/13/2023 | EB | call w/ BAK re: objections | 0.1 | 0.1 |
| 1/17/2023 | EB | continue LR re: magistrate objections standard for evidence and write argument re: same | 3.4 | 3.4 |
| 1/17/2023 | EB | LR re: evidentiary issues | 0.9 | 0.9 |
| 1/17/2023 | EB | discuss objection response strategy w/ BAK | 0.2 | 0.2 |
| 1/18/2023 | EB | continue LR and drafting argument re: evidentiary issues | 6 | 6 |
| 1/18/2023 | EB | discuss objection responses strategy w/ BAK | 0.2 | 0.2 |
| 1/19/2023 | EB | finish draft of evidentiary issues for objection response | 1.2 | 1.2 |
| 1/19/2023 | EB | discuss objection response strategy w/ BAK | 0.2 | 0.2 |
| 1/20/2023 | EB | LR re: new arguments on objection and corr. w/ BAK re: same | 0.8 | 0.8 |
| 1/23/2023 | EB | review and edit objection response | 1.9 | 1.9 |
| 1/23/2023 | EB | discuss objection response strategy w/ BAK | 0.3 | 0.3 |
| 1/23/2023 | EB | discussions w/ BAK re: strategy and getting response into limits (.4); review draft and make suggestions re: same (.3) | 0.7 | 0.7 |
| 1/23/2023 | EB | begin cite checking and editing final draft of response | 0.5 | 0.5 |
| 1/24/2023 | EB | edit and cite check response to objections | 3.8 | 3.8 |
| 1/24/2023 | EB | prepare tables for objections response | 0.6 | 0 |
| 1/24/2023 | EB | multiple discussions of potential edits/additions to response w/ BAK | 0.6 | 0.6 |
| 1/24/2023 | EB | review and finalize response (.5) and then file response (.2) | 0.7 | 0.7 |
| 1/24/2023 | EB | quick skim of responses to our objections | 0.3 | 0.3 |

| 1/25/2023 | EB | review corr. and emails w/ client re: objection response | 0.1 | 0.1 |
|---|---|---|---|---|
| 1/25/2023 | EB | read objection responses and discuss w/ BAK | 1.5 | 1.5 |
| 1/26/2023 | EB | discuss strategy and next steps w/ BAK (.1); corr. w/ client re: same (.1) | 0.2 | 0.2 |
| 1/30/2023 | EB | call w/ WFC re: next steps and strategy | 0.3 | 0.3 |
| 2/7/2023 | EB | call w/ client re: next steps for case | 0.2 | 0.2 |
| 2/8/2023 | EB | corr. w/ c/c re: need for TRO/strategy and next steps (.2); read articles on potential for appeal (.3); discuss TRO/next steps strategy w/ BAK (.2) | 0.7 | 0.7 |
| 2/28/2023 | EB | discuss potential amicus w/ BAK | 0.2 | 0.2 |
| 3/1/2023 | EB | discuss response to amicus request w/ BAK (.1); corr. w/ parties re: same (.1) | 0.2 | 0.2 |
| 3/6/2023 | EB | prep for conferral (.1); conferral w/ proposed amici and all parties (.2) | 0.3 | 0.3 |
| 3/6/2023 | EB | firm call re: conferral and amicus motion | 0.1 | 0.1 |
| 3/7/2023 | EB | discuss amicus brief w/ BAK | 0.4 | 0.4 |
| 3/7/2023 | EB | read amicus brief (1); and research related issues (.8); discuss amicus response strategy w/ BAK (.3) | 2.1 | 2.1 |
| 3/8/2023 | EB | call w/ EH re: strategy for responding to amicus brief | 0.2 | 0.2 |
| 3/8/2023 | EB | discuss amicus brief w/ BAK | 0.2 | 0.2 |
| 3/8/2023 | EB | discuss amici response w/ BAK | 0.2 | 0.2 |
| 3/9/2023 | EB | review vacatur case law and discuss same w/ BAK (.2); discuss response strategy w/ BAK (.3) | 0.5 | 0.5 |
| 3/10/2023 | EB | look into fisheries disaster relief issue | 0.8 | 0.8 |
| 3/10/2023 | EB | discuss response arguments and strategy w/ BAK | 0.3 | 0.3 |
| 3/13/2023 | EB | read and edit draft of response brief | 0.5 | 0.5 |
| 3/13/2023 | EB | cite check and edit brief | 3.9 | 3.9 |
| 3/13/2023 | EB | several discussions re: amicus response w/ BAK | 0.6 | 0.6 |
| 3/14/2023 | EB | firm meeting to discuss strategy and next steps | 0.3 | 0.3 |
| 3/14/2023 | EB | organize case file | 0.2 | 0 |
| 3/15/2023 | EB | discuss west coast fishery restrictions w/ BAK and consider potential impact on case | 0.4 | 0.4 |
| 3/15/2023 | EB | read white paper and statements and discuss potential issues in case w/ BAK | 0.7 | 0.7 |
| 3/21/2023 | EB | call w/ WFC re: strategy and next steps | 0.5 | 0.5 |
| 3/30/2023 | EB | call w/ c/c re: case strategy and next steps | 0.4 | 0.4 |
| 3/31/2023 | EB | discussion w/ BAK re: email to court | 0.2 | 0.2 |
| 4/5/2023 | EB | edit and finalize n-change address | 0.3 | 0.3 |
| 4/6/2023 | EB | file n-change address (and call clerk's office re: issues w/ same) | 0.4 | 0.4 |
| 5/2/2023 | EB | discuss potential next steps and strategy w/ BAK | 0.3 | 0.3 |

| 5/2/2023 | EB | review order on relief, consider next steps/timing for potential emergency stays, etc, and discuss same w/ BAK | 0.9 | 0.9 |
|---|---|---|---|---|
| 5/2/2023 | EB | call w/ client re: next steps for case | 0.3 | 0.3 |
| 5/3/2023 | EB | discuss case strategy and next steps w/ BAK | 0.3 | 0.3 |
| 5/3/2023 | EB | call w/ WFC re: next steps for lawsuit | 0.8 | 0.8 |
| 5/3/2023 | EB | LR re: FRAP 8 stay pending appeal case law | 0.7 | 0.7 |
| 5/3/2023 | EB | edit and cite check motion re: 54(d) deadline | 0.6 | 0.6 |
| 5/4/2023 | EB | call w/ WFC re: next steps for appeal and strategy; and follow up discussion w/ BAK re: same | 0.5 | 0.5 |
| 5/4/2023 | EB | call w/ PAK and BAK re: next steps and strategy for case | 0.5 | 0.5 |
| 5/4/2023 | EB | send email to court re: judgment | 0.1 | 0.1 |
| 5/4/2023 | EB | discuss appeal strategy w/ BAK and corr. w/ client re: same | 0.7 | 0.7 |
| 5/4/2023 | EB | read and edit n-appeal | 0.2 | 0.2 |
| 5/4/2023 | EB | discuss appeal process and timing w/ BAK | 0.3 | 0.3 |
| 5/5/2023 | EB | discussions w/ BAK re: case strategy (.4); review and consider press and impact on case (.5) | 0.9 | 0.9 |
| 5/8/2023 | EB | conferral on m-stay pending appeal (.8); call w/ PAK and BAK re: stay pending appeal strategy (.8); discussions w/ BAK re: case strategy and next steps (.5) | 2.1 | 2.1 |
| 5/9/2023 | EB | corr. w/ c/c and w/ o/c re: settlement discussions | 0.2 | 0.2 |
| 5/9/2023 | EB | read AK m-stay and ATA joinder and consider same | 0.5 | 0.5 |
| 5/9/2023 | EB | begin working on response to AK m-stay | 2.8 | 2.8 |
| 5/10/2023 | EB | continue working on AK m-stay (.9) and discuss same w/ BAK (.3) | 1.2 | 1.2 |
| 5/11/2023 | EB | call w/ MH re: research project (.1); email re: same (.2) | 0.3 | 0.3 |
| 5/11/2023 | EB | cite check brief | 3.1 | 3.1 |
| 5/11/2023 | EB | prepare tables and finalize brief | 0.6 | 0 |
| 5/11/2023 | EB | discussions w/ BAK and w/ PAK re: remedy and settlement talks | 0.3 | 0.3 |
| 5/12/2023 | EB | LR re: irreparable injury | 2.3 | 2.3 |
| 5/15/2023 | EB | discussion w/ BAK re: irreparable injury (.1); and corr. w/ MH re: same (.1) | 0.2 | 0.2 |
| 5/15/2023 | EB | firm call re: case strategy and next steps | 0.2 | 0.2 |
| 5/15/2023 | EB | prepare mediation questionnaire | 1.7 | 1.7 |
| 5/16/2023 | EB | read fred's emails re: next biop/nepa doc timing (.1); discuss same w/ BAK (.4) | 0.5 | 0.5 |
| 5/16/2023 | EB | discuss mediation questionnaire w/ BAK | 0.2 | 0.2 |
| 5/16/2023 | EB | revise and file mediation statement | 0.5 | 0.5 |
| 5/17/2023 | EB | call w/ WFC re: next steps for case | 0.5 | 0.5 |
| 5/17/2023 | EB | calls w/ MH to discuss irreparable injury issue | 0.3 | 0.3 |

| | | | | |
|---|---|---|---|---|
| 5/17/2023 | EB | call w/ MH re: further discussion of irreparable injury | 0.1 | 0.1 |
| 5/17/2023 | EB | LR re: irreparable injury | 0.5 | 0.5 |
| 5/17/2023 | EB | LR re: irreparable injury | 3.1 | 3.1 |
| 5/18/2023 | EB | read and edit alaska response on stay | 2.3 | 2.3 |
| 5/19/2023 | EB | call w/ BAK re: case strategy and next steps | 0.3 | 0.3 |
| 5/19/2023 | EB | begin cite checking response to AK | 3.3 | 3.3 |
| 5/22/2023 | EB | update list of things to do | 0.1 | 0.1 |
| 5/22/2023 | EB | call w/ WFC re: potential evidence iso: injury from prey increase program | 0.2 | 0.2 |
| 5/22/2023 | EB | firm call re: next steps for case and strategy | 0.2 | 0.2 |
| 5/22/2023 | EB | finish cite checking AK response | 2.1 | 2.1 |
| 5/22/2023 | EB | prepare tables for AK response | 0.9 | 0 |
| 5/22/2023 | EB | finalize and file AK response | 0.4 | 0.4 |
| 5/24/2023 | EB | read and consider NMFS' response on m-injunction pending appeal | 1.2 | 1.2 |
| 5/24/2023 | EB | begin drafting reply iso m-injunction pending appeal | 5.5 | 5.5 |
| 5/25/2023 | EB | continue drafting reply brief | 6.1 | 6.1 |
| 5/26/2023 | EB | continue preparing reply brief | 3.1 | 3.1 |
| 5/26/2023 | EB | begin preparing m-strike ATA reply and evidence | 0.3 | 0.3 |
| 5/26/2023 | EB | read court order and discuss w/ BAK (.4); email to client re: same (.1) | 0.5 | 0.5 |
| 5/26/2023 | EB | call w/ NG re: edits to declaration | 0.8 | 0.8 |
| 5/26/2023 | EB | call w/ CG re: nick's declaration | 0.6 | 0.6 |
| 5/26/2023 | EB | read and revise NG declaration | 1.8 | 1.8 |
| 5/30/2023 | EB | cite check and edit m-injunction pending appeal | 5.8 | 5.8 |
| 5/30/2023 | EB | prepare tables for m-injunction pending appeal | 0.9 | 0 |
| 5/30/2023 | EB | read frap re: timing and planning for upcoming briefs, and calendar same | 0.4 | 0.4 |
| 5/31/2023 | EB | read frap re: differences in local rules | 0.3 | 0.3 |
| 5/31/2023 | EB | call w/ EH re: next steps for case | 0.3 | 0.3 |
| 5/31/2023 | EB | discuss amicus brief issues w/ BAK (.3); review rules re: same (.3) | 0.6 | 0.6 |
| 5/31/2023 | EB | corr. w/ amicus re: filing brief | 0.2 | 0.2 |
| 5/31/2023 | EB | consider and evaluate irreparable harm argument and discuss same w/ BAK | 1.2 | 1.2 |
| 5/31/2023 | EB | look into fisheries disaster relief issue | 1.3 | 1.3 |
| 5/31/2023 | EB | review rules re: structure of response brief and begin preparing related materials | 0.8 | 0.8 |
| 5/31/2023 | EB | read ak brief and consider response | 1 | 1 |
| 6/1/2023 | EB | discuss response to amicus w/ BAK (.2); and draft response email (.3); prepare draft response to m-file amicus brief (.5); review prior amicus brief and consider arguments on appeal (.4) | 1.4 | 1.4 |
| 6/1/2023 | EB | email to amicus re: position on their motion to file | 0.2 | 0.2 |

