1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILD FISH CONSERVANCY,

                          Plaintiff,

        v.

BARRY THOM, *et al.*,

                          Defendants.

Case No. C20-417-RAJ-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This matter is before the Court on Plaintiff Wild Fish Conservancy's ("WFC") Motion for an Award of Fees and Costs pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(4), and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) ("Plaintiff's Petition"). (Pet. (dkt. # 202).) The United States Department of Commerce, Scott Rumsey, Chris Oliver, National Marine Fisheries Service ("NFMS"), and Wilbur Ross, Jr. (collectively, "Defendants") concede WFC's entitlement to an award but argue a reduction in the fee award is warranted because: (1) WFC's billing rates and hours are inflated; and (2) WFC did not prevail on any of the remedies it sought. (Resp. (dkt. # 212).) WFC submitted a reply. (Reply (dkt. # 213).)

After careful consideration of the parties' submissions, relevant legal standards, and the overall record, the Court recommends that Plaintiff's Petition be GRANTED in part and DENIED in part.

## II.    BACKGROUND

In 2020, WFC filed a lawsuit alleging that: (1) Defendants violated the ESA by adopting and implementing the 2019 Southeast Alaska Biological Opinion ("2019 BiOp") and its Incidental Take Statement ("ITS") without ensuring these actions would not jeopardize the Southern Resident Killer Whales ("SRKW") and Chinook salmon; (2) the 2019 BiOp and ITS did not comply with ESA standards and were arbitrary, capricious, an abuse of discretion, and not in accordance with the law; and (3) NMFS violated the National Environmental Policy Act ("NEPA") by issuing and implementing the 2019 BiOp and ITS without preparing a new or supplemental Environmental Assessment ("EA") to evaluate the need for an Environmental Impact Statement ("EIS"). (Dkt. # 1 at ¶¶ 114-17.)

In 2023, the Court: (1) remanded the 2019 BiOp to NMFS to remedy the ESA and NEPA violations identified by the Court (*see* dkt. ## 111, 122); (2) vacated portions of the 2019 BiOp concerning the ITS authorizing the "take" of the SRKW and Chinook salmon due to commercial harvests of Chinook salmon during the winter and summer seasons (excluding the spring season); and (3) denied WFC's request to vacate and/or enjoin portions of the 2019 BiOp related to NMFS's prey increase program under Section 7 of the ESA (*see* dkt. # 165).

Defendants accepted the merits decision of the Court and began preparing a new BiOp, however, the parties appealed the Court's decision on the proper remedies pending remand. (Dkt. ## 167, 170-71, 186.) Defendants also joined with the State of Alaska and filed motions for a stay pending appeal (dkt. ## 172, 181), while WFC sought an injunction pending appeal (dkt.

# 177). The Court denied these motions, and the parties cross-appealed these decisions. (Dkt. ## 193, 198.) In 2024, the Ninth Circuit reversed the Court's vacatur of the take statement and affirmed the decision not to vacate the prey increase program. (Dkt. # 199.)

### A.    Plaintiff's Petition

WFC seeks a total award of $2,309,010.00 for fees and costs, which is substantiated by detailed billing records. (Pet. at 7, 20-23; Reply at App'x.) The motion includes fee requests for:

(1)    2,365.2 hours of work by Kampmeier & Knutsen partner Brian Knutsen, at rates of $500.00 per hour in 2019, $535.00 in 2020, $580.00 in 2021, $610.00 in 2022, $650.00 in 2023, and $700.00 in 2024 and 2025;

(2)    1,253.9 hours of work by Kampmeier & Knutsen associate Emma Bruden, at rates of $290.00 per hour in 2019, $300.00 in 2020, $320.00 in 2021, $350.00 in 2022, $390.00 in 2023, and $430.00 in 2024 and 2025;

(3)    98.6 hours of work by Kampmeier & Knutsen associate Erica Proulx, at $310.00 per hour in 2024 and 2025;

(4)    517.7 hours of work by Kampmeier & Knutsen associate Jessica Durney, at rates of $260.00 per hour in 2020, $300.00 in 2021, and $345.00 in 2022;

(5)    142.7 hours of work by Kampmeier & Knutsen associate Marriah Harrod, at rates of $275.00 per hour in 2022, $290.00 in 2023, and $310.00 in 2024;