| 6/2/2023 | EB | read nmfs's response on m-stay (.8); draft email to BAK re: same (.3) | 1.1 | 1.1 |
|---|---|---|---|---|
| 6/2/2023 | EB | call w/ BAK re: next steps for our response to m-stay | 0.2 | 0.2 |
| 6/2/2023 | EB | call w/ BAK re: status of brief | 0.2 | 0.2 |
| 6/2/2023 | EB | review frap and corr. w/ c/c re: how rules apply to nmfs's brief | 0.4 | 0.4 |
| 6/2/2023 | EB | cite check and edit response to stay pending appeal (9th) | 3.5 | 3.5 |
| 6/2/2023 | EB | prepare tables for response to stay pending appeal | 0.7 | 0 |
| 6/2/2023 | EB | revise response to m-amicus | 0.2 | 0.2 |
| 6/2/2023 | EB | call w/ BAK re: next steps for response to amicus and response to m-stay | 0.1 | 0.1 |
| 6/7/2023 | EB | review filings and get up to speed on briefing (.6); corr. w/ BAK re: same (.1) | 0.7 | 0.7 |
| 6/7/2023 | EB | call w/ BAK re: giles declaration | 0.2 | 0.2 |
| 6/7/2023 | EB | draft giles declaration and send to giles (.7); call w/ BAK re: same (.1) | 0.8 | 0.8 |
| 6/8/2023 | EB | cite check and edit reply to nmfs's response iso m stay | 2.5 | 2.5 |
| 6/8/2023 | EB | close read of brief | 0.8 | 0.8 |
| 6/8/2023 | EB | prepare tables and finalize brief | 0.6 | 0 |
| 6/9/2023 | EB | help MH w/ appearance (and review rules re: same) | 0.4 | 0.4 |
| 6/9/2023 | EB | begin preparing reply iso m-injunction pending appeal | 0.3 | 0.3 |
| 6/9/2023 | EB | draft argument in response to amici re: harm from stay | 0.6 | 0.6 |
| 6/12/2023 | EB | factual research for response to amici brief | 0.8 | 0.8 |
| 6/12/2023 | EB | review materials from client and prepare appendix | 1 | 1 |
| 6/12/2023 | EB | calls w/ Conrad and Nick re: letters in support of vacatur and ISBM fishery issue | 0.4 | 0.4 |
| 6/12/2023 | EB | edit brief | 3.2 | 3.2 |
| 6/12/2023 | EB | cite check brief | 0.5 | 0.5 |
| 6/12/2023 | EB | discuss outstanding issues in response brief to amici w/ BAK | 0.3 | 0.3 |
| 6/12/2023 | EB | finalize amici brief (.6); and file same (.2) | 0.8 | 0.8 |
| 6/13/2023 | EB | draft irreparable injury argument for reply brief | 2.5 | 2.5 |
| 6/14/2023 | EB | read biop and discuss issues for reply w/ BAK | 0.5 | 0.5 |
| 6/14/2023 | EB | discussions w/ BAK re: strategy for reply brief | 4 | 4 |
| 6/15/2023 | EB | discuss amicus brief w/ BAK, and corr. w/ potential amicus | 0.1 | 0.1 |
| 6/15/2023 | EB | discuss reply issues w/ BAK | 0.5 | 0.5 |
| 6/15/2023 | EB | prepare tables for reply brief | 0.6 | 0 |
| 6/15/2023 | EB | edit reply iso m-injunction | 1.2 | 1.2 |
| 6/15/2023 | EB | cite check reply iso m-injunction | 2.3 | 2.3 |
| 6/15/2023 | EB | finalize and file reply iso m-injunction | 0.5 | 0.5 |

| Date | | Description | | |
|---|---|---|---|---|
| 6/19/2023 | EB | touch base w/ BAK re: response to tribal amicus | 0.1 | 0.1 |
| 6/19/2023 | EB | email corr. w/ client re: tribal amicus and potential responses | 0.2 | 0.2 |
| 6/19/2023 | EB | prepare response to m-leave file tribal amicus | 0.8 | 0.8 |
| 6/19/2023 | EB | read m-leave to file tribal amicus, proposed brief, and skim decls. | 1 | 1 |
| 6/20/2023 | EB | revise response to motion for leave to file tribal amici brief (.3); corr. w/ BAK re: same (.1) | 0.4 | 0.4 |
| 6/20/2023 | EB | LR re: potential argument in response to amici brief | 0.4 | 0.4 |
| 6/21/2023 | EB | read order (.1) and debrief w/ c/c (.4); look into potential en banc review/expedited appeal (.2) | 0.7 | 0.7 |
| 6/22/2023 | EB | call w/ practicioner re: ninth circuit procedures | 0.3 | 0.3 |
| 6/22/2023 | EB | discuss next steps for case w/ BAK | 0.4 | 0.4 |
| 6/23/2023 | EB | call w/ WFC re: next steps for lawsuit and strategy | 0.8 | 0.8 |
| 6/23/2023 | EB | call w/ PAK re: next steps for case and recapping call w/ client | 0.1 | 0.1 |
| 6/23/2023 | EB | read press on court order | 0.2 | 0.2 |
| 7/24/2023 | EB | calendar appeal timeline | 0.1 | 0.1 |
| 8/11/2023 | EB | review m-consolidate and corr. w/ PAK and BAK re: same | 0.2 | 0.2 |
| 8/14/2023 | EB | corr. w/ o/c re: extension | 0.1 | 0.1 |
| 8/16/2023 | EB | corr. w/ colleagues re: 9th circuit procedure for extensions and deciding motions (.1); discussion w/ BAK re: same (.1) | 0.2 | 0.2 |
| 8/18/2023 | EB | discussing potential responses to feds on extension request | 0.2 | 0.2 |
| 8/23/2023 | EB | call w/ WFC and c/c re: NEPA process on prey increase program and potential effects of same on appeal | 0.8 | 0.8 |
| 8/25/2023 | EB | recalendar case and discuss appeal strategy w/ BAK | 0.2 | 0.2 |
| 9/11/2023 | EB | call w/ EH re: update from commission/NMFS meeting and impacts on case | 0.2 | 0.2 |
| 9/15/2023 | EB | discuss notice from bankruptcy court w/ BAK | 0.1 | 0 |
| 9/18/2023 | EB | discuss bankruptcy proceeding w/ BAK and research company involved and discuss possible relevance to our lawsuit and email corr. w/ bankruptcy firm re: same | 0.2 | 0 |
| 9/19/2023 | EB | look into bankruptcy issue w/ BAK (lawsuit named in bankruptcy case and threatened with potential stay of wfc v. quan litigation) | 0.5 | 0 |
| 9/20/2023 | EB | call w/ WFC and c/c re: bankruptcy issue | 0.1 | 0 |
| 9/21/2023 | EB | discuss scoping on comments on NEPA to comply with judgment w/ BAK | 0.2 | 0.2 |

| | | | | |
|---|---|---|---|---|
| 9/22/2023 | EB | compliance w/ judgment work - edit/comment on WFC prey increase program scoping comments | 3.2 | 3.2 |
| 9/25/2023 | EB | corr. w/ client re: prey increase program comments and discuss same w/ BAK | 0.2 | 0.2 |
| 9/25/2023 | EB | call w/ Conrad re: scoping comments | 0.1 | 0.1 |
| 9/28/2023 | EB | discuss appeal brief and strategy w/ BAK | 0.3 | 0.3 |
| 10/4/2023 | EB | review corr. w/ clients and c/c on defs'/intervenors' openings brief and get up to speed on their briefs and our response (.5); discuss same w/ BAK (.3) | 0.8 | 0.8 |
| 10/4/2023 | EB | make list of things to do for case | 0.1 | 0.1 |
| 10/4/2023 | EB | email WFC re: potential amici (.5); discuss same w/ BAK (.1) | 0.6 | 0.6 |
| 10/4/2023 | EB | begin reviewing defs' and intervenors' appellate briefs | 0.8 | 0.8 |
| 10/5/2023 | EB | review research on need to preserve issues through objections and discuss same w/ BAK | 0.2 | 0.2 |
| 10/5/2023 | EB | continue reviewing appellate briefs | 4.2 | 4.2 |
| 10/6/2023 | EB | review new NEPA cases and consider applicability | 0.4 | 0.4 |
| 10/6/2023 | EB | continue reading briefs and evaluating | 2.9 | 2.9 |
| 10/11/2023 | EB | corr. w/ c/c and client re: amici (.2); corr. w/ c/c re: vacatur under the APA (.3) | 0.5 | 0.5 |
| 10/12/2023 | EB | call w/ client and c/c re: next steps for case | 0.8 | 0.8 |
| 10/12/2023 | EB | discussions w/ BAK re: potential amici in support and helping WFC coordinate that (.3); email corr. w/ client (.1) and w/ potential counsel re: same (.3) | 0.7 | 0.7 |
| 10/12/2023 | EB | discuss vacatur standards in the 9th circuit and issues w/ our brief w/ BAK | 0.4 | 0.4 |
| 10/12/2023 | EB | call w/ Rob re: potential amicus brief from TCA (.2); follow up discussion w/ BAK re: same (.2) | 0.4 | 0.4 |
| 10/13/2023 | EB | continue review of appellate briefs (1.9); and begin working on response to ATA's m-strike issues (.8) | 2.7 | 2.7 |
| 10/13/2023 | EB | call w/ client re: next steps for appeal (.4); discuss possible amici w/ BAK (.2) | 0.6 | 0.6 |
| 10/16/2023 | EB | firm call to discuss case strategy and next steps | 0.2 | 0.2 |
| 10/16/2023 | EB | continue working on m-strike issues | 3.2 | 3.2 |
| 10/16/2023 | EB | review amici briefs iso defs (1.2); and discussions w/ BAK re: need to respond to amici issues (.3) | 1.5 | 1.5 |
| 10/17/2023 | EB | call w/ Conrad re: next steps for amici coordination (.2); corr. w/ potential amici and w/ potential atty's re: same (.5) | 0.7 | 0.7 |
| 10/17/2023 | EB | corr. w/ amici attorneys re: docket and relevant filings | 0.4 | 0.4 |
| 10/17/2023 | EB | continue working on m-strike issues | 2.5 | 2.5 |
| 10/18/2023 | EB | LR re: standard for appealing evidentiary issues | 2.6 | 2.6 |

| | | | | |
|---|---|---|---|---|
| 10/19/2023 | EB | corr. w/ potential amici attorneys | 0.2 | 0.2 |
| 10/19/2023 | EB | corr. w/ BAK re: economic costs for fishery reductions | 0.3 | 0.3 |
| 10/20/2023 | EB | continue LR on 9th circuit evidentiary cases | 1.4 | 1.4 |
| 10/20/2023 | EB | discuss brief strategy w/ BAK | 0.4 | 0.4 |
| 10/20/2023 | EB | corr. w/ potential amici attorneys | 0.1 | 0.1 |
| 10/23/2023 | EB | LR re: evidentiary standards and 9th circuit case law excluding experts | 4.3 | 4.3 |
| 10/24/2023 | EB | work on case summary -- posture, history, violations, etc. | 2.3 | 2.3 |
| 10/25/2023 | EB | finish case summary | 1.3 | 1.3 |
| 10/26/2023 | EB | continue LR re: evidentiary standards on appeal | 1.6 | 1.6 |
| 10/31/2023 | EB | coordination with client, c/c, and potential amici counsel re: timing, etc. for amici briefs | 0.5 | 0.5 |
| 10/31/2023 | EB | call w/ c/c and potential amici attorneys re: working on amici brief | 0.5 | 0.5 |
| 10/31/2023 | EB | corr. w/ client re: amici briefs | 0.3 | 0.3 |
| 10/31/2023 | EB | corr. w/ potential amici attorneys | 0.2 | 0.2 |
| 11/1/2023 | EB | corr. re: amici groups | 0.1 | 0.1 |
| 11/1/2023 | EB | re-calendar appeal | 0.1 | 0.1 |
| 11/1/2023 | EB | discuss amici briefs w/ BAK | 0.1 | 0.1 |
| 11/1/2023 | EB | call w/ Conrad re: orca health update for brief | 0.1 | 0.1 |
| 11/1/2023 | EB | begin drafting response to evidentiary objections for appellate brief | 2.6 | 2.6 |
| 11/2/2023 | EB | corr. w/ potential amici attorneys | 0.1 | 0.1 |
| 11/2/2023 | EB | continue drafting evidentiary response for appellate brief | 4.2 | 4.2 |
| 11/2/2023 | EB | corr. w/ c/c and client re: priority stock issue | 0.2 | 0.2 |
| 11/3/2023 | EB | call w/ orca attorneys re: discussing case and potential amici brief | 0.7 | 0.7 |
| 11/3/2023 | EB | email to orca attorneys re: helpful docket entries for them | 0.4 | 0.4 |
| 11/3/2023 | EB | discuss priority stocks issue w/ BAK | 0.2 | 0.2 |
| 11/3/2023 | EB | corr. w/ potential amici attorneys | 0.3 | 0.3 |
| 11/3/2023 | EB | continue drafting evidentiary response for appellate brief | 1.8 | 1.8 |
| 11/6/2023 | EB | continue working on evidentiary response for appellate brief | 0.9 | 0.9 |
| 11/6/2023 | EB | read nmfs's arguments below to identify arguments/absence of arguments | 2.5 | 2.5 |
| 11/7/2023 | EB | corr. w/ amici attorneys re: docket and relevant filings | 0.2 | 0.2 |
| 11/7/2023 | EB | continue reading nmfs's arguments below to identify arguments/absence of arguments (1.5); discuss same w/ BAK (.2) | 1.7 | 1.7 |
| 11/7/2023 | EB | continue reading through the record below re: similarities in defs. and intvrs.' arguments | 1.3 | 1.3 |
| 11/7/2023 | EB | corr. w/ potential amici re: atty recommendations | 0.2 | 0.2 |

| 11/8/2023 | EB | call w/ practitioner re: potential amici brief (.1); discuss same w/ BAK (.1) | 0.2 | 0.2 |
|---|---|---|---|---|
| 11/8/2023 | EB | add in record citations to evidentiary section (.4); and add'l edits to section (.8) | 1.2 | 1.2 |
| 11/8/2023 | EB | corr. w/ client re: status and next steps of appellate work | 0.7 | 0.7 |
| 11/13/2023 | EB | corr. w/ WFC re: fisheries' nepa analysis | 0.2 | 0.2 |
| 11/14/2023 | EB | corr. w/ potential amici re: their timing/next steps | 0.1 | 0.1 |
| 11/15/2023 | EB | review and edit WFC comments on scoping for compliance w/ court judgment | 3.1 | 3.1 |
| 11/15/2023 | EB | discussions w/ BAK re: fisheries restrictions issues | 0.2 | 0.2 |
| 11/16/2023 | EB | continue editing WFC comments on scoping for compliance w/ court judgment and corr. w/ WFC re: same | 0.8 | 0.8 |
| 11/16/2023 | EB | corr. w/ potential amici re: securing counsel | 0.1 | 0.1 |
| 11/17/2023 | EB | discuss brief strategy w/ BAK | 0.3 | 0.3 |
| 11/20/2023 | EB | call w/ EH re: outstanding issues in comments on scoping | 0.2 | 0.2 |
| 11/20/2023 | EB | discuss brief strategy w/ BAK | 0.2 | 0.2 |
| 11/21/2023 | EB | discuss brief strategy w/ BAK | 0.2 | 0.2 |
| 11/21/2023 | EB | discuss evidentiary issues w/ BAK | 0.2 | 0.2 |
| 11/27/2023 | EB | prepare excerpts of record index | 1.8 | 0 |
| 11/27/2023 | EB | review draft brief and corr. w/ client and c/c re: same | 0.2 | 0.2 |
| 11/27/2023 | EB | discuss draft brief and next steps w/ BAK | 0.1 | 0.1 |
| 11/27/2023 | EB | begin cite checking and editing brief | 3.4 | 3.4 |
| 11/28/2023 | EB | discuss brief w/ BAK | 0.5 | 0.5 |
| 11/28/2023 | EB | prepare table of authorities | 1.6 | 0 |
| 11/28/2023 | EB | continue editing and cite checking brief | 9.4 | 9.4 |
| 11/29/2023 | EB | continue cite checking and editing brief | 5.8 | 5.8 |
| 11/29/2023 | EB | discuss outstanding issues w/ BAK | 0.6 | 0.6 |
| 11/29/2023 | EB | incorporate additional edits into brief and make final edits | 1.2 | 1.2 |
| 11/29/2023 | EB | finalize brief (.5) and file same (.3) | 0.8 | 0.8 |
| 11/29/2023 | EB | help MH file brief | 0.3 | 0.3 |
| 11/29/2023 | EB | several corr. w/ client and potential amici re: brief filed | 0.1 | 0.1 |
| 11/30/2023 | EB | review rules and discuss next steps for case w/ BAK | 0.3 | 0.3 |
| 11/30/2023 | EB | read potential amicus draft brief and consider issues for reply brief (.5); discuss same w/ BAK (.1) | 0.6 | 0.6 |
| 11/30/2023 | EB | read rules re: extensions, discuss same w/ BAK, and corr. w/ c/c re: same | 0.3 | 0.3 |
| 12/4/2023 | EB | corr. w/ potential amici re: administrative record below | 0.2 | 0.2 |
| 12/4/2023 | EB | corr. w/ potential amici and o/c re: timing and consent to briefs | 0.1 | 0.1 |