(6)    51 hours of work by Kampmeier & Knutsen partner Paul Kampmeier, at rates of $545.00 per hour in 2019, $560.00 per hour in 2020, $595.00 per hour in 2021, $650.00 per hour in 2022, $700.00 per hour in 2023, and $750.00 per hour in 2024 and 2025;

(7)    60.9 hours of work by Kampmeier & Knutsen law clerk Dakota Rash, at $168.00 per hour in 2019;

1    (8)    196.2 hours of work by Kampmeier & Knutsen law clerk Dara Illowsky, at

2   $168.00 per hour in 2020;

3    (9)    137.6 hours of work by Corr Cronin LLP partner Eric Lindberg, at rates of

4   $205.25 per hour in 2019, $207.78 per hour in 2020, $217.54 per hour in 2021, $234.95 per hour

5   in 2022, and $244.62 per hour in 2023 and 2024;

6    (10)    161.9 hours of work by Corr Cronin LLP attorney Benjamin Byers, at rates of

7   $205.25 per hour in 2019, $207.78 per hour in 2020, $217.54 per hour in 2021, and $234.95 per

8   hour in 2022;

9    (11)    7 hours of work by outside counsel George Kimbrell for assistance with moot

10   court argument, at $700.00 per hour in 2024; and

11    (12)    10.1 hours of work by outside counsel Peter M. Lacy for assistance with moot

12   court argument, at $750.00 per hour in 2024.

13   (Pet. at 20-21; Reply at App'x.)

14    In total, WFC seeks fees for 5,002.8 hours of work, amounting to $2,266,599.92, in

15   addition to $42,410.08 for costs and expert fees. (Pet. at 20-23; Reply at App'x.)

16    **B.    Defendant's Objections**

17    Defendants contend that due to WFC's limited success on its claims, a 25% reduction of

18   the overall fee award is warranted. (Resp. at 11.) They further propose a reduction of $100.00 per

19   hour for Mr. Knutsen, Mr. Kampmeier, Mr. Kimbrell, and Mr. Lacy; a reduction of $90.00 per

20   hour for Ms. Bruden; and a $100.00 per hour reduction for Ms. Proulx, Ms. Durney, and Ms.

21   Harrod. (*Id.* at 12-13.) Defendants argue this Court should limit the total award to $1,031,718.60

22   for all fees and expenses, based on four factors: (1) WFC's limited success on its claims; (2) any

23   award under EAJA should be denied because Defendants were substantially justified in their

1    positions; (3) WFC artificially inflated the lodestar amount regarding rates and hours worked;

2    and (4) some of WFC's submitted expenses are non-recoverable. (*Id.* at 3-11, 17.) Although the

3    Court previously directed the parties to seek resolution regarding fees amicably, those efforts

4    have proven futile. (*See* dkt. ## 206, 215.)

### III.    DISCUSSION

6    The citizen suit provision of the ESA allows for fee awards for WFC's first claim, while

7    the EAJA permits fee awards for its second and third claims. *See* 28 U.S.C. §§ 2412(d)(1)(A),

8    2412(d)(2)(B)). WFC asserts its entitlement to an award under both acts due to its partial success

9    in litigation and fulfillment of EAJA's requirements. (*See generally* Pet.)

### C.    The Endangered Species Act

11    Courts have the discretion to award "reasonable" attorneys' fees and litigation costs to

12    any party bringing suit under the citizen-suit provision of the ESA, whenever such award is

13    "appropriate." 16 U.S.C. § 1540(g)(4). For an award to be appropriate, the party must have

14    "some degree of success on the merits." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983).

15    A party achieves the requisite degree of success by succeeding "on any significant issue in

16    litigation which achieves some of the benefit sought in bringing suit." *Hensley v. Eckerhart*, 461

17    U.S. 424, 433 (1983), *superseded on other grounds by* Prison Litigation Reform Act, 42 U.S.C.

18    § 1997e. Since the ESA's fee-shifting provisions operate as a waiver of sovereign immunity,

19    however, they must be "construed strictly in favor of" the government. *Ruckelshaus*, 463 U.S. at

20    685. The Supreme Court has noted that "trivial success on the merits, or purely procedural

21    victories," do not qualify for a fee award. *Id.* at 688 n. 9. A plaintiff seeking fees must

22    demonstrate that the lawsuit made "a substantial contribution to the goals of [the ESA]" to be