| 12/5/2023 | EB | corr. w/ potential amici and c/c re: vacatur stds. and related case law | 0.2 | 0.2 |
| 12/7/2023 | EB | quick review of amici briefs | 0.8 | 0.8 |
| 12/7/2023 | EB | review and consider response on m-strike | 0.2 | 0.2 |
| 12/12/2023 | EB | read press on case and corr. w/ c/c re: same | 0.3 | 0 |
| | | **EB 2023 Hours:** | **287.8** | **277** |
| | | | | |
| 1/22/2024 | EB | consider next steps for appeal and discuss same w/ c/c | 0.2 | 0.2 |
| 1/26/2024 | EB | quick skim of briefs from defs | 0.2 | 0.2 |
| 1/30/2024 | EB | discussion w/ BAK re: brief strategy and issues | 0.2 | 0.2 |
| 2/1/2024 | EB | discuss briefing strategy w/ BAK | 0.2 | 0.2 |
| 2/1/2024 | EB | corr. w/ client, c/c, and expert re: SRKW population health | 0.1 | 0.1 |
| 2/2/2024 | EB | begin reading defs' briefs and considering reply issues | 1.9 | 1.9 |
| 2/5/2024 | EB | review DEISs on prey increase program and fisheries (.3); call w/ WFC and c/c re: NMFS's draft EIS on prey increase program and fisheries, including scope of DEIS, approach to comments, and potential impact on litigation (1) | 1.3 | 1.3 |
| 2/5/2024 | EB | continue reading defs briefs and considering issues (1.5); discuss same w/ BAK (.3) | 1.8 | 1.8 |
| 2/6/2024 | EB | continue reviewing defs' briefs and considering issues for reply (3.5); discuss briefing strategy w/ BAK (.6); begin working on pHOS issue for reply brief (.6) | 4.7 | 4.7 |
| 2/7/2024 | EB | continue working on pHOS issue for reply brief (2.1); discuss reply brief strategy w/ BAK (.2) | 2.3 | 2.3 |
| 2/8/2024 | EB | continue working on phos issue for reply brief (1.3) and discuss brief strategy w/ BAK (.5) | 1.8 | 1.8 |
| 2/9/2024 | EB | continue working on phos issue for brief (5.1); discuss brief strategy w/ BAK (.4) | 5.5 | 5.5 |
| 2/12/2024 | EB | revise phos argument (1.5); review record and consider issues w/ purcell decl (.6); LR re: nmfs' reliance on conclusory statements (2.9); discuss brief strategy w/ BAK (.2) | 5.2 | 5.2 |
| 2/13/2024 | EB | discuss brief strategy w/ BAK (.2); continue revising phos section (.9) | 1.1 | 1.1 |
| 2/14/2024 | EB | read and edit argument re: deciding merits issue on appeal | 1.3 | 1.3 |
| 2/14/2024 | EB | discuss brief w/ BAK | 0.2 | 0.2 |
| 2/14/2024 | EB | file streamlined extension request (.2); call to clerk's office re: same (.1) and discuss same w/ BAK (.1) | 0.4 | 0.4 |
| 2/15/2024 | EB | research ER issues in FRAP for cross reply (.2); call clerk's office re: same (.1) | 0.3 | 0.3 |

| Date | | Description | | |
|---|---|---|---|---|
| 2/15/2024 | EB | continue reading and editing argument on merits issue on appeal and related LR (4.4); discuss brief strategy w/ BAK (.3); begin preparing SFER (.3) | 5 | 5 |
| 2/21/2024 | EB | read and edit brief (4.5);  begin reviewing defs' briefs to ensure responsiveness (1.9) | 6.4 | 6.4 |
| 2/22/2024 | EB | finish reviewing defs' briefs to ensure responsiveness (2.1); discuss outstanding issues in reply brief w/ BAK (.4); read additional cases, consider need to cite, and draft email to BAK re: same (3.3) | 5.8 | 5.8 |
| 2/22/2024 | EB | begin preparing tables | 0.7 | 0 |
| 2/22/2024 | EB | discuss addition to brief w/ BAK | 0.2 | 0.2 |
| 2/22/2024 | EB | begin cite checking and editing brief | 1 | 1 |
| 2/23/2024 | EB | continue cite checking and editing brief | 4.7 | 4.7 |
| 2/23/2024 | EB | prepare tables for brief | 1.5 | 0 |
| 2/23/2024 | EB | finalize brief (.3); and file same (.2) | 0.5 | 0.5 |
| 3/7/2024 | EB | call w/ BAK re: 9th circuit inquiry on argument | 0.2 | 0.2 |
| 3/8/2024 | EB | discussion w/ BAK re: strategy for EIS issues and judgment compliance (.3); review edits (.1); corr. w/ client re: same (.1) | 0.5 | 0.5 |
| 3/12/2024 | EB | corr. w/ o/c re: oral argument issues (.1); call w/ BAK re: same (.2) | 0.3 | 0.3 |
| 5/7/2024 | EB | review order and related filings on argument (.1); and discuss scheduling for same w/ BAK (.1) | 0.2 | 0.2 |
| 5/17/2024 | EB | make travel arrangements for oral argument and calendar same | 0.2 | 0 |
| 6/27/2024 | EB | discuss argument strategy w/ BAK | 0.2 | 0.2 |
| 6/28/2024 | EB | read and consider new SCOTUS APA case for relevance to our case (.7); discuss same w/ BAK and PAK (.5) | 1.2 | 1.2 |
| 6/28/2024 | EB | read and edit 28j letter (.5); discuss same w/ BAK (.4) | 0.9 | 0.9 |
| 7/12/2024 | EB | call w/ BAK re: helping w/ argument prep | 0.1 | 0.1 |
| 7/12/2024 | EB | LR for potential questions at argument | 1.7 | 1.7 |
| 7/12/2024 | EB | call w/ BAK re: follow up issues w/ LR | 0.2 | 0.2 |
| 7/12/2024 | EB | begin creating fact table for argument | 1 | 1 |
| 7/15/2024 | EB | prepare list of things to do for case | 0.1 | 0.1 |
| 7/15/2024 | EB | continue creating fact table for argument | 4.8 | 4.8 |
| 7/15/2024 | EB | review and consider vacatur table | 0.6 | 0.6 |
| 7/15/2024 | EB | discuss argument strategy w/ BAK | 0.5 | 0.5 |
| 7/16/2024 | EB | prep for moot w/ BAK and colleagues | 1.2 | 1.2 |
| 7/16/2024 | EB | moot and strategy discussions w/ colleagues and BAK | 2 | 2 |
| 7/16/2024 | EB | clean up questions and notes for BAK to consider from moot | 0.6 | 0.6 |
| 7/16/2024 | EB | prep for argument -- reviewing briefs (2.1), creating file for searching at argument (.6), finalizing table of facts (.3) | 3 | 3 |

| Date | Initials | Description | | |
|---|---|---|---|---|
| 7/17/2024 | EB | prep for argument -- continue reviewing briefs and working on potential questions | 2.8 | 2.8 |
| 7/17/2024 | EB | travel to SFO for argument | 5.3 | 2.6 |
| 7/18/2024 | EB | meeting w/ BAK and client before argument (1.3); travel to meeting and travel to argument (.7); attend argument (1.7); travel to hotel and meeting w/ client (.8); meeting w/ client after argument (1.7); travel from SFO to PDX, including travel to/from hotel, time at airport, flight, and transport from airport to house (8.9) | 15.1 | 9.8 |
| 7/22/2024 | EB | discuss likely outcomes for case w/ BAK | 0.2 | 0.2 |
| 7/22/2024 | EB | review corr. w/ colleagues on argument (.1); and organize file (.2) | 0.3 | 0.3 |
| 8/16/2024 | EB | review order and several corr. w/ client re: same | 0.8 | 0.8 |
| 8/16/2024 | EB | update docket on amici briefs | 0.2 | 0.2 |
| 8/20/2024 | EB | call w/ client and c/c re: next steps for case | 0.4 | 0.4 |
| 9/17/2024 | EB | email corr. re: ideas for fee petition experts (.2); and call w/ BAK re: same (.3) | 0.5 | 0.5 |
| 9/17/2024 | EB | consider rates inquiry from BAK (.3); and call w/ BAK re: brainstorming strategy around rates analysis for fee petition (.7) | 1 | 1 |
| 9/18/2024 | EB | discuss fee petition expert strategy w/ BAK | 0.3 | 0.3 |
| 11/8/2024 | EB | continue drafting EH decl. | 2.3 | 2.3 |
| 11/12/2024 | EB | continue working on EH declaration (1.4); research on case costs (.2) | 1.6 | 1.6 |
| 11/13/2024 | EB | firm discussion re: fee petition strategy | 0.3 | 0.3 |
| 11/13/2024 | EB | continue working on Helverson decl. | 4.5 | 4.5 |
| 11/13/2024 | EB | corr. w/ client re: declaration for fee petition | 0.2 | 0.2 |
| 11/14/2024 | EB | continue working on EH decl. | 2.8 | 2.8 |
| 11/15/2024 | EB | call w/ PAK re: fee petition and helverson declaration and how to address kerr factors in declaration | 0.1 | 0.1 |
| 11/15/2024 | EB | continue working on EH declaration (1.1); outline interview questions for EH decl. (.7); call w/ EH re: interview scheduling (.1) | 1.9 | 1.9 |
| 11/18/2024 | EB | discuss fee petition w/ BAK (.2); skim DB decl. (.2) | 0.4 | 0.4 |
| 11/19/2024 | EB | call w/ BAK re: fee petition next steps | 0.1 | 0.1 |
| 11/19/2024 | EB | call w/ EH re: interview for declaration | 1.3 | 1.3 |
| 11/20/2024 | EB | discussions w/ BAK re: fee petition issues and strategy | 0.6 | 0.6 |
| 11/21/2024 | EB | incorporate EH interview into EH declaration | 3.8 | 3.8 |
| 11/22/2024 | EB | skim DB decl. | 0.2 | 0.2 |
| 12/2/2024 | EB | discuss fee petition decl. next steps w/ BAK | 0.2 | 0.2 |
| 12/2/2024 | EB | review and edit my declaration and my exhibit | 0.8 | 0.8 |
| 12/2/2024 | EB | discuss fee petition w/ BAK (.2); read and edit EH decl. (.5); and corr. w/ EH re: same (.1) | 0.8 | 0.8 |
| 12/4/2024 | EB | call w/ c/c re: evidence of no counsel availability below market rates | 0.3 | 0.3 |

| | | | | |
|---|---|---|---|---|
| 12/4/2024 | EB | draft argument re: case costs | 1.7 | 1.7 |
| 12/4/2024 | EB | begin drafting argument re: rates | 1.3 | 1.3 |
| 12/4/2024 | EB | corr. w/ EH re: her declaration and next steps for same | 0.2 | 0.2 |
| 12/5/2024 | EB | discuss fee petition strategy w/ BAK | 0.5 | 0.5 |
| 12/5/2024 | EB | continue drafting argument re: rates | 1.7 | 1.7 |
| 12/5/2024 | EB | discuss fee petition strategy w/ BAK re: rates (.2); discuss fee petition strategy w/ BAK re: EAJA criteria (.3) | 0.5 | 0.5 |
| 12/5/2024 | EB | review EH edits (.3); propose additional edits to declaration (1.9) | 2.2 | 2.2 |
| 12/6/2024 | EB | call w/ PAK and BAK re: potential evidence on availability of counsel (.2); discuss same w/ BAK (.2) | 0.4 | 0.4 |
| 12/6/2024 | EB | call w/ EH re: next steps | 0.3 | 0.3 |
| 12/6/2024 | EB | revise EH declaration based on call w/ EH | 0.3 | 0.3 |
| 12/6/2024 | EB | discuss status of declarations and outstanding issues for declarations w/ BAK and help w/ outstanding issues | 0.5 | 0.5 |
| 12/6/2024 | EB | corr. w/ EH re: outstanding issues w/ declaration (.3) and help EH resolve same (.3) | 0.6 | 0.6 |
| 12/6/2024 | EB | continue helping BAK w/ fee petition issues | 0.2 | 0.2 |
| 12/9/2024 | EB | conferral w/ c/c and o/c on fee petition (.2); discuss fee petition strategy w/ BAK (.4) | 0.6 | 0.6 |
| 12/10/2024 | EB | read and edit knutsen decl. | 1.4 | 1.4 |
| 12/10/2024 | EB | calls w/ BAK re: next steps for finishing decls. and petition | 0.3 | 0.3 |
| 12/11/2024 | EB | discuss next steps for fee petition and finalizing decls. w/ BAK | 0.5 | 0.5 |
| 12/11/2024 | EB | review, edit, and finalize my declaration | 0.6 | 0.6 |
| 12/11/2024 | EB | review and further edit helverson declaration (.7) and prepare final helverson decl. for signature (.2); email same to EH (.2) | 1.1 | 1.1 |
| 12/12/2024 | EB | begin cite checking fee petition | 1.4 | 1.4 |
| 12/12/2024 | EB | finish cite checking brief | 3.3 | 3.3 |
| 12/12/2024 | EB | discuss where to cut from brief w/ BAK | 0.3 | 0.3 |
| | | **EB 2024 Hours:** | **143** | **132.6** |
| | | | | |
| 8/26/2024 | EP | Check-in discussion w/ PK & BAK | 0.2 | 0.2 |
| 9/17/2024 | EP | Call w/ BAK to discuss research assignment re: fees (.1); researching issues and drafting standards section re: fee recovery under EAJA (6.2) | 6.3 | 6.3 |
| 9/18/2024 | EP | Finalizing draft section re: EAJA standard (.5); reading orders (2.6) | 3.1 | 3.1 |
| 10/29/2024 | EP | call w/ BAK re: fee petition work (.2); worked on fee petition: researching excellence of results (1.9) | 2.1 | 2.1 |