23    entitled to attorneys' fees. *Carson-Truckee Water Conservancy v. Sec'y of the Interior*, 748 F.2d

1    523, 526 (9th Cir. 1984), *overruled on other grounds as recognized by Marbled Murrelet v.*

2    *Babbitt*, 182 F.3d 1091, 1094-95 (9th Cir. 1999). Fees may alternatively be awarded under the

3    ESA if there is a causal link between the relief obtained and the lawsuit. *Or. Nat. Res. Council v.*

4    *Turner*, 863 F. Supp. 1277, 1281 (D. Or. 1994). The requisite causal connection exists when the

5    litigation was a "material factor" in the resulting actions. *Ass'n of Cal. Water Agencies v. Evans*,

6    386 F.3d 879, 886 (9th Cir. 2004).

7         WFC asserts that it initiated this suit due to concerns that the 2019 BiOp approved

8    harvest regimes and mitigation measures for fisheries without adequate ESA reviews and NEPA

9    processes. (Pet. at 16.) The Court ruled in favor of WFC by ordering a remand of the 2019 BiOp

10   back to NMFS to rectify the identified violations. (Dkt. # 111 at 25-38.) Consequently, NMFS

11   conducted two public NEPA processes, including public meetings, comment periods, and

12   consultations with tribal entities. WFC argues that this transparency was a fundamental goal of

13   its litigation, and that its advocacy was instrumental in compelling NMFS to correct its earlier

14   mistakes. (Pet. at 16-17.) Furthermore, NMFS's newly issued 2024 BiOp introduced more

15   stringent restrictions aimed at protecting ESA-listed species, particularly in connection with the

16   fisheries and prey increase programs, thus fulfilling WFC's objective of enhancing

17   environmental protections. (*Id.*)

18        Defendants counter that WFC achieved only limited success by failing to secure any

19   interim relief. They contend that WFC "overstates the new limits on [the fisheries and the prey

20   increase program] and the extent to which [these] changes were the result of the litigation."

21   (Resp. at 9-10.) Given the limited relief obtained, Defendants advocate for a 25% reduction in

22   the overall award. (*Id.* at 11.) Although Defendants allege that alternative routes could have

23   prompted NMFS to reinitiate consultation, they do not demonstrate that the initial lawsuit was

not a catalyst for addressing the deficiencies in the 2019 BiOp. This Court finds that WFC has achieved some benefits from its litigation and that a causal relationship exists between the litigation efforts and the outcomes realized.

### D.    Equal Access to Justice Act

Under EAJA, any non-profit organization with a net worth of less than seven million dollars and which employs fewer than five hundred individuals is presumptively entitled to court costs and reasonable attorneys' fees whenever it prevails in an action against the United States. 28 U.S.C. § 2412(d)(1)(A). An award of fees to such a prevailing party is inappropriate only if the United States establishes its position was substantially justified or other circumstances make an award unjust. *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1230 (9th Cir. 1990).

A "single finding that the Government's position lacks substantial justification . . . operates as a one-time threshold for fee eligibility." *Comm'r v. Jean*, 496 U.S. 154, 160 (1990). In this case, NMFS violated established administrative law by failing to perform the requisite NEPA analyses for the issuance of the ITS outlined in the 2019 BiOp.[1] *See Or. Nat. Desert Ass'n v. Rose*, 845 F. App'x 700, 702 (9th Cir. 2021) (holding the government was unable to show it was substantially justified when it "violated black-letter administrative law when it redefined statutory terms without notice or input"). Thus, Defendants' actions lacked a reasonable legal basis and were not substantially justified.

### E.    Lodestar Analysis

To determine whether a request for attorneys' fees is reasonable, the court employs a two-step analysis. First, the court performs a lodestar analysis, multiplying an attorney's

---

[1] The Honorable Richard A. Jones held NMFS violated NEPA because "the 2019 SEAK BiOp and ITS lacked any clarification why NMFS concluded NEPA procedures were required for ITS issued for the 1999 [Pacific Salmon Treaty] but not for the ITS issued for the 2019 [Pacific Salmon Treaty]." (Dkt. # 111 at 36.)