| Date | | Description | | |
|---|---|---|---|---|
| 10/30/2024 | EP | LR re: fee petition (excellence of results) (3.4); drafting standard section re: fee petition (excellence of results) (2.1) | 5.5 | 5.5 |
| 10/31/2024 | EP | LR re: fee petition (time for filing) (1.2); drafting standard section re: fee petition (excellence of results) (2.9) | 4.1 | 4.1 |
| 11/1/2024 | EP | drafting standard section re: fee petition (excellence of results) | 2 | 2 |
| 11/4/2024 | EP | Fee petition: drafting standard section re: excellence of results (.6); drafting application/analysis section re: excellence of results (reading R&R on liability and remedy, drafting) (5.2) | 5.8 | 5.8 |
| 11/5/2024 | EP | Fee petition: drafting application/analysis section re: excellence of results (reading R&R on liability and remedy + Ps' motions, drafting) | 3.4 | 3.4 |
| 11/6/2024 | EP | worked on fee petition - drafting argument re: excellence of results | 4.4 | 4.4 |
| 11/8/2024 | EP | LR: re: fee petition | 0.4 | 0.4 |
| 11/13/2024 | EP | Firm discussion re: fee petition (.3); worked on fee petition - drafting PK's declaration (.7) | 1 | 1 |
| 11/15/2024 | EP | worked on fee petition: reviwed BAK's feedback re: excellence of results argument (1); met w/ BAK re: the same (.2); revising excellence of results argument (2.9) | 4.1 | 4.1 |
| 11/18/2024 | EP | worked on fee petition - LR re: excellence of results on appeal/remand-only (3.5); revising excellence of results argument (2.3) | 5.8 | 5.8 |
| 11/19/2024 | EP | worked on fee petition - revising excellence of results argument (4.9); resume updates and drafting environmental law experience statements for rate justification (2.1) | 7 | 7 |
| 11/20/2024 | EP | worked on fee petition - revising excellence of results argument and sending to BAK (1); calculating filing deadline (.8) | 1.8 | 1.8 |
| 11/22/2024 | EP | worked on fee petition - standard re: substantial justification | 1.7 | 1.7 |
| 11/25/2024 | EP | worked on fee petition - standard re: substantial justification | 6.1 | 6.1 |
| 11/26/2024 | EP | worked on fee petition - standard re: substantial justification (1.5); reviewing Emma H's draft declaration and revising excellence of results section to incorporate the same (1.7) | 3.2 | 3.2 |
| 12/2/2024 | EP | worked on fee petition - LR re: Conservancy as "party" eligible under 28 USC 2412(d)(2)(B) | 1.5 | 1.5 |
| 12/3/2024 | EP | worked on fee petition - revising substantial justification section (4.8); revising excellence of results section (.8) | 5.6 | 5.6 |
| 12/4/2024 | EP | worked on fee petition - revising excellence of results section and further LR re: the same | 3.9 | 3.9 |

| Date | Initials | Description | Hours | Hours |
|---|---|---|---|---|
| 12/5/2024 | EP | worked on fee petition - revising section on excellence of results (2); LR re: defining substantial justification burden (1.6) | 3.6 | 3.6 |
| 12/6/2024 | EP | worked on fee petition - review Claire Tonry's declaration and revise inflation figures (1.2); calls w/ BAK re: the same (.2) | 1.4 | 1.4 |
| 12/9/2024 | EP | drafting notice of appearance | 0.5 | 0.5 |
| 12/10/2024 | EP | Finalizing and filing notice of appearance (.3); worked on fee petition - reviewing and revising Helverson decl (2.8) | 3.1 | 3.1 |
| 12/11/2024 | EP | worked on fee petition - proofreading time key (.4); proofreading proposed order (.6) | 1 | 1 |
| | | **EP 2024 Hours:** | **88.6** | **88.6** |
| 9/2/2020 | JD | call w/ Brian re: intro, research: reviewing complaint | 1.9 | 1.9 |
| 9/8/2020 | JD | Call w/ BK re assignment of connected action NEPA issue | 0.2 | 0.2 |
| 9/8/2020 | JD | Research: reviewing PI motion, response, reply, R&R, and objections | 0.8 | 0.8 |
| 9/8/2020 | JD | Research: reviewing caselaw and BK old material re cumulative and connected actions under NEPA | 0.7 | 0.7 |
| 9/9/2020 | JD | Research: reviewing new CEQ regs for NEPA re connected and cumulative actions | 2.8 | 2.8 |
| 9/9/2020 | JD | Research: caselaw on connected action in NEPA cases | 1.8 | 1.8 |
| 9/9/2020 | JD | Writing: drafting memo re connected actions | 0.6 | 0.6 |
| 9/10/2020 | JD | Call w/ BK re assignment of connected action, update and confirming memo structure | 0.4 | 0.4 |
| 9/10/2020 | JD | Research: drafting memo re connected actions, adding cumulative impact | 1.5 | 1.5 |
| 9/11/2020 | JD | Research: cumulative impact pre- and post-NEPA changes | 4.2 | 4.2 |
| 9/14/2020 | JD | Writing: finalizing draft of connected/cumulative actions and emailing memo to Brian | 1.4 | 1.4 |
| 9/15/2020 | JD | Writing: second draft of cumulative/connected actions with chart and further research of new NEPA regs | 3 | 3 |
| 9/22/2020 | JD | Writing: finalizing draft of NEPA timing issues, sent to BK for review | 1.9 | 1.9 |
| 9/30/2020 | JD | NEPA timing memo edits, research re alternatives | 5.1 | 5.1 |
| 9/30/2020 | JD | Call w/ EB re NEPA timing, caselaw help | 1 | 1 |
| 10/1/2020 | JD | NEPA timing memo edits, research re alternatives | 0.5 | 0.5 |
| 10/2/2020 | JD | NEPA timing memo edits, research re alternatives | 2.2 | 2.2 |
| 10/5/2020 | JD | NEPA timing memo edits, research re alternatives | 5.5 | 5.5 |

| Date | Atty | Description | | |
|------|------|-------------|---|---|
| 10/5/2020 | JD | call w/ EB re connected action issue | 0.6 | 0.6 |
| 10/6/2020 | JD | NEPA timing memo edits, research re alternatives | 4.3 | 4.3 |
| 10/8/2020 | JD | NEPA timing memo edits, research re alternatives | 6.8 | 6.8 |
| 10/9/2020 | JD | NEPA timing memo edits, research re alternatives | 7 | 7 |
| 10/13/2020 | JD | NEPA timing memo edits, research re alternatives | 5.1 | 5.1 |
| 10/13/2020 | JD | call w/ EB re ITS background | 0.8 | 0.8 |
| 10/13/2020 | JD | call w/ BK re NEPA timing memo | 0.4 | 0.4 |
| 10/14/2020 | JD | NEPA timing memo edits | 6.1 | 6.1 |
| 10/15/2020 | JD | NEPA timing memo edits: finalize draft and sent to BK for review | 1.6 | 1.6 |
| 10/21/2020 | JD | call w/ BK re NEPA timing memo, next steps | 0.3 | 0.3 |
| 10/21/2020 | JD | reviewing BK notes on NEPA timing memo | 0.2 | 0.2 |
| 10/26/2020 | JD | NEPA timing issue - begin outlining for brief (.2), call w/ EB re crafting an outling (.7) | 0.9 | 0.9 |
| 10/27/2020 | JD | Call w/ EB and Bill re standing declaration (.5), recap call w/ EB (.1) | 0.6 | 0.6 |
| 10/28/2020 | JD | NEPA timing memo - crafting outline for SJ motion | 6.3 | 6.3 |
| 10/30/2020 | JD | NEPA timing memo outline, sent to BK for review | 0.8 | 0.8 |
| 11/9/2020 | JD | Started NEPA argument section | 0.8 | 0.8 |
| 11/10/2020 | JD | NEPA argument section drafting | 4.7 | 4.7 |
| 11/12/2020 | JD | NEPA argument section drafting | 5.5 | 5.5 |
| 11/12/2020 | JD | Call w/ BK re NEPA argument section | 0.3 | 0.3 |
| 11/13/2020 | JD | NEPA argument section drafting | 3.7 | 3.7 |
| 11/16/2020 | JD | NEPA argument section drafting | 6.5 | 6.5 |
| 11/17/2020 | JD | NEPA argument section drafting | 4.3 | 4.3 |
| 11/18/2020 | JD | NEPA argument section drafting | 3.4 | 3.4 |
| 11/19/2020 | JD | NEPA argument section drafting | 0.7 | 0.7 |
| 12/21/2020 | JD | Call w/ WFC and BK re SJ motion update and recent useful cases | 0.2 | 0.2 |
| | | **JD 2020 Hours:** | **107.4** | **107.4** |
| 1/12/2021 | JD | Drafting NEPA section of SJ motion: cite checking, editing, and reviewing work, drafting cumulative action section | 1.2 | 1.2 |
| 1/13/2021 | JD | Drafting NEPA section of SJ motion: drafting cumulative action section, cite checking, and bluebooking, sent to BK for review | 2.5 | 2.5 |
| 2/3/2021 | JD | Review email from BK re new assignment (.1), call w/ EB re narrowing issue (.1), caselaw research re extra-record citation (1.9) | 2.1 | 2.1 |
| 2/4/2021 | JD | Case search re extra-record cite | 5.5 | 5.5 |
| 2/5/2021 | JD | Case search re extra-record cite, and drafting memo re same | 3.8 | 3.8 |

| | | | | |
|---|---|---|---|---|
| 2/8/2021 | JD | drafting extra-record memo, final caselaw search | 3 | 3 |
| 2/9/2021 | JD | drafting extra-record memo, final caselaw search | 2.3 | 2.3 |
| 2/10/2021 | JD | finalizing extra-record memo, sent to BK for review | 1.6 | 1.6 |
| 3/2/2021 | JD | Call w/ EB re PI order and next steps (.2), firm call re same (.2) | 0.4 | 0.4 |
| 3/22/2021 | JD | Call w/ EB re editing assignment (.2), case cite check (1.0), call w/ EB re results and questions (.5) | 1.7 | 1.7 |
| 3/25/2021 | JD | Call w/ BK re assignment (.4), creating spreadsheet for hatchery increases (6.8) | 7.2 | 7.2 |
| 3/26/2021 | JD | Call w/ BK re hatchery chart questions (.7), hatchery chart edits (.5) | 1.2 | 1.2 |
| 4/5/2021 | JD | Review HGMPs in files re Nick's email (.3), call w/ BK re same (.1) | 0.4 | 0.4 |
| 4/7/2021 | JD | Review Nick's final hatchery chart and notes (.2), call w/ BK re next steps (.1) | 0.3 | 0.3 |
| 4/16/2021 | JD | Legal research re: adequate notice in complaint (4.2), ESA consultation segmentation (2.2), call w/ EB re same (.2) | 6.6 | 6.6 |
| 4/19/2021 | JD | Legal research re adequate notice in complaint (.5), Legal research re ESA consultation segmentation (5) | 5.5 | 5.5 |
| 4/20/2021 | JD | Legal research re adequate notice in complaint | 1.6 | 1.6 |
| 4/22/2021 | JD | Legal research re ESA consultation segmentation | 5 | 5 |
| 4/27/2021 | JD | Research re notice required in complaint | 3.8 | 3.8 |
| 4/28/2021 | JD | Conferral call re motions | 0.3 | 0.3 |
| 5/5/2021 | JD | Review final summary judgment motion | 0.3 | 0.3 |
| 5/17/2021 | JD | Research re ESA segmentation case law, finding seminal case | 3.3 | 3.3 |
| 5/18/2021 | JD | Research re notice required in complaint, shepard cites from seminal case (4.1), taking and organizing notes for memo prep (1.3) | 5.4 | 5.4 |
| 5/18/2021 | JD | Research re ESA segmentation case law, shepardizing seminal case | 1.3 | 1.3 |
| 5/19/2021 | JD | Research re ESA segmentation case law, continuing new string search (3.7), shepardizing new 9th Cir. case (3) | 6.7 | 6.7 |
| 5/20/2021 | JD | Research re ESA segmentation case law, memo drafting and organization, case blocking | 1 | 1 |