1   reasonable hourly rate by the number of hours reasonably expended on the litigation. *Shayler v.*

2   *1310 PCH, LLC*, 51 F.4th 1015, 1020 (9th Cir. 2022). Second, the court considers whether to

3   adjust the lodestar figure upward or downward based on factors not incorporated in the lodestar

4   calculation. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016).

5           A reasonable hourly rate is the prevailing market rate in the community for similar

6   services provided by a lawyer of reasonably comparable skill, experience, and reputation.

7   *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019). The relevant community is

8   generally "the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d

9   973, 979 (9th Cir. 2008). "The number of hours to be compensated is calculated by considering

10  whether, in light of the circumstances, the time could reasonably have been billed to a private

11  client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The court must

12  exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S.at

13  434. There is nonetheless a "strong presumption" that the lodestar figure represents a reasonable

14  fee award. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

15                  *1.    Reasonableness of Rate Enhancement and Hourly Rate*

16          Defendants acknowledge that the Western District of Washington represents the relevant

17  legal market but advocate for a $90 to $100 reduction of Kampmeier & Knutsen's attorneys and

18  Mr. Kimbrell and Mr. Lacy's rates. (Resp. at 12-13.) Attorneys' fees under EAJA are typically

19  capped at $125 per hour unless special factors merit higher fees, such as the limited availability

20  of qualified attorneys. 28 U.S.C. § 2412(d)(2)(A)(ii). Ninth Circuit precedent allows for

21  enhanced rates when: (1) the attorney has distinctive knowledge and skills from a practice

22  specialty; (2) those skills are essential for the litigation; and (3) such skills are not available

23  elsewhere at the regular statutory rate. *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991).

1    Environmental litigation constitutes a practice specialty requiring distinctive knowledge,

2    supporting the reasonableness of rate enhancements. *See League of Wilderness Defs./Blue*

3    *Mountains Biodiversity Project v. U.S. Forest Serv.*, 2014 WL 3546858, at *12 (D. Or. July 15,

4    2014) (collecting Ninth Circuit cases finding rate enhancement appropriate in environmental

5    cases). While Defendants do not dispute that WFC's counsel possess the necessary expertise and

6    that the case involved specialized knowledge, they argue WFC has not shown that similar

7    qualified attorneys were unavailable at the statutory rate. (Resp. at 12-13.)

8    To support WFC's requested rate enhancement, WFC submitted declarations from its

9    attorneys and a recent opinion establishing rates for its attorneys. (*See* dkt. ## 206-09, 214.)

10   WFC also provided a declaration from its executive director, emphasizing the difficulty public

11   interest nonprofits face in hiring qualified environmental lawyers willing to accept EAJA rates.

12   The director explained that WFC researched potential attorneys with relevant environmental

13   expertise and identified Kampmeier & Knutsen as the only firm with the appropriate experience

14   that was willing to accept the case. (Helverson Decl. (dkt. # 203) at ¶¶ 26–28.)

15   Additionally, the expert witness affidavits further support the fact that attorneys with the

16   required specialized skill were not available to litigate this case at the statutory rate. Expert

17   witness David H. Becker testified about the limited number of environmental litigation

18   practitioners willing to work pro bono or at lower rates. (Becker Decl. (dkt. # 204) at 66-73.)

19   Similarly, expert witness Claire Tonry explained that there are few attorneys with the requisite

20   skill level and familiarity, many of them are unavailable due to conflicts, and she is unaware of

21   any willing to accept representation at EAJA rates. (Tonry Decl. (dkt. # 205) at ¶¶ 10–21.)

22   WFC submitted sufficient evidence to meet its burden. Defendants offer no evidence in

23   rebuttal. Accordingly, this Court finds that a rate enhancement is appropriate and turns to the

prevailing market rate to evaluate the reasonableness of WFC's hourly rates. In determining

reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys

regarding prevailing fees in the community, and rate determinations in other cases, particularly

those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market

rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

WFC supports its hourly rates with the declaration of Ms. Tonry, a partner at a Seattle

environmental law firm (Tonry Decl.), declarations from Mr. Knutsen and Mr. Kampmeier (Fifth

Knutsen Decl. at ¶¶ 24–27, 42; Kampmeier Decl. at ¶¶ 8–9), and a recent case establishing rates

for Kampmeier & Knutsen. *See Wild Fish Conservancy v. Wash. Dep't of Fish & Wildlife*, 2024

WL 1345200, at *5 (W.D. Wash. Mar. 30, 2024). Ms. Tonry has extensive experience in the

field of environmental law and states that the hourly rates requested for WFC's attorneys are

reasonable and in line with market rates in this district. (Tonry Decl. at ¶¶ 10-21.) These

declarations are sufficient to meet WFC's burden to produce evidence that its proposed rates are

consistent with those for attorneys of comparable skill and experience in this community.