| 5/20/2021 | JD | Calls w/ EB re call w/ o/c, research re sufficiency of complaint (1.7), research re same (3.2) | 4.9 | 4.9 |
|---|---|---|---|---|
| 5/21/2021 | JD | Research re sufficiency of complaint: following Shepard cites of seminal 9th Cir. cases (4.8), note taking and organizing (1.3), crafting memo and formatting (1.1) | 7.2 | 7.2 |
| 5/24/2021 | JD | Research re ESA segmentation: final search string review, finish parentheticals (4.3), drafting notes, formatting memo, writing (1.7) | 5.9 | 5.9 |
| 5/24/2021 | JD | Firm call re cross-motion and research tasks | 0.2 | 0.2 |
| 5/25/2021 | JD | Research re sufficiency of complaint: reviewing notes and editing memo (.4), continuing seminal case  Shepard cites (2.6), new search string re APA and record review cases (3.9), call w/ EB re same (.2) | 7.1 | 7.1 |
| 5/26/2021 | JD | Research sufficiency of complaint in APA context (.6) | 0.6 | 0.6 |
| 5/27/2021 | JD | Research sufficiency of complaint in APA context, finalize memo (2.2), call w/ BK re results (.2) | 2.4 | 2.4 |
| 5/28/2021 | JD | Call w/ BK re new research assignment (.1), case law research re post-decision justification (.8), notes and formatting memo (.2) | 2 | 2 |
| 6/1/2021 | JD | Call w/ EB re new research assignment re standing (.4), research re ESA standing in predator/prey context: reviewing Audubon case and shepardizing (4.1), taking notes, summarizing cases (.6) | 4.7 | 4.7 |
| 6/2/2021 | JD | Resarch re ESA standing: new search string, shepardizing new cases found (5.8), note taking and summarizing cases (1.1) | 6.9 | 6.9 |
| 6/2/2021 | JD | Call w/ BK re new research (.1), research re APA scope in ESA, intial search string (.5) | 0.6 | 0.6 |
| 6/3/2021 | JD | Research re APA scope in ESA, continue search string | 1 | 1 |
| 6/4/2021 | JD | Research re APA scope in ESA (6.1), compiling notes to send to BK (.5) | 6.6 | 6.6 |
| 6/4/2021 | JD | Resarch re ESA standing: continue search string (.4), call w/ EB re results (.2) | 0.6 | 0.6 |
| 6/7/2021 | JD | Research re ESA standing in prey/predator context | 2.7 | 2.7 |

| Date | | Description | | |
|---|---|---|---|---|
| 6/7/2021 | JD | Research re post-decision justification case law | 4.1 | 4.1 |
| 6/8/2021 | JD | Research re post-decision justification case law, final search (.8), call w/ BK and wrap up of research notes (.3) | 1.1 | 1.1 |
| 6/9/2021 | JD | Call w/ EB re editing assingment (.2), edits to reply brief (2.5) | 2.7 | 2.7 |
| 6/10/2021 | JD | call w/ EB re filing strategy | 0.1 | 0.1 |
| 7/2/2021 | JD | call w/ EB re oral argument strategy | 0.2 | 0.2 |
| 7/19/2021 | JD | Call w/ PK, BK, and EB re oral argument structure | 0.2 | 0.2 |
| 7/27/2021 | JD | Listen to EB and BK oral argument before Magistrate Judge (2.2), followup call w/ clients (.3), call w/ PK, BK, and EB (.3) | 2.8 | 2.8 |
| 7/28/2021 | JD | Call w/ EB re court order supplemental briefing, research assignment re same (.4), researching requirements re change of policy (1.3) | 1.7 | 1.7 |
| 7/29/2021 | JD | Research re requirements on changing policy (5.9), call w/ EB re the same (.2) | 6.1 | 6.1 |
| 7/30/2021 | JD | Research re requirements on changing policy (5.6), drafting notes and comments, sent to EB (.4) | 6 | 6 |
| 8/2/2021 | JD | Call w/ EB re APA standards and claims (.7), meeting w/ PK re APA and NEPA claims (.8), call w/ PK and EB re same (.4), research re APA changes in policy and drafting notes (2.1) | 4 | 4 |
| 8/3/2021 | JD | Call w/ BK re search results (.1), additional research re requirements on changing policy, creating table with relevant case law and standards, sent to EB and BK for review (4.6) | 4.7 | 4.7 |
| 8/4/2021 | JD | Call w/ EB re requirements of changing policy | 0.5 | 0.5 |
| 8/5/2021 | JD | Call w/ BK re case law (.2), draft table organizing case law (.6) | 0.8 | 0.8 |
| 8/9/2021 | JD | review defendant's supplemental briefs | 0.5 | 0.5 |
| 9/28/2021 | JD | Read R&R re summary judgment (.5), meeting w/ PK, BK, and EB re ruling (.4) | 0.9 | 0.9 |
| 10/4/2021 | JD | Call w/ BK re new SEAK memo re vactur and injunction (.2), research injunction in NEPA context (5.6), call w/ EB re vacatur caselaw (.1) | 5.9 | 5.9 |
| 10/4/2021 | JD | Call w/ PK, BK, and EB re next steps | 0.2 | 0.2 |
| 10/5/2021 | JD | Researching NEPA injunction relief | 0.8 | 0.8 |
| 10/6/2021 | JD | Researching NEPA injunction relief, taking notes and organizing memo | 3.6 | 3.6 |
| 10/12/2021 | JD | Research re NEPA injunctive remedies, drafting memo | 2.3 | 2.3 |
| 10/13/2021 | JD | Research NEPA injunction and draft memo | 1 | 1 |
| 10/14/2021 | JD | Research NEPA injunction and draft memo | 0.2 | 0.2 |
| 10/15/2021 | JD | research NEPA injunction and draft memo | 4.6 | 4.6 |

| Date | | Description | | |
|------|---|-------------|---|---|
| 10/18/2021 | JD | Research NEPA injunction and draft memo | 4.9 | 4.9 |
| 10/19/2021 | JD | Research NEPA injunction and draft memo | 4.9 | 4.9 |
| 10/20/2021 | JD | Research NEPA injunction and draft memo | 4.5 | 4.5 |
| 10/25/2021 | JD | Research NEPA injunction and draft memo | 0.5 | 0.5 |
| 10/26/2021 | JD | Research NEPA injunction and draft memo | 6 | 6 |
| 10/27/2021 | JD | Research NEPA injunction and draft memo | 1.7 | 1.7 |
| 10/28/2021 | JD | Research NEPA injunction and draft memo | 5 | 5 |
| 10/29/2021 | JD | Research NEPA vacatur and injunction and draft memo | 7 | 7 |
| 11/1/2021 | JD | Research NEPA vacatur and injunction and draft memo | 3.6 | 3.6 |
| 11/2/2021 | JD | Research NEPA vacatur and injunction and draft memo | 4.9 | 4.9 |
| 11/22/2021 | JD | Reviewing memo re vacatur for general standards, reading case law to prep for vacatur memo as NEPA remedy, organizing memo | 2.5 | 2.5 |
| 11/30/2021 | JD | Meeting w/ PK re research memo strategy and planning | 0.4 | 0.4 |
| 12/3/2021 | JD | Researching irreparable injury in NEPA procedural contexts, comparison to new SCOTUS decision and drafting memo re same | 2.4 | 2.4 |
| 12/6/2021 | JD | Researching vacatur standard in NEPA context, shepardizing general vacatur memo, writing vacatur section (3.2), editing injunctive section of memo (2.6) | 5.8 | 5.8 |
| 12/9/2021 | JD | Researching vacatur standard in NEPA context, shepardizing general vacatur memo, drafting new memo | 1.3 | 1.3 |
| 12/10/2021 | JD | Researching district court cases applying vacatur precedent in NEPA contexts, analyzing and writing memo re same | 5.3 | 5.3 |
| 12/13/2021 | JD | Researching district court cases applying vacatur precedent in NEPA contexts, analyzing and writing memo re same | 1.5 | 1.5 |
| 12/14/2021 | JD | Editing memo re NEPA remedies, organization and cite checking | 0.5 | 0.5 |
| 12/15/2021 | JD | Researching public policy factor of injunctive relief in NEPA context, draftin memo re same | 6 | 6 |
| 12/16/2021 | JD | Reseaching public policy factor and writing memo | 3.3 | 3.3 |
| 12/17/2021 | JD | Researching public policy factor, balancing hardships, and analyzing whether sliding scale test case law is applicable (4.2), researching vacatur (1) | 5.2 | 5.2 |
| | | **JD 2021 Hours:** | **259.6** | **259.6** |
| 1/4/2022 | JD | Legal research re public interest considerations for injunctive relief in NEPA context | 1.7 | 1.7 |
| 1/4/2022 | JD | Call w/ BK, PK, and EB re strategy for potential TRO | 0.1 | 0.1 |

| 1/24/2022 | JD | Reviewing and editing memo re remedies, legal research on vacatur requirements in NEPA context | 1 | 1 |
|---|---|---|---|---|
| 1/25/2022 | JD | Summarizing findings for injunction relief from research (.8), legal research on vacactur requirements (.3), drafting vacatur section (.7) | 1.8 | 1.8 |
| 1/27/2022 | JD | Legal research of district court cases applying 9th Cir precedent in balance of harms cases for relief memo summary, takes notes and drafting memo re same (2.1), legal research re disruptive consequences warranting vacatur (1.5) | 3.6 | 3.6 |
| 1/28/2022 | JD | Researching caselaw re vacatur and disruptive consequences (3.2), drafting disruptive cons section of memo (1.1), editing (.6) | 4.9 | 4.9 |
| 1/31/2022 | JD | Legal research re district courts application of vacatur requirements, taking notes and editing memo re same | 2.9 | 2.9 |
| 2/2/2022 | JD | Research on disruptive consequences for vacatur, taking notes and drafting memo | 2.8 | 2.8 |
| 2/4/2022 | JD | district court case law research re vacatur (1.6), drafting memo re same, case blocking important cases (1.4) | 3 | 3 |
| 2/7/2022 | JD | Researching district court caselaw re vacatur (3.2), case blocking and memo drafting (1.5) | 4.7 | 4.7 |
| 2/9/2022 | JD | Research district court case law re disruptive consequences for vacatur (3.8), taking notes and drafting memo re same (1.1) | 4.9 | 4.9 |
| 2/10/2022 | JD | Research unpublished authority re vacatur and taking notes re same | 0.6 | 0.6 |
| 2/11/2022 | JD | Researching district court caselaw re vacatur (4.1), reading secondary sources re vacatur and new NEPA rules re vacatur (.4), case blocking and memo drafting (.4) | 4.9 | 4.9 |
| 2/15/2022 | JD | Researching district court caselaw re disruptive consequences (1.3), writing memo and editing (.6) | 1.9 | 1.9 |
| 2/16/2022 | JD | Research unpublished authority re vacatur and taking notes re same | 3.3 | 3.3 |
| 2/17/2022 | JD | Research re vacatur (2.5), call w/ EB re injunctive relief (.3) | 2.8 | 2.8 |
| 2/23/2022 | JD | Editing remedies memo, cite checking | 1.2 | 1.2 |
| 2/24/2022 | JD | Editing remedies memo, cite checking | 3.1 | 3.1 |
| 2/25/2022 | JD | editing memo (1.9), drafting comprehensive summary (.5) | 2.4 | 2.4 |
| 2/28/2022 | JD | editing remedies memo, cite checking | 0.6 | 0.6 |
| 3/1/2022 | JD | editing remedies memo (2.3), additional caselaw research re public interest factor of injunctive relief (2.6) | 4.9 | 4.9 |

| 3/2/3022 | JD | caselaw re public policy issues in injunctive relief (1.4), caselaw search re seriousness of violations (1.3), editing memo and adding case law (1.1) | 3.8 | 3.8 |
|---|---|---|---|---|
| 3/3/2022 | JD | case law search re seriousness of violations (.8), editing and cite checking memo (.7) | 1.5 | 1.5 |
| 3/4/2022 | JD | Editing memo re vacatur in NEPA context, additional case law research | 1.4 | 1.4 |
| 3/7/2022 | JD | Cite checking, editing, and drafting summary for NEPA remedy memo (1.8), research re public interest factors of injunction (1.1) | 2.9 | 2.9 |
| 3/8/2022 | JD | Editing memo re injunction and vacatur in NEPA context, cite checking | 3.4 | 3.4 |
| 3/10/2022 | JD | Final edits to remedy memo, sent to BK | 1 | 1 |
| 4/6/2022 | JD | Call w/ BK, EB, and c/c re remedy briefing and strategy (.7), followup research and comm w/ EB re same (.2) | 0.9 | 0.9 |
| 4/12/2022 | JD | Call w/ BK re remedy brief assignment (.2), reviewing remedy section of MSJ and magistrate judge ruling re NEPA violations (1), drafting outline of brief (1.1) | 2.3 | 2.3 |
| 4/13/2022 | JD | Drafting vacatur section of brief re seriousness of errors (2.5), drafting injunction section of brief re irreparable injury (2.7), reviewing remedy memo, prior arguments in MSJ and R&R re same | 5.2 | 5.2 |
| 4/14/2022 | JD | Drafting argument section re injunctive relief remedy (.5), drafting argument section re vacatur (2.5) | 3 | 3 |
| 4/15/2022 | JD | Drafting argument section re vacatur remedy (4.7), call w/ EB re briefing (.2) | 4.9 | 4.9 |
| 4/18/2022 | JD | Drafting injunction argument section in remedy brief | 1.5 | 1.5 |
| 4/19/2022 | JD | Drafting seriousness of error section of remedy brief | 1.7 | 1.7 |
| 4/20/2022 | JD | Drafting argument section re injunctive relief (2.8), editing section re seriousness of errors (1) | 3.8 | 3.8 |
| 4/21/2022 | JD | Drafing injunctive relief section, editing, reviewing facts and previous briefs | 3.2 | 3.2 |
| 4/22/2022 | JD | Drafting injunction argument section in remedy brief, reviewing AR for facts and support, reviewing case law for comparisons | 5.3 | 5.3 |
| 4/25/2022 | JD | Editing injunctive relief argument section | 0.6 | 0.6 |
| 4/26/2022 | JD | Edits to vacatur section (1.3), drafting irreparable injury argument section (1.3) | 2.6 | 2.6 |
| 4/27/2022 | JD | Edits to irreparable injury argument section and reviewing AR for evidence | 0.7 | 0.7 |
| 4/28/2022 | JD | Edits to and drafting irreparable injury argument section | 3.3 | 3.3 |