Defendants bear the burden to rebut this showing by presenting evidence challenging the

accuracy or reasonableness of these rates. *Camacho*, 523 F.3d at 980.

Defendants argue that the requested hourly rates for Mr. Knutsen, Mr. Kampmeier, Mr.

Kimbrell, Mr. Lacy, Ms. Bruden, Ms. Proulx, Ms. Durney, and Ms. Harrod are too high and do

not reflect the prevailing market rate. (Resp. at 11-13.) Defendants cite a number of cases

establishing hourly rates for attorneys with various levels of experience in matters unrelated to

environmental litigation, but did not submit any expert testimony or other evidence on this issue.

(*Id.* (citing *Abrams v. Sequium Asset Sols., LLC*, 2023 WL 2757195, at *6 (W.D. Wash. Mar. 31,

2023) (Fair Debt Collection Practices Act case), *Black Lives Matter Seattle-King Cnty. v. City of*

*Seattle, Seattle Police Dep't*, 516 F. Supp. 3d 1202, 1212 (W.D. Wash. 2021) (civil rights claim), *SRS Distrib. Inc. v. Achten Quality Roofing Inc.*, 2024 WL 4349602, at *2 (W.D. Wash. Sept. 30, 2024) (breach of contract), *Gochev v. First Am. Prop. & Cas. Ins. Co.*, 2024 WL 216531, at *12 (W.D. Wash. Jan. 19, 2024) (Washington Insurance Fair Conduct Act claim), and *Stross v. Zillow Inc.*, 2023 WL 5952060, at *2 (W.D. Wash. Sept. 13, 2023) (intellectual property dispute).)

Considering WFC's supporting materials, the attorneys' highly specialized skill and years of experience, and the fact that the cases relied upon by Defendants do not encompass the highly specialized practice of federal environmental litigation, this Court finds that WFC's requested hourly rates are reasonable.

### 2.     Reasonableness of Hours Worked

As the fee applicant, WFC "bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The Court typically defers "to the winning lawyer's professional judgment as to how much time he was required to spend on the case," *Moreno*, 534 F.3d at 1112, but it does not "uncritically accept counsel's representations concerning the time expended," *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 n. 8 (9th Cir. 1987). The hours may be reduced by the Court if the "documentation of the hours is inadequate"; "if the case was overstaffed and hours are duplicated"; or "if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

In this case, WFC has produced voluminous billing records—spanning 124 pages and more than 3,000 entries for twelve individuals—and attests that it excluded potentially

1    non-compensable time. (Fifth Knutsen Decl. at ¶¶ 29-32, Ex. 11; Bruden Decl. (dkt. # 207) at

2    ¶¶ 13-14; Kampmeier Decl. at ¶¶ 11-12; Lindberg Decl. (dkt. # 209) at ¶¶ 7-9, Ex. A.) It further

3    supports the reasonableness of these hours with a declaration from outside attorney David

4    Becker. (Becker Decl.)

5           Defendants challenge the reasonableness of WFC's billing, pointing to numerous

6    instances of overstaffing and redundancy. For example, they highlight 22.8 hours billed for

7    intervention and at least 1.5 hours for clerical tasks. (Resp. at 13.) They also argue this case was

8    overstaffed, noting that WFC's team of ten attorneys and two clerks logged over 5,000 hours,

9    whereas Defendants' three primary attorneys billed fewer than 3,000 hours. (*Id.* at n. 2.)

10   Accordingly, Defendants propose the following specific reductions: (1) 269.4 hours on

11   "Complaint/Notice of Intent" reduced by 25%; (2) 662.3 hours on "Preliminary Injunction

12   Motion" reduced by 30%; (3) 1,409.4 hours on "Summary Judgment" reduced by 35%; (4)

13   1,038.5 hours on "Remedy" reduced by 30%; (5) 417.6 hours on "Stay/Injunction Pending

14   Appeal" reduced by 15%; (6) 747.9 hours on "Ninth Circuit" reduced by 15%; (7) 282.9 hours

15   on "Fee Motion" reduced by 25%; and (8) 35.7 hours on "Motions to Extend/Expedite" reduced

16   by 20%.[2] (*Id.* at Ex. 3.)