| Date | | Description | | |
|------|---|-------------|---|---|
| 5/2/2022 | JD | Drafting and editing injunctive relief section of argument | 0.5 | 0.5 |
| 5/3/2022 | JD | Drafting injunctive relief argument section (1.9), legal research re same (1.5), review of recent expert declarations for factual support (.4) | 3.8 | 3.8 |
| 5/4/2022 | JD | Edits to injunctive relief section (.7), review of expert declarations for factual support and taking notes (.8) | 1.5 | 1.5 |
| 5/5/2022 | JD | Reviewing expert declaration, note taking, drafting of injunctive relief argument | 0.9 | 0.9 |
| 5/10/2022 | JD | Drafting and editing injunctive relief section of argument | 1.3 | 1.3 |
| 5/12/2022 | JD | Reviewing Lacy declarations, note taking, drafting of vacatur argument | 4.3 | 4.3 |
| 5/13/2022 | JD | Reviewing expert declaration, note taking, drafting of vacatur argument | 1.8 | 1.8 |
| 5/16/2022 | JD | Call w/ EB re SEAK remedy brief (.1), drafting injunctive relief argument section (.5) | 0.6 | 0.6 |
| 5/17/2022 | JD | Drafting injunctive relief argument section, reviewing expert declarations and AR | 1.7 | 1.7 |
| 5/18/2022 | JD | Editing vacatur section of remedy brief | 0.6 | 0.6 |
| 5/19/2022 | JD | Drafting injunctive relief argument section, reviewing expert declarations and AR | 2.4 | 2.4 |
| 5/20/2022 | JD | Drafting and editing injunctive relief section of argument | 1.3 | 1.3 |
| 5/24/2022 | JD | Drafting and editing NEPA vacatur section of remedy brief (1.2), drafting and editing injunctive relief section (1.5) | 2.7 | 2.7 |
| 5/25/2022 | JD | Edits to NEPA injunction relief brief arugment | 0.5 | 0.5 |
| 6/3/2022 | JD | Read new 9th Circuit decision re NEPA and ESA injunctive relief | 0.4 | 0.4 |
| 6/16/2022 | JD | Editing, reviewing, and drafting vacatur section of remedy brief | 1.6 | 1.6 |
| 6/17/2022 | JD | Editing, reviewing, and drafting vacatur section of remedy brief (1.4), reading, analyzing, and note taking new NRDC v. EPA vacatur remand, comms with EB re same (.9) | 2.3 | 2.3 |
| 6/21/2022 | JD | Editing vacatur section, adding argument about changes to next iteration (.7), editing irreparable injury section (.9) | 1.6 | 1.6 |
| 6/22/2022 | JD | Editing and drafting serious error and irreparable injury arguments, legal research (3.5), call w/ BK re serious errors (.3), reviewing BK notes (.1) | 3.9 | 3.9 |
| 6/23/2022 | JD | Reviewing expert declarations and note taking for argument section of injunctive relief brief | 0.5 | 0.5 |
| 6/24/2022 | JD | Final drafting of seriousness of errors and irrep harm sections of remedy brief, reviewing AR and legal research notes, sent to BK for review | 6.4 | 6.4 |
| | | **JD 2022 Hours:** | **150.7** | **150.7** |

| Date | | Description | | |
|------|----|------|------|------|
| 11/1/2022 | MH | preliminary discussions w/PK, oral argument & debrief | 2.7 | 2.7 |
| 12/16/2022 | MH | researching/drafting response to Magistrate Report denial of injunction | 3.9 | 3.9 |
| 12/20/2022 | MH | call w/ EB re: next steps for objections | 0.1 | 0.1 |
| 12/22/2022 | MH | drafting magistrate report response | 5.9 | 5.9 |
| | | **MH 2022 Hours:** | **12.6** | **12.6** |
| | | | | |
| 1/31/2023 | MH | meeting w/BK assigning motion to change deadline | 0.2 | 0.2 |
| 2/7/2023 | MH | drafting motion to extend deadline to file for fees | 4.3 | 4.3 |
| 2/8/2023 | MH | drafting motion to extend deadline to file for fees | 2.2 | 2.2 |
| 3/6/2023 | MH | firm meeting discussion RE: conferral | 0.1 | 0.1 |
| 3/15/2023 | MH | reading articles about public opposition to suit | 0.4 | 0 |
| 4/4/2023 | MH | writing Paul's change of address | 0.2 | 0.2 |
| 5/3/2023 | MH | m/w PK re: case status (0.2); emailing BAK (0.1); call w/BAK re: drafting standards task (0.1); m/w client re: next steps (0.6); call w/BAK re: editing task (0.1); editing mtn. to extend (0.2) | 1.3 | 1.3 |
| 5/4/2023 | MH | m/w PK re: case development (0.3); m/w client re: next steps (0.4) | 0.7 | 0.7 |
| 5/5/2023 | MH | call w/BAK re: motion (0.2); drafting motion for inj. Pending appeal (5.0) | 5.2 | 5.2 |
| 5/8/2023 | MH | firm mtg. discussion re: next steps (0.3); emailing EB + BAK re: mtn. for inj. Pending app. (0.2); call w/BAK re: response to mtn. to stay pending appeal (0.1) | 0.6 | 0.6 |
| 5/9/2023 | MH | drafting standards for response to mtn. stay | 1.1 | 1.1 |
| 5/11/2023 | MH | edits to mtn (0.8); EB call re: new task (0.1); researching irreparable harm (1.1) | 2 | 2 |
| 5/15/2023 | MH | firm mtg. discussion next steps (0.2); reading/sending emails re: irr. Harm (0.1); researching irr. Harm (3.2) | 3.5 | 3.5 |
| 5/17/2023 | MH | call w/EB re: rsch. (0.1); second call w/EB re: same (0.1); irr. Harm rsch. (0.9) | 1.1 | 1.1 |
| 5/23/2023 | MH | editing & cite checking surreply (0.8); emails to Brian re: edits (0.1) | 0.9 | 0.9 |
| 5/24/2023 | MH | emails re: new research task from BAK | 0.1 | 0.1 |
| 5/25/2023 | MH | researching & synthesizing Excerpts of Record rules (3.4); emailing research to BAK (0.1) | 3.5 | 3.5 |
| 5/30/2023 | MH | calls w/BAK re: editing task (0.2); cite checking brief (3.1) | 3.3 | 3.3 |
| 5/31/2023 | MH | emails re: 9th Cir. appearance | 0.1 | 0.1 |
| 6/1/2023 | MH | drafting notice of appearance (0.9); emailing it to EB to review (0.1) | 1 | 1 |

| 6/2/2023 | MH | reading & responding to emails re: motion response (0.3); researching motion response standards (2.3) | 2.6 | 2.6 |
|---|---|---|---|---|
| 6/5/2023 | MH | calls w/BAK re: tasks (0.2); cite checking response brief (3.6); editing response brief (0.9) | 4.7 | 4.7 |
| 6/6/2023 | MH | calls w/BAK re: tasks (0.2); researching amici response standards (0.7); editing response (0.5) | 1.4 | 1.4 |
| 6/7/2023 | MH | email exchange w/BAK re: interlocutory appeal standards task (0.5); clarification call w/BAK re: same (0.1); researching interloc. App. Standards (2.9) | 3.5 | 3.5 |
| 6/8/2023 | MH | calls w/BAK re: cite check + edit work (0.2); cite check (1.1); grammar/typos edits (0.7); emailing BAK edits (0.1); emailing BAK re: summarizing interloc. App. Research (0.1); summarizing same rsch. (2.4) | 4.6 | 4.6 |
| 6/9/2023 | MH | emailing EB re: notice of appearance (0.1); filing notice of app. (0.7); call w/Bak re: Salmon Treaty obligations to mitigate (1.5); emails w/BAK re: researching whether Ninth Cir. will allow new evidence on mtn. for injunction (0.2); researching same (1.7) | 4.2 | 4.2 |
| 6/15/2023 | MH | emails w/BAK re: cite check & line by line tasks (0.2); call BAK re: cite check task (0.1); cite checking brief (1.0); line by line edits to same (0.7) | 2 | 2 |
| 6/20/2023 | MH | reading emails re: filings | 0.2 | 0.2 |
| 6/21/2023 | MH | firm mtg. re: court order (0.2); emails w/BAK re: researching rules for expediting (0.1); researching same (0.6); reading emails to/from client re: order (0.2) | 1.1 | 1.1 |
| 6/22/2023 | MH | reading client emails re: meeting to discuss court order | 0.1 | 0.1 |
| 6/23/2023 | MH | client meeting to discuss court order issuing stay | 0.7 | 0.7 |
| 8/23/2023 | MH | meeting w/EB, BAK, + client re: NEPA process on the prey increase program, including the potential effects of it on our appeal | 0.8 | 0.8 |
| 9/29/2023 | MH | skimming 9th Cir. appeal briefs (0.1); correspondence w/co-counsel re: the briefs (0.1) | 0.2 | 0.2 |
| 10/2/2023 | MH | firm meeting discussion re: 9th circuit appeal briefs | 0.2 | 0.2 |
| 10/3/2023 | MH | meeting w/BAK + WFC to discuss briefs, case development, & next steps (1.0); researching potential legal defense of remedy (1.5) | 2.5 | 2.5 |
| 10/4/2023 | MH | researching potential legal defense of remedy (2.5); correspondence w/BAK re: same (0.2) | 2.7 | 2.7 |
| 10/6/2023 | MH | correspondence w/BAK re: research tasks (0.3); researching vacatur case law (4.3) | 4.6 | 4.6 |

| 10/10/2023 | MH | firm meeting discussion re: briefs & research tasks (0.2); correspondence w/BAK re: research (0.1); researching vacatur case law (3.4) | 3.7 | 3.7 |
|---|---|---|---|---|
| 10/11/2023 | MH | emails w/BAK re: research memo (0.1); drafting memo on vacatur case law (5.8) | 5.9 | 5.9 |
| 10/12/2023 | MH | drafting memo re: vacatur case law | 2.8 | 2.8 |
| 10/16/2023 | MH | firm meeting discussion re: amicus briefs & appeal strategy | 0.2 | 0.2 |
| 10/19/2023 | MH | correspondence w/BAK re: drafting judicial notice (0.1); drafting judicial notice (1.8) | 1.9 | 1.9 |
| 10/23/2023 | MH | correspondence w/BAK re: researching case law on vacatur (0.1); research on same (1.7) | 1.8 | 1.8 |
| 10/24/2023 | MH | correspondence w/BAK re: case law research on vacatur | 0.1 | 0.1 |
| 10/30/2023 | MH | catching up on filings made while out of the office to stay updated (0.1); editing judicial notice to include further documents (1.3); correspondence w/BAK re: judicial notice edits (0.1) | 1.5 | 1.5 |
| 11/15/2023 | MH | editing motion for judicial notice (0.6); correspondence w/BAK re: same (0.2) | 0.8 | 0.8 |
| 11/17/2023 | MH | editing motion for judicial notice to include new exhibits | 0.6 | 0.6 |
| 11/20/2023 | MH | editing motion for judicial notice (0.3); correspondence w/BAK re: same (0.1); emailing w/opposing counsel re: position on the motion (0.4) | 0.8 | 0.8 |
| 11/21/2023 | MH | editing motion for judicial notice w/additional argument (3.3); calls w/BAK re: same (0.2) | 3.5 | 3.5 |
| 11/27/2023 | MH | correspondence w/BAK re: finalizing & filing motion for judicial notice | 0.1 | 0.1 |
| 11/28/2023 | MH | editing motion for judicial notice | 0.3 | 0.3 |
| 11/29/2023 | MH | correspondence w/BAK, EB re: brief & motion finalization & filing (0.3); proofreading & redlining brief (4.8); editing & finalizing motion for judicial notice by creating pdf documents (1.1); filing motion w/exhibits (0.4) | 6.6 | 6.6 |
| 11/30/2023 | MH | correspondence w/BAK, oc re: ATA reply brief extension & reviewing applicable rule | 0.1 | 0.1 |
| 12/1/2023 | MH | reviewing FRAP & calendaring deadlines (0.4); emailing BAK to inform him of the same (0.1) | 0.5 | 0.5 |
| 12/8/2023 | MH | reviewing ATA response (0.3); drafting reply (5.4) | 5.7 | 5.7 |
| 12/11/2023 | MH | drafting reply (0.6); emailing BAK re: same (0.1) | 0.7 | 0.7 |
| | | **MH 2023 Hours:** | **105.5** | **105.1** |
| 1/30/2024 | MH | reading NMFS brief (0.6); call w/BAK re: same (0.1) | 0.7 | 0.7 |

| 1/31/2024 | MH | corr. w/BAK re: prey increase programs (0.1); legal research re: same (0.6) | 0.7 | 0.7 |
|---|---|---|---|---|
| 2/1/2024 | MH | call w/BAK re: researching prey increase legislative history (0.1); research re: same (0.4); drafting motion for judicial notice of prey increase agency documents (0.7); reviewing NMFS brief (3.9) | 5.1 | 5.1 |
| 2/2/2024 | MH | reviewing NMFS brief | 1.3 | 1.3 |
| 2/5/2024 | MH | reviewing briefs to consider reply to judicial notice argument | 1.7 | 1.7 |
| 2/6/2024 | MH | reviewing briefs to draft reply to judicial notice argument | 3.9 | 3.9 |
| 2/7/2024 | MH | corr. w/BAK re: defendants' mitigation implementation to draft reply (0.5); research re: same (2.2) | 2.7 | 2.7 |
| 2/8/2024 | MH | drafting reply to judicial notice argument | 1.2 | 1.2 |
| 2/15/2024 | MH | reading briefs (0.8); calls w/BAK re: research tasks (0.1); legal research re: issue waivers (0.3); formatting citations for brief (1.2) | 2.4 | 2.4 |
| 2/16/2024 | MH | citation formatting (0.6); corr. w/BAK re: citations, appendix (0.1) | 0.7 | 0.7 |
| 2/21/2024 | MH | corr. w/BAK re: appendix (0.1); creating appendix (2.2) | 2.3 | 2.3 |
| 2/22/2024 | MH | proofreading/redlining brief (2.1); corr. w/BAK re: appendix edits, brief (0.2) | 2.3 | 2.3 |
| 4/22/2024 | MH | researching notice of withdrawal under FRAP, 9th cir. website guidance | 0.2 | 0 |
| 4/24/2024 | MH | reviewing requirements to file notice of withdrawal in 9th circuit per ECF website (0.1); corr. w/BAK re: notice of withdrawal for district court (0.1) | 0.2 | 0 |
| 4/26/2024 | MH | filing notice of withdrawal from 9th Circuit (0.2); corr. w/BAK re: notice of withdrawals to evaluate need to file in district court (0.2) | 0.4 | 0 |
| | | **MH 2024 Hours:** | **25.8** | **25** |
| | | | | |
| 12/9/2019 | PK | Call with BK re: case status, next steps, and possible work needs | 0.2 | 0.2 |
| 12/17/2019 | PK | Call with BK re: lit strategy | 0.2 | 0.2 |
| | | **PK 2019 Hours:** | **0.4** | **0.4** |
| | | | | |
| 2/27/2020 | PK | Call with BK re: litigation strategy | 0.3 | 0.3 |
| 3/18/2020 | PK | Calls with BK and EB re: complaint filing | 0.1 | 0.1 |
| 3/19/2020 | PK | C/w c/c and review and approve notice of appearance for filing | 0.3 | 0.3 |
| 4/7/2020 | PK | Call from BK re: litigation strategy w/r/t PI motion | 0.2 | 0.2 |
| 4/13/2020 | PK | Call with BK and EB re: litigation strategy, expert testimony, and upcoming PI mtn filing | 0.2 | 0.2 |