17          This Court is not convinced that the categorical approach advocated by Defendants is the

18   most appropriate method for determining reasonable hours in this matter. Each case presents

19   distinct issues and considerations. For example, in this case, WFC had to address three separate

20   sets of arguments due to Defendants' decision not to consolidate briefs (*see, e.g.*, dkt. ## 75,

21   81-87), and bore the burden to establish jurisdiction and substantiate its claims. This case also

22

23   [2] Defendants' exhibit identified 4,934.2 total hours, including 70.5 hours of uncontested "Administrative
     Record" work. (Resp. at Ex. 3.) This total does not include the 51 hours Kampmeier & Knutsen attorneys
     have incurred since the fee petition (Reply at App'x) or the 17.1 hours billed for moot attorneys' fees
     (Pet. at App'x.).

involved large administrative records, intervenor participation, extensive expert opinions, and management of separate proceedings before magistrate and district judges—all factors supporting the high number of hours reported by WFC. (*See* Resp. at 14; Becker Decl. at ¶¶ 42, 46-63; Reply at 4.) Nonetheless, while this Court declines to adopt Defendants' proposed reductions, it finds that specific reductions are warranted, as discussed below.

### 3. *Kampmeier & Knutsen Hours*

Kampmeier & Knutsen attorneys billed a total of 4,686.2 hours, which they state reflects an overall reduction of 1.4% (73.8 hours) to account for non-compensable time. (Pet. at App'x; Reply at App'x.) This Court questions the billing practices involving Mr. Knutsen, as he spent significant time on tasks such as general review and legal research that could have been delegated to law clerks or junior associates.[3] *See Asset Mktg. Sys., Inc. v. Gagnon*, 2009 WL 10720557, at *6 (S.D. Cal. May 7, 2009) ("a senior attorney should delegate appropriate tasks to associates, for example, legal research."); *Northon v. Rule*, 494 F. Supp. 2d 1183, 1187 (D. Or. 2007) (reducing fee award where senior attorney failed to delegate simple tasks to junior associates). The same applies to tasks such as preparing templates, filing documents, or managing mailings, which could have been performed by legal support staff.[4] Consequently, the

---

[3] This Court identified 183 entries (totaling 698.8 hours) from Mr. Knutsen and 254 entries (totaling 687.3 hours) from other Kampmeier & Knutsen attorneys for legal research. (Fifth Knutsen Decl. at Ex. 11, *e.g.*, 2/10/2020, Mr. Knutsen billed 1.4 hours for "legal research re: standard of review for preliminary injunction"; 6/24/2020, Mr. Knutsen billed 2.8 hours for "legal research re: administrative record issues and privilige [*sic*] log requirements"; 6/21/2020, Mr. Knutsen billed 2.8 hours for "legal research re: possible next steps".)

[4] This Court identified 26 entries (totaling 34.6 hours) from Mr. Knutsen and 50 entries (totaling 12.2 hours) from other Kampmeier & Knutsen attorneys for tasks such as preparing tables and filing. (Fifth Knutsen Decl. at Ex. 11, *e.g.*, 12/8/2020, "finalized and filed notice of supplemental authority"; 10/28/2020, "organize files"; 9/7/2022, "finalized and filed motion for remedy".)

1    Court recommends a 5% reduction in Kampmeier & Knutsen's hours for failing to delegate

2    certain tasks appropriately.

3         In addition, a further 5% reduction is warranted due to excessive conferencing among the

4    Kampmeier & Knutsen attorneys. While internal strategy meetings can enhance efficiency, an

5    overabundance of redundant or unnecessary conferences diminishes productivity. The Court

6    concludes that the number of "strategy" conferences here is excessive, justifying this reduction.[5]

7         Next, the Court considers whether WFC "achieved a level of success that makes the

8    hours reasonably expended a satisfactory basis for making a fee award." *Sorenson v. Mink*, 239

9    F.3d 1140, 1147 (9th Cir. 2001) (internal citation omitted). "[W]here the plaintiff achieved only

10   limited success, the district court should award only the amount that is reasonable in relation to

11   the results obtained." *Hensley*, 461 U.S. at 440. "[T]he product of hours reasonably expended on

12   the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

13   Even though WFC obtained declaratory relief, it failed to secure several key remedies it sought,

14   including injunctive relief to ensure compliance with the ESA, vacatur of the BiOp and

15   incidental take statement, and injunctions barring delegation of fishery management authority.