| Date | | Description | | |
|---|---|---|---|---|
| 4/20/2020 | PK | Calls with BK (.4) and BK and EB (.2) re: litigation strategy and next steps | 0.6 | 0.6 |
| 4/21/2020 | PK | Call with BK re: PI litigation strategy, timing, and next steps | 0.8 | 0.8 |
| 4/22/2020 | PK | Call wit BK re: litigation strategy and new order limiting need for bench copies | 0.2 | 0.2 |
| 4/27/2020 | PK | Litigation strategy call with c/c EB and BK | 0.3 | 0.3 |
| 5/12/2020 | PK | Call with BAK re: litigation strategy and reply brief needs and arguments | 0.3 | 0.3 |
| 5/19/2020 | PK | Calls with BAK re litigation strategy related to PI mtn, upcoming hearing, and jurisdictional arguments | 0.7 | 0.7 |
| 6/3/2020 | PK | Call with BK re: litigation strategy and next steps | 0.2 | 0.2 |
| 6/9/2020 | PK | Read magistrate judge's report and recommendation and call with BK re: same | 0.5 | 0.5 |
| 6/12/2020 | PK | Call with BK re: litigation strategy and next steps | 0.2 | 0.2 |
| 6/23/2020 | PK | Call with BK and EB re litigation strategy related to scope of record on review | 0.2 | 0.2 |
| 6/29/2020 | PK | Call with BK and EB re litigation status, strategy, next steps, and timing | 0.3 | 0.3 |
| 7/16/2020 | PK | Call with BAK re litigation strategy esp record issues | 0.3 | 0.3 |
| | | **PK 2020 Hours:** | **5.7** | **5.7** |
| 1/13/2021 | PK | Calls with BAK re litigation strategy, surreply and pending PI mtn | 0.3 | 0.3 |
| 1/29/2021 | PK | Call with BAK re litigation strategy and timing of expert testimony in support of motion for summary judgment and vacatur | 0.4 | 0.4 |
| 2/10/2021 | PK | Calls with BAK re litigation strategy and scheduling MSJ | 0.4 | 0.4 |
| 3/2/2021 | PK | Call with BK and EB re order on PI and next case steps | 0.2 | 0.2 |
| 4/1/2021 | PK | Call with BK re pleading issues and MSJ scope | 0.2 | 0.2 |
| 5/24/2021 | PK | Call with colleagues re litigation strategy and reply brief work (.2); call with BAK re litigation strategy and arguments in opposition to state waters contention (.5); call with EB re standing arguments for reply brief (.4) | 1.1 | 1.1 |
| 6/30/2021 | PK | Call with BAK re Canada announcement and implications for case | 0.3 | 0.3 |
| 7/6/2021 | PK | Call with EB re standing and oral argument strategies | 0.7 | 0.7 |
| 7/19/2021 | PK | Call with c/c re oral argument strategy and approach | 0.2 | 0.2 |

**FIFTH KNUTSEN DECLARATION - 230**
**Case No. 2:20-cv-00417-RAJ-MLP**

| Date | | Description | | |
|---|---|---|---|---|
| 7/27/2021 | PK | Listen to oral argument to assist with case and litigation strategy moving forward (2.2) and debrief with clients and c/c for the same reasons (.5) | 2.7 | 2.7 |
| 7/28/2021 | PK | Review court order re supp briefing and call to BK re same | 0.2 | 0.2 |
| 8/2/2021 | PK | m/w JD to discuss NEPA claims in support of arguments for supp briefing ordered by court (.8); m/w EB and JD re same (.3) | 1.1 | 1.1 |
| 8/4/2021 | PK | Call with BK re supp brief and arguments in support of NEPA claims | 0.2 | 0.2 |
| 9/27/2021 | PK | Review order on xmsj and call with BK re same | 0.2 | 0.2 |
| 9/28/2021 | PK | m/w c/c re court order and next steps (.4); call with BK re same (.1) | 0.5 | 0.5 |
| 10/4/2021 | PK | Call with c/c re magistrate judge ruling, objections to same, and next steps | 0.2 | 0.2 |
| 10/6/2021 | PK | Call with BK re objections to magistrate judge ruling | 0.2 | 0.2 |
| 10/13/2021 | PK | Call with BK re litigation strategy and review filed objections | 0.2 | 0.2 |
| 10/14/2021 | PK | Call from EB re standing arguments and possible responses | 0.4 | 0.4 |
| 10/19/2021 | PK | Call with BK re litigation strategy | 0.1 | 0.1 |
| 11/30/2021 | PK | M/w JD re research memo for BAK re vacatur and injunctive relief in the NEPA context | 0.4 | 0.4 |
| | | **PK 2021 Hours:** | **10.2** | **10.2** |
| 1/4/2022 | PK | Cal with c/c re possible TRO and litigation strategy moving forward | 0.1 | 0.1 |
| 1/31/2022 | PK | Call with BAK re litigation strategy and timing of next steps | 0.2 | 0.2 |
| 2/3/2022 | PK | Call with BAK re litigation strategy esp re available relief | 0.4 | 0.4 |
| 3/1/2022 | PK | Call with BAK re JD progress on memo, timing for briefing re same | 0.1 | 0.1 |
| 3/8/2022 | PK | Call with EB and BAK re work ahead and next steps | 0.1 | 0.1 |
| 8/8/2022 | PK | Call with EB and BAK re order on SJ | 0.1 | 0.1 |
| 8/9/2022 | PK | Call with BAK re court order and strategy/timing re next steps | 0.1 | 0.1 |
| 8/10/2022 | PK | Call with BAK re court order and strategy/timing re next steps | 0.2 | 0.2 |
| 8/17/2022 | PK | Call from BAK re upcoming status conference and approach to same | 0.1 | 0.1 |
| 8/19/2022 | PK | Call with BAK re status conference strategy to avoid USA getting reply brief (.3); follow up call with EB and BAK re same (.2) | 0.5 | 0.5 |
| 8/23/2022 | PK | Call from BAK and EB to discuss conferral, briefing, and litigation strategy re next steps in remedy phase of litigation | 0.2 | 0.2 |

| 9/1/2022 | PK | Call with BAK re legal issues and strategies for remedy briefing | 0.6 | 0.6 |
|---|---|---|---|---|
| 9/6/2022 | PK | Call with BAK re litigation strategy for remedy brief | 0.1 | 0.1 |
| 10/4/2022 | PK | Call with BAK re reply brief work, litigation issues, and work ahead | 0.1 | 0.1 |
| 10/7/2022 | PK | Calls with EB and BAK re litigation status and strategy for reply brief | 0.2 | 0.2 |
| 10/14/2022 | PK | Litigation strategy call with BAK re reply brief arguments (.2); review filed reply brief materials in prep for next steps (.4) | 0.6 | 0.6 |
| 10/17/2022 | PK | Calls with EB and BAK re litigation status and strategy | 0.2 | 0.2 |
| 10/23/2022 | PK | Review email and note oral argument on calendar in prep for assisting with same | 0.1 | 0.1 |
| 10/27/2022 | PK | Call with BAK re remedy argument | 0.2 | 0.2 |
| 10/30/2022 | PK | Call with BAK re remedy argument | 0.2 | 0.2 |
| 10/31/2022 | PK | Call with firm c/c to discuss upcoming argument, logistics, and any need for assistance re same | 0.1 | 0.1 |
| 11/1/2022 | PK | Listen to oral argument to assist with next steps and to answer MH questions (2.2); debrief calls with BAK, MH, and EB re same esp re potential need for assistance with evidentiary hrg (.6) | 2.8 | 2.8 |
| 11/2/2022 | PK | Call with BAK re ct order denying evidentiary hrg and litigation work and needs moving forward | 0.3 | 0.3 |
| 12/13/2022 | PK | Review magistrate judge's findings and recommendations on relief and discuss same with EB and BAK in prep for objection process | 0.2 | 0.2 |
| | | **PK 2022 Hours:** | **7.8** | **7.8** |
| 1/11/2023 | PK | Call with BAK re litigation strategy | 0.3 | 0.3 |
| 1/25/2023 | PK | Call with BAK re litigation strategy | 0.1 | 0.1 |
| 2/8/2023 | PK | Call with BAK re relief timing and next steps | 0.2 | 0.2 |
| 3/6/2023 | PK | Firm call re status, work ahead, and next case steps (.1); call with BAK re same and amicus work (.3) | 0.4 | 0.4 |
| 3/14/2023 | PK | Call with firm c/c re amicus work and related issues | 0.3 | 0.3 |
| 3/16/2023 | PK | Call with BAK re relief and amicus issues | 0.3 | 0.3 |
| 4/28/2023 | PK | M/w BAK re timing of ruling and best way to communicate with the court re same | 0.1 | 0.1 |
| 5/2/2023 | PK | Calls with BAK re status and next steps and then court ruling and likely steps to come | 0.3 | 0.3 |
| 5/3/2023 | PK | Numerous calls with BAK fee mtn, appeal, and litigation/settlement strategy moving forward | 0.8 | 0.8 |

| 5/4/2023 | PK | m/w MH re appeal issues (.3); calls with BK and EB re same and litigation strategy/next steps (.6) | 0.9 | 0.9 |
|---|---|---|---|---|
| 5/5/2023 | PK | Calls with BAK re appeals, next steps, and litigation/settlement strategies | 1 | 1 |
| 5/8/2023 | PK | Calls with BAK and EB re settlement, mtns for injunction/stay pending appeal, and related litigation strategy issues | 1.1 | 1.1 |
| 5/9/2023 | PK | Call with BAK re appeal and settlement (.2); review and file ECF notices (.1) | 0.3 | 0.3 |
| 5/12/2023 | PK | Review mtn for injunction pending appeal (.2) and call with BAK re same and timing/strategy of next steps (.4) | 0.6 | 0.6 |
| 5/15/2023 | PK | Call with firm colleagues re status and next steps to resolve case | 0.2 | 0.2 |
| 5/16/2023 | PK | Review and file c/w counsel and court orders (.1); call with BAK re litigation strategy esp re vacatur relief (.6) | 0.7 | 0.7 |
| 5/17/2023 | PK | Call with BAK re litigation strategy and need for injunction re notice of new action | 0.2 | 0.2 |
| 5/23/2023 | PK | Calls with BAK re appeal strategy issues (.2); review and manage numerous ECF filings and read surreply (.2) | 0.4 | 0.4 |
| 6/6/2023 | PK | Call with BAK re SEAK mtns practice and issues re same | 0.2 | 0.2 |
| 6/7/2023 | PK | Call with BAK re appeal issues esp re SCOTUS (.6); review and manage ECF filing notices and related emails among c/c to stay abreast of case status (.2) | 0.8 | 0.8 |
| 6/8/2023 | PK | Call with BAK re SCOTUS LR and review emails/LR results from firm c/c | 0.3 | 0.3 |
| 6/9/2023 | PK | Call with BAK re SCOTUS issues and timing of Ninth Circuit ruling on mtns to stay | 0.1 | 0.1 |
| 6/13/2023 | PK | Call with BAK re mtns practice and issues concerning same | 0.2 | 0.2 |
| 6/14/2023 | PK | Call with BAK re mtns practice, timing of next brief, and letters in support of same and possible timing of court ruling | 0.1 | 0.1 |
| 6/16/2023 | PK | Call with BAK re Ninth Circuit mtns practice, time for responding to amicus brief, timeline for expected decision | 0.2 | 0.2 |
| 6/21/2023 | PK | Calls with BAK re Ninth Circuit ruling and possible next steps and litigation strategy | 0.8 | 0.8 |
| 6/22/2023 | PK | Call with BAK re LR issues, conclusions, and possible next steps | 0.3 | 0.3 |
| 8/17/2023 | PK | Call with BAK re current NEPA processes, timing, and impact on litigation and litigation strategy in light of same | 0.2 | 0.2 |
| 9/29/2023 | PK | Call with BAK re work ahead, review opening briefs, c/w c/c re same | 0.2 | 0.2 |

| | | | | |
|---|---|---|---|---|
| 10/2/2023 | PK | m/w firm c/c re appeal status, next steps, and work ahead | 0.2 | 0.2 |
| 10/3/2023 | PK | Call with BAK re appeal and litigation strategy | 0.1 | 0.1 |
| 10/10/2023 | PK | m/w firm c/c re appeal status, next steps, and work ahead | 0.2 | 0.2 |
| 10/12/2023 | PK | Call with BAK re appeal issues | 0.1 | 0.1 |
| 10/16/2023 | PK | Call with firm c/c re appeal strategy and amicus support | 0.2 | 0.2 |
| 10/19/2023 | PK | Call from BAK re appeal and related issues | 0.2 | 0.2 |
| | | **PK 2023 Hours:** | **12.6** | **12.6** |
| 2/6/2024 | PK | Call with BAK re reply brief work and litigation strategy on appeal | 0.2 | 0.2 |
| 2/9/2024 | PK | Call with BAK re litigation/appeal strategy | 0.1 | 0.1 |
| 3/14/2024 | PK | Call with BAK re appeal argument, amici participation, and staffing same | 0.1 | 0.1 |
| 5/6/2024 | PK | Review ECF filings and short call with BAK re hearing date, panel assignment, and related issues | 0.2 | 0.2 |
| 6/7/2024 | PK | Call with BAK re appeal issues | 0.2 | 0.2 |
| 6/28/2024 | PK | Review new SCOTUS decision overturning Chevron deference and consider applicability to case and appeal and need for 28j letter (.4); call with BAK re same (.5); review and consider draft 28j letter (.2); call with BAK re same (.3) | 1.4 | 1.4 |
| 7/5/2024 | PK | Review panel assignment and LR re same | 0.1 | 0.1 |
| 7/9/2024 | PK | Call with BAK re oral argument prep and needs | 0.1 | 0.1 |
| 7/12/2024 | PK | Call with BAK re argument and prep | 0.3 | 0.3 |
| 7/16/2024 | PK | Calls with BAK and EB re oral argument | 0.4 | 0.4 |
| 7/18/2024 | PK | Listen to Ninth Circuit argument in prep for assisting with post-argument proceedings | 0.8 | 0.8 |
| 8/16/2024 | PK | Review court order from Ninth Circuit and c/w BAK re same | 0.2 | 0.2 |
| 8/26/2024 | PK | Call with c/c re case status and next steps in prep for assisting with same | 0.2 | 0.2 |
| 10/3/2024 | PK | Call with BAK re fee petition work (.4); consider fee declarant options and c/w BAK re same (.4) | 0.8 | 0.8 |
| 10/4/2024 | PK | Call with BAK re fee petition work and next steps | 0.1 | 0.1 |
| 10/29/2024 | PK | Calls with BAK re fee petition issues | 0.7 | 0.7 |
| 10/31/2024 | PK | Calls with BAK re fee petition issues | 0.4 | 0.4 |
| 11/8/2024 | PK | Call with BAK re fee petition issues | 0.1 | 0.1 |
| 11/13/2024 | PK | M/w firm c/c re work ahead and assignments re same (.3); call potential declarant in support of fee petition (.1) | 0.4 | 0.4 |
| 11/19/2024 | PK | Calls with BAK re fee petition issues | 0.5 | 0.5 |
| 11/20/2024 | PK | Calls with BAK re Becker and Tonry declarations and related work | 0.3 | 0.3 |

| Date | | Description | | |
|---|---|---|---|---|
| 11/22/2024 | PK | Call with BAK re fee petition work, needs, and next steps (.2); review Becker decl in prep for finalizing my decl in support of fee petition (.1); c/w possible fee decl. (.1) | 0.4 | 0.4 |
| 11/26/2024 | PK | Call with BAK to discuss fee petition work and next steps | 0.2 | 0.2 |
| 12/2/2024 | PK | Review, consider, and revise draft Kampmeier decl in support of mtn for fees and costs | 1.8 | 1.8 |
| 12/3/2024 | PK | Consider revising draft Kampmeier decl (.7); send same to BAK for review (.1) | 0.8 | 0.8 |
| 12/4/2024 | PK | Calls with EB (.2) and BAK (.3) re fee petition issues and arguments in support of same | 0.5 | 0.5 |
| 12/5/2024 | PK | Call with BAK re fee declaration and related fee petition issues | 0.1 | 0.1 |
| 12/6/2024 | PK | Call with BAK and EB re fee declaration and related fee petition issues | 0.2 | 0.2 |
| 12/9/2024 | PK | Review PK time in case, PK hourly rates, hourly rates for firm attorneys and clerks, draft PK declaration, and edit and finalize PK declaration (1.7); calls with BAK re same (.3) | 2 | 2 |
| 12/10/2024 | PK | Call with BAK re fee petition filing work, timing, conferral with o/c, and expected schedule for reply brief work in prep for assisting with same | 0.3 | 0.3 |
| | | **PK 2024 Hours:** | **13.9** | **13.9** |

**FIFTH KNUTSEN DECLARATION - 235**
**Case No. 2:20-cv-00417-RAJ-MLP**

# EXHIBIT 12

Nos. 23-35322, 23-35323, 23-35324, 23-35354

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

WILD FISH CONSERVANCY,
*Plaintiff/Appellee/Cross-Appellant*,
v.

JENNIFER QUAN, in her official capacity as Regional Administrator of the National
Marine Fisheries Service; JANET COIT, in her official capacity as the Assistant
Administrator for Fisheries of the National Marine Fisheries Service; NATIONAL
MARINE FISHERIES SERVICE; GINA M. RAIMONDO, in her official capacity
as Secretary of the United States Department of Commerce; UNITED STATES
DEPARTMENT OF COMMERCE,
*Defendants/Appellants/Cross-Appellees,*
and

ALASKA TROLLERS ASSOCIATION and STATE OF ALASKA,
*Intervenor-Defendants/Appellants/Cross-Appellees.*

Appeal from the United States District Court for the Western District of Washington
No. C-20-417 (Hon. Richard A. Jones)

**FEDERAL DEFENDANTS-APPELLANTS'
FIRST CROSS-APPEAL BRIEF**

Of Counsel:

SHEILA LYNCH
*Attorney*
National Oceanic and Atmospheric
    Administration
Seattle, WA

MOLLY E. WATSON
*Attorney*
National Oceanic and Atmospheric
    Administration
Juneau, AK

TODD KIM
*Assistant Attorney General*

RACHEL HERON
REBECCA JAFFE
COBY HOWELL
FREDERICK H. TURNER
THEKLA HANSEN-YOUNG
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 307-2710
thekla.hansen-young@usdoj.gov

industries," *American Water Works Ass'n*, 40 F.3d at 1273. *See also California Communities*, 688 F.3d at 993–94 (considering environmental and economic consequences). That is, there is an equitable balancing of factors rather than application of a presumption.

Although the district court here acknowledged that it was required to balance the foregoing factors, the court nevertheless committed the same error identified in *Monsanto* by erroneously presuming that vacatur was the correct remedy, 1-ER-14, 29, 35, when, in fact, "[n]o such thumb on the scales is warranted," 561 U.S. at 157. The court instead should have neutrally considered whether the relevant equitable considerations favor vacatur, in light of the record compiled by the parties. This is particularly true when that relief substantially affects entities beyond the defendant federal agency, as is the situation here. *See Texas*, 143 S. Ct. at 1985–86 (Gorsuch, concurring) (cautioning that "a district court should 'think twice—and perhaps twice again—before granting'" sweeping relief in the form of vacatur) (citation omitted).

In sum, to the extent that the district court weighted the scale in favor of vacatur, rather than placing the burden of showing entitlement to vacatur on the Conservancy and neutrally considering the specific facts before it, that was error.

### B. The court erred in concluding the agency's errors were serious.

As discussed above, the district court's proper role under this Court's precedent was to weigh the factors set out in *Allied Signal*, the first of which is the seriousness of the agency's "deficiencies (and thus the extent of doubt whether the agency chose

24

correctly)." *Allied-Signal*, 988 F.2d at 150–51. To evaluate the seriousness of an agency's errors, courts consider "whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Nat'l Fam. Farm Coalition*, 966 F.3d at 929 (quotations and citation omitted); *see Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (also relevant to the analysis is "whether by complying with procedural rules, [the agency] could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand."); *see also Allied-Signal*, 988 F.2d at 150–51. The district court abused its equitable discretion here: first, by automatically assuming that NMFS's errors were serious enough to warrant vacatur simply because killer whales are endangered and, second, by ignoring or giving unreasonably little weight to important facts in the judicial record. The record compels a finding that it is likely that NMFS will be able to issue the same incidental take statement on remand after additional explanation and therefore NMFS's errors were not serious. This factor did not favor vacatur, and the district court erred in concluding otherwise.

The court acknowledged that it was at least possible that NMFS would be able to reach the same result on remand. 1-ER-41. It nevertheless held that the legal errors it identified were serious because (1) the ESA requires the agency to ensure against the jeopardy of listed species, (2) the agency did not comply with the ESA or NEPA (and

therefore undermined statutory objectives), and (3) killer whales remain at a high risk of extinction. 1-ER-32–33. But not every legal error requires an agency's decision to be vacated; that is true even when the decision involves a listed species. When considering the seriousness of the errors, the district court should have considered only whether NMFS may adopt the same decision after conducting additional analysis. *See, e.g., Nat'l Fam. Farm Coal. v. U.S. EPA*, 966 F.3d 893, 929 (9th Cir. 2020) (holding that an error under the Federal Insecticide, Fungicide, and Rodenticide Act—failing to consider harm to monarch butterflies caused by killing milkweed—was not serious where the agency was likely to be able to adopt the same outcome on remand).

The record compels a conclusion that NMFS is, in fact, likely to be able to adopt the same decision on remand. One of the district court's central reasons for finding an ESA violation was the perception that NMFS relied on the anticipated benefits of the prey increase program despite uncertainties about future funding and details of implementation. 1-ER-31 (citing 4-ER-640–47). NMFS had examined the prey increase program in the biological opinion at a framework level that enabled it to perform a broad-scale analysis of the program's benefits and impacts. *See, e.g.,* 5-ER-889; 6-ER-1304; 6-ER-1318–25. NMFS also committed to conducting additional, more detailed analysis under the ESA and NEPA as necessary and noted that it could always reinitiate consultation if there was inadequate funding and a corresponding need to develop additional mitigation for killer whales. *See, e.g.,* 5-ER-1106, 1114, 1119.

26

This level of detail and commitment to conduct additional studies did not satisfy the district court as to the merits. Significantly, however, the district court did not find that there was a fundamental flaw in the agency's ultimate determination that the Chinook salmon troll fishery in Alaska would not jeopardize listed species. The court concluded that the agency had not done *enough* analysis of the program's impacts under the ESA and NEPA or provided enough information to show that the mitigation program was certain enough to occur to satisfy the requirements of the ESA. *See* 1-ER-31–32; 4-ER-637–51. These kinds of errors are procedural in that they involve how much analysis NMFS completed (or when it was completed), as opposed to suggesting an incurable defect with NMFS's substantive conclusions on jeopardy. *See Nat'l Fam. Farm Coalition*, 966 F.3d at 929; *see also* 2-ER-275–76 ¶¶ 3–5 (discussing additional analysis). When an agency commits only technical or procedural errors, it generally is the case that the agency will "likely be able to offer better reasoning" and "adopt the same [decision] on remand." *Nat'l Fam. Farm Coalition*, 966 F.3d at 929 (quotations and citation omitted); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 938 (9th Cir. 2005).

The record eliminates any doubt that that is the case here. The court concluded that the details of the prey increase program were insufficiently concrete for the agency to rely on that program's benefits to offset any harm to the whale from harvesting salmon when the agency issued the biological opinion in 2019. However, the judicial record before the district court at the remedy phase in 2022 showed that in fact the prey

increase program has been funded (between $5.6 and 7.3 million annually) and implemented each year since 2020. *See* 1-ER-36; 2-ER-255–57 ¶¶ 7–9; 2-ER-305–07, 310–11 ¶¶ 11, 13, 22 ("[W]e anticipate increases in prey abundance are near to or being realized as we reach the 3–5 year maturation time frame following each year of implementation."); 2-ER-275–76 ¶¶ 3–5; 2-ER-284–85. Including fish from projects funded by Washington State, the combined federal and state releases are "on track to provide the benefits to [killer whales] that were anticipated in the [biological opinion]." 2-ER-275–76 ¶¶ 3–5; 2-ER-281–86; 5-ER-889 (anticipating funding from nonfederal sources); 4-ER-663 ¶ 13.

Even the district court noted that the "prey increase program—though previously uncertain and indefinite in the 2019 [biological opinion]—has also now been funded and begun providing prey the past three years." 1-ER-36. The subsequent implementation of the prey increase program as anticipated has effectively cured (or at a minimum, greatly reduced the significance of) any error on NMFS's part in relying on the then-tentative program to reach its no jeopardy determinations in the 2019 biological opinion.

Moreover, for every hatchery program receiving federal funding under the prey increase program, NMFS has subsequently completed site-specific ESA and NEPA analyses or identified existing ESA and NEPA analyses that evaluated the effects of increased hatchery production, including impacts to listed salmon. 2-ER-276 ¶ 5; 2-ER-100–01 ¶¶ 9–11; 2-ER-117–20; 4-ER-663 ¶ 15. Contrary to the district court's bare

28

conclusion that the agency's errors were serious, 1-ER-41, this analysis suggests that NMFS will be able to offer better reasoning on remand in support of its decision in the 2019 biological opinion to adopt the prey increase program at a framework level. The continued implementation of that program under the existing framework will in turn ensure that the agency can continue relying on that program's benefits to the whale's prey base when it considers the effect of continued salmon harvest in the future.

Yet, ignoring the new factual developments, the district court's discussion of the seriousness of the agency's errors parroted its earlier conclusion that the agency relied on "uncertain and indefinite mitigation measures." 1-ER-31. This was clearly erroneous, in light of the evidence that the prey increase program is in fact being implemented. Moreover, to the extent that the stakes of an agency's error under the ESA or NEPA may be high if a listed species is in greater peril, the district court additionally erred here by (as discussed further below, pp. 35–39) failing to consider whether the specific legal errors it found would exacerbate the killer whale's condition during the remand, given that the remand period was expected to be short and the prey increase program has been funded and operational for the past three years.

## C. The limited benefits and devastating consequences of vacatur weigh heavily in favor of remand without vacatur.

For the foregoing reasons, the district court erred in determining that the agency committed "serious" errors for purposes of determining a remedy. But in any event, even where an agency's errors are "significant," this Court has held that equitable

the prey needs of killer whales with the coastwide fisheries that target salmon allowed under the treaty. *See* 5-ER-887–89 (explaining that the United States decided to fund the prey increase program and other mitigation measures to "mitigate the effects of harvest and other limiting factors that contributed to the reduced status of Puget Sound Chinook salmon and [Southern Resident killer whales]," in addition to reducing harvest levels). Vacatur frustrates those efforts by pitting fishing communities against killer whale conservation. *See* 2-ER-64–65 ¶¶ 25, 27; 2-ER-133–34 ¶¶ 25, 27.

In sum, the district court lacked a sufficient basis for vacatur and abused its discretion when it erroneously discounted the many disruptive consequences of vacatur and improperly elevated the limited benefits provided to killer whales during the remand period.

## CONCLUSION

For all these reasons, the district court's order should be reversed insofar as it vacated the 2019 biological opinion and incidental take statement.

40

/s/ Thekla Hansen-Young
TODD KIM
*Assistant Attorney General*

Of Counsel:

SHEILA LYNCH
*Attorney*
Office of General Counsel
National Oceanic and Atmospheric
    Administration
Seattle, WA

MOLLY E. WATSON
*Attorney*
Office of General Counsel
National Oceanic and Atmospheric
    Administration
Juneau, AK

September 29, 2023
DJ# 90-8-6-08342

RACHEL HERON
REBECCA JAFFE
COBY HOWELL
FREDERICK H. TURNER
THEKLA HANSEN-YOUNG
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 307-2710
thekla.hansen-young@usdoj.gov

41