16   Given Kampmeier & Knutsen's significant involvement in efforts related to these remedies and

17   the Ninth Circuit appeal—and considering the limited success overall—this Court finds that an

18   additional 20% reduction is justified.

19        Accordingly, this Court finds that a 30% reduction—comprising 5% for failure to

20   delegate, 5% for redundant billing, and 20% for limited success on key objectives—is

21

22   _____
     [5] This Court identified 292 entries (totaling 124.5 hours) from Mr. Knutsen and 739 entries (totaling
23   480.4 hours) from other Kampmeier & Knutsen attorneys related to strategy and conferencing. (Fifth
     Knutsen Decl. at Ex. 11, *e.g.*, 12 entries for "call w/ PK re: litigation strategy"; 5 entries to "discuss oral
     argument strategy w/ BAK"; 17 entries for "call w/ BAK re: next steps".)

appropriate. *See Gates*, 987 F.2d at 1399 (permitting percentage reductions as a practical means of trimming excessive fee applications). With these reductions, the Court finds 3,280.34 hours for Kampmeier & Knutsen's work is reasonable, resulting in a total fee award of $1,533,489.86.

### 4.    *Outside Counsel's Hours*

WFC also requests fees for 17.1 hours billed for Mr. Kimbrell and Mr. Lacy's assistance in preparing Kampmeier & Knutsen's attorneys for the Ninth Circuit oral argument. (*See* Fifth Knutsen Decl. at ¶¶ 33-40.) Considering that WFC did not succeed at oral argument and reported approximately 747.9 hours of work on this matter, it is not reasonable to award additional fees for outside counsel's assistance with moot court preparations. (*See* Resp. at Ex. 3.) Thus, this Court recommends that the 17.1 hours reported for moot court argument preparation be deducted from the fee award.

### 5.    *Corr Cronin LLP's Hours*

Corr Cronin attorneys billed a total of 299.5 hours, which they state reflects an overall reduction of 20% (75.2 hours) to account for non-compensable time. (Lindberg Decl. at ¶¶ 9-11.) Given the scope of Corr Cronin's involvement, which was mostly unrelated to remedy, injunctive relief, and the Ninth Circuit appeal—and considering that their work involved client consultations, co-counsel collaboration, court communications, legal research, motion preparation, and related tasks, this Court finds these hours reasonable. Therefore, no further reduction is warranted.

### F.    Costs

The citizen suit provision of the ESA allows the Court to "award costs of litigation (including reasonable attorney and expert witness fees)." 16 U.S.C. § 1540(g)(4). WFC seeks to recover $42,410.08 in costs and expert fees; this amount includes filing fees, postage, research

fees, photocopies, travel/meals, expert reports, and printing. (*See* Pet. at App'x.) Costs are typically awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. *See* Fed. R. Civ. R. 54(d); *see also* 28 U.S.C. § 2412. The expenses which may be taxed as costs are enumerated in 28 U.S.C. § 1920 and generally include any reasonable "out-of-pocket expenses . . . 'that would normally be charged to a fee paying client.'" *Nat'l Warranty Ins. Co. v. Greenfield*, 2001 WL 34045734, *9 (D. Or. Feb. 8, 2001) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)); *see also* 28 U.S.C. § 2412(a)(1). This Court finds that the expert fees and litigation costs sought by WFC are supported and reasonable. Therefore, WFC is entitled to recover these costs.

## IV.    CONCLUSION

For the reasons outlined above, the Court recommends WFC's motion for fees and costs be GRANTED in part and DENIED in part. Specifically, the Court finds that WFC is entitled to an award of **$1,596,914.98** in attorneys' fees ($63,435.12 for Corr Cronin and $1,533,489.86 for Kampmeier & Knutsen) and **$42,410.08** in costs. A proposed judgment and order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **June 2, 2025**.

The Clerk is directed to send copies of this order to the parties and to the Honorable Richard A. Jones.

Dated this <u>19th</u> day of May, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